PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| JUNIPER NETWORKS, INC., a Delaware Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Demand for Jury Trial against Juniper Networks, Inc. ("Defendant" or "Juniper") and alleges as follows:

## THE PARTIES

1.     Finjan is a Delaware Corporation with its principal place of business at 2000 University Avenue, Suite 600, E. Palo Alto, California 94303.

2.     Defendant is a Delaware Corporation with its headquarters and principal place of business at 1133 Innovation Way, Sunnyvale, California 94089.  Defendant may be served through its agent for service of process, CT Corporation System, at 818 W. 7th Street, Suite 930, Los Angeles, California 90017.

## JURISDICTION AND VENUE

3.     This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.     This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant is headquartered and has its principal place of business in this District (Sunnyvale, California).  Defendant also regularly and continuously does business in this District and has infringed or induced infringement, and continues to do so, in this District.  In addition, this Court has personal jurisdiction over Defendant because minimum contacts have been established with this forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

6.     Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

1

**FINJAN'S INNOVATIONS**

2

7.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an

3 Israeli corporation.  In 1998, Finjan moved its headquarters to San Jose, California.  Finjan was a

4 pioneer in developing proactive security technologies capable of detecting previously unknown and

5 emerging online security threats, recognized today under the umbrella term "malware."  These

6 technologies protect networks and endpoints by identifying suspicious patterns and behaviors of

7 content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous

8 patents covering innovations in the United States and around the world resulting directly from Finjan's

9 more than decades-long research and development efforts, supported by a dozen inventors and over

10 $65 million in R&D investments.

11

8.      Finjan built and sold software, including application program interfaces (APIs) and

12 appliances for network security, using these patented technologies.  These products and related

13 customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed

14 nearly 150 employees around the world building and selling security products and operating the

15 Malicious Code Research Center, through which it frequently published research regarding network

16 security and current threats on the Internet.  Finjan's pioneering approach to online security drew

17 equity investments from two major software and technology companies, the first in 2005 followed by

18 the second in 2006.  Finjan generated millions of dollars in product sales and related services and

19 support revenues through 2009, when it spun off certain hardware and technology assets in a merger.

20 Pursuant to this merger, Finjan was bound to a non-compete and confidentiality agreement, under

21 which it could not make or sell a competing product or disclose the existence of the non-compete

22 clause.  Finjan became a publicly traded company in June 2013, capitalized with $30 million.  After

23 Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015,

24 Finjan re-entered the development and production sector of secure mobile products for the consumer

25 market.

26

27

28

2

**FINJAN'S ASSERTED PATENTS**

9.     On November 28, 2000, U.S. Patent No. 6,154,844 ("the '844 Patent"), titled SYSTEM AND METHOD FOR ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE, was issued to Shlomo Touboul and Nachshon Gal.  A true and correct copy of the '844 Patent is attached to this Complaint as Exhibit 1 and is incorporated by reference herein.

10.    All rights, title, and interest in the '844 Patent have been assigned to Finjan, who is the sole owner of the '844 Patent.  Finjan has been the sole owner of the '844 Patent since its issuance.

11.    The '844 Patent is generally directed toward computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by linking a security profile to such web-based content to facilitate the protection of computers and networks from malicious web-based content.

12.    On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), titled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul.  A true and correct copy of the '780 Patent is attached to this Complaint as Exhibit 2 and is incorporated by reference herein.

13.    All rights, title, and interest in the '780 Patent have been assigned to Finjan, who is the sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

14.    The '780 Patent is generally directed toward methods and systems for generating a Downloadable ID.  By generating an identification for each examined Downloadable, the system may allow for the Downloadable to be recognized without reevaluation.  Such recognition increases efficiency while also saving valuable resources, such as memory and computing power.

15.    On January 12, 2010, U.S. Patent No. 7,647,633 ("the '633 Patent"), titled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  A true and correct copy of the '633 Patent is attached to this Complaint as Exhibit 3 and is incorporated by reference herein.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

16.     All rights, title, and interest in the '633 Patent have been assigned to Finjan, who is the sole owner of the '633 Patent.  Finjan has been the sole owner of the '633 Patent since its issuance.

17.     The '633 Patent is generally directed toward computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.

18.     On November 3, 2009, U.S. Patent No. 7,613,926 ("the '926 Patent"), titled METHOD AND SYSTEM FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  A true and correct copy of the '926 Patent is attached to this Complaint as Exhibit 4 and is incorporated by reference herein.

19.     All rights, title, and interest in the '926 Patent have been assigned to Finjan, who is the sole owner of the '926 Patent.  Finjan has been the sole owner of the '926 Patent since its issuance.

20.     The '926 Patent is generally directed toward methods and systems for protecting a computer and a network from hostile downloadables.  One of the ways this is accomplished is by performing hashing on a downloadable in order to generate a downloadable ID, retrieving security profile data, and transmitting an appended downloadable or transmitting the downloadable with a representation of the downloadable security profile data.

21.     On March 20, 2012, U.S. Patent No. 8,141,154 ("the '154 Patent"), titled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '154 Patent is attached to this Complaint as Exhibit 5 and is incorporated by reference herein.

22.     All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent.  Finjan has been the sole owner of the '154 Patent since its issuance.

23.     The '154 Patent is generally directed toward a gateway computer protecting a client computer from dynamically generated malicious content.  One of the ways this is accomplished is by

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

using a content processor to process a first function and invoke a second function if a security

computer indicates that it is safe to invoke the second function.

24.     On March 18, 2014, U.S. Patent No. 8,677,494 ("the '494 Patent"), titled MALICIOUS

MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal

Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  A true and correct

copy of the '494 Patent is attached to this Complaint as Exhibit 6 and is incorporated by reference

herein.

25.     All rights, title, and interest in the '494 Patent have been assigned to Finjan, who is the

sole owner of the '494 Patent.  Finjan has been the sole owner of the '494 Patent since its issuance.

26.     The '494 Patent is generally directed toward a method and system for deriving security

profiles and storing the security profiles.  One of the ways this is accomplished is by deriving a

security profile for a downloadable, which includes a list of suspicious computer operations, and

storing the security profile in a database.

27.     On July 5, 2011, U.S. Patent No. 7,975,305 ("the '305 Patent"), titled METHOD AND

SYSTEM FOR ADAPTIVE RULE-BASED CONENT SCANNERS FOR DESKTOP COMPUTERS,

was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov,

and Amit Shaked.  A true and correct copy of the '305 Patent is attached to this Complaint as Exhibit 7

and is incorporated by reference herein.

28.     All rights, title, and interest in the '305 Patent have been assigned to Finjan, who is the

sole owner of the '305 Patent.  Finjan has been the sole owner of the '305 Patent since its issuance.

29.     The '305 Patent is generally directed toward network security and, in particular, rule

based scanning of web-based content for exploits.  One of the ways this is accomplished is by using

parser and analyzer rules to describe computer exploits as patterns of types of tokens.  Additionally,

the system provides a way to keep these rules updated.

30.     On July 17, 2012, U.S. Patent No. 8,225,408 ("the '408 Patent"), entitled METHOD

AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS, was issued to Moshe

Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov and Amit Shaked.  A

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

true and correct copy of the '408 Patent is attached to this First Supplemental Complaint as Exhibit 8 and is incorporated by reference herein.

31.     All rights, title, and interest in the '408 Patent have been assigned to Finjan, who is the sole owner of the '408 Patent.  Finjan has been the sole owner of the '408 Patent since its issuance.

32.     The '408 Patent is generally directed toward network security and, in particular, rule based scanning of web-based content for a variety of exploits written in different programming languages.  One of the ways this is accomplished is by expressing the exploits as patterns of tokens.  Additionally, the system provides a way to analyze these exploits by using a parse tree.

33.     The '844 Patent, the '780 Patent, the '633 Patent, the '926 Patent, the '154 Patent, the '494 Patent, the '305 Patent, and the '408 Patent, as described in paragraphs 9-32 above, are collectively referred to as the "Asserted Patents" herein.

## FINJAN'S NOTICE OF INFRINGEMENT TO DEFENDANT

34.     Finjan and Defendant's patent discussions date back to June 2014.  Finjan contacted Defendant on or about June 10, 2014, regarding a potential license to Finjan's patents.

35.     On or about July 2, 2014, Finjan provided Defendant with an exemplary claim chart detailing how Defendant's products relate to U.S. Patent Number 6,965,968 (the "'968 Patent").  In the email attaching that exemplary claim chart, Finjan told Defendant: "We believe a license to Finjan's patent portfolio could be beneficial to some [of] Juniper's security products and services.  Besides, we could also explore possible common interests relating to other patent collaborations such as co-investments or M&A activities in technology companies."  Finjan also offered to provide Defendant with additional exemplary claim charts, under a non-disclosure agreement, so that Defendant could evaluate Finjan's patent portfolio.

