IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FINJAN, INC.,

    Plaintiff,

  v.

JUNIPER NETWORKS, INC.,

    Defendant.

No. C 17-05659 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

Defendant in this patent infringement action moves to dismiss plaintiff's claims of willfulness and induced infringement for failure to state a claim. The motion is **GRANTED**.

## STATEMENT

Plaintiff Finjan, Inc., brings this action against defendant Juniper Networks, Inc., for infringement of eight patents — U.S. Patent Nos. 6,154,844 ("the '844 patent"), 6,804,780 ("the '780 patent"), 7,647,633 ("the '633 patent"), 7,613,926 ("the '926 patent"), 8,141,154 ("the '154 patent"), 8,677,494 ("the '494 patent"), 7,975,305 ("the '305 patent"), and 8,225,408 ("the '408 patent") — pertaining to malware-detection technology. The following is taken from the well-pled allegations of the complaint (Dkt. No. 1 ¶¶ 9–33).

On June 10, 2014, Finjan contacted Juniper "regarding a potential license to Finjan's patents." On July 2, Finjan emailed Juniper, "We believe a license to Finjan's patent portfolio could be beneficial to some [of] Juniper's security products and services" (brackets in original).

That email appended an "exemplary claim chart," not for any of the eight patents-in-suit, but for U.S. Patent No. 6,965,968 ("the '968 patent"), ostensibly another specimen from the same patent portfolio. Finjan also offered to provide additional claim charts so Juniper could "evaluate Finjan's patent portfolio," but only if Juniper would agree to receive said claim charts under a non-disclosure agreement (*id.* ¶¶ 34–35).

On January 12, 2015, Finjan reiterated its NDA offer in a meeting with Juniper's unnamed senior director of IP, litigation, and strategy. Juniper declined and, on February 13, sent Finjan a letter identifying ten patents that Juniper believed to be "prior art" to the '968 patent. Finjan attempted to follow up — apparently via email — on February 18 and 20, but Juniper did not respond. On September 30, Finjan sent Juniper a letter explaining what Finjan believed to be distinctions between the ten "prior art" patents identified by Juniper and the '968 patent. Again, Juniper did not respond (*id.* ¶¶ 36–38).

On October 15, 2015, Finjan contacted Juniper's unnamed deputy general counsel "to discuss [Juniper's] products and how they read on Finjan's patents." The deputy general counsel referred Finjan back to Juniper's senior director of IP, litigation, and strategy. The latter indicated to Finjan in a phone call on November 24 that "he did not think Finjan was worth [Juniper's] time and . . . expressed no interest in understanding the analysis that Finjan had prepared regarding [Juniper's] products and how they relate to Finjan's patents." He "also repeatedly turned that telephone conversation toward the topic of litigation, referenced his own hypothetical deposition, refused to sign an [NDA], and stated that if Finjan shared any more exemplary claim charts with him, he would share them with other entities" (*id.* ¶¶ 39–40).

On February 2, 2016, Finjan again contacted Juniper's deputy general counsel to "express concern that [Juniper] did not seem to be taking Finjan's efforts to engage in licensing discussions seriously, and to discuss how [Juniper's] products related to Finjan's patents." The complaint does not specify how the deputy general counsel responded on that occasion but concludes Juniper has "refused to take a license to Finjan's patents" (*id.* ¶¶ 41–42).

In summary, Finjan alleges Juniper has known since June 2014 about Finjan's patent portfolio, Finjan's efforts to initiate licensing negotiations for said portfolio, and Finjan's

"representative" claim chart mapping the '968 patent — again, *not* one of the patents-in-suit — onto Juniper's accused products. In response, Juniper continued to sell the accused products, made no attempt to redesign said products, rebuffed Finjan's attempts to initiate negotiations, refused to accept Finjan's offered NDA, and "expressed more interest in Finjan's status as a practicing entity." Based on the foregoing allegations, which Finjan contends constitute "blatant," "egregious," "complete," and "reckless" disregard of its patent rights, Finjan claims Juniper "has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement" of all eight patents-in-suit such that enhanced damages and attorney's fees are justified under Sections 284 and 285, respectively, of Title 35 of the United States Code (*see id.* ¶¶ 68–70, 84–86, 103–05, 121–23, 138–40, 153–55, 173–75, 190–92).

Finjan also alleges Juniper updates and maintains a website with various user guides and operating instructions for the accused products (*id.* ¶¶ 75, 91, 110, 128, 160, 180, 197). Based on these allegations, Finjan claims Juniper has induced its customers to infringe each of the patents-in-suit save and except for the '154 patent. Each induced infringement claim contains virtually identical boilerplate language, an example of which is reproduced here in full (*see id.* ¶¶ 73–74, 89–90, 108–09, 126–27, 158–59, 178–79, 195–96):

> In addition to directly infringing the '844 Patent, Defendant indirectly infringes the '844 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including its customers, purchasers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '844 Patent, where all the steps of the method claims are performed by either Defendant, its customers, purchasers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, users or developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '844 Patent, including at least Claims 1–14 and 23–31.
>
> Defendant knowingly and actively aided and abetted the direct infringement of the '844 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '844 Accused Products. Such instruction and encouragement includes, but is not limited to, advising third parties to use the '844 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '844 Patent, advertising and promoting the use of the '844 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '844 Accused Products in an infringing manner.

Juniper now moves to dismiss Finjan's willfulness and induced infringement claims for failing to state a claim (Dkt. No. 23). This order follows full briefing and oral argument.

**ANALYSIS**

**1. LEGAL STANDARD.**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the party asserting it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court may generally consider only allegations in the pleadings, attached exhibits, and matters properly subject to judicial notice. The court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

**2. WILLFULNESS.**

Section 284 provides, "When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed." There is no precise rule or formula for awarding damages under Section 284, but a district court's discretion to do so is not to be exercised in "a typical infringement case." Rather, such enhanced damages are "generally reserved for egregious cases of culpable behavior" involving conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or — indeed — characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931–32 (2016). "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1932–33).

Here, Juniper contends Finjan fails to state a claim for willfulness because it fails to allege (1) that Juniper had pre-suit knowledge of the *patents-in-suit*, as opposed to Finjan's

4

*patent portfolio* or the *non-asserted* '968 patent, and (2) conduct arising to the level of egregiousness described in *Halo* (Dkt. No. 23 at 6–12). This order agrees on both fronts.

Finjan's opposition to the instant motion fails to come to grips with the deficiencies in its complaint. Despite regurgitating much of the complaint, the opposition fails to identify any *factual* allegation that Juniper had pre-suit knowledge of the eight *patents-in-suit* (Dkt. No. 24 at 4, 6–8). *First*, Finjan repeats that it met with Juniper on multiple occasions "to discuss specifically how Juniper's products related to Finjan's patents," but generally discussing purported infringement of Finjan's *patent portfolio* hardly translates to specifically alerting Juniper to infringement of the *patents-in-suit*. *Second*, Finjan points out that its "exemplary" '968 patent "lists the asserted '844 patent." That Finjan must resort to such a remote connection in a *non-asserted patent* to identify a specific reference to just one of the *patents-in-suit* aptly demonstrates the frailty of Finjan's allegations (or lack thereof) regarding Juniper's pre-suit knowledge. *Third*, Finjan points out that it exchanged letters with Juniper debating whether or not ten other patents qualified as "prior art" to the '968 patent. Finjan does not even attempt to explain how a garden-variety disagreement over the validity of a *non-asserted patent* constitutes pre-suit knowledge of the *patents-in-suit*. *Fourth*, Finjan contends it "pled that Juniper had knowledge of each individual Asserted Patent and continued its infringing activity despite this knowledge." The portions of the complaint cited by Finjan, however, merely assert in conclusory terms that Juniper had some awareness of Finjan's *patent portfolio*, which in turn included the patents-in-suit. They contain no *factual* allegations that Juniper had actual pre-suit knowledge of the eight *patents-in-suit*.[*]

Finjan similarly fails to identify any *factual* allegation that Juniper exhibited egregious behavior on par with that described in *Halo* (*id.* at 5, 8–9). Finjan repeats that Juniper refused

---

[*] In its opposition brief, Finjan also claims it "alleged Juniper's conversations with other infringers who are defendants in Finjan's co-pending cases, all of which involve most, if not all of the same patents, demonstrating that Juniper was well aware of Finjan's asserted patents, as the point of Juniper's discussions was going to be about the Asserted Patents in those co-pending cases with those defendants" (Dkt. No. 24 at 6–7). Finjan cites Paragraph 40 of the complaint for these purported allegations. Paragraph 40 alleges that Juniper's director of IP, litigation, and strategy "repeatedly turned [a] telephone conversation toward the topic of litigation" and said he would share any more "exemplary" claim charts with unspecified "other entities" but does *not* further allege anything about Finjan's co-pending cases or Juniper's awareness thereof. Details added in Finjan's opposition brief are not a substitute for well-pled allegations in the complaint.

to sign an NDA to see more claim charts, warned that it would share any more claim charts with "other entities" (which Finjan construes to mean other accused infringers), refused to consider more of Finjan's purported infringement analysis, expressed more interest in whether or not Finjan practiced its patents, refused to respond to Finjan's September 30 letter distinguishing the ten "prior art" patents identified by Juniper, said Finjan "was not worth Juniper's time, pushed licensing conversations toward litigation, and referenced conversations with other defendants in Finjan's litigations." Finjan contends these allegations demonstrate Juniper's "willful blindness to its infringement and its subjective intent to ignore Finjan's patent rights, while continuing to sell products that it knew infringed" (*id.* at 5).

The foregoing allegations, even viewed in the light most favorable to Finjan, show at most that Juniper gave Finjan less attention than Finjan felt it deserved. In other words, Finjan essentially argues that a target refusing to play ball on Finjan's terms must be willfully infringing its patents. Accepting Finjan's well-pled factual allegations as true — as we must for present purposes — this order disagrees. Finjan accused Juniper of infringing its *patent portfolio*, not any of the particular *patents-in-suit*; Juniper looked at Finjan's "exemplary" claim chart on a *non-asserted patent*, disagreed with Finjan's infringement theory, sent Finjan a letter identifying what Juniper believed to be prior art (again, to a patent Finjan eventually decided *not* to sue on), and declined to debate further. Finjan asked Juniper to negotiate a license; Juniper had enough confidence in its position to talk about litigation instead. Finjan asked Juniper to sign an NDA so Finjan could continue making its case without revealing its hand to other accused infringers; Juniper refused. Finjan characterizes Juniper's reaction as "refusing to respond" to allegations of infringement (*see id.* at 5, 15), but Finjan's own allegations show that Juniper did respond — it just wasn't the response Finjan wanted. Finjan had no right to insist that Juniper sign an NDA instead of telling other targets how Finjan construed its patents (so that inconsistencies in Finjan's positions could see the light of day). None of these allegations, taken as true, indicate that Juniper willfully ignored known infringement of the eight patents-in-suit. At most, they suggest Juniper's unwillingness to spend more time and energy rebutting what it perceived to be meritless accusations of infringement of Finjan's patent portfolio.

Finally, Finjan cites the undersigned judge's recent decision in *Straight Path IP Group, Inc. v. Apple Inc.*, No. C 16–03582, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017), for the proposition that it "does not have to prove willfulness at the pleading stage" (Dkt. No. 24 at 1, 4–6, 8–9). As Finjan recognizes, however, the plaintiff in *Straight Path* alleged the defendant "was aware of four of the *asserted patents and their infringement*" prior to that lawsuit (*id.* at 5 (emphasis added)). Here, in contrast, Finjan does not allege facts showing that Juniper actually knew of the eight *patents-in-suit*, let alone any willful infringement thereof. As explained, allegations that Juniper knew about Finjan's *patent portfolio* and an "exemplary," *non-asserted* patent remain insufficient to state a claim for willfulness in this action.

### 3. INDUCED INFRINGEMENT.

Section 271(b) provides, "Whoever actively induces infringement of a patent shall be liable as an infringer." Induced infringement "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Such knowledge requires that the accused inducer not only had "knowledge of the patent in suit" but also "knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926, 1928 (2015). Induced infringement also requires proof that the accused inducer possessed "a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

Here, Juniper contends Finjan fails to state a claim for induced infringement because it fails to allege that Juniper had either the requisite knowledge or intent (Dkt. No. 23 at 12–17). This order agrees. As Finjan itself points out, the sufficiency of its allegations regarding willfulness and induced infringement presents overlapping issues (*see* Dkt. No. 24 at 10). Under the heading of induced infringement, Finjan essentially rehashes its arguments that it sufficiently alleged Juniper's pre-suit knowledge to show willfulness (*see id.* at 10–12). This order again rejects Finjan's arguments for the reasons already stated. To repeat, Finjan alleges no facts showing Juniper's pre-suit knowledge of the actual *patents-in-suit*, let alone any knowing infringement thereof. This alone requires dismissal of Finjan's induced infringement claims. *See Commil*, 135 S. Ct. at 1926, 1928. In light of this deficiency in the complaint, this

order need not further examine Finjan's allegations and arguments regarding Juniper's intentions with respect to the actions of third parties (*see* Dkt. No. 24 at 12–16).

### 4. LEAVE TO AMEND.

In the event that its complaint falls short as to willfulness or induced infringement (which, as explained, it does), Finjan seeks leave to amend to "provide additional specific details about its discussions with Juniper relating to Juniper's infringement of Finjan's asserted patents" (*id.* at 16). Given the vagueness of Finjan's allegations and its persistent attempts to equate a *patent portfolio* and a *non-asserted patent* with the *patents-in-suit*, it seems unlikely that Finjan will be able to drum up specific allegations about Juniper's pre-suit knowledge of the *patents-in-suit*. Nevertheless, Finjan may move for leave to file an amended complaint by **FEBRUARY 22 AT NOON**. Any such motion should include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the complaint. This order highlights certain deficiencies in the complaint, but it will not necessarily be enough to add a sentence parroting each missing item identified herein. For example, the proposed amendment should take care to address the other criticisms raised by Juniper but not reached in this order. If Finjan moves for leave to file an amended complaint, it should be sure to plead its best case.

## CONCLUSION

To the foregoing extent, defendant's motion to dismiss is **GRANTED**. Plaintiff's claims of willfulness and induced infringement are **DISMISSED**. Plaintiff may move for leave to file an amended complaint, subject to the conditions stated herein, by **FEBRUARY 22 AT NOON**. As stated on the record at the motion hearing, defendant may promptly take depositions in advance of plaintiff's motion for leave in order to test the validity of any new allegations added therein.

**IT IS SO ORDERED.**

Dated: February 14, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE