Pages 1 - 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | | |
|---|---|---|
| Finjan, Inc., | ) | |
| Plaintiff, | ) ) ) | |
| VS. | ) ) | NO. 17-CV-5659 |
| Juniper Network, Inc., | ) ) | |
| Defendant. | ) ) | |

San Francisco, California
Thursday, February 22, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          KRAMER LEVIN NAFTALIS & FRANKEL LLP
                        990 Marsh Road
                        Menlo Park, CA     94025

                BY:  **Mr. Paul Andre**
                     **Mr. Kristopher Kastens**


For Defendant:          IRELL & MANELLA LLP
                        840 Newport Center Drive, Suite 400
                        Newport Beach, CA     92660

                BY:  **Ms. Rebecca Carson**



Reported By:            Vicki Eastvold, RMR, CRR
                        Official Reporter

<u>**Thursday - February 22, 2018**</u>                      <u>**11:28 a.m.**</u>

P R O C E E D I N G S

---o0o---

THE DEPUTY CLERK:  Calling civil action 17-5659

Finjan, Inc., versus Juniper Network, Inc.

Counsel, please approach the podium and state your

appearances for the record.

MR. ANDRE:  Morning, Your Honor.  Paul Andre for

plaintiff Finjan.

MS. CARSON:  Good morning, Your Honor.  Rebecca Carson

for Juniper Networks.

MR. KASTENS:  Kristopher Kastens for Finjan.

THE COURT:  Unless you're about to tell me you've

settled your case, I have a plan for your case.  Are you ready?

It's a two-part plan.  First part is a normal schedule.  Second

is the shoot-out schedule.  Are you ready?

Any initial disclosures should have already been done, but

I'll give you until February 28 to make sure you've done them

correctly.  Leave to add any new parties or pleading amendments

must be received by May 31.  Fact discovery cutoff will be

March 29 next year.  That will also be the date your expert

report is due if you have the burden of proof on the issue.

March 29 next year.  The pre-trial conference would be

June 6 -- D Day -- next year.  Trial will be July 2.

See, is that right?  Did I really say July 2?

1      July 8 is what I meant.  And that will be a jury trial.

2  I'll refer you to Magistrate Judge -- hope she will accept

3  this -- Susan van Keulen for settlement.

4      And I will have to ask this question:  These patent cases

5  are so contentious and so unreasoned, the lawyers are so

6  unreasonable in these cases that I normally keep all discovery

7  disputes.  But patent cases the lawyers can't agree on

8  anything.  However, if you promise me you will be reasonable on

9  both sides and that there will be very few discovery disputes I

10  will keep all discovery disputes.

11      MS. CARSON:  Your Honor, we intend to be reasonable.

12  Assuming that the other party is reasonable, I think we can

13  limit discovery motions.

14      MR. ANDRE:  Your Honor, we're very reasonable.  We

15  give up everything.

16      THE COURT:  All right.  I'm giving -- I'm going to

17  keep them for myself and see if it works.  Okay.  So that's the

18  overall case schedule.  Do you have any heartburn on this?

19      MS. CARSON:  Your Honor, one comment.  The parties had

20  actually worked together to come to an agreed schedule.

21      THE COURT:  I know.  It was too leisurely.  It would

22  call for a trial in 2020.  That would be the -- I won't even be

23  alive probably in 2020.  I've never set a case that far out in

24  my entire career.  You lawyers are going to have to get going.

25  This is plenty of time.

1       **MR. ANDRE:**  Your Honor, it's fine for plaintiff.
2  Works for us.
3       **MS. CARSON:**  Your Honor, we think it's a little
4  advanced given the number of patents at issue in the case and
5  then --
6       **THE COURT:**  Too bad.  You can do this.  That's where
7  the shoot-out comes in.  Are you ready?  The shoot-out is a
8  great thing that I have come up with.  It works as follows:
9       How many claims are involved here?
10      **MR. ANDRE:**  We've agreed to limit it to 16 claims on
11 the patents.
12      **THE COURT:**  Sixteen from how many patents?
13      **MR. ANDRE:**  Eight patents.
14      **THE COURT:**  Is that right?
15      **MS. CARSON:**  That's correct, Your Honor.
16      **THE COURT:**  Okay.  So of the 16, each of you get to
17 pick one.  Plaintiff gets to pick your strongest claim and
18 Juniper gets to pick the weakest of the claims.  And then
19 you're going to both make motions.  We're going to each have
20 discovery.  I'll give you reasonable discovery into those two.
21 This is in addition to all the other discovery that's going on.
22 But you get discovery into each of those two on kind of a
23 compressed schedule.  And if anybody stonewalls, believe me
24 their motion won't get granted.  You better cooperate on this
25 discovery.  So you both are going to cross-move for summary

1   judgment.  It could turn out that -- it could turn out like in

2   any summary judgment motion that there are fact issues that are

3   impossible to resolve.  But in the past it's quite clear that

4   one side or the other is absolutely correct.  What does that

5   mean?  It means that it either leads to an immediate

6   preliminary injunction -- that would be bad for Juniper -- or,

7   it leads to a sanctions motion against the plaintiff.  Or it

8   might even be a sanctions motion against the defendant.

9        This is -- it just cuts to the heart of the case so

10  quickly.  I promise you by August of this year the case will be

11  over because one of you -- I know these patent cases.  They're

12  very few where there's a fact issue; maybe one out of three.

13  Two out of three it's quite clear that either the plaintiff is

14  way off base, which was true in the last case that I did, or

15  that the Juniper side is way off base.

16       And there's nothing wrong with a preliminary injunction

17  right off the bat.  In fact, it would be a permanent injunction

18  because it's the result of summary judgment if you in fact are

19  infringing.  You don't have to wait until the end of the case.

20  Whamo, the product goes off the shelf.

21       So this gets it done to one -- each side has one.

22       Now here's the other trick I found in doing this.  That as

23  soon as the Juniper side decides, Oh, we're going to go with

24  claim number eight on the XYZ patent, and you withdraw that

25  patent.  They withdrew eight -- eight - claims in seriatum.

1    And finally -- this is how bad it was in the other case.   I
2    don't know if you're going to do that or not.
3         So I'm going to give you two weeks from today to withdraw
4    whatever you want.  After that you're stuck with it.  Sorry,
5    Ms. -- not Ms. Juniper, but you're Ms. --
6              MS. CARSON:  Carson.
7              THE COURT:  How do you say it?
8              MS. CARSON:  "Carson."
9              THE COURT:  Carson.  I don't see you on here.  It's
10   not on my list.  Is it on here?  Maybe I got the wrong list.
11   Anyway, Ms. Carson, if -- so after two weeks you can pick the
12   weakest one they have.  That's what I want you to do.  Pick the
13   weakest one they're asserting against you.  And if it turns out
14   you're just crystal clear on that one, even if you might lose
15   on the other one, you're going to get sanctions against them if
16   it warrants sanctions.  And they will have to pay that right
17   off the bat.  Could be hundreds of thousands of dollars for
18   having brought a bogus claim against Juniper.
19        But if they win on theirs, it's injunction city.  So this
20   is why it's called a shoot-out.  It's like the shoot-out at the
21   OK Coral in Tombstone, Arizona.  Where the lawyers go in there
22   and they just shoot it out and one of them comes out alive.
23        I shouldn't use that.  That's a terrible example to use
24   these days so I'm going to take that back.  Maybe I'll call it
25   something else.

1          **MR. ANDRE:**  It would be the Earps on this side.

2          **THE COURT:**  It's not going to be -- it's not going to

3   be -- maybe shootout is the -- showdown.  That's what it is.

4   It's a showdown.

5          All right.  So I'm giving you two weeks from today to do

6   the -- two weeks from today to do the withdrawal.  And then

7   after that you get to pick one on the -- two weeks -- so that

8   would be -- I can't read very well anymore.  What is two weeks

9   and a day from now?  March 8 is what day of the week?

10          **THE DEPUTY CLERK:**  Thursday.

11          **THE COURT:**  Okay.  On March 9 by letter each of you

12   have to notify the other one as to which one -- well, that's

13   not quite fair to you because what if they withdraw the one you

14   -- no.  I'm going to give you two weeks after that.  So it will

15   be March 8 is two weeks from today.  And it will be March --

16          **THE DEPUTY CLERK:**  22.

17          **THE COURT:**  -- 22 would be whenever you have to notify

18   the other one as to which one of your going to be pursuing.

19          And then the summary judgment motions on this have to be

20   filed June 7.  So you have a period of a few months in there to

21   do your discovery, get your -- if I needed to give you some

22   short continuances on that date I will.  But then do it on a --

23   we'll do these on a 49-day track so you'll have a chance to

24   depose the experts on the other side.  So there's one week

25   built in there for each of you to have an extra week on

1   opposition.

2       So June  -- 7 plus 49.  What would that hearing date give

3   me?  49.  It's probably around the end of July.

4           THE DEPUTY CLERK:  July 26, Your Honor.

5           THE COURT:  July 26.  Okay.  So on July 26 I

6   anticipate that there will be banners in the sky for one side

7   or the other as total victory is proclaimed.  At least -- so on

8   the other hand I could be wrong and it could turn out to be one

9   of those cases where there's fact issues and I have to deny --

10      But I'll tell you, I learn a lot about -- even if that's

11  the way it is, I will learn a lot.  It will be effectively a

12  tutorial for me.

13      So that's the way we're going to proceed.  Go back and

14  tell your clients that the day of reckoning is close at hand.

15      All right.  I'll get out an order that -- be sure to read

16  the order whenever it comes out on this summary procedure.

17      And then we'll eventually get around to all the other

18  claims in the case.  So don't worry that there will be some --

19  there will be other -- we'll deal with everything.  But it may

20  be that as the case goes along we have a permanent injunction

21  against a product that's no longer being sold.  That could

22  happen.  Or it could be Mr. Andre has to pay $300,000 in fees

23  to the other side for bringing a frivolous claim.  Or maybe you

24  have to pay $300,000 to him because you picked a bad one.

25      So this gets to the heart of the matter so quickly and so

1   cleanly instead of you all treating me like your early neutral

2   evaluation judge and two years later I'm still trying to figure

3   out which end is up.

4        All right.  I had one other question for you.  What is the

5   PTAB situation?  In other words, of these 16 claims are any of

6   them in the PTAB right now?

7             MS. CARSON:  Your Honor, they haven't yet told us the

8   16 claims, so I'll leave that to Mr. Andre.

9             THE COURT:  Oh, really?  That was a nice little slight

10  of hand.  How come you haven't told them?

11            MR. ANDRE:  We agree it would be 16 claims.  We put

12  that in the schedule that we proposed to the Court.  But we can

13  do that obviously earlier.

14            THE COURT:  Well, I think you should do it.  I thought

15  you should do that today.  Can you do that today?

16            MR. ANDRE:  I can't do it off the top of my head, Your

17  Honor.

18            THE COURT:  Will you do it by tomorrow at noon?

19            MR. ANDRE:  Sixteen claims, we can do it by tomorrow

20  by noon.

21            THE COURT:  Okay. 16 claims tomorrow at noon.

22            MR. ANDRE:  It was baked into the schedule.  16

23  claims.

24            THE COURT:  Those will be the 16.  Then I'm still

25  giving you two weeks from today, I guess, to withdraw any of

the 16.

MR. ANDRE:  Okay.

THE COURT:  Now you can't go -- once you limit it to 16, and you withdraw one, you can't substitute some other one. You don't get to do that.  So if you withdraw one, then you're down to 15.

MR. ANDRE:  Your Honor, as far as the PTAB situation goes, the patents that are involved in this case I think they've been subject to about 25 or 30 IPR petitions. Nothing's in the PTAB except for one.  One of the patents -- the patents have all survived multiple PTAB challenges.  And so the claims that we'll select, there's a chance that one of the patents has been instituted but has not been final.  And so that's the only patent that has anything that would be implicated in the shootout.

THE COURT:  Well, my thought is that that won't affect us.  We'll just push ahead.  If you pick one that's going to be at the PTAB or you pick one that's at the PTAB, I'm just going to ignore the PTAB and make my own decision.  So unless you two could stipulate to something I might figure out a -- but the PTAB will not resolve any of these by August.  Right?

MS. CARSON:  That's correct.  There's also a number of recent proceedings that have been filed but not yet reached the institution decision phase by other defendants.

THE COURT:  How many of these patents are still

1    active?

2        **MR. ANDRE:**   I think five.   Maybe four.   Four or five

3    of them.   Some have died of natural causes; you know, natural

4    death of time.   But the PTAB petitions keep coming.   Like we've

5    faced like 60 or 70 of them at this time for these patents.

6    And they keep getting denied or confirmed valid, but they keep

7    coming nonetheless.

8        **MS. CARSON:**   A number of them are also expired or will

9    expire soon.

10       **THE COURT:**   Well, that would mean that if Mr. Andre

11   picked one that has expired as his best claim, he could not try

12   to get an injunction.   Obviously, he can't do that.   So if you

13   want an injunction out of this process, you have to pick one

14   that still has life in it come August.   Okay.

15       **MR. ANDRE:**   That complicates things a bit.   Could we

16   get a --

17       **THE COURT:**   Up to you.   I don't care which one you

18   pick.   I don't care which one you pick.   You could just pick

19   your strongest one.   It may just be for damages purposes.

20   That's okay.   That's up to you.                    .

21       All right.   That's all I can do for you today.   Good luck

22   to both sides.   I'll get an order out pretty soon.   Thank you.

23       **MR. ANDRE:**   Thank you.

24       **MS. CARSON:**   Thank you, Your Honor.

25                              ---oOo---

1

2

3                    CERTIFICATE OF REPORTER

4        I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7 DATE:    Thursday, February 27, 2018.

8

9

10

11

12    _____

13        Vicki Eastvold, RMR, CRR, U.S. Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25