# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6346
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7189

April 13, 2018

Hon. William Alsup
U.S. District Court
Northern District of California

Re: *Finjan, Inc. v. Juniper Networks, Inc.*, Case No. 3:17-cv-05659-WHA

Dear Judge Alsup:

Defendant Juniper Networks, Inc. ("Juniper") respectfully submits this opposition to plaintiff Finjan, Inc.'s ("Finjan") letter brief regarding Dr. Eric Cole (Dkt. No. 49), a former senior executive of a key Juniper competitor. Finjan has identified no less than three other experts in this case, and Juniper understands Finjan has used at least three other experts in cases against other parties involving the same patents. Juniper is not aware of any issues with any of Finjan's other experts.

I. **Dr. Cole Cannot Qualify As An "Expert" Under The Model Protective Order.**

Dr. Cole is precluded from receiving Juniper's confidential information because, as a former senior executive of a Juniper competitor, Dr. Cole does not satisfy the qualifications for an "expert" under the Model Protective Order. Dr. Cole served as Senior Vice President and Chief Technology Officer of the Americas for McAfee, positions he touts on his CV. *See* Dkt. No. 49 at p. 8 (Cole CV). McAfee is a leading Juniper competitor. In fact, Finjan previously sued McAfee for infringing U.S. patent numbers 6,092,194 and 6,480,962, both of which are alleged parents of at least three patents asserted against Juniper (the '494, '926 and '780 patents). *See Finjan, Inc. v. McAfee, Inc.*, No. 1:10-cv-00593-GMS, Dkt. No. 69 at pp. 2-3 (D. Del. May 12, 2011).[1] Section 2.7 of the Model Protective Order—which Finjan agrees "governs" (Dkt. No. 49 at p. 1.)—expressly limits "expert[s]" to those who are "***not*** a past or current employee of a Party or of a Party's competitor." Dr. Cole was a senior executive at a Juniper competitor and therefore does not qualify as an "expert" under the Model Protective Order.

Despite this requirement in the Model Protective Order, Finjan claims that Juniper "bear[s] the burden of proving that the harm to Juniper of Dr. Cole reviewing [Juniper's] confidential material substantially outweighs the prejudice to Finjan of disqualifying Dr. Cole." Dkt. 49 at 1. Finjan has it backwards: Because Dr. Cole does not qualify as an expert under the existing Model Protective Order, Finjan must *first* make a motion to deviate from that Order, where Finjan, as "the party requesting to deviate from the Interim Model Protective Order[,] bears the burden of showing the specific harm and prejudice that will result if its request is not granted." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, C 12-05501 SI, 2013 WL 5663434, at *1 (N.D. Cal.

---

[1] Amended complaint by Finjan against McAfee asserting the '194 and '962 patents. *See also, e.g.*, U.S. Patent No. 8,677,494 at Page 2 (Related U.S. Application Data) ('494 patent asserted against Juniper claiming priority to '194 and '962 patents asserted by Finjan against McAfee).

10485651

Oct. 17, 2013); *see also Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, C-11-05973 PSG, 2012 WL 1232105, at *2 (N.D. Cal. April 12, 2012).

Finjan bears the burden to modify the Model Protective Order before Dr. Cole can qualify as an "expert" in the first place. The cases that Finjan cites do not support shifting the burden to Juniper because all of those cases involved individuals who were able to meet the requirements to qualify as an "expert" (unlike Dr. Cole). *See Finisar Corp. v. Nistica, Inc.*, No. 5:13-cv-03345-BLF, Dkt. No. 244 at pp. 9-16 (N.D. Cal. July 21, 2015) (Finisar objecting to Nistica's expert because Finisar's counsel disclosed attorney work product to the expert on a phone call back when Finisar's counsel was itself considering engaging the expert for litigation assistance); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 190-92 (N.D. Cal. 2004) (EMC objecting to HP's expert because he "previously served as a consultant for EMC, at which time he received confidential information on EMC's trial strategies"); *Life Tech. Corp. v. Biosearch Techs., Inc.*, C-12-00852 WHA (JCS), 2012 WL 1604710, at *1 (N.D. Cal. May 7, 2012) (Life Tech objecting to Biosearch's expert because he had "acted as a consulting expert for Life Tech in another matter 'covering related technology'" and "discuss[ed] litigation strategy").

Here, unlike in the cases cited by Finjan, Dr. Cole fails to satisfy one of the conditions of serving as an "expert" that can view Juniper's confidential source code. Using him as an expert, therefore, would violate the Protective Order. *See, e.g.*, *Beam System, Inc. v. Checkpoint Systems, Inc.*, No. CV95-4068-RMT (AJWX), 1997 WL 364081, at *3-6 (C.D. Cal. Feb. 6, 1997) (selecting an expert who did not meet requirements of an "expert" under the Protective Order is a violation of the Protective Order). In situations such as this, the Court need simply determine whether or not Dr. Cole qualifies as an "expert" under the governing Model Protective Order and, if not, preclude him from viewing Juniper's confidential source code. *See TVIIM, LLC v. McAfee, Inc.*, No. 13-cv-04545-VC (KAW), 2014 WL 2768641, at *1-2 (N.D. Cal. June 18, 2014). Dr. Cole does not qualify as an "expert" and he should therefore be excluded from viewing Juniper's confidential source code.

## II.     Finjan Cannot Meet Its Burden To Establish Specific Harm Or Prejudice.

Under the appropriate standard, Finjan has not met its burden to establish the specific harm or prejudice required to deviate from the Model Protective Order. *See Verinata Health,* 2013 WL 5663434, at *1. The only prejudice alleged by Finjan is that "Dr. Cole is already familiar with the '494 Patent and how it is applied to technology" and "Finjan will incur substantial time and costs to find and work with a new expert." Dkt. No. 49 at p. 3. But this alleged prejudice is not supported by the record. To begin, an infringement analysis is unique for each product and Dr. Cole has not testified as to the operation of Juniper's products in prior matters. More significantly, Finjan has already disclosed, and Juniper has not objected to, three other experts offered by Finjan, including Nenad Medvidovic, Michael Mitzenmacher, and Andy Jian. Ex. 1 at p. 7. Finjan has never explained why one of these other experts cannot handle the analysis, especially given that Mr. Jian has ***already viewed*** Juniper's confidential source code, and Dr. Medvidovic has testified about the '494 Patent in multiple proceedings and is thus very familiar with the '494 patent. *See, e.g.*, Ex. 3; *see also, e.g.*, IPR2015-01892, Ex. 2007 and IPR2016-00159, Ex. 2011 (declarations by Dr. Medvidovic regarding the '494 Patent).

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

### III. Dr. Cole Presents A Substantial And Unjustifiable Risk To Juniper.

Even if Juniper were required to establish that allowing Dr. Cole to view its confidential information presents a substantial and unjustifiable risk (which Juniper is not required to do), the record demonstrates that such a risk exists. The Model Protective Order in this District precludes past employees of a party's competitor—such as Dr. Cole, who was a C-level employee at Juniper's competitor McAfee—from viewing confidential information. *See* Patent Local Rule 2-2 Interim Model Protective Order at Section 2.7. This provision was made the ***default*** because this District recognizes the substantial danger of disclosure of confidential information to parties with whom proposed "experts" have had significant financial relationships. That concern is precisely why, just weeks ago, another Court in this District denied Finjan the same relief it seeks here. *Finjan, Inc. v. Bitdefender Inc.*, Case No. 4:17-cv-04790-HSG, Dkt. No. 65 at p. 1 (N.D. Cal. Mar. 5, 2018) ("Former employees of a party or competitor shall not serve as experts.").

Finjan claims that Juniper's concerns about Dr. Cole's relationship with McAfee are "unreasonable" because "Dr. Cole has no plans to work again at McAfee, or any other security company." Dkt. No. 49 at p. 1. But this does not appear to be true. During the meet-and-confer process, Juniper offered to withdraw its objection to Dr. Cole if Dr. Cole agreed to not work for any of Juniper's competitors for a limited period of time. Ex. 2 at pp. 1-2. Finjan and Dr. Cole flatly refused this offer. *Id*.

Finjan further claims that "Dr. Cole's trustworthiness is demonstrated by his previous positions and conduct" and that he "has viewed the source code and technical documents in other cases without incident." Dkt. No. 49 at p. 3. Again, this does not appear to be true. Although Juniper has not been a party to any other cases with Finjan, Dr. Cole's compliance with applicable ethical standards was called into question in at least one prior case in which he was working with Finjan. *See Finjan, Inc. v. Blue Coat Systems, Inc.*, Case No. 5:15-cv-03295-BLF, Dkt. No. 447 at pp. 687-692 (N.D. Cal. Nov. 28, 2017). Although Juniper has no personal knowledge of the truth or falsity of these allegations—and Juniper is not making any accusations against Dr. Cole—Juniper asked Finjan to confirm that Dr. Cole has complied with all applicable ethical rules in his prior work for Finjan. Ex. 1 at pp. 1-3. Rather than provide this simple assurance (a one-line response, at most), however, Finjan has sent a series of evasive emails. *Id*. Finjan's evasiveness about Dr. Cole has only heightened Juniper's concerns. Thus, despite Finjan's assertions that Dr. Cole has "Top Secret security clearance" (not supported by any evidence) and that Dr. Cole "does not keep in contact with anyone from his time at McAfee" (Dkt. No. 49 at pp. 1-2), Finjan's and Dr. Cole's behavior strongly suggest a substantial risk to Juniper, including the potential for unauthorized disclosure of confidential information to Juniper's competitors.

    Respectfully submitted,
    */s/ Joshua Glucoft*
    Joshua Glucoft
    IRELL & MANELLA LLP
    *Attorneys for Defendant*
    Juniper Networks, Inc.