PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>JUNIPER NETWORKS, INC.,<br><br>        Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**FINJAN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT JUNIPER NETWORKS, INC.'S THIRD, FOURTH, FIFTH, AND SIXTH COUNTERCLAIMS AND TO STRIKE JUNIPER'S TENTH, ELEVENTH, TWELFTH, AND FOURTEENTH AFFIRMATIVE DEFENSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          July 26, 2018<br>Time:         8:00 a.m.<br>Courtroom:  Courtroom 12, 19th Floor<br>Before:      Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ..................................................................1

INTRODUCTION ..............................................................................1

FACTUAL BACKGROUND ................................................................3

I.   Prosecution of the '494 Patent.........................................................3

A.  Touboul Declaration ..............................................................3

II.  FINJAN'S DISCOVERY RESPONSES IN THE SYMANTEC ACTION ......................4
ARGUMENT ........................................................................................6

III.  JUNIPER'S PROSECUTION LACHES ALLEGATIONS ARE FACIALLY
IMPLAUSIBLE.............................................................................7

IV.  JUNIPER'S INEQUITABLE CONDUCT ALLEGATIONS REGARDING THE '494
AND '154 PATENTS ARE FACIALLY IMPLAUSIBLE ...............................10

A.  The '494 Patent ...............................................................11

1.   Juniper Mischaracterizes the File History and Prior Litigation Documents. .......11

2.   Mr. Touboul's Declaration is Accurate and Contains No Misrepresentations.....12

3.   Juniper Alleges No Facts Supporting Materiality of the Alleged
Misrepresentation. ..........................................................14

4.   Juniper Alleges No Facts Supporting Finjan's Specific Intent to Deceive the
PTO. ..........................................................................15

B.  The '154 Patent ...............................................................16

1.   Juniper's Inequitable Conduct Counterclaim Does Not Sufficiently Plead a
Misrepresentation, Let Alone a Material Misrepresentation..............................16

2.   Juniper's Inequitable Conduct Counterclaim Does Not Sufficiently Plead
Intent...........................................................................18

V.   JUNIPER'S UNCLEAN HANDS ALLEGATIONS ARE NOT
FACIALLY PLAUSIBLE.................................................................18

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

VI.  JUNIPER'S TWELFTH AFFIRMATIVE DEFENSE FOR ENSNAREMENT FAILS
      TO GIVE FINJAN FAIR NOTICE.................................................................................20

CONCLUSION .................................................................................................................21

FINJAN'S MOTION TO DISMISS JUNIPER'S                CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Media, LLC v. Elec. Arts, Inc.*,
  694 F.3d 1367 (Fed. Cir. 2012)................................................................................................. 15

*Adobe Sys. Inc. v. Norwood*,
  No. C 10-03564 SI, 2011 WL 2650945 (N.D. Cal. July 6, 2011) ........................................ 7

*AirWair Int'l Ltd. v. Schultz*,
  84 F. Supp. 3d 943 (N.D. Cal. 2015) ................................................................................. 7, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 7, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 7

*BlackBerry Ltd. v. Typo Prods. LLC*,
  No. 14-cv-00023-WHO, 2014 WL 1867009 (N.D. Cal. May 8, 2014)................................ 10, 16

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*,
  625 F.3d 724 (Fed. Cir. 2010)................................................................................................. 8

*Catch a Wave, Inc. v. Sirius XM Radio, Inc.*,
  No. C 12-05791 WHA, 2013 WL 1996134 (N.D. Cal. May 13, 2013)................................ 7, 21

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009)................................................................................................ 20

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)......................................................................................... 10, 12

*Feit Elec. Co. v. Beacon Point Capital, LLC*,
  No. 13-CV-09339, 2015 WL 557262 (N.D. Ill. Feb. 9, 2015) .......................................... 10

*Fiscars, Inc. v. Hunt Mfg. Co.*,
  221 F.3d 1318 (Fed. Cir. 2000)................................................................................................ 20

*Gilead Sciences, Inc. v. Merck & Co.*,
  Nos. 2016-2302, 2016-2615, 2018 WL 1936686 (Fed. Cir. Apr. 25, 2018) ..................... 18

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................................................. 7

i

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
　304 F.3d 829 (9th Cir. 2002) ............................................................................ 19

*Keystone Driller Co. v. Gen. Excavator Co.*,
　290 U.S. 240 (1933)......................................................................................... 18

*Lee v. City of Los Angeles*,
　250 F.3d 668 (9th Cir. 2001) ...................................................................... 7, 11

*Lucent Techs., Inc. v. Gateway, Inc.*,
　543 F.3d 710 (Fed. Cir. 2008)......................................................................... 13

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
　521 F.3d 1097 (9th Cir. 2008) ........................................................................... 6

*Nomadix, Inc. v. Hosp. Core Servs. LLC*,
　No. CV 14-08256 DDP, 2015 WL 3948804 (C.D. Cal. June 29, 2015) .................... 8, 9

*Oracle Corp. v. DrugLogic, Inc.*,
　807 F. Supp. 2d 885 (N.D. Cal. 2011) .............................................................. 14

*Powertech Tech., Inc. v. Tessara, Inc.*,
　10–0945, 2012 WL 1746848 (N.D. Cal. May 16, 2012). ................................... 21

*Qarbon.com Inc. v. eHelp Corp.*,
　315 F. Supp. 2d 1046 (N.D. Cal. 2004) ............................................................ 20

*Solis v. Zenith Capital, LLC*,
　No. C 08-4854 PJH, 2009 WL 1324051 (N.D. Cal. May 8, 2009) .................. 6, 12

*Sonos, Inc. v. D&M Holdings Inc.*,
　No. CV 14-1330-RGA-MPT, 2016 WL 4249493 (D. Del. Aug. 10, 2016) .................... 10

*Symbol Techs, Inc. v. Lemelson Med., Educ. & Research Found.*,
　422 F.3d 1378 (Fed. Cir. 2005)......................................................................... 8

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
　87 F. Supp. 3d 1263 (N.D. Cal. 2015) ....................................................... 15, 18

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　649 F.3d 1276 (Fed. Cir. 2011)................................................................ 10, 12, 16

*U.S. Water Servs., Inc. v. Novozymes A/S*,
　843 F.3d 1345 (Fed. Cir. 2016).............................................................. 15, 18

*X One, Inc. v. Uber Techs., Inc.*,
　239 F. Supp. 3d 1174 (N.D. Cal. 2017) .............................................................. 8

*Zep Solar Inc. v. Westinghouse Solar Inc.*,
  No. C 11-06493 JSW, 2012 WL 1293873 (N.D. Cal. Apr. 16, 2012) ........................................... 10

**Statutes**

35 U.S.C. § 119(e) ........................................................................................................................... 3

35 U.S.C. § 120 ......................................................................................................................... 3, 16

35 U.S.C. § 154 ............................................................................................................................... 9

**Other Authorities**

37 C.F.R. § 1.78 ........................................................................................................... 3, 9, 11, 16, 20

Fed. R. Civ. P. 9(b) ....................................................................................................................... 10

Fed. R. Civ. P. 12 ..................................................................................................................... 6, 18

Fed. R. Civ. P. 16(b) ....................................................................................................................... 5

MPEP § 201.11 (8th Ed., rev. 9, Aug. 2012) ......................................................................... 16, 20

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on July 26, 2018, at 8:00 a.m., or as soon thereafter as counsel may be heard by the Honorable William Alsup in Courtroom 12, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Finjan, Inc. ("Finjan") will and hereby does move the Court for an order granting Finjan's Motion to Dismiss Defendant Juniper Networks, Inc.'s ("Juniper") Third, Fourth, Fifth, and Sixth Counterclaims and to Strike Juniper's Tenth, Eleventh, Twelfth, and Fourteenth Affirmative Defenses ("Motion to Dismiss").

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Kristopher Kastens filed herewith and exhibits attached thereto, the proposed order submitted herewith, the pleadings and papers on file in this action, any evidence and argument presented to the Court at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

**STATEMENT OF ISSUES**

1.      Whether the Court should dismiss Juniper's Third, Fourth, Fifth, and Sixth Counterclaims and strike its Tenth, Eleventh, and Fourteenth Affirmative Defenses, which relate to prosecution laches, inequitable conduct, and unclean hands, because they are not sufficiently pled.

2.      Whether the Court should dismiss Juniper's Twelfth Affirmative Defense for ensnarement, which pleads no facts to support the defense.

**INTRODUCTION**

The Court should dismiss Juniper's Third, Fourth, Fifth, and Sixth Counterclaims and strike Juniper's Tenth, Eleventh, Twelfth, and Fourteenth Affirmative Defenses, because Juniper's claims are insufficiently pled and fail to state plausible defenses under the law.  Juniper's allegations for prosecution laches in both its Third Counterclaim and Eleventh Affirmative Defense consist of nothing more than conclusory assertions that do not amount to "an unreasonable and unexplained delay" or somehow present prejudice, which is required for such a defense.

FINJAN'S MOTION TO DISMISS JUNIPER'S                          CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

Juniper's Fourth and Fifth Counterclaims and Fourteenth Affirmative Defense of inequitable conduct for U.S. Patent Nos. 8,677,494 (the "'494 Patent") and 8,141,154 (the "'154 Patent")[1] are not facially plausible because Juniper's allegations do not amount to a misrepresentation to the Patent Office ("PTO") during prosecution of these patents that the PTO somehow relied upon.  For the '494 and '154 Patents, Juniper's allegations accuse Finjan's patent prosecutor, Ms. Dawn-Marie Bey, and an inventor, Mr. Shlomo Touboul, of making false representations.  Ms. Bey, however, is only accused of properly filing a petition pursuant to the rules governing the prosecution of patents because the earlier priority date was unintentionally not sought earlier.  Moreover, the PTO denied the petition, such that there was no reliance on the petition that could support an inequitable conduct claim.

The remaining allegations are directed to a declaration that Mr. Touboul submitted to the PTO relating only to the '494 Patent.  As demonstrated by the actual pleadings at issue, there is no conflict between Mr. Touboul's declaration submitted to the PTO and other statements that Finjan made during litigation, which are subject to judicial notice.  Thus, Juniper cannot identify any misrepresentations that support its counterclaim of inequitable conduct.  Moreover, Juniper falls far short of the stringent Federal Circuit standard for pleading this claim with particularity.  Specifically, Juniper entirely fails to plead facts sufficient to claim that any purported misrepresentation was material, or that any individual had a specific intent to deceive the Patent Office.

Similarly, Juniper's Sixth Counterclaim of unclean hands is not properly pled as a counterclaim.  Further, Juniper's allegations for unclean hands in its Sixth Counterclaim and Tenth Affirmative Defense are facially implausible because the facts that Juniper alleges—which are substantially the same as those Juniper relies on for inequitable conduct—do not give rise to bad faith or egregious conduct during the prosecution of the '494 Patent, '154 Patent, U.S. Patent No. 6,647,633 (the "'633 Patent") (Kastens Decl., Ex. 3), and U.S. Patent No. 7,613,926 (the "'926 Patent") (Kastens Decl., Ex. 4).  Finally, Juniper's Twelfth Counterclaim states nothing more than ensnarement applies, which does not provide Finjan with any notice of Juniper's defense.

---

[1] Declaration of Kristopher Kastens in Support of Finjan's Motion to Strike ("Kastens Decl.") filed herewith, Exs. 1-2.

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

Thus, Juniper's Third, Fourth, Fifth, and Sixth Counterclaims should be dismissed for failure to state a claim for relief, and Juniper's Tenth, Eleventh, Twelfth, and Fourteenth Affirmative Defenses, which incorporate the allegations in Juniper's Counterclaims, should be stricken.

## **FACTUAL BACKGROUND**

### I.    Prosecution of the '494 Patent

On October 23, 2012, as a part of the prosecution of the '494 Patent, Ms. Dawn-Marie Bey submitted a "Petition To Accept Unintentionally Delayed Claim of Priority Under 35 U.S.C. § 119(e) and § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" ("'494 Patent Petition"). Dkt. No. 92, ¶186; Kastens Decl., Ex. 5 at FINJAN-JN 004959-60. The PTO denied the '494 Patent Petition on November 27, 2012, such that the PTO did not rely upon the '494 Patent Petition. Dkt. No. 92, ¶ 18; Kastens Decl., Ex. 5 at FINJAN-JN 004952-53.

On January 7, 2013, the Patent Office initially determined that Ji was prior art to the '494 Patent and rejected the amendments. Dkt. No. 92, ¶ 188; Kastens Decl., Ex. 5 at FINJAN-JN 004944-51. On May 7, 2013, pursuant to the Manual of Patent Examining Procedure ("MPEP"), Ms. Bey submitted the Request for Continued Examination to overcome Ji as prior art, accompanied by Mr. Shlomo Touboul's declaration (the "Touboul Declaration"). Dkt. No. 92, ¶ 189. Juniper acknowledges that following Ms. Bey's Petition of October 2012, the PTO still issued a rejection on January 7, 2013 based on the Ji reference. Later, when the PTO issued a Notice of Allowance for the '494 Patent, it cited Mr. Touboul's Declaration of May 7, 2013 as overcoming the Ji reference—not Ms. Bey's Petition. Dkt. No. 92, ¶ 190; Kastens Decl., Ex. 5 at FINJAN-JN 004348-57.

#### A.    Touboul Declaration

Mr. Touboul's declaration of May 7, 2013, submitted as a part of the prosecution of the '494 Patent, confirmed that he is the sole inventor of certain claims of the '494 Patent—namely, Claims 1, 3, 4–6, 9, 10, 12–15 and 18, and that he conceived these claims in late 1996. Dkt. No. 92, ¶ 191; Kastens Decl., Ex. 5 at FINJAN-JN 004421-23. Mr. Touboul corroborated the Touboul Declaration with documentation for the Finjan "Surfgate" product, attaching a press release from October 1996

as an exhibit.  Kastens Decl., Ex. 5 at FINJAN-JN 004422-23.  Mr. Touboul did not allege in his

affidavit that he was the sole inventor of *all* claims of the '494 Patent.  On August 29, 2013, the PTO

issued a Notice of Allowance for the '494 Patent, stating that the press release attached to the Touboul

Declaration corroborated the requested priority date.  *Id.*, FINJAN-JN 004348-57 at 55 ("the submitted

Exhibit A Surfingate™ product press release titled 'Gateway Level Corporate Security for the New

World of Java™ and Downloadables' shows a publication date of October 31, 1996 which is prior to

September 10, 1997.  The rejection is hereby withdrawn and the claims are in conditions for

allowance.").

## II.   FINJAN'S DISCOVERY RESPONSES IN THE SYMANTEC ACTION

Finjan asserted the '494 Patent in *Finjan v. Symantec*, Case No. 4:14-cv-02998-HSG (N.D.

Cal.) (the "Symantec Action").  Dkt. No. 92, ¶ 191.  On December 4, 2014, Finjan identified the claims

it was asserting against Symantec in its infringement contentions for the '494 Patent, which included

Claims 1-6 and 10-15.  Kastens Decl., Ex. 6 at 2.  On March 3, 2017, pursuant to the Scheduling Order

in that case, Finjan narrowed the claims it was asserting against Symantec to Claims 1, 2, 5, 6, 10, 11,

14, and 15.  *Id.*, Ex. 7 at 1.

During discovery, Symantec asked Finjan a very broad interrogatory regarding different aspects

of information related to the conception and reduction to practice of the claims of the '494 Patent.  *Id.*,

Ex. 8 at 2.[2]  On June 7, 2017, Finjan served its Third Supplemental Response, simply indicating that

the inventors would have "knowledge related to the conception and reduction to practice of the '494

Patent," as follows:

> The date of conception for the asserted claims of U.S. Patent No.
> 8,667,494 ("the '494 Patent") began October 31, 1996 and continued
> through May 2000.  The date of constructive reduction of practice of the
> asserted claims of the '494 Patent is no later than November 7, 2011.
> Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were
> involved with, and may have knowledge related to the conception and
> reduction to practice of the '494 Patent.

---

[2] Exhibits 8-10 are copies of documents attached to Declaration of Kate E. Cassidy in Support of
Symantec's Motion to Amend Answer, filed in the Symantec Action on August 18, 2017.

FINJAN'S MOTION TO DISMISS JUNIPER'S                     CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

*Id.* at 2, 10.  Finjan's response discussed who had information regarding conception and reduction to practice of the '494 Patent and it only makes sense that co-inventors would have some knowledge about the related claims that Mr. Touboul invented in the same patent.  Thus, conception started with the claims Mr. Touboul solely invented in October 1996 and continued until May 2000, when the other named inventors of the '494 Patent further contributed to certain claims.  Finjan's response referred to all the named inventors, but never stated that each inventor was involved with every claim and it did not contend that all the named inventors were involved with claims 1, 3, 4-6, 9, 10, 12-15, and 18 that were discussed in the Touboul Declaration.

On June 26, 2017, after the close of fact discovery, Finjan served its Final Election of Asserted Claims and narrowed its asserted claims of the '494 Patent to claims 10, 14, and 15 according to the Scheduling Order.  Kastens Decl., Ex. 9 at 1.  With this election, Finjan for the first time narrowed the asserted claims of the '494 Patent to only those that were identified in the Touboul Declaration.

On July 26, 2017, Finjan supplemented its response to Interrogatory No. 1 as a housekeeping matter to reference a certificate of correction that had just issued for the '926 Patent.  Dkt. No. 92, ¶ 191; Kastens Decl., Ex. 10 at 11 (citing FINJAN-SYM 447977).  The only addition to Finjan's response to Interrogatory No. 1 was including the bates number for this certificate within the response. As a part of this supplement, Finjan included its entire previous responses for the other patents asserted in this case, including the prior verbatim response for the '494 Patent, as there were no new intervening facts related to these claims as there was for the '926 Patent.

In August 2017, Symantec sought to amend its answer in the Symantec Action to assert an inequitable conduct defense based on the same statements by Mr. Touboul that Juniper alleges in its Answer here.[3]  When Finjan and Symantec met and conferred regarding this proposed amendment, Finjan explained that Symantec's interpretation was incorrect and that Finjan would serve a clarifying supplement to its Response to Interrogatory No. 1 to address Symantec's concerns.  Finjan then in

---

[3] The Court denied Symantec's motion to amend on the basis that "Symantec has not satisfied the 'good cause' standard of Rule 16(b)" because it "has not been diligent."  Thus, the Court did not need to address the futility of the amendment.  *See* Kastens Decl., Ex. 11, Symantec Action, Dkt. No. 285 at 2–3.

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

good faith served a supplemental response that day, August 14, 2017, to Symantec's Interrogatory No. 1, clarifying that:

> The date of conception for claims of U.S. Patent No. 8,667,494 ("the '494 Patent") began October 31, 1996 and continued through May 2000. The date of conception for the ***currently*** asserted claims of the '494 Patent is October 31, 1996. The date of constructive reduction of practice of the asserted claims of the '494 Patent is no later than November 7, 2011. Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice claims of the '494 Patent.

Kastens Decl., Ex. 8 at 15 (emphasis added).

Thus, Finjan's responses stated that the asserted claims identified in Finjan's Final Election (claims 10, 14, and 15 of the '494 Patent) were conceived in 1996, the date stated in the Touboul Declaration. This supplementation made clear that conception of the entire '494 Patent and claims continued through 2000, when the other named inventors contributed. Finjan's supplemental response also maintained the accurate statement that all named inventors were involved with conception and reduction to practice of the invention of the '494 Patent, which is set forth in the different claims of the '494 Patent, including those for which Mr. Touboul is not the sole inventor.

## ARGUMENT

The Court may dismiss Juniper's Counterclaims under Rule 12(b)(6) for failure to state a claim because they "lack[] a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)(citation omitted). Similarly, this Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In particular, the Court may strike any defense that is "insufficient" because it fails to plead the elements of the defense or fails to provide an adequate factual basis. *See Solis v. Zenith Capital, LLC*, No. C 08-4854 PJH, 2009 WL 1324051, at *3-7 (N.D. Cal. May 8, 2009) (striking affirmative defenses because no factual bases were provided).

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

Juniper's pleading must include "enough facts to state a claim [for] relief that is plausible on its face."[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)(citation omitted).  Here, Juniper has pled claims and defenses that are facially implausible, such that they fail as a matter of law.  While this Court "must take all of the factual allegations" in Juniper's pleading "as true," it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Juniper's Counterclaims and Affirmative Defenses refer to certain file histories and litigation documents that are subject to judicial notice for the purposes of this Motion.  It is appropriate to consider these materials here to underscore the futility of Juniper's prosecution laches, inequitable conduct, and unclean hands allegations, as demonstrated below.  Courts may consider on a motion to dismiss or strike material properly submitted as part of the pleading and items that are proper subjects of judicial notice.  *See AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 950–51 (N.D. Cal. 2015) ("Matters which are appropriate subjects of judicial notice include 'matters of public record.'") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).  A document is not outside the pleading if the pleading specifically refers to the documents and if its authenticity is not questioned.  *Adobe Sys. Inc. v. Norwood*, No. C 10-03564 SI, 2011 WL 2650945, at *3 (N.D. Cal. July 6, 2011) (citations omitted).  The Court may consider the full text of the document, even if the pleading quotes it only in part.  *Id.* (citation omitted).

## III.   JUNIPER'S PROSECUTION LACHES ALLEGATIONS ARE FACIALLY IMPLAUSIBLE

The Court should dismiss Juniper's Third Counterclaim and Eleventh Affirmative Defense for prosecution laches because Juniper's allegations are not sufficiently pled or facially plausible.  The doctrine of prosecution laches requires "an unreasonable and unexplained delay in prosecution that

---

[4] "Within this district . . . there is widespread agreement" that the *Iqbal* and *Twombly* standard applies to affirmative defenses.  *Catch a Wave, Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2013 WL 1996134, at *1 (N.D. Cal. May 13, 2013) (citation omitted).

constitutes an egregious misuse of the statutory patent system" and there must be a finding of

prejudice. *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728-29 (Fed. Cir. 2010)

(internal quotations and citations omitted). The Federal Circuit has instructed that "[t]here are

legitimate grounds for refiling a patent application which should not normally be grounds for a

holding of laches, and the ***doctrine should be used sparingly lest statutory provisions be unjustifiably***

***vitiated.***" *Symbol Techs, Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385

(Fed. Cir. 2005)(emphasis added).[5]

   Here, Juniper's allegations of prosecution laches are conclusory and do not sufficiently plead

prosecution laches. Dkt. No. 92, ¶¶ 135, 170–176. In its counterclaim, Juniper sets forth the

conclusion that the '926, '633, '154, and '494 Patents are unenforceable on the grounds of

prosecution laches. *Id.*, ¶ 170. The next four "paragraphs" provide a single, conclusory sentence for

each patent that indicates the time at which the earliest claimed non-provisional application in the

chain of priority is dated. *Id.*, ¶¶ 171–174. Similarly, Juniper's affirmative defense has truncated

allegations regarding applications being filed and dates to which priority was claimed. *Id.*, ¶ 135.

   These allegations do not support an inference that Finjan's prosecution of the '926, '633, '154,

and '494 Patents was unreasonably delayed or that Juniper is somehow prejudiced from such

purported delay. In fact, the '494 Patent claims priority to the '194 Patent, which shows that the

original '388 Application was filed on November 6, 1997 and issued less than four years later on July

18, 2000 as U.S. Patent No. 6,092,194[6] ("the '194 Patent"). Kastens Decl., Ex. 1 at FINJAN-JN

---

[5] Notably, "the doctrine [of prosecution laches] had greater application in prior decades when patent
terms were measured from the date the application was approved." *Nomadix, Inc. v. Hosp. Core Servs.
LLC*, No. CV 14-08256 DDP (VBKx), 2015 WL 3948804, at *11 (C.D. Cal. June 29, 2015) (emphasis
omitted). Here, the patent term is based upon when the application is filed, not approved, such that
there is no incentive to engage in unreasonable delay. *Id.* ("The possibility of extending the lifetime of
one's monopoly created a perverse incentive to unreasonably prolong the prosecution process. That
incentive has now been removed by a change to the patent statutes setting the term from the date of
filing.")(emphasis omitted) (citing *Cancer Research*, 625 F.3d at 732).

[6] The '194 Patent is subject to judicial notice. *See X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d
1174, 1182 n.1 (N.D. Cal. 2017) (patents are subject to judicial notice).

003821 ('494 Patent); *id.,* Ex. 12 ('194 Patent); *see also Nomadix*, 2015 WL 3948804, at *11 (finding no delay where parent patent was issued within four years).

Moreover, Finjan filed various continuation and continuation-in-part applications based on the '194 Patent (which are subject to judicial notice) before filing applications for the asserted '494 and '926 Patents.  Kastens Decl., Exs. 13-15 (identifying, for example, U.S. Patent Nos. 6,804,780; 8,079,086; and 6,154,844).  Thus, Finjan diligently prosecuted its various patent applications during and following prosecution of the '194 Patent, including prosecutions that overlapped in time.  This is a far cry from cases in which a patentee files patents one at a time in order to unreasonably delay the prosecution.  *Nomadix*, 2015 WL 3948804, at *10-11 (distinguishing circumstances in which inventor sat on his rights and sequentially filed one application at a time to improperly extend patent monopoly).

In addition, the '494, '926, '644, and '154 Patents were timely and diligently filed and prosecuted.  Finjan's act of filing continuation and continuation-in-part applications in this manner is not only permitted, but in fact, it is standard practice in patent prosecution.  *See* MPEP § 201.07 (citing 37 C.F.R. § 1.78) ("A continuation application is an application for the invention(s) disclosed in a prior-filed copending nonprovisional application…"); *see also id.* § 201.08 (describing continuation-in-part applications).  Indeed, "[Finjan] cannot extend its monopoly past the 20-year mark, no matter how many continuation applications it files, because all those offspring patents would have a priority date that is the same as the parent."  *Nomadix*, 2015 WL 3948804, at *11 (citing 35 U.S.C. § 154(a)(2)).

As the court found in *Nomadix* when dismissing a prosecution laches counterclaim, the parent patent permits the presumption that the industry was aware of the "general outline" of subsequent patent claims, "mak[ing] it less likely that others in the industry could be substantially prejudiced by uncertainty as to [the patent holder]'s claims."  *Id*.  Accordingly, Juniper's conclusory, single sentence claim that "Juniper was prejudiced because it spent considerable resources marketing, selling, and importing updated versions of the accused products" is facially implausible.  Dkt. No. 92, ¶ 176.

FINJAN'S MOTION TO DISMISS JUNIPER'S                              CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

1    Therefore, Juniper cannot plead any facts to support unreasonable or unexplained delay or any

2    prejudice it has suffered that would satisfy the legal requirements for prosecution laches.  As such, the

3    Court should dismiss Juniper's counterclaim of prosecution laches because it is conclusory and

4    factually implausible.  *See, e.g.*, *Feit Elec. Co. v. Beacon Point Capital, LLC*, No. 13-CV-09339, 2015

5    WL 557262, at *3 (N.D. Ill. Feb. 9, 2015) (dismissing prosecution laches claim even with allegations

6    of over 20 years of prosecution history because "there does not appear to be a *per se* point at which an

7    unexplained delay becomes unreasonable."); *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-

8    RGA-MPT, 2016 WL 4249493, at *7 (D. Del. Aug. 10, 2016) (striking prosecution laches defense

9    because the pleadings "contain[ed] no information to support the elements of unreasonable and

10   inexcusable delay.").

11   **IV.    JUNIPER'S INEQUITABLE CONDUCT ALLEGATIONS REGARDING THE '494
          AND '154 PATENTS ARE FACIALLY IMPLAUSIBLE**

12

13        Juniper has failed to allege with "particularity" under Rule 9(b) that Finjan or its counsel

14   deliberately withheld or misrepresented material information with the specific intent to deceive the

15   PTO during prosecution of the '494 and '154 Patents.  *Therasense, Inc. v. Becton, Dickinson & Co.*,

16   649 F.3d 1276, 1287 (Fed. Cir. 2011) (citations omitted).  Under prevailing law, there must be

17   allegations showing specific intent by specific individuals to deceive the PTO, or at least that such

18   deceptive intent is the "single most reasonable inference able to be drawn from the evidence."  *Id*. at

19   1290 (citation and internal quotation omitted); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

20   F.3d 1312, 1326-27 (Fed. Cir. 2009); *see also Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C 11-

21   06493 JSW, 2012 WL 1293873, at *2 (N.D. Cal. Apr. 16, 2012) (granting motion to strike affirmative

22   defense of inequitable conduct); *BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014

23   WL 1867009, at *1-4 (N.D. Cal. May 8, 2014) (same).

24        The Court should dismiss Juniper's inequitable conduct counterclaims and Fourteenth

25   affirmative defenses, which incorporate by reference the allegations in Juniper's Fourth and Fifth

26   Counterclaims, because Juniper cannot meet the Federal Circuit's exacting standard of pleading

27   inequitable conduct.  With regard to both of these patents, at a fundamental level, Juniper's factual

28

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

allegations fail to show any misrepresentation or reliance by the PTO on such purported

misrepresentations for materiality purposes, as required to state its inequitable conduct defense.

Further, there is no evidence of intent.  Juniper's allegations must "permit the court to infer more than

the mere possibility of misconduct" which the Court simply cannot do for Juniper's inequitable

conduct allegations in both its counterclaims and affirmative defense, as discussed below.  *Iqbal*, 556

U.S. at 679.

### A.     The '494 Patent

Despite devoting several pages to its inequitable defense in its allegations for its Counterclaims

(Dkt. No. 92, ¶¶179–196), Juniper cannot muster a facially plausible claim of inequitable conduct for

the '494 Patent under either of the two grounds it raises—i.e., the Touboul's Declaration and Ms.

Bey's filing of the '494 Patent Petition.  Dkt. No. 92, ¶ 194; Kastens Decl., Ex. 5 at FINJAN-JN

004421-23, FINJAN-JN 004959-60.  As detailed above, Juniper misconstrues the file history and prior

litigation documents, which are subject to judicial notice and are the basis for Juniper's inequitable

conduct allegations for the '494 Patent.  *See* Section I-II; *see also AirWair Int'l*, 84 F. Supp. 3d at 950–

51 ("Matters which are appropriate subjects of judicial notice include 'matters of public record.'")

(citing *Lee*, 250 F.3d at 689).

### 1.     Juniper Mischaracterizes the File History and Prior Litigation Documents.

Juniper suggests that Ms. Bey's prosecution of the '494 Patent gives rise to inequitable conduct

because she filed the '494 Patent Petition, despite the fact that Ms. Bey followed the protocol provided

for by the MPEP, which Juniper acknowledges.  37 C.F.R. § 1.78; *see also* Dkt. No. 92, ¶ 186 ("A

representation that the entire delay in claiming priority was unintentional is required under 37 C.F.R. §

1.78(a).").  The fact that the PTO rejected the '494 Patent Petition at issue in Juniper's Answer is fatal

to Juniper's claim of inequitable conduct because it demonstrates that the PTO did not rely upon the

'494 Patent Petition in issuing the '494 Patent.  Dkt. No. 92, ¶ 188 ("the Petition was denied for failure

to comply with the formality of including the reference required to claim priority.").  Thus, there is no

material misrepresentation because the PTO issued a rejection based on the Ji reference in January 7,

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

2013, *after* Ms. Bey submitted the Petition in October 2012.  *Id.*  In other words, even accepting as true Juniper's allegations, there is no but-for materiality that Ms. Bey's Petition at issue in its Answer had any impact on the prosecution of the '494 Patent.  Thus, the filing of the '494 Patent Petition and statements contained therein is not material, much less a misrepresentation, and cannot be the basis for an inequitable conduct allegation.  *Therasense, Inc.*, 649 F.3d at 1295 (stating that proof of reliance is equivalent to proof of but-for materiality, such that materiality is satisfied only when a party is compelled to do what it would not have otherwise done, but for the misrepresentation).

Despite the fact that the Court need not consider whether Ms. Bey had the specific intent to deceive the PTO given that there is no material misrepresentation, Juniper does not provide any factual basis for its contention that Ms. Bey had the specific intent to deceive the PTO.  Rather, Juniper contends in a single, conclusory sentence that Ms. Bey's '494 Patent Petition "was false and intended to deceive the USPTO."  Dkt. No. 92, ¶ 187.  However, Juniper offers this allegation of specific intent "[o]n information and belief," without offering any basis for such belief.  *Id.*  Thus, Juniper's allegations as to Ms. Bey fail to meet even the usual pleading standard because they lack any underlying facts to support its purported counterclaim of inequitable conduct—the allegations certainly cannot meet the heightened pleading standard of "particularity" that a claim of inequitable conduct requires.  *See Solis*, 2009 WL 1324051, at *3-7 (striking affirmative defenses because no factual bases were provided); *Exergen Corp.*, 575 F.3d at 1326-27.

### 2.     Mr. Touboul's Declaration is Accurate and Contains No Misrepresentations.

Juniper's allegations that the Touboul Declaration "was an intentional misrepresentation of material fact intended to deceive the USPTO" are not facially plausible because Mr. Touboul never claimed that he invented every single claim of the '494 Patent on his own.  Dkt. No. 92, ¶ 191.  In fact, the Touboul Declaration and Finjan's positions during the Symantec action have been consistent and are not contradictory in any manner.  By conflating *every* claim of the '494 Patent with responses addressing the *asserted* claims in the Symantec case, Juniper attempts to invent an inequitable conduct allegation.

FINJAN'S MOTION TO DISMISS JUNIPER'S                         CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

Specifically, Juniper misconstrues Finjan's statement in its discovery response to a very broad interrogatory asking about many aspects of conception and reduction to practice.  Juniper is attempting to transform the statement that the named inventors "were involved with, and may have knowledge related to the conception and reduction to practice of the '494 Patent" to mean that Finjan asserted that all of the named inventors invented every claim of the '494 Patent.  Dkt. No. 92, ¶ 191; Kastens Decl., Ex. 8 at 6, 8, 10, 12, and 15.  Rather, Finjan's discovery responses establish what Finjan has always alleged—that the named inventors worked together on certain aspects of the '494 Patent and the inventors had information regarding the claimed invention of the '494 Patent.  The facts set forth in the discovery responses are consistent with the Touboul Declaration, as Mr. Touboul only states that he was the sole inventor on certain claims of the '494 Patent, a fact that Juniper pled.  Dkt. No. 92, ¶ 191 ("Mr. Touboul's testimony that he was the 'sole' inventor of certain of the claims under examination….").  The specific facts contained in the Touboul Declaration and Finjan's discovery responses during litigation that separate inventors were responsible for different claims in the '494 Patent is legally proper, because different claims in a patent can have different inventors and priority claims.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008) ("Patent claims are awarded priority on a claim-by-claim basis based on the disclosure in the priority applications.") (citations omitted).  Additionally, a named inventor on a patent is not required to have contributed to all claims of a patent; rather, the inventor is only required to have contributed to a single claim.  *Id.* at 721 (confirming that a named inventor is only required to have contributed to at least one claim).

Moreover, Juniper's allegations regarding Finjan's interrogatory response as with the words "***asserted claim*** of" highlighted misconstrues Finjan's response based on the timing of the disclosure in the case.  Dkt. No. 92, ¶ 191 (no emphasis added).  Under the scheduling order, Finjan was required to narrow its asserted claims and did so by identifying Claims 10, 14, and 15 (which Mr. Touboul had identified in the Touboul Declaration as the claims for which he was the sole inventor).  Kastens Decl., Ex. 9 at 1.  Thereafter, Finjan supplemented its response on August 14, 2017, setting forth that "[t]he date of conception for the ***currently*** asserted claims of the '494 Patent is October 31, 1996", thereby

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

updating our responses to reflect the asserted claims, which had just been narrowed in the case. *Id.*, Ex. 8 at 15 (emphasis added).

Thus, the Touboul Declaration is accurate and consistent with Finjan's discovery responses because Finjan used "asserted claims" to refer to those that Finjan originally asserted in its infringement contentions against Symantec, which included several claims that for which Mr. Touboul did not claim to be sole inventor in his declaration. Thus, it was accurate for Finjan to identify the other inventors of the '494 Patent in its discovery responses at the time of the response because it was referring to the claims that were asserted at that point in the case.

Further, the Court can take judicial notice of facts that Juniper elected not to pled, namely that after Symantec raised the issue with Finjan, Finjan immediately served a Fifth Supplemental Response to clarify that the subset of "currently asserted claims" (Claims 10, 14, and 15) were conceived in 1996, as these were all claims that Mr. Touboul invented individually, and did so to address Symantec's concern. *Id.*, Ex. 8 at 15.

Therefore, because there is no misrepresentation, much less a material one, there cannot be any inequitable conduct. *See Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 898–99 (N.D. Cal. 2011).

### 3.   Juniper Alleges No Facts Supporting Materiality of the Alleged Misrepresentation.

Juniper's claim of materiality of the purported misrepresentation is facially implausible. Juniper alleges that the "USPTO would not have issued the '494 Patent . . . but for Mr. Touboul's declaration that backdated his invention in order to overcome Ji's status as prior art." Dkt. No. 92, ¶ 194. However, Juniper has no support that Mr. Touboul submitted an allegedly false declaration "in order to overcome" prior art, because none of Finjan's statements cited in Juniper's counterclaim contradicts Mr. Touboul's statements in the Touboul Declaration. As shown above, Finjan's statements are consistent with Mr. Touboul's statement that he was the inventor of Claims 1, 3, 4–6, 9, 10, 12–15, and 18 of the '494 Patent, and that one or more of the listed inventors were co-inventors of

FINJAN'S MOTION TO DISMISS JUNIPER'S                CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

the remaining claims.  Thus, because there is no misrepresentation, there cannot be a material

misrepresentation.

Further, any purported misstatements in the Touboul Declaration (which do not exist) are

immaterial because Mr. Touboul's statements regarding sole inventorship in his declaration were not

the basis for the PTO's withdrawal of its rejection over the 1997 reference.  Rather, in issuing the '494

Patent, the PTO referred to the press release for Surfingate, which was attached to the Touboul

Declaration, that corroborated the 1996 priority date.  Kastens Decl., Ex. 5 at FINJAN-JN 004355

(withdrawing the rejection over the 1997 reference because 'the submitted Exhibit A Surfingate$^{TM}$

product press release titled 'Gateway Level Corporate Security for the New World of Java$^{TM}$ and

Downloadables' shows a publication date of October 31, 1996 which is prior to September 10, 1997.").

As such, Juniper's assertion that the PTO would not have issued the patent but for Mr. Touboul's

statement regarding his sole inventorship is implausible and there is nothing to support such a claim.

Dkt. No. 92, ¶¶ 193–194.  Juniper cannot be permitted to make allegations and suggest there is

inequitable conduct, when it has no basis to do so.

### 4.      Juniper Alleges No Facts Supporting Finjan's Specific Intent to Deceive the PTO.

Because Juniper does not identify any facts showing a material misrepresentation as a matter of

law, the Court need not consider whether Juniper adequately pled an intent to deceive.  *Takeda Pharm.*

*Co. v. TWi Pharms., Inc.*, 87 F. Supp. 3d 1263, 1288 (N.D. Cal. 2015); *U.S. Water Servs., Inc. v.*

*Novozymes A/S,* 843 F.3d 1345, 1354 (Fed. Cir. 2016).

Nonetheless, Juniper's allegations are implausible because they fail to plead facts that

demonstrate that Mr. Touboul specifically intended to deceive the PTO.  *1st Media, LLC v. Elec. Arts,*

*Inc.*, 694 F.3d 1367, 1375, 1376-77 (Fed. Cir. 2012) (finding no inequitable conduct where no

evidence of a deliberate decision to withhold a reference that the applicant knew was material).

Juniper's allegations of specific intent are conclusory and legally insufficient, basing its allegations

that Mr. Touboul specifically intended to deceive the PTO "on information and belief."  Dkt. No. 92, ¶

191 ("On information and belief, Mr. Touboul's testimony that he was the 'sole' inventor' … was an

intentional misrepresentation of material fact intended to deceive the USPTO"). The specific intent requirement for inequitable conduct defense, however, requires much more than a mere legal conclusion based on Juniper's belief. It requires "specific facts upon which the belief is reasonably based." *BlackBerry*, 2014 WL 1867009, at *3 ("Pleading on 'information and belief' is permitted…*only if the pleading sets forth the specific facts upon which the belief is reasonably based*.") (emphasis in original) (citation omitted). Juniper fails to allege these types of specific facts.

Indeed, there is no basis for any allegation of intent based simply on Mr. Touboul's statements that he is the inventor of certain claims of the '494 Patent and that the other inventors were responsible for some of the other dependent claims. Accordingly, Juniper's allegations regarding intentional misrepresentation are not only unsupported by any facts, but also insufficient as a matter of law to plead his specific intent. *See id.; see also Therasense*, 649 F.3d at 1290 (finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard and does not satisfy this intent requirement) (citation omitted). Therefore, Juniper's conclusory allegation of intent without any factual support cannot state a plausible claim for inequitable conduct.

### B.     The '154 Patent

#### 1.     Juniper's Inequitable Conduct Counterclaim Does Not Sufficiently Plead a Misrepresentation, Let Alone a Material Misrepresentation.

Similar to Juniper's facially implausible allegations for the '494 Patent based on the '494 Patent Petition, Juniper's allegations that Ms. Bey's filing of a "Petition to Accept Unintentionally Delayed Claim of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" on October 16, 2013 ("'154 Patent Petition"), does not sufficiently plead inequitable conduct. Dkt. No. 92, ¶ 202 (Fifth Counterclaim). First, there is no misrepresentation and Juniper did not plead facts to support its theory that the '154 Patent is not entitled to claim priority to U.S. Patent No. 7,757,289. *Id.*, ¶¶ 197–213. Ms. Bey took the appropriate steps provided for under 37 C.F.R. § 1.78 to claim the benefit of an earlier filing date. MPEP § 201.11 (8th Ed., rev. 9, Aug. 2012), available at

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

https://www.uspto.gov/web/offices/pac/mpep/old/mpep_E8R9.htm.  Thus, Juniper has no support for asserting the '154 Patent Petition and statements contained therein, somehow amounts to a misrepresentation of material fact, as the PTO permits such actions.  Dkt. No. 92, ¶ 203.

Second, Juniper makes a number of assertions "on information and belief.  *Id.*, ¶ 203 ("Finjan's representative Ms. Bey misrepresented a material fact to the USPTO and also violated her duty of candor to the USPTO when she represented that the delayed claim of priority in the '154 Patent was 'unintentional'") and ¶ 206 ("Finjan and Ms. Bey delayed claiming priority in order to attempt to maximize the value of the '154 Patent during pre-suit licensing negotiations ….").  Allegations regarding material misrepresentations[7] and intent cannot be sufficiently pled for inequitable conduct on "information and belief."  This is insufficient for the same reasons and based upon the same law cited above for the '494 Patent.  *See* Section III.A.

Third, there is no allegations of materiality with respect to the '154 Patent Petition, which is the basis for Juniper's inequitable conduct claim for the '154 Patent.  *See* Dkt. No. 92, ¶ 211 (setting forth the "who, what, where, when, why and "how").  Juniper concedes, as it must, that the PTAB instituted IPR on the Ross reference which was before the filing conception date of 2005 set forth in the '154 Patent Petition.  In other words, despite the fact that Finjan's counsel asserted an earlier priority date, it had no bearing on whether Ross was prior art.  The PTAB still considered Ross—which was filed November 17, 2005—as prior art.  Kastens Decl., Ex. 16 (Ross).  Because the priority date of the '154 Patent Petition is irrelevant to Ross, the '154 Patent Petition is not material and there is no materiality to support Juniper's inequitable conduct allegations.  Dkt. No. 92, ¶ 209.

Finally, Juniper's assertion that "other teachings in Ross are, in fact, 'but for' prior art that anticipates and/or renders obvious the claims of the '154 Patent'" are baseless and have no relevance to its claim of inequitable conduct because the PTAB considered the arguments that the petitioner raised in that IPR.  Dkt. No. 92, ¶ 209.  In fact, the PTAB determined that Ross did not invalidate the claims of the '154 Patent.  Kastens Decl., Ex. 17.  Thus, Juniper has not pled any facts to support a reasonable

---

[7]  While Juniper mentions Finjan's litigation with other parties (Dkt. No. 92, ¶ 204), such discussion is irrelevant because there was no misrepresentation in any of the cases identified.

FINJAN'S MOTION TO DISMISS JUNIPER'S                    CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES

inference that Ms. Bey, who in fact acted in accordance with the MPEP, made a material misrepresentation to the PTO, with the intent to deceive the PTO.

### 2. Juniper's Inequitable Conduct Counterclaim Does Not Sufficiently Plead Intent.

As with Juniper's other counterclaim of inequitable conduct for the '494 Patent, the Court need not consider whether Juniper adequately pled intent to deceive because Defendants cannot plead any material misrepresentation as a matter of law. *Takeda*, 87 F. Supp. 3d at 1288; *U.S. Water Servs.*, 843 F.3d at 1354.  Notwithstanding Juniper's failure to plead a material misrepresentation, Juniper has not provided with particularity allegations of inequitable conduct.  Juniper relies on the timing of the '154 Patent Petition compared to other Finjan litigations, pre-licensing negotiations, and another *inter partes* review proceeding (Dkt. No. 92, ¶¶ 204–210) to support its purported inequitable conduct counterclaim, which is ***not*** the single most reasonable inference in light of Ms. Bey's statement that the delay was unintentional. *Id.*, ¶¶ 202–203.  There is nothing to indicate that the non-material '154 Patent Petition was intentionally filed to specifically deceive the PTO.  The only allegations that remotely address intent are "under information and belief."  As explained above, such allegations do not survive a Rule 12 motion.

Thus, Juniper's allegations, including its allegations regarding the '154 Patent Petition, does not support any allegations, much less inference, that there was a specific intent to deceive the PTO. For the foregoing reasons, Finjan requests that the Court dismiss Defendants' inequitable conduct counterclaim regarding the '154 Patent.

## V. JUNIPER'S UNCLEAN HANDS ALLEGATIONS ARE NOT FACIALLY PLAUSIBLE

The Court should strike Juniper's unclean hands allegations in its Sixth Counterclaim and Tenth Affirmative Defense (which incorporates its allegations in its counterclaims) because Juniper cannot plead facts to demonstrate that Finjan's counsel's actions during prosecution was an egregious act of misconduct or made in bad faith. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244-45 (1933) (holding that the unclean hands doctrine is applicable where affirmative acts of egregious misconduct has occurred); *Gilead Sciences, Inc. v. Merck & Co.*, Nos. 2016-2302, 2016-

2615, 2018 WL 1936686, at *5 (Fed. Cir. Apr. 25, 2018) (holding that "unclean hands" included violations of conscience, inequity, or bad faith having an immediate and necessary relation to the matters brought before the court).; *cf.* Dkt. No. 92, ¶¶ 215–242 (Sixth Counterclaim) (offering only allegations of misconduct based on allegedly "conspicuous" timing of supplemental documentation to the PTO and the same infirm allegations Juniper made for its inequitable conduct counterclaims). Indeed, the court of appeals has recognized that "troubling" actions and "hands [that] are not as 'clean as snow'" do not necessarily rise to the level of unclean hands. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002)(citation omitted).

Here, the two main issues that Juniper raises is that Finjan made a misrepresentation of material fact, and that Finjan violated its duty of candor by filing a petition to claim a certain priority date, despite the fact that such actions are permitted during prosecution.  Juniper's factual allegations do not demonstrate any bad faith misrepresentation or egregious misconduct as required to state its unclean hands counterclaim.  Juniper's allegations mirror much of Juniper's prosecution laches and inequitable conduct allegations, which fail for the reasons set forth above.

Further, Finjan's amendments during the prosecution of the '494, '633, '926, and '154 Patents were well within the PTO's permitted procedures.  Juniper provides no factual basis for its unsupported allegations that "on multiple occasions it appears that Finjan has waited to see if a patent would be granted or validated with a later priority date in order to benefit from a later expiration date, and only when it becomes clear that the patent would not be granted or validated does Finjan seek to 'correct' its 'unintentionally' delayed priority claim in order to try to moot the asserted prior art."  Dkt. No. 92, ¶ 217.

With regard to the '633, '494, and '926 Patents, Juniper's allegations, taken as true, do not give rise to unclean hands because Ms. Bey prosecuted these patents in accordance with procedures allowed for by the PTO.  For the '633 Patent, Juniper walks through the prosecution of the patent and complains that Ms. Bey's actions—which were consistent with the practices provided for by the PTO—were a "misrepresentation of material fact to the USPTO and also violated her duty of candor to the USPTO when she represented that the delayed claim of priority in the '633 Patent was

'unintentional.'" Dkt. No. 92, ¶¶219–230 (regarding '633 Patent).  For the '494 and '926 Patents, Juniper similarly walks through the prosecution history of the related '822 Patent.  *Id.*, ¶¶231–240. Juniper has no facts to plead that these steps taken during prosecution somehow constituted "an egregious act of misconduct" or that they were made in bad faith.  There is no reasonable inference that the prosecution was done in bad faith with continuations and related filings from an initial application. This is a practice that is permitted and often employed.

Finally, all that Juniper has pled is that Finjan has prosecuted a family of patents over a period of time and it corrected the priority chain of the '822 Patent.  This is allowed pursuant to the MPEP, and does not amount to unclean hands or some egregious misconduct or bad faith.  *See* 37 C.F.R. § 1.78; MPEP § 201.11 (8th Ed., rev. 9, Aug. 2012), available at https://www.uspto.gov/web/offices/pac/mpep/old/mpep_E8R9.htm.  Thus, Juniper does not have any facts to support its unclean hands allegations.

## VI.   JUNIPER'S TWELFTH AFFIRMATIVE DEFENSE FOR ENSNAREMENT FAILS TO GIVE FINJAN FAIR NOTICE

The Court should strike Juniper's ensnarement doctrine affirmative defense because it fails to provide fair notice because Juniper has no facts to support the defense.  *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) (striking a defense that was pled merely by referring to the doctrine, with no underlying factual support to provide "fair notice" of the nature of the claim).  The sum total of Juniper's allegations is that Finjan's doctrine of equivalents claims are barred "under the Ensnarement Doctrine, which bars Finjan from asserting an infringement theory under the doctrine of equivalents that encompasses, or 'ensnares,' the prior art."  Dkt. No. 92, ¶ 136; *see DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009); *see also Fiscars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000) (disallowing ensnarement defense because defendant was required to "allege that its device is in the prior art, or that a hypothetical claim covering its device would be unpatentable.") (citation omitted).  Juniper provides no factual basis for its ensnarement defense.  For example, there is no identification of any alleged prior art or what claims

1   are subject to the defense.  This is particularly insufficient as Finjan has served its infringement

2   contentions in March in this case.

3         Because this defense is devoid of factual allegations in support, it fails to give Finjan fair

4   notice.  Thus, Juniper's ensnarement defense includes "only conclusory allegations, without providing

5   any information about the grounds upon which the defense[] rest[s]," such that it is insufficiently

6   pled.  *Catch a Wave*, 2013 WL 1996134, at *2 (citing *Powertech Tech., Inc. v. Tessara*, Inc., 10–0945,

7   2012 WL 1746848 at *5 (N.D. Cal. May 16, 2012)).

8   **CONCLUSION**

9         For the foregoing reasons discussed above, the Court should dismiss Juniper's Third, Fourth,

10  Fifth, and Sixth Counterclaims, and strike Juniper's Tenth, Eleventh, Twelfth, and Fourteenth

11  Affirmative Defenses.

12                    Respectfully submitted,

13  Dated:  June 15, 2018          By:  */s/ Lisa Kobialka*

14                                   Paul J. Andre (State Bar No. 196585)
    Lisa Kobialka (State Bar No. 191404)

15                                   James Hannah (State Bar No. 237978)
    Kristopher Kastens (State Bar No. 254797)

16                                   KRAMER LEVIN NAFTALIS
    & FRANKEL LLP

17                                   990 Marsh Road

18                                   Menlo Park, CA 94025
    Telephone: (650) 752-1700

19                                   Facsimile: (650) 752-1800
    pandre@kramerlevin.com

20                                   lkobialka@kramerlevin.com
    jhannah@kramerlevin.com

21                                   kkastens@kramerlevin.com

22                                   *Attorneys for Plaintiff*
    FINJAN, INC.

23

24

25

26

27

28

FINJAN'S MOTION TO DISMISS JUNIPER'S            CASE NO.: 3:17-cv-05659-WHA
COUNTERCLAIMS & STRIKE AFFIRMATIVE DEFENSES