# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7189

June 26, 2018

Hon. William Alsup
U.S. District Court, Northern District of California

      Re:      *Finjan, Inc. v. Juniper Networks, Inc.*, Case No. 3:17-cv-05659-WHA

Dear Judge Alsup:

      The Protective Order in this case prohibits counsel with access to the other party's confidential information from participating in patent prosecution activities that could "directly or indirectly" affect the scope of claims of any patent-in-suit (the "patent prosecution bar"). This provision comes directly from this district's Interim Model Protective Order ("Model PO"). Contrary to Finjan's argument, the instant dispute is not about meeting-and-conferring; instead, it is about Finjan's desire to weaken the patent prosecution bar.

      A strong patent prosecution bar is important to Juniper because Finjan is essentially a non-practicing entity that, as it admits, has sued a dozen network security companies for patent infringement just in the Northern District of California in the past five years. *See* Declaration of James Hannah ("Hannah Decl.") ¶ 4 (Dkt. No. 114-1). Finjan's interests lie primarily in maximizing the value of its patents in litigation, as opposed to (for example) drafting patents to protect the unique or innovative features of its products. It is therefore critically important to Juniper that any Finjan representative who has had access to Juniper's confidential information is prohibited from participating in patent prosecution activity that could impact claim scope.

      Finjan, in contrast, would love to have its attorneys with access to Juniper's confidential information involved in patent prosecution activities, particularly the pending *Inter Partes* Review ("IPR"). It is well-settled law that arguments made by a patent owner during an IPR "affect the scope or maintenance of patent claims." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) (extending the prosecution disclaimer doctrine to IPRs to "ensure that claims are not argued one way in order to maintain their patentability [during an IPR] and in a different way against accused infringers"). It would be in Finjan's best financial interests to have attorneys with confidential knowledge of Juniper's products making arguments in IPRs about the scope of those patents—knowing full well that those arguments become part of the prosecution history.

      The parties have already brought this dispute to the Court's attention once. In a filing dated April 25, 2018, the parties presented their respective positions on the prosecution bar to the Court. *See* Dkt No. 74 at 14, n.6, n.7. In that filing, Juniper argued in favor of the strong prosecution bar in the Model PO, while Finjan argued for a watered-down bar that would have allowed its attorneys with access to Juniper's confidential information to participate in IPRs. *Id.* After reviewing the joint submission, the Court expressly found "no good reason to deviate from the Interim Model Protective Order . . . and accordingly reject[ed] Finjan's arguments to that effect." Dkt. No. 83.[1]

---

[1] The instant "motion to compel" is an improperly styled motion for reconsideration of this Court's May 10, 2018 Order. Under Local Rule 7-9, a party must first seek leave from the Court to file a motion for reconsideration, and must, among other things, demonstrate that "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought" and is further prohibited from "repeat[ing] any oral or written argument made" previously (which was rejected by the Court). *See* Local Rule 7-9(b)-(c). Here, Finjan seeks to bypass these requirements, and does not even attempt to show any

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Finjan's motion erroneously suggests that the dispute between Juniper and Finjan could simply be worked out if the parties would just meet-and-confer more. But Finjan acknowledges—as it must—that because the Court rejected its effort to weaken the prosecution bar, the only way it can weaken the bar now is by stipulation with Juniper. But Juniper has told Finjan—in meet-and-confers—that Juniper does not believe a weak prosecution bar is appropriate in this case, and that it sees no reason to deviate from the language this Court has already endorsed. This is not, as Finjan suggests, a semantic dispute over the precise language of the bar; it is Finjan's attempt to overturn this Court's prior order rejecting Finjan's arguments in favor of a weak prosecution bar.

## I. Finjan Erroneously Interprets the Language of the Model Protective Order.

Finjan also suggests that this Court should intervene because the language of the Model PO is ambiguous regarding Finjan's counsel's participation in IPRs. There is no such ambiguity. The plain language of the Model PO provides that "any individual who receives access to [confidential] information shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action." *See* Model PO, § 8. The Model PO further describes "prosecution" as "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims," and including "for example, original prosecution, reissue and reexamination proceedings." *Id.* As discussed above, arguments made by a patent owner during an IPR "affect[s] the scope or maintenance of patent claims." *Aylus Networks,* 856 F.3d at 1360 (Fed. Cir. 2017). Indeed, Finjan was not able to explain during the meet and confer on May 30, 2018, how it would be possible for an individual defending a patent in an IPR to also not be "advising, or otherwise affecting the scope of patent claims." *See* Declaration of Sharon Song ("Song Decl.") ¶ 4. Thus, under the express terms of the Model PO, Finjan's counsel who received access to Juniper's confidential information are barred from involvement in IPR proceedings relating to the asserted patents.

Moreover, Finjan cannot in good faith assert that the Model PO does not bar IPRs because Finjan's counsel cannot use Juniper's confidential information to broaden Finjan's claims through the IPR. In fact, Finjan can use Juniper's confidential information obtained through this litigation to characterize or recast the meaning of certain claim terms during a related IPR in a way that benefits its arguments for patent infringement, especially where, as is the case here, the IPR proceeding is occurring at the same time as the litigation. The Model PO acknowledged this risk—that a claim term can be re-characterized in meaning to benefit a patentee even if the scope cannot be broadened—by expressly including *ex parte* reexaminations in its definition of "prosecution." *Ex parte* reexaminations, which existed before the America Invents Act, are similar to IPRs in that a patentee cannot broaden its claims through either type of proceeding. The Model PO's prosecution bar that includes *ex parte* reexaminations demonstrates that the risks associated with prosecution exist even when a proceeding does not allow a broadening of a patentee's claims.

## II. Finjan Failed to Engage in a Meaningful Meet and Confer with Juniper after Violating the Model Protective Order, and Fails to Show Specific Harm and Prejudice Necessary to Modify the Model Protective Order.

During the parties' correspondence regarding the Model PO's prosecution bar language, Juniper repeatedly asked Finjan, four separate times, to confirm that Kramer Levin has been complying with the currently governing Model PO by (1) confirming that no one who has had access to Juniper's confidential information has participated in the IPR initiated by Cisco (IPR2018-00391) ("Cisco '633 IPR"), which involves one of the patents asserted against Juniper, and

---

material difference in fact or law that exists between now and when it first presented its arguments for a weaker prosecution bar. Finjan also repeats in its letter brief all of the arguments it previously made (which the Court rejected). *Compare* Dkt. No. 74 at 14 n.7 *with* Dkt. No. 114. This violation of Local Rule 7-9(c) subjects Finjan to sanctions.

- 2 -

(2) describing what steps Kramer Levin has taken to ensure that no personnel who has had access to Juniper's confidential information will participate in the Cisco '633 IPR. Ex. 1 to Hannah Decl. Juniper emphasized that it was willing and ready to continue its conversations with Finjan about the prosecution bar (no matter how futile this seemed) once Finjan provided a substantive response to Juniper's questions. *Id.* at 2. Finjan has never provided one. Ex. 1 to Hannah Decl.

Juniper asked these questions of Finjan because it appears that Finjan has already violated the terms of the Model PO—and that this motion is Finjan's attempt to show that the best defense is an aggressive (though not necessarily good) offense. For example, Finjan first received access to Juniper's highly confidential source code on March 19, 2018. Finjan then filed its Patent Owner's Preliminary Response in the Cisco '633 IPR on March 28, 2018, listing as its counsel the same attorneys who had access to Juniper's confidential information. Indeed, even Finjan's own letter brief, Dkt. No. 114, suggests that Finjan's counsel, including Paul Andre, James Hannah, Michael Lee, and Jeff Price (all of whom have access to Juniper's confidential information) have participated in the Cisco '633 IPR. *See id.* at 1.

As Finjan is aware, this Court has already ruled that there is "no good reason to deviate from the Interim Model Protective Order" and "reject[ed] Finjan's arguments to that effect," Dkt. No. 83, despite Finjan's attempt to alter the language regarding the prosecution bar. *See* Dkt. No. 74 at 14 n.6, n.7. Indeed, Finjan failed then and fails now to meet its "burden of showing the specific harm and prejudice that will result if [Finjan's proposed modification regarding the prosecution bar] is not granted." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2013 WL 5663434, at *1 (N.D. Cal. Oct. 17, 2017). Further, maintaining the Model PO's default prosecution bar will not prejudice Finjan because Finjan already has separate counsel of record with the USPTO for ***all*** of the patents asserted in this matter (Bey & Cotropia PLLC), and Finjan has provided no explanation for why any post-grant proceedings related to the asserted patents cannot be handled by Finjan's existing counsel of record who does not share office space with the same individuals that will be reviewing Juniper's source code. *See also* Dkt. No. 74 at 14 n.6.

Moreover, Finjan mistakenly relies on a non-existent concept of "law-firm" estoppel to assert that all Irell & Manella LLP's ("I&M") attorneys need to uphold the same, consistent legal positions for all its different clients. This legal concept does not exist, and the attorneys of a particular law firm are not limited by the actions of their colleagues. Each I&M client has different interests and different priorities that are taken into account by I&M attorneys when crafting a specific, case-by-case litigation strategy. In fact, Kramer Levin Naftalis & Frankel LLP, the law firm representing Finjan, has also taken different positions with regard to the prosecution bar for cases where it served as counsel for the defendants in a patent infringement case. *See* Ex. A; Song Decl. ¶ 3.

Accordingly, Finjan's motion to compel should be denied in its entirety because (1) Finjan was the one who failed to engage in a meaningful meet and confer with Juniper after violating the terms of the Model PO and (2) Finjan's attempt to "clarify" the scope of the Model PO goes against the plain terms of the Model PO and is an improperly styled motion for reconsideration.

Respectfully submitted,
*/s/ Jonathan S. Kagan*
Jonathan S. Kagan
IRELL & MANELLA LLP
*Attorneys for Juniper Networks, Inc.*