# Kramer Levin

**REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED**

July 13, 2018

District Judge William Alsup
San Francisco Courthouse
Courtroom 12 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *FINJAN, INC. v. JUNIPER NETWORKS, INC.*, Case No.: 3:17-cv-05659-WHA

Dear Judge Alsup:

    The Court should deny Juniper Networks, Inc.'s ("Juniper") motion to compel production of the entirety of Mr. John Garland's email[1] to Finjan, Inc.'s ("Finjan") in-house counsel because the redacted sections were prepared in anticipation of litigation. Mr. Garland, Finjan's licensing director, had a call with Mr. Scott Coonan at Juniper about licensing Finjan's patents. He explicitly testified that he did not rely on the email at issue to refresh his memory of the call, such that this Court's Order and Federal Rule of Evidence 612(a)(2) do not apply. Fed. R. Evid. 612(a)(2); Garland Tr. 255:15-256:7. In fact, his testimony was that he had an independently clear and "bright" memory of the call, as Mr. Coonan was incredibly disrespectful in response to Mr. Garland's good faith efforts to negotiate.[2] As the call went badly, Mr. Garland sent an email regarding the call to Ms. Mar-Spinola, the Chief Intellectual Property Officer and Vice President of Legal Operations at Finjan, ████████████████████████████████████████████████.

    Mr. Garland testified fully regarding the call without reference to or reliance on this email that he later sent to Finjan's in-house counsel. Rule 612(a)(2) of the Federal Rules of Evidence only applies when the witness has reviewed a writing and it in fact refreshed his memory. Fed. R. Evid. 612(a)(2) (allowing production **only if** the witness used a writing to "refresh memory . . . before testifying, if the court decides that justice requires" it); *Goldman v. United States*, 316 U.S. 129, 132 (1942) ("[W]here a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced…"). Mr. Garland answered questions regarding his call with Mr. Coonan amounting to approximately 11 pages of testimony, and he indicated that he had a bright memory of the call. In fact, he testified that "the reason I recall it is—is, you know, it was the strange call. . ." *See* Garland Tr. 194:1-196:8; 211:19-219:20. When asked about any notes he may have taken, which was the email to Ms. Mar-Spinola, Mr. Garland confirmed he still had a "bright" memory of that call. Motion Ex. B, at 221:16-224:14. Juniper's counsel requested a recess for her to look at her notes. *See id.*252:4-12. Following the break, she asked further questions during her direct about the email. In response, Mr. Garland reiterated his earlier point that "[t]he call stands on its own . . . the call is a bright call that's a unique call between two individuals with a dozen or plus years of experience in this industry. That was the point I was making…it's like a lively exchange." Garland Tr. 252:15-253:15; 212:6-215:4 (explaining numerous idiosyncrasies of the call); *see also* note 2. To ensure that the record was not muddled on this point, Finjan's counsel asked a few redirect questions to clarify what he meant by saying that the call was "bright" and to confirm whether he relied on the email for his deposition testimony, as such a confirmation would definitively indicate whether Rule 612(a)(2) was triggered. *Fed. Trade Comm'n v. Directv, Inc.*, No. 15-cv-01129-HSG (MEJ), 2015 WL 7775274, at *5 (N.D. Cal. Dec. 3, 2015) (holding that

---

[1] Mr. Garland's "notes" are his memorialization within an email sent to counsel in anticipation of litigation, since the licensing discussion failed, and as a request for legal advice. Garland Dec. ¶ 2; Ex. 4.

[2] Mr. Garland's recollection of the call, without reference to his email to Ms. Mar-Spinola, is of no surprise, given that during the call Mr. Coonan mocked Mr. Garland by suggesting that Finjan disclose its claim charts publicly, that Finjan's engineers were unqualified to analyze a patent invented by another, and affirming that he would share information amongst all Finjan defendants. Garland Tr. 212:6-220:4.

"there is no indication [the witness] used the summary to refresh her recollection, and Rule 612 applies only where a witness uses a writing to refresh memory") (internal quotations and citations omitted).  Mr. Garland confirmed that he had not used his email to Ms. Mar-Spinola to refresh his memory:

> Q.  Did you remember the details of your call with Mr. Coonan in November 2015 without looking at documents?
>
> THE WITNESS:    Yeah.  This is a pretty unique call.  I mean, I have testified to this.
>
> Q.  Okay.  So –
>
> THE WITNESS:  Yeah.  I mean, it's – it's, you know, I have been doing this for 25 years.  It's a unique call.  It stands out.
>
> Q.  So you remembered the details of that call.  Is that right?
>
> THE WITNESS:  Yeah.
>
> Q.  And did you need to review your notes to prepare for your deposition today to testify about the call?
>
> THE WITNESS:  No.

Garland Tr. 255:15-256:7.

Juniper's counsel did additional redirect thereafter and asked whether Mr. Garland had discussed the substance of his testimony with his attorney during a break, to which he stated unequivocally "No."  Tr. 256:21-23.  Thus, Mr. Garland's testimony is that he did not, pursuant to the legal standard of Rule 612(a)(2), refresh his recollection from the email that he sent to Ms. Mar-Spinola regarding the phone call.  Nor is there any support for an allegation that his testimony was based on improper communications about the substance of his testimony during a break.  *See Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-CV-00698-LRH, 2011 WL 1447620, at *11 (D. Nev. Apr. 14, 2011) (holding that absent a showing of witness coaching, privileged document should not be disclosed **even if** it was in fact used to refresh recollection).

Despite having this testimony and not meeting and conferring with Finjan, Juniper still inexplicably moved to compel.[3]  If the Court disbelieves Mr. Garland's express testimony as to his recollection and applies Rule 612(a)(2), the Rule gives the Court discretion to weigh the interests of justice, including weighing the "objective of full disclosure and ascertainment of the truth" against "the interest in maintaining the confidentiality of protected material" and any "substantial harm" that might occur to the non-disclosing party if disclosure were required.  Fed. R. Evid. 612(a)(2); *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 26 (N.D. Cal. 1985) (weighing the interests of full disclosure, confidentiality, and substantial harm to one party).  Thus, the Rule is intended to be flexible and "nothing in the Rule [should] be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory does not automatically cause a waiver of privilege." Fed. R. Evid. 612, Committee Notes (1974).  In fact, the automatic production of writings used for refreshment is disfavored because it presents a danger of "fishing expeditions."  *Id.*  Here, Mr. Garland's email contains work product information prepared for and communicated to an attorney,

---

[3] The parties had a brief conversation in which Finjan informed Juniper's counsel that it was an email to in-house counsel and would include it on the privilege log.  The parties agreed that they would speak again after Finjan's counsel was able to locate the final transcript and Juniper's counsel represented that he would make a proposal the following week.  Rather than follow the agreement, Juniper's counsel simply sent emails demanding production and filed this motion, without ever attempting to meet and confer.

in anticipation of litigation, given the nature of the call.  See Fed. R. Evid. 502.  Mr. Garland and Mr. Coonan had actually discussed impending litigation between Finjan and Juniper during their call.  Ex. 2, at JNPR-FNJN 29011 00960591.  Contrary to Juniper's contentions, Finjan timely asserted this privilege, both at deposition and in a privilege log reflecting the email.  Mot. Ex. B, at 221:18-222:18; Ex. 3.  Finjan stands to suffer substantial harm if the Court orders disclosure of work product.  Finjan's efforts in anticipation of litigation should not be the subject of discovery, particularly where Finjan's 30(b)(6) and the witness involved in the discussions with Juniper provided detailed testimony on what happened without reference to any work product.  Moreover, Mr. Garland frequently engages in licensing discussions regarding the same patents, and permitting discovery into his requests for advice or thoughts in anticipation of litigation following licensing discussions will deter Finjan from attempting to negotiate with parties, as opposed to litigating.  Thus, there is a strong interest in maintaining the confidentiality of Finjan's work product.

Moreover, Juniper has no need for this information given the substantial testimony already provided, and there are no grounds to overcome Finjan's interest in nondisclosure.  First, Juniper already had the information it was seeking.  Juniper belatedly produced a transcript of the call, as it turns out that Mr. Coonan had secretly recorded it,[4] which Finjan did not learn until Juniper produced the transcript on June 28, 2018, well after Mr. Garland's deposition and after it filed a summary judgment motion on the issue of notice for damages.  See Dkt. No. 129 (Finjan's Opp. to Juniper's Mot. for Summary Judgment).  Thus, Juniper has no actual interest in obtaining disclosure of the email, such that the disclosure of work product protected information is unwarranted.  Here, work product protection does not "derogate from the search for the truth," which alleviates the Court's key concern in this analysis.  22.80 Acres, 107 F.R.D. at 22.  Juniper has not identified, nor can it, any need for the redacted material, as it stated only a desire for a "summary of that call." Mtn. Ex. D, at 1.  This is insufficient to describe what it seeks that it cannot obtain from the transcript or from the material Finjan produced, other than the revelation of Finjan's work product.

Second, Juniper has 11 pages of testimony from Mr. Garland from his independent memory of events, during which Juniper cross-examined Mr. Garland based on his memory.  Thus, they do not— and cannot, since they have the transcript and the factual information from Mr. Garland's email as well—contend that Mr. Garland's email is necessary for cross-examination and the development of full testimony.  Courts give less weight to the interest in disclosure when, as here, the witness adequately remembers the subject of his testimony and does not appear to be influenced by the reviewed document.  See, e.g., In re Kellogg Brown & Root, Inc., 796 F.3d 137, 144 (D.C. Cir. 2015) (holding that even if the witness refreshed his recollection, the writing will not be disclosed unless it influenced the witness's testimony); In re Rivastigmine Patent Litig. (MDL No. 1661), 486 F. Supp. 2d 241, 244 (S.D.N.Y. 2007) (denying disclosure of privileged document where the witness had authored it, the accuracy of her memory was not of central concern, and it was unlikely that it influenced her testimony).

For the above reasons, the interests of justice weigh heavily in favor of nondisclosure.  Even so, Finjan has in good faith produced a redacted copy of Mr. Garland's email.  Ex. 4.  Juniper has failed to demonstrate its entitlement to the redacted portions of Mr. Garland's email.

Sincerely,

/s/ James Hannah

James Hannah

---

[4] Unbeknownst to Mr. Garland, Mr. Coonan recorded the call in violation of California and federal laws prohibiting interception of communications without consent.  See Cal. Pen. Code § 632; Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 128 (2006) (holding that California privacy laws apply when a party in a one-party consent state records a conversation with a party in California, where all parties must consent to recording); 18 U.S.C. §2511 (prohibiting interception of communications, even if one party consents, if the interception was for tortious purposes); Cal. Bus. & Prof. Code § 17200 et seq. (prohibiting any "unlawful, unfair, or fraudulent business act").