IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> JUNIPER NETWORK, INC., <br><br> Defendant. | No. C 17-05659 WHA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES** |

## INTRODUCTION

In this patent infringement case, plaintiff moves to dismiss several of defendant's counterclaims and strike several affirmative defenses. For the reasons stated below, the motion to dismiss and strike is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Plaintiff Finjan, Inc., accuses defendant Juniper Networks, Inc., of infringing patents pertaining to malware-detection technology. Finjan's allegations have been summarized in a prior order dated February 14, which dismissed Finjan's claims of willfulness and induced infringement but allowed Finjan to move for leave to amend by February 22 (Dkt. No. 30 at 8). On February 28, Juniper filed an answer and counterclaims (Dkt. No. 42). On March 21, Finjan filed its answer to Juniper's counterclaims (Dkt. No. 45). An order dated May 11 granted in part Finjan's motion for leave to amend its complaint (Dkt. No. 85), and Finjan filed its

amended complaint on May 18 (Dkt. No. 88). On June 1, Juniper filed its answer to the amended complaint and reasserted the same counterclaims (Dkt. No. 92).

Finjan now moves to dismiss various counterclaims and strike related affirmative defenses, which are based on prosecution laches, inequitable conduct, and unclean hands. Finjan also moves to strike Juniper's affirmative defense for ensnarement (Dkt. No. 110 at 1).

This order follows full briefing and oral argument.

**ANALYSIS**

**1. LEGAL STANDARD.**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when its factual allegations, rather than mere conclusory statements, create the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a court dismisses for failure to state a claim pursuant to FRCP 12(b)(6), it should normally grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FRCP 12(d). A court, however, may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FRCP 12(f). Our court of appeals has not yet addressed whether the *Iqbal* and *Twombly* standard applies to affirmative defenses. "Within this district, however, there is widespread agreement that they do." *PageMelding, Inc. v. ESPN, Inc.*, No. C 11–06263 WHA, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012) (collecting cases). Therefore, after applying the same *Iqbal* and *Twombly* standard to affirmative defenses,

2

if a defendant pleaded "affirmative defenses [which] include only conclusory allegations, without providing any information about the grounds upon which the defenses rest, it has insufficiently [pleaded] these defenses." *Powertech Tech., Inc. v. Tessara, Inc.*, No. C 10–0945 CW, 2012 WL 1746848, at *5 (N.D. Cal. May 16, 2012) (Judge Claudia Wilken).

### 2. TIMELINESS OF FINJAN'S MOTION TO DISMISS.

As a threshold matter, Juniper argues that the instant motion to dismiss is untimely because it is directed to counterclaims to which Finjan has already answered in its initial answer to Juniper's counterclaims (*see* Dkt. No. 45). Finjan does not dispute that Juniper's filing of a second answer (along with the same counterclaims) to Finjan's amended complaint fails to revive Finjan's ability to move to dismiss. Because a Rule 12(b)(6) motion must be made before the responsive pleading, Finjan's instant motion to dismiss is untimely.

Our court of appeals, however, "allows an untimely motion to dismiss to be treated as a motion for judgment on the pleadings." *Washoe-Mill Apartments v. U.S. Bank Nat. Ass'n*, 639 F. App'x 485, 487 (9th Cir. 2016) (citing *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir.2004)). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). This order accordingly treats Finjan's untimely motion as a motion for judgment on the pleadings.

### 3. ENSNAREMENT (TWELFTH AFFIRMATIVE DEFENSE).

Finjan moves to strike Juniper's affirmative defense alleging that Finjan's claims of infringement under the doctrine of equivalents are barred due to ensnarement. Finjan argues that Juniper's pleading lacks fair notice.

Here, Juniper's one-sentence allegation amounts to the mere conclusion that ensnarement applies and thus Finjan is barred from using the doctrine of equivalents "that encompasses, or 'ensnares,' the prior art" (Dkt. No. 92 ¶ 136). No facts are alleged. Juniper's argument that its "detailed invalidity contentions" — which are *not* incorporated by reference — served pursuant to Patent Local Rules, is irrelevant for the purposes of dismissing

a claim based on the face of the complaint. Moreover, its citation to *ASUSTeK Comput. Inc. v. AFTG-TG LLC*, No. C 11–00192 EJD, 2011 WL 6845791, at *13 (N.D. Cal. Dec. 29, 2011), for the proposition that courts have allowed "allegations that merely list the statutory provisions of invalidity to survive motion to dismiss given [the] procedure of providing invalidity contentions under Local Patent Rules" is unavailing (Dkt. No. 134 at 11). Even if this were the law, the cited authority does not suggest that it applies to an ensnarement defense. Finjan's motion to strike Juniper's twelfth affirmative defense is therefore **GRANTED**.

### 4. PROSECUTION LACHES (THIRD COUNTERCLAIM AND ELEVENTH AFFIRMATIVE DEFENSE).

Finjan moves to dismiss Juniper's counterclaim for declaratory judgment of unenforceability of the United States Patent No. 7,613,926 ("the '926 patent"), United States Patent No. 7,647,633 ("the '633 patent"), United States Patent No. 8,141,154 ("the '154 patent"), and United States Patent No. 8,677,494 ("the '494 patent") due to prosecution laches.

"The doctrine [of prosecution laches] 'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) (quoting *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385–86 (Fed. Cir. 2005)). It also requires a showing of prejudice, which in turn requires "evidence of intervening rights, *i.e.*, that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." *Id.* at 729.

Here, Juniper has failed to plead adequate facts to show unreasonable and unexplained delay in prosecution. Juniper's third counterclaim amounts to mere recitation of the number of years that lapsed between the time Finjan filed its application for the parent patent and the applications for the four patents at issue here, rounded out with the conclusory statement that "Finjan unreasonably and unduly delayed in prosecuting each of" the four patents and that "[d]uring the delay, Juniper was prejudiced because it spent considerable resources marketing, selling, and importing updated versions of the accused products" (*see* Dkt. No. 92 ¶¶ 170–78). "[A]llegations of a bare lapse in time between patent applications, without other factual

4

allegations of unreasonable or unexplained delay, are insufficient to plausibly state a claim of prosecution laches." *Finjan, Inc. v. ESET, LLC*, No. C 17–00183 CAB (BGS), 2017 WL 3149642, at *3 (S.D. Cal. July 24, 2017) (Judge Cathy Ann Bencivengo).

At oral argument, Juniper explained that the timeline offered in this counterclaim and affirmative defense demonstrates a systematic strategy of delayed prosecution. While this after-the-fact explanation might (or might not) be sufficient to survive *Twombly*, the explanation itself was not actually alleged in the pleading itself. Finjan's motion to dismiss Juniper's third counterclaim and strike Juniper's eleventh affirmative defense is therefore **GRANTED**.

### 5. INEQUITABLE CONDUCT (FOURTH AND FIFTH COUNTERCLAIMS AND FOURTEENTH AFFIRMATIVE DEFENSE).

Juniper raises allegations of inequitable conduct regarding the '494 and '154 patents both as an affirmative defense and as separate counterclaims (Dkt. No. 92 ¶¶ 138, 179–213). Finjan moves to dismiss and strike these counterclaims and affirmative defense (which incorporates the allegations made within both counterclaims), arguing that Juniper failed to adequately plead material misrepresentation and specific intent to deceive the PTO under FRCP 9(b). To the extent set forth below, this order agrees.

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).

"Inequitable conduct . . . must be pled with particularity under Rule 9(b)." *Id*. at 1326 (quotations and alterations omitted). This requires identification of "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328. "Although knowledge and intent may be alleged more generally, a party must still allege sufficient facts to justify an inference that a specific individual had knowledge of the material information withheld or the falsity of the material misrepresentation and withheld or misrepresented that information with the intent to deceive." *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 896–97 (N.D. Cal. 2011) (citing *Exergen*, 575 F.3d at

5

1328–29) (Judge Joseph Spero). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5. "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Id*. at 1330. With these standards in mind, we now turn to the allegations at issue.

### A. Fourth Counterclaim ('494 Patent).

Juniper's fourth counterclaim alleges that Finjan made false statements to the PTO regarding how the '494 patent was conceived and invented. Specifically, the original application for the '494 patent listed four co-inventors and claimed a priority date of November 6, 1997, based on an earlier patent (Dkt. No. 92 ¶¶ 184–85).[1] The PTO then issued a non-final rejection of all claims as anticipated by the Ji patent, which was filed on September 10, 1997, and thus served as prior art (*id*. ¶¶ 184–85). Finjan's patent attorney Dawn-Marie Bey then filed an "Amendment And Response To Office Action Under 37 C.F.R. § 1.114" along with a declaration by Shlomo Touboul in which he testified that he had actually been the "sole" inventor of claims 1, 3–6, 9, 10, 12–15, and 18 (in the pending patent application) and that those claims had been conceived solely by him no later than November 18, 1996.

The Fourth Counterclaim alleges that Touboul "falsely represented that he was the sole inventor of certain claims in order to avoid the constraint that the other inventors listed in the '494 Patent application had not even started working for Finjan until years after the claimed date of conception" (*id*. ¶ 194). The PTO then issued a notice of allowance, finding that the Ji reference was no longer prior art based on the declaration (*id*. ¶ 189–90). Attorney Bey's claim of "unintentional" delay and Touboul's declaration backdating his invention to swear behind the Ji patent, according to Juniper, amounted to intentional misrepresentation (*id*. ¶ 189). And, because the patent would have been anticipated by the Ji reference (but for Touboul's declaration), the misrepresentation was material (*id*. ¶ 193).

---

[1] The four named co-inventors are Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul (Dkt. No. 92 ¶ 183).

6

As the main factual support for its allegation of Touboul's false representation, Juniper points to Finjan's interrogatory responses in *Finjan, Inc. v. Symantec Corp.*, No. C 14–02997 HSG (N.D. Cal.), where Finjan stated that "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice of the '494 [*sic*] Patent." The asserted claims at the time of Finjan's interrogatory response were claims 10, 14, and 15 (*id*. ¶ 191). This, Juniper asserts, constituted an admission "that all four of the originally named inventors had, in fact, contributed to the conception of those claims" (*ibid*.).

In response, Finjan argues that Juniper presents mere snippets from Finjan's discovery responses in the *Symantec* litigation and thus Juniper fails to adequately plead misrepresentation.[2] Finjan explains that in responding to Symantec's interrogatory related to the conception and reduction to practice of the '494 patent's claims, it simply (and broadly) indicated that the three other co-inventors (who began contributing to other claims of the '494 patent in May 2000) would have "knowledge related to the conception and reduction to practice of the '494 [*sic*] Patent" (Dkt. No. 110 at 4–5).

Juniper adequately pled the "who, what, when, where, and why" of Touboul's alleged misrepresentation. A review of the judicially noticeable interrogatory responses, however, reveals that Finjan's responses do not adequately support the alleged "how." When the interrogatory response is read in light of the full record as currently submitted, it is ambiguous whether Finjan admitted that all four of the originally named inventors had contributed to the conception of claims 10, 14, and 15. A plausible reading of the record is that Finjan admitted

---

[2] Finjan requests judicial notice of sixteen exhibits, which include various United States patents, portions of the '494 patent file history, Finjan's disclosures and responses to Symantec Corp.'s interrogatories in *Finjan, Inc. v. Symantec Corp.*, Case No. 14-cv-02998-HSG (N.D. Cal.), and documents from IPR2016–00151 and IPR2016–00159 (Dkt. No. 111). A court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Juniper does not oppose the documents' authenticity. It does, however, argue that judicially noticed documents may not be used to take notice of disputed facts contained therein, which is prohibited under FRE 210 (Dkt. No. 134 at 5). Courts "may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to [d]efendants that could reasonably be disputed." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Here, however, this order takes judicial notice of facts that could *not* be reasonably disputed based on the record as currently submitted. Accordingly, Finjan's request for judicial notice is **GRANTED**.

7

that Touboul alone invented claims 10, 14, and 15 of the '494 patent, whereas the other co-inventors (who arrived at Finjan after November 1996) contributed to other claims in the '494 patent.

This order therefore holds that Juniper has failed to adequately allege misrepresentation under FRCP 9(b). This order does not reach Finjan's further arguments that Juniper has failed to adequately plead *material* misrepresentation and intent to deceive. Finjan's motion to dismiss Juniper's fourth counterclaim and strike the fourteenth affirmative defense is therefore **GRANTED**.

### B. Fifth Counterclaim ('154 Patent).

Juniper's fifth counterclaim alleges that Attorney Bey delayed in claiming priority in the '154 patent "in order to defer the patent's expiration date" and "belatedly attempted to correct priority" once the '154 patent "was asserted in multiple litigations and subject to substantial invalidity challenges," including the Ross reference (Dkt. No. 92 ¶ 211). Juniper further alleges that Attorney Bey falsely asserted that the delay in claim of priority was "unintentional" in order to backdate the '154 patent behind Ross, which Palo Alto Networks, Inc., a defendant in another lawsuit, used as a primary reference in a petition for IPR (*id*. ¶¶ 207, 211). The Ross patent was filed approximately one month before the alleged parent of the '154 patent to which Attorney Bey "belatedly claimed priority." Finjan's counsel James Hannah then asserted in the IPR proceeding that conception occurred about half a month before the Ross reference was filed (*id*. ¶ 207–08).

This purported scheme by Finjan to "maximize the value" of the '154 patent "during pre-suit licensing negotiations" and correct the claim of priority "once it became clear" that the '154 patent would be subject to serious invalidity attacks in litigation" adequately pleads the "who, what, when, where, why, and how" of Finjan's alleged misrepresentation (*see id*. ¶ 206). For factual support, Juniper points to Bey's petition to the PTO "to accept a significantly delayed claim of priority," which "conspicuously coincided with a new campaign by Finjan to assert the '154 [*sic*] Patent," including alleged attempts to antedate the Ross reference (*see id*. ¶ 204, 211). As alleged, these facts are sufficient to support a reasonable inference that

Attorney Bey falsely represented that the delay in claiming priority was "unintentional" under the heightened pleading standard.

As Finjan points out, however, an IPR *did* issue on the '154 patent based on the Ross reference (and the '154 patent survived) (*id.* ¶ 209). Ross was not successfully antedated and thus not circumvented as prior art (*id.* ¶ 209). In other words, Attorney Bey's alleged misrepresentations regarding the '154 patent's priority date had no bearing on Ross's *status* as prior art and thus Juniper has not sufficiently pled but-for materiality, irrespective of whether Ross was allegedly *invalidating* prior art.

This order therefore holds that Juniper failed to allege the but-for materiality of Bey's alleged misrepresentation. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (requiring "but-for" materiality to establish inequitable conduct). It does not reach Finjan's further argument that Juniper failed to adequately plead intent to deceive. Accordingly, Finjan's motion to dismiss Juniper's fifth counterclaim and strike the fourteenth affirmative defense is **GRANTED**.

### 6. UNCLEAN HANDS (SIXTH COUNTERCLAIM AND TENTH AFFIRMATIVE DEFENSE).

Finjan moves to dismiss and strike Juniper's allegations of unclean hands with respect to the patents in Juniper's sixth counterclaim and tenth affirmative defense. Specifically, Juniper alleges that the '926, '633, '154, and '494 patents are unenforceable due to unclean hands (Dkt. No. 92 ¶¶ 216).

"The defense of unclean hands is essentially a cousin to inequitable conduct that lowers the materiality threshold on a showing of 'egregious misconduct' like perjury or the suppression of evidence." *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. C 14–08256 DDP (VBKX), 2015 WL 3948804, at *12 (C.D. Cal. June 29, 2015) (Judge Dean D. Pregerson).

"[A] determination of unclean hands may be reached when 'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation,' *i.e.*, 'for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court.'" *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone*

9

*Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)). The unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815 (1945).

Here, Juniper's tenth affirmative defense and sixth counterclaim based on unclean hands allegations are based on similar conduct underlying its inequitable conduct allegations (*see* Dkt. No. 92 ¶¶ 217–40). Juniper, however, further fleshes out Finjan's alleged scheme of "wait[ing] to see if a patent would be granted or validated with a later priority date in order to benefit from a later expiration date," and, only when clearly challenged by potentially invalidating prior art, "seeking" to " 'correct' its 'unintentionally' delayed priority claim in order to try to moot the asserted prior art" (*id.* ¶ 217). The allegations illustrate Finjan's "unusually abundant history of petitioning for allegedly 'unintentionally' delayed claims of priority." The factual allegations, Juniper asserts, when accepted as true, sufficiently plead how Finjan made misrepresentations of material facts and violated its duty of candor before the PTO. This order agrees.

For example, in addition to the '494 and '154 patents as discussed above, Juniper points to Finjan's conduct with respect to the '633 and '926 patents. With respect to the '633 patent, Finjan originally asserted an earliest claim to priority based on a non-provisional application to United States Patent No. 6,804,780 ("the '780 patent") filed on March 30, 2000. In January 2010, the PTO issued the '633 patent with the claimed chain of priority still extending no earlier than the '780 patent. In October 2013, however, in an *ex parte* reexamination against the '633 patent, the PTO rejected certain claims as obvious over a combination of Ji and the Liu patent, which had been filed on May 22, 1998. In February 2014, Attorney Bey again relied on the same "unintentional delay" narrative to file a "Petition to Accept Unintentionally Delayed Priority Claim Under 37 C.F.R. § 1.78" in an attempt to invoke priority dates of two other Finjan patents potentially antedating the relevant references. The PTO accepted Finjan's renewed petition. The PTO, however, issued a final rejection, finding that the claims were not adequately supported by the disclosure of the patents on which Finjan based its new claim of priority (*id.* ¶¶ 219–30).

The same tactic was employed regarding the United States Patent No. 7,058,822 ("the '822 patent"), Juniper alleges, on which the '494 and '926 patents asserted in the instant action claim priority. In May 2001, Finjan filed the patent application, which claimed priority based on a provisional application filed on May 17, 2000, and as a continuation-in-part to two prior applications filed on March 30, 2000, and April 18, 2000. In June 2006, the '822 patent issued based on that claim of priority. In December 2013, the PTO instituted an *ex parte* reexamination and rejected certain claims of the '822 patent over the Liu and Golan patents, filed May 22, 1998, and March 27, 1997, respectively. In March 2014 — eight years after the patent issued and almost thirteen years after the application was filed — Attorney Bey filed another "Petition to Accept Unintentionally Delayed Priority Claim Under 37 C.F.R. § 1.78" to include claimed priority based on patents potentially antedating prior art. Again, the PTO indulged the petition but ultimately issued a final rejection, finding that the patents on which Attorney Bey attempted to based priority did not sufficiently describe the '822 patent's claims (*id*. ¶¶ 231–36).

That each step individually was permitted by the PTO's procedures, as Finjan argues in defense of its conduct, does not address the bigger question: How many times does it take to "unintentionally" delay claim to priority before one can reasonably infer an *intentional* pattern? This order finds the overarching pattern as alleged by Juniper, when accepted as true, sufficiently pleads "egregious misconduct." Such a tactic, as alleged, goes beyond mere "hands [that] are not as 'clean as snow,'" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002), which would not by itself meet the unclean hands standard.

The totality of Juniper's allegations presents a troubling scheme. Looking at the forest instead of the trees, we see a pattern and practice of bringing to the attention to the PTO critical information only after the PTO examiner or industry itself has exposed the original priority date as ineffective to support a valid invention. In light of this practice, it then becomes all the more suspicious that Attorney Bey, time and again, would — only after potentially invalidating prior art is interposed — give the same story of "unintentional delay" in petitioning for a priority date conveniently predating prior art. Then Finjan tries to stretch the earlier disclosure to read on an

11

accused product, using abstract concepts as needed to connect the dots between the earlier disclosure and the accused product. The alleged delay tactics, if accepted as true, would be an abuse of the prosecution system, which this order finds would amount to "egregious misconduct." Accordingly, Finjan's motion to dismiss Juniper's sixth counterclaim and motion to strike Juniper's tenth affirmative defense are **DENIED**.

## CONCLUSION

For the foregoing reasons, Finjan's motion to dismiss (converted to judgment on the pleadings) and to strike are **GRANTED IN PART** and **DENIED IN PART**.

Finjan may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended responsive pleading to the extent disputed in this instant motion. The motion must include a proposed amended responsive pleading (and a redlined copy) and must explain why the new pleading overcomes all deficiencies, including those this order need not reach. Meanwhile, discovery may proceed on the affirmative defenses and counterclaims still in play.

**IT IS SO ORDERED.**

Dated: August 31, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE