IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Joshua P. Glucoft (SBN 301249)
jglucoft@irell.com
Casey Curran (SBN 305210)
ccurran@irell.com
Sharon Song (SBN 313535)
ssong@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

Rebecca L. Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>JUNIPER NETWORKS, INC.,<br><br>    Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**DEFENDANT JUNIPER NETWORKS, INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND ITS ANSWER TO FINJAN, INC.'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND COUNTER-CLAIMS**<br><br>Date: November 1, 2018<br>Time: 8:00 a.m.<br>Judge: William Alsup<br>Courtroom: 12 - 19th Floor |

**<u>NOTICE OF MOTION AND MOTION</u>**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 1, 2018, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12, 19th Floor, of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Williams Alsup, Defendant Juniper Networks, Inc. ("Juniper") will and hereby does move for leave to amend its answer and counterclaims to Finjan, Inc.'s ("Finjan") Second Amended Complaint ("SAC") for patent infringement.  This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the exhibits attached thereto, the proposed amended answer and counterclaims, all documents in the Court's file, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

**<u>STATEMENT OF RELIEF REQUESTED</u>**

Juniper seeks an order granting its motion for leave to file the proposed amended answer and counterclaims attached hereto, pursuant to the Court's order dated August 31, 2018.  *See* Dkt. No. 190.

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

Whether Juniper's proposed amended answer and counterclaims sufficiently address the issues identified by this Court in its August 31, 2018 Order Granting in Part and Denying in Part Motion to Dismiss Counterclaims and Strike Affirmative Defenses (Dkt. No. 190), and is thus ready to be filed at this time.

**MEMORANDUM OF POINTS AND AUTHORITIES**[1]

## I.      INTRODUCTION

On May 18, 2018, Finjan filed its First Amended Complaint ("FAC") for patent infringement.  On June 1, 2018, Juniper filed an answer and counterclaims to the FAC.  On June 15, 2018, Finjan filed a motion to dismiss certain of Juniper's counterclaims and affirmative defenses. On July 27, 2018 Finjan filed its Second Amended Complaint ("SAC"), to which Juniper filed an initial answer and counterclaims on August 10, 2018.  Subsequently, on August 31, 2018, this Court denied in part and granted in part Finjan's motion to dismiss.  *See* Dkt. No. 190.  Juniper's initial answer and counterclaims to the SAC asserted the same counterclaims and affirmative defenses that Finjan moved to dismiss**[2]**.

More specifically, in the August 31, 2018 Order, the Court denied Finjan's motion to dismiss and strike Juniper's allegations of unclean hands (Sixth Counterclaim and Tenth Affirmative Defense); granted Finjan's motion to strike Juniper's ensnarement defense (Twelfth Affirmative Defense); granted Finjan's motion to dismiss Juniper's allegations of prosecution laches (Third Counterclaim and Eleventh Affirmative Defense); and granted Finjan's motion to dismiss and strike Juniper's allegations of inequitable conduct related to the '494 Patent and '154 Patent (Fourth and Fifth Counterclaims and Fourteenth Affirmative Defense).  The Court identified the additional allegations necessary to overcome Finjan's objections to these counterclaims and affirmative defenses, and allowed Juniper to seek leave to file an amended responsive pleading within 21 calendar days.  Juniper now timely moves for leave to amend these affirmative defenses and counterclaims.

---

[1] All emphasis is added unless indicated otherwise.

[2] Given that Juniper's response to the FAC and SAC assert the same counterclaims and affirmative defenses that Finjan moved to dismiss, the redlined copy of the proposed amended responsive pleading attached as Exhibit 4 hereto is relative to Juniper's initial answer and counterclaims to the SAC.

- 2 -

## II.    ARGUMENT

### A.    Inequitable Conduct (Fourth and Fifth Counterclaims and Fourteenth Affirmative Defense)

To plead a claim of inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact . . . or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).  Under Federal Circuit law a breach of the "duty to prosecute patent applications in the Patent Office with candor, good faith, and honesty" involves affirmative misrepresentations of material facts "coupled with an intent to deceive [] constitutes inequitable conduct."  *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007).  Further, "knowledge and intent may be alleged more generally" as long as a party "allege[s] sufficient facts to justify an inference that a specific individual had knowledge of the material information withheld or the falsity of the material misrepresentation and withheld or misrepresented that information with the intent to deceive." *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 896-97 (N.D. Cal. 2011); *see also* Dkt. No. 190 at 5.

#### 1.    Fourth Counterclaim

Juniper's Fourth Counterclaim for declaratory judgment of unenforceability of the '494 Patent due to inequitable conduct is based in part on Juniper's allegations that named inventor Shlomo Touboul submitted a false declaration to the USPTO stating that he was the "sole" inventor on various claims of the '494 Patent.  Touboul submitted this declaration to allow Finjan to claim an earlier priority date for its patent application—which, in turn, would allow Finjan to overcome the Examiner's rejection of the '494 application based on U.S. Patent No. 5,983,348 to Ji.

In the August 31, 2018 Order, the Court held that Juniper "adequately pled the 'who, what, when, where, and why' of Touboul's alleged misrepresentation" that he was the "sole" inventor of claims 1, 3-6, 9, 10, 12-15, and 18 of the '494 Patent, but that Juniper had not pled sufficient facts to show that Mr. Touboul's statements were false.  Dkt. No. 190 at 7-8.  In particular, the Court found that Finjan's discovery responses in the *Symantec* case—which stated that the other inventors

were involved in the conception and reduction to practice of the claims of the '494 Patent—were not necessarily inconsistent with Mr. Touboul's statement that he was the "sole" inventor of certain claims because "it is ambiguous whether Finjan admitted that all four of the originally named inventors had contributed to the conception of claims 10, 14, and 15" of the '494 Patent. *Id.*

Juniper now seeks to amend its Fourth Counterclaim to include additional factual allegations that establish that Mr. Touboul's statement to the USPTO about the inventorship of Claim 10 was in fact false. Specifically, Juniper now alleges that one of Mr. Touboul's co-inventors—Mr. David R. Kroll—testified under oath that he contributed to Claim 10 while he was working at Finjan. Mr. Kroll testified as follows:

> Q. Great. But you are an inventor on the '494 Patent; Right?

> A. Yes.

Mr. Kroll then testified:

> Q. Yes. ***You helped come up with the idea behind claim 10 during your time at Finjan; is that right?***

> A. ***Yes.***

*See* Dkt. No. 446 (Trial Transcript) at 459:23-24, 460:24-461:1, *Finjan, Inc. v. Blue Coat Sys.*, *Inc.*, No. 5:15-cv-03295-BLF (N.D. Cal. Nov. 28, 2017) (Ex. 1). Mr. Kroll also testified that he began his employment at Finjan in 1999, which is at least three years ***after*** the November 18, 1996 date that Mr. Touboul submitted in his declaration to the USPTO. Ex. 1 at 451:11-12. Mr. Kroll's sworn testimony provides additional[3] factual support for Juniper's allegation that Mr. Touboul's declaration to the USPTO that he was the "sole inventor" of Claim 10 was an affirmative misrepresentation; if Mr. Kroll's sworn testimony is true, then Mr. Touboul's statement to the USPTO must be false. Juniper also pleads that Mr. Touboul's misrepresentation was material because the USPTO would not have withdrawn the Ji reference as prior art but for Mr. Touboul's false testimony that he was the sole inventor of certain claims of the '494 Patent and that he

---

[3] Juniper has also added allegations that Mr. Kroll, among others, signed an inventor's oath declaration stating that he was one of the original and first inventors of the subject matter disclosed in U.S. Patent No. 7,058,822, which has a substantially identical specification shared by the '494 Patent. These additional factual allegations further bolster the inference that at least Mr. Kroll was involved in the invention of claim 10 of the '494 Patent.

conceived of those claims by no later than November 18, 1996.  Thus, at least claim 10 would not have issued but for Mr. Touboul's misrepresentation.

Even if the patent would have issued over Ji regardless of Mr. Touboul's swearing behind the prior art, Mr. Touboul's affirmative misrepresentations alone support a finding of inequitable conduct.  In *Therasense, Inc. v. Becton, Dickinson & Company*, the Federal Circuit expressly recognized that ***affirmative*** misrepresentations are not subject to any "but-for" materiality requirement:  "When the patentee has engaged in affirmative acts of egregious misconduct, ***such as the filing of an unmistakably false affidavit***, the misconduct is material."  649 F.3d 1376, 1292 (Fed. Cir. 2011).  The Federal Circuit has since explained in *Outside the Box Innovations v. Travel Caddy, Inc.*, 695 F.3d 1285 (Fed. Cir. 2012) that "a false affidavit or declaration is ***per se*** material." *Id.* at 1294; *see also Intellect Wireless v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013) (proving that a declaration is unmistakably false "***alone*** establishes materiality").

Juniper alleges that Mr. Touboul filed a false affidavit as evidenced by, among other things, the sworn testimony of his co-inventors.  Juniper also alleges that the prosecuting attorney, Ms. Bey, filed a false certification[4] that her claim of priority was "unintentionally" delayed as evidenced by, among other things, the unusual abundance of such petitions, four "unintentionally" delayed claims of priority, and Ms. Bey's regular pattern and practice of filing such petitions for Finjan.  These affirmative misrepresentations are per se material regardless of whether the '494 Patent could have issued over prior art Ji notwithstanding these two declarations.

Juniper's amended allegations of inequitable conduct relating to the '494 Patent exceed those that survived motions to dismiss in cases concerning the same misrepresentations to the USPTO. *See, e.g.*, Dkt. No. 25 at 15-17, *Finjan, Inc. v. Bitdefender, Inc.*, No. 4:17-cv-04790-HSG (N.D. Cal.

---

[4] 37 C.F.R. 11.18(b) ("By presenting to the Office … any paper, the party presenting such paper [in this case, Ms. Bey] … is certifying that (1) All statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true, and all statements made therein are made with the knowledge that whoever, in any matter within the jurisdiction of the Office, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or knowingly and willfully makes any false, fictitious, or fraudulent statements or representations, or knowingly and willfully makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be subject to the penalties set forth under 18 U.S.C. 1001 and any other applicable criminal statute….").

Nov. 22, 2017) (alleging inequitable conduct regarding the '494 Patent).  The *Bitdefender* court's

holding on that motion to strike is equally applicable here:

> Bitdefender asserts that Touboul made the alleged false statements
> to overcome the PTO's rejection of the '494 Patent in view of U.S.
> Patent No. 5,983,348 (the "Ji Patent"). [] In response to the rejection,
> Touboul submitted a declaration stating that "claims 1, 3, 4–6, 9, 10,
> 12–15 and 18" of the '494 Patent were conceived by him, prior to
> the filing date of the Ji Patent application. [] After receiving
> Touboul's declaration, "[t]he Examiner allowed the claims . . .
> stating that '[t]he Declaration filed on May 7, 2013 under 37 CFR
> 1.131(a) is sufficient to overcome the Ji, U.S. 5,983,348 reference."
> [] According to Bitdefender, "when the '494 Patent was at risk, Mr.
> Touboul made a declaration to save it, claiming sole inventorship
> over 12 key claims, even though three others had previously
> declared they co-invented the 'subject matter. . . .'" [] As alleged,
> these facts are sufficient to support an inference that Touboul acted
> with intent to deceive the PTO. The Court therefore **DENIES**
> Plaintiff's motion to strike Bitdefender's thirteenth affirmative
> defense.

Dkt. No. 72 at 4-5, No. 4:17-cv-04790-HSG (N.D. Cal. Apr. 17, 2018) (some alterations in original;

ellipses in original; citations omitted) (Ex. 2).  The *Bitdefender* court only addressed the "but-for"

misrepresentation by Mr. Toboul (because Bitdefender did not plead the additional allegations

contained in Juniper's amended pleading with respect to Ms. Bey).  Thus, as the Bitdefender court

held, even without the additional allegations concerning Ms. Bey's behavior, Juniper's current

allegations are sufficient to support an inference that Finjan acted with intent to deceive the

USPTO—and are thus *per se* material misrepresentations.

### 2.    *Fifth Counterclaim*

The Court found that Juniper's Fifth Counterclaim for declaratory judgment of

unenforceability of the '154 Patent for inequitable conduct "adequately plead[ed] the 'who, what,

when, where, why and how' of Finjan's alleged misrepresentation."  But the Court dismissed the

claim upon a finding that "Juniper failed to allege the but-for materiality of Bey's alleged

misrepresentation."  Dkt. No. 190 at 8-9 (citing *Therasense*, 649 F.3d at 1291).

Juniper seeks to add allegations to make clear that it is alleging inequitable conduct under an "affirmative egregious misconduct" theory as opposed to a "but-for materiality" theory.  While the Federal Circuit noted in *Therasense* that "but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct," the court also stated that it "recognizes ***an exception*** [to but-for materiality] in cases of ***affirmative egregious misconduct***."  *Id.* at 1291-92.  This exception embraced a long line of cases holding that "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, ***such as the filing of an unmistakably false affidavit***, the misconduct is material."  *Id.* at 1292 (citing *Rohm & Haas Co. v. Crystal Chem Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("In contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material.")).  The Federal Circuit has made clear (in post-Therasense decisions) that "a false affidavit or declaration is ***per se material***."  *Outside the Box Innovations*, 695 F.3d at 1294; *see also Intellect Wireless*, 732 F.3d at 1342 (proving that a declaration is unmistakably false "***alone*** establishes materiality").

Juniper seeks to add allegations to its Fifth Counterclaim for inequitable conduct describing Finjan's overarching pattern of misrepresentations of material facts made to the USPTO for allegedly "unintentionally" delayed claims of priority.  *See* Ex. 3 and 4.  Juniper also incorporates by reference the factual allegations in its Fourth and Sixth Counterclaims for inequitable conduct relating to the '494 Patent and unclean hands, respectively.  As described above, this Court already held that the factual allegations asserted by Juniper which evidence Finjan's overarching scheme—trying to get a later priority date for a patent, and (if and only if the USPTO rejected this effort) claiming that it made an innocent mistake about proper priority date, and seeking to "correct" its "unintentionally" delayed priority —sufficiently plead "an abuse of the prosecution system, which [the court] finds would amount to '***egregious misconduct***.'"  Dkt. No. 190 at 11-12.  Juniper alleges "affirmative egregious misconduct" by Finjan that is per se material because Ms. Bey filed an "unmistakably false affidavit" stating that the delay in claiming priority was "unintentional" as part of a pattern of abuse of the patent system, and these allegations are sufficient to establish inequitable conduct.

### A.      Prosecution Laches (Third Counterclaim and Eleventh Affirmative Defense)

In its August 31, 2018 Order, the Court found that Juniper failed to plead adequate facts to show unreasonable and unexplained delay in prosecution to support its allegations of prosecution laches.  Dkt. No. 190 at 4 (citing *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) ("The doctrine of [prosecution laches] 'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances.")).  Specifically, the Court noted that Juniper's allegations at oral argument of Finjan's "systematic strategy of delayed prosecution" were not actually properly included in Juniper's pleading.  Dkt. No. 190 at 5.

Juniper now seeks leave to add allegations to its prosecution laches affirmative defense and counterclaim regarding Finjan's systematic strategy of delayed prosecution.  Juniper has alleged that this is not simply a single instance of delayed prosecution, but instead is a pattern of delay on a series of related patents.  "Taken singly, the delay in the prosecution on any one particular application will surely not appear to merit relief by the courts in equity. On the other hand, an examination of the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims, may trigger laches."  *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385-86 (Fed. Cir. 2005).  Juniper seeks to add allegations that, although Finjan's years-long delay in prosecuting the patents may not be indicative of unreasonable and unexplained delay when viewed individually, in aggregate they evidence an abuse of the patent system.  Juniper also adds allegations that many of the patents-at-issue were subject to terminal disclaimers because the USPTO already found that many of these later applications were substantially similar to earlier issued claims, and "refiling an application solely containing previously-allowed claims for the business purpose of delaying their issuance can be considered an abuse of the patent system." *Id.*

Juniper has also incorporated by reference Juniper's allegations regarding Finjan's repeated petitioning for the USPTO to accept allegedly "unintentionally" delayed claims of priority.  The Court has already found that Juniper's allegations (now incorporated by reference) regarding

1   Finjan's scheme of waiting to see if a patent would be granted or validated with a later priority date

2   and only "correcting" its "unintentionally" delayed priority claim if the USPTO would have rejected

3   the patent based on the initial date submitted by Finjan sufficiently pleads "an ***abuse of the***

4   ***prosecution system***, which [the court] finds would amount to '***egregious misconduct***.'"  *Id.* at 11-

5   12.  In sum, these allegations of "unintentionally" delayed claims of priority along with Finjan's

6   years-long delay in prosecuting a large number of applications, many of which were held by the

7   USPTO to be substantially similar to previously issued patents, are sufficient to plead the requisite

8   "unreasonable and unexplained delay in prosecution" that "constitutes an egregious misuse of the

9   statutory patent system."  *Cancer Research*, 625 F.3d at 728.

10        **B.    Ensnarement (Twelfth Affirmative Defense)**

11        The Court dismissed Juniper's affirmative defense of ensnarement because it found that no

12   facts were alleged.  *Id.* at 3.  In its proposed amended answer and counterclaims, Juniper adds

13   extensive factual allegations to specifically identify how Finjan's claims of infringement under the

14   doctrine of equivalents encompass, or "ensnare," the prior art for each asserted patent in this case.

15   Juniper has, for example, identified specific pieces of prior art that would be ensnared by adopting

16   Finjan's doctrine of equivalents theories for specific claim limitations.  Juniper has also specifically

17   incorporated by reference its Invalidity Contentions served pursuant to Patent Local Rule 3-3 as

18   additional allegations of how the prior art would be ensnared by Finjan's theories under the doctrine

19   of equivalents.  There do not appear to be any courts that have ever dismissed the defense of

20   ensnarement where the defendant has identified specific examples of prior art as allegedly ensnared

21   when applying the doctrine of equivalents.

22        **C.    There Is No Prejudice to Finjan**

23        Courts in this district have held that if a defense is stricken, "[i]n the absence of prejudice to

24   the opposing party, leave to amend should be freely given."  *Powertech Tech., Inc. v. Tessera, Inc.*,

25   No. C 10-945, 2012 WL 1746848, at *3 (N.D. Cal. May 16, 2012) (quoting *Wyshak v. City Nat'l*

26   *Bank*, 607 F.2d 824, 826 (9th Cir.1979)) (alteration in *Tessera* order); *Maquet Cardiovascular LLC*

27   *v. Saphena Med., Inc.*, No. C 16-07213 WHA, 2017 WL 3215355, at *1 (N.D. Cal. July 27, 2017)

28

1   ("Absent prejudice or a strong showing of another factor, there is a presumption under Rule 15(a)

2   in favor of granting leave to amend.").

3       In its Reply in support of its Motion to Dismiss, Finjan identified no potential prejudice in

4   permitting Juniper to amend.  *See* Dkt. No. 150 at 15.  Finjan's inability to identify any potential

5   prejudice is not surprising given that:  (A) fact discovery does not close until the end of March 2019,

6   giving Finjan more than six months to conduct relevant discovery; and (B) Finjan has been on full

7   and fair notice of Juniper's defenses and counterclaims since Juniper first pled them back in

8   February (Dkt. No. 42 at 19-36) as evidenced by the fact that Finjan previously answered these

9   counterclaims (Dkt. No. 45), which is why Finjan's untimely motion to strike was converted by the

10  Court to a motion for judgment on the pleadings (Dkt. No. 190 at 3).  In other words, the relatively

11  early stage of the case and the fact that Finjan has had fair notice of these allegations for months

12  strongly weigh against a finding of prejudice to Finjan.

13  **III.    CONCLUSION**

14      Juniper respectfully requests that the Court grant Juniper leave to amend certain of its

15  affirmative defenses and counterclaims to incorporate substantial new factual allegations, and

16  because there is no legitimate prejudice to Finjan.

17

18  Dated:  September 21, 2018                Respectfully submitted,

19                                           IRELL & MANELLA LLP

20                                           By:  */s/ Rebecca L. Carson*
                                                  Rebecca L. Carson (SBN 254105)
21                                                rcarson@irell.com
                                                  840 Newport Center Drive, Suite 400
22                                                Newport Beach, CA  92660-6324
                                                  Tel: (949) 760-0991 | Fax: (949) 760-5200
23
                                                  *Attorneys for Defendant*
24                                                JUNIPER NETWORKS, INC.

25

26

27

28