PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT JUNIPER NETWORKS, INC.'S MOTION FOR LEAVE TO AMEND ITS ANSWER TO FINJAN, INC'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND COUNTER-CLAIMS**<br><br>Date: November 1, 2018<br>Time: 8:00 a.m.<br>Judge: William Alsup<br>Courtroom: 12 - 19th Floor |

Plaintiff Finjan, Inc. ("Finjan") submits this Opposition to Defendant Juniper Networks, Inc.'s ("Juniper") Motion for Leave to Amend its Answer to Finjan's Second Amended Complaint for Patent Infringement and Counterclaims, filed at Dkt. 197 ("Motion").

## I.  INTRODUCTION

The Court should deny this Motion because Juniper's Amended Answer fails to remedy the deficiencies in its prior allegations. While the Court gave Juniper the opportunity to request leave to amend, the Court also ordered that Juniper "must explain why the new pleading overcomes all deficiencies, including those this order need not reach." *See* Dkt. No. 190. Juniper has not done so.

First, Juniper fails to add *any* new facts to support its baseless inequitable conduct accusations against attorney Dawn-Marie Bey. Instead, Juniper doubles down on pure speculation that an officer of the Court must have had intent to deceive, and recasts Ms. Bey's petitions as "unmistakably false" and "egregious misconduct" without any new facts to support such claims. Second, with regard to Mr. Touboul's declaration, Juniper's reliance on a one-word answer given by a lay-person, in response to a vague question that did not call for a legal opinion on inventorship, does not establish that Mr. Touboul himself made any sort of misrepresentation or that he intended to do so. Thus, Juniper's amended allegations of inequitable conduct still do not meet the Federal Circuit's heightened pleading standards for showing a "material misrepresentation" with a specific "intent to deceive."

Juniper's amended claim of prosecution laches fares no better. As an initial matter, due to a change in the law on how patent terms are measured there is no longer any incentive for a patentee to delay filing. In any event, the only new facts that Juniper alleges to support its prosecution laches claim concern terminal disclaimers and Finjan's lack of explanation to the PTO, which have nothing to do with unreasonable delay. Juniper's proposed amendments fail to address unreasonable delay or demonstrate any prejudice to Juniper, and are therefore insufficient. Accordingly, the Court should deny Juniper's request for leave to amend its inequitable conduct and prosecution laches claims.[1]

---

[1] Finjan does not oppose Juniper's amendment to the ensnarement doctrine affirmative defense.

1

FINJAN'S OPP. TO DEF.'S MOT. FOR LEAVE TO AMEND         CASE NO. 3:17-cv-05659-WHA
ITS ANSWER TO FINJAN'S 2ND AMENDED COMPLAINT

## II. STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should deny this Motion where Juniper's proposed amendments to its allegations of inequitable conduct and prosecution laches do not cure its prior deficiencies.

## III. ARGUMENT

### A. Alleged Inequitable Conduct of the '494 Patent (Fourth Counterclaim) and '154 Patent (Fifth Counterclaim)

Juniper still does not allege facts showing that Ms. Bey's statements during prosecution of the '494 or '154 Patents constitute a misrepresentation, or that Mr. Touboul's statement—that he is the sole inventor of *certain* claims of the '494 Patent—were false. Instead, Juniper doubles down on the same deficiencies in its original answer by continuing to rely on speculation with no evidence showing any false statements were made.

#### 1. Ms. Bey's Petitions Do Not Contain Any Misrepresentations

Juniper does not plead any new facts to support an allegation that Ms. Bey made any misrepresentations to the PTO during prosecution of the '494 or '154 Patents. Motion at 5. Rather, Juniper's proposed amendments merely add the vague allegation that "Ms. Bey has an unusually abundant history of filing petitions to accept 'unintentionally' delayed claims of priority" and incorporate by reference its unclean hands counterclaim. Juniper, Ex. 4 at ¶231. This bare insinuation does not provide any factual support for Juniper's claims. Juniper does not make a single factual allegation that would support an inference that the priority claims were not "unintentionally delayed." Juniper also fails to explain what an "unusually abundant history" means. Juniper provides no factual support that Ms. Bey's filing of an unintentionally delayed petition is anything out of the ordinary for a patent prosecutor, particularly one with a docket of hundreds of patents and applications. Ms. Bey's petitions are allowed under USPTO rules and were considered and accepted by the USPTO. Further, inequitable conduct, which requires pleading with "particularity," has a higher pleading standard than unclean hands. So merely incorporating by reference Juniper's preexisting allegations for unclean hands is insufficient to meet the heightened pleading standard for inequitable conduct. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) ("In sum, to plead the 'circumstances'

2

of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.").

Juniper tries to sidestep its obligation to show but-for materiality by arguing that its inequitable conduct claims fall within an exception to this requirement. While the Federal Circuit has found that but-for proof of materiality is not required in certain "extraordinary circumstances," Juniper falls far short of pleading <u>facts</u> to show such circumstances here. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292–93 (Fed. Cir. 2011). Indeed, Juniper's pleading is devoid of facts that would show that Ms. Bey's statements were "unmistakably false" or that she engaged in "an affirmative act of egregious misconduct." *Id.* Thus this Motion should be denied with regard to Ms. Bey's alleged inequitable conduct.

### 2. Mr. Touboul's Declaration Does Not Contain Any Misrepresentations

Mr. Kroll's statements do not provide factual support for Juniper's claim that Mr. Touboul made any misrepresentation to the PTO. First, the question posed to Mr. Kroll in the *Blue Coat* action was whether he "helped come up with the idea behind claim 10." Juniper, Ex. 1 at 460:14-15. Mr. Kroll was not asked any questions about Mr. Touboul's contribution or Mr. Touboul's declaration. *Id.* There is also no indication that Mr. Kroll, a layperson, understood the question to be related to the legal question of inventorship of a certain claim. Motion at 4. As such, this single statement by a third-party in response to a vague question does nothing to establish that Mr. Touboul himself made any false statement in his declaration to the PTO, or that he had any intent to deceive the PTO.

Further, Juniper's reliance on the declarations submitted for another patent (U.S. Patent No. 7,058,822 (the "'822 Patent")) are a red herring and have no relationship to any purported inequitable conduct for the '494 Patent because the declaration for the '822 Patent is for entirely different patent claims. Juniper concedes that the '822 Patent and '494 Patent are not identical, and instead claims that they are purportedly "substantially identical." Mot. at 4 n.3. The declaration that Juniper refers to was submitted by other inventors of the '822 Patent and is related to the claims that were set forth in the '822 Patent, with no reference to those in the '494 Patent. Juniper, Ex. 4 (First Amended Answer)

3
FINJAN'S OPP. TO DEF.'S MOT. FOR LEAVE TO AMEND            CASE NO. 3:17-cv-05659-WHA
ITS ANSWER TO FINJAN'S 2ND AMENDED COMPLAINT

¶226; Kastens Decl., Ex. 1 ('822 Patent – Inventor Declaration). None of the inventors of the '822 Patent, including Mr. Kroll, stated in this declaration that they are inventors of Claim 10 of the **'494 Patent**. Thus, this declaration submitted during prosecution of the '822 Patent provides no factual support for Juniper's inequitable conduct claim with respect to the '494 Patent.

Again, Juniper cannot sidestep its requirement to show but-for materiality because its allegations do not come close to pleading "an affirmative act of egregious misconduct." *Therasense*, 649 F.3d at 1292–93. Juniper alleges no facts that establish Mr. Touboul made any untrue statement. Motion at 5. Mr. Touboul simply stated that he is the inventor of certain claims of the '494 Patent, and Juniper cites to no statement from Mr. Touboul that contradict his declaration to the PTO or show that it was false. Therefore, because Juniper's factual allegations are not inconsistent with Mr. Touboul's declaration, they do not give rise to an inequitable conduct claim.

### 3. Juniper Still Fails to Allege Specific Intent to Deceive For Any of its Inequitable Conduct Allegations

Juniper still fails to allege with "particularity" under Rule 9(b) that Ms. Bey or Mr. Touboul deliberately withheld or misrepresented material information with the specific intent to deceive the PTO during prosecution of the '494 Patent or '154 Patent. *Exergen*, 575 F.3d at 1326-27; *Therasense,* 649 F.3d at 1287 (citations omitted). Indeed, "a court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.* Under prevailing law, Juniper must make allegations showing specific intent by specific individuals to deceive the PTO, and must prove that deceptive intent is the "single most reasonable inference able to be drawn from the evidence." *Id.* at 1290 (citation and internal quotation omitted); *see also Exergen*, 575 F.3d at 1326-27; *see also Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C 11-06493 JSW, 2012 WL 1293873, at *2 (N.D. Cal. Apr. 16, 2012) (granting motion to strike affirmative defense of inequitable conduct); *BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014 WL 1867009, at *1-4 (N.D. Cal. May 8, 2014) (same).

Juniper's Motion should be denied because Juniper does not adequately address the "specific intent" element that is required to sufficiently plead inequitable conduct. *See* Dkt. No. 190 at 12 ("The motion must include a proposed amended responsive pleading (and a redlined copy) and must explain

4

FINJAN'S OPP. TO DEF.'S MOT. FOR LEAVE TO AMEND    CASE NO. 3:17-cv-05659-WHA
ITS ANSWER TO FINJAN'S 2ND AMENDED COMPLAINT

why the new pleading overcomes all deficiencies, *including those this order did not reach."*). Juniper's allegations of purported intent—which are "under information and belief"—still fail to demonstrate that Mr. Touboul or Ms. Bey had any *specific intent* to deceive the PTO.  For the '494 Patent in particular, Juniper's claim that Mr. Touboul specifically intended to deceive the PTO based on statements made by others, after the filing of his declaration during the prosecution of the '494 Patent, is based on nothing more than rank speculation.  Further, for the '494 and '154 Patents, Juniper fails to plead facts from which it could be reasonably inferred that Ms. Bey deliberately filed petitions for priority claims that were intentionally delayed and that she knew were intentionally delayed in order to deceive the PTO.  Rather, the reasonable inference is that Ms. Bey filed petitions for priority claims that were unintentionally delayed, particularly based on the hundreds of patent applications on her docket.  "When there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  *Therasense*, 649 F.3d at 1290–91 (citations omitted).

Rather than attempting to plead facts showing an intent to deceive, Juniper relies on an order from *Finjan, Inc. v. Bitdefender, Inc.*, which is unavailing because Finjan raised separate arguments regarding the deficiencies in Juniper's pleadings here that were not before Judge Gilliam while he reviewed Bitdefender's pleading.  Motion at 6.  While Juniper claims that its original pleadings were sufficient, this Court has already determined that Juniper's allegations for the '494 Patent "fail[] to adequately allege misrepresentation under FRCP 9(b).'"  Dkt. No. 190 at 8.

Therefore, Juniper's factual allegations, taken as true, do not sufficiently plead inequitable conduct of the '494 Patent or '154 Patents.

### B. Alleged Prosecution Laches (Third Counterclaim and Eleventh Affirmative Defense)

In its Order striking Juniper's original allegations of prosecution laches, the Court found that Juniper failed to plead adequate facts to demonstrate unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the patent system.  Dkt. No. 190 at 4.  Juniper's proposed amended answer fails to cure this deficiency.

First, Juniper splits one paragraph reciting patent application filing dates into several paragraphs, and merely adds the allegation to each that Finjan did not explain the alleged time between filings to the PTO. Juniper, Ex. 4 at ¶¶152–156. The formatting change does nothing to cure the deficiencies in Juniper's original Answer, and Finjan's alleged lack of explanations to the PTO are immaterial because there was no unreasonable delay for Finjan to explain to the PTO. Even if there was any such delay, there is no requirement that Finjan provide an explanation to the PTO to avoid a hypothetical prosecution laches claim.

Next, Juniper adds allegations regarding terminal disclaimers on the '926, '633, and '494 Patents, which are inapposite because they have no relationship to an unreasonable or unexplained delay. *Id.* at ¶157 ("The '926 Patent, '633 Patent, and '494 Patent are all subject to terminal disclaimers for obviousness-type double patenting over other patents in the family that were filed years before. The USPTO required these terminal disclaimers because the claims in the later-filed patents were substantially similar and not patentably distinct from previously allowed claims."). Juniper's argument is unfounded as it does not allege that Finjan's use of terminal disclaimers deviates in any way from routine patent prosecution. Motion at 8. Furthermore, Juniper does not allege that Finjan made any misrepresentations regarding these terminal disclaimers. *Id.*; Juniper, Ex. 4 at ¶157. Further, the case Juniper cites, *Symbol Techs.*, is inapplicable and a red herring because Juniper does not allege that Finjan has ever re-submitted "previously allowed claims" for any purpose whatsoever, let alone as an attempt to delay issuance of any patent. *Id.*

Finally, Juniper offers allegations that Finjan delayed in a way that is unexplained and unreasonable, which are insufficient because they are unsupported and conclusory. *Id.* at ¶158 ("Finjan's lengthy delays in prosecuting each of these applications demonstrate a pattern and practice of repetitive and successive delays that is unexplained and unreasonable"). Juniper further alleges that "Finjan's systematic strategy of first attempting to obtain a later priority date for a patent, and then filing a declaration to amend the priority date only when the claims are rejected, under the guise that its failure to initially claim the earlier priority date was 'unintentional'" somehow amounts to prosecution laches. *Id.* at ¶159. Any allegation of a "systematic strategy" of intentionally filing for an earlier

6

priority date after the fact is not only entirely unsupported, but it also has no relevance to prosecution laches because it does not show an unreasonable or unexplained delay.

Notably, "the doctrine [of prosecution laches] had greater application in prior decades when patent terms were measured from the date the application was **approved**." *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP (VBKx), 2015 WL 3948804, at *11 (C.D. Cal. June 29, 2015) (original emphasis). Because the patent term is based on when the application is filed, not approved, Finjan would have no incentive to engage in unreasonable delay. *Id.* ("The possibility of extending the lifetime of one's monopoly created a perverse incentive to unreasonably prolong the prosecution process. That incentive has now been removed by a change to the patent statutes setting the term from the date of *filing*.") (original emphasis). Moreover, as the court found in *Nomadix*, when dismissing a prosecution laches counterclaim, the parent patent permits the presumption that the industry was aware of the "general outline" of subsequent patent claims, "mak[ing] it less likely that others in the industry could be substantially prejudiced by uncertainty as to [the patent holder]'s claims." *Id.* Here, Juniper makes no attempt in its Motion to explain that it has been prejudiced (which the Court ordered), nor can it when Finjan's parent patent gave Juniper a "general outline" of Finjan's patents, and "[Finjan] cannot extend its monopoly past the 20-year mark, no matter how many continuation applications it files, because all those offspring patents would have a priority date that is the same as the parent." Juniper, Ex. 4 at ¶160; *Nomadix*, 2015 WL 3948804, at *11 (citing 35 U.S.C. § 154(a)(2)). Accordingly, Juniper's conclusory, two sentence claims that it was prejudiced are facially implausible. *Id.* at ¶160.

**C.     Finjan Will Be Prejudiced by Juniper's Amendments**

Finjan will be prejudiced by Juniper's amendments because it will be forced to engage in discovery in order to defend against Juniper's baseless counterclaims and affirmative defenses, particularly given that there are a set number of interrogatories that each party is allotted. Contrary to Juniper's claims, Finjan has not "been on full and fair notice" of these counterclaims because Juniper's prior claims failed to give rise to a plausible claim of relief, which is why the Court granted Finjan's motion for judgment on the pleadings and to strike these counterclaims. Dkt. No. 190.

## IV. CONCLUSION

For the foregoing reasons, Juniper's Motion should be denied.

Respectfully submitted,

Dated: October 5, 2018       By: */s/ Kristopher Kastens*
Paul J. Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Kristopher Kastens (State Bar No. 254797)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.