# IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

November 9, 2018

WRITER'S DIRECT
TELEPHONE (310) 203-7092
Email jkagan@irell.com

Hon. William Alsup
U.S. District Court, Northern District of California

Re:  *Finjan, Inc. v. Juniper Networks, Inc.*, Case No. 3:17-cv-05659-WHA

Dear Judge Alsup:

Defendant Juniper Networks, Inc. ("Juniper") submits this response to plaintiff Finjan, Inc.'s ("Finjan") letter to the Court (Dkt. No. 221). In particular, Juniper seeks to correct certain inaccuracies in Finjan's letter and to clarify Juniper's position on the issues raised by Finjan.

As an initial matter, Finjan's assertion that Juniper refused to stipulate to a schedule for Finjan's proposed *Daubert* motions is not true. Juniper expressly offered to negotiate a workable briefing schedule for both parties once Finjan identified the basis for the Daubert motion it was seeking to file. *See* Ex. 1 (Carson/Manes Email Chain). Rather than provide Juniper with this information, Finjan submitted its letter to the Court without any warning to Juniper. Had Finjan met and conferred with Juniper, the parties likely could have resolved most (if not all) of the issues raised in Finjan's letter without the Court's involvement.

## *Dr. Rubin's Reports*

With regard to Dr. Rubin, the majority of the issues identified by Finjan are not actually in dispute—something Finjan would have learned if it had met and conferred with Juniper before filing its letter. For example, Finjan states that it wishes to file a *Daubert* to preclude Dr. Rubin from offering opinions that (1) Claim 10 is invalid under 35 U.S.C. §§ 102 and 103 or (2) relate to inequitable conduct or prosecution laches. Juniper agrees with Finjan that, per the Court's August 24, 2018 Order (Dkt. No. 185) at pages 20-21, these issues will not be tried in December and will instead be decided at some later time. Juniper is therefore willing to stipulate that Dr. Rubin will not provide an opinion on these issues at the December 2018 trial. Finjan also notes that it wishes to exclude Dr. Rubin from "arguing the claim is abstract." Again, Dr. Rubin will not be providing expert testimony on this point, as the Court already determined that Claim 10 is abstract in its August 24, 2018 Order. As such, Juniper understands that the jury will simply be instructed that Claim 10 is abstract and both sides will be limited to introducing evidence on Step 2 of the *Alice* test.

The only other issue that Finjan identifies with respect to Dr. Rubin is the allegation that "Dr. Rubin applies the incorrect legal standard for whether there is an 'inventive concept' in Claim 10 of the '494 Patent." Dr. Rubin submitted his expert opinion on § 101 issues on **September 11**. *See* Ex 2.[1] If Finjan believed there was a basis to file a *Daubert* motion on Dr. Rubin's § 101 opinion (which

---

[1] Dr. Rubin's November 7 report was directed to damages issues, including the benefits of the invention (or lack thereof) over the prior art, the availability of non-infringing alternatives, and the technical comparability of various licenses. The parties agreed that Juniper's damages expert reports would be due on November 7 to accommodate the fact that Finjan refused to make its Rule 30(b)(6)

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

includes his "inventive concept" analysis), then Finjan should have timely filed a regularly noticed motion. Finjan chose not to do so, however. Juniper should not be forced to oppose such a motion in less than half the normal time allotted just because Finjan made a strategic choice to delay raising this issue. The shortening of time for Juniper to respond would be problematic given that there are eight fact and expert depositions scheduled to occur between November 13 and November 19 (Juniper's time to oppose under Finjan's proposed schedule). Accordingly, Juniper respectfully requests that the Court deny Finjan's request to file a *Daubert* motion regarding Dr. Rubin.

### *Dr. Ugone's Report*

To the extent that Finjan believes that it has a basis to move to exclude Juniper's economic damages expert, Dr. Keith Ugone, on the grounds that he has (1) purportedly applied an "unreliable methodology based on reliance on uncomparable Juniper licenses" and (2) has allegedly used the wrong revenue base in his analysis,[2] Juniper does not oppose Finjan's request to file a *Daubert* motion and would be amenable to Finjan's proposed briefing schedule.

The remaining issues raised by Finjan, however, are not the proper subject of a *Daubert* motion, which is limited to whether Dr. Ugone's reasoning and methodology are scientifically valid and can properly be applied to the facts. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). For example, Finjan's allegation that Dr. Ugone's opinion is "[b]ased on insufficient or incorrect facts" is not a basis to exclude his opinion; rather, this is properly addressed through cross examination. Likewise, Finjan's allegation that Dr. Ugone relies "on information not disclosed during discovery or disclosed days before [his] report" is not the proper subject of a *Daubert* motion. Moreover, a *Daubert* motion regarding that alleged deficiency is clearly improper because the parties are still conducting fact discovery; indeed, Finjan is scheduled to take four fact witness depositions of Juniper employees next week. It appears that Finjan now regrets its strategic decision not to depose any of Juniper's financial, marketing, or licensing employees before submitting its damages report, but Finjan's strategic regrets do not provide a legitimate basis for excluding testimony and a *Daubert* motion is clearly not the proper vehicle for Finjan to attempt to correct its own blunders.

In sum, Juniper respectfully requests that, in the event that the Court permits Finjan to file a *Daubert* motion, the Court limits Finjan to a single motion regarding Dr. Ugone and limits that motion to the issues of whether Dr. Ugone applied the correct royalty base and whether his analysis of Juniper's licenses is reliable.

Respectfully submitted,
*/s/ Jonathan Kagan*
Jonathan S. Kagan

---

witness on licensing issues available prior to November 2. *See* Dkt. 206 at 4 ("Juniper shall serve its rebuttal expert reports related to damages issues by November 7, 2018.").

[2] Finjan's argument regarding on the royalty base suggests that the proper base is $140 million. This number includes approximately $80 million in revenues for SRX devices that are not compatible with Sky ATP, even though Finjan's infringement theory is directed only at (1) Sky ATP and (2) SRX devices operating in combination with Sky ATP. Finjan's damages theory also includes an additional approximately $58 million in revenues for SRX devices that support Sky ATP but which were incapable of operating with Sky ATP because the SRX customer did not activate and configure a Sky ATP license.