1  PAUL ANDRE (State Bar No. 196585)
   pandre@kramerlevin.com
2  LISA KOBIALKA (State Bar No. 191404)
   lkobialka@kramerlevin.com
3  JAMES HANNAH (State Bar No. 237978)
   jhannah@kramerlevin.com
4  KRISTOPHER KASTENS (State Bar No. 254797)
   kkastens@kramerlevin.com
5  KRAMER LEVIN NAFTALIS & FRANKEL LLP
6  990 Marsh Road
   Menlo Park, CA  94025
7  Telephone:  (650) 752-1700
   Facsimile:   (650) 752-1800
8
9  *Attorneys for Plaintiff*
   FINJAN, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS OF DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        November 29, 2018<br>Time:        8:00 a.m.<br>Courtroom:   Courtroom 12, 19th Floor<br>Before:      Hon. William Alsup |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................................ 1

STATEMENT OF RELIEF SOUGHT .................................................................................................. 1

STATEMENT OF ISSUES ..................................................................................................................... 1

I. INTRODUCTION ........................................................................................................................ 1

II. DR. UGONE'S ANALYSIS OF THE PARTIES' PRIOR SOFTWARE AND PATENT LICENSE AGREEMENTS IS UNRELIABLE ............................................................................ 2

    A. Dr. Ugone's Opinions Based on Juniper's Non-Comparable Agreements are Unreliable ...................................................................................................................... 3

        1. Juniper's ▮▮▮▮▮▮▮▮▮▮ is Not Comparable to the Hypothetical License. ............................................................................................. 4

        2. Juniper's Prior Patent Agreements are Not Comparable to the Hypothetical License. ............................................................................................. 6

    B. Dr. Ugone's Opinions Based on Finjan's Prior License Agreements are Unreliable ...................................................................................................................... 7

III. DR. UGONE'S OPINIONS REGARDING THE ROYALTY BASE ARE UNRELIABLE .............................................................................................................................. 9

IV. DR. UGONE IMPERMISSIBLY USED JUNIPER'S ACTUAL REVENUES AS A CAP ON DAMAGES IN VIOLATION OF FEDERAL CIRCUIT PRECEDENT .................. 12

V. DR. UGONE'S OPINIONS REGARDING THE COST OF PURPORTED NON-INFRINGING ALTERNATIVES IS CONTRARY TO LAW AND UNRELIABLE ............. 14

VI. CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
  Civ A. No. 1:16-cv-00453-RGA, Dkt. No. 620 (D. Del. Oct. 30, 2018) ............................................ 4

*Accentra, Inc. v. Staples, Inc.*,
  No. CV-07-5862 ABC, 2010 WL 8450890 (C.D. Cal. Sept. 22, 2010) .......................................... 15

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014) ......................................................................................................... 13

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ....................................................................................................... 13

*DataQuill Ltd. v. High Tech Computer Corp.*,
  887 F.Supp.2d 999 (S.D. Cal. 2011) ................................................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .......................................................................................................................... 1

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) ................................................................................................ 12, 13

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ....................................................................................................... 10

*Finjan, Inc. v. Sophos, Inc.*,
  244 F. Supp. 3d 1016 (N.D. Cal. 2017) ............................................................................................ 8

*Golight, Inc. v. Wal–Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004) ....................................................................................................... 13

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ........................................................................................................................ 12

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................................................. 2

*Golden Bridge Tech. v. Apple Inc.*,
  No. 5:12-cv-04882-PSG, 2014 WL 2194501 (N.D. Cal. May 18, 2014) ....................................... 12

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
  No. 12-cv-03844-JST, 2015 WL 1476399 (N.D. Cal. Mar. 31, 2015) ........................................... 15

*Integra Lifescience I, Ltd. v. Merk KgaA*,
    331 F.3d 860 (Fed. Cir. 2003) ........................................................................................................ 3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..................................................................................................... 6, 8

*Lucent Techs. Inc., v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................................... 9

*M2M Sols. LLC v. Motorola Sols., Inc.*,
    No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) ........................................................ 3

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) .................................................................................................... 14

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-cv-5341 YGR, 2014 WL 2854890 (N.D. Cal. June 20, 2014) ........................................ 11

*NetAirus Techs., LLC v. Apple, Inc.*,
    No. LA CV10-03257-JAK (Ex), 2013 WL 11237200 (C.D. Cal. Oct. 23, 2013) ......................... 3

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) ...................................................................................................... 8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) .................................................................................................... 11

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ................................................................................................ 4, 5, 6

*Spectralytics, Inc. v. Cordis Corp.*,
    650 F. Supp. 2d 900 (D. Minn. 2009) .......................................................................................... 14

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
    No. 12-1013-RGA, 2015 WL 456154 (D. Del. Jan. 30, 2015) ..................................................... 3

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ...................................................................................................... 3

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ...................................................................................................... 3

**Other Authorities**

Federal Rules of Civil Procedure 26(a)(2) ............................................................................................ 12

Federal Rules of Evidence 702 ......................................................................................................... 1, 11

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on November 29, 2018, at 8:00 a.m., or as soon thereafter as counsel may be heard by the Honorable William Alsup in Courtroom 12, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Finjan, Inc. ("Finjan") will and hereby does move the Court for an order granting Finjan's Motion to Exclude Opinions of Defendant's Damages Expert Keith R. Ugone.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Cristina Martinez filed herewith and exhibits attached thereto, the proposed order submitted herewith, the pleadings and papers on file in this action, any evidence and argument presented to the Court at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

## STATEMENT OF RELIEF SOUGHT

Finjan seeks an Order excluding the opinions of Juniper's damages expert, Dr. Keith R. Ugone. regarding the reasonable royalty Juniper owes to Finjan as a result of its infringement of Finjan's U.S. Patent No. 8,677,494 (the " '494 Patent").

## STATEMENT OF ISSUES

Whether the Court should exclude the opinions of Juniper's damages expert, Dr. Keith R. Ugone, regarding the amount of the reasonably royalty Juniper owes to Finjan based on his flawed analysis of purported value indicators, as unreliable, lacking foundation and methodologically flawed pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

**I.      INTRODUCTION**

Plaintiff Finjan, Inc. ("Finjan") respectfully requests the Court, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), preclude defendant Juniper Network Inc.'s ("Juniper") expert, Dr. Keith Ugone, from offering at trial unreliable and arbitrary

opinions based on flawed methodologies regarding the reasonable royalty Juniper owes to Finjan for Juniper's infringement of Finjan's U.S. Patent No. 8,677,494 (the "'494 Patent").

Dr. Ugone did not perform a specific mathematical computation to arrive at a reasonable royalty figure. Rather, he picked a random sum based on his flawed evaluation of certain "value indicators" he contends would be relevant to the hypothetical negotiation. Declaration of Cristina Martinez ("Martinez Decl.") filed herewith, Ex. 1,[1] Ugone Rpt. ¶¶ 14-16. These purported "value indicators" include Dr. Ugone's (i) improper use of Finjan and Juniper's prior software and patent license agreements (ii) application of flawed royalty rates to Dr. Ugone's incorrect royalty base; (iii) an impermissible cap on damages based on Juniper's total profits, which are tied to his limited interpretation of the patented invention; and (iv) an insufficient and unsupported opinion regarding purported non-infringing alternatives. *Id.* Because Dr. Ugone's opinion regarding each such value indicator is fundamentally unsound, the Court should preclude him from offering his flawed reasonable royalty opinion at trial.

## II. DR. UGONE'S ANALYSIS OF THE PARTIES' PRIOR SOFTWARE AND PATENT LICENSE AGREEMENTS IS UNRELIABLE

Dr. Ugone opined that certain of Juniper's and Finjan's prior software and/or patent license agreements are "value indicators" that the parties would look to in determining the amount of a reasonable royalty payment for a license to the '494 Patent. Ex. 1, Ugone Rpt. ¶¶ 123-139. Not only did Dr. Ugone cherry-pick from the parties' prior agreements to artificially lower his damages calculation, he also failed to establish the economic and technological comparability of these agreements, which is necessary to rely upon the agreements in the manner that he did for his opinion.

As a preliminary matter, the first and second *Georgia-Pacific* factors consider "royalties received by the patentee for licensing the patent in suit" and "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). "[T]here must be a basis in fact to associate the royalty rates

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Cristina Martinez in support of Finjan's Motion to Exclude Opinions of Defendant's Damages Expert Dr. Keith R. Ugone.

2

FINJAN'S MOTION TO EXCLUDE OPINIONS OF  CASE NO. 3:17-cv-05659-WHA
DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE

used in prior licenses to the particular hypothetical negotiation at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). A party cannot rely on license agreements that are "radically different from the hypothetical agreement under consideration." *Id.* at 1316 (citations omitted). Indeed, the Federal Circuit recognized that "comparisons to other licenses are inherently suspect because economic and scientific risks [between licenses] vary greatly." *Integra Lifescience I, Ltd. v. Merk KgaA*, 331 F.3d 860, 871 (Fed. Cir. 2003).

Consequently, "comparisons of past patent licenses to the infringement must account for the 'technological and economic differences' between them." *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (citation omitted); *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 WL 767900, at *8 (D. Del. Feb. 25, 2016) (excluding expert opinion that failed to consider the economic differences between negotiations of prior licenses and the hypothetical negotiation), citing *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F.Supp.2d 999, 1022-23 (S.D. Cal. 2011) ("The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded."); *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. 12-1013-RGA, 2015 WL 456154, at *1–3 (D. Del. Jan. 30, 2015) (excluding expert testimony based on prior license agreements because it was not "sufficiently comparable to the hypothetical licenses"); *NetAirus Techs., LLC v. Apple, Inc.*, No. LA CV10-03257-JAK (Ex), 2013 WL 11237200, at *8 (C.D. Cal. Oct. 23, 2013) (granting motion to exclude expert damages opinions where expert did not demonstrate comparability). Here, as explained below, Dr. Ugone failed to account for such differences that render the parties' prior agreements non-comparable to the hypothetical license and, as a result, his opinion based upon these agreements is unreliable.

### A. Dr. Ugone's Opinions Based on Juniper's Non-Comparable Agreements are Unreliable.

Dr. Ugone opined that Juniper's prior software and patent license agreements are indicative of the amount that Juniper would agree to pay as a reasonable royalty at the hypothetical negotiation. Ex. 1, Ugone Rpt. ¶¶ 114-120. Specifically, Dr. Ugone relied upon Juniper's (i) software license agreement with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (ii) patent settlement

3

1  license agreements with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3  ▬▬▬▬ (collectively, "Juniper's Prior Patent Agreements"). *Id.* Because Dr. Ugone failed to

4  establish the technological and economic comparability of these agreements to the hypothetical

5  negotiation, his opinion is unreliable, unfounded and should not be presented to the jury.

**1.    Juniper's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is Not Comparable to the Hypothetical License.**

Dr. Ugone should not be permitted to present to the jury his opinion that the amount of the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ can be used to determine the amount of the hypothetical license. Dr. Ugone performed no economic analysis of, and failed to account for technological differences between, the ▬▬▬▬▬▬▬▬▬▬▬ compared to the hypothetical license. Ex. 1, Ugone Rpt. ¶¶ 118-120.

The ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ which Juniper agreed to pay a software license fee of approximately ▬▬▬▬▬▬. Ex. 1, Ugone Rpt. ¶¶ 12(e)(ii), 14(c)(i), 138. Dr. Ugone opines that this amount is "informative as to" or a "reasonable check" on the amount of the hypothetical license. Ex. 1, Ugone Rpt. ¶¶ 120, 139. Dr. Ugone, however, made no effort to account for any of the economic or technological differences in his analysis that ultimately render the ▬▬▬▬▬▬▬▬▬▬▬▬ non-comparable to the hypothetical license, such that this software license agreement should not play any part in his opinion.

Finjan's damages expert, Mr. Arst, noted the "fundamentally different" rights that would be granted under the hypothetical patent license as compared to the ▬▬▬▬▬▬▬▬▬▬▬▬. Ex. 2, Arst Rpt. at 34-36.[2] For example, the ▬▬▬▬▬▬▬▬▬▬▬ explicitly acknowledges that no intellectual property rights are licensed, placed limitations on usage and had time constraints. Ex. 3,

---

[2] Courts have called into doubt the comparability of software license agreements to the extent an expert fails to establish the comparability to the hypothetical license. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) (software "rebundling licenses" had no relation to the claimed invention.); *see also* Ex. 4, *Acceleration Bay LLC v. Activision Blizzard Inc.*, Civ A. No. 1:16-cv-00453-RGA, Dkt. No. 620 at 2 (D. Del. Oct. 30, 2018) ("[Software publisher agreement] is not a patent license and therefore not a license comparable to the one which would have resulted from a hypothetical negotiation. It is not relevant to the question of comparable licenses.")(citation omitted).

4

FINJAN'S MOTION TO EXCLUDE OPINIONS OF                   CASE NO. 3:17-cv-05659-WHA
DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE

███████████████ at ¶¶ 1, 8. Dr. Ugone acknowledged the existence of the economic differences identified by Mr. Arst (Ex. 1, Ugone Rpt. ¶ 153 n. 429), but entirely failed to address them in rendering his opinion that the ███████████████ is comparable.

In addition, Dr. Ugone did not address any comparability between the benefits realized by Juniper as a result of the ███████████████ to the benefits specifically attributable to the '494 Patent. A patent license allows a licensee freedom to operate whereas a software agreement allows solely the right to use a particular software, which is a very different set of rights. Ex. 3, ███████████ at ¶ 1. As Mr. Arst explained, and Juniper acknowledges, the software licensed under the ███████████████ relates to technology that is utilized by the accused products themselves. Ex. 2, Arst Rpt. at 34 n.112 (citing Juniper's Patent L.R. 3-9 Responsive Damages Contentions, pp. 8-9). Thus, any benefits derived from ███████████████ are necessarily distinct from the footprint of the '494 Patent. *ResQNet.com,* 594 F.3d at 869 (damages must be tied to claimed inventions footprint in the market place). Dr. Ugone did not account for these differences.

For technological comparability, Dr. Ugone relied exclusively on the opinion of Juniper's technical expert, Dr. Rubin, that the ███████████████ is technologically comparable to the hypothetical license. Ex. 1, Ugone Rpt. ¶ 12(e)(ii). However, neither Dr. Rubin nor Dr. Ugone (who would not be qualified to do so) addressed exactly how the software license rights relate to the patent license rights that Juniper would require for freedom to operate with respect to the accused products, *i.e.*, the SRX and Sky ATP, or the specific material technological differences between the ███████████████ and the hypothetical license. Dr. Rubin and Dr. Ugone fail to address how exactly the ██████ software product is comparable to all of the benefits and rights disclosed in Claim 10 of the '494 Patent. *Id.*, Ugone Rpt. ¶ 119. Thus, Dr. Ugone, who relied wholesale on Dr. Rubin's analysis and made no effort whatsoever to account for these material technological or economic differences, should not be permitted to introduce his unreliable opinion at trial that the amount of the Joe Security License is informative of the amount of the hypothetical license.

### 2. Juniper's Prior Patent Agreements are Not Comparable to the Hypothetical License.

Dr. Ugone's opinion that the amount of Juniper's Prior Patent Agreements is indicative of the amount of the hypothetical license should also be excluded because he failed to establish the economic and technological comparability with the hypothetical license between Finjan and Juniper. Ex. 1, Ugone Rpt. ¶ 14(c)(ii), ¶¶ 116-117. Dr. Ugone discussed the amounts of these agreements, which ranged from ███████████, but entirely failed to account for the differences between them and the hypothetical license. *Id.*

For example, all three of Juniper's Prior Patent Agreements are settlement agreements. Ex. 2, Arst Rpt. at pp. 41-44; *see also id.*, at Ex. 3.1. Courts have found that settlement agreements, which result from litigation, are fundamentally different from the hypothetical license, which is the result of an arms-length negotiation between the parties, unless an expert establishes the comparability of the settlement agreement. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) ("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable.") (citations omitted); *ResQNet.com*, 594 F.3d at 872. Here, Dr. Ugone acknowledges that each of the Juniper's Prior Patent Agreements is a settlement agreement, but did not account for such differences in his opinion. Ex. 1, Ugone Rpt. ¶¶ 116-117, 138-139.

Nor did Dr. Ugone account for another significant difference between Juniper's Prior Patent Agreements and the hypothetical license, namely that at the time of these agreements the validity and infringement of the licensed patent rights had yet to be resolved, whereas under the hypothetical negotiation the '494 Patent is assumed valid and infringed. Ex. 2, Arst Rpt. at pp. 41-44; *see also id.*, at Ex. 3.1. Where there are questions regarding the validity or infringement, Dr. Ugone needed to account for these issues and how it related to the license fee, as well as the other terms in those agreements, but failed to do so.

Finally, Dr. Ugone did not account for differences in the rights granted under Juniper's Prior Patent Agreements, facts that Finjan's damages expert detailed. *Id.* For example, Mr. Arst explained that the ████████████████████████ merely granted releases and/or covenants not to assert

6

FINJAN'S MOTION TO EXCLUDE OPINIONS OF          CASE NO. 3:17-cv-05659-WHA
DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE

patents, whereas the hypothetical license at issue in this case would provide Juniper with a license to the '494 Patent and the corollary benefits. Ex. 2, Arst Rpt. pp. 40-44. Dr. Ugone made no effort to address the differences that exist between a release or covenant not to sue, compared to a license that would be reached as a result of the hypothetical negotiation.

**B.      Dr. Ugone's Opinions Based on Finjan's Prior License Agreements are Unreliable.**

Dr. Ugone should be precluded from offering his opinion that the jury can rely on the amounts of four of Finjan's nineteen settlement and license agreements of its patent portfolio, as well as purported "effective royalty rates" that Dr. Ugone attempts to recreate from hindsight, are indicative of the value of the hypothetical license. Ex. 1, Ugone Rpt. ¶¶ 17, 135-137, 148. Dr. Ugone opined that four of Finjan's nineteen prior settlement and license agreements are "most relevant" to the hypothetical negotiation—namely, settlement agreements that resolved litigation with ████████ ████████████████████████████████████████, and an agreement with ████████████████████████████ where no litigation was involved. *Id.* at ¶ 14. Based on these agreements, Dr. Ugone opined that the hypothetical negotiation for a license to the '494 Patent would result in an amount significantly less than the range of royalty payments in these agreements (████ ████████████) and an effective royalty rate of ████████ *Id.* at ¶¶ 17, 135-137, 148.[3] However, Dr. Ugone's manufactured effective royalty rates and opinion that does not account for the actual circumstances of Finjan's agreements lack foundation and should not be presented to the jury.

*First*, Dr. Ugone made no effort to account for differences between the parties' circumstances for each of Finjan's prior four agreements and the circumstances of the hypothetical negotiation between Juniper and Finjan. For example, and as discussed above, Dr. Ugone's opinion is flawed because he makes no effort to account for the fact that three of the four agreements Dr. Ugone relies

---

[3] Dr. Ugone's identification of the amount of certain of these agreements is wrong. Dr. Ugone states that the Sophos settlement amount was ████████ when, in fact, the agreement totaled ████████. Ex. 2, Arst Rpt. at 10-11. Similarly, ████████████ amount was ████████, but Dr. Ugone excludes ████████ to "adjust" for another patent without explaining why the settlement agreement supports such an exclusion. Ex. 1, Ugone Rpt. ¶¶ 10(c), 14(b).

1  upon are settlement agreements, namely the settlement agreements with ▇▇▇▇▇▇▇▇▇▇. *Id.*
2  at ¶¶ 10(c) n.20, ¶¶ 72, 76-89, 136.[4]

3        Furthermore, despite the parties' agreement that the date of the hypothetical negotiation is
4  October 2015, (Ex. 2, Arst Rpt. at 29; Ex. 1, Ugone Rpt. at ¶ 7) Dr. Ugone nonetheless finds these
5  agreements as the "most relevant" even though they were executed *after* the hypothetical negotiation
6  date (i.e., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), while disregarding other agreements
7  executed prior to the hypothetical negotiation date.  Ex. 1, Ugone Rpt. at ¶¶ 10(c) n.20, 72, 76-89, 136.
8  Courts exclude opinions that fail to account for differences in the parties' circumstances, particularly
9  where a license is executed after the hypothetical negotiation.  *LaserDynamics*, 694 F.3d at 78;
10 *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276–77 (Fed. Cir. 1999).  Without any analysis
11 comparing the circumstances of these agreements with the facts of the hypothetical negotiation
12 between Finjan and Juniper, Dr. Ugone's opinion is unreliable.

13       *Second*, Dr. Ugone's effective royalty rate opinions lack foundation and are unreliable.  For
14 example, Dr. Ugone purports to calculate the high-end of his effective reasonable royalty rate range of
15 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Ex. 1, Ugone Rpt. ¶ 66, n.170.
16 Importantly, the Sophos settlement license followed a two-week jury trial in which the verdict found
17 Sophos liable for infringement and awarded $15 million in damages.  Ex. 2, Arst Rpt. at 10.  During
18 the trial, Finjan's fact witnesses and damages expert testified regarding an applicable royalty rate of
19 8%-16%.  Ex. 6, Sophos Trial Tr. at 825:2-9, 843:14-18.  Dr. Ugone ignores the jury verdict and
20 instead bases his effective royalty rate on an e-mail from December 2014, which was more than two
21 years before the jury's award, the Court's confirmation of that verdict and the subsequent settlement
22 agreement.  Ex. 1, Ugone Rpt. ¶ 66 n.170.  Dr. Ugone provides no analysis comparing the

---

[4] For example, the Sophos agreement came after Finjan obtained a jury verdict of infringement and received the Court's post-trial motion confirming the jury verdict.  *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1042 (N.D. Cal. 2017).  The Websense agreement came after Finjan had unsuccessfully sought to enforce certain patents against Websense in litigation in Delaware and the parties were involved in a second litigation in California.  Ex. 5, Websense License at ¶¶ A, B.  These are the types of circumstances that Dr. Ugone improperly failed to consider.

circumstances of the Sophos settlement agreement to those of the hypothetical negotiation. Similarly, Dr. Ugone calculates the low end of his effective reasonable royalty rate range ▇▇▇ based on the ▇▇▇▇▇. *Id.*, Ugone Rpt. ¶ 66. Again, Dr. Ugone relies on an email identifying purported royalty rates and a patent license offer. *Id.* However, Dr. Ugone provides no context for what revenues, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, that were purportedly used in connection with Dr. Ugone's alleged effectively royalty rate. He further has no explanation or basis to suggest that ▇▇▇▇▇▇▇▇▇▇▇▇ are equivalent or comparable in any manner to Juniper's accused revenues. As such, Dr. Ugone's opinions that Finjan's prior licenses are indicative of the amount and effective royalty rate of the hypothetical license should be excluded.

### III.  DR. UGONE'S OPINIONS REGARDING THE ROYALTY BASE ARE UNRELIABLE

Contrary to the fundamental premise that a damages expert must begin his analysis with the assumption that the asserted patent is valid and infringed, Dr. Ugone excluded revenues of the infringing models at issue without any explanation, such that he did not assume infringement of all the accused devices. *Lucent Techs. Inc., v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009) (hypothetical negotiation requires an assumption the asserted patent claims are infringed).

Specifically, Dr. Ugone's royalty base excludes over 98% of the revenues, essentially reducing the approximately ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. 1, Ugone Rpt. at ¶ 45, n.121. This exclusion of revenues is not an apportionment. Rather, based on a claim that is contrary to the Court's Order on Summary Judgment, he arbitrarily decided not to include all the relevant revenues, such that his opinion regarding the royalty base is based on a different case of infringement and Juniper's non-infringement arguments that the Court already rejected.

Specifically, Finjan has accused Sky ATP and SRX/Sky ATP of infringing claim 10 of the '494 Patent. Dkt. No. 185 at 2-3. Finjan identified the specific SRX models accused of infringement, along with SkyATP. Dkt. No. 97-4, Finjan's Mot. for Summary Judgement at 1 n.2.[5,6] However, Dr. Ugone

---

[5] The accused SRX Gateways includes all SRX Gateways that are capable of interacting with Sky ATP, and includes SRX100, SRX110, SRX210, SRX220, SRX240, SRX300, SRX340, SRX345, SRX550, SRX550m, SRX650, SRX1400, SRX1500, SRX3400, SRX3600, SRX4000, SRX4100, SRX4200, SRX5400, SRX5600, SRX5800, vSRX Virtual Firewall, vSRX.

does not include any revenues for the following accused SRX models: (i) SRX100, (ii) SRX110, (iii) SRX210, (iv) SRX220, (v) SRX240, (vi) SRX650, (vii) SRX1400, (viii) SRX3400, (ix) SRX3600, (x) SRX4000 and (xi) vSRX, based on his claim that SkyATP is only compatible with a subset of SRX devices. *Compare id. with* Ex. 1, Ugone Report at pp. 39-40. Notably, Juniper never raised this issue regarding models and compatibility in their opposition to Finjan's Summary Judgment motion. Dr. Ugone's failure to include these models means that he did not properly consider all the accused products infringed. He also did not include all the sales for the remaining subset of SRX models, asserting that only SRX sales that can be tied to a customer that also ***purchased*** a Sky ATP license should be included in the royalty base.[7] Ex. 1, Ugone Rpt., at ¶ 45, n.121, 124. Dr. Ugone's assumption that eleven models of SRX are not at issue and the claim that SRX can only infringe when a customer also purchases a Sky ATP license was an argument that Juniper raised during summary judgment,[8] wherein the Court disregarded those positions and granted in-part Finjan's motion. Dkt. 125-4 at 22 (Juniper's Opp. Finjan MSJ). Moreover, Dr. Ugone's opinion does not reflect the infringement case of a system claim. Here, Claim 10, a system claim, covers all SRX models that Juniper sells that have the Sky ATP code on it, whether the user purchases a license for Sky ATP or not, because the sale of the SRX with Sky ATP code infringes. *See, e.g., Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010) (finding that system claims were infringed regardless of the need to "activate the functions"). Thus, Dr. Ugone's omission of certain revenues of SRX models that have Sky ATP code does not account for the infringement at issue. The result is that

---

[6] SkyATP is available in three service levels, including a free, basic and premium version. Ex. 1, Ugone Rpt. at ¶ 43, n.107. Juniper admits that no additional software is necessary to operate SkyATP. *See, e.g.,* Ex. 7 (https://www.juniper.net/documentation/en_US/release-independent/sky-atp/topics/reference/general/sky-atp-licenses-overview.html).

[7] As a result of Dr. Ugone's skewed infringement view he does not include any SRX revenues in his royalty base for 2015 based on his representation that there were no paid Sky ATP licenses until 2016. All SRX revenues in the infringing time period should have been included because Juniper began offering SRX with SkyATP as of October 2015. Ex. 1, Ugone Rpt. at ¶ 45, n.125.

[8] Juniper argued Finjan had not proven infringement of SRX appliances where the customer did not configure the appliance with a SkyATP license. Dkt. 125-4 at 22 (Juniper's Opp. Finjan MSJ).

10

FINJAN'S MOTION TO EXCLUDE OPINIONS OF           CASE NO. 3:17-cv-05659-WHA
DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE

1  Dr. Ugone's reasonable royalty opinion is unreliable because he does not use an accurate royalty base
2  because he excluded revenues of the accused products (SRX and ATP) that are at issue.
3    Dr. Ugone's royalty base opinion is also not based on sufficient facts and he failed to disclose
4  how he determines which of the various SRX models with Sky ATP code to include in his royalty
5  base.  Specifically, Dr. Ugone only includes in his royalty base what he claims is "███████████
6  ████████████████████████████ and an unidentified number of the subset of SRX's
7  allegedly tied to paid premium Sky ATP licenses.[9]   Ex. 1, Ugone Rpt. at ¶ 43, n.112.  The ███
8  ████████████████████████████ according to Dr. Ugone's Table 4.  *Id.* at Table 4.  Dr.
9  Ugone provides no explanation on how he even was able to determine that there were █████
10 █████, and this is directly contrary to Juniper's claim during summary judgment that Juniper does
11 not store this type of historic data.  *See, e.g.,* Dkt. 125-8 at ¶ 5 (Declaration of Nagarajan)████
12 ██████████████████████████████████████████).  Thus, Dr.
13 Ugone's opinion regarding SkyATP free licenses is unsupported and not based on sufficient facts, as
14 they are facts contrary to Juniper's representations in the case.  Fed. R. Evid. 702(b) and (c); *Power*
15 *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013) (holding
16 that "data cannot be derived from a manifestly unreliable source") (citations omitted); *see also*
17 *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 2854890, at *5
18 (N.D. Cal. June 20, 2014) (citing *Power Integrations*, 711 F.3d at 1373-74 as properly excluding
19 expert opinions "where the source of the expert's data was unclear").  Dr. Ugone also does not identify
20 which, if any, SRX revenues he included in the royalty base related to those ██████████
21 Ex. 1, Ugone Rpt. at ¶ 43.  Accordingly, Dr. Ugone's opinions regarding the free SkyATP licenses is
22 unfounded and not based on sufficient facts.
23    Finally, Dr. Ugone arbitrarily further reduces the revenues associated with the SRX units in the
24 reduced royalty base, as outlined above, based on his determination of a "per-unit SRX revenue."  To
25 get his "per-unit SRX revenue," Dr. Ugone looks at the total SRX revenue associated with each

---

[9] In its opposition to Finjan's Summary Judgment Motion, Juniper represented that there were roughly ██████████████ during the damages period. Dkt. 125-4 at 22 (Juniper's Opp. To Finjan's MSJ)

11

FINJAN'S MOTION TO EXCLUDE OPINIONS OF                               CASE NO. 3:17-cv-05659-WHA
DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE

individual customer and divides by the total number of units sold to that customer. Then, he multiplies that "per-unit" revenue by the number of ATP premium licenses sold to the same customer.[10] Ex. 1, Ugone Rpt. at ¶ 45, n.124. Dr. Ugone does not explain why this "per-unit" SRX revenue is an appropriate methodology that accounts for all of the infringement. Moreover, Dr. Ugone does not explain how, under his wrong view of infringement, he accounts for revenues of SRX that are tied to customers that activate a free SkyATP license. Thus, Dr. Ugone's per-unit revenue methodology has no meaningful relationship to the footprint of the invention to SRX and Sky ATP. Dr. Ugone's failure to fully disclose his reasoning and basis for using a different set of revenues for the accused products renders his opinion unreliable and violates the rules regarding expert disclosure.[11] *See* Fed. R. Civ. P. 26(a)(2) (expert report must contain the "basis and reasons" for opinions and the "facts or data considered by the witness in forming them").[12] Dr. Ugone's reasonable royalty opinion must be excluded given the lack of reliability and factual basis for the proposed royalty base. *See, e.g., Golden Bridge Tech. v. Apple Inc.,* No. 5:12-cv-04882-PSG, 2014 WL 2194501, at *5 (N.D. Cal. May 18, 2014) (excluding expert and noting that a court may conclude that "there is simply too great an analytical gap between the data and the opinion offered") (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). For all the reasons above, Dr. Ugone's reasonable royalty opinion related to the royalty base should be excluded.

**IV. DR. UGONE IMPERMISSIBLY USED JUNIPER'S ACTUAL REVENUES AS A CAP ON DAMAGES IN VIOLATION OF FEDERAL CIRCUIT PRECEDENT**

Dr. Ugone's opinion that Juniper's total profits on "sales of Sky ATP licenses and SRX devices used in combination with Sky ATP" serve as a cap on reasonable royalty damages violates Federal Circuit precedent that profits are "not the ceiling by which a reasonable royalty is capped." *Douglas*

---

[10] There was no explanation regarding how a per-unit revenue was determined for Sky-ATP licenses that were not sold but were used with a free version of Sky-ATP.
[11] Notably, Dr. Ugone is being deposed the day after this brief is due, so Finjan is relying upon the four corners of his report, as Juniper should do.
[12] Finjan will move in *limine* to exclude the reliance on this undisclosed information and individuals.

12

*Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) (citing *Golight, Inc. v. Wal–Mart Stores, Inc.,* 355 F.3d 1327, 1338 (Fed. Cir. 2004)); *see also* Ex. 1, Ugone Rpt. ¶ 14(d).

*Dr.* Ugone repeatedly opined that Juniper would not be willing to pay a royalty greater than its total profits earned based on the incorrect royalty base of approximately ▮▮▮▮▮▮▮▮▮▮. Dr. Ugone identified the profits for "sales of Sky ATP licenses and SRX devices used in combination with Sky ATP between December 1, 2015 and January 29, 2017," to be approximately ▮▮▮▮▮. Ex. 1, Ugone Rpt. ¶ 14(d)(ii), 54(c), 140-141.[13]

The Federal Circuit, however, holds that actual profits earned during the period of infringement *cannot* be used as a royalty cap. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) ("That treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened."). Indeed, in *Douglas Dynamics*, the Federal Circuit confirmed that an infringer is not necessarily entitled to reasonable royalty that provides him with a profit. 717 F.3d at 1346 (finding district court committed clear error by "limiting the ongoing royalty rate based on [defendant's] profit margin."); *see also Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) (upholding ongoing royalty rate that defendant argued covered its profits). The logic behind such opinions is that the value of the infringement can far exceed both the revenues and profits that the infringer might obtain associated with the infringement, but that does not mean that the infringement did not provide greater value than those identified revenues and profits. That is what happened in this case, where Juniper in one of its various service levels, offered free licenses to Sky ATP and experienced great cost savings overall. Ex. 2, Arst Rpt. at 22-23. Because Dr. Ugone's reasonable royalty opinion related to profits contradicts Federal Circuit precedent, it should be excluded.

---

[13] Dr. Ugone's opinion regarding the amount of Juniper's profits is further flawed because, as explained in the proceeding section, Dr. Ugone improperly omits from his opinion revenues and/or profits attributable to accused products.

## V. DR. UGONE'S OPINIONS REGARDING THE COST OF PURPORTED NON-INFRINGING ALTERNATIVES IS CONTRARY TO LAW AND UNRELIABLE

Dr. Ugone's opinion that the cost of implementing a non-infringing alternative would constrain the amount of the hypothetical license is inconsistent with Federal Circuit precedent holding that the costs of implementing a non-infringing alternative cannot cap reasonable royalty damages as a matter of law. *Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359, 1373 (Fed. Cir. 2008); *Spectralytics, Inc. v. Cordis Corp.,* 650 F. Supp. 2d 900, 910 (D. Minn. 2009) ("[T]he jury was not required to treat the cost of either [non-infringing] alternative as a cap on the damages in this case."). As such, Dr. Ugone should not be permitted to opine to the jury that his estimated cost of a purported non-infringing alternative constitutes a cap on the reasonable royalty owed to Finjan. Ex. 1, Ugone Rpt. ¶¶ 12(d), 14(e), 18(c), 56, 60, 91, 113, 143, 178-179; *see also id.* ¶¶ 15, 111 (Juniper would not pay a royalty that exceeds its incremental profits as opposed to implementing a less-expensive alternative).

In addition, Dr. Ugone's opinion regarding the cost and feasibility of Juniper's purported non-infringing alternatives depends on untimely disclosed information that should be excluded, such that Dr. Ugone's opinion lacks foundation. *Id.* at ¶¶ 12(d), 14-17, 55-56, 112-113, 142-145. Dr. Ugone's purported opinion included the claim that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* at ¶ 12(d), 14(e), 112-113. Dr. Ugone based his opinion entirely on two sources, namely, (i) the opinion of Juniper's technical expert, Dr. Rubin and (ii) conversations with a Juniper engineer, Ms. Yuly Tenario. *Id.* at ¶ 112-113. However, Juniper never disclosed any of its non-infringing alternatives or its supporting evidence during discovery, despite specific discovery requests directed at such information. In fact, Juniper only provided such information with the service of Dr. Ugone's rebuttal expert report. For example, Juniper did not identify its purported non-infringing alternatives in response to Finjan's discovery responses that specifically sought this information. Ex. 8, Juniper 2nd Supp. Interrogatory Responses at 33-35. Nor did Juniper identify Ms. Tenorio as having information regarding non-

14

FINJAN'S MOTION TO EXCLUDE OPINIONS OF
DEFENDANT'S DAMAGES EXPERT DR. KEITH R. UGONE
CASE NO. 3:17-cv-05659-WHA

1  infringing alternatives in its initial disclosures provided throughout the case. Ex. 9, Juniper's 2nd
2  Supp. Initial Disclosures. Because Juniper failed to timely identify these non-infringing alternatives
3  and witnesses with relevant information, which it was required to do with its initial disclosures, Finjan
4  was unable to depose Ms. Tenorio or other Juniper employees regarding these alleged non-infringing
5  alternatives, including how such non-infringing alternatives would be implemented, the technical
6  feasibility and customer acceptance of such alternatives, and the purported costs to Juniper. Dr. Ugone
7  should not be permitted to rely on this undisclosed information that Juniper concealed during
8  discovery. Without this foundation, his opinion regarding purported non-infringing alternatives is
9  entirely unsupported and is unreliable. *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
10 No. 12-cv-03844-JST, 2015 WL 1476399, at *10 (N.D. Cal. Mar. 31, 2015) (holding expert is
11 precluded from relying on conversations with witnesses when information was not disclosed until after
12 depositions took place).[14]

13 Thus, the Court should exclude Dr. Ugone's opinion that the cost of purported non-infringing
14 alternatives ■■■■■■■■■■■■■■■■■■■■ is indicative of the amount of the hypothetical license.

## VI. CONCLUSION

For these reasons, Finjan requests that the Court exclude Dr. Ugone from offering at trial unreliable and arbitrary opinions regarding the reasonable royalty Juniper owes to Finjan for Juniper's infringement of the '494 Patent.

---

[14] Finjan will move *in limine* to preclude Juniper from relying at trial upon the information disclosed in these supplemental initial disclosures and identified for the first time in Dr. Ugone's expert report. *See Accentra, Inc. v. Staples, Inc.*, No. CV-07-5862 ABC (RZx), 2010 WL 8450890, at *7 (C.D. Cal. Sept. 22, 2010) (excluding newly disclosed witnesses and information regarding non-infringing alternatives).

Respectfully submitted,

Dated: November 12, 2018    By: */s/ Kristopher Kastens*
Paul J. Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Kristopher Kastens (State Bar No. 254797)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.