IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

840 NEWPORT CENTER DRIVE, SUITE 400
**NEWPORT BEACH, CALIFORNIA 92660-6324**

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (949) 760-5222
RCarson@irell.com

November 16, 2018

Hon. William Alsup
U.S. District Court, Northern District of California

Re:      *Finjan, Inc. v. Juniper Networks, Inc.*, Case No. 3:17-cv-05659-WHA

Dear Judge Alsup:

Defendant Juniper Networks, Inc. ("Juniper") writes to request that the Court order Finjan to comply with paragraph 2(f) of the Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before the Honorable William Alsup.  Paragraph 2(f) requests that the parties limit motions to "five or fewer motions per side" and notes that "[e]ach motion should address a single topic."

On November 14, 2018, Finjan served four motions *in limine*, two of which violate the single topic requirement.  For example, Finjan's Motion *in Limine* No. 4 (Attached as Exhibit A) purports to seek to preclude "any argument or evidence regarding irrelevant information."  It then addresses three separate topics under the following headings:

- "Evidence and Arguments Regarding Juniper's Patents,"

- "Evidence and Arguments Regarding Irrelevant Proceedings" which addresses pending Finjan lawsuits and PTAB proceedings, and

- "Statements that Finjan is a Non-Practicing Entity or 'Patent Troll.'"

Similarly, Finjan's Motion in Limine No. 3 (Attached as Exhibit B) broadly seeks to preclude Juniper and Dr. Rubin "from providing opinions that are irrelevant," and then addresses five separate topics under the following subheadings:

- "Juniper Should be Excluded from Providing Opinions that Claim 10 is Abstract Because the Court Has Already Decided This,"

- "Prejudicial and Legally Irrelevant Arguments Regarding the Prosecution History,"

- "Dr. Rubin Should Be Excluded From Providing Opinions of Anticipation and Obviousness in the Guise of Damages or § 101 Analysis,"

- "Dr. Rubin Should Be Excluded from Relying Documents or Systems that Cannot Establish what was "Well-known, Routine, and Conventional," and

- "Evidence and Argument Regarding Piecemeal Portions of Claim Elements Should Be Excluded."

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Juniper requested that Finjan re-serve proper motions that comply with the Court's single topic rule, but Finjan rejected Juniper's request and refused to make anyone available to meet and confer until Monday.  Exhibit C.  Given that Juniper's responses to Finjan's motions are due next Friday (i.e., the day after Thanksgiving), Juniper requests that the Court direct Finjan to comply with Paragraph 2(f) by re-serving motions that address a single topic no later than noon tomorrow (November 17, 2018).

Respectfully submitted,

*/s/ Rebecca L. Carson*
Rebecca L. Carson
IRELL & MANELLA LLP
*Attorneys for Defendant*
Juniper Networks, Inc.

10610643                                    - 2 -

# EXHIBIT A

PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>         Plaintiff,<br><br>    v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>         Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF'S FINJAN INC.'S MOTION *IN LIMINE* NO. 4 TO PRECLUDE DISCUSSION OF IRRELEVANT AND PREJUDICIAL INFORMATION**<br><br>Date:         December 4, 2018<br>Time:        9:00 a.m.<br>Courtroom:  Courtroom 12, 19th Floor<br>Before:     Hon. William Alsup |

**INTRODUCTION**

Pursuant to Federal Rules of Evidence 401 and 403 Finjan moves to exclude from trial any argument or evidence regarding irrelevant information. Specifically, Finjan moves to exclude evidence and arguments regarding Juniper's patents, irrelevant legal proceedings, or the use of pejorative terms against Finjan.

**A.      Evidence and Arguments Regarding Juniper's Patents**

The Court should preclude Juniper from presenting any argument or evidence regarding any Juniper patents or patent applications, because such evidence provides zero probative value to any of the claims or defenses that will be tried in this case. *See* Fed. R. Evid. 401-403; *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2011 WL 13152795, at *3 (N.D. Cal. Sept. 27, 2011) (Judge Alsup granting plaintiff's motion *in limine* "to exclude evidence, testimony, and argument concerning [defendant's] patents … subject to a specific offer of proof at trial and a specific showing of relevance and probativeness."). The only patents that are relevant to this trial include the asserted '494 Patent and the patents in the licenses to be presented at trial. Juniper's own patents have no bearing on any theory of validity, infringement, or damages in this case. The fact that Juniper may have rights to other patents does not immunize its products from infringing the '494 Patent. *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell.") (citation omitted).

Moreover, such evidence should be precluded because any probative value (*e.g.,* company background) would be substantially outweighed by its risk of unfair prejudice and the strong potential to mislead the jury into thinking that Juniper's products cannot infringe. *See* Fed. R. Evid. 403. For example, the jury could infer that the accused Juniper products do not infringe Finjan's '494 Patent merely because Juniper already owns patents that may touch on other aspects of the accused products. *See* Declaration of Kristopher Kastens filed herewith, Ex. 16 at 2, *Therasense, Inc. v. Noca Biomed. Corp.*, No. C 04-02123 WHA, Order *In Limine* Excluding Reference to '299 Patent (N.D. Cal. July 21, 2008) (Judge Alsup excluding all reference to a patent with low probative value in order to avoid

1

the "certain confusion that would arise from its placement before the jury. . . .  Members of the jury would likely think that the accused product has its *own* patent and therefore must not infringe (even if defendants do not expressly so argue), a bogus line of reasoning.") (emphasis in original).

Since evidence of Juniper's existing patent rights have no probative value and present a high risk of jury confusion, the Court should grant Finjan's motion to exclude all reference to Juniper's patents.

### B.      Evidence and Arguments Regarding Irrelevant Proceedings

#### 1.      Co-Pending Lawsuits that have Not Reached a Jury Verdict.

The Court should preclude Juniper from presenting any argument or evidence regarding co-pending lawsuits involving Finjan, except to the extent any litigation has reached a jury verdict. Specifically, Finjan is involved in multiple pending litigations with different defendants than Juniper and different accused products.  There have been no decisions on the merits of the claims or defenses in these pending lawsuits, and fact discovery has yet to close in all but one of them.  Thus, these pending lawsuits have no bearing or relevance to the issues to be tried here, *i.e.*, they do not have "any tendency to make a fact more or less probable than it would be without the evidence."  *See* Fed. R. Evid. 401; *see also, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010) (granting  motion *in limine* to exclude reference to party's other litigation because "[s]uch evidence does not appear relevant.").

Additionally, any probative value of these co-pending litigations is far outweighed by the risk of prejudice.  *See* Fed R. Evid. 403.  Introducing evidence of pending proceedings carries a substantial risk that the jury will be confused, react emotionally, and perceive Finjan in an unfavorable light untethered to any facts in the case.  *See, e.g., In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (granting motion *in limine* to exclude evidence of Plaintiff's involvement in prior lawsuits because it's "irrelevant and carries with it a high risk of prejudice."); *see also Outley v. City of New York*, 837 F.2d 587, 595 (2d Cir. 1988) (finding that opening up the area of other litigation "invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of the issues."); *Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 WL 1399245, at *5 (N.D. Cal. Apr. 13, 2011) (quoting *Oatley*, 837 F.2d at 592) (the slight

probative value of plaintiff's litigation history "outweighed by the substantial danger of jury bias against the chronic litigant."). If such evidence is permitted at trial, Juniper would undoubtedly argue that Finjan does not have a valid business, that it only seeks monetary gain, or that its claims in this litigation are meritless. These arguments will likely distract the jury from the fact that Finjan has a lawful right to seek redress for infringement of its patents against Juniper, regardless of whether it has filed lawsuits against other companies. Accordingly, Finjan moves to preclude Juniper from introducing evidence or arguments regarding any of Finjan's pending litigations that have not yet reached a jury verdict.

### 2.     Pending PTAB Proceedings Where No Final Written Decision has been Issued.

The Court should preclude Juniper from presenting any argument or evidence regarding any pending PTO *inter partes* review ("IPR") proceedings where no final written decision or denial of institution of trial has been rendered. An IPR proceeding is self-initiated by a third-party and the mere filing of an IPR of a patent has no legally binding effect on the validity of a patent. Thus, informing the jury that an entity has simply initiated IPR proceedings against any of Finjan's patents carries a high risk of confusing the jury into believing that these proceedings cast doubt on the validity of the asserted patents, or conclude that Finjan is not entitled to a presumption of validity. Fed R. Evid. 401-403.

"Several courts, including the Federal Circuit, have considered whether evidence of an ongoing reexamination or IPR proceeding is admissible, with the majority concluding that the evidence should be precluded." *Wisconsin Alumni Research Found. v. Apple, Inc*., 135 F. Supp. 3d 865, 873 (W.D. Wis. 2015); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009) ("The district court did not abuse its discretion in concluding that the prejudicial nature of evidence concerning the ongoing parallel re-examination proceeding outweighed whatever marginal probative or corrective value it might have had in this case."). This Court is part of that majority. *See Oracle Am., Inc. v. Google Inc*., No. C 10-03561 WHA, 2012 WL 1189898, at *3 (N.D. Cal. Jan. 4, 2012) (Judge Alsup granting in part a motion *in limine* to exclude information regarding pending reexamination proceedings under Rule 403 because "the probative value is outweighed by the time

3

1 and confusion that would be involved.").  For these reasons, pending IPR proceedings should be

2 excluded.

3     **C.**     **Statements that Finjan is a Non-Practicing Entity or "Patent Troll"**

4         To that end, the Court should also preclude Juniper from making any references to Finjan as a

5 non-practicing entity ("NPE"), patent assertion entity ("PAE"), "patent troll," or any other term that

6 has a derogatory or negative connotation at trial, as these terms readily conjure up the fact that Finjan

7 may be involved in other pending litigation.  *See Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO,

8 2016 WL 4560071, at *8 (N.D. Cal. Aug. 22, 2016) (granting Finjan's motion *in limine* in part to

9 preclude uses of the terms "patent assertion entity" and "patent troll."); *see also Finjan, Inc. v. Blue*

10 *Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *2 n.1 (N.D. Cal. July 8, 2015)

11 ("Although the Court is aware that other courts have permitted use of the term "patent assertion

12 entity," the Court finds that this term carries negative connotations similar to the term "patent troll.")

13 (citation omitted).  Finjan therefore moves to preclude Juniper from all references to the terms "patent

14 troll," "patent assertion entity," "non-practicing entity," or any other derogatory terms that will

15 prejudice Finjan.

16                                     **CONCLUSION**

17         For the foregoing reasons, Finjan's Motion *in Limine* No. 4 should be granted.

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED:  November 14, 2018           By:  */s/ Kristopher Kastens*
                                        Paul J. Andre (State Bar No. 196585)
                                        Lisa Kobialka (State Bar No. 191404)
                                        James Hannah (State Bar No. 237978)
                                        Kristopher Kastens (State Bar No. 254797)
                                        KRAMER LEVIN NAFTALIS
                                          & FRANKEL LLP
                                        990 Marsh Road
                                        Menlo Park, CA 94025
                                        Telephone: (650) 752-1700
                                        pandre@kramerlevin.com
                                        lkobialka@kramerlevin.com
                                        jhannah@kramerlevin.com
                                        kkastens@kramerlevin.com

                                        *Attorneys for Plaintiff*
                                        FINJAN, INC.

PLAINTIFF'S MOTION *IN LIMINE* NO. 4                    CASE NO.: 3:17-cv-05659-WHA

# EXHIBIT B

PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: 3:17-cv-05659-WHA |
| Plaintiff, | **PLAINTIFF'S FINJAN INC.'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE IRRELEVANT TESTIMONY FROM DR. AVIEL RUBIN** |
| v. | |
| JUNIPER NETWORKS, INC., a Delaware Corporation, | Date:          December 4, 2018 |
| Defendant. | Time:          9:00 a.m. |
| | Courtroom:  Courtroom 12, 19th Floor |
| | Before:        Hon. William Alsup |

**INTRODUCTION**

Juniper and Dr. Rubin should be precluded from providing opinions that are irrelevant, prejudicial, or were not properly disclosed. ***First***, Juniper should be precluded from mentioning the Court's finding that Claim 10 of the '494 Patent was abstract, as this is irrelevant to the December 10th trial. ***Second***, Dr. Rubin should be precluded from providing opinions and material that only relate to prosecution laches and inequitable conduct, which are similarly not at issue in the December 10th trial. ***Third***, Dr. Rubin should be prohibited from providing opinions on anticipation and obviousness in the guise of §101 and damages analysis. ***Fourth***, Dr. Rubin should not be permitted to provide testimony on references that he cannot establish were "well-known" at the relevant time frame for Claim 10 of the '494 Patent, a requirement under the second prong of §101 analysis. ***Fifth***, Dr. Rubin should be precluded from providing testimony that individual words in an element are well-known, as this is contrary to the law, which requires that the entire element be considered.

**ARGUMENT**

**A.      Juniper Should be Excluded from Providing Opinions that Claim 10 is Abstract Because the Court Has Already Decided This.**

Juniper should be excluded from discussing the Court's finding that Claim 10 of the '494 Patent is abstract, as this is not relevant to the jury's deliberations on whether the claim has an inventive concept. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014) (at step one, it must be determined whether the claims are directed to a patent-ineligible concept, and at step two, it must be determined whether there was an inventive concept). Any discussion of this determination would be confusing and misleading to the jury, as it is not informative as to whether there is an inventive concept. While Dr. Rubin acknowledges that the Court already ruled on this issue, he still provides opinions and analysis in his reports that Claim 10 is abstract. In particular, Dr. Rubin discusses the rationale of the Court's decision and previous decisions regarding whether the '494 Patent is abstract. Ex. 5,[1] 9/11 Rubin Rpt. at ¶¶ 24, 25. Similarly, he disclosed—belatedly in a subsequent report—slides quoting the Court's decision on

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Kristopher Kastens in Support of Finjan's Motions *in Limine* Nos. 1-4.

PLAINTIFF'S MOTION *IN LIMINE* NO. 3                    CASE NO.: 3:17-cv-05659-WHA

summary judgment.  Ex. 6, 10/11 Rubin Rpt. at Slides 24-26 (slides describing the Court's determination that claim was abstract).  As Juniper has already admitted that this issue is not at issue for trial, this analysis is irrelevant and would be highly prejudicial to present to the jury.  Dkt. No. 222 at 1.  Therefore, Juniper, and by extension Dr. Rubin, should be precluded from offering any opinions regarding whether Claim 10 is abstract.

### B.    Prejudicial and Legally Irrelevant Arguments Regarding the Prosecution History.

The Court should preclude Juniper from presenting any argument or evidence regarding prosecution laches and inequitable conduct, as these are not at issue in the December 10th trial and would be irrelevant, a waste of time, and highly prejudicial to Finjan.  Despite the limited issues for the upcoming trial, Dr. Rubin disclosed opinions and demonstrative slides that are only relevant to prosecution laches and inequitable conduct.  First, Dr. Rubin disclosed in his report that he intends to discuss the time that elapsed between the priority date of the '494 Patent and the date when the proximate application that resulted in the '494 Patent was filed, referring to this as an "Unexplained 15 Year Delay."  Ex. 6, 10/11 Rubin Rpt. at ¶¶ 52-60 and Slide 16.  This argument is irrelevant to any issue in the case, and is simply an attempt to argue prosecution laches to the jury.  *See* Dkt. No. 189 at 20-21.  Next, Dr. Rubin discloses that he will present the testimony of two of inventors, Mr. Kroll and Mr. Touboul, as being inconsistent, apparently in order to create doubt regarding the inventorship of the '494 Patent.  Ex. 6, 10/11 Rubin Rpt. at ¶¶ 52-60 and Slides 17, 18.  In particular, Dr. Rubin includes a slide that describes that Mr. Touboul stated that he invented Claim 10 of the '494 Patent in 1996, while Mr. Kroll started his employment in 1999.  *Id.* at Slide 18.  Testimony about who invented Claim 10 of the '494 Patent is simply not relevant, as this is not an issue that is to be decided at the December 10th trial.  Accordingly, Dr. Rubin's opinions that are only relevant to prosecution laches and inequitable conduct would only serve to mislead the jury regarding the '494 Patent.

To the extent that Juniper argues testimony regarding inventorship of Claim 10 of the '494 Patent is relevant to the priority date of the '494 Patent, that is not at issue for trial, as Dr. Rubin has already conceded that he is accepting "November 8, 1996" as the proper priority date of claim 10 of the '494 Patent.  Ex. 5, 09/11 Rubin Rpt. at ¶ 20 ("I understand that Finjan has asserted that Claim 10

of the '494 Patent is entitled to a priority date of November 8, 1996 ….  For purposes of my analysis, I have assumed that this priority date applies ….").  Furthermore, the statements of the inventors are irrelevant for determination of priority, which is instead addressed by the disclosures within the filed applications.  *Yeda Research & Dev. Co. v. Abbott GmbH & Co. KG*, 837 F.3d 1341, 1346 (Fed. Cir. 2016) (affirming district court's that patent entitled to priority date based on adequate written description in application).  Finally, even if this testimony was relevant to priority—which it is not— the prejudice to Finjan outweighs any relevance, as this has a high likelihood of confusing the jury, as it suggests that all named inventors must contribute to every claim, which is incorrect as a matter of law.  35 U.S.C. § 116(a) ("Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.").

Thus, the Court should exclude any testimony from Juniper's witnesses regarding these topics.

### C.   Dr. Rubin Should Be Excluded From Providing Opinions of Anticipation and Obviousness in the Guise of Damages or § 101 Analysis.

Dr. Rubin should also be precluded from offering opinions regarding obviousness and anticipation under the guise of being relevant to damages, non-infringement, or whether there is an inventive concept.  Juniper's assertion that it is not offering opinions on anticipation and obviousness is belied by its expert's reports and demonstratives.

Dr. Rubin includes many specious arguments that directly touch on anticipation and obviousness, but are couched as being relevant to damages and non-infringement.  This is best shown through Dr. Rubin's belated demonstratives served with his *rebuttal* report, which bear titles such as:

- "Finjan Did Not Invent 'Behavior-Base' Analysis" Ex. 4, 11/7 Rubin Rpt. at Slide 13;
- "'Behavior-Based' Analysis Existed Before 1996" *Id.* at Slides 14-19;
- "Finjan did not Invent Detecting Unknown Viruses" *Id.* at Slides 20-23.
- "Claim 10 Has Minimal Benefits Over Prior Art" *Id.* at Slide 28.

In each of these slides and associated disclosures in his expert report, Dr. Rubin attempts to show that elements of the '494 Patent were already known in alleged prior art references, and therefore performs a *de facto* invalidity analysis of the claims.  Such testimony should be excluded as

3

irrelevant and more prejudicial than probative.

Similarly, this anticipation and obviousness analysis is irrelevant to §101 to show Claim 10 was "well-understood, routine, and conventional" because whether a disclosure constitutes an inventive concept is subject to a higher standard than simply showing a concept existed in purported prior art. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. ***The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional***.") (emphasis added).  Indeed, the search for an inventive concept should not be confused with a novelty or non-obviousness determination. Despite this, Dr. Rubin includes material that is directed to anticipation and obviousness, such as findings at the PTAB regarding Claim 1 of the '494 Patent and the Swimmer reference.  Ex. 5, 09/11 Rubin Rpt. at ¶¶ 29-30.  Any findings from the PTAB regarding what is disclosed in Swimmer vis-à-vis the claims of the '494 Patent cannot show the material was "well-understood, routine and conventional," because what constitutes "prior art" for purposes of §102 and §103 analysis, is a lower standard. *Berkheimer*, 881 F.3d at 1369.  As such, Juniper and Dr. Rubin should be precluded from opining that an obviousness or anticipation determination shows that something was well-understood.

### D.   Dr. Rubin Should Be Excluded from Relying Documents or Systems that Cannot Establish what was "Well-known, Routine, and Conventional."

#### 1.   Documents that Cannot Establish that Claim 10 Was "Well-known, Routine, and Conventional."

Dr. Rubin relies on specific documents that were not publicly available at the relevant time of November 8, 1996, does not assert that they relate to the general state of the art, and therefore cannot establish what was well-known, routine, and conventional at that time.  The mere fact that something is disclosed in a document does not mean it was well-understood, routine, and conventional under § 101, which has a higher standard for disclosure. *Berkheimer*, 881 F.3d at 1369 ("Whether a particular technology is well-understood, routine, and conventional ***goes beyond what was simply known in the prior art***.  The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.") (emphasis added); *see also Affinity Labs of*

PLAINTIFF'S MOTION *IN LIMINE* NO. 3          CASE NO.: 3:17-cv-05659-WHA

*Texas, LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1262 (Fed. Cir. 2016) (same); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[I]t is of course now standard for a § 101 inquiry to consider whether various claim elements simply recite 'well-understood, routine, conventional activit[ies].'" (second alteration in original) (*quoting Alice*, 134 S.Ct. at 2359)).  Accordingly, whether a particular technology is well-understood, routine, and conventional requires more than merely showing what was included in a document.  Rather, it requires showing that the material was well-known at that time.

However, Dr. Rubin relies on numerous documents for his §101 analysis, like patent applications and research papers, which describe what were new technologies.  In fact, Dr. Rubin attempts to rely on ***eight*** references, seven of which are patents, that were not public prior to the ***agreed upon November 8, 1996 critical date of the '494 Patent***.  Ex. 5, 9/11 Rubin Rpt. at ¶ 20 ("For purposes of my analysis, I have assumed that [the November 8, 1996] priority date applies and considered the state of the art as it existed prior to that time.").  Disclosures in the body of a patent—one that was not even published before the critical date—cannot be used to establish this material was well-known.  In fact, it tends to show the opposite because parties filing a patent believed that this material was novel.  As such, these references that were not published before the priority date of the '494 Patent cannot be relied on to show that Claim 10 lacks an inventive concept since they were not published until after the critical date of Claim 10 of the '494 Patent:

| Reference | Date of Purported Publication | Citation in Rubin Report |
|---|---|---|
| Gryaznov: Proceedings of the Fifth International Virus Bulletin, pp. 225-234 | 1999 | Ex. 5, 9/11 Rubin Rpt., Exhibit 5 (cited in ¶ 39) |

| | Patent | Filing Date | Issuance Date | Citation in Rubin Report |
|---|---|---|---|---|
| 1 | U.S. Patent No. 6,088,801 ("Grecsek") | January 10, 1997 | July 11, 2000 | Ex. 5, 9/11 Rubin Rpt., Exhibit 6 (cited in ¶ 40) |
| 2 | U.S. Patent No. 5,951,698 ("Chen") | October 2, 1996 | September 14, 1999 | *Id.*, Exhibit 7 (cited in ¶ 41) |

| 3 | U.S. Patent No. 5,615,367 ("Bennett") | May 25, 1993 | March 25, 1997 | *Id.*, Exhibit 26 (cited in ¶ 51) |
| 4 | U.S. Patent No. 5,623,600 ("Ji") | September 26, 1995 | April 22, 1997 | *Id.*, Exhibit 27 (cited in ¶ 60) |
| 5 | U.S. Patent No. 5,649,095 ("Cozza") | October 4, 1993 | July 15, 1997 | *Id.*, Exhibit 28 (cited in ¶ 52) |
| 6 | U.S. Patent No. 5,802,275 ("Blonder") | June 22, 1994 | September 1, 1998 | *Id.*, Exhibit 29 (cited in ¶ 33) |
| 7 | U.S. Patent No. 6,065,118 ("Bull") | September 24, 1996 | May 16, 2000 | *Id.*, Exhibit 30 (cited in ¶¶ 33, 34) |

To allow Dr. Rubin to provide testimony on references that post-date the agreed priority date, and that are not described as providing a history or background of the subject matter, would be highly prejudicial to Finjan and misleading to the jury.  The jury will mistakenly believe that the bare fact that a third-party, ***non-public***, patent application contained language regarding the alleged new technologies would necessarily mean that the '494 Patent is not inventive.  Therefore, Dr. Rubin should not be permitted to backdoor in anticipation and obviousness arguments which are contrary to law because they are irrelevant and will cause confusion to the jury.  As such, he should be precluded from relying on these references to establish what was "well-understood, routine, and conventional."

### 2. Undisclosed Systems Cannot Establish that Claim 10 Was "Well-known, Routine, and Conventional."

Dr. Rubin also generally opines that certain things were "well-known," without providing specific examples beyond his apparent experience.  Ex. 5, 09/11 Rubin Rpt. at ¶¶ 31, 35, and 46.  In this regard, Dr. Rubin should be limited to the disclosure of his opening expert reports, and should be precluded from identifying any additional systems that were not specifically named or identified in a document.  For example, Dr. Rubin should be precluded from naming systems that he has alleged personal knowledge of, but which were not disclosed in his report, as Finjan had no opportunity to respond in its rebuttal expert report.

### E. Evidence and Argument Regarding Piecemeal Portions of Claim Elements Should Be Excluded.

Dr. Rubin should be excluded from providing testimony that ignores a complete claim element, but instead breaks the claim element into individual words and asserts that these words were

6

well-known, routine, and conventional.  *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) (holding that the features constituting the inventive concept in step two of Mayo/Alice "must be more than 'well-understood, routine, conventional activity' " (*quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1298 (2012))).  This type of piecemeal analysis is improper, as patent claims are always written using individual words that were known, and parsing an element into individual words would mean that any dictionary could render well-known the claims of nearly every patent in existence.  Instead of looking at entire claims elements, Dr. Rubin often parses a single element into individual words, and does not consider the entire element.  For example, with regard to the claim element "[a] Downloadable scanner **coupled with said receiver**, for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable," Dr. Rubin ignores in much of his analysis that the disclosed Downloadable scanner must be communicatively coupled with a receiver that receives Downloadables.  Dkt. No. 1-6, '494 Patent, Claim 10; Ex. 5, 9/11 Rubin Rpt. at ¶¶ 39-40 (describing scanners without analysis of connection to a receiver).

Additionally, Dr. Rubin argues that "databases" and "database managers" were individually well known, without considering that the entire claim requires "a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database."  Dkt. No. 1-6, '494 Patent, Claim 10.  Further, for most of his analysis, Dr. Rubin ignores that the database requires "security profile data" to be stored in it.  Ex. 5, 9/11 Rubin Rpt. at ¶ 51 ("The use of a database manager to store something in a database is also described in numerous articles and books …").  Dr. Rubin should not be permitted to provide testimony in such a piecemeal fashion because it is irrelevant, and would be highly confusing to the jury.

As such, Dr. Rubin's testimony should be excluded from providing any testimony that attempts to state that less than entire claim element was well-known, routine, and conventional, as this is contrary to the law and would be confusing to the jury and prejudicial to Finjan.

## CONCLUSION

For the foregoing reasons, Finjan's Motion *in Limine* No. 3 should be granted.

Respectfully submitted,

DATED:  November 14, 2018                    By:  */s/ Kristopher Kastens*
                                                   Paul J. Andre (State Bar No. 196585)
                                                   Lisa Kobialka (State Bar No. 191404)
                                                   James Hannah (State Bar No. 237978)
                                                   Kristopher Kastens (State Bar No. 254797)
                                                   KRAMER LEVIN NAFTALIS
                                                     & FRANKEL LLP
                                                   990 Marsh Road
                                                   Menlo Park, CA 94025
                                                   Telephone: (650) 752-1700
                                                   pandre@kramerlevin.com
                                                   lkobialka@kramerlevin.com
                                                   jhannah@kramerlevin.com
                                                   kkastens@kramerlevin.com

                                                   *Attorneys for Plaintiff*
                                                   FINJAN, INC.

PLAINTIFF'S MOTION *IN LIMINE* NO. 3                    CASE NO.: 3:17-cv-05659-WHA

# EXHIBIT C

| | |
|---|---|
| **From:** | Kastens, Kris <KKastens@KRAMERLEVIN.com> |
| **Sent:** | Thursday, November 15, 2018 3:54 PM |
| **To:** | Glucoft, Josh; ~Andre, Paul; ~Caire, Yuridia; ~Hannah, James; ~Hedvat, Shannon; ~Kobialka, Lisa; ~Lee, Hannah; ~Lee, Michael; ~Manes, Austin; ~Martinez, Cristina; ~Nguyen, Stephanie; ~Xu, Linjun |
| **Cc:** | Curran, Casey; Song, Sharon; Holland, Eileen; Kagan, Jonathan; Carson, Rebecca; Wang, Kevin |
| **Subject:** | RE: MILs |

Josh,

You appear to be confusing the MILs being limited to a single topic with them being limited to a single argument.  Each of Finjan's MILs relates to a single topic:

- MIL #1 – Juniper's Late Disclosures
- MIL #2 – Rubin's Improper Arguing of Claim Construction
- MIL #3 – Rubin's Improper Opinions on Prejudicial Material
- MIL #4 – Juniper's Improper Introduction of Prejudicial Material

As you can see from the excerpt you provided from MIL #3, that MIL is limited to the single topic of prejudicial material that Rubin seeks to improperly introduce.  We have four depositions in this case scheduled for tomorrow, and as such, no one is available to meet and confer on this issue until Monday after 11AM.

Sincerely,
Kris

**Kris Kastens**
Partner

Kramer Levin Naftalis & Frankel LLP
990 Marsh Road, Menlo Park, California 94025
**T** 650.752.1715   **F** 650.752.1815
kkastens@kramerlevin.com

Bio

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Glucoft, Josh [mailto:JGlucoft@irell.com]
**Sent:** Thursday, November 15, 2018 1:48 PM
**To:** Andre, Paul; Caire, Yuridia; Hannah, James; Hedvat, Shannon H.; Kastens, Kris; Kobialka, Lisa; Lee, Hannah; Lee, Michael H.; Manes, Austin; Martinez, Cristina; Nguyen, Stephanie; Xu, Linda

**Cc:** #Juniper/Finjan [Int]
**Subject:** [EXTERNAL] MILs

Counsel,

The Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before the Honorable William Alsup at paragraph 2(f) states: "Each motion [*in limine*] should address a single topic…."  Last night, Finjan flouted Judge Alsup's rule by serving four MILs that are each directed to multiple topics.

For example, Finjan's Motion in Limine No. 3 addresses no less than five distinct topics:

1.   "First, Juniper should be precluded from mentioning the Court's finding that Claim 10 of the '494 Patent was abstract"
2.   "Second, Dr. Rubin should be precluded from providing opinions and material that only relate to prosecution laches and inequitable conduct"
3.   "Third, Dr. Rubin should be prohibited from providing opinions on anticipation and obviousness"
4.   "Fourth, Dr. Rubin should not be permitted to provide testimony on references that he cannot establish were 'well-known' at the relevant time frame for Claim 10 of the '494 Patent"
5.   "Fifth, Dr. Rubin should be precluded from providing testimony that individual words in an element are well-known"

Please limit the Motions to a single topic per motion and re-serve them by 5:00pm today.  If Finjan refuses to serve proper motions that address a single topic, please provide a time this afternoon or tomorrow morning that you are available to confer.  Juniper reserves all rights.

Regards,
Josh

_____
**Joshua P. Glucoft** | Irell & Manella LLP | 310.203.7189 | www.irell.com

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.