PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>    Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT JUNIPER NETWORKS, INC.'S MOTION TO EXCLUDE THE TESTIMONY OF MR. KEVIN M. ARST**<br><br>Date:         November 29, 2018<br>Time:        8:00 a.m.<br>Courtroom:  12 - 19th Floor<br>Judge:      Hon. William H. Alsup |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | STATEMENT OF ISSUE TO BE DECIDED | 1 |
| II. | INTRODUCTION | 1 |
| III. | SUMMARY OF ARST OPINION AND RELEVANT FACTS | 1 |
| IV. | ARGUMENT | 3 |
| | A. Mr. Arst's Opinion Is Grounded Upon Reliable Economic Principles | 3 |
| |    1. Juniper's Motion Is Premised On the Wrong Revenues | 3 |
| |    2. Juniper's Arguments Amount to Factual Disputes | 4 |
| | B. Mr. Arst's Opinion Is Grounded Upon Substantial Facts | 7 |
| |    1. Juniper's Costs Are Represented In The ▓▓▓ Invoices | 7 |
| | C. Mr. Arst's Opinions Regarding Revenues of Juniper's Accused Products Is Factual and Not Prejudicial | 11 |
| |    1. Juniper's Reliance On Platform Guides is Misplaced | 13 |
| | D. Juniper's Premature Request to Prelude Mr. Arst from Amending His Opinion, if Necessary, is Without Justification and Should be Rejected | 14 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)..................................................................................................11

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) ............................................13

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)....................................................................................................5

*Coloplast A/S v. Generic Med. Devices Inc.*,
   No. C10-227BHS, 2011 WL 6330064 (W.D. Wash. Dec. 19, 2011)...................................................8

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013)....................................................................................................5

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13-cv-03999-BLF, 2015 WL 4272870 (N.D. Cal. July 24, 2015)............................................12

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)..................................................................................................12

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ........................................12

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197-WHO, 2016 WL 4702651 (N.D. Cal. Sept. 8, 2016) ..........................................14

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ......................................................3, 11, 14

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)..................................................................................................11

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   476 F. Supp. 2d 1143 (N.D. Cal. 2007) ........................................................................................6

*Monsanto Co. v. Ralph*,
   382 F.3d 1374 (Fed. Cir. 2004)....................................................................................................5

*Network Prot. Sci., LLC v. Fortinet, Inc.*,
   No. C 12-01106 WHA, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013) .........................................15

i

*Nickson Indus. Inc. v. Rol Mfg. Co.*,
   847 F.2d 795 (Fed. Cir. 1988)..................................................................................................7

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017)................................................................................................3

*ResQNet.com, Inc. v. Lansa, Inc.*,
   No. 01 Civ. 3578, Dkt. 335, Slip Opinion (S.D.N.Y. Dec. 6, 2011) ......................................7

*Telcordia Techs., Inc. v. Lucent Techs., Inc.*,
   No. CIVA 04-875 GMS, 2007 WL 7076662 (D. Del. Apr. 27, 2007) ..................................12

*Tights, Inc. v. Kayser-Roth Corp.*,
   442 F. Supp. 159 (M.D.N.C. 1977) ........................................................................................7

*VirnetX Inc. v. Cisco Sys., Inc.*,
   No. 6:10-cv-417, 2013 WL 789288 (E.D. Tex. Mar. 1, 2013) .............................................14

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
   No. CIV.A. 09-157-RGA, 2013 WL 936449 (D. Del. Mar. 11, 2013)...................................6

I.  **STATEMENT OF ISSUE TO BE DECIDED**

Plaintiff Finjan, Inc. ("Finjan") requests the denial of Juniper Networks, Inc.'s ("Juniper") Motion To Exclude the Testimony of Mr. Kevin M. Arst (Dkt. No. 230 ("Motion")), who presented reliable and well-founded opinions regarding the reasonable royalty for Juniper's infringement of Claim 10 of Finjan's U.S. Patent No. 8,677,494 (the "'494 Patent").

II. **INTRODUCTION**

The Court should deny Juniper's Motion to exclude the testimony of Mr. Arst because Juniper's criticisms of Mr. Arst's opinion relate to factual issues, <u>not</u> methodological flaws. There is no challenge to his cost savings approach, which is rooted in Federal Circuit law, but rather that the "results" of Mr. Arst's analysis is wrong. This criticism, however, is predicated on a false fact about the amount of accused revenues at issue, which is about ▓▓▓▓▓▓ in the United States. These revenues do not even address the significant benefits that Juniper received from its infringement. Juniper's issues, when viewed in light of his actual opinion, reveal that Juniper is merely raising factual issues that can be properly addressed on cross examination.

III. **SUMMARY OF ARST OPINION AND RELEVANT FACTS**

Mr. Arst's methodologically sound cost-savings opinion for Juniper's infringement for the technology Juniper used, sold and offered for sale in (1) SkyATP and (2) SRX with SkyATP products is founded upon the relevant facts specific to this case. Key facts that Juniper ignores include, but are not limited to, (1) Juniper's essential need for the patented technology, (2) the extensive benefits Juniper received across Juniper's entire network from its infringement, and (3) how the negotiations taking place during the hypothetical negotiation were against the backdrop of widespread industry infringement, all analyzed within view of Finjan's historical licensing practices. Dkt. No. 228-7,[1] Arst Rpt. at 45; *see also* Dkt. No. 97-4, Finjan's MSJ at 24-25. Mr. Arst relies upon Dr. Cole's, Finjan's technical expert, explanation regarding how Juniper and Juniper's customers enjoyed many technical and economic benefits from Juniper's infringement. Dkt. No. 228-7, Arst Rpt. at p. 23-27, 30-32, 49;

---

[1] A copy of Mr. Arst's Report is attached as Exhibit 1 to Juniper's Motion to Exclude Mr. Arst, filed on November 12, 2018.

*see also* Ex. 1[2], Dr. Cole Rpt. at ¶¶ 25-37.  These include a shared environment where Juniper and its customers benefit from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *Id*.  Also, he identifies the benefits specific to Juniper, including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which Juniper's customers require at a minimum, and do so at a dramatically reduced total cost to Juniper.  Dkt. No. 228-7, Arst Rpt. at 23-27; *see also* Ex. 1, Cole Rpt. at ¶¶ 30-37.  These benefits result from Juniper's infringement of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in the infringing database.  *See, e.g.,* Ex. 1, Cole Rpt. at ¶ 43.  Without the infringing database, Juniper would need to re-analyze incoming files, irrespective of whether that file had already been analyzed thousands of times previously, because that file's analysis results would not be stored.  *Id*. at ¶ 37.  Juniper would need to spend significantly more resources and time to analyze its customers' files, which is the ▓▓▓▓▓▓▓▓▓ that Mr. Arst calls the "cost-savings factor," to achieve the same protection and benefits without infringing.[3]  *Id*. at ¶¶ 35-37.

Mr. Arst first identified the world-wide costs to Juniper associated with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Significantly, Juniper represented in discovery that its production of ▓▓▓ invoice summaries was limited "to servers that host or directly interface with specifically accused features of the deployed or sold products *at issue in this litigation*."  Ex. 2, Juniper Response RFP No. 95, 97.  He multiplied these costs by the cost-savings factor based on the additional time it would take Juniper to process the files versus looking it up in the database, to identify the value attributed to the actual benefits to Juniper, including to its entire network, due to Juniper's infringement.  Dkt. No. 228-7, Arst Rpt. at 31,

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Kristopher Kastens filed herewith.
[3] Juniper never identified any non-infringing alternatives during fact discovery.  Ex. 3 at 33-35 (Juniper's interrogatory response failing to identify any alternatives).  It only asserted one ***after*** service of Finjan's reports.

FN 100, Exh. 1.1-1.2; *see also id.,* Errata of K. Arst at 7. Mr. Arst also identified three different approaches for apportionment (each referred to as an "Apportionment Factor") based upon: (1) Juniper's volume and dollar sales of all accused products, (2) Juniper's volume and dollar sales of Sky ATP (i.e., excluding accused SRX products), and (3) geographic Availability Zone classifications of the ▓▓▓ servers. Dkt. No. 228-7, Arst Rpt. at 31, FN 100; *see also id.,* Errata of K. Arst at 7. Mr. Arst applied the most conservative apportionment factor of ▓▓▓, which is based on the number of units sold that included the infringing technology. *Id.,* Errata of K. Arst at 7.

Notably, the majority of information Juniper relies upon for its Motion is based upon the declaration of Mr. Icasiano and unsupported references to information that Juniper never produced during discovery, such as alleged non-infringing alternatives, costs of the ▓▓▓ identification of accounts related to ATP in ▓▓▓, and alleged number of free Sky ATP licenses. *See* Motion at 5-14 (Arguments A-C). As such, Juniper's Motion is not supported with evidence disclosed during fact discovery.

## IV.   ARGUMENT

### A.   Mr. Arst's Opinion Is Grounded Upon Reliable Economic Principles

#### 1.   Juniper's Motion Is Premised On the Wrong Revenues

Juniper agrees that a reasonable royalty can be based upon the cost savings an infringer enjoys as a result of its infringement. Motion at 8 (citing *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017)). Juniper does not challenge Mr. Arst's methodology but rather disagrees with the facts upon which he relies, which is not a ground for exclusion. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy … may go to the testimony's weight, but not its admissibility."). Juniper's Motion is premised on Juniper's factually incorrect claim that only ▓▓▓ in revenues and ▓▓▓ in profits are at issue. The revenues at issue, however, are about ▓▓▓ and ▓▓▓

1 ▮▮▮ of dollars of profits based on Juniper's infringement of Claim 10 of the '494 Patent.[4]
Revenues of products that incorporate the infringing technology, however, do not capture the value of the significant benefits Juniper received, including to its entire network, based upon its infringement. Ultimately, Juniper's disagreement with the results of Mr. Arst's sound methodology (i.e., the reasonable royalty amount) does not create a methodological issue where Juniper agrees that the cost savings method is a proper basis for damages. And Juniper's attempts to undervalue its infringement, seeking to force the parties to only view a reasonable royalty from a revenue perspective while ignoring the significant non-revenue related benefits Juniper receives from its infringement, is a factual dispute about Finjan's infringement claims, and the scope and extent of Juniper's infringement. Ultimately, this factual dispute does not create a *Daubert* issue.

### 2. Juniper's Arguments Amount to Factual Disputes

Juniper's arguments regarding profits (Motion at 6) and the alleged "economically obvious next best alternative" at the time of the hypothetical negotiation (Motion at 8-9) are factual disputes. Key to this factual dispute is the significant benefits Juniper receives as a result of its extensive and pervasive use of the infringing system, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ultimately the ability to protect and defend its network and customers from destructive malware threats. Ex. 1, Cole Rpt. ¶¶ 30-34, 37; Dkt. No. 228-7, Arst Rpt. at 23-27. Mr. Arst also considered Juniper's documents highlighting the importance of network security to Juniper and its customers. *See, e.g.,* Dkt. No. 228-7, Arst Rpt. at 19-22. These benefits would be particularly important to Juniper, a company that originally was focused on routing internet traffic and later introduced security in its offerings. He considered Juniper's extensive and pervasive use of the malware data identified in Sky ATP across Juniper's entire network, the importance to Juniper and its customers of preventing malware, and the synergies between Sky ATP and SRX gateways with Juniper's other networking and security products. Dkt. No. 228-7, Arst Rpt. at 22-27. Thus, Mr. Arst

---

[4] A further detailed explanation of the infringing revenues at issue is set forth in Finjan's *Daubert* Motion in connection with Dr. Ugone. Dkt. No. 229-4 at 9-12; Dkt.229-6, Ugone Rpt. at ¶ 45, Table 5.

4

explained why the ▮▮▮ of revenues and associated profits do not capture the value of Juniper's infringement.

In recognizing that revenue cannot cap the amount of a reasonable royalty, Juniper implicitly acknowledges that whether the reasonable royalty can exceed Juniper's alleged (incorrect) amount of revenues is a factual dispute. *See Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004) ("the law does not require that an infringer be permitted to make a profit"); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) (finding district court committed clear error by "limiting the ongoing royalty rate based on [defendant's] profit margin."). The reasoning underlying this principle that revenues and profits cannot cap the amount of the reasonable royalty is because revenues and profits do not always capture the value at issue, particularly where an infringer does not charge for its use and sale of the infringing technology. Here, Juniper did give the infringing technology away for free, and for the first time, Juniper claims that it maintains such information, despite having taken a contrary position on whether such information existed previously. Motion at 6 (identifying ▮ customers who activated a free license); *see also* Dkt No. 126-2, Nagarajan Decl. at ¶ 6 (representing that Juniper "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").[5] Juniper gave it for free because there was significant other non-monetary value to Juniper. Thus, revenues and profits do not capture the economic footprint of the '494 Patent. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015) ("key inquiry" in reasonable royalty analysis includes consideration of "benefits [Juniper] would expect to receive from using the technology").

As Dr. Cole and Mr. Arst identified, there were significant benefits and non-revenue value Juniper reaped from its infringement, which was calculated and quantified. Thus, Juniper's contentions that it could delay launch of Sky ATP (Motion at 8-9) without suffering adverse economic consequences on its networking and security products, reputation, and business and that profits

---

[5] Mr. Icasiano statements are irreconcilable with the previously submitted declaration of Mr. Nagarajan, Juniper's Senior Director in the Security Business, who claimed that Juniper ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Compare* Dkt. No. 228-6 (Icasiano Decl.) at ¶ 4 *with* Dkt No. 126-2 (Nagarajan Decl.) at ¶ 6.

represent the value of its infringement is not credible in light of these benefits and non-revenue value. Ultimately, these contentions are ultimately a factual dispute to be addressed on cross-examination.

Finally, Juniper's claim regarding Finjan's prior use of applying 8 and 16% to total, unapportioned revenues is unsupported and factually incorrect. Finjan has used public information regarding total revenues by product category, such as security products, and applied these rates to those revenues for a royalty. Ex. 4, Hartstein Tr. at 52:14-24 (rates used "■■■■■■■■■■■■■■■■■■■■■■■■■■"); *id.* at 81:15-82:12 (rates applied to public data about "■■■■■■■■■■■■■■■■■■■"); *see also* Ex. 5, Garland Nov. Tr. at 30:22-31:14 (use of public market research and "■■■■■■■■■■■■■■"); *id.* at 92:25-93:17. Juniper's citations confirm how these royalty rates have been applied to "total revenue." Motion at 6-7. That approach here would result in Finjan applying 8% on hardware sales and 16% on software sales (for example, ■■■■■■■ x 16%), which undervalues Juniper's infringement, as explained above. That is a far cry from Juniper's manufactured 4,000% royalty rate. Motion at 1, 7. Juniper is only able to concoct this number by comparing its expert's deflated revenues to Mr. Arst's identification of the cost savings that Juniper realized. Juniper's attempts to compare revenues to cost savings to create 4,000% rate is mixing apples and oranges to create outrageous numbers that are factually unsupported and does not create a basis for exclusion on *Daubert*.[6]

Moreover, Mr. Arst confirmed that his analysis is based on a hypothetical negotiation wherein Finjan and Juniper would have been willing to enter a license and not based on what Juniper would have liked to pay or what Finjan would have liked to receive. Dkt. No. 228-7, Arst Rpt. at 27-29. As

---

[6] Juniper cites inapposite cases in which expert's advanced *revenue-based theories* that did not comport with a party's actual revenues. Motion at 7. For example, in *XpertUniverse, Inc. v. Cisco Sys., Inc.*, the district court excluded the damages expert's opinion because he failed to explain how the *running royalty rates applied to ongoing revenues* in two licenses he relied upon justified his *lump sum* royalty opinion. No. CIV.A. 09-157-RGA, 2013 WL 936449, at *3 (D. Del. Mar. 11, 2013). And in *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, the damages expert used a royalty rate based on a portion of the retail price of the product, but his reasonable royalty amount exceeded product sales. 476 F. Supp. 2d 1143, 1155 (N.D. Cal. 2007). Here, Mr. Arst is not relying on Finjan's historical licensing practices and licenses for the reasonable royalty in this case, and explained that revenues do not capture the value of the extensive benefits Juniper enjoys from its infringement of the '494 Patent. Thus, Juniper's comparison of Mr. Arst's cost savings opinion to Juniper's revenues that do not capture the value of the invention is meaningless and improper.

part of that analysis, Mr. Arst properly considered Finjan's historical licensing practices and royalty rates and explained why such rates could not be used and are not indicative of how to calculate a reasonable royalty in this case.  *Id.*, Arst Rpt. at p. 28, 33-34, 45, 46; *see also* Ex. 11, *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, Dkt. 335, Slip Opinion at *4-5 (S.D.N.Y. Dec. 6, 2011), referencing, *e.g.*, *Nickson Indus. Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 798 (Fed. Cir. 1988).  He accounted for differences between Finjan's historical licensing practices and the hypothetical negotiation to conclude that Finjan's prior licenses are not informative of the reasonable royalty in this matter, particularly given that Finjan's historical licenses were generally negotiated in the context of litigation, against the backdrop of widespread infringement.  *See, e.g., Tights, Inc. v. Kayser-Roth Corp.*, 442 F. Supp. 159, 165-66 (M.D.N.C. 1977) (finding the value of an existing license may be dramatically reduced if it was negotiated against a backdrop of industry-wide infringement).  Mr. Arst also considered that Finjan's historical licenses were generally negotiated amidst extensive third-party challenges to the validity of Finjan's patents, and in consideration of the costs and risks associated with enforcing its patents against infringers.  Dkt. No. 228-7, Arst Rpt. at 33.  Based on these considerations Mr. Arst concluded the parties would not look to Finjan's historical licensing practices and royalty rates to determine a reasonable royalty in this matter.  Thus, Mr. Arst presented a complete and thorough analysis that is methodologically sound.

### B. Mr. Arst's Opinion Is Grounded Upon Substantial Facts

#### 1. Juniper's Costs Are Represented In The ▮ Invoices

Juniper's contention that Mr. Arst should have based his analysis on the ▮ invoices rather than ▮ invoices, is wholly unsupported.  First, Juniper uses ▮▮▮, to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ex. 1, Cole Rpt. ¶ 36; Ex. 6 (Juniper's Response to Interrogatory No. 11); Ex. 2 (Juniper's Response RFP No. 95).  Juniper's discovery responses affirmatively stated that its production of ▮ invoices were limited "to servers that host or directly interface with specifically accused features of the deployed or sold products *at issue in this litigation*" and no ▮ invoices

7

1   were produced. Ex. 2, Juniper Responses RFP Nos. 95, 97.[7] Consistent with that representation was
2   Dr. Cole's evaluation of Juniper's cost savings by reference to Juniper's ▮ actual cost and
3   determining how much costlier it would be to analyze those files using a sandboxing process. *Id.* Dr.
4   Cole's opinion that ▮
5   ▮ and therefore ▮ costs serve as a useful reference point for evaluating Juniper's cost
6   savings (Ex. 1, Cole Rpt. ¶ 36) is well within the scope of Dr. Cole's knowledge as an industry expert.
7           Second, Juniper's arguments are premised on a reversal of position and dubious information
8   that, if relevant, were never disclosed during discovery, and which ultimately do not support Juniper's
9   Motion. Juniper, for example, attempts to now suggest that Juniper's ▮ invoices include costs for
10  products and services other than Sky ATP ▮ is a better measure of costs is based upon the
11  Icasiano declaration (Motion at 10), which contains questionable information never disclosed during
12  fact discovery. Dkt. No. 228-6 (Icasiano Decl.) at ¶ 5. If such information existed, it was responsive
13  to multiple discovery requests and should have been produced during discovery, particularly as Juniper
14  knew cost savings was at issue in this case. *See, e.g.*, Ex. 2, RFP Nos. 95-97 (requesting all
15  information on costs and processing of servers); Ex. 6 at Interrogatory No. 11 (requesting information
16  on Juniper's hosting of servers); Ex. 7 at 4-5 (Finjan's patent damages disclosures identifying cost
17  savings and the nature and amount of costs as being relevant). Juniper also never disclosed Mr.
18  Icasiano as a fact witness with relevant information during fact discovery, identifying him for the first
19  time in its untimely November 5, 2018, supplemental Initial Disclosures served months after Finjan
20  issued its expert reports. Ex. 8 at 4.
21          Mr. Icasiano's statements regarding costs of the ▮ identification of
22  accounts related to ATP in ▮ server invoices, alleged non-infringing alternatives and alleged
23  number of free Sky ATP licenses which Juniper previously represented does not exist, amount to a

---

[7] Juniper's attempts to alter facts just before trial to suggest that the ▮ invoices represent the costs is improper and cannot be a basis for *Daubert*. *Coloplast A/S v. Generic Med. Devices Inc.*, No. C10-227BHS, 2011 WL 6330064, at *5 (W.D. Wash. Dec. 19, 2011)(failure to disclose information during discovery precludes use at trial as a party should not "represent one position during discovery, then advantageously switch positions after discovery has closed.").

1  change or reversal of Juniper's previous positions and a sandbag that does not support Juniper's
2  Motion.  For example, Juniper incredibly argues that Dr. Cole should have reviewed the ▓▓▓
3  invoices[8] (Motion at 9-10) that ***Juniper never produced during fact discovery***.[9]  Juniper also raised
4  various challenges to the factual sufficiency of Mr. Arst's "cost factor."  Motion at 10-11.  This "cost
5  factor" is based upon Dr. Cole's detailed analysis of Juniper's information that demonstrates the cost
6  savings value attributable to the invention of the '494 Patent, i.e., the patented technology permits the
7  ability of Sky ATP to process a file from a database of results (which takes ▓▓▓▓▓▓), as
8  opposed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ perform its analysis on a new file.  Ex. 1,
9  Cole Rpt. ¶ 35.  Dr. Cole relied on Juniper specific information establishing each input to his analysis.
10 *Id*. (citing FINJAN-JN044844; FINJAN-JN044744 at 4763-764; JNPR_FNJN_29008_00514106 at
11 137, 514174).  Juniper points to the Icasiano self-serving declaration to claim that ▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which is contrary to its previous discovery responses.  Motion at
13 11.  This is a factual dispute, evident from Dr. Cole's testimony that, even if Juniper currently enjoys a
14 ▓▓▓▓ agreement, the increased costs associated with processing required for the only viable non-
15 infringing alternative presented during fact discovery in the case of having to reanalyze every file
16 would necessarily require renegotiation of those agreements, such that the ▓▓▓▓ do not present a
17 meaningful change to the analysis.  Ex. 9, Cole Tr. at 158:13-159:1.  And this comparison of
18 processing time is meaningful because the increased processing "time would be directly proportional
19 to increased computational power that would be needed by the servers." *Id*. at 173:8-18.
20         Juniper's suggestion that it is better to analyze Juniper's cost savings by assessing Juniper's
21 historical sandbox costs from its ▓▓▓▓ servers also boils down to a factual dispute about Juniper's
22 savings that can be addressed on cross-examination.  Motion at 9.  Once a Juniper customer file is

---

[8] At deposition, Dr. Cole testified that, based on his experience as CTO, the pricing structure of ▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ costs.
Ex. 1, Cole Rpt. at Appendix A; *see also* Ex. 9, Cole Tr. at 146:4-151:1.
[9] Finjan's motion *in limine* addresses Juniper's failure to produce this information during fact discovery and belated, questionable productions nearly two months *after* Finjan's expert reports were served.

28

9

FINJAN'S OPP.TO DEF.'S MOTION TO EXCLUDE           CASE NO. 3:17-cv-05659-WHA
THE TESTIMONY OF MR. KEVIN M. ARST

1  subjected to ▮▮ in ▮▮, a profile is generated for that particular file so Juniper does not have
2  to undergo this operation again, resulting in significant computational and bandwidth savings. Ex. 1,
3  Cole Rpt. ¶ 32.  Given that Juniper does not need to have the same file subsequently looked up
4  hundreds of thousands (or millions) of times in ▮▮ again, consideration of the ▮▮ invoices was
5  the appropriate starting point because Juniper's cost savings of not having to re-sandbox the same file
6  numerous times should be assessed by first determining the cost of the alleged infringing database
7  lookups in ▮▮ and then by determining how much costlier the sandbox process would be.  This is
8  precisely what Dr. Cole and Mr. Arst did.  Thus, Juniper's historical ▮▮ costs do not reflect
9  the actual costs at issue and is a factual dispute.

10       Dr. Cole explained that the costs associated with ▮▮ could be used to identify the costs
11  associated with the infringing system because ▮▮ is used for the majority of the processing provided
12  by the system, and as such, indicates the costs Juniper incurred using of the patented technology.[10]  Ex.
13  1, Cole Rpt. ¶ 36.  Thus, Mr. Arst properly relied upon Dr. Cole that the appropriate costs could be
14  estimated based upon cost of the ▮▮ servers. Ex. 9, Cole Tr. at 145:13-146:2, 147:1-13.

15       Without any support, Juniper criticizes Mr. Arst for not "▮▮
16  ▮▮" Motion at 10.  Juniper fails to recognize that ▮▮
17  ▮▮
18  ▮▮ Ex. 10, Tenorio Tr. at
19  226:16-17 (▮▮

20       Juniper's remaining criticisms go to the weight of the evidence, not the admissibility of Mr.
21  Arst's opinion, and are premised on questionable information that Juniper did not produce during
22  discovery.  For example, Juniper asserts there is ▮▮
23  ▮▮ by Sky ATP are subject to ▮▮ and that
24  "the maximum time savings that Dr. Cole identifies ▮▮) would apply to ▮▮

---

[10] As the ▮▮ invoices would include additional costs for this processing, these would likely increase the amount of costs savings associated.

10

analyzed by Sky ATP." Motion at 11. Juniper creates these factual disputes with the dubious information presented for the first time in the Icasiano Declaration.[11]

Finally, Juniper criticizes Mr. Arst and Dr. Cole for purportedly failing to determine how many files were new versus previously processed, but that argument is a red herring for which Juniper cites to no evidence as to how Mr. Arst's and Dr. Cole's determination is wrong. *Id.* at 11. The only non-infringing alternative disclosed during discovery would require files to be re-processed, even if that file had been analyzed already a million times because Juniper would not be allowed to use databases to store the results of previously analyzed files. Given that every file would have to be analyzed, every file would be considered "new" and thus 100% of the files (and not Juniper's unsupported claim that ▮▮▮▮▮▮▮▮ files) need to be analyzed. Given the foregoing, Juniper's factual challenges provide no basis to exclude Mr. Arst's well-founded and reliable opinions and any dispute between experts is addressed through contrary evidence or cross-examination. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1333 (Fed. Cir. 2012).

### C. Mr. Arst's Opinions Regarding Revenues of Juniper's Accused Products Is Factual and Not Prejudicial

Mr. Arst's identification of revenues associated with accused SRX gateways is fully supported by Juniper's own evidence.[12] As noted above, Juniper's challenges are based on its incorrect assessment of the infringement case and questionable information disclosed just recently that should be struck and, at best, amount to factual disputes that do not warrant exclusion of Mr. Arst's opinions. *i4i,* 598 F.3d at 852; *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003). Juniper argues that only the revenues it believes are at issue should be presented at trial. Motion at 12-13.

---

[11] Juniper certainly would not have needed a declaration to support its *Daubert* Motion of a witness who was never identified during fact discovery if it had properly disclosed and produced the information during discovery.

[12] Juniper already raised this argument in its opposition to Finjan's motion for summary judgment when it argued that Finjan had not proven infringement of SRX appliances where the customer did not configure the appliance with a Sky ATP license. Dkt. 125-4 at 22. The Court did not credit these arguments and granted in-part Finjan's motion for summary judgment. Dkt. No. 185 at 20-21.

FINJAN'S OPP.TO DEF.'S MOTION TO EXCLUDE   CASE NO. 3:17-cv-05659-WHA
THE TESTIMONY OF MR. KEVIN M. ARST

This, however, is based upon Juniper's apparent non-infringement position which is contrary to Federal Circuit law. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010). Mr. Arst's revenues are based on the infringement of Claim 10 of the '494 Patent. The included SRX models infringe, irrespective of whether there is an activation of the Sky ATP license, because the SRX models identified contain the Sky ATP code. These identified models, thus, are the SRX models that are used in connection with Sky ATP for purposes of a system claim. Accordingly, Mr. Arst properly considered revenues associated with sales of any SRX gateway that contains Sky ATP code.

      Mr. Arst's opinion is tied to the infringement opinion of Dr. Cole, who relied on Juniper's own information to reach his technically sound opinions that Juniper is not challenging, including Juniper's source code that confirmed the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is deployed on every SRX device. Ex. 9, Cole Tr. at 76:25-79:6; 80:18-83:12. Dr. Cole also relied on Juniper's product specifications and other confidential documents, as well as the testimony of Juniper's engineers. Ex. 9, Cole Tr. at 76:12-17, 85:15-17, 86:14-87:1, 88:2-5, 93:5-19, 104:4-23, 106:22-107:2, 121:20-23; *see, e.g.,* Ex. 1, (Cole Rpt. at ¶¶ 1, 49-50 and ¶ 1, n.1).[13] To the extent that Juniper disputes Dr. Cole's opinion regarding the number and models of SRX that include the Sky ATP code, that is a factual dispute and not a situation where there is an overstatement regarding Juniper's accused revenue and infringing units.[14] Ultimately, Mr. Arst's opinion is supported by Dr. Cole's technical opinions,

---

[13] Juniper's desperate attempt to cast doubt on the reliability of Mr. Arst's opinion through outright mischaracterizations of court rulings, in which portions of the opinions of Finjan's *different damages experts* (i.e., not Mr. Arst) were excluded, is unfounded. In *Finjan, Inc. v. Blue Coat Sys., Inc.*, the issues revolved around partial exclusion of convoyed sales in the royalty base but allowed consideration of these sales for *Georgia-Pacific* factors. No. 13-cv-03999-BLF, 2015 WL 4272870, *9-10 (N.D. Cal. July 24, 2015). Similarly, in *Finjan, Inc. v. Sophos, Inc.*, the issue was a result of Sophos' misrepresentation of the billings and required amendment of the expert's miscalculation. No. 14-cv-01197-WHO, 2016 WL 4268659, at *5-6 (N.D. Cal. Aug. 15, 2016). Mr. Arst's opinions do not involve the same issues and referencing such cases speaks volumes as to the lack of merit underlying Juniper's *Daubert* motion.

[14] The District of Delaware's decision in *Telcordia Techs., Inc. v. Lucent Techs., Inc.*, does not support Juniper's argument. No. 04-875 GMS, 2007 WL 7076662, at *3 (D. Del. Apr. 27, 2007). Unlike *Telcordia*, Mr. Arst is presenting a reasonable royalty theory premised on cost savings, <u>not</u> revenues. *Id.* Moreover, in *Telcordia* the court excluded revenues associated with products "sold without" an optional function card because the "accused [] functionality resides on the optional cards, which are priced, invoiced and sold separately from the boxes into which they are inserted." *Id.* at *1, 3. Here,

source code for the accused products, Juniper's confidential documents regarding the accused products, and the testimony of Juniper's engineers and is information that is properly presented to the jury.

### 1. Juniper's Reliance On Platform Guides is Misplaced

In order to challenge Mr. Arst's opinion regarding revenues for all SRX devices that have Sky ATP code on them, Juniper cites to two documents Juniper produced for the first time with this Motion—namely a Sky ATP Platform Guide and a Sky ATP Administration Guide—that purportedly deal with the capability of SRX devices with Sky ATP. Motion at 12-13, Exs. 3, 4. One document is dated October 2018 and the other September 2017. Both dates are after the damages period at issue here, which ends in January of 2017, such that it is unclear how they would be relevant. Thus, Juniper's statement that "Mr. Arst inexplicably disregarded this evidence" is spurious, as there can be no reasonable explanation why Juniper is just producing these documents now, which is months *after* Mr. Arst served his expert report and just before trial. Furthermore, Juniper's claim that Mr. Arst should have relied upon a document dated October 2018, which presumably did not exist when Mr. Arst served his expert report on September 11, 2018, defies all common sense.

Moreover, these newly produced and recently issued documents do not present any basis to exclude Mr. Arst's opinion because, at best, Juniper's challenges amount to factual disputes, and not the reliability and methodology of Mr. Arst's opinion. *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (denying exclusion where objection to expert opinion turned on a factual dispute). As discussed above, the relationship between SRX gateways and Sky ATP licenses is a disagreement on the law and the scope of infringement, including whether a license that is not activated is infringing when the relevant code is on the SRX model. *See* Ex. 9, Cole Tr. at 91:13-93:19, 99:8-100:7, 100:16-101:19, 125:12-18. Regarding Juniper's never-produced product guides, Dr. Cole testified at deposition that, despite never having the opportunity to review these documents, he disagreed with Juniper's mischaracterization of the documents and as explained above, the evidence confirms that the relevant Sky ATP source code is included on every SRX box. Thus, Mr. Arst properly considered revenues associated with sales of all SRX gateways.

13
FINJAN'S OPP.TO DEF.'S MOTION TO EXCLUDE         CASE NO. 3:17-cv-05659-WHA
THE TESTIMONY OF MR. KEVIN M. ARST

indicated they did not rebut that Juniper's SRX gateways contain source code that allows interface with Sky ATP. *Id.,* Cole Tr. at 88:6-93:7. Thus, Juniper cannot suggest that Mr. Arst did not rely upon proper evidence or Mr. Arst's testimony regarding revenues would somehow taint the jury because there is no inflated unit and revenue information being presented. Finally, Juniper's concerns regarding the accuracy of underlying facts can be dealt with through cross-examination at trial, not exclusion. *i4i*, 598 F.3d at 852 (disputes regarding relevance or accuracy of evidence go to weight, not admissibility).

### D.   Juniper's Premature Request to Prelude  Mr. Arst from Amending His Opinion, if Necessary, is Without Justification and Should be Rejected

There is no factual or legal basis for Juniper's premature request that the Court proactively foreclose, wholesale and without limitation, Mr. Arst from an opportunity to amend his expert opinion in the event the Court excludes *any portion* of his current opinion. Nor would it be appropriate to exclude Mr. Arst's opinion in its entirety because Mr. Arst provided more than just a cost-savings opinion, including a full analysis of the *Georgia-Pacific* factors and the sales at issue in the case. Indeed, Juniper only takes issue with Mr. Arst's use of revenues to identify a way to apportion Juniper's cost savings, and did not challenge any of the other methodologies that Mr. Arst used to identify other possible ways to apportion the cost savings. Dkt. No. 228-7, Arst Rpt. at p.31, FN 100; *id*., at Exh. 1.1-1.2 and 1.7; *id*., Arst Errata at 7.

Courts routinely permit experts to amend or present non-excluded portions their opinions following a ruling from the court close to and even during trial. *VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-417, 2013 WL 789288, at *2 (E.D. Tex. Mar. 1, 2013) (permitting expert to amend report three days before trial); *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 4702651, at *3 (N.D. Cal. Sept. 8, 2016) (issuing *Daubert* ruling during trial and permitting expert to offer certain non-excluded opinions). This is particularly true here because, as explained above, Juniper's criticisms of Mr. Arst's opinion relate to factual issues, not methodological flaws. Mr. Arst can easily account for any issues, to the extent the Court so requires, by amending his opinion without "start[ing] over with a new royalty analysis," which was this Court's concern in *Network Prot. Sci., LLC v. Fortinet,*

*Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *8 (N.D. Cal. Sept. 26, 2013) ("second bite may be appropriate where the expert report can be salvaged with minimal disruption to an orderly trial.").[15] For example, to the extent the Court finds that Mr. Arst must adjust his opinion to reflect the ratio based on newly produced information in the Icasiano declaration, the appropriate remedy is amendment of Mr. Arst's opinion, not exclusion.  Indeed, a straightforward computation based on what the court determines appropriate, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is something that could be cured through an errata. Juniper's speculation that the trial calendar would be disrupted is unsupported conjecture.  Therefore, to the extent amendment of Mr. Arst's report is necessary and appropriate based on the Court's rulings, Finjan shall then seek the Court's leave to do so.

## V.     CONCLUSION

For these reasons, Finjan requests that the Court deny the Motion and permit Mr. Arst to testify at trial concerning his opinions regarding the reasonable royalty Juniper owes to Finjan for Juniper's infringement of the '494 Patent.

---

[15] Unlike the expert's opinion in *Network Prot. Sci.*, Mr. Arst's opinion is consistent with a well-recognized cost savings methodology. 2013 WL 5402089, at *8 (excluding opinion that violated established law regarding entire market value rule).

15

FINJAN'S OPP. TO DEF.'S MOTION TO EXCLUDE     CASE NO. 3:17-cv-05659-WHA
THE TESTIMONY OF MR. KEVIN M. ARST

Respectfully submitted,

Dated: November 19, 2018   By: */s/ Kristopher Kastens*
Paul J. Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Kristopher Kastens (State Bar No. 254797)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

FINJAN'S OPP.TO DEF.'S MOTION TO EXCLUDE       CASE NO. 3:17-cv-05659-WHA
THE TESTIMONY OF MR. KEVIN M. ARST