PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>       Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S OFFER OF PROOF** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Finjan Inc. ("Finjan") submits the following offer of proof in support of its damages claim against Juniper Networks, Inc. ("Juniper") pursuant to the Court's Final Pretrial Order, Dkt. No. 301, ¶ 10.  Juniper is steadfast that Finjan cannot present a damages case without a paid expert witness – Juniper is wrong.  Finjan has an abundance of *factual* evidence, demonstrating its entitlement to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the user of the invention by the infringer . . .".  35 U.S.C. § 284.  Under 35 U.S.C. § 284, a finding of infringement "establishes the fact of damage because the patentee's right to exclude has been violated."  *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990).  "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty" when infringement is found.  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003). [1]

Finjan will offer at trial extensive evidence for the jury to consider and to support Finjan's reasonable royalty damages as a result of Juniper's infringement of Finjan's U.S. Patent No. 8,677,494 (the "'494 Patent").  This evidence includes the testimony of Finjan and Juniper's witnesses, Finjan and Juniper documents, and the opinions of Finjan's technical experts.

Not insignificantly, since the *Daubert* hearing on November 29, 2018, evidence has been discovered that Juniper has misrepresented the relevant revenues (or royalty base at issue).  Based on the deposition of Ms. Gupta on December 7, 2018, which the Court ordered at the December 4, 2018 Pretrial Conference regarding the 17,000 page excel spreadsheets that were untimely produced, Finjan

---

[1] See also, *Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2014 WL 490996, at *5 (N.D. Cal. Feb. 4, 2014)("'The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty,' even in the absence of expert testimony.") (citing *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003));  *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 598 (D. Mass. 2018) ("[E]ven if there were no expert testimony on damages, the court would still be obligated to evaluate what evidence there was to come up with a reasonable royalty.");  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)("Because no less than a reasonable royalty is required, the fact finder must determine what royalty is supported by the record.");  *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 215CV02812ODWPLA, 2017 WL 5634993, at *7-8 (C.D. Cal. Oct. 6, 2017)(denying a motion *in limine* to preclude reasonable royalty testimony from any witness at trial because expert testimony is not required and the record contained ample evidence to support a reasonable royalty award through the *Georgia-Pacific* factors.).

FINJAN, INC.'S OFFER OF PROOF                                    CASE NO.: 3:17-cv-05659-WHA

learned the following:

(1) between January 2016 and January 2017, Juniper's customers in the Americas with the "freemium" Sky ATP service purchased at least ███████ devices.  The revenues associated with these ███████ was approximately ███████;[2]

(2) Juniper's calculation of ███████ in revenues for the accused products does not account for any revenues for Juniper's infringement in 2015; and

(3) Juniper's belated production did not summarize the specific customers who purchased specific SRX devices with a Sky ATP premium service, such that Juniper never meaningfully disclosed the total revenues of the SRX devices sold to a customer that purchased the premium Sky ATP service.

### A.    Factual Background Related to the Hypothetical Negotiation

Finjan will present evidence regarding its approach to licensing that will support its entitlement to a reasonable royalty.  This evidence will include testimony and other evidence from Finjan's fact witnesses, including Philip Hartstein and John Garland, regarding Finjan's licensing practices and approaches to licensing, including the factors Finjan considers when licensing the Patents-in-Suit (i.e., scope of use, how the patented technology is being used, potential future use, and benefits derived from the use of the claimed invention), the information Finjan had regarding Juniper when it approached Juniper for a license, and how these factors applied to Juniper.

Finjan will also provide witness testimony and evidence that when approaching a licensing negotiation to the Asserted Patent, Finjan has used a royalty rate of 8 percent on hardware and a royalty rate of 16 percent on software in the past on the products' total gross revenues or the gross revenues of a company's relevant division, i.e., security division, as well as other approaches Finjan has used in licensing negotiations based on utilization a $8 per user rate and 32 cents per scan rate.

Finjan will also present testimony and other evidence, including comparable licensing information and data points, which supports Finjan's approaches to licensing to identify a potential licensee's realized value for use of Finjan's patented technology.  Finjan will present testimony

---

[2] Juniper only counted ███████ devices for its deflated ███████ revenue figure.

regarding its extensive licensing history, as well as its current product business, to support the significance and value of the '494 Patent.  Finjan will also present testimony and other evidence of Finjan's efforts to license the '494 Patent to Juniper.  Trial Exhibits 256, 257, 342.

### B.    Technical Advantages

In addition, Finjan will present testimony and other evidence that establishes the significant technical benefits that the '494 Patent provides, such as by increasing the speed and efficiency of Juniper's infringing systems.  More specifically, the '494 Patent allows for the reuse and subsequent analysis of downloadable security profile data, and the proactive blocking of security threats.  Finjan will present evidence, including the expert opinion of Dr. Cole, as well as the testimony of Juniper's witnesses and other evidence.  *See e.g.* Cole Rpt. at ¶¶ 26-37.  Finjan will present evidence of the value of the patented invention to Juniper from its use of the patented technology and ability to offer for sale such patented technology, which Juniper has represented publicly.  Trial Exhibits 91, 382, Deposition of Juniper's Senior Director of Intellectual Property Litigation and Strategy; Deposition of Juniper's Senior Director in Juniper's Security Business Group.

### C.    Juniper's Infringement Based on Use and Offer for Sale

Finjan will present factual evidence regarding Juniper's extensive use[3] of its patented technology, including: 1) the number of users of the accused products; 2) the volume of data processed by the accused products; 3) the volume of data processed for the average user of the accused products; 4) the number of scans performed by the accused products; 5) the nature and amount of costs (e.g., data processing costs, cloud costs, energy costs, hardware costs, engineering costs, coding costs) incurred by Juniper in connection with scans performed by the accused products; 6) Juniper's cost per scan for the accused products; 7) Juniper's cost per user for the accused products; 8) the volume of data that would be processed by Juniper under a non-infringing alternative design; 9) the nature and amount of costs (e.g., data processing costs, cloud costs, energy costs, hardware costs, engineering

---

[3] Finjan is entitled to a reasonable royalty on for Juniper's "use" of the accused products if those products are found to infringe Claim 10 of the '494 Patent.  35 U.S.C. § 271 ("whoever without authority makes, <u>uses</u>, offers to sell, or sells any patent invention within the United States … any patented invention during the term of the patent therefor, infringe the patent.") (underlining added).

FINJAN, INC.'S OFFER OF PROOF                    CASE NO.: 3:17-cv-05659-WHA

costs, coding costs) that would be incurred by Juniper under a non-infringing alternative design, such as the cost of developing non-infringing software code and expanding its use of servers (e.g., Amazon Web Services); 10) Juniper's cost per scan for its non-infringing alternative design; 11) Juniper's cost per user for its non-infringing alternative design; 12) the number of samples Juniper has in each of its databases; 13) the number of databases Juniper has; and 14) the type and number of servers (e.g., Amazon Web Services) that Juniper employs for the accused products. Juniper's cost savings may be expressed in a variety of forms, such as on a per-user, per-scan, or lump-sum basis.  Finjan will provide evidence regarding how Juniper markets its ability to offer zero-day threat protection from the cloud, highlighting the tremendous value Juniper reaps as a result from its infringement and ability to offer Sky ATP for sale, the commercial value it adds to Juniper's SRX devices, and how it benefits Juniper itself.  Trial Exhibit 91.

Finjan will present evidence that Juniper uses Claim 10 of the '494 Patent every time that its Sky ATP system, which is used by Juniper, analyzes a file in its malware analysis pipeline using static and/or dynamic analysis components, and then stores the results in its Results DB database.  Dkt. No. 189 at 3 ("Finjan now moves for summary judgment of direct infringement of Claims 10 based on (1) Juniper's SRX Gateway used in combination with Sky ATP; and (2) Sky ATP alone []"), at 14 ("Finjan argues that Juniper's SRX Gateways with Sky ATP, and Sky ATP alone — which includes the Malware Analysis Pipeline involving both static and dynamic analyzers — constitute a Downloadable "scanner" (Dkt. No. 98 at 20).  The evidence shows that the Malware Analysis Pipeline indeed generates a threat level 'verdict' by searching a received Downloadable's code to identify suspicious operations or patterns (Cole Decl. ¶ 35; Dkt. No. 154, Exh. 5 at 121:11-22)").  Finjan is entitled to a reasonable royalty based on this extensive use.  Finjan will present evidence including the testimony of its expert, Dr. Cole, as outlined in his expert report at Pars. 38-106, as well as the testimony of Juniper's engineers and witnesses, including Chandra Nagarajan and Raju Manthena and other evidence such as Trial Exhibits 1, 15, 52, 53, 57, 65, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 382, 399, 430, 431, and 438.

Finjan will present evidence related to Juniper's use of Claim 10 of the '494 Patent by Sky ATP by itself, and Sky ATP with SRX in the form of documents and deposition testimony, including

4

evidence support that:

- Juniper uses Sky ATP in the U.S. to analyze millions of files a month in Juniper Malware Analysis Pipeline using either static or dynamic analysis, and then stores the results of this analysis in its ResultsDB;

- Juniper uses Sky ATP to protect millions of its users inside the U.S.

Finjan will also present Juniper's sworn discovery responses regarding the number of files scanned and threats detected, and associated pricing options, including the number of files uploaded to Sky ATP. *See* Juniper's Response to Interrogatory No. 5. Finjan will also present evidence, including documents, testimony and Juniper's interrogatory responses, regarding the servers and databases used by the accused products. *See e.g.* Juniper Response to Interrogatory Nos. 10 and 11 (Servers).

### D.     Juniper's Infringement Based on Sales

Finjan will present evidence regarding Juniper's revenues associated with its infringing products. This evidence includes Juniper's financial and sales data regarding the accused products, the testimony of its witnesses (including Ms. Gupta), and Juniper's sworn discovery responses. *See e.g.* JNPR-FNJN_ 29028_00472484; JNPR-FNJN_29028_00472485; JNPR-FNJN_29034_00959902; JNPRFNJN_29028_01012873; JNPR-FNJN_29028_01012874; Juniper Response to Interrogatory No. 4. Finjan will present evidence identifying the portion of Juniper's revenues that are attributable to the '494 Patent based on documents and testimony from Juniper's witnesses.

At a minimum, Finjan will present evidence that revenues associated with the accused SRX Gateways with Sky ATP exceed the ▇▇▇▇▇ dollars that Juniper has represented. Trial Exhibits 254 and 255. Finjan will present evidence challenging this computation, including the December 9, 2018 testimony of Ms. Gupta and Juniper's documents confirming that no license is required Juniper's free version of Sky ATP, whereas a subscription is required for its "premium version". *See e.g.*, Trial Exhibit 91, Trial Exhibit 88 at JPNR-FNJN_29008_00514123.

### <u>CONCLUSION</u>

Finjan has a multitude of ways to prove a reasonable royalty based on the factual evidence. The various grounds for a reasonable royalty will necessarily depend on how this factual evidence will come in at trial.

FINJAN, INC.'S OFFER OF PROOF                    CASE NO.: 3:17-cv-05659-WHA

1

Respectfully submitted,

2   DATED:  December 7, 2018

By:  */s/ Paul J. Andre*

3
Paul J. Andre (State Bar No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Kristopher Kastens (State Bar No. 254797)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

4

5

6

7

8

9

10

11
*Attorneys for Plaintiff*
FINJAN, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINJAN, INC.'S OFFER OF PROOF                     CASE NO.: 3:17-cv-05659-WHA