IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua P. Glucoft (SBN 301249)
jglucoft@irell.com
Casey Curran (SBN 305210)
ccurran@irell.com
Sharon Song (SBN 313535)
ssong@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca L. Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., <br><br>    Plaintiff, <br><br>    vs. <br><br> JUNIPER NETWORKS, INC., <br><br>    Defendant. | Case No. 3:17-cv-05659-WHA <br><br> **DEFENDANT JUNIPER NETWORKS, INC.'S RESPONSE TO FINJAN, INC.'S OFFER OF PROOF AND MOTION TO PRECLUDE PLAINTIFF'S DAMAGES CASE** |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447

JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
Case No. 3:17-cv-05659-WHA

Finjan, Inc.'s ("Finjan's") Offer of Proof (Dkt. 304-3) is deficient on its face. On the eve of trial, Finjan is either unable to, or refuses to, identify the amount of damages it will request from the jury. Nor has Finjan identified the specific methodology it will employ to calculate its undisclosed damages. In fact, Finjan has failed to identify any legally cognizable methodology for calculating damages. Finjan's Offer of Proof confirms that Finjan's damages case consists of an attempt to introduce evidence and theories that either this Court or the Federal Circuit have already rejected, such as:

- A revenue base of $7.2 million, including revenues from SRX devices that were never configured for use with Sky ATP. But the Court has already rejected Finjan's attempt to "inflate[] the royalty base" by including sales of SRX devices "*not* configured with Sky ATP," based on Finjan's "untimely new infringement theory" that SRX devices alone infringe. Dkt. 283 at 4. Finjan continues to combat the Court's ruling that "Finjan will thus be stuck with the $1.8 million base." Dkt. 283 at 5.

- Cyphort revenues, which the court expressly excluded in granting Juniper's MIL 1.

- Finjan's "cost savings" theory, which the Court rejected in excluding the testimony of Finjan's damages expert. Now Finjan seeks to advance this same inadmissible theory through its technical expert—even though Finjan's counsel assured Juniper and the Court at the Final Pretrial Conference that it would *not* seek to do this at trial given the Court's *Daubert* ruling. Ex. 1 (Pretrial Hearing Tr.) at 48:24-49:10.

- An $8 per user rate, which the Federal Circuit expressly rejected as being "plucked from thin air," and which Finjan never "actually used or proposed" in any license negotiation. *Finjan v. Blue Coat Sys.*, 879 F.3d 1299, 1311-12 (Fed. Cir. 2018).

- Finjan's "starting" royalty rates (8 percent and 16 percent), which the Federal Circuit observed "says little about what the parties would have proposed or agreed to in a hypothetical arm's length negotiation." *Id.* At 1312. Finjan also failed to make an offer of proof as to how it will attempt to apportion the revenue base as required by Federal Circuit and Supreme Court precedent.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447

- 1 -

JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
Case No. 3:17-cv-05659-WHA

- An oddly specific $0.32 per scan rate, even though Finjan's 30(b)(6) witness on licensing admitted Finjan has never used a per scan rate in a license, and which (under Finjan's theory) would lead to an economically nonsensical damages request of nearly $45 million—a request that "defies basic laws of economics" every bit as much as Finjan's cost-savings theory that the Court excluded. Dkt. 283 at 4.

Juniper accordingly moves the Court to preclude Finjan's damages case. "[A] patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017), *cert. denied,* 139 S. Ct. 156 (2018). That rule applies in full force here. Finjan's insistence on recycling evidence and theories that this Court and the Federal Circuit have already rejected constitutes a waiver of Finjan's right to present a damages case at trial.

### A. Finjan Once Again Attempts To Inflate The Damages Base

Finjan again seeks to rely on a damages base that includes revenues from SRX devices that were not configured with Sky ATP, contrary to the Court's *Daubert* Order. Dkt. 283 at 4-5. In its Offer of Proof, Finjan states that "between January 2016 and January 2017, Juniper's customers in the Americas with the 'freemium' Sky ATP service purchased at least 2,162 SRX devices." Dkt. 304-3 at 2. This is lawyerly wordsmithing. What Finjan means is that Juniper's customers who purchased the 120 SRX devices configured with Sky ATP's free service also purchased another 2,042 SRX devices *that were never configured with Sky ATP*, and hence are not in the damages base. Gupta Decl. ¶ 4. Moreover, the "2162" number Finjan points to is the result of Finjan's manipulation of Juniper's spreadsheet to *double count* SRX devices that were not configured with Sky ATP. *Id.* ¶ 5.

The Court already rejected Finjan's attempt to include revenues associated with SRX devices alone in its damages base. Indeed, this Court's *Daubert* Order was quite clear: Finjan "inflates the royalty base by including all sales of the SRX devices sold — including those not configured with Sky ATP. . . . Finjan may not now, in an effort to hyper-inflate its damages claim, belatedly raise new infringement theories that it failed to assert in its summary judgment motion." Dkt. 283 at 4-5. The Court concluded that Finjan is "stuck with the $1.8 million base." Dkt. 283 at 5. Consistent with

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447                                - 2 -                    JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
                                                                           Case No. 3:17-cv-05659-WHA

the Court's ruling, Finjan should not be permitted to use its present sleight of hand to inflate the damages base to $7.2 million at trial.

Finjan also claims that the $1.8 million base "does not account for any revenues for Juniper's infringement in 2015." Dkt. 304-3 at 2. But there *were no* Sky ATP revenues in 2015—the first sale of Sky ATP did not occur until the first quarter of 2016. Dkt. 229-6 (Ugone Rpt.) at 5 n.15.

### B. Finjan's Licensing Theories Are Legally Deficient

Finjan asserts that it will "present evidence of its approach to licensing" to support a damages award. Dkt. 304-3 at 2. Specifically, Finjan points to (i) an "$8 per user rate"; (ii) rates of "8 percent on hardware" and "16 percent on software;" and (iii) a "$0.32 cents per scan rate." *Id.* Each of these theories would invite reversible error if presented at trial.

**$8 Per User Rate**: Earlier this year, the Federal Circuit rejected this very rate and overturned a jury damages verdict in Finjan's favor. *Finjan v. Blue Coat Sys.*, 879 F.3d at 1311-1312. The Federal Circuit ruled that "the $8-per-user fee appears to have been ***plucked from thin air***, and, as such, ***cannot be the basis for a reasonable royalty calculation***." *Id.* at 1312 (emphasis added); *see id.* at 1311 ("the $8-per-user royalty rate employed in Finjan's analysis was unsupported by substantial evidence."). Deposition testimony in this case from Finjan's CEO (Mr. Phil Hartstein) and Finjan's 30(b)(6) witness on licensing (Mr. John Garland) confirms that no licensee has accepted an $8 per user rate. Ex. 2 (Garland Dep. Tr.) at 111:23-25 ("Q. Have any of Finjan's licensees taken a license based on a per user rate? A. No."); Ex. 3 (Hartstein Dep. Tr.) at 73:22-74:3 ("Q. But you're not aware personally of which particular licensees, if any, had a royalty rate that was calculated on a per-user rate of $8; is that fair? A: As I sit here, I couldn't identify one for you, no.").

**8 Percent on Hardware/16 Percent on Software**.

Finjan's fact witnesses consistently testified that Finjan's 8 percent and 16 percent royalty rates are merely a starting point and that Finjan negotiates down from those rates based on licensee-specific factors. *See, e.g.*, Dkt. 230-10 (*Blue Coat* Trial Tr.) at 256:5-212 (Phil Hartstein: "Q. Does Finjan have a starting approach when it reaches out to a potential licensee? A. We do. Our rates are . . . 8% for hardware, 16% for software."); Dkt. 228-10 (Hartstein Dep. Tr.) at 42:25-43:5 ("So

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447  - 3 -  JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
Case No. 3:17-cv-05659-WHA

in our licensing negotiations, we use 8 and 16 percent as a starting point for defining the value of that license."); *id.* at 83:11-15 ("Q. What is the highest royalty rate that Finjan has ever proposed to a potential licensee? A. I would suspect it would not exceed 16 percent."); Ex. 2 (Garland Dep. Tr.) at 82:14-25 (8 percent and 16 percent rates are used in "the opening offer that Finjan will make in negotiations with prospective licensees"). However, Finjan has introduced no evidence on the rate at which the parties would ultimately wind up. Consequently, Finjan has failed to disclose a royalty rate which the jury could reasonably adopt. *See Finjan v. Blue Coat Sys.*, 879 F.3d at 1312 ("[T]estimony that an 8-16% royalty rate would be the *current starting point* in licensing negotiations says little about what the parties would have proposed or agreed to in a hypothetical arm's length negotiation [at the time of the hypothetical negotiation].").

Further, Finjan brazenly admits that it will seek to apply this starting point rate to "gross revenues of a company's relevant division, i.e., security division." Dkt. 304-3 at 2. In other words, after the Court rejected Finjan's attempt to inflate the damages base by including within it revenues for SRX devices alone (which Finjan did not accuse of infringement), Finjan now indicates that it will go even further by attempting to apply its 8%/16% rates to Juniper's "security division" as a whole—thus sweeping back into the royalty base all of the SRX products this Court has already ordered excluded, and including additional non-SRX security products. Finjan's proposed hyperinflation of the damages base flies in the face of the settled case law. The damages base must be limited to the accused products. *See Enplas Display Device Corp., v. Seoul Semiconductor Co., Ltd.*, 2018 WL 6033533, at *10 (Fed. Cir. Nov. 19, 2018) (overturning jury's damages award where expert testimony supporting it was "based, in part, on non-infringing sales of non-accused [products]," because "acts that do not constitute patent infringement cannot provide a proper basis for recovery of damages"); *Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 476 F. Supp. 2d 1143, 1154-56 (granting motion to exclude expert opinion where not all of the products included in the expert's sales base practiced the accused technology); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *9 (N.D. Cal. July 24, 2015) ("[I]ncluding a product that does not practice the patent at issue and indisputably has an independent use would overcompensate [Finjan] for the alleged infringement . . . .").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447                                   - 4 -                    JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
                                                                    Case No. 3:17-cv-05659-WHA

In fact, it would even be legally erroneous for Finjan to apply its starting point rates to the unapportioned damages base of $1.8 million. Under controlling precedent, the total accused revenue base at issue here ($1.8 million) would have to be properly apportioned before any royalty rates (such as Finjan's proposed 8 percent and 16 percent rates) could be applied. *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d at 1309 ("When the accused technology does not make up the whole of the accused product, apportionment is required."); *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (The patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."). Finjan does not dispute that the accused products incorporate many components and that the accused technology does not make up the whole of the accused products. However, Finjan has no basis on which to apportion Juniper's revenues, and Finjan is totally silent on the subject of apportionment in its Offer of Proof. Finjan's failure to address apportionment is particularly troublesome given that Juniper expressly called out apportionment in its request for an offer of proof. *See* Dkt. 292 at 5.

<u>**$0.32 Cents Per Scan Rate**</u>: Finally, Finjan's proposed $0.32 per scan rate is devoid of any evidentiary support and thus similarly "plucked from thin air." No company has ever agreed to pay Finjan a per scan royalty. Ex. 2 (Garland Dep. Tr.) at 112:1-4 ("Q. Have any of Finjan's licensees taken a license on the basis of a per scan rate? A. No."). Not only is this $0.32 per scan figure unsupported, here, it would lead to economically preposterous results. Based on Finjan's proposed deposition designations, Finjan has indicated it will attempt to show that Sky ATP scans 10 million files per month. A $0.32 per scan royalty would result in damages of $44.8 million over the course of the damages period (10 million scans x 14 months in damages period x $0.32). Juniper plainly would never agree to such a royalty at a hypothetical negotiation. Such an award "defies basic laws of economics" every bit as much as the excluded opinion of Finjan's damages expert, Mr. Arst. *See* Dkt. 283 at 4.

### C.  <u>Finjan Seeks to Recycle The "Cost Savings" Theory That The Court Excluded</u>

Finjan also states that it will present a damages case at trial based on the "nature and amount of costs . . . that would be incurred by Juniper under a non-infringing alternative design," such as

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447 — - 5 - — JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
Case No. 3:17-cv-05659-WHA

the cost of "expanding its use of servers (e.g., Amazon Web Services)." Dkt. 304-3 at 3-4. ***This is the very "cost savings" theory that the Court rejected in its Daubert Order.*** Dkt. 283. In the face of the Court's order precluding Mr. Arst from presenting this theory to the jury, Finjan now seeks to peddle the same theory through its technical expert, Dr. Cole. In its Offer of Proof, Finjan cites to a passage from Dr. Cole's report that provided the technical basis for Mr. Arst's excluded opinion. Dkt. 304-3 at 3 (citing Cole Rpt. ¶¶ 26-37). For example, in the cited section of his report, Dr. Cole opines:

> [I]t takes approximately 6-7 minutes for the SkyATP sandbox to perform its analysis on a suspect file. . . . If the data security profile is already in the database because Sky ATP has already seen the file, then the Sky ATP less than 1 second to make that determination. FINJAN-JN 044844. As described, the number of servers that would be required to process a file for sandboxing would be 360-420 times greater (6-7 minutes * 60 seconds) than what is required to serve the file from the database of results (1 second).. . . . Juniper would have had to increase its usage of servers, such as Amazon Web Services, such that Juniper's Amazon Web Services fees were more than they would have been absent the infringement.

Dkt. 238-6 (Cole Rpt) ¶¶ 35-36; *compare id. with* Dkt. 283 at 4 (Court's Daubert Order summarizing Mr. Arst's cost savings opinion as suggesting that "Juniper would have had to spend six to seven additional minutes dynamically analyzing each file and that "the number of servers that would be required to process a file for sandboxing would be 360–420 times greater (6–7 minutes * 60 seconds) than what is required to serve the file from the database of results (1 second).").

Even worse, Finjan already assured Juniper and the Court that it would *not* seek to present its rejected cost savings theory through Dr. Cole. Juniper moved to exclude Dr. Cole's opinion on this subject in its Motion *in Limine* No. 4. Dkt. 261-7. Counsel for Finjan argued that Juniper's motion was moot because Finjan agreed that Dr. Cole would not present this testimony in light of the Court's exclusion of Mr. Arst's testimony:

> THE COURT: Next, motion to [ex]clude evidence on non-infringing alternative. What are we talking about here? MR. ANDRE: Your Honor, I think you – you decided the non-infringing alternative issue yesterday in the order regarding the *Daubert* – THE COURT: So that's moot now? MS. CARSON: As long as plaintiff does not plan to introduce testimony through the technical expert that the damages expert relied upon that – THE COURT: Is that correct? MR. ANDRE: ***That's correct. We're not going to do that.***").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447 - 6 -

JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
Case No. 3:17-cv-05659-WHA

Ex. 1 (Pretrial Hearing Tr.) at 48:24-49:10. Finjan has no good faith basis to backtrack from its prior representations and recycle its discredited cost-savings theory through Dr. Cole.

### D. Finjan Seeks To Rely On Excluded Cyphort Revenues

In its Offer of Proof, Finjan even indicates that it will rely on excluded Cyphort revenues to support its damages case. Dkt. 304-3 at 5. Among the evidence Finjan represents it will present at trial is a spreadsheet which solely provides revenues from the sale of Cyphort products in 2017 and 2018. *Id.* (pointing to JNPRFNJN_29034_00959902, Trial Ex. 253). The Court was very clear in ruling this evidence inadmissible: "[T]he Cyphort and ATP appliance product is out. O-U-T. No mention of that. It has so little probative value, it is so much of a sideshow." Ex. 1 (Pretrial Hearing Tr.) at 37:10-12. Finjan has similarly tried to designate deposition testimony providing SRX-only revenues, JATP (Cyphort) revenues, and revenues from sales occurring outside the damages period (*i.e.*, sales that occurred *after* the '494 Patent expired).

### E. Finjan Has Waived its Right to Put Forth a Damages Case

Finjan's continued failure to put forward a legally cognizable damages theory should not be excused. As the Federal Circuit made clear, "a patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory." *Promega Corp.*, 875 F.3d at 666; *see also Use Techno Corp. v. Kenko USA, Inc.*, 2007 WL 4169487, at *4 (N.D. Cal. Nov. 20, 2007) ("Plaintiffs' failure to disclose a damages expert is not automatically fatal to [p]laintiffs' ability to prove their case, although it increases the difficulty. However, the lack of a damages expert compounds the harm to [d]efendants from the absence of any damages computation. Accordingly, because the failure to disclose any damages calculation was not harmless, [p]laintiffs are barred from presenting evidence of damages. Because damages are an essential element of [p]laintiffs' false advertising claim, [p]laintiffs cannot prevail on that claim as a matter of law.").[1]

---

[1] The language of 35 U.S.C. § 284 is of no help to Finjan. "[T]he burden remains on the patentee to present evidence of damages, and failure to do so may lead the court to a reasonable royalty of zero." *Interwoven, Inc. v. Vertical Comput. Sys.*, 2014 WL 490996, at *5 (N.D. Cal. Feb. 4, 2014); *see also Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990) (favorably citing *Devex Corp. v. General Motors Corp.*, 667 F.2d 347, 363 (3rd Cir.1981) (affirming award of zero damages for

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447                                         - 7 -                      JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
                                                                                         Case No. 3:17-cv-05659-WHA

Finjan swung and missed when it tried to have Mr. Arst advance a damages theory that the Court ruled was "preposterous." Dkt. 283. Finjan swung and missed again when the Court rejected Finjan's attempt to have Mr. Arst testify notwithstanding the Court's *Daubert* order. Dkt. 301 at 2 ("The testimony of Plaintiff Finjan, Inc.'s damages expert Kevin Arst is EXCLUDED IN ITS ENTIRETY."). Finjan was then given the chance to "file a succinct formal offer of proof for its damages claim." *Id.* In response, Finjan failed to disclose a damages figure or an acceptable, legally sufficient methodology (including on apportionment). This is Finjan's third strike. It should not be permitted to remain in the batter's box.

Dated: December 8, 2018

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ Jonathan Kagan*
Jonathan Kagan
*Attorneys for Defendant*
Juniper Networks, Inc.

---

lack of evidence and stating: "The statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.")).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10620447

- 8 -

JUNIPER'S RESPONSE TO FINJAN'S OFFER OF PROOF
Case No. 3:17-cv-05659-WHA