PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>　　　　　Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF DEFENDANT'S CASE** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that as soon as the matter may be heard by the Court, Finjan, Inc. ("Finjan") will and hereby does move the Court for an order granting judgment as a matter of law. This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the trial record, the pleadings and papers on file, and any evidence and argument presented to the Court.

## I.    INTRODUCTION AND RELIEF REQUESTED

Pursuant to the Federal Rule of Civil Procedure 50(a), Finjan moves for judgment as a matter of law ("JMOL") in Finjan's favor as to Defendant Juniper Network, Inc.'s ("Juniper's") claims for non-infringement, invalidity challenges under 35 U.S.C. § 101 ("Section 101"), and infirm damages rebuttal.[1]  Juniper has failed to present legally sufficient evidence that would allow a reasonable factfinder to conclude that Juniper's accused (1) SRX Gateways with SkyATP and (2) Sky ATP by itself do not infringe Claim 10 of the '494 Patent ("Claim 10").  Finjan also moves for judgment as a matter of law as to no patent invalidity of Claim 10 pursuant to Section 101 because Juniper has not shown by clear and convincing evidence that Claim 10 is invalid.  Finally, to ensure a complete reservation of rights, Finjan addresses the insufficiencies of the evidence for Juniper's damages rebuttal.

## II.   LEGAL STANDARD

A court may grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1); *MediaTek Inc. v. Freescale Semiconductor, Inc.,* No. 11-CV-5341 YGR, 2014 WL 4643947, at *1 (N.D. Cal. Sept. 17, 2014) (granting motion for judgment of matter of law under Rule 50(a) of direct infringement).  Finjan presented legally sufficient evidence at trial such that no reasonable jury could find that Juniper's

---

[1] Finjan is making this Motion pursuant to the Court's deadline set forth on December 13, 2018, which required Finjan to make this motion before Juniper closed its case. Given the timing of this filing, Finjan reserves all rights to address issues that may arise once Juniper closes its case.

accused systems do not infringe Claim 10 of the '494 Patent and that Claim 10 is invalid under Section 101.

## III. ARGUMENT

### A. FINJAN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT JUNIPER INFRINGES CLAIM 10

As a preliminary matter, the Court already found in summary judgment that Juniper infringes every element of Claim 10 of the '494 Patent, except for the database element, which requires "a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database." Dkt. No. 185 4–18; '494 Patent, Claim 10. No reasonable jury could find that (1) SRX Gateway and SkyATP and (2) SkyATP (the "Accused Products") do not literally infringe the "database" element of Claim 10 of the '494 Patent given the abundant evidence Finjan presented. Fed. R. Civ. P. 50(a)(1)(a court may grant a motion for judgment as a matter of law ("JMOL") against a party on an issue where the party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F. Supp. 2d 1092, 1098 (N.D. Cal. 2011) (citing *McGonigle v. Combs*, 968 F.2d 810, 816 (9th Cir. 1992) (JMOL is properly granted "when the evidence permits only one reasonable conclusion as to the verdict.") (citation omitted)). Finjan presented substantial evidence that the Accused Products include a ResultsDB, which is "a collection of interrelated data organized according to a database schema to serve one or more applications," including through the testimony of its expert, Dr. Cole, whose opinions were based on Juniper's internal source code, internal confidential technical documents, marketing materials, and testimony of Juniper's key engineers. Dkt. 224 at 1.

#### 1. The ResultsDB Exists

Juniper failed to rebut Finjan's uncontested evidence on whether the "database" element was met. Nothing could be further from the truth, and Finjan showed numerous document establishing that the ResultsDB is in fact very real, and used extensively by Juniper. Trial Tr. 440:18 - 444:4; Trial Ex. 78 @ FINJAN-JN 0044763 (Page 20); Trial Ex. 94 at JNPR-FNJN_29018_00963212 (Page 10),

2

JNPR-FNJN_29018_00963213 (Page 11); Trial Ex. 99 @ 115; Trial Ex 92 @ JNPR-FNJN_29017_00553166 (Page 20) & JNPR-FNJN_29017_00553178 (Page 32); Ex 99 (Page 8).

Juniper's expert, Dr. Rubin, said that there was no such thing as the ResultsDB, arguing that Juniper's employees did not know what they meant when they discussed a database. However, Dr. Rubin failed to rebut Dr. Cole's substantial evidence that it was a database, including numerous source code citations. In fact, Dr. Rubin acknowledged that there was a database, including a collection of interrelated data that was organized according to a schema. Dr. Rubin also completely ignored Dr. Cole's infringement allegations that the ResultsDB was the infringing database and denied its existence.

Dr. Rubin's testimony also conflicted with the parties' agreed upon construction of "a collection of interrelated data organized according to a database schema to serve one or more applications," which is focused on a "collection of data," and would include all collections of data that meet these requirements.

Based on this substantial evidence and the lack of evidence from Juniper, Finjan is entitled to JMOL that SRX Gateway and SkyATP and SkyATP literally infringe Claim 10.

### 2. The ResultsDB Has a Database Schema

Juniper's argument that the RDB schema cannot be a database schema, also defines all logic and is unsupported by evidence. Finjan put in overwhelming evidence of this element through Dr. Cole and his supporting documents. Trial Tr. 463:10-466:12; Ex 99 @ 8; Ex 399 @ JNPR-FNJN_29032_00590607 (Page 36); Ex 65 @ JNPR-FNJN_29030_00553972 (Page 1), JNPR-FNJN_29030_00553972; Ex 99 @ 78; Ex 99 @ 297. Dr. Rubin did not present arguments that conflict with this, but instead made an arbitrary distinction between a JSON Schema and a Key Schema, which he admitted were used in the ResultsDB, but he argues are not "database schemas." Dr. Rubin's argument also conflicts with the parties' agreed upon claim construction.

### B. FINJAN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THE '494 PATENT IS VALID

The Court should order a directed verdict in favor of Finjan on the issue of 35 U.S.C. § 101 because the '494 Patent is presumed valid and Juniper put on insufficient evidence to establish by clear and convincing evidence that Claim 10 of the '494 Patent, either as individual elements or as an ordered combination, was well-understood, routine, and conventional at the time of the invention. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, at 1304-05 (2013) ("Because we believe the presumption of validity applies to all challenges to patentability, including those under Section 101 and the exceptions thereto, we find that any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence.").

Juniper put on a *de facto* obviousness case (under 35 U.S.C. § 103) against Claim 10, relying on prior art that Dr. Rubin did not even attempt to show was well known at the time. Juniper's reliance on concurrent patent applications and a few obscure research papers is insufficient as a matter of law because "well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018); *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965-66 (Fed. Cir. 2018) ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference."); *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 16-cv-02787-WHO, 2018 WL 4904895, at *35 (N.D. Cal. Sept. 25, 2018) ("But '[t]he mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.'"). Indeed, patent applications are generally not well-understood, routine, and conventional at the time they are filed. The same can be said of technical research papers. Juniper has the burden to prove *by clear-and-convincing evidence* that Claim 10's elements, both individually and as an ordered combination, were well-understood, routine, *and* conventional at the time. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and

convincing evidence."); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007) ("Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence."). Juniper failed to meet this burden.

Specifically, Dr. Rubin discussed only five references to support his argument. For all five references, Dr. Rubin failed to do demonstrate that they were well-understood, routine, and conventional as of November 1996. There was no evidence to support his conclusion.

First, Dr. Rubin relied on Trial Exhibit 1070 ("Swimmer") only for the fact that the Patent Office relied on it to invalidate Claim 1, which is not at issue. Notably, the Patent Office found Claim 10 valid over Swimmer. *Palo Alto Networks, Inc. and Blue Coat Systems LLC v. Finjan, Inc.*, IPR2016-00159, IPR2016-01174, paper 50 (PTAB, April 11, 2017) (finding claim 10 valid in view of Swimmer). Dr. Rubin did not attempt to show that Swimmer, or the systems it discussed, were well-understood, routine, and conventional at that time. In fact, Swimmer is a research paper that attempts to show a *new* system. Dr. Rubin did not even attempt to establish that this paper was widely known by November 1996, when Claim 10 was invented.

Next, Dr. Rubin relied on Trial Exhibit 1552 ("Chen"), which is a U.S. Patent that was filed just one month before the invention date of Claim 10. Chen did not issue until 1999, four years after Claim 10's invention date. Chen expressly admits that there was a need for a new invention that could detect unknown viruses beyond the typical signature scanning techniques that were well-known. *See* Chen at 1:19-36 ("Since matching to known patterns is involved, the Signature Scan is virtually useless against Viruses whose patterns have not been previously identified. Particularly, Signature Scanning completely fails to detect new, unknown virus Strains, and does not adequately protect against mutating viruses, which intentionally assume various shapes and forms upon replication. Additionally, since executable files (e.g., those with extensions.exe or .com) are typically scanned, viruses which do not reside in such files are not examined and therefore are not detected with Signature Scanning.") and at 1:6-2:12 (stating that traditional virus scanning is inadequate for treating macros with viruses).

Similarly, Dr. Rubin also relied on Trial Exhibit 2197 ("Virus Bulletin") discloses traditional signature scanning. It was undisputed at trial that signature scanning was the "old" technology at

5

FINJAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF DEFENDANT'S CASE   CASE NO. 3:17-cv-05659-WHA

issue. With respect to Trial Exhibit 1069 ("Stang"), Dr. Rubin did not even attempt to demonstrate that was well known at the relevant time. This reference has nothing about generating security profiles. Dr. Rubin relied on Trial Exhibit 1241 ("SQL for Dummies"). There was no evidence at trial, however, of the use of database in a security context. Just identifying these references is insufficient as a matter of law, and no reasonable jury could find for Juniper.

On cross-examination, Dr. Rubin admitted that Finjan's invention as "impressive" and inventive behavior-based technology. Dr. Rubin admitted that he approved the following quote of him in an article from 1999: "'Finjan's use of sophisticated behavior-blocking technology to stop malicious code is impressive,' said Avi Rubin, Internet Security Expert, AT&T; Labs. 'If a killer Y2K Trojan strikes in a novel, deadly fashion, Finjan's first-strike software is the most effective way to avoid damage, short of permanently disconnecting computers from the network.'". Given the foregoing, no reasonable jury could find that Claim 10, which is presumed valid, is invalid under Section 101. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007) ("Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.").

As demonstrated on cross-examination of Dr. Rubin, the Patent Trial and Appeal Board recently confirmed the inventiveness of the '494 Patent in numerous different *inter partes* review petitions filed by various defendants of Finjan.[2] *See Cisco Systems, Inc. v. Finjan, Inc.*, IPR2017-02155, paper 11 (PTAB, April 3, 2018) (denying institution on claim 10); *Palo Alto Networks, Inc. and Blue Coat Systems LLC v. Finjan, Inc.*, IPR2016-00159, IPR2016-01174, paper 50 (PTAB, April 11, 2017) (finding claim 10 valid in view of Swimmer); *Blue Coat Systems, Inc. and Symantec v. Finjan, Inc.*, IPR2015-01892, IPR2016-00890, paper 58 (PTAB, March 16, 2017)(finding claim 10 valid in view of Swimmer); *Symantec Corporation v. Finjan, Inc.*, IPR2015-01897, paper 7 (PTAB, February 26, 2016) (denying institution on claim 10); *Sophos, Inc. v. Finjan, Inc.*, IPR2015-01022, paper 7 (PTAB, January 28, 2016) (denying institution on claim 10).

---

[2] To the extent these were not presented yet, they will be with Finjan's rebuttal expert, Dr. Orso.

6

FINJAN'S MOTION FOR JUDGMENT AS A MATTER     CASE NO. 3:17-cv-05659-WHA
OF LAW AT THE CLOSE OF DEFENDANT'S CASE

Finally, two other Courts have already found that Claim 10 recites an inventive concept at *Alice* Step 2. "As the '494 patent explains, at the time of invention, virus protection was localized and reactive . . . and only checked to see if incoming files were known viruses." *Blue Coat*, 2016 WL 7212322, at *11; *Sophos*, 244 F. Supp. 3d at 1061 ("This process is innovative because it allows a malware detection program to detect new viruses . . . rather than identifying only known viruses."). Both of these Courts also found that the ordered combination of Claim 10's elements provided an inventive concept. *Blue Coat*, 2016 WL 7212322, at *11 ("the claims, taken as an ordered combination, recite an inventive concept sufficient to render them patent eligible."); *Sophos*, 244 F. Supp. 3d at 1061 ("this arrangement represents a novel use of specific computer systems"). Indeed, Finjan has been found to be the pioneer in behavior-based technology at the time Claim 10 was invented. The Federal Circuit found Finjan was a pioneer in behavioral-based virus scanning at the time, which was an improvement over the traditional signature based scanning that existed prior. *Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1304-06 (Fed. Cir. 2018)

### C.   JUNIPER FAILED TO REBUT DAMAGES

Juniper failed to present a rebuttal to damages with any evidence. First, Juniper did not present any witnesses or evidence rebutting Finjan's evidence of actual notice and constructive notice. Once Finjan has demonstrated that it put Juniper on actual notice and that the products practicing the '494 Patent, namely Finjan's mobile product, that were marked with the '494 Patent, Juniper had the burden to rebut Finjan's presentation regarding notice.

Second, Juniper did not present any evidence. Rather, Juniper's expert merely referenced exhibits and powerpoints, without identify any exhibits, which did not meet the requisite standards for damages. Juniper, who relied on "comparable" licenses, failed to do the technical and economic analysis required for such a comparison.

### IV.   CONCLUSION

For the foregoing reasons, the Court should grant Finjan's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| Dated:  December 13, 2018 | By: | */s/ Paul J. Andre* |

                                           Paul J. Andre (State Bar No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
Kristopher Kastens (State Bar No. 254797)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.