IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua Glucoft (SBN 301249)
jglucoft@irell.com
Casey Curran (SBN 305210)
ccuran@irell.com
Sharon Song (SBN 313535)
ssong@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**JUNIPER NETWORKS, INC.'S OPPOSITION TO FINJAN, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DKT. NO. 322)**<br><br>Judge: Hon. William Alsup |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Juniper respectfully requests that the Court deny Finjan's unfounded motion for judgment as a matter of law. Dkt. No. 322. Juniper has substantial evidence that could support a reasonable jury finding in its favor on all issues. *See also* Dkt. No. 323 (Juniper's motion for judgment as a matter of law demonstrating that Finjan failed to carry even its initial burden of proof on the issues discussed below).

A court may not enter judgment as a matter of law ("JMOL") unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue." Fed. R. Civ. P. 50(a). Moreover, a court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008). In other words, a "motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." *Id.*

**A.     Invalidity**

As the Court's Final Pretrial Order states, the parties stipulated that the Court will decide the issue of Section 101 invalidity. Dkt. No. 301 ¶ 4. Thus, the issue of Section 101 invalidity is not a proper subject of a motion for JMOL under Fed. R. Civ. P. 50(a)(1), which is directed to issues tried to the jury. FRCP 50(a)(1) ("If a party has been fully heard on an issue during a jury trial and the court finds that a ***reasonable jury*** would not have a legally sufficient evidentiary basis to find for the party on that issue…." (emphasis added)). Instead, such findings are governed by Fed. R. Civ. P. 52. A Rule 50(a) motion is particularly inappropriate at this juncture before Juniper has even rested its case in chief. To the extent the Court is interested in proper briefing under FRCP 52 after

trial to contextualize the evidence reviewed by the Court, Juniper is happy to provide such briefing after the close of evidence.

In any event, as the Court observed, "[e]veryone knows, who's done any coding, that if you go through a lot of trouble to derive a number and there's even a small chance you're ever going to need it again, you ought to save it rather than require the computer to go through that stuff again." Trial Tr. Vol. 4 at 633:17-23. Considering the elements of Claim 10 both individually and as an ordered combination, Claim 10 of the '494 Patent is a "simple thing," *id.*, that Juniper has shown lacks an inventive concept through the testimony of its technical expert, Dr. Aviel Rubin. *Id.* at, *e.g.*, 717-732; *id.* at 722:13-15 ("[Q.] Were scanners well known in the art as of 1996?  A. Yes. They were very well known"); *id.* at 729:13-22 ("[Q.] Was it known to couple scanners to receivers? A. Yes. The only way that you can scan something that comes from the Internet is to have a receiver to receive it unless you wrote it yourself . . . Q. And did the [prior art] references that we looked at, did they include receivers?  A. Yes."); *id.* at 729:23-730:1 ("Q. All right.  Let's turn to the last addition here in Claim 10, the database manager.  Were database managers well known in the art? A. Yes, very well known").  Dr. Rubin further explained that the ordered combination of the elements of Claim 10 lack an inventive concept because "there's really only one order that makes any sense," given that "[a]ny way that you try to put those steps in another order, it wouldn't work." *Id.* at 732:14-25.

The evidence introduced at trial further confirms that everything Finjan touts as allegedly inventive was well known, routine, and conventional.  In particular, Finjan claimed that it pioneered the concept of behavioral analysis.  *See* Trial Tr. Vol. 1 at 161:1-4 ("You're going to hear that industry companies, companies that follow the industry, industry reports, like IDG and Gartner's, they credit Finjan with being the pioneers, the innovators, the inventors of behavior-based technology.").  But Finjan fails to address prior art such as Stang from 1995 (Trial Ex. 1069 at 6) (excerpted and highlighting added):

**HISTORY OF THE IDEA**

The idea of behavior blocking is not entirely new. Andy Hopkins was one of the first to offer a behavior

…

*Smart* behavior blocking has been in use worldwide for several years. Developed by RE Solutions in

Nor does Finjan address prior art like Swimmer which the USPTO found taught all of the limitations of Claim 1, the substantially similar method counterpart to the system of Claim 10, which in its very title shows that it is directed to behavior-based technology:

**DYNAMIC DETECTION AND CLASSIFICATION OF COMPUTER VIRUSES USING GENERAL BEHAVIOUR PATTERNS**

*Morton Swimmer*

Ex. 1070 at 2 (excerpted). *See also, e.g.*, Trial Ex. 2197 (describing a static scanner that generates a list of suspicious computer operations by examining hexadecimal search patterns); Trial Ex. 1552 (describing a scanner that generates a list of suspicious computer operations after determining whether a decoded macro includes a virus); Trial Ex. 1241 (supporting the fact that database managers were well known, well understood, routine and conventional at the time before the invention).

Accordingly, when the Court ultimately determines the issue of Section 101 invalidity, it should find that Claim 10 of the '494 Patent is invalid.

**B.   Damages**

In patent cases, "the burden of proving damages falls on the patentee and the patentee must show his damages by evidence." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017), *cert. denied,* 139 S. Ct. 156 (2018) (internal citations and quotation marks omitted). In this case, Finjan failed to present legally sufficient evidence of (1) a royalty base, (2) apportionment, or even (3) a royalty rate. *See* Dkt. No. 323 at 1-5 (Juniper briefing demonstrating that Finjan has failed to carry its burden). As such, Juniper had no damages case to rebut. Moreover, Juniper presented the testimony of its damages expert Dr. Keith R. Ugone, who analyzed a substantial amount of information to arrive at his opinion. *See* Trial Tr. Vol. 4 at 797-820, *including at* 801:21-802:8 (Dr. Ugone providing an overview of everything he reviewed in forming his opinion). Dr. Ugone's testimony, which the Court already found was properly admissible notwithstanding

Finjan's motion to exclude Dr. Ugone for failure to rely on "sufficient facts or data" under FRE 702(b) (*see* Dkt. No. 231 at 11), is more than sufficient to refute any negligible evidence offered by Finjan. *See* Dkt. No. 283 at 10-11 (Court denying Finjan's motion to exclude Dr. Ugone).

### C. Notice

When Juniper satisfied its burden of production by serving a notice on Finjan identifying specific unmarked patented articles subject to 35 U.S.C. § 287(a), it became Finjan's "burden to prove the products identified do not practice the patented invention." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). Finjan failed to meet that burden and did not present evidence legally sufficient to show either constructive or actual notice as required under § 287. *See* Dkt. No. 323 at 5-8.

### D. Infringement

#### 1. A Reasonable Jury Could Find that "ResultsDB Database" Is Only An Interface, Not a "Database."

A reasonable jury could find that "ResultsDB" is merely an *interface* to certain underlying storage components—namely, MySQL, DynamoDB, and S3—and not a "database." As shown by the diagram drawn by Dr. Cole, "ResultsDB" is actually comprised of "ResultsDB API" (short for **A**pplication **P**rogramming **I**nterface) and an assortment of distinct underlying storage components where the data is actually stored:



Ex. 1179 at 10.  *See also, e.g.*, Trial Tr. Vol. 3 at 440:14-17 (Dr. Cole: "the Results Database API, application programming interface, this is something that interfaces with another component like a database, that the ResultsDB API is the database manager.").  In other words, even Dr. Cole appears to acknowledge that no data is stored in anything called "ResultsDB Database."  In actuality, as Dr. Rubin testified, "there is no such this as a ResultsDB Database. [Dr. Cole is merely] drawing a box around three different storage solutions and calling that the ResultsDB Database."  Trail Tr. Vol. 4 at 764:21-23.

References to "ResultsDB" are no more than a reference to the *interface* by which other components actually interact with those storage components.  By way of analogy, "ResultsDB" can be compared to the popular property rental website AirBnB, short for Air Bread and Breakfast.  AirBnB is a cloud-based site that connects travelers with places to stay, and travelers do not actually stay "in" AirBnB—that would be impossible because AirBnB is just a web interface.  Nonetheless, travelers ubiquitously refer to such experiences as "staying in an AirBnB" when, it actuality, the person is simply staying in Bob's condo or Alice's house.  In the same way, "ResultsDB" is just an interface to storage components, and while engineers may casually refer to storing data in

"ResultsDB," such statements are just references to the *interface* that the engineers use to communicate with MySQL, DynamoDB, and S3.

Critically, Dr. Cole admitted that his infringement theory did not rely on the individual storage components with which ResultsDB API interfaces:

> Q. And, in fact, sir, you did not analyze whether MySQL independently would infringe the database element of Claim 10; correct?
>
> A. *I believe that is correct*. I focused on ResultsDB as the infringing database.
>
> Q. And you also didn't analyze whether DynamoDB independently would infringe the database element of Claim 10; correct?
>
> A. I'm pausing because I believe in my report that I actually did talk about the individual databases and that they do infringe. *But here at trial what I presented this morning was focused on ResultsDB*.

Trial Tr. Vol. 3 at 500:20-501:6 (emphasis added).

### 2. A Reasonable Jury Could Find that "ResultsDB Database" Is Not Organized According to a Database Schema as Required by the Agreed Construction.

A reasonable jury could find that what Finjan alleges to be "ResultsDB Database" is not organized according to a database schema. *Amazon's own documentation* makes it clear that Amazon's DynamoDB is a schema-less database:

> a collection of rows. Each table can have an infinite number of data items. Amazon DynamoDB is schema-less, in that the data items in a table need not have the same attributes or even the same number of attributes. Each table must have a primary key.

Ex. 1264-4 (excerpted and highlighting added). Dr. Rubin further confirmed that DynamoDB is a schema-less database and that S3 is also schema-less. *See, e.g.*, Trial Tr. Vol 4 at 764:25-765:1 ("the JSONs, which are the results of the analysis, are stored in *DynamoDB or S3, which are schema-less*") (emphasis added).

It is immaterial whether some parts of "ResultsDB Database" have a *JSON* schema, as Finjan introduced no evidence that a JSON schema is a database schema. To the contrary, as Dr. Rubin testified,

> You can have a JSON schema.  The word "schema" just has to do with having rules for how you put things together.  ***This is different from a database schema***, which defines how you put data into a database.  A JSON schema defines how you put text into a JSON object.

Trial Tr. Vol 4 at 763:25-764:4.  In other words, the JSON schema organizes the JSONs stored within DynamoDB, but it does not organize DynamoDB itself.  The authoritative definition of JSON by the Internet Engineering Task Force further confirms that a JSON is nothing but a "text format" similar to a Microsoft Word document (*See* Ex. 1248 at 3) and, as a result, so a JSON schema is just a structure to ***text***—not a structure for a ***database***.  A JSON schema is similar to following a standard memo format in a Word document; the text in the Word document may be structured, but such structure says nothing at all about whether that Word document is subsequently stored in a database with a schema.

It is similarly immaterial whether some parts of "ResultsDB Database" has a ***key*** schema, as Finjan presents no evidence that a ***key*** schema is a database schema, and Dr. Rubin testified that a key schema is not a database schema:

> Q. And just to be very clear, you mentioned it when the judge was asking you questions about your little diagram with the keys, you mentioned it, you said there's a key schema --
>
> A. Right.
>
> Q. -- in the DynamoDB?
>
> A. There is.
>
> Q. All right.
>
> A. It's a type of a JSON.
>
> Q. But the DynamoDB has a schema, a key schema?
>
> A. It does not have a database schema.

Trial Tr. Vol. 4 at 786:10-19.  *See also id*. at, *e.g.*, 745:15 ("In a schema-less database, you have keys."), 746:12-13 ("And so a schema-less database is this king of more free-form thing and it has a key.").

Additionally, a reasonable jury could conclude that "ResultsDB Database" is not organized according to a "database schema" because "ResultsDB Database" fails to meet the requirement of a

"database schema" set forth by Finjan and its own expert in IPR.  As background, Finjan argued to the PTAB that one of skill in the art would understand a "database schema" is "a description of a database to a database management system (DBMS) *in **the** language* provided by the DBMS." Trial Ex. 1760 at 46.  On one hand, the MySQL database is, as its name suggests and as Finjan's expert Dr. Cole admitted, described in *Structured Query Language* (SQL).  Trial Tr. Vol. 3 at 516:10-13 ("Q. But for the MySQL database, you run queries using the standard query language; correct? A. Yes. For the MySQL database that's run by Amazon, they use MySQL for queries.").  On the other hand, the ResultsDB API (*i.e.*, what the Court found be the claimed "database manager") is written in *Python*, as indicated Dr. Cole also admitted.  Trial Tr. Vol. 3 at 516:6-9 ("Q. The ResultsDB manager that you identified as the infringing database management system is written in python; correct?  A. Yes, that is my understanding.").  Thus, if a "database schema" is understood to require one language ("in *the* language") as proposed by Finjan and its own expert during IPR, then a reasonable jury could find that "ResultsDB Database" does not have a database schema because it requires at least two languages.

### 3. No Reasonable Jury Could Find that "ResultsDB Database" Infringes Under the Doctrine of Equivalents.

Finjan failed to present any evidence at all that "ResultsDB Database" infringes under the doctrine of equivalents.  Dr. Cole presented no testimony that "ResultsDB Database" performed the same function in the same way to achieve the same result as the claimed "database" or that "ResultsDB Database" was substantially similar to the claimed database for any other reasons.  As a result, Juniper should be granted judgment as a matter of law that Juniper does not infringe under the doctrine of equivalents.

**CONCLUSION**

Juniper respectfully requests that the Court deny Finjan's motion for judgment as a matter of law on notice, damages, infringement, and invalidity.

1  Dated: December 13, 2018                IRELL & MANELLA LLP

2

3                                          By: */s/ Alan Heinrich*
                                              Alan Heinrich
4                                             *Attorneys for Defendant*
                                              JUNIPER NETWORKS, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10622413                        - 9 -        JUNIPER'S NOTICE OF MOTION AND MOTION
                                              FOR JUDGMENT AS A MATTER OF LAW
                                              (Case No. 3:17-cv-05659-WHA)