IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua Glucoft (SBN 301249)
jglucoft@irell.com
Casey Curran (SBN 305210)
ccuran@irell.com
Sharon Song (SBN 313535)
ssong@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**DEFENDANT JUNIPER NETWORKS, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 14, 2019<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup<br>Courtroom: 12 – 19th Floor |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 14, 2019, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12, 19th Floor, of the San Francisco Courthouse, 450 Golden Gate Avenue San Francisco, California 94102, before the Honorable Williams Alsup, Defendant Juniper Networks, Inc. ("Juniper") will and hereby does move for Judgment as a Matter of Law ("JMOL") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the exhibits attached thereto, the proposed amended answer and counterclaims, all documents in the Court's file, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

Dated:  January 10, 2019                                           IRELL & MANELLA LLP

By: */s/ Rebecca Carson*
Rebecca Carson
*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. LEGAL STANDARD ............................................................................................................1

III. ARGUMENT .........................................................................................................................2

    A. No Reasonable Jury Could Have Found That Finjan Satisfied The Constructive Notice Requirements Of 35 U.S.C. § 287 ........................................2

        1. Juniper Met Its Burden Of Production To Identify Unmarked Articles. ...................................................................................................2

        2. No Reasonable Jury Could Have Found That Finjan Met Its Burden To Show Compliance With The Constructive Notice Requirements Of § 287. ...............................................................................4

        3. No Reasonable Jury Could Have Found That Finjan Met Its Burden To Show Compliance With The Actual Notice Requirements Of § 287. ...............................................................................7

IV. CONCLUSION ....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acantha LLC v. DePuy Orthopaedics Inc.*,
   No. 15-C-1257, 2018 WL 1951231 (E.D. Wis. Apr. 25, 2018) ................................................. 6

*Amsted Industries Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994) ..................................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................................. 2

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ............................................................................................ 2, 4

*Asyst Technologies, Inc. v. Empak*,
   2006 WL 3302476 (N.D. Cal. Nov. 14, 2006) .................................................................... 7, 10

*Calmar, Inc. v. Emson Research, Inc.*,
   850 F. Supp. 861 (C.D. Cal. 1994) ........................................................................................... 6

*Cordis Corp. v. Boston Sci. Corp.*,
   658 F.3d 1347 (Fed. Cir. 2011) ................................................................................................ 2

*Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*,
   130 F. Supp. 2d 1152 (C.D. Cal. 2001) .................................................................................... 5

*Funai Elec. Co., Ltd. v. Daewoo Electronics*,
   616 F.3d 1357 (Fed. Cir. 2010) ..................................................................................... 7, 9, 10

*Lans v. Dig. Equip. Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001) ................................................................................................ 7

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) .................................................................................................. 5

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) ................................................................................................ 4

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
   IPR2016-00159 ......................................................................................................................... 3

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) .................................................................................................................. 1

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
   891 F. Supp. 751 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996) ................................ 6

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
   No. C 10-3724 CW, 2013 WL 4456161 (N.D. Cal. Aug. 16, 2013) ..........................................5

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ...................................................................................................................1

**Statutes**

35 U.S.C. § 287 ............................................................................................................... *passim*

35 U.S.C. § 287(a).........................................................................................................................2, 7

**Other Authorities**

Fed. R. Civ. P. Rule 50..................................................................................................................1

Fed. R. Civ. P. Rule 50(a) .............................................................................................................1

Fed. R. Civ. P. Rule 50(b) .............................................................................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Juniper Networks, Inc. ("Juniper") renews its motion for judgment as a matter of law ("JMOL") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Because the jury unanimously found that Juniper did not infringe Finjan, Inc.'s ("Finjan") '494 Patent, it did not make any finding regarding Finjan's obligation to comply with the notice requirements of 35 U.S.C. § 287. As the evidence presented by the close of Finjan's case-in-chief demonstrates, no reasonable jury could have had a legally sufficient basis to find in Finjan's favor on the notice requirement. Accordingly, Juniper respectfully requests that the Court enter judgment in Juniper's favor on the following issues:

- Finjan and its licensees failed to comply with the marking requirements of 35 U.S.C. § 287; and
- Finjan failed to provide Juniper with actual notice of the '494 Patent prior to the expiration of the patent.

Despite the jury's verdict on Claim 10, Juniper's notice arguments remain relevant to this case because Finjan has informed Juniper that it still intends to pursue Claims 10, 14 and 18 against the ATP Appliance product that was not part of the first trial. Moreover, Finjan apparently plans to appeal the outcome of the trial, including the jury's finding of non-infringement and the court's ruling on the failure to prove damages as a matter of law. As a result, Finjan's failure to comply with the marking requirements of § 287 are still relevant.

**II.   LEGAL STANDARD**

Juniper renews its motion for judgment as a matter of law with regard to notice pursuant to Rule 50. Judgment as a matter of law is appropriate if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. Rule 50(a). In making this determination, "the court should review all of the evidence in the record, not merely the evidence favorable to the non-moving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Rule 50 "allows the trial court to remove . . . issues from the jury's consideration when the facts are sufficiently clear that the law

requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (internal quotations omitted). The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment, and "the inquiry under each is the same." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986); *see also Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) ("The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.").

### III. ARGUMENT

#### A. No Reasonable Jury Could Have Found That Finjan Satisfied The Constructive Notice Requirements Of 35 U.S.C. § 287.

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages" to provide constructive notice to the public of its patent rights. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). "A patentee's licensees must also comply with § 287." *Id.* at 1366. An alleged infringer who disputes a "patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368. "Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

##### 1. Juniper Met Its Burden Of Production To Identify Unmarked Articles.

There is no dispute that Juniper satisfied its burden of production to identify unmarked patented articles. Indeed, Juniper served a pre-trial notice on Finjan on May 3, 2018 identifying a number of unmarked patented articles sold by Finjan and Finjan's licensees. Dkt. No. 96-11 (unredacted version at Dkt. No. 95-15). And, Finjan's counsel even conceded during the trial that Juniper had satisfied its burden of production under *Arctic Cat*, and thus the burden had shifted to Finjan to prove either constructive or actual notice. Trial Transcript ("Trial Tr.") Vol. 2 at 289:8-23 ("MS. KOBIALKA: We tried to make a stipulation on this particular point prior to trial, but **let me just say that they did give us an *Arctic Cat* notice. They did.**") and 289:24-290:1 ("THE COURT:

All right. So if I just tell you right now that you've got to prove notice, you are okay with that? Ms. Kobialka: Yes.") (emphasis added).

In addition to this notice, Juniper introduced evidence at trial that multiple Finjan licensees sell products that practice the '494 Patent. For example, Juniper introduced evidence during the examination of Dr. Cole that Finjan made the following admissions in a filing to the United States Patent and Trademark Office ("USPTO"):

- "After the '494 issued, several licensees entered into licensee agreements, which included a license to the '494 Patent, to avoid litigation and to obtain a license to continue to make, use, offer to sell, and sell products that embodied the inventions disclosed in the '494 Patent."

- "Avast's Endpoint Protection and its connection with Avast Research Labs to identify new malicious threats utilize the inventions disclosed in the '494 Patent . . . ."

- "F-Secure's multi-layered approach to security is comprised of five modules, each designed to address a particular aspect of the threat landscape and work together to provide a complete solution using the technology of the '494 Patent . . . ."

- "Websense uses the inventions disclosed in the '494 Patent." And "Thus, the sales of the [Websense] Triton product coincide directly with the inventions disclosed in the '494 Patent."

- "The Proofpoint products practice the inventions disclosed in the '494 Patent and Proofpoint has obtained significant revenues from the sales of those products."

*See* Trial Exhibit 1760 (Finjan's POR in *Palo Alto Networks, Inc. v. Finjan, Inc.*, IPR2016-00159).[1]

---

[1] During his closing argument, Finjan's counsel claimed that the statements made in Trial Exhibit 1760 are not evidence because they were made by an attorney. Trial Tr. Vol. 5 at 958:18-22. After the Court corrected this misstatement, counsel claimed that he was instead making the point that Trial Exhibit 1760 does not "call out specific products." *Id.* at 959:5-960:6. This statement to the Court was untrue. As shown above, Trial Exhibit 1760 does in fact identify specific licensee products.

**2.    No Reasonable Jury Could Have Found That Finjan Met Its Burden To Show Compliance With The Constructive Notice Requirements Of § 287.**

Because, as Finjan concedes, Juniper satisfied the initial burden of production of identifying unmarked products, Finjan bore the burden to prove that either (1) the products identified by Juniper do not actually practice the '494 Patent, or (2) substantially all of the identified products sold by Finjan and its licensees were marked with the '494 Patent. *Arctic Cat*, 876 F.3d at 1368. Finjan failed to meet its burden to produce evidence on either of these issues, and thus a reasonable jury could not find that Finjan complied with the constructive notice requirements of § 287.

As an initial matter, Finjan presented no evidence that the products identified by Juniper do not practice the '494 Patent. To the contrary, Finjan admitted that its licensees do in fact sell products that practice the '494 Patent. For example, Finjan's CEO, Philip Hartstein, testified that Finjan's licensees sold products practicing the '494 Patent. Trial Tr. at 318:11-13 ("But Finjan believes that its licensees are actually using its patents in those products; correct? A. Yes, we believe that."). As another example, Finjan admitted in a filing to the USPTO that several of its specific licensees practice the '494 Patent in its Patent Office filings, as noted above. Trial Ex. 1760 at 54.

Next, the factual record shows that Finjan's licensees who practice the '494 Patent do ***not*** mark those products with the '494 Patent. For example, Mr. Hartstein could not identify a single licensee that had marked its products with Finjan's patent numbers since the '494 Patent issued. Trial Tr. Vol. 2 at 318:17-319:2 (". . . As you sit here right now, can you identify a single product by any of those licensees that bears the marking of the '494 Patent? You can answer that yes or no. THE WITNESS: As I sit here, no."). He further testified that none of Finjan's license agreements have marking provisions, and that he was not aware of any efforts by Finjan to monitor whether its licensees were marking their products with Finjan's patent numbers. Trial Tr. Vol. 2 at 319:5-11 ("Q. You don't believe that any of Finjan's licenses have marking provisions; correct? A. That is my understanding, that our agreements do not. Q. And, in fact, you're not aware of any efforts by

Finjan to monitor whether its licensees are marking their products with Finjan's patents; correct? A. That is correct.").

In view of the affirmative evidence that Finjan's licensees do not mark their products with Finjan's patent numbers, Finjan indisputably has not met its burden to demonstrate that all or substantially all of the patented articles sold by it or its licensees were marked. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) ("In order to satisfy the constructive notice provision of the marking statute, [Patent Owner] must have shown that **substantially all** of the [products] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous.") (emphasis added); *Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*, 130 F. Supp. 2d 1152, 1162 (C.D. Cal. 2001). And, while the Federal Circuit has recognized that a patentee with licensees who sell patented products may establish compliance with § 287 by showing that the patentee "made reasonable efforts to ensure compliance with the marking requirements" (*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111–12 (Fed. Cir. 1996)), Finjan failed to present any evidence of such efforts. To the contrary, as noted above, Mr. Hartstein testified that Finjan made *no* efforts to ensure its licensees were complying with the marking requirements. Trial Tr. Vol. 2 at 319:5-11 (testifying that license agreements do not contain marking provisions and Finjan does not monitor licensees to ensure marking).

The court's decision in *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 4456161, at *7 (N.D. Cal. Aug. 16, 2013) is on point. In that case, the court found that 3Com had not satisfied its marking obligations as to its licensee IBM. The Court explained:

> [H]ere, the evidence does not support that 3Com made reasonable efforts to ensure that IBM marked any licensed products with the patents-in-suit. In fact, the evidence offered shows that 3Com took no steps whatsoever to do so. Even if it would have been burdensome for 3Com to monitor whether IBM was in fact marking all products practicing the patents, 3Com failed even to include in the licensing agreement an obligation that IBM itself make efforts to mark any products that it reasonably believed practiced 3Com's patents. It instead authorized IBM to practice the patents-in-suit without any requirement that IBM even make a minimal effort to mark them.").

*Id.* Here, just as in 3Com, Finjan admittedly failed to take any steps whatsoever to ensure that its licensees were marking their products with the '494 Patent. As such, Finjan has failed to establish compliance with the constructive notice requirements of § 287 as a matter of law.


10626586 - 5 -  
JUNIPER'S MOTION FOR JUDGMENT AS A MATTER OF LAW  
(Case No. 3:17-cv-05659-WHA)

1   While Finjan tried to present evidence that its subsidiary Finjan Mobile marked the
2   VitalSecurity product with the '494 Patent starting in the fourth quarter of 2016, this is not sufficient.
3   Even if Finjan Mobile had adequately marked the VitalSecurity product (which it did not), Finjan
4   has not—and cannot—show that ***substantially all*** of the patented articles were marked given that
5   the undisputed evidence shows that Finjan Mobile's revenues on its products are dwarfed by the
6   revenues of its licensee products. Trial. Tr. Vol. 2 at 295:24-296:7 (Mr. Hartstein testifying that
7   Finjan Mobile's revenues on the VitalSecurity product were less than $1 million); Trial Exhibit 1760
8   at 56-60 (noting that a significant amount of Finjan's licensees' revenues came from products
9   "attributable to the invention of the '494 Patent," including an estimated $300 million for Avast,
10  $147.6 million for F-Secure, $361.4 million for Websense, and $265.4 million for Proofpoint). As
11  a result, no reasonable jury could find that Finjan and its licensees complied with the marking
12  requirements of § 287.

13  In any event, Finjan Mobile's alleged marking of the VitalSecurity product is insufficient as
14  a matter of law. The only evidence of marking of this product introduced by Finjan was the
15  testimony of its CEO, Mr. Hartstein, that Finjan listed the '494 Patent in its "marketing materials,"
16  "on [its] website," and on the "bibliographical information that you see when you go to the Google
17  Play Store" starting in the fourth quarter of 2016. Trial Tr. Vol. 2 at 260:13-19; Trial Exhibit
18  372. This is insufficient as a matter of law. Recently, a court in the Eastern District of Wisconsin
19  rejected a similar argument that § 287 could be satisfied by simply marking literature associated
20  with the patented products. *Acantha LLC v. DePuy Orthopaedics Inc.*, No. 15-C-1257, 2018 WL
21  1951231, at *4 (E.D. Wis. Apr. 25, 2018). There, the patent numbers were listed on widely
22  distributed technique guides (distributed to hospitals, at trade shows, and online) and surgeons
23  would actually "view and use the guides during the surgeries in which the device is used"—but the
24  court found that this was still insufficient to meeting the marking requirements. *Id.* The court
25  explained: "While some courts have found that placing the patent mark in the literature describing
26  the patented article constitutes constructive notice, they have done so ***only when the literature is***
27  ***distributed with the product*** or placed in the box the product is contained." *Id.* (emphasis added)
28  (citing *Stryker Corp. v. Intermedics Orthopedics*, Inc., 891 F. Supp. 751, 830 (E.D.N.Y. 1995)

(Distribution of marking "separately from the [patented] devices themselves . . . is insufficient under the statute, as a matter of law."), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996); *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 868 (C.D. Cal. 1994) (holding that "marking some literature associated with a patented article is insufficient to satisfy the marking requirements of the statute"). Here, the fact that Finjan's CEO believes the '494 Patent is listed on Finjan's "marketing materials" and "on [its] website" speaks nothing to whether any materials distributed with VitalSecurity were marked with the '494 Patent. The same is true of the "bibliographic information that you see when you go to the Google Play Store." Indeed, the Google Play Store is where the product is sold—not a marked piece of literature distributed with the product when sold. As such, no reasonable jury could find that Finjan complied with the marking statute for VitalSecurity.

### 3. No Reasonable Jury Could Have Found That Finjan Met Its Burden To Show Compliance With The Actual Notice Requirements Of § 287.

Given that Finjan failed to comply with its marking obligations, and given that the '494 Patent expired before Finjan filed its complaint in this matter, Finjan was required to prove that it provided Juniper with actual notice at some point before the '494 Patent expired. *Asyst Technologies, Inc. v. Empak*, 2006 WL 3302476, at *4 (N.D. Cal. Nov. 14, 2006) ("A patent holder may recover damages for infringement only after (1) giving constructive notice to the public by marking its products with the patent number, or (2) giving actual notice of the infringement to the accused infringer."); *Lans v. Dig. Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming ruling that patentee had not stated an infringement claim because it failed to satisfy § 287 prior to expiration of the patent-in-suit). To establish actual notice, the patentee must show that it "communicate[d] a specific charge of infringement of specific patents by a *specific* product or group of products." *Funai Elec. Co., Ltd. v. Daewoo Electronics*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *see also Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("For purposes of Section 287(a), notice must be of the 'infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a *specific* accused product or device.") (emphasis added).

1       Finjan failed to present evidence of actual notice.  As an initial matter, it is undisputed that
2  Finjan failed to provide any written communication to Juniper identifying the '494 Patent prior to
3  the expiration of that patent.  Under the Northern District of California's Model Patent Jury
4  Instruction 5.9, which requires "actual written notice" to establish compliance with § 287, Finjan's
5  failure to identify any written communication identifying the '494 Patent before its expiration is
6  dispositive.  N.D. Cal. Model Patent Jury Instructions B.5. Patent Damages 5.9 ("[Since [patent
7  holder] sells a product that includes the claimed invention but has not marked that product with the
8  patent number, you must determine the date that [alleged infringer] received actual *written* notice
9  of the [ ] patent and the specific product alleged to infringe;]") (brackets in original, emphasis
10 added).

11      Even if oral communications could be considered to establish actual notice, moreover, Finjan
12 still cannot satisfy the actual notice requirement because its oral communications did not identify
13 the accused Sky ATP product, which performed the bulk of the functions Finjan identified as
14 allegedly infringing.  The only oral communication concerning the '494 Patent Finjan identified was
15 the telephone call between Mr. Coonan and Mr. Garland on November 24, 2015.  Because there is
16 a recording of that phone call, the content of that oral communication is also undisputed.  The
17 recording shows that the only product that Mr. Garland identified on that phone call is the SRX
18 Series, and its included Unified Threat Management, web-filtering, and anti-virus modules. Ex. 256
19 at JNPRFNJN_29011_00960577-78 (stating that Finjan is focused on the SRX series and that "it
20 looks like some of the modules that are supported in those products and the Next Generation
21 firewall, which is your UTM, your antivirus, and your web filtering are three modules that we think
22 about using three new patents.").

23      With respect to Sky ATP, Mr. Garland admitted at trial that he had previously claimed under
24 oath that he specifically identified Sky ATP on his call with Mr. Coonan, but had to recant this
25 testimony after learning of the recording.  Trial Tr. Vol. 3 at 587:8-15.  In fact, Mr. Garland admitted
26 that had it not been for the recording, he would have perpetuated his original story to the jury.  Trial
27 Tr. Vol. 3 at 588:23-589:5 ("Q.  I understand that's your position.  I'm asking you about whether
28 you mentioned Sky ATP, and you swore and you took an oath and you said you had.  That's correct,

isn't it? A. I believe -- I believed I had, yes. Q. That's right. And if we did not have that transcript, that is still the testimony you would be giving today; isn't that right? A. That's correct."). But the recording exists and Mr. Garland was forced to admit that he did not identify Sky ATP or SRX specifically used in combination with Sky ATP as accused products during his phone call with Mr. Coonan. Trial Tr. Vol. 3 at 586:22-587:1; *See* Trial Exs. 256, 257; Trial Tr. Vol. 3 at 588:13-16 (John Garland: "Q. Right. And you now know that you're mistaken and that you did not mention Sky ATP; is that right? A. I only know I'm mistaken because the call -- yeah, the call is recorded and taped and transcribed.").

Given that Mr. Garland failed to actually identify Sky ATP on the call, Finjan is trying to hang its hat on an offhand remark by Mr. Garland that the '494 Patent "reads on [Juniper's] advanced malware modules." Trial Ex. 256 at 10:53-11:21; Trial Tr. Vol. 3 at 562:4-10. In particular, Finjan seems to be suggesting that because Mr. Garland testified that he understood "advanced malware modules" to refer to Sky ATP, that is sufficient to establish notice. Trial Tr. Vol. 3 at 587:19-23 ("Q. And when asked the question about whether you discussed Sky ATP on this call with Mr. Coonan, you said that you did; is that correct? A. My recollection was I did because the advanced malware module to me is Sky ATP."). This argument fails as a matter of law. As an initial matter, the standard for actual notice is objective, so it is irrelevant what Mr. Garland subjectively understood. Specifically, the Federal Circuit has explained that "[t]o serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer." *Funai Elec. Co.*, 616 F.3d. at 1373. Moreover, the term "advanced malware modules" cannot objectively be viewed as referring to Sky ATP. Finjan failed to provide any evidence that the cloud-based Sky ATP product is a "module" of the SRX. To the contrary, the evidence presented at trial shows that Sky ATP is a distinct product from SRX, and that the SRX has "advanced malware modules" that have nothing to do with Sky ATP or its functionality. *See* Trial Ex. 345 at 2 (discussing SRX's on-box "advanced malware" threat protection, which is unrelated to Sky ATP); Coonan Dep. Tr. at 167:13-24 ("Q. Have you heard of Sky ATP referred to as advanced malware? A. No. . . . Q. Have you ever heard of Sky ATP referred to as having advanced malware modules? A. Not – not a module, no, 'cause it's a cloud-based solution.")

(Testified through Videotaped Deposition, Trial Tr. Vol. 3 at 538:18-20); Trial Tr. Vol. 4 at 677:10-15 (testimony of Michael Bushong) (Q.  So these security features that we've been discussing that are on the SRX box itself, would you consider those to be advanced malware modules?  A. Absolutely.  Q.  And do they have anything to do with Sky ATP at all?  A.  They do not have anything to do with Sky ATP.").

Even if Mr. Garland's subjective intent were relevant (it is not), the factual record refutes Mr. Garland's claim that he subjectively intended to refer to Sky ATP in his call with Mr. Coonan. For example, Mr. Garland sent a subsequent email to Juniper to memorialize the call.  Once again, the only product Mr. Garland identified was the SRX Series—not Sky ATP.  Trial Tr. Vol. 3 at 599:3-12 ("Q.  And this [Trial Ex. 343] describes your phone call with Mr. Coonan on November 24th; is that right?  A.  (Witness examines document.)  It refers to it, yes.  Q.  And it discusses the goal of the call; is that right?  A.  Yes.  Q.  And it says that you want to discuss, quote, 'the current and ongoing use of Finjan patents by Juniper's SRX series services gateways next generation anti-threat firewall'; is that correct?  A.  That's correct."); *see also* Trial Ex. 343.

To the extent that Finjan contends that Mr. Garland's reference to the "advanced malware modules" of SRX sufficed for actual notice on the theory that it constituted an identification of a broad category of products, this is also insufficient as a matter of law.  For example, in *Asyst Technologies, Inc.*, 2006 WL 3302476 at *4, the court found that letters identifying "the market for SMIF pods" were insufficient because they did not identify "any particular product of [the defendants]." *Id.*; *see also Funai Elec. Co.*, 616 F.3d. at 1373 (notice "must communicate a specific charge of infringement of specific patents by a ***specific*** product or group of products") (emphasis added).  In sum, at no point prior to filing suit did Finjan provide actual notice of its contention that SRX used in combination with Sky ATP, and Sky ATP alone, infringed claim 10 of the '494 Patent.

## IV.   CONCLUSION

Juniper respectfully requests that the Court grant judgment as a matter of law that (1) Finjan and its licensees failed to comply with the constructive notice requirements of 35 U.S.C. § 287, and (2) Finjan failed to provide Juniper with actual notice of the '494 Patent prior to the expiration of the patent.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  January 10, 2019 | IRELL & MANELLA LLP |
| 3 | | |
| 4 | | By: */s/ Rebecca Carson* |
| | | Rebecca Carson |
| 5 | | *Attorneys for Defendant* |
| | | JUNIPER NETWORKS, INC. |

10626586

- 11 -

JUNIPER'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
(Case No. 3:17-cv-05659-WHA)