PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>                    Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B); MOTION FOR NEW TRIAL UNDER FED. R. CIV. P. 59; AND MOTION FOR CERTIFICATION FOR IMMEDIATE APPEAL IN THE ALTERNATIVE**<br><br>Date:          TBD<br>Time:          TBD<br>Courtroom:  12, 19th Floor<br>Before:        Hon. William Alsup |

**REDACTED VERSION OF DOCUMENTS FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. i

NOTICE OF MOTION AND MOTION ........................................................................................ 1

I.      Introduction ....................................................................................................................... 3

II.     Finjan is entitled to JMOL that JUNIPER INFRINGES CLAIM 10 .............................. 4

        A.      Finjan Presented Overwhelming Evidence that the Accused Products Store
                Downloadable Security Profile Data in a Database. ............................................. 5

        B.      Juniper Failed to Rebut Finjan's Proof of Infringement. ...................................... 7

                1.      Dr. Rubin Did not Rebut Dr. Cole's Evidence that the ResultsDB Exists. .......... 7

                2.      Dr. Rubin Did not Rebut Finjan's Evidence that the ResultsDB has a
                        "Database Schema." ..................................................................................... 9

III.    ALTERNATIVELY, FINJAN REQUESTS A NEW TRIAL UNDER Rule 59 ...................... 13

        A.      The Court Allowing Should Grant a New Trial to Prevent a Miscarriage of
                Justice Regarding the Construction "Database Schema." ................................... 14

        B.      Juniper Improperly Presented Evidence of Claim 1 to the Jury. ....................... 15

        C.      Juniper Withheld and Misrepresented Damages for the Accused Products .................. 16

        D.      The Court Erred by Ruling that A Reasonable Royalty Cannot Exceed Revenues
                and Also That Finjan's Reasonable Royalty Request Exceeded Juniper's
                Revenues. ............................................................................................................. 19

IV.     REQUEST FOR A FINAL ORDER AND FOR CERTIFICATION FOR IMMEDIATE
        INTERLOCUTORY APPEAL, AND TO STAY THE CASE ................................................ 21

        A.      A Controlling Question of Law is at Issue .......................................................... 22

        B.      Substantial Grounds for a Difference of Opinion Exists. .................................. 22

        C.      An Order for Immediate Interlocutory Appeal Could Materially Speed Up the
                Termination of the Litigation. ............................................................................. 23

        D.      The Judgment of No Infringement of the '780 Patent Is Properly Subject to
                Simultaneous Appeal ........................................................................................... 24

V.      THE CASE SHOULD BE STAYED IN ITS ENTIRETY PENDING NEW TRIAL OR
        APPEAL ............................................................................................................................ 24

VI.     CONCLUSION .................................................................................................................. 25

i

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*800 Adept, Inc. v. Murex Securities, Ltd*.,
   539 F.3d 1354 (Fed. Cir. 2008)...................................................................................... 14

5

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)...................................................................................... 15

6

7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S.Ct. 2347 (2014) .................................................................................................... 15

8

9

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix
   Online*, LLC, 792 F.3d 1339 (Fed. Cir. 2015) ............................................................... 22

10

11

*Apple, Inc. v. Samsung Elecs. Co*.,
   No. 12-cv-00630-LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014) ........................... 23

12

13

*Banneck v. Fed. Nat'l Mortg. Ass'n*,
   No. 17-CV-04657-WHO, 2018 WL 5603632 (N.D. Cal. Oct. 29, 2018)........................ 23

14

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)...................................................................................... 15

15

16

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)...................................................................................... 15

17

18

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)...................................................................................... 20

19

*In re Cement Antitrust Litig. (MDL No. 296)*,
   673 F.2d 1020 (9th Cir. 1981) ....................................................................................... 22

20

21

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007)...................................................................................... 13

22

23

*Cordis Corp. v. Boston Sci. Corp*.,
   561 F.3d 1319 (Fed. Cir. 2009)................................................................................ 12, 13

24

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ......................................................................................... 22

25

26

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005)................................................................................ 13, 23

27

28

i

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)..................................................................................... 20

*Dow Chem. Co. v. Mee Indus., Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003)..................................................................................... 22

*Dukes v. Wal-Mart Stores, Inc.*,
  No. 01-cv-02252 CRB, 2012 WL 6115536 (N.D. Cal. Dec. 10, 2012)........................... 23

*E.E.O.C. v. Go Daddy Software, Inc.*,
  581 F.3d (9th Cir. 2009) ................................................................................................. 4

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)..................................................................................... 21

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
  762 F.3d 829 (9th Cir. 2014) ........................................................................................ 14

*Fed. Deposit Ins. Corp. v. Jackson-Shaw Partners No. 46, Ltd.*,
  No. 92-20556 SW, 1995 WL 594866 (N.D. Cal. Oct. 4, 1995) ..................................... 22

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  No. 13-cv-03999-BLF, 2014 WL 5361976 (N.D. Cal. Oct. 20, 2014).......................... 24

*Finjan, Inc. v. ESET, LLC*,
  No. 17-cv-00183-CAB-(BGS), 2017 WL 5501338 (S.D. Cal. Nov. 14, 2017) .............. 24

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010)..................................................................................... 20

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936)...................................................................................................... 24

*McGonigle v. Combs*,
  968 F.2d 810 (9th Cir. 1992) .......................................................................................... 4

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003)..................................................................................... 12

*Monsanto Co. v. Ralph*,
  382 F.3d 1374 (Fed. Cir. 2004)..................................................................................... 20

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ................................................................................... 20, 23

*Shurance v. Planning Control Int'l, Inc.*,
  839 F.2d 1347 (9th Cir. 1988) ...................................................................................... 22

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
  516 F.3d 1290 (Fed. Cir. 2008)....................................................................................... 8

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR    CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    308 F.3d 1167 (Fed. Cir. 2002)...................................................................................... 14

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013)...................................................................................... 21

*In re Wilson*,
    No. BR 13-11374 AJ, 2014 WL 122074 (N.D. Cal. Jan. 10, 2014)............................ 22

*WundaFormer, LLC v. Flex Studios, Inc.*,
    680 F. App'x 925 (Fed. Cir. 2017) .................................................................................. 9

*Zyme Solutions, Inc. v. InfoNow Corp.*,
    No. C 13–04082 WHA, 2013 WL 6699997 (N.D. Cal. Dec. 19, 2013)......................... 24

**Statutes**

28 U.S.C. § 1292 ...............................................................................................................*passim*

35 U.S.C. § 101 ....................................................................................................................... 15

35 U.S.C. § 102 ....................................................................................................................... 15

**Other Authorities**

Fed. R. Civ. P. 50 ........................................................................................................... 1, 4, 14, 20

Fed. R. Civ. P.  59 ................................................................................................................. 1, 13, 14

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR    CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that as soon as the matter may be heard by the Court, Finjan, Inc. ("Finjan") will and hereby does move the Court for an order granting its renewed motion for judgment as a matter of law and, alternatively, for a new trial and a stay of the second "shootout procedure." This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the trial record, the pleadings and papers on file, and any evidence and argument presented to the Court.

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 50(b), Finjan moves for renewed judgment as a matter of law ("JMOL") that Juniper's (1) SRX Gateways with SkyATP and (2) Sky ATP by itself (the "Accused Products") infringe Claim 10 of the '494 Patent ("Claim 10"). Finjan presented overwhelming evidence that the Accused Products meet the "database" limitation of Claim 10, and the Court found on summary judgment that the Accused Products meet every other limitation of Claim 10. Juniper failed to present a legally sufficient evidentiary basis to support its defenses to that infringement.

In the alternative, Finjan requests a new trial on the issue of infringement under Rule 59. Finjan further requests a new trial under Rule 59 on the bases that (1) the incorrect construction of "database schema" was applied by Juniper; (2) Juniper improperly presented evidence of Claim 1 to the jury; and (3) withheld and misrepresented revenue information during discovery, both of which substantially prejudiced Finjan at trial. Granting a new trial on these issues will mean that the first trial is not completed, such that a stay of the second shootout is appropriate.

Should the Court not grant Finjan's request for JMOL, or its request for a new trial, then Finjan requests a final judgment or certification of these issues for immediate interlocutory appeal, and that the case be stayed pending the outcome of that appeal. All issues related to the first "shootout" procedure, namely the issues involving the '494 Patent and the '780 Patent, should be certified for immediate appeal so that they may be addressed by the Federal Circuit to preserve judicial economy

1

1    and ensure no errors of law are promulgated throughout the case, as the Court has already instructed

2    that there will be a second "shootout" phase and a second trial.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR          CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3 Finjan should be granted JMOL that the Accused Products infringe Claim 10 because there was

4 no legally sufficient basis for the jury's non-infringement verdict.  In particular, Finjan provided

5 overwhelming evidence that these Accused Products include "a database" as used in the element "a

6 database manager coupled with said Downloadable scanner, for storing the Downloadable security

7 profile data in a database," which was the only element still at issue for trial.  Finjan presented

8 unrefuted evidence that the Accused Products store "Downloadable security profile data in a database"

9 when the Accused Products store the results from the "malware analysis pipeline" in the "results

10 database" or "ResultsDB."  Juniper failed to properly rebut with any supporting evidence or a legally

11 relevant non-infringement theory, but instead denied the veracity of Juniper's own internal documents

12 and applied new and improper claim constructions arguments.

13 In the alternative, Finjan should be granted a new trial because the great weight of evidence

14 presented to the jury supported Juniper's infringement of Claim 10 of the '494 Patent, and it would be

15 a miscarriage of justice to let the current verdict stand.  First, another trial should be granted because

16 Juniper's improper argument regarding the scope of "database schema" results in a miscarriage of

17 justice.  Further, another trial should be granted because Juniper improperly compared Claim 1 of the

18 '494 Patent, which was not at issue at trial and had been found not valid by the Patent Trial and Appeal

19 Board ("PTAB"), with Claim 10 of the '494 Patent.  Thus, any mention or comparison of Claim 1 to

20 Claim 10 was irrelevant to any issue at trial, created an improper negative impression of Claim 10 of

21 the '494 Patent, and was prejudicial to Finjan's right to a fair trial.  Additionally, Finjan should be

22 granted a new trial as a reasonably remedy to Juniper's misrepresentations of its revenue information

23 to the Court and also because it belatedly produced relevant information regarding the extent of its use

24 of the accused products.  Finally, Finjan there were also manifest errors of law with respect to

25 damages, including the Court's ruling that no reasonable royalty can be assessed on services offered

26 for free.  For these reasons, Finjan should be granted a new trial on liability and damages for Juniper's

27 infringement of Claim 10 of the '494 Patent.

28

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

In the event the Court denies Finjan's request for a judgment as a matter of law or a new trial, Finjan submits that the issue is appropriate for interlocutory appeal to the Federal Circuit under 28 U.S.C. § 1292(b) and (c).  The infringement and damages related orders for both the '494 and '780 Patents are final orders requiring immediate appeal.  28 U.S.C. § 1292(c).  Finjan submits that in the interest of fairness to the parties and conservation of judicial resources, the remainder of the case, and the second "shootout," should be stayed pending the outcome of the appeal, as the outcome will inform all concerned regarding the remainder of the parties' dispute.

## II.    FINJAN IS ENTITLED TO JMOL THAT JUNIPER INFRINGES CLAIM 10

The Court should grant JMOL on infringement for Finjan because Juniper did not rebut Finjan's overwhelming evidence that the Accused Products infringe Claim 10 of the '494 Patent, such that the jury had no legally sufficient evidentiary basis to find for Juniper.  JMOL is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue.'"  Fed. R. Civ. P. 50(a); *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d, 951, 961-62 (9th Cir. 2009); *McGonigle v. Combs,* 968 F.2d 810, 816 (9th Cir. 1992) (holding JMOL should be granted "when the evidence permits only one reasonable conclusion as to the verdict.").  Here, the Court already ruled that Juniper infringes every element of Claim 10 except for the "database" limitation in the last claim element, which reads in its entirety: "a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database."  Dkt. No. 185 at 4–18; '494 Patent, Claim 10.  Thus, the only question for the jury was whether the Accused Products store Downloadable security profile data in a "database," which was construed as "a collection of interrelated data organized according to a database schema to serve one or more applications."  Dkt. 126 at 6; Dkt. 189 at 16.

In response to the evidence presented by Finjan, Juniper's expert relied on nearly no evidence to support Juniper's position, and instead, presented unsupported and irrelevant arguments.  Given the overwhelming evidence Finjan presented, and Juniper's failure to rebut this evidence, no reasonable jury could find that the Accused Products do not store Downloadable security profile data in a "database," and the Accused Products thereby infringe Claim 10.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR       CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

**A.     Finjan Presented Overwhelming Evidence that the Accused Products Store Downloadable Security Profile Data in a Database.**

Finjan presented unrefuted evidence that the Accused Products store Downloadable security profile data in a database when the results from their "malware analysis pipeline" are stored in the ResultsDB.  Ex. 1[1], Trial Tr. at 447:4-25.  As already determined by the Court, the results from the malware analysis pipeline are a "downloadable security profile that includes a list of suspicious computer operations."  Dkt. 189 at 14.  These full results are stored in the ResultsDB, which is a custom database that Juniper built to be used in its Accused Products, and was built using components provided by Amazon.  Ex. 1, Trial Tr. at 449:5-25.

Finjan's infringement expert, Dr. Eric Cole, provided detailed testimony describing this analysis and storage process, including evidence describing how the "malware analysis pipeline" scans files using static and dynamic analysis to generate downloadable security profile data, and that this profile data is stored in the ResultsDB.  *Id.*, Trial Tr. at 390:2-394:11, 427:2-459:23.  Dr. Cole supported his opinions with overwhelming evidence, including citations to Juniper's own internal source code, internal confidential technical documents, marketing materials, and the testimony of its own engineers.  *Id.*, Trial Tr. at 390:2-394:11, 427:2-459:23; Dkt. 224 at 1.  In particular, Dr. Cole explained how numerous Juniper documents established that Juniper uses its ResultsDB as a database, as determined under the appropriate construction, to store generated Downloadable security profile data.  Ex. 1, Trial Tr. at 440:9-444:4; Ex. 2, Trial Ex. 78 at FINJAN-JN 0044763 (describing how "[w]hen a file is analyzed, a file hash is generated, and the results of the analysis are stored in a database."); Ex. 3, Trial Ex. 94 at JNPR-FNJN_29018_00963212 (figure showing described as the "Results DB Architecture" and showing the architecture of the ResultsDB developed by Juniper for the Accused Products) and at JNPR-FNJN_29018_00963213 (describing how Juniper built the ResultsDB because "[i]t is difficult to find one database that could satisfy may different storage needs in one shot, especially if needs are very different," "So we built a hybrid solution on top of AWS existing storages services."); Ex. 4, Trial Ex. 99 at 115 (showing how the ResultsDB source code at "███████████" describes retrieving the results of the scan from the ResultsDB through a

---

[1] All "Ex." Citations are to the Declaration of Kristopher Kastens ("Kastens Decl.") filed herewith.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

function that will "Get full object from the database"); Ex. 5, Trial Ex. 92 at JNPR-FNJN_29017_00553166 (showing how the ResultsDB is a database and that a user can "Verify that hash_lookup adapter results are stored in the results db") and at JNPR-FNJN_29017_00553178 (describing how the ResultsDB can be used to "Verify the Score inserted in Results Db is correct, which can be used by Verdict engine"); Ex. 4, Ex. 99 at 8 (describing how the ResultsDB source code at "▮▮▮▮▮▮▮▮▮▮▮▮" includes a function that will "return: All of the info from ResultsDB for all provided sample IDs as a nested dictionary.  The sha256 is the key. See resultsdb schema for full description of data included.").  As such, Finjan presented substantial, unrefuted evidence that the ResultsDB is a database that stores "downloadable security profile data" as required in the Claim 10 of the '494 Patent.

Furthermore, Dr. Cole presented overwhelming evidence that Juniper stores Downloadable security profile data in a "database" according to the adopted construction, including that this database is organized according to a "database schema." Ex. 1, Trial Tr. at 459:24-468:3.  Finjan presented this evidence through Dr. Cole and his supporting documents that included specific citations to the ResultsDB source code, which showed that the ResultsDB includes a "schema" for the information that is stored. *Id.,* Trial Tr. at 463:5-466:12; Ex. 4, Ex. 99 at 8 (describing how the ResultsDB source code at "▮▮▮▮▮▮▮▮▮▮▮▮" includes "return: All of the info from ResultsDB for all provided sample IDs as a nested dictionary.  The sha256 is the key. See resultsdb schema for full description of data included."); Ex. 6, Trial Ex. 399 at JNPR-FNJN_29032_00590607 (describing how the ResultDB has a schema because "[i]n Argon a schema is the format in which the results are stored in our database.  This helps us to index our results as well as fetch them with ease.")[2]; Ex. 7, Trial Ex. 65 at JNPR-FNJN_29030_00553972 (describing how the ResultsDB uses a "Schema validation in Argon"), JNPR-FNJN_29030_00553974 (further describing how the ResultsDB includes a "Schema Validation in ResultsDB," and describing how "[t]he format of the JSON data for records stored in the ResultsDB adhere to a strict schema."); Ex. 4, Trial Ex. 99 at 78 (describing how the ResultsDB source

---

[2] "Argon" is the code name for the Sky ATP service that includes the ResultsDB.  Ex. 1, Trial Tr. 437:20-438:2.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR       CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

1   code at "██████████████████████" describes an "██████████████████████" that is

2   used as the schema for the results stored in the ResultsDB); Ex. 99 at 297 (describing how the

3   ResultsDB source code at "████████████████████████" includes a function for creating a

4   table structure to store the results of scanning with the function "████████████████████

5   ████████████████████████"). As shown, the evidence establishes that the

6   ResultsDB has a "database schema."

7        As shown, Finjan presented overwhelming, unrefuted evidence establishing Juniper's

8   infringement of Claim 10 of the '494 Patent.

9        **B.      Juniper Failed to Rebut Finjan's Proof of Infringement.**

10       Juniper's expert, Dr. Rubin, failed to rebut Dr. Cole's testimony and supporting evidence, and

11  instead focused his arguments on unsupported or legally irrelevant points, including that the ResultsDB

12  does not really exist, that the ResultsDB cannot be a database because it is composed of three

13  subcomponents for storing the data, and that the schemas in the ResultsDB are not a "database

14  schema."

15       **1.      Dr. Rubin Did not Rebut Dr. Cole's Evidence that the ResultsDB Exists.**

16       Dr. Rubin denied that the ResultsDB was a component of the Accused Products, and instead

17  argued – without any supporting evidence – that Juniper's software engineers merely referred to a

18  "results database" or "ResultsDB" without actually referring to it as a database. Ex. 1, Trial Tr. at

19  758:23-759:17, 764:16-24, 771:17-772:11, 775:6-779:3. In support of its position, Juniper did not

20  present testimony from its employees or engineers, or any other *actual* evidence, to support this

21  argument, and instead relied on its attorneys and paid expert to make these bald assertions.[3] In

22  particular, Dr. Rubin did not present any evidence on which to base his opinion that Juniper's

23  engineers did not know what they meant when they referenced ResultsDB in their source code and

24  technical documents. *See id.*, Trial Tr. at 758:23-759:17, 764:16-24, 771:17-772:11, 775:6-779:3. Dr.

25  Rubin also ignored Dr. Cole's infringement allegations and identified no evidence rebutting the

---

[3] To allow Juniper's attorneys' arguments instead of Finjan's fact-based evidence would fly in the face of the Court's own admonitions to the jurors that they should ignore the attorneys' arguments and rely only on the facts presented in the case.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR          CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

numerous references in Juniper's source code and other internal documents referring to the ResultsDB as a database.

Dr. Rubin also makes the irrelevant argument that the ResultsDB is not a database because it is a combination of three storage components in the Accused Products, including a MySQL database, a DynamoDB database, and a S3 database. Ex. 1, Trial Tr. at 758:23-759:17, 764:16-24. However, even if this assertion was accepted as true, and the ResultsDB was considered to be nothing more than three separate storage components, Dr. Rubin's argument is of not moment since the agreed construction of "database" provides that a database is "a collection of interrelated data," and does not require or limit this data to being stored in a single location or storage solution. *Id.*, Trial Tr. at 759:3-6 (Dr. Rubin arguing that the ResultsDB is not a database "[b]ecause these are three separate storage solutions."). Instead, the agreed construction focuses of there being a "collection of data," regardless of whether it is stored in one storage component, three, or a hundred. In fact, Juniper did not dispute at trial that it stores a collection of data related to the results from the Accused Products scanning files in the malware analysis pipeline. *Id.*, Trial Tr. at 750:3-12 (Dr. Rubin testifying that "Sky ATP has a bunch of data to store and it stores it in three different storage solutions. One of them I've been talking about a little bit is Amazon's DynamoDB, and Amazon DynamoDB stores verdicts as wells as some of the results of the analysis engines that are run. Some of the results, however, cannot be stored in DynamoDB because Amazon recommends not storing anything greater than 400K in DynamoDB. And so then what happens is the results are stored in S3 ..."); *id.*, Trial Tr. at 753:22-754:2 (Dr. Rubin describing how the MySQL database includes information about the scanned files, and that "[o]ne example is a time stamp on the last time that a particular file was accessed, things like that."); *see also id.*, Trial Tr. at 757:10-25. As shown, Juniper does not dispute that the ResultsDB includes interrelated data for the files that are scanned by the Accused Products, including the results of the files being scanned, which meets the requirements of the agreed claim construction.

Dr. Rubin's analysis on whether the ResultsDB was a database was also prejudicial to Finjan as his interpretation was contrary to the law of claim, where "a" in a claim means "one or more." *TiVo, Inc. v. EchoStar Commc'ns Corp.,* 516 F.3d 1290, 1303 (Fed. Cir. 2008) ("As a general rule, the words

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR          CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

'a' or 'an' in a patent claim carry the meaning of 'one or more.'") (citation omitted); *WundaFormer, LLC v. Flex Studios, Inc.,* 680 F. App'x 925, 931 (Fed. Cir. 2017) (accord).  Here, this claim interpretation axiom requires the conclusion that even if the ResultsDB were a collection of three databases, this would be legally irrelevant, because the claim can still be met by "one or more" databases.

**2.    Dr. Rubin Did not Rebut Finjan's Evidence that the ResultsDB has a "Database Schema."**

Dr. Rubin also failed to rebut Finjan's substantial evidence that ResultsDB is a database organized according to a database schema.  In fact, Dr. Rubin acknowledged that ResultsDB included a schema, including a JSON schema, a key schema, and a MySQL database schema.  However, unable to refute this evidence, Dr. Rubin argued for improper and arbitrary distinctions that the admitted "schemas" were not sufficient by relying on a single third-party document to allege it was actually a "schema-less" database, and by applying an improper claim construction.

Dr. Rubin's understanding of "database schema" is improper because it adds unnecessary limitations that are inconsistent with how the PTAB applied "database schema," and found  a database schema to be a defined organizational structure.  Ex. 8, Trial Ex. 122 at 41.  The PTAB made this determination using the same standard as applied by district courts.  *Id.* at 7 ("we construe claims of an expired patent according to the standard applied by the district courts.").  In particular, the PTAB found that "[t]hose data are organized according to a database schema, namely, the comma-delimited format '*<code segment, RecType, StartTime, EndTime, function number, arg (...), ret (...)>*' analogous to the UNIX password database */etc/passwd* cited by Petitioner, having the colon-delimited record schema '*name:passwd:uid:gid:info:home:shell*.'"  *Id.* at 41.  The PTAB found that this comma delimited file format for the storage of records was sufficient to be a "database schema."  Dr. Rubin did not apply this plain and ordinary meaning of "database schema," but applied a much narrow interpretation.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

a)      **Dr. Rubin admitted there was a schema used in the ResultsDB.**

Dr. Rubin admitted that a "schema" was used in the ResultsDB in the form of a schema for the JSON schema, Key schema, and MySQL database schema, but argued that these were not sufficient to be a "database schema" under the agreed language. Ex. 1, Trial Tr. at 765:24-766:13, 783:7-25. Under the correct interpretation of "database schema," the only reasonably conclusion that could have been reached is that Juniper infringed Claim 10 of the '494 Patent. Dr. Rubin provided no basis for this distinction, and presented no evidence for why this distinction should be made. Therefore, it was insufficient to rebut Finjan's overwhelming evidence of infringement.

First, Dr. Rubin argued that the JSON schema used in the ResultsDB was only a "file schema," and was not a database schema. *Id.*, Trial Tr. at 765:24-766:13, 783:7-25. However, Dr. Rubin provided no basis to support this distinction, as Juniper's documents establish that the JSON schema was enforced on the collection of data in the ResultsDB and that this schema is required by the ResultDB. *Id.*, Trial Tr. at 765:20-766:13, 784:11-15; Ex. 7, Trial Ex. 65 at JNPR-FNJN_29030_00553972 (describing how the ResultsDB uses a "Schema validation in Argon") and at JNPR-FNJN_29030_00553974 (further describing how the ResultsDB includes a "Schema Validation in ResultsDB," and describing how "[t]he format of the JSON data for records stored in the ResultsDB adhere to a strict schema."). As such, Juniper was unable to rebut the weight of evidence establishing that the results stored in the ResultsDB were all stored and organized according to the JSON schema.

Similarly, Dr. Rubin has no basis for his argument that the Key schema used in the ResultsDB was insufficient, as this schema was explicitly used to organize the ResultsDB so that the Accused Products could manage and retrieve data inside of the ResultsDB database. Ex. 1, Trial Tr. at 747:11-749:17, 786:10-787:24; Ex. 4, Trial Ex. 99 at 8 (describing how the ResultsDB source code at "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" includes a function that will "return: All of the info from ResultsDB for all provided sample IDs as a nested dictionary. The sha256 is the key. See resultsdb schema for full description of data included."). Therefore, it is a "database schema," as it is a schema used by the database to organize and manage the internal data.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR      CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

Finally, Dr. Rubin admitted that the MySQL database in the ResultsDB meets every requirement of the agreed construction of "database," including that it has as database schema.  Ex. 1, Trial Tr. at 753:16-21 ("So MySQL is a database with a schema.  It's in the Sky ATP product.").  Instead of rebutting the admitted presence of a database schema in the MySQL database, Dr. Rubin instead argued that the MySQL database was not actually part of the ResultsDB.  *Id.*, Trial Tr. at 753:22-754:2.  However, and as discussed above, Dr. Rubin's arguments are unsupported by the factual record and every internal Juniper document produced in this case, which establish beyond a doubt the existence of the ResultsDB.  Dr. Rubin instead relies only by on his own unsupported conclusions.

        **b)**       **Dr. Rubin's alleged "distinctions" were unsupported and legally irrelevant.**

Dr. Rubin argued that the ResultsDB did not meet the agreed construction by drawing a distinction between what he called a "schema database" and what he called a "schema-less database."  Ex. 1, Trial Tr. at 744:22-745:24 ("Now, there's another class of databases called schema-less databases.").  As described above, Dr. Rubin admitted that the Accused Products store lists of suspicious operations on a table in a database called DynamoDB, but argued that the DynamoDB does not qualify as a database under the claim language because it does not have a "schema."  *Id.*, Trial Tr. at 757:22-758:4 ("So this is a schema-less database and even though it's a schema-less database, it has tables. Tables are a construct in databases that allow you to store multiple different types of things in different tables.  And so the table -- one of the tables after the analysis engine runs, those results that are produced are put into that table.  When a verdict is calculated, that verdict goes into a different table. Neither one of those tables has a schema.").  Dr. Rubin did not cite a single document for his ad hoc definition of a database "schema" and referred only to one non-technical document found in the answers to FAQs on a single webpage published by Amazon for his position that DynamoDB is "schema-less" and his definition of what "schema-less" means.  Dr. Rubin then ignored that Juniper's own internal documents showed that a strict schema is enforced on the collection of database in the ResultsDB.  Ex. 7, Trial Ex. 65 at JNPR-FNJN_29030_00553974.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR      CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

Dr. Rubin also stated that information related to the results from the malware analysis pipeline was stored in more than one table used in the ResultsDB.  Ex. 1, Trial Tr. at 738:17-739:4, 757:20-758:4.  However, Dr. Rubin failed to tie this point and any legally relevant argument for why the claims are not met because more than one table is used within the ResultsDB to store data.

For the foregoing reasons, Finjan is entitled to JMOL that the Accused Products literally infringe Claim 10.

### c)      Dr. Rubin applied the wrong claim construction.

Finjan is also entitled to JMOL because Juniper's expert argued an improper claim construction, thereby causing confusion by the jury and resulting in the jury returning a verdict that was inconsistent with the controlling claim construction.  JMOL is required because "it is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'"  *Cordis Corp. v. Boston Sci. Corp*., 561 F.3d 1319, 1337 (Fed. Cir. 2009) (holding the District Court properly refused to allow an expert to opine on claim construction to the jury).  As a result, the court may grant a JMOL where the jury returns a verdict that is clearly inconsistent with the Court's claim construction for a term.  *Moba, B.V. v. Diamond Automation, Inc*., 325 F.3d 1306, 1315–16 (Fed. Cir. 2003) (reversing district court's denial of patentee's motion for JMOL of infringement where the jury had returned a noninfringement verdict that was inconsistent with the district court's construction, because the district court erroneously allowed the jury to post facto import a limitation into the claim).  Here, no reasonable jury could have found that the Accused Products do not store Downloadable security profile data in a "database" under the Court's adopted construction of the term.

Dr. Rubin improperly argued claim construction to the jury and also based his opinion on an improper claim construction.  First, Dr. Rubin admitted during his direct testimony that a "schema" is nothing more than "[t]he word 'schema' just has to do with having rules for how you put things together."  Ex. 1, Trial Tr. at 763:24-764:1.  Despite this, Dr. Rubin testified at length as to a new and extremely specific construction of "database schema," which does not appear in the claim language and which the Court did not adopt.  *Id.*, Trial Tr. at 741:4-760:12, 763:13-770:22.  For example, Dr.

Rubin testified: "So a database schema is a very specific thing. . . If you're going to have a schema in a database, you have to figure out what all those fields are in advance… That's a very strict structure for that database… In a database with a schema you can create a query exactly like the one I just described and immediately it will spit out all the students that meet that.  That's very powerful. Okay? And that is why you have a schema in a database." *Id.*, Trial Tr. at 742:3-743:4.  Additionally, Dr. Rubin improperly argued that a "database schema," as used in the agreed construction of "database," should be further construed as a "a description of a database to a database management system (DBMS) in the language provided by the DBMS." *See id.*, Trial Tr. at 769:2-25.  First, it was improper for Juniper to be arguing claim construction of "database" to the jury, particularly when it had already agreed to a construction of the term.  *Cordis*, 561 F.3d at 1337 (holding the District Court properly refused to allow an expert to opine on claim construction to the jury); *CytoLogix*, 424 F.3d at 1172–73 (accord).  Further, Juniper had already agreed to the proper construction of "database," did not identify this interpretation of "database schema" as required in its agreed construction, and therefore, waived the ability to raise this as a specific requirement from the claim construction.  *See, e.g., Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.,* 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that [defendants] waived any argument with respect to this term by failing to raise it during the claim construction phase. We agree.").  This was particularly prejudicial to Finjan, as Dr. Rubin impermissibly argued a construction mentioned in an *Inter Partes* Review ("IPR"), but which was not relied on by the PTAB, and which could not be applied here because it was not part of the agreed construction.  Despite this, Dr. Rubin improperly argued this new claim construction to the jury, even though it was not included in the agreed claim construction.

As such, Finjan is entitled to JMOL based on Juniper's improper claim construction arguments for "database" and "database schema."

## III.    ALTERNATIVELY, FINJAN REQUESTS A NEW TRIAL UNDER RULE 59

In the alternative to its request for JMOL, Finjan requests a new trial under Fed. R. Civ. Proc. 59 for all of the issues described above regarding infringement.  Finjan also requests a new trial based on Juniper's improper conduct at trial, including that: (1) it was an error not to instruct the jury on the

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR          CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

construction of "database schema"; (2) Juniper's counsel prejudiced the jury against Finjan by presenting irrelevant evidence comparing Claim 1 of the '494 Patent to Claim 10; and (3) Juniper intentionally and detrimentally withheld information regarding its revenues for the accused products and misrepresented the actual revenues to suppress its potential damages exposure.  Finjan also respectfully requests a new trial due to errors of law made at trial regarding Finjan's request for a reasonable royalty, including: (1) the determination that a reasonable royalty cannot exceed revenues, and (2) the determination that Finjan's reasonable royalty exceeded revenues in this case because Juniper gives SkyATP away for free.

A Court may institute a new trial under these circumstances in order to prevent a miscarriage of justice, and "[u]nlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  The facts of this case weigh in favor of a new trial because a new trial is granted when the jury's verdict is against the clear weight of the evidence (*see 800 Adept, Inc. v. Murex Securities, Ltd*., 539 F.3d 1354, 1369 (Fed. Cir. 2008)) or when counsel engages in conduct unfair to the opposing party (*see Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co*., 308 F.3d 1167, 1183–84 (Fed. Cir. 2002)).

### A.   The Court Allowing Should Grant a New Trial to Prevent a Miscarriage of Justice Regarding the Construction "Database Schema."

Juniper's non-infringement position was based on the premise that the ResultsDB does not have a "database schema."  As described above, Juniper adopted an overly restrictive definition of "database schema," and was not adopted by the PTAB.  As such, Juniper's non-infringement argument centering on another, more restrictive construction, resulted in a miscarriage of justice.  As such, a new trial should be granted, one where jury is not prejudiced based on improper claim construction arguments.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

CASE NO. 17-cv-05659-WHA

**B.**      **Juniper Improperly Presented Evidence of Claim 1 to the Jury.**

Juniper's counsel improperly presented evidence at trial that Claim 1 of the '494 Patent was found invalid under 35 U.S.C. § 102, which is irrelevant and prejudiced the jury against Claim 10 and Finjan.  Juniper began Dr. Rubin's substantive testimony by directly comparing Claim 1 to Claim 10. Ex. 1, Trial Tr. at 719:1-4 ("All of the elements of Claim 1 were known in the art. And this claim was found to be invalid.").  Juniper also showed the jury a slide comparing Claim 1 to Claim 10, which Dr. Rubin testified about extensively, and argued that Claim 10 of the '494 Patent was known because the PTAB found that Claim 1 of the '494 Patent to be invalid under 35 U.S.C. § 102.  *Id.*, Trial Tr. at 718:24-722:15.  But, this testimony was irrelevant to whether the Accused Products infringe Claim 10, and also as to whether Claim 10 is patentable under 35 U.S.C. § 101.  In particular, whether a claim is "novel" under 35 U.S.C. § 102 or § 103, is a different standard from whether the claim was "well-understood, routine, and conventional," and therefore unpatentable under 35 U.S.C. § 101.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("Whether a particular technology is well-understood, routine, and conventional ***goes beyond what was simply known in the prior art.*** The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.") (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (same); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[I]t is of course now standard for a § 101 inquiry to consider whether various claim elements simply recite 'well-understood, routine, conventional activit[ies].'" (second alteration in original) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2359 (2014)).  Juniper's improper comparison between Claim 1 of the '494 Patent, and Claim 10, prejudiced the jury against Finjan, and led them to believe that the claim may be invalid, which was not an issue to be decided by the jury.  Further, this testimony confused and prejudiced the jury against Claim 10 because the jury had no understanding that Claim 1 was found anticipated under a separate statute (35 U.S.C. § 102) or that the PTAB's decision on Claim 1 is still on appeal.

1     As such, Juniper's argument was unfair to Finjan because it created a false impression in the

2 minds of the jury.

3           **C.       Juniper Withheld and Misrepresented Damages for the Accused Products**

4     Finjan should also be granted a new trial because Juniper and its counsel withheld and

5 misrepresented critical sales and use information, such that veracity of Juniper's representations were

6 tainted and hindered Finjan's ability to test this belated information.  The Court represented that this

7 type of misconduct would be a basis for a new trial.  Ex. 1, Trial Tr. 13:21-15:5, *specifically*, Trial Tr.

8 at 14:10-13 ("And if it turns out you can demonstrate to me that in a material way Irell & Manella –

9 that's your firm; right? – that your firm misled me, that could be grounds for a new trial.").

10    First, Juniper misrepresented to the Court that certain spreadsheets of revenue information were

11 only minor updates to previously produced information and that only a single column of new

12 information was added to the updated spreadsheet.  Juniper produced an excel spreadsheet in April

13 2018 consisting of 2,000 pages that had roughly 32,000 rows of financial data for the 2016-2017 time

14 period and purported to show revenues from the Accused Products, but which Finjan later learned were

15 incomplete and misleading.  Ex. 9, Pretrial Hearing Tr. at 53-54.  Then, two days before Finjan's

16 expert reports were due in September of 2018, Juniper produced a new "update" to this revenues

17 spreadsheet, which now had 17,000 pages and over 92,000 rows of financial data.  Despite having this

18 spreadsheet in July, Juniper inexplicably withheld that new spreadsheet from Finjan for two months.

19 *See id.; see also* Ex. 10, Gupta Dec. 7, 2018 Tr. at 83:4-21 (stating the new spreadsheet was created in

20 or before July 2018).  Instead, Juniper produced the material to Finjan only two business days before

21 Finjan's damages expert report was due.  Ex. 9, Pretrial Hearing Tr. at 53-54.  This late production of

22 this information greatly prejudiced Finjan in preparing its report, as its damages expert was unable to

23 reasonably incorporate this new information into his expert report.  *See, e.g.*, Dkt. No. 125-8,

24 Nagarajan Decl. at ¶ 6 (claiming Juniper does not maintain historical data on free service).  Juniper

25 represented that it simply did not keep such information, such that Finjan had no way to know that

26 Juniper was changing its position, and had suddenly created an extensive spreadsheet allegedly

27 identifying information that Juniper claimed it did not keep throughout discovery.  *See* Ex. 16,

28

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR       CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

(Juniper's Second Supplemental Response to Finjan's Interrogatory No. 4, responding repeatedly since March 2018 that Juniper did not keep information on free services, then suddenly identifying the new 17,000-page spreadsheet on September 7, 2018 by bates number only, with no explanation that it contained new information). Then, at the pretrial conference in December, Juniper misrepresented to the Court that the new spreadsheet added only one column for Customer information to the sheet it originally produced in April, stating it "simply added customer names to a spreadsheet that [Juniper] had already produced." Ex. 9, Pretrial Hearing Tr. at 53-54. But in reality the new 17,000 page spreadsheet contained 60,000 new rows and six new columns of information over the April 2018 spreadsheet. *See* Ex. 10, Gupta Dec. 7, 2018 Tr. at 87:23-91:13; 91:16-23.

The addition of 60,000 rows without explanation in an excel spreadsheet raises questions about the veracity of the data that Juniper produced and tainted the representations that Juniper made regarding the accused products, sales and extent of use related to infringement, particularly when Juniper used this belated data and self-serving modifications and declarations to drastically reduce the alleged revenue base. In addition to the 60,000 additional rows of data, which corresponds to additional sales for the accused products, the excel spreadsheet added customer information that was previously never provided and which Juniper "needed" to reduce the revenue base due to a new claim that a customer that purchased multiple SRX devices could only use one of those devices with an activated or purchased version of Sky ATP. *See id.* at 87:7-22. That this new data was produced after fact discovery and that Juniper then used this data to sandbag Finjan during expert reports and right before trial was highly prejudicial. Further compounding the prejudice to Finjan, at the Court-ordered deposition specifically regarding the new spreadsheet, the deponent claimed no knowledge of how the spreadsheet was created or why these changes were made over the April 2018 spreadsheet. *See id.* at 92:6-94:17, 100:9-19. This was particularly egregious, as this was Finjan's only chance to determine the providence of the spreadsheet, and if it actually represented what Juniper purported. As a sanction for its misconduct, Juniper should have been precluded from relying on this newly produced data and information and at the very least warrants a new trial.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR       CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

Second, Juniper also misrepresented to the Court the revenue associated with SRX and Sky ATP, and its expert artificially suppressed its revenue base in order to minimize Juniper's damages exposure in at least three ways by not including (1) SRX devices or free Sky ATP enrollments from 2015, (2) SRX devices capable of enrollment of free or premium versions of Sky ATP, and (3) instances where a customer purchased multiple SRX devices and enrolled in free or premium Sky ATP.  For example, Juniper's damages figures improperly excluded revenues from SRX devices that Juniper admits it shipped and integrated with Sky ATP, on the basis that the customer who purchased those SRX devices had not enrolled Sky ATP during the time period of January 1, 2016 until January 29, 2017 (the damages period began in December of 2015).  Ex. 11, Ugone Report, ¶ 45, n.121.  But customers who purchase SRX devices do not have to enroll it for Sky ATP right away, and Juniper promotes Sky ATP in its marketing materials as being integrated with SRX, so Finjan should have been able to include all revenues from SRX, whether or not the customer enrolled in SkyATP right away.  Second, Juniper's damages figures improperly excluded revenues from the same customer who purchased multiple SRXs but only received one free Sky ATP enrollment.  For example, Exhibit 5 to Ms. Gupta's deposition shows that one customer purchased 200 SRX devices for a total amount of ▓▓▓▓▓ but Juniper's expert counted only the price of *one* of these devices (for just ▓▓▓ toward its revenue base.  *See* Ex. 10, Dec. 7, 2018, Gupta Tr. at 25:22-28:24 (confirming 200 devices shipped to a single customer, but Juniper used a "flag" column containing a "1 or a minus 1" to count revenue for only one of those 200 devices).  At trial, Finjan played the deposition of Ms. Gupta confirming that the revenues associated with SkyATP according to Juniper's financial documents were far more than $1.8 million.  *Id.* at 51:11-53:08 (confirming revenues of $7.2 million); *id.*, at 69:04-71:22 (confirming revenues of $15.9 million).  This is contrary to Juniper's sworn testimony and public documentation because Juniper's principal software engineer testified, and Juniper's marketing documents show, that all SRX devices work with Sky ATP.  Ex. 12, Manthena Tr. at 11:7-12:12; Ex. 13, Trial Ex. 74 at FINJAN-JN 005382 (describing that Sky ATP is "[i]ntegrated with SRX series device to simplify deployment and enhance the anti-threat capabilities of the firewall.").

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

1   Juniper also prejudiced Finjan throughout the case by reporting conflicting numbers regarding

2   the number of "free" Sky ATP enrollments, which obscured the true value of Sky ATP to Juniper's

3   business and other product lines.  For example, Juniper submitted a declaration in June 2018 stating,

4   that while Juniper does not maintain customer information, "█████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████  between 2016 and

8   the first quarter of 2017.  *See* Dkt. 125-8, Nagarajan Decl. at ¶¶ 3, 6.  But on the eve of trial, Juniper's

9   employee calculated the number of SRX devices for which a free Sky ATP license had been enabled,

10  which purportedly showed that Juniper's customers had only activated 120 free licenses between 2016

11  and January 2017.  *See* Dkt. 228-6, Nov. 12, 2018 Icasiano Decl. at ¶ 4 (in support of Juniper's

12  *Daubert* Motion).  Once again, despite admitting that this new information was created in July, Juniper

13  waited until the eve of trial, almost four months after creation, to disclose this supposed critical

14  information.  Ex. 14, Icasiano Tr. at 61:22-63:4 (confirming request occurred in September).

15      Juniper's bait and switch practice throughout this case, including first identifying purported

16  revenue and then adding 60,000 rows of new data without explanation on why that financial

17  information wasn't provided in the first place and adding self-serving customer information, then

18  submitting conflicting sworn declarations regarding the extent of free Sky ATP versions enrolled in the

19  United States taints any representations that the extent of use and sales information for the accused

20  products and prejudiced Finjan's ability to prepare its case.  As a result, Finjan seeks a new trial and

21  the right to present its damages theories based on Juniper's actual revenues for the accused products.

22      **D.   The Court Erred by Ruling that A Reasonable Royalty Cannot Exceed Revenues**
23      **and Also That Finjan's Reasonable Royalty Request Exceeded Juniper's**
        **Revenues.**

24      A new trial is warranted because the Court's ruling that a reasonable royalty cannot exceed

25  revenues during trial goes against precedent.  The Court's ruling that Finjan's proposed reasonable

26  royalty exceeded revenues because Juniper gives Sky ATP away for free was in error because it does

27  not take into account Juniper's infringement through use of the infringing products.

28

19

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR       CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

It is black letter law that a reasonable royalty may exceed actual revenues. *See Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1346 (Fed. Cir. 2013) (finding district court committed clear error by "limiting the ongoing royalty rate based on [defendant's] profit margin."); *Monsanto Co. v. Ralph,* 382 F.3d 1374, 1384 (Fed. Cir. 2004) ("the law does not require that an infringer be permitted to make a profit"). This is because revenues and profits do not always capture the value of the infringing technology at issue, particularly where an infringer does not charge for its use and sale. Here, Juniper gave the infringing technology away for free because it had significant other non-monetary value to Juniper, including to the rest of its business. *See* Dkt. 230 at 3 (showing Juniper offers both paid "premium" and free versions of Sky ATP); *see also* Dkt. 230-2 at 1 (showing Juniper devotes an entire engineering team to the operation of Sky ATP). Thus, revenues and profits do not capture the full scope of infringement and economic footprint tied to Juniper's infringement of Claim 10. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,* 807 F.3d 1283, 1304 (Fed. Cir. 2015) (the "key inquiry" in a reasonable royalty analysis includes consideration of "benefits [Juniper] would expect to receive from using the technology"). Here, the Court repeatedly capped Finjan's proposed reasonable royalty to no more than the $1.8 million revenue base that Juniper identified, which as discussed above was not accurate and grossly misrepresented. *See, e.g.,* Dkt. 283 (Daubert Order) at 4; Ex. 15, Daubert Hearing Tr. at 7-9; Ex. 9, Pretrial Hearing Tr. at 16; Ex. 1, Trial Tr. at 837:17-24. The Court erred in capping Finjan's proposed royalty, and Finjan should be granted a new trial to present a request for reasonable royalty that exceeds Juniper's claimed $1.8 million in revenues.

Separately, the Court's ruling that Finjan's reasonable royalty should be limited to a portion of the purported $1.8 million revenue base was in error because this is not Juniper's actual revenue base for the Accused Products. Juniper admitted that the code for using Sky ATP is installed on every SRX sold, and that no license is required to use the free version of Sky ATP. Dkt. 230 at 3. Juniper also admitted that it gives Sky ATP away for free and that no separate license was required to use the service. *Id.* Under the law, every SRX is properly included in the relevant revenue base. *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1205 (Fed. Cir. 2010)(devices were properly found to infringe where the existing code already present in the underlying software was capable of infringing,

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR      CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

irrespective of whether users needed to activate those infringing functions); *Versata Software, Inc. v. SAP Am., Inc.,* 717 F.3d 1255, 1262–63 (Fed. Cir. 2013)(An accused product may be found to infringe if it is reasonably capable of meeting the claim limitation by "activat[ing] functions already present in the software…"); *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1217 (Fed. Cir. 2014)(A device may be properly found to infringe when there's "evidence that the accused device is actually used in an infringing manner and can be so used without significant alterations.").

## IV.   REQUEST FOR A FINAL ORDER AND FOR CERTIFICATION FOR IMMEDIATE INTERLOCUTORY APPEAL, AND TO STAY THE CASE

Should the Court deny Finjan's request for a JMOL or a new trial, Finjan respectfully requests that the Court certify its orders (1) denying Finjan's motion for new trial on infringement, (2) granting Juniper's Rule 50 motion of no damages, and (3) granting Juniper's Motion for Summary Judgment of No Infringement for the '780 Patent for interlocutory appeal under 28 U.S.C. § 1292(b) and § 1292(c). In that event, the Court's orders on these three issues are final orders and separately also satisfy the three requirements of § 1292(b) because (1) the Order "involves a controlling question of law"; (2) there is, at minimum, "substantial ground for difference of opinion" as to the correct resolution of that question; and (3) an "immediate appeal" can "materially advance the ultimate termination of the litigation." *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011) (quoting 28 U.S.C. § 1292(b)).  This appeal is appropriate given the Court's early summary judgment schedule, where a trial and finding were found already.  Furthermore, it would be appropriate that the Court certify its order finding no infringement for the '780 Patent, as this would preserve judicial resources to allow issues related to the '780 Patent to be simultaneously appealed.  Crucially, certifying these issues for immediate interlocutory appeal is consistent with the Court's goal of achieving judicial economy for resolving the case.

In that same spirit, Finjan submits and requests that the second "shootout" and the remainder of the case should be stayed pending this appeal, as its results may greatly affect the scope of the remaining case.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR       CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

### A.     A Controlling Question of Law is at Issue.

A controlling question of law, for § 1292(b) purposes, is "one where 'resolution of the issue on appeal could materially affect the outcome of the litigation in the district court.'"  In the Ninth Circuit, a "controlling question of law" is one where "resolution of the issue on appeal could materially affect the outcome of litigation in the district court."  *In re Wilson*, No. BR 13-11374 AJ, 2014 WL 122074, at *2 (N.D. Cal. Jan. 10, 2014) (quoting *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347 (9th Cir. 1988)); *see also In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981), cause dismissed sub nom. *Arizona v. U.S. Dist. Court for the Dist. of Arizona*, 459 U.S. 961 (1982), and aff'd sub nom. *Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983) ("[A]ll that must be shown in order for a question to be "controlling" is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").  Resolving this question would control the resolution of this case because if a new trial on infringement is warranted and the damages order reversed, these issues would need to be tried again before a jury.

### B.     Substantial Grounds for a Difference of Opinion Exists.

Substantial grounds for a difference of opinion exist when "substantial doubt exists as to whether the district court's order was correct."  *Fed. Deposit Ins. Corp. v. Jackson-Shaw Partners No. 46, Ltd.*, No. 92-20556 SW, 1995 WL 594866, at *2 (N.D. Cal. Oct. 4, 1995).  Although a party's "strong disagreement" with the Court's ruling is not sufficient, such doubt can arise from, e.g., when "the circuits are in dispute on the question and the court of appeals has not spoken on the point" or when "novel and difficult questions are being presented."  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).

Here, if the Court declines to reconsider its ruling with respect to damages, there would be a conflict with precedent from the Federal Circuit and the Supreme Court.  *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("Because no less than a reasonable royalty is required, the fact finder must determine what royalty is supported by the record.") (citations omitted); *see also Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003) ("The statute is unequivocal that

22

the district court must award damages in an amount no less than a reasonable royalty" when

infringement is found.) (citations omitted).  In addition, the issues that were presented to the jury

regarding claim construction and comparing Claim 1 with Claim 10 were inappropriate and influenced

the jury's determination of infringement.  *See Apple, Inc. v. Samsung Elecs. Co*., No. 12-cv-00630-

LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014) ("Arguing claim construction to the jury is

inappropriate because it risks confusion and the likelihood that a jury will render a verdict not

supported by substantial evidence.") (citing *CytoLogix*, 424 F.3d at 1173).  While interlocutory appeal

is not routine, the circumstances of this case fall squarely under the rationale for providing relief under

§ 1292(b).  Given the other patents in this case and the Court's procedures regarding selection of

individual claims/patents for "shootout" trials, the Federal Circuit's guidance on these issues would be

highly relevant to both this case and to patent law generally, warranting immediate appeal.

### C. An Order for Immediate Interlocutory Appeal Could Materially Speed Up the Termination of the Litigation.

Certifying an order for immediate appeal materially advances the case when it is "likely to

materially speed the termination of the litigation."  *Banneck v. Fed. Nat'l Mortg. Ass'n*, No. 17-CV-

04657-WHO, 2018 WL 5603632, at *3 (N.D. Cal. Oct. 29, 2018) (citing *Ambrosio v. Cogent

Commc'ns, Inc*., No. 14-cv-02182-RS, 2016 WL 777775, at *3 (N.D. Cal. Feb. 29, 2016)).  "[A]n

interlocutory appeal materially advances the termination of the litigation where it 'promises to advance

the time for trial or to shorten the time required for trial.'"  *Banneck*, 2018 WL 5603632, at *3 (citing

*Dukes v. Wal-Mart Stores, Inc*., No. 01-cv-02252 CRB, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10,

2012)).  It is not necessary that the interlocutory appeal have a final, dispositive effect on the litigation,

rather, it is sufficient that it advances the litigation, e.g., by eliminating issues before the court.  *See

Reese*, 643 F.3d at 688 (declining to vacate the order granting an interlocutory appeal that could

materially advance the case by eliminating a party and claims against other defendants).

Here, there is strong reason to conclude that an immediate appeal would ultimately advance the

resolution of several other issues in this litigation, which would undoubtedly speed the termination of

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

this litigation.  For these reasons, Finjan submits that its alternative request for certification for

interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate.

> **D.     The Judgment of No Infringement of the '780 Patent Is Properly Subject to Simultaneous Appeal**

Finjan also requests that the Court certify the finding of no infringement for the '780 Patent, so

that issues related to this patent can be addressed simultaneously by the Federal Circuit.  *Reese*, 643

F.3d at 687–88.  In particular, in finding no infringement of Claim 1 of the '780 Patent, this Court

adopted a claim construction that was at odds with the construction applied by another Court in this

district.  *See Finjan, Inc. v. Blue Coat Systems, Inc.,* No. 13-cv-03999-BLF, 2014 WL 5361976, at *2

(N.D. Cal. Oct. 20, 2014); *see also Finjan, Inc. v. ESET, LLC,* No. 17-cv-00183-CAB-(BGS), 2017

WL 5501338, at *2 (S.D. Cal. Nov. 14, 2017).  Therefore, the issues raised with respect to the '780

Patent should be certified for immediate appeal.

## V.     THE CASE SHOULD BE STAYED IN ITS ENTIRETY PENDING NEW TRIAL OR APPEAL

The Court can stay the proceedings pending a new trial or appeal as part of its inherent power

"to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *Zyme Solutions, Inc. v. InfoNow Corp.*, No. C 13–04082 WHA, 2013 WL

6699997, at *4 (N.D. Cal. Dec. 19, 2013) (quoting *Landis v. North Am. Co.,* 299 U.S. 248, 254

(1936)).  Courts should consider the competing interests, which include: the possible damage which

may result from the granting of a stay, the hardship or inequity which a party may suffer in being

required to go forward, and the orderly course of justice measured in terms of the simplifying or

complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Zyme Solutions*, 2013 WL 6699997, at *4.

Here, the Court ordered one shootout procedure that has largely concluded and another to begin

this month.  Dkt. 219 (ordering new shootout to begin January 24, 2019).  Should a new trial be

granted, then the first shootout procedure has not been completed, and a stay related to starting the

second shootout procedure should be granted.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR      CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

Furthermore, if a new trial is not granted but the Court certifies the results for appeal, the case should be stayed as well.  There are still seven patents left in this case.  The interlocutory appeal concerning the issues in the first shootout procedure will greatly affect the imminent shootout and the rest of this case.  These issues include infringement of Claim 10 of the '494 Patent and Claim 1 of the '780 Patent, Juniper's improper conduct and gamesmanship at trial regarding damages and claim construction, and Finjan's damages theories, all of which concern the same Accused Products, parties, and revenues that will be at issue in the upcoming shootout and later for the remainder of the case.  Considering these facts in light of the *Landis* factors weighs in favor of granting a stay in this case.  There will be no damage or hardship to either party if a stay is implemented, but there may be a considerable waste of judicial and party resources if the parties are forced to re-litigate issues, such as damages figures and theories, that are on appeal through multiple shootout trials.  And the outcome of this appeal will considerably narrow the issues, proof, and questions of law in this case.  For these reasons, and to preserve judicial and party resources, the Court should stay the remainder of this case pending the outcome of Finjan's interlocutory appeals.

## VI.    CONCLUSION

For all of the foregoing reasons, Finjan respectfully requests JMOL, or a new trial in the alternative, on the issues of infringement of Claim 10 of the '494 Patent and Juniper's improper presentation of claim construction argument to the jury, Juniper's improper presentation of evidence of Claim 1 to the jury, and Juniper's wrongful withholding and misrepresentation of revenue information.  Finally, to the extent JMOL or a new trial are not granted, Finjan requests the Court certify a final order providing Finjan the ability to immediately appeal the determination.

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR      CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL

1

Respectfully submitted,

2

Dated:  January 10, 2019

By: */s/ Lisa Kobialka*

3

Paul J. Andre (SBN 196585)
Lisa Kobialka (SBN 191404)

4

James Hannah (SBN 237978)
Kristopher Kastens (SBN 254797)

5

KRAMER LEVIN NAFTALIS
 & FRANKEL LLP

6

990 Marsh Road

7

Menlo Park, CA  94025
Telephone:  (650) 752-1700

8

Facsimile:   (650) 752-1800
pandre@kramerlevin.com

9

lkobialka@kramerlevin.com
jhannah@kramerlevin.com

10

kkastens@kramerlevin.com

11

*Attorneys for Plaintiff*
FINJAN, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINJAN'S RENEWED MOTION FOR JMOL, NEW TRIAL, OR        CASE NO. 17-cv-05659-WHA
ALTERNATIVELY, CERTIFICATION FOR IMMEDIATE APPEAL