36.     On or about January 12, 2015, Finjan met with Defendant's Senior Director of IP, Litigation and Strategy regarding Defendant's products and how they relate to Finjan's patents.  Finjan again offered to enter into a non-disclosure agreement, so that Defendant could evaluate Finjan's patent portfolio in detail, but Defendant declined to enter into a non-disclosure agreement at that time.

COMPLAINT FOR PATENT INFRINGEMENT                         CASE NO.

37.     On or about February 13, 2015, Defendant sent a letter to Finjan listing ten patents that Defendant believed would be considered "prior art" to the '968 Patent.  Finjan contacted Defendant again on February 18, 2015, and February 20, 2015, in an attempt to follow up on Defendant's letter, but Defendant declined to respond to Finjan's February 20, 2015, email.

38.     Having heard no response from Defendant's Senior Director of IP, Litigation and Strategy, on or about September 30, 2015, Finjan sent a letter to Defendant distinguishing the ten patents that Defendant had identified as potential "prior art" and stating how those ten patents were not relevant to the '968 Patent.  Again, Defendant's Senior Director of IP, Litigation and Strategy declined to respond to Finjan's letter.

39.     On or about October 15, 2015, Finjan contacted Defendant's Deputy General Counsel to discuss Defendant's products and how they read on Finjan's patents.  Defendant's Deputy General Counsel referred Finjan back to Defendant's Senior Director of IP, Litigation and Strategy to continue licensing discussions.

40.     On or about November 24, 2015, Finjan spoke again with Defendant's Senior Director of IP, Litigation and Strategy by telephone, to discuss Defendant's products and how they relate to Finjan's patents.  During that telephone call, Defendant's Senior Director of IP, Litigation and Strategy indicated that he did not think Finjan was worth Defendant's time and he expressed no interest in understanding the analysis that Finjan had prepared regarding Defendant's products and how they relate to Finjan's patents.  Defendant's Senior Director of IP, Litigation and Strategy also repeatedly turned that telephone conversation toward the topic of litigation, referenced his own hypothetical deposition, refused to sign an non-disclosure agreement, and stated that if Finjan shared any more exemplary claim charts with him, he would share them with other entities.

41.     On or about February 2, 2016, Finjan contacted Defendant's Deputy General Counsel again to express concern that Defendant did not seem to be taking Finjan's efforts to engage in licensing discussions seriously, and to discuss how Defendant's products related to Finjan's patents.

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

42.     Despite Finjan's earnest and consistent efforts since June 2014, Defendant has refused to take a license to Finjan's patents.  At no time has Defendant provided any explanation as to how any of the Accused Products do not infringe any of the Asserted Patents.

**JUNIPER**

43.     Defendant makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize the SRX Series Services Gateways, Sky Advanced Threat Prevention ("Sky ATP"), Junos Space Security Director, and Contrail products.  *See*:

http://www.juniper.net/us/en/products-services/security/srx-series/;

http://www.juniper.net/us/en/products-services/security/sky-advanced-threat-prevention/;

http://www.juniper.net/us/en/products-services/security/security-director/; and

http://www.juniper.net/us/en/products-services/sdn/contrail/, attached hereto as Exhibits 9-12.

**SRX Gateways**

44.     Defendant's SRX Series Services Gateways are Defendant's next-generation gateway platforms designed for small, medium, and large enterprises.  Defendant's SRX Gateways include the: SRX110; SRX220; SRX300; SRX550; SRX1400; SRX1500; SRX3400; SRX3600; SRX4000; SRX5400; SRX5600; and SRX5800 gateway appliances, as well as the vSRX Virtual Firewall and cSRX Container Firewall (collectively, "SRX Gateways").  *See* http://www.juniper.net/us/en/products-services/security/srx-series/, attached hereto as Exhibit 9.  SRX Gateways perform malware detection by processing network traffic using static and dynamic analysis.  SRX Gateways integrate with Defendant's Sky ATP service for malware detection and with Junos Space Security Director to maintain databases and manage security policies across the network.



SRX Series Services Gateways deliver next generation firewall protection with application awareness and extensive user role-based control options plus best-of-breed UTM to protect and control your business assets. Next generation firewalls are able to perform full packet inspection and can apply security policies based on layer 7 information. This means you can create security policies based on the application running across your network, the user who is receiving or sending network traffic or the content that is traveling across your network to protect your environment against threats, manage how your network bandwidth is allocated, and control who has access to what.

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000281-en.pdf at 3, attached hereto as Exhibit 13.

| Feature | Feature Description |
|---|---|
| Antivirus | · Reputation-enhanced, cloud-based antivirus capabilities that detect and block spyware, adware, viruses, keyloggers, and other malware over POP3, HTTP, SMTP, and FTP protocols<br>· Service provided in cooperation with Sophos Labs, a leader in anti-malware technology |
| Web filtering | · Enhanced Web filtering, including extensive category options (90+ categories) and a real-time scorecard delivered in partnership with Websense, the leading Web security provider |
| Content filtering | · Effective inbound and outbound content filtering based on MIME type, file extension, and protocol commands |
| Antispam | · Multilayered spam protection, up-to-date phishing URL detection, standards-based S/MIME, Open PGP and TLS encryption, MIME type, and extension blockers provided in cooperation with Sophos Labs |

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000489-en.pdf at 2, attached hereto as Exhibit 14.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000281-en.pdf at 3 and 6-7, attached hereto as Exhibit 14.

## **Sky ATP**

45.     Defendant's Sky ATP is a cloud-based service that is integrated with SRX Gateways to provide "complete advanced malware protection" and deliver "a dynamic anti-malware solution that can adapt to an ever-changing threat landscape." http://www.juniper.net/us/en/products-services/security/sky-advanced-threat-prevention/, attached hereto as Exhibit 10; https://www.youtube.com/watch?v=efXR9F1WM80.  As shown below, SRX Gateway's integrate with Sky ATP to deliver inspection, inline malware blocking, and actionable reporting.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Figure 4: Sky ATP Use Cases

- Campus edge firewall—Sky ATP analyzes files downloaded from the Internet and protects end-user devices.
- Data center edge—Like the campus edge firewall, Sky ATP prevents infected files and application malware from running on your computers.
- Branch router—Sky ATP provides protection from split-tunneling deployments. A disadvantage of split-tunneling is that users can bypass security set in place by your company's infrastructure.

Sky ATP Admin Manual at 8, attached hereto as Exhibit 15.

46.    Sky ATP analyzes network traffic and extracts suspicious code for analysis across a broad range of files contained within this network traffic.  Sky ATP uses a pipeline approach to analyzing malware using cache lookups, traditional antivirus scanning, static analysis, and dynamic analysis using a sandbox.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Sky ATP Admin Manual at 9, attached hereto as Exhibit 15.

47.     As shown below, Sky ATP creates a file hash of incoming downloadables (using SHA256) and stores the hash value in a database.

**Cache Lookup**

When a file is analyzed, a file hash is generated, and the results of the analysis are stored in a database. When a file is uploaded to the Sky ATP cloud, the first step is to check whether this file has been looked at before. If it has, the stored verdict is returned to the SRX Series device and there is no need to re-analyze the file. In addition to files scanned by Sky ATP, information about common malware files is also stored to provide faster response.

Cache lookup is performed in real time. All other techniques are done offline. This means that if the cache lookup does not return a verdict, the file is sent to the client system while the Sky ATP cloud continues to examine the file using the remaining pipeline techniques. If a later analysis returns a malware verdict, then the file and host are flagged.

Sky ATP Admin Manual at 9, attached hereto as Exhibit 15.

48.     Sky ATP uses static analysis to examine files for suspicious operations, such as modifying the Windows registry or creating a file.  The output of the static analysis performed by Sky ATP is a security profile that is fed into Juniper's systems to protect an internal network and/or to allow for further analysis or intelligence.

COMPLAINT FOR PATENT INFRINGEMENT                      CASE NO.

**Static Analysis**

Static analysis examines files without actually running them. Basic static analysis is straightforward and fast, typically around 30 seconds. The following are examples of areas static analysis inspects:

- Metadata information—Name of the file, the vendor or creator of this file, and the original data the file was compiled on.
- Categories of instructions used—Is the file modifying the Windows registry? Is it touching disk I/O APIs?.

Sky ATP Admin Manual at 10, attached hereto as Exhibit 15.

49.     Sky ATP also uses dynamic analysis (e.g., sandboxing) to monitor and "record" the activity of a downloadable, including suspicious operations indicative of malware.  The output of the dynamic analysis performed by Sky ATP is a security profile that is fed into Juniper's systems to protect an internal network and/or allow for further analysis or intelligence.

**Dynamic Analysis**

The majority of the time spent inspecting a file is in dynamic analysis. With dynamic analysis, often called *sandboxing*, a file is studied as it is executed in a secure environment. During this analysis, an operating system environment is set up, typically in a virtual machine, and tools are started to monitor all activity. The file is uploaded to this environment and is allowed to run for several minutes. Once the allotted time has passed, the record of activity is downloaded and passed to the machine learning algorithm to generate a verdict.

Sophisticated malware can detect a sandbox environment due to its lack of human interaction, such as mouse movement. Sky ATP uses a number of *deception techniques* to trick the malware into determining this is a real user environment. For example, Sky ATP can:

- Generate a realistic pattern of user interaction such as mouse movement, simulating keystrokes, and installing and launching common software packages.
- Create fake high-value targets in the client, such as stored credentials, user files, and a realistic network with Internet access.
- Create vulnerable areas in the operating system.

Deception techniques by themselves greatly boost the detection rate while reducing false positives. They also boosts the detection rate of the sandbox the file is running in because they get the malware to perform more activity. The more the file runs the more data is obtained to detect whether it is malware.

Sky ATP Admin Manual at 10, attached hereto as Exhibit 15.

50.     The security profiles are fed into Juniper's systems to generate a "threat level" for each downloadable.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

**Threat Levels**

Sky ATP assigns a number between 0-10 to indicate the threat level of files scanned for malware and the threat level for infected hosts. See Table 4 on page 11.

Table 4: Threat Level Definitions

| Threat Level | Definition |
|---|---|
| 0 | Clean; no action is required. |
| 1 - 3 | Low threat level. |
| 4 - 6 | Medium threat level. |
| 7 -10 | High threat level. |

For more information on threat levels, see the Sky ATP Web UI online help.

Sky ATP Admin Manual at 11, attached hereto as Exhibit 15.

### Junos Space Security Director

51.     Defendant's Junos Space Security Director provides security policy management through a centralized interface that gives administrators security management and policy control, network-wide.  Junos Space Security Director integrates with Sky ATP, storing and using information gathered and reported by Sky ATP to learn about and respond to new threats.  With this information, Junos Space Security Director automatically updates policies and deploys new enforcements, thereby quarantining and tracking infected hosts to stop the progress of threats.



Figure 1: Junos Space Security Director dashboard

14

http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000332-en.pdf), at 1, attached hereto as Exhibit 16.

**Contrail**

52.   Defendant's Contrail system is a cloud-based security platform that allows users to apply security policies uniformly across multiple networking environments.  Contrail provides control over application traffic flow, enforces security policies, and selectively redirects suspicious network traffic to Defendant's SRX Gateways.  Contrail also provides deep insight into application interactions and uses machine learning to detect anomalies and take corrective action.

http://www.juniper.net/us/en/products-services/sdn/contrail/contrail-security/, attached hereto as Exhibit 17.

**JUNIPER'S INFRINGEMENT OF FINJAN'S PATENTS**

53.   Defendant has been and is now infringing, and will continue to infringe, the '844 Patent, the '780 Patent, the '633 Patent, the '926 Patent, the '154 Patent, the '494 Patent, the '305 Patent, and the '408 Patent (collectively, the "Asserted Patents") in this Judicial District and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the SRX Gateways, Sky ATP, and Junos Space Security Director products.

54.   In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Defendant indirectly infringes all the Asserted Patents by instructing, directing, and/or requiring others, including its customers, purchasers, users, and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Asserted Patents.

**COUNT I**
**(Direct Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(a))**

55.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

56.   Defendant has infringed Claims 1-44 of the '844 Patent in violation of 35 U.S.C. § 271(a).

57.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

58.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

59.     Defendant's infringement includes the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways and also the SRX Gateways using Sky ATP (collectively, the "'844 Accused Products").

60.     The '844 Accused Products embody the patented invention of the '844 Patent and infringe the '844 Patent because they practice a method of receiving by an inspector a downloadable, generating by the inspector (e.g., Sky ATP's static and dynamic analyzers) a first downloadable security profile that identifies suspicious code in the received downloadable, and linking by the inspector the first downloadable security profile to the downloadable before a web server makes the downloadable available to web clients.  *See* Sky ATP Admin Manual) at 9-11, attached hereto as Exhibit 15.  For example, as shown below, the '844 Accused Products provide gateway security to end users, where incoming downloadables (e.g., PDFs with JavaScript, EXE files, or JavaScript embedded within an HTML file) are received by the '844 Products.



Figure 3: Inspecting Inbound Files for Malware

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

| Step | Description |
|------|-------------|
| 1 | A client system behind an SRX Series devices requests a file download from the Internet. The SRX Series device forwards that request to the appropriate server. |
| 2 | The SRX Series device receives the downloaded file and checks its security profile to see if any additional action must be performed. |
| 3 | The downloaded file type is on the list of files that must be inspected and is sent to the cloud for analysis. |
| 4 | Sky ATP has inspected this file before and has the analysis stored in cache. In this example, the file is not malware and the verdict is sent back to the SRX Series device. |
| 5 | Based on user-defined policies and because this file is not malware, the SRX Series device sends the file to the client. |

For outbound traffic, the SRX Series device monitors traffic that matches C&C feeds it receives, blocks these C&C requests, and reports them to Sky ATP. A list of infected hosts is available so that the SRX Series device can block inbound and outbound traffic.

*See* http://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-about.html at 3-4, attached hereto as Exhibit 18.

61.     Sky ATP generates a downloadable security profile that analyzes suspicious behavior and captures a list of suspicious computer operations that are performed by the downloadable.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

https://www.youtube.com/watch?v=1QmXh8nDIYg.

## Dynamic Analysis

The majority of the time spent inspecting a file is in dynamic analysis. With dynamic analysis, often called *sandboxing*, a file is studied as it is executed in a secure environment. During this analysis, an operating system environment is set up, typically in a virtual machine, and tools are started to monitor all activity. The file is uploaded to this environment and is allowed to run for several minutes. Once the allotted time has passed, the record of activity is downloaded and passed to the machine learning algorithm to generate a verdict.

Sophisticated malware can detect a sandbox environment due to its lack of human interaction, such as mouse movement. Sky ATP uses a number of *deception techniques* to trick the malware into determining this is a real user environment. For example, Sky ATP can:

- Generate a realistic pattern of user interaction such as mouse movement, simulating keystrokes, and installing and launching common software packages.
- Create fake high-value targets in the client, such as stored credentials, user files, and a realistic network with Internet access.
- Create vulnerable areas in the operating system.

Deception techniques by themselves greatly boost the detection rate while reducing false positives. They also boosts the detection rate of the sandbox the file is running in because they get the malware to perform more activity. The more the file runs the more data is obtained to detect whether it is malware.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 2, attached hereto as Exhibit 19.

1

2

62.     For example, Sky ATP identifies registry operations and certain suspicious operations captured during dynamic and static analysis of the downloadable.

3

4

## Static Analysis

5

6

Static analysis examines files without actually running them. Basic static analysis is straightforward and fast, typically around 30 seconds. The following are examples of areas static analysis inspects:

7

8

- Metadata information—Name of the file, the vendor or creator of this file, and the original data the file was compiled on.

9

- Categories of instructions used—Is the file modifying the Windows registry? Is it touching disk I/O APIs?.

10

- File entropy—How random is the file? A common technique for malware is to encrypt portions of the code and then decrypt it during runtime. A lot of encryption is a strong indication a this file is malware.

11

12

The output of the static analysis is fed into the machine learning algorithm to improve the verdict accuracy.

13

14

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 1-2, attached hereto as Exhibit 19.

15

16

63.     Sky ATP links the downloadable security profile to the downloadable before it is made available to the client.  For example, Sky ATP uses rules to determine a "verdict" on whether the content is malicious, and links the downloadable security profile to the downloadable to prevent access to the downloadable via a blocking mechanism.

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Sky ATP uses a pipeline approach to analyzing and detecting malware. If an analysis reveals that the file is absolutely malware, it is not necessary to continue the pipeline to further examine the malware. See Figure 1.

*Figure 1: Example Sky ATP Pipeline Approach for Analyzing Malware*



Each analysis technique creates a verdict number, which is combined to create a final verdict number between 1 and 10. A verdict number is a score or threat level. The higher the number, the higher the malware threat. The SRX Series device compares this verdict number to the policy settings and either permits or denies the session. If the session is denied, a reset packet is sent to the client and the packets are dropped from the server.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 1, attached hereto as Exhibit 19.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1
2
3
4
5
6
7
8
9
10
11



12
13

Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

14

https://www.youtube.com/watch?v=1QmXh8nDIYg.

15      64.     SRX Gateways also infringe the '844 Patent without the use of Sky ATP, because they

16    receive downloadables, inspect the downloadables to determine if they contain suspicious code or

17    "potentially malicious content," generate a first downloadable security profile that identifies the

18    "potentially malicious content," and link that first downloadable security profile to the downloadable

19    before it is made available to a client (e.g., "SRX extracts potentially malicious objects and files" and

20    "SRX blocks known malicious file downloads").  For example, as shown below, SRX Gateways

21    receive downloadables, perform a full packet inspection on the downloadables, and apply security

22    policies based on that inspection.

23
24
25
26
27
28

21



SRX Series Services Gateways deliver next generation firewall protection with application awareness and extensive user role-based control options plus best-of-breed UTM to protect and control your business assets. Next generation firewalls are able to perform full packet inspection and can apply security policies based on layer 7 information. This means you can create security policies based on the application running across your network, the user who is receiving or sending network traffic or the content that is traveling across your network to protect your environment against threats, manage how your network bandwidth is allocated, and control who has access to what.

Figure 1: Firewalls, zones, and policies

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000281-en.pdf at 3, attached hereto as Exhibit 13.

| Feature | Feature Description |
|---------|---------------------|
| Antivirus | · Reputation-enhanced, cloud-based antivirus capabilities that detect and block spyware, adware, viruses, keyloggers, and other malware over POP3, HTTP, SMTP, and FTP protocols<br>· Service provided in cooperation with Sophos Labs, a leader in anti-malware technology |
| Web filtering | · Enhanced Web filtering, including extensive category options (90+ categories) and a real-time scorecard delivered in partnership with Websense, the leading Web security provider |
| Content filtering | · Effective inbound and outbound content filtering based on MIME type, file extension, and protocol commands |
| Antispam | · Multilayered spam protection, up-to-date phishing URL detection, standards-based S/MIME, Open PGP and TLS encryption, MIME type, and extension blockers provided in cooperation with Sophos Labs |

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000489-en.pdf at 2, attached hereto as Exhibit 14.

65.     SRX Gateways identify "attack objects," which are downloadables that contain patterns of known attacks that can be used to compromise a network.  SRX Gateways generate and log a first downloadable security profile called a "signature" that identifies the attack objects or suspicious code.



**attack objects**

Object that contains patterns of known attacks that can be used to compromise a network. Use attack objects in your firewall rules to enable security devices to detect known attacks and prevent malicious traffic from entering your network.

https://www.juniper.net/documentation/en_US/junos-space15.2/topics/task/operational/junos-space-ips-signature-creating.html, attached hereto as Exhibit 20.



https://www.juniper.net/documentation/en_US/junos-space15.1/topics/task/operational/junos-space-security-design-ips-signature-creating.html, attached hereto as Exhibit 25.

66.     SRX Gateways link that first downloadable security profile or signature to the downloadable before it is made available to a client (e.g., "SRX blocks known malicious file downloads").

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

NGFW/UTM[3]

- Intrusion Prevention System (IPS)
  - Protocol anomaly detection
  - Stateful protocol signatures
  - Intrusion prevention system (IPS) attack pattern obfuscation
  - User role-based policies
- Customer signatures creation
- Multiple times a week and emergency updates
- AppSecure
  - AppTrack (application visibility and tracking)
  - AppFirewall (policy enforcement by application name)
  - Custom signatures
  - AppQoS (network traffic prioritization and bandwidth management)
  - Dynamic signature updates
  - User-based application policy enforcement
- Antivirus
  - Express AV (stream-based AV, not available on SRX100 and SRX110)
  - File-based antivirus
    - Signature database
    - Protocols scanned: POP3, HTTP, SMTP, IMAP, FTP

- Antispyware
- Anti-adware
- Antikeylogger
  - Cloud-based antivirus
- Antispam
- Integrated enhanced Web filtering
  - Category granularity (90+ categories)
  - Real time threat score
- Redirect Web filtering
- Content Security Accelerator in SRX210 high memory, SRX220, SRX240, SRX550, and SRX650[4]
- ExpressAV option in SRX210 high memory, SRX220 high memory, SRX240, SRX550, and SRX650[4]
- Content filtering
  - Based on MIME type, file extension, and protocol commands

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000281-en.pdf at 6-7, attached hereto as Exhibit 13.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

*See* https://www.youtube.com/watch?v=1QmXh8nDIYg.

67.     Defendant's infringement of the '844 Patent has injured Finjan in an amount to be proven at trial.

68.     Defendant has been long-aware of Finjan's patents, including the '844 Patent, and continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof.  On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

69.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

70.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '844 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT II
### (Indirect Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(b))

71.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

72.     Defendant has induced infringement of one or more claims of the '844 Patent under 35 U.S.C. § 271(b).

73.     In addition to directly infringing the '844 Patent, Defendant indirectly infringes the '844 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including its customers, purchasers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '844 Patent, where all the steps of the method claims are performed by either Defendant, its customers, purchasers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users or developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '844 Patent, including at least Claims 1-14 and 23-31.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

74.     Defendant knowingly and actively aided and abetted the direct infringement of the '844 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '844 Accused Products.  Such instruction and encouragement includes, but is not limited to, advising third parties to use the '844 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '844 Patent, advertising and promoting the use of the '844 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '844 Accused Products in an infringing manner.

75.     Defendant updates and maintains an HTTP site called the "Technical Assistance Center" with Defendant's installation guides, troubleshooting guides, user guides, and operating instructions for Defendant's accused products.  *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

## COUNT III
### (Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))

76.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

77.     Defendant has infringed Claims 1-18 of the '780 Patent in violation of 35 U.S.C. § 271(a).

78.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

79.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

80.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways using Sky ATP (collectively, the "'780 Accused Products").

81.     The '780 Accused Products embody the patented invention of the '780 Patent and infringe the '780 Patent because they practice a method of obtaining a downloadable that includes one

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

or more references to software components required to be executed by the downloadable, fetching at least one software component required to be executed by the downloadable, and performing a hashing function on the downloadable and the fetched software components to generate a Downloadable ID. For example, as shown below, the '780 Accused Products provide gateway security to end users, where they receive downloadables that include one or more references to executable software components, including .exe files, .pdf files, and other downloadables that might exhibit malicious behavior.  The '780 Accused Products will also fetch at least one software component required to be executed by the downloadable.



Figure 1: Example Sky ATP Pipeline Approach for Analyzing Malware

Each analysis technique creates a verdict number, which is combined to create a final verdict number between 1 and 10. A verdict number is a score or threat level. The higher the number, the higher the malware threat. The SRX Series device compares this verdict number to the policy settings and either permits or denies the session. If the session is denied, a reset packet is sent to the client and the packets are dropped from the server.

Sky ATP Admin Manual at 9, attached hereto as Exhibit 15.

      82.     The '780 Accused Products perform a hashing function (such as MD-5, SHA1, or SHA256) on the downloadable to generate a downloadable ID, as shown below.  The '780 Accused Products hash files and components that are referenced by the downloadable as part of creating a downloadable ID.

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

# Cache Lookup

When a file is analyzed, a file hash is generated, and the results of the analysis are stored in a database. When a file is uploaded to the Sky ATP cloud, the first step is to check whether this file has been looked at before. If it has, the stored verdict is returned to the SRX Series device and there is no need to re-analyze the file. In addition to files scanned by Sky ATP, information about common malware files is also stored to provide faster response.

Cache lookup is performed in real time. All other techniques are done offline. This means that if the cache lookup does not return a verdict, the file is sent to the client system while the Sky ATP cloud continues to examine the file using the remaining pipeline techniques. If a later analysis returns a malware verdict, then the file and host are flagged.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 1, attached hereto as Exhibit 19.

| GET /v1/skyatp/lookup/hash/{hash_string} | | | | Lookup sample malware score by hash. |
| Tags: HashLookup | | | | |

**DESCRIPTION**

Lookup sample malware score by hash (sha256). Optional full scanning report may be requested.

**REQUEST PARAMETERS**

| Name | Description | Type | Data type | |
|------|-------------|------|-----------|---|
| hash_string | Sample hash. Only SHA256 is supported at this time. | path | *string* (64 to 64 chars) | required |
| full_report | Whether to return a full scanning report. This should be set to true if user wants to retrieve a detailed sample analysis report in JSON format. | query | *boolean* | |

*See* http://www.juniper.net/documentation/en_US/release-independent/sky-atp/information-products/topic-collections/sky-atp-open-apis.html#operation--v1-skyatp-lookup-hash--hash_string--get) at 2, attached hereto as Exhibit 23.

83.    Defendant's infringement of the '780 Patent has injured Finjan in an amount to be proven at trial.

84.    Defendant has been long-aware of Finjan's patents, including the '780 Patent, and has continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

85.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

86.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '780 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV
### (Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))

87.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

88.     Defendant has induced infringement of at least Claims 1-8 of the '780 Patent under 35 U.S.C. § 271(b).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

89.     In addition to directly infringing the '780 Patent, Defendant indirectly infringes the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent, where all the steps of the method claims are performed by either Defendant or its customers, purchasers, users and developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '780 Patent, including Claims 1-8.

90.     Defendant knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '780 Accused Products.  Such instruction and encouragement includes, but is not limited to, advising third parties to use the '780 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '780 Patent, advertising and promoting the use of the '780 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '780 Accused Products in an infringing manner.

91.     Defendant updates and maintains an HTTP site with Defendant's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendant's offerings.  *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

## COUNT V
### (Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))

92.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

93.     Defendant has infringed and continues to infringe Claims 1-41 of the '633 Patent in violation of 35 U.S.C. § 271(a).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

94.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

95.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

96.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways using Sky ATP (collectively, the "'633 Accused Products").

97.     The '633 Accused Products embody the patented invention of the '633 Patent and infringe the '633 Patent because they practice a method and a system of receiving downloadable information, determining whether that the downloadable information includes executable code, and transmitting mobile protection code to at least one information destination of the downloadable information if the downloadable information is determined to include executable code.  For example, as shown below, the '633 Accused Products provide gateway security to end users, where they receive downloadable information and scan this downloadable information to determine whether it contains executable code.  If the downloadable information includes executable code, mobile protection code and the executable code are sent to an information destination, such as the "Sky ATP Cloud" or Sky ATP Sandbox for processing within a sandbox.

98.     The Sky ATP cloud platform will analyze executable code and create executable mobile protection code used within the virtual machine or sandbox described below.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Sky ATP uses a pipeline approach to analyzing and detecting malware. If an analysis reveals that the file is absolutely malware, it is not necessary to continue the pipeline to further examine the malware. See Figure 1.

*Figure 1: Example Sky ATP Pipeline Approach for Analyzing Malware*



Each analysis technique creates a verdict number, which is combined to create a final verdict number between 1 and 10. A verdict number is a score or threat level. The higher the number, the higher the malware threat. The SRX Series device compares this verdict number to the policy settings and either permits or denies the session. If the session is denied, a reset packet is sent to the client and the packets are dropped from the server.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 1, attached as Exhibit 19.



COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

*See* http://www.juniper.net/us/en/products-services/security/sky-advanced-threat-prevention/, attached hereto as Exhibit 10; https://www.youtube.com/watch?v=efXR9F1WM80.

99. The '633 Accused Products can use mobile protection code to quarantine the infected file or host.



*See*  http://www.juniper.net/us/en/products-services/security/sky-advanced-threat-prevention/,  attached hereto as Exhibit 10; https://www.youtube.com/watch?v=efXR9F1WM80.

100. The SRX Gateways also infringe the '633 Patent without the use of Sky ATP, because these products receive downloadable information, determine whether it contains executable code, and transmit mobile protection code to at least one information destination (e.g., Sky ATP) if the downloadable has executable code.

https://www.juniper.net/documentation/en_US/junos-space15.2/topics/task/operational/junos-space-ips-signature-creating.html, attached hereto as Exhibit 20.

### NGFW/UTM[3]

· Intrusion Prevention System (IPS)
  - Protocol anomaly detection
  - Stateful protocol signatures
  - Intrusion prevention system (IPS) attack pattern obfuscation
  - User role-based policies
· Customer signatures creation
· Multiple times a week and emergency updates
· AppSecure
  - AppTrack (application visibility and tracking)
  - AppFirewall (policy enforcement by application name)
  - Custom signatures
  - AppQoS (network traffic prioritization and bandwidth management)
  - Dynamic signature updates
  - User-based application policy enforcement
· Antivirus
  - Express AV (stream-based AV, not available on SRX100 and SRX110)
  - File-based antivirus
    · Signature database
    · Protocols scanned: POP3, HTTP, SMTP, IMAP, FTP

    · Antispyware
    · Anti-adware
    · Antikeylogger
  - Cloud-based antivirus
· Antispam
· Integrated enhanced Web filtering
  - Category granularity (90+ categories)
  - Real time threat score
· Redirect Web filtering
· Content Security Accelerator in SRX210 high memory, SRX220, SRX240, SRX550, and SRX650[4]
· ExpressAV option in SRX210 high memory, SRX220 high memory, SRX240, SRX550, and SRX650[4]
· Content filtering
  - Based on MIME type, file extension, and protocol commands

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000281-en.pdf at 6-7, attached hereto as Exhibit 13.



Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1   *See* https://www.youtube.com/watch?v=1QmXh8nDIYg.

2   101.   As a result of Defendant's unlawful activities, Finjan has suffered and will continue to

3   suffer irreparable harm for which there is no adequate remedy at law.  Finjan and Defendant both

4   compete in the security software space, as described for example in paragraphs 7-8 and 34-52 above.

5   And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs

6   7-8 and 34-42 above.  Defendant's continued infringement of the Asserted Patents causes harm to

7   Finjan in the form of price erosion, loss of goodwill, damage to reputation, loss of business

8   opportunities, inadequacy of money damages, and direct and indirect competition.  Monetary damages

9   are insufficient to compensate Finjan for these harms.  Accordingly, Finjan is entitled to preliminary

10  and/or permanent injunctive relief.

11  102.   Defendant's infringement of the '633 Patent has injured and continues to injure Finjan

12  in an amount to be proven at trial.

13  103.   Defendant has been long-aware of Finjan's patents, including the '633 Patent, and has

14  continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed

15  Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof.

16  On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents

17  to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to

18  engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining

19  Defendant's infringement of each claim of a representative patent, element-by-element.

20  104.   Even after being shown that its products infringe Finjan's patents, on information and

21  belief Defendant has made no effort to design its products or services around Finjan's patents, in order

22  to avoid infringement.  Instead, on information and belief Defendant incorporated infringing

23  technology into additional products, such as those identified in this complaint.  Defendant was

24  dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed

25  more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's

26  products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent

27

28

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

105.   Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '633 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI
### (Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(b))

106.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

107.   Defendant has induced and continues to induce infringement of at least Claims 1-7, 14-20, 28-33, and 42-43 of the '633 Patent under 35 U.S.C. § 271(b).

108.   In addition to directly infringing the '633 Patent, Defendant indirectly infringes the '633 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '633 Patent, where all the steps of the method claims are performed by either Defendant or its customers, purchasers, users and developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '633 Patent, including Claims 1-7, 14-20, 28-33, and 42-43.

109.   Defendant knowingly and actively aided and abetted the direct infringement of the '633 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '633 Accused Products.  Such instruction and encouragement includes, but is not limited to, advising

37

third parties to use the '633 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '633 Patent, advertising and promoting the use of the '633 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '633 Accused Products in an infringing manner.

110. Defendant updates and maintains an HTTP site called the "Technical Assistance Center" with Defendant's installation guides, troubleshooting guides, user guides, and operating instructions for Defendant's accused products. *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

## COUNT VII
### (Direct Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(a))

111. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

112. Defendant has infringed Claims 1-30 of the '926 Patent in violation of 35 U.S.C. § 271(a).

113. Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

114. Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

115. Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways using Sky ATP (collectively, the "'926 Accused Products").

116. The '926 Accused Products embody the patented invention of the '926 Patent and infringe the '926 Patent because they practice a method and a system for protecting a computer and a network from hostile downloadables. One of the ways this is accomplished is by performing hashing on a downloadable in order to generate a downloadable ID, retrieving security profile data, and transmitting an appended downloadable or transmitting the downloadable with a representation of the

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

downloadable security profile data.  For example, as shown below, the '926 Accused Products provide gateway security to end users, where they receive downloadables and generate downloadable identifiers such as hashes.

## Cache Lookup

When a file is analyzed, a file hash is generated, and the results of the analysis are stored in a database. When a file is uploaded to the Sky ATP cloud, the first step is to check whether this file has been looked at before. If it has, the stored verdict is returned to the SRX Series device and there is no need to re-analyze the file. In addition to files scanned by Sky ATP, information about common malware files is also stored to provide faster response.

Cache lookup is performed in real time. All other techniques are done offline. This means that if the cache lookup does not return a verdict, the file is sent to the client system while the Sky ATP cloud continues to examine the file using the remaining pipeline techniques. If a later analysis returns a malware verdict, then the file and host are flagged.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 1, attached hereto as Exhibit 19.

117.     As shown below, the '926 Accused Products will perform a hash lookup using a SHA256 hash value.

**GET /v1/skyatp/lookup/hash/{hash_string}**     Lookup sample malware score by hash.
Tags: HashLookup

**DESCRIPTION**

Lookup sample malware score by hash (sha256). Optional full scanning report may be requested.

**REQUEST PARAMETERS**

| Name | Description | Type | Data type |
|------|-------------|------|-----------|
| hash_string | Sample hash. Only SHA256 is supported at this time. | path | *string* (64 to 64 chars)   `required` |
| full_report | Whether to return a full scanning report. This should be set to true if user wants to retrieve a detailed sample analysis report in JSON format. | query | *boolean* |

http://www.juniper.net/documentation/en_US/release-independent/sky-atp/information-products/topic-collections/sky-atp-open-apis.html#operation--v1-skyatp-lookup-hash--hash_string-get) at 2, attached hereto as Exhibit 23.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

118.    The '926 Accused Products will retrieve the downloadable security profile data from a database, such as a database containing the "full scanning report" or data identifying the malware type, and requesting a sample submission.  The '926 Accused Products will retrieve that data and determine if it is necessary to continue analysis by sending both the downloadable and a representation of the downloadable data to for further dynamic analysis.

| Step | Description |
|------|-------------|
| 1 | A client system behind an SRX Series devices requests a file download from the Internet. The SRX Series device forwards that request to the appropriate server. |
| 2 | The SRX Series device receives the downloaded file and checks its security profile to see if any additional action must be performed. |
| 3 | The downloaded file type is on the list of files that must be inspected and is sent to the cloud for analysis. |
| 4 | Sky ATP has inspected this file before and has the analysis stored in cache. In this example, the file is not malware and the verdict is sent back to the SRX Series device. |
| 5 | Based on user-defined policies and because this file is not malware, the SRX Series device sends the file to the client. |

For outbound traffic, the SRX Series device monitors traffic that matches C&C feeds it receives, blocks these C&C requests, and reports them to Sky ATP. A list of infected hosts is available so that the SRX Series device can block inbound and outbound traffic.

*See*  http://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-about.html at 4, attached hereto as Exhibit 18.

COMPLAINT FOR PATENT INFRINGEMENT                         CASE NO.



Figure 1: Example Sky ATP Pipeline Approach for Analyzing Malware

Each analysis technique creates a verdict number, which is combined to create a final verdict number between 1 and 10. A verdict number is a score or threat level. The higher the number, the higher the malware threat. The SRX Series device compares this verdict number to the policy settings and either permits or denies the session. If the session is denied, a reset packet is sent to the client and the packets are dropped from the server.

https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 1, attached hereto as Exhibit 19.

119. The '926 Accused Products will transmit the representation of the downloadable security profile data and the downloadable to a destination computer, such as the sandbox within the Sky ATP cloud, using sample submission.

Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

https://www.youtube.com/watch?v=1QmXh8nDIYg.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

http://www.juniper.net/documentation/en_US/release-independent/sky-atp/information-products/topic-collections/sky-atp-open-apis.html#operation--v1-skyatp-submit-sample-post at 3-4, attached hereto as Exhibit 26.

120.    Defendant's infringement of the '926 Patent has injured Finjan in an amount to be proven at trial.

121.    Defendant has been long-aware of Finjan's patents, including the '926 Patent, and has continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof.  On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

122.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

123.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '926 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII
### (Indirect Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(b))

124.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

125.     Defendant has induced and continues to induce infringement of at least Claims 1-7 and 15-21 of the '926 Patent under 35 U.S.C. § 271(b).

126.     In addition to directly infringing the '926 Patent, Defendant indirectly infringes the '926 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims,

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

either literally or under the doctrine of equivalents, of the '926 Patent, where all the steps of the method claims are performed by either Defendant, its customers, purchasers, users, and developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users, and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '926 Patent, including Claims 1-7 and 15-21.

127.    Defendant knowingly and actively aided and abetted the direct infringement of the '926 Patent by instructing and encouraging its customers, purchasers, users, and developers to use the '926 Accused Products.  Such instruction and encouragement includes, but is not limited to, advising third parties to use the '926 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the ''926 Patent, advertising and promoting the use of the '926 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '926 Accused Products in an infringing manner.

128.    Defendant updates and maintains an HTTP site called the "Technical Assistance Center" with Defendant's installation guides, troubleshooting guides, user guides, and operating instructions for Defendant's accused products.  *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

## COUNT IX
### (Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))

129.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

130.    Defendant has infringed and continues to infringe Claims 1-12 of the '154 Patent in violation of 35 U.S.C. § 271(a).

131.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

132.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

133.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways using Sky ATP (collectively, the "'154 Accused Products").

134.     The '154 Accused Products embody the patented invention of the '154 Patent and infringe the '154 Patent because they utilize and/or incorporate a system for protecting a computer from dynamically generated malicious content, comprising: a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe; a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked; and a receiver for receiving an indication from the security computer whether it is safe to invoke the second function with the input.

135.     For example, as shown below, the '154 Accused Products act as a content processor to process content (such as obfuscated JavaScript) received over the network, where that content includes a call to a first function that contains an input.  The '154 Accused Products extract potentially malicious objects and files and perform a lookup to Sky ATP by transmitting this input to determine whether it is safe to invoke.

45

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



https://i.ytimg.com/vi/1QmXh8nDIYg/maxresdefault.jpg (showing that Appliance Products will analyze the content for embedded code such as JavaScript), attached hereto as Exhibit 28.

Sky ATP Admin Manual at 9, attached hereto as Exhibit 15.

136.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Finjan and Defendant both compete in the security software space, as described for example in paragraphs 7-8 and 34-52 above. And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs 7-8 and 34-42 above.  Defendant's continued infringement of the Asserted Patents causes harm to Finjan in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.  Monetary damages

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

are insufficient to compensate Finjan for these harms.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

137.    Defendant's infringement of the '154 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

138.    Defendant has been long-aware of Finjan's patents, including the '154 Patent, and has continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof.  On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

139.    Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

140.    Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X
### (Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))

141.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

142.    Defendant has infringed Claims 3-5 and 7-18 of the '494 Patent in violation of 35 U.S.C. § 271(a).

143.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

144.    Defendant acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

145.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways, Sky ATP, and Junos Space Security Director (collectively, the "'494 Accused Products").

146.    The '494 Accused Products embody the patented invention of the '494 Patent and infringe the '494 Patent because they practice a computer-based method comprised of receiving an incoming downloadable, deriving security profile data for the downloadable, including a list of suspicious computer operations that may be attempted by the downloadable, and storing the downloadable security profile data in a database.  For example, as shown below, the '494 Accused Products provide gateway security to end users, where incoming downloadables are received by the '494 Products.  Sky ATP derives security profile data for the downloadable, which includes a list of suspicious computer operations that may be attempted by the downloadable.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Figure 3: Inspecting Inbound Files for Malware

| Step | Description |
|------|-------------|
| 1 | A client system behind an SRX Series devices requests a file download from the Internet. The SRX Series device forwards that request to the appropriate server. |
| 2 | The SRX Series device receives the downloaded file and checks its security profile to see if any additional action must be performed. |
| 3 | The downloaded file type is on the list of files that must be inspected and is sent to the cloud for analysis. |
| 4 | Sky ATP has inspected this file before and has the analysis stored in cache. In this example, the file is not malware and the verdict is sent back to the SRX Series device. |
| 5 | Based on user-defined policies and because this file is not malware, the SRX Series device sends the file to the client. |

For outbound traffic, the SRX Series device monitors traffic that matches C&C feeds it receives, blocks these C&C requests, and reports them to Sky ATP. A list of infected hosts is available so that the SRX Series device can block inbound and outbound traffic.

*See* http://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-about.html at 3-4, attached hereto as Exhibit 18.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## Static Analysis

Static analysis examines files without actually running them. Basic static analysis is straightforward and fast, typically around 30 seconds. The following are examples of areas static analysis inspects:

- Metadata information—Name of the file, the vendor or creator of this file, and the original data the file was compiled on.
- Categories of instructions used—Is the file modifying the Windows registry? Is it touching disk I/O APIs?.
- File entropy—How random is the file? A common technique for malware is to encrypt portions of the code and then decrypt it during runtime. A lot of encryption is a strong indication a this file is malware.

The output of the static analysis is fed into the machine learning algorithm to improve the verdict accuracy.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html, at 1-2, attached hereto as Exhibit 19.

## Dynamic Analysis

The majority of the time spent inspecting a file is in dynamic analysis. With dynamic analysis, often called *sandboxing*, a file is studied as it is executed in a secure environment. During this analysis, an operating system environment is set up, typically in a virtual machine, and tools are started to monitor all activity. The file is uploaded to this environment and is allowed to run for several minutes. Once the allotted time has passed, the record of activity is downloaded and passed to the machine learning algorithm to generate a verdict.

Sophisticated malware can detect a sandbox environment due to its lack of human interaction, such as mouse movement. Sky ATP uses a number of *deception techniques* to trick the malware into determining this is a real user environment. For example, Sky ATP can:

- Generate a realistic pattern of user interaction such as mouse movement, simulating keystrokes, and installing and launching common software packages.
- Create fake high-value targets in the client, such as stored credentials, user files, and a realistic network with Internet access.
- Create vulnerable areas in the operating system.

Deception techniques by themselves greatly boost the detection rate while reducing false positives. They also boosts the detection rate of the sandbox the file is running in because they get the malware to perform more activity. The more the file runs the more data is obtained to detect whether it is malware.

*See* https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-malware-analyze.html at 2, attached hereto as Exhibit 19.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

147. Sky ATP stores the downloadable security profile data in databases and provides reports of that data.



Modified: 2017-05-10

148. Additionally, Defendant's Junos Space Security Director product stores the downloadable security profile data in a database and provides reports of that data.



By default, threat levels 4 and above are shown. Click the file's signature to view more information, such as file details, what other malware scanners say about this file, and a complete list of hosts that downloaded this file. See Figure 2.



Figure 2: Viewing Scanned File Details

For more information on the file scan details page, see the Web UI tooltips and online help.

*See* http://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/reference/general/sky-atp-filescan-overview.html at 2, attached hereto as Exhibit 24.

149. SRX Gateways also create a security profile without the use of Sky ATP, because they receive downloadables, scan downloadables to determine if they contain suspicious operations or "potentially malicious content," generate a first downloadable security profile that identifies the "potentially malicious content" (e.g., "SRX extracts potentially malicious objects and files" and "SRX blocks known malicious file downloads"). For example, as shown below, SRX Gateways receive downloadables, perform a full packet inspection on the downloadables, and apply security policies based on that inspection.



SRX Series Services Gateways deliver next generation firewall protection with application awareness and extensive user role-based control options plus best-of-breed UTM to protect and control your business assets. Next generation firewalls are able to perform full packet inspection and can apply security policies based on layer 7 information. This means you can create security policies based on the application running across your network, the user who is receiving or sending network traffic or the content that is traveling across your network to protect your environment against threats, manage how your network bandwidth is allocated, and control who has access to what.

Figure 1: Firewalls, zones, and policies

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000281-en.pdf at 3, attached hereto as Exhibit 13.

| Feature | Feature Description |
|---|---|
| Antivirus | · Reputation-enhanced, cloud-based antivirus capabilities that detect and block spyware, adware, viruses, keyloggers, and other malware over POP3, HTTP, SMTP, and FTP protocols<br>· Service provided in cooperation with Sophos Labs, a leader in anti-malware technology |
| Web filtering | · Enhanced Web filtering, including extensive category options (90+ categories) and a real-time scorecard delivered in partnership with Websense, the leading Web security provider |
| Content filtering | · Effective inbound and outbound content filtering based on MIME type, file extension, and protocol commands |
| Antispam | · Multilayered spam protection, up-to-date phishing URL detection, standards-based S/MIME, Open PGP and TLS encryption, MIME type, and extension blockers provided in cooperation with Sophos Labs |

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000489-en.pdf at 2, attached hereto as Exhibit 14.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

150.    SRX Gateways identify "attack objects," which are downloadables that contain patterns of known attacks that can be used to compromise a network.  SRX Gateways generate and log a first downloadable security profile called a "signature" that identifies the attack objects or suspicious code.

**attack objects**

Object that contains patterns of known attacks that can be used to compromise a network. Use attack objects in your firewall rules to enable security devices to detect known attacks and prevent malicious traffic from entering your network.

https://www.juniper.net/documentation/en_US/junos-space15.2/topics/task/operational/junos-space-ips-signature-creating.html, attached hereto as Exhibit 20.

151.    SRX Gateways store these security profiles in its internal databases.



*Figure 1: View All IPS Signatures Page*

https://www.juniper.net/documentation/en_US/junos-space15.1/topics/task/operational/junos-space-security-design-ips-signature-creating.html, attached hereto as Exhibit 25.

152.    Defendant's infringement of the '494 Patent has injured Finjan in an amount to be proven at trial.

153.    Defendant has been long-aware of Finjan's patents, including the '494 Patent, and has continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof. On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

154.    Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

155.    Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '494 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT XI
### (Indirect Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(b))

156.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

157.    Defendant has induced infringement of at least Claims 3-5 and 7-9 of the '494 Patent under 35 U.S.C. § 271(b).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

158.     In addition to directly infringing the '494 Patent, Defendant indirectly infringes the '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '494 Patent, where all the steps of the method claims are performed by either Defendant, its customers, purchasers, users, and developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users, and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '494 Patent, including Claims 3-5 and 7-9.

159.     Defendant knowingly and actively aided and abetted the direct infringement of the '494 Patent by instructing and encouraging its customers, purchasers, users, and developers to use the '494 Accused Products.  Such instruction and encouragement includes, but is not limited to, advising third parties to use the '494 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '494 Patent, advertising and promoting the use of the '494 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '494 Accused Products in an infringing manner.

160.     Defendant updates and maintains an HTTP site called the "Technical Assistance Center" with Defendant's installation guides, troubleshooting guides, user guides, and operating instructions for Defendant's accused products.  *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

## COUNT XII
### (Direct Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(a))

161.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

162.     Defendant has infringed and continues to infringe Claims 1-25 of the '305 Patent in violation of 35 U.S.C. § 271(a).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

163.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

164.    Defendant acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

165.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways, Sky ATP, and Contrail (collectively, the "'305 Accused Products").

166.    The '305 Accused Products embody the patented invention of the '305 Patent and infringe the '305 Patent because they practice a method of receiving incoming content from the Internet, selectively diverting content from its intended destination, scanning the content to recognize potential computer exploits using analyzer and parser rules, and updating those rules to incorporate new behavioral rules.  For example, as shown below, the '305 Accused Products provide gateway security to end users, where incoming internet content is received by the '305 Accused Products.



57

| Step | Description |
|------|-------------|
| 1 | A client system behind an SRX Series devices requests a file download from the Internet. The SRX Series device forwards that request to the appropriate server. |
| 2 | The SRX Series device receives the downloaded file and checks its security profile to see if any additional action must be performed. |
| 3 | The downloaded file type is on the list of files that must be inspected and is sent to the cloud for analysis. |
| 4 | Sky ATP has inspected this file before and has the analysis stored in cache. In this example, the file is not malware and the verdict is sent back to the SRX Series device. |
| 5 | Based on user-defined policies and because this file is not malware, the SRX Series device sends the file to the client. |

For outbound traffic, the SRX Series device monitors traffic that matches C&C feeds it receives, blocks these C&C requests, and reports them to Sky ATP. A list of infected hosts is available so that the SRX Series device can block inbound and outbound traffic.

*See* http://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/concept/sky-atp-about.html at 4, attached hereto as Exhibit 18.

167.    The '305 Accused Products will divert content from the gateway if the content requires further analysis, as shown below.

> Sky Advanced Threat Prevention's progressive pipeline analysis engine starts with a cache lookup against a database of known threats. This is accomplished in near real time and facilitates inline blocking of malicious content. Suspicious files are subjected to a series of deeper inspection steps that attempt to positively identify malware. Static analysis combined with processing through multiple antivirus engines attempts to identify the threat; if a file is identified as malware through analysis, its signature is added to the cache to ensure immediate identification of recurring threats in the future.

*See* http://www.juniper.net/assets/us/en/local/pdf/datasheets/1000549-en.pdf at 2, attached hereto as Exhibit 27.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

168.    The '305 Accused Products also use machine learning to look for patterns or routines that indicate malicious behavior and select that content to be further scanned.  The '305 Accused Products use rules to parse and analyze the content by pulling the code apart to identify specific "features" associated with malware.  The scanner uses advanced heuristics and analyzer and parser rules to "generate a verdict" as to whether the content is malicious.



Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

https://www.youtube.com/watch?v=1QmXh8nDIYg.

169.    The '305 Accused Products selectively divert content from its intended destination, scanning it to recognize potential computer exploits using analyzer and parser rules.

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

Sky ATP integrates with SRX Series next-generation firewalls to deliver deep inspection, inline blocking, and actionable alerts. Using state-of-the-art machine learning, Sky ATP continuously analyzes web and email files for evasive malware.

Sky ATP's identification technology uses a variety of sophisticated techniques to quickly detect and prevent cyber attacks. They include:

- Powerful machine learning algorithms.
- Dynamic analysis with techniques to trick malware into activating and self-identifying.
- Rapid cache lookups to speed up previous malware identification.
- Antivirus signature-based engine to identify known files.
- Static analysis that analyzes software code to identify possible dangerous fragments.

*See* http://www.juniper.net/us/en/products-services/security/sky-advanced-threat-prevention/, attached hereto as Exhibit 10.

170.   Additionally, Defendant's Contrail products practice a method of receiving incoming content from the Internet, selectively diverting content from its intended destination, scanning the content to recognize potential exploits using analyzer and parser rules, and updating those rules to incorporate new behavioral policies.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Contrail Security actively defends your network at multiple enforcement points. An integrated virtual router (vRouter) acts as a distributed element on every host where applications reside, providing security enforcement and redirecting suspicious traffic to next-generation virtual firewalls as needed.

**Consistent Intent-Driven Policy**

Contrail Security streamlines policy creation by enabling administrators to define intent. Administrators can use simple terms that enable smart microsegmentation across diverse cloud environments such as OpenStack, Kubernetes, bare metal servers, and public clouds.

**Application Traffic Visibility and Advanced Analytics**

Contrail Security delivers visualization, analytics, and orchestration across multi-cloud environments while reducing risk from unauthorized traffic, using application-to-application flow discovery. It provides deep insight into application interactions, leveraging machine learning to detect anomalies and take corrective actions.

http://www.juniper.net/us/en/products-services/sdn/contrail/contrail-security/ at 1, attached hereto as Exhibit 17.

171.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Finjan and Defendant both compete in the security software space, as described for example in paragraphs 7-8 and 34-52 above. And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs 7-8 and 34-42 above.  Defendant's continued infringement of the Asserted Patents causes harm to Finjan in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.  Monetary damages are insufficient to compensate Finjan for these harms.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

172.    Defendant's infringement of the '305 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

173.    Defendant has been long-aware of Finjan's patents, including the '305 Patent, and has continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed

COMPLAINT FOR PATENT INFRINGEMENT                        CASE NO.

Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof. On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

174.   Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

175.   Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '305 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIII
### (Indirect Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(b))

176.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

177.   Defendant has induced and continues to induce infringement of at least Claims 13-24 of the '305 Patent under 35 U.S.C. § 271(b).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

178.    In addition to directly infringing the '305 Patent, Defendant indirectly infringes the '305 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '305 Patent, where all the steps of the method claims are performed by either Defendant, its customers, purchasers, users, and developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users, and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '305 Patent, including Claims 13-24.

179.    Defendant knowingly and actively aided and abetted the direct infringement of the '305 Patent by instructing and encouraging its customers, purchasers, users, and developers to use the '305 Accused Products.  Such instruction and encouragement includes, but is not limited to, advising third parties to use the '305 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '305 Patent, advertising and promoting the use of the '305 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '305 Accused Products in an infringing manner.

180.    Defendant updates and maintains an HTTP site called the "Technical Assistance Center" with Defendant's installation guides, troubleshooting guides, user guides, and operating instructions for Defendant's accused products.  *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

## COUNT XIV
### (Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

181.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

182.    Defendant has infringed and continues to infringe Claims 1-35 of the '408 Patent in violation of 35 U.S.C. § 271(a).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

183.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

184.     Defendant acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

185.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including the SRX Gateways using Sky ATP (collectively, the "'408 Accused Products").

186.     The '408 Accused Products embody the patented invention of the '408 Patent and infringe the '408 Patent because they practice a method of receiving an incoming content stream, determining the programming language (by, e.g., using static analysis to determine the metadata or file structure of the file), using parser and analyzer rules to express the stream in patterns of tokens in a parse tree, and finding exploits.  For example, as shown below, the '408 Accused Products provide gateway security to end users, where incoming internet content is received by the '408 Accused Products.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Sky ATP integrates with SRX Series next-generation firewalls to deliver deep inspection, inline blocking, and actionable alerts. Using state-of-the-art machine learning, Sky ATP continuously analyzes web and email files for evasive malware.

Sky ATP's identification technology uses a variety of sophisticated techniques to quickly detect and prevent cyber attacks. They include:

- Powerful machine learning algorithms.
- Dynamic analysis with techniques to trick malware into activating and self-identifying.
- Rapid cache lookups to speed up previous malware identification.
- Antivirus signature-based engine to identify known files.
- Static analysis that analyzes software code to identify possible dangerous fragments.

*See* http://www.juniper.net/us/en/products-services/security/sky-advanced-threat-prevention/, attached hereto as Exhibit 10.

187.    The '408 Accused Products use machine learning to detect new threats in real-time. Defendant's machine learning technology detects the programming language to be able to pull apart the code using parser to create a parse tree and find exploits in the parse tree using analyzer rules, dynamically and in real-time.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Juniper New Branch/Mid-Range SRX Series, SKY ATP and Junos Space Security Directory Live Demo

https://www.youtube.com/watch?v=1QmXh8nDIYg.

188.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Finjan and Defendant both compete in the security software space, as described for example in paragraphs 7-8 and 34-52 above. And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs 7-8 and 34-42 above.  Defendant's continued infringement of the Asserted Patents causes harm to Finjan in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.  Monetary damages are insufficient to compensate Finjan for these harms.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

189.    Defendant's infringement of the '408 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

190.     Defendant has been long-aware of Finjan's patents, including the '408 Patent, and has continued its infringing activity despite this knowledge.  On or about June 10, 2014, Finjan informed Defendant of its patent portfolio, including the Asserted patents and Defendant's infringement thereof.  On or about July 2, 2014, Finjan provided a representative claim chart mapping one of Finjan's patents to Defendant's accused products and services.  Finjan diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendant regarding Finjan's patent portfolio, explaining Defendant's infringement of each claim of a representative patent, element-by-element.

191.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendant has made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, on information and belief Defendant incorporated infringing technology into additional products, such as those identified in this complaint.  Defendant was dismissive of Finjan's attempts, over several years, to engage in licensing discussions and expressed more interest in Finjan's status as a practicing entity than in Finjan's analysis of how Defendant's products read on Finjan's patents.  For years Defendant refused to seriously consider Finjan's patent portfolio under a non-disclosure agreement.  All of these actions demonstrate Defendant's blatant and egregious disregard for Finjan's patent rights.

192.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, being provided a representative claim chart of Finjan patents, and engaging in multiple meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '408 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT XV
### (Indirect Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(b))

193.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

194. Defendant has induced and continues to induce infringement of at least Claims 1-8 and 23-28 of the '408 Patent under 35 U.S.C. § 271(b).

195. In addition to directly infringing the '408 Patent, Defendant indirectly infringes the '408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '408 Patent, where all the steps of the method claims are performed by either Defendant, its customers, purchasers, users, and developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users, and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '408 Patent, including Claims 1-8 and 23-28.

196. Defendant knowingly and actively aided and abetted the direct infringement of the '408 Patent by instructing and encouraging its customers, purchasers, users, and developers to use the '408 Accused Products. Such instruction and encouragement includes, but is not limited to, advising third parties to use the '408 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '408 Patent, advertising and promoting the use of the '408 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '408 Accused Products in an infringing manner.

197. Defendant updates and maintains an HTTP site called the "Technical Assistance Center" with Defendant's installation guides, troubleshooting guides, user guides, and operating instructions for Defendant's accused products. *See, e.g.*, http://www.juniper.net/documentation/; https://www.juniper.net/documentation/en_US/release-independent/junos/topics/concept/services-gateway-srx240-jtac.html, attached hereto as Exhibits 21, 22.

### PRAYER FOR RELIEF

WHEREFORE, Finjan prays for judgment and relief as follows:

A. An entry of judgment holding that Defendant has infringed and is infringing the '844 Patent, the '780 Patent, the '633 Patent, the '926 Patent, the '154 Patent, the '494 Patent, the '305

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1  Patent, and the '408 Patent; and has induced infringement and is inducing infringement of the '844

2  Patent, the '780 Patent, the '633 Patent, the '926 Patent, the '494 Patent, the '305 Patent, and the '408

3  Patent;

4        B.     A preliminary and permanent injunction against Defendant and its officers, employees,

5  agents, servants, attorneys, instrumentalities, and/or those in privity with them, from continuing to

6  infringe the '633 Patent, the '154 Patent, the '305 Patent, and the '408 Patent, or inducing the

7  infringement of the '633 Patent, the '305 Patent, and the '408 Patent, and for all further and proper

8  injunctive relief pursuant to 35 U.S.C. § 283;

9        C.     An award to Finjan of such past damages as it shall prove at trial against Defendant

10  that are adequate to fully compensate Finjan for Defendant's infringement of the '844 Patent, the

11  '780 Patent, the '633 Patent, the '926 Patent, the '154 Patent, the '494 Patent, the '305 Patent, and the

12  '408 Patent, said damages to be no less than a reasonable royalty;

13        D.     A determination that Defendant's infringement has been willful, wanton, and

14  deliberate and that the damages against it be increased up to treble on this basis or for any other basis

15  in accordance with the law;

16        E.     A finding that this case is "exceptional" and an award to Finjan of its costs and

17  reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

18        F.     An accounting of all infringing sales and revenues, together with post judgment

19  interest and prejudgment interest from the first date of infringement of the '844 Patent, the '780

20  Patent, the '633 Patent, the '926 Patent, the '154 Patent, the '494 Patent, the '305 Patent, and the '408

21  Patent; and

22        G.     Such further and other relief as the Court may deem proper.

23  ///

24  ///

25  ///

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

Respectfully submitted,

Dated:  September 29, 2017                    By:    /s/ Paul J. Andre
                                                  Paul J. Andre (State Bar No. 196585)
                                                  Lisa Kobialka (State Bar No. 191404)
                                                  James Hannah (State Bar No. 237978)
                                                  KRAMER LEVIN NAFTALIS
                                                    & FRANKEL LLP
                                                  990 Marsh Road
                                                  Menlo Park, CA  94025
                                                  Telephone:  (650) 752-1700
                                                  Facsimile:  (650) 752-1800
                                                  pandre@kramerlevin.com
                                                  lkobialka@kramerlevin.com
                                                  jhannah@kramerlevin.com

                                                  *Attorneys for Plaintiff*
                                                  FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1

## **DEMAND FOR JURY TRIAL**

2

Finjan demands a jury trial on all issues so triable.

3

Respectfully submitted,

4

Dated:  September 29, 2017     By:   */s/ Paul J. Andre*

5

Paul J. Andre (State Bar No. 196585)
Lisa Kobialka (State Bar No. 191404)

6

James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS

7

  & FRANKEL LLP
990 Marsh Road

8

Menlo Park, CA  94025

9

Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800

10

pandre@kramerlevin.com

11

lkobialka@kramerlevin.com
jhannah@kramerlevin.com

12

*Attorneys for Plaintiff*

13

FINJAN, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT        CASE NO.