PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>    Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT JUNIPER NETWORKS INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Date:   February 14, 2019<br>Time:   8:00 a.m.<br>Judge:  Hon. William Alsup<br>Courtroom: 12, 19th Floor |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ......................................................................................................... 1

    A.    Juniper Did Not Present A Proper Post Trial Motion Under Rule 50 of the Federal Rules of Civil Procedure ................................................................... 1

    B.    Finjan Presented Substantial Evidence of Actual Notice ................................... 3

        1.    Finjan Provided Notice of the '494 Patent And That Juniper Infringed It. ............... 5

        2.    Finjan Identified Juniper's Products That Needed A License ................... 6

        3.    Actual Notice Does Not Need to be a Writing. .......................................... 9

        4.    Juniper Failed to Rebut Finjan's Evidence of Actual Notice. ................. 11

    C.    Finjan Presented Substantial Evidence of Constructive Notice ........................... 12

        1.    Juniper Failed to Rebut Finjan's Evidence of Constructive Notice. ....................... 13

        2.    Juniper's Interpretation That The *Artic Cat* Notice During Discovery Discharges Its Burden of Production At Trial Turns the Decision on Its Head. ........................................................................................................ 16

III.  CONCLUSION ........................................................................................................ 17

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accuscan, Inc. v. Xerox Corp.*,
No. 96 CIV. 2579 (HB), 1998 WL 60991 (S.D.N.Y. Feb. 11, 1998)...............................16

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994)..................................................................................5

*Arctic Cat, Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)......................................................................14, 17

*Blitzsafe Texas, LLC v. Honda Motor Co., Ltd., et al.*,
Case No. 2:15-cv-01274-JRG-RSP, Dkt. No. 403 (E.D. Tex. January 26, 2017)...........16

*E.E.O.C. v. Go Daddy Software, Inc.*,
581 F.3d (9th Cir. 2009) ...........................................................................................3

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010)................................................................................8

*G.P.P., Inc. v. Guardian Prot. Prods., Inc.*,
No. 1:15-CV-00321-SKO, 2018 WL 347783 (E.D. Cal. Jan. 10, 2018)..........................2

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 2:14–CV–33–JRG, 2016 WL 7650735 (E.D. Tex. Sept. 29, 2016) ..........................2

*Lyon Dev. Co. v. Bus. Men's Assur. Co. of Am.*,
76 F.3d 1118 (10th Cir. 1996) ...................................................................................1

*Madrigal v. Allstate Indem. Co.*,
No. CV 14–4242 SS, 2015 WL 12748272 (C.D. Cal. Dec. 7, 2015) ...............................2

*Maxwell v. J. Baker, Inc.*,
86 F.3d 1098 (Fed. Cir. 1996).....................................................................................3

*McGonigle v. Combs*,
968 F.2d 810 (9th Cir. 1992) ..............................................................................3, 17

*Minks v. Polaris Indus., Inc.*,
546 F.3d 1364 (Fed. Cir. 2008)....................................................................5, 6, 8, 10

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
362 F. Supp. 2d 526 (D.N.J. 2005) ..........................................................................10

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED    CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

*Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*,
    No. 12-1099, 2015 WL 5725248 (C.D. Ill. Sept. 30, 2015) ........................................13

*Phillips v. Cmty. Ins. Corp.*,
    678 F.3d 513 (7th Cir. 2012) .........................................................................................2

*Realtime Data, LLC v. Actian Corp.*,
    Case No. 6:15-cv-00463-RWS-JDL, Dkt. No. 492 (E.D. Tex. April 4, 2017)................16

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    853 F.3d 1370 (Fed. Cir. 2017)......................................................................................3

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997)..........................................................................5, 6, 9, 10

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    891 F. Supp. 751 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996)......................13

*TransWeb, LLC v. 3M Innovative Properties Co.*,
    16 F. Supp. 3d 385 (D.N.J. 2014), *aff'd*, 812 F.3d 1295 (Fed. Cir. 2016).........................2

*Uniboard Aktiebolag v. Acer Am. Corp.*,
    118 F. Supp. 2d 19 (D.D.C. 2000) .................................................................................3

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)....................................................................................11

**Statutes**

35 U.S.C. § 271.................................................................................................................1, 9, 10

35 U.S.C. § 287............................................................................................................... *passim*

Public Law 112-29, September 16, 2011 (Leahy-Smith America Invents Act).....................13

**Other Authorities**

Federal Rules of Civil Procedure Rule 50 .......................................................................1, 2, 3

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED      CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

## I.  INTRODUCTION

Juniper's Motion for Judgment as a Matter of Law (Dkt. No. 352, "Motion") should be denied because it is procedurally improper and motion is premised on its misreading of the law as Juniper invents requirements for notice that is contrary to Federal Circuit law, such as mandating that both actual and constructive notice must be analyzed in every case and that actual notice must always be in writing, which is not a requirement for infringement pursuant to 35 U.S.C. § 271(a).  Further, Finjan provided substantial evidence with testimony and documents, demonstrating that Finjan provided notice to Juniper regarding its infringement of the '494 Patent.

For actual notice, Finjan presented the unrebutted testimony of its licensing director, Mr. Garland, who established that he notified Juniper's Director of Intellectual property, Mr. Scott Coonan, of the specific patent and products at issue in this case.  Additionally, the deposition testimony of Mr. Coonan confirmed that such actual notice was presented, as well as Juniper's transcript and audio recording of the call.  Given the actual notice, issues of constructive notice are moot.  Nonetheless, Juniper advocates that Finjan's licensees were required to mark products.  Juniper's arguments on constructive notice, however, are riddled with infirmities and is not based on the law.  The evidence at trial was that Finjan established that the licensees and Finjan who practiced its patents before the expiration of the '494 Patent marked their products.  Thus, a reasonable jury could find that Finjan gave Juniper notice of the '494 Patent.

## II.  ARGUMENT

### A.  Juniper Did Not Present A Proper Post Trial Motion Under Rule 50 of the Federal Rules of Civil Procedure.

Despite citing to Rule 50 for its post-trial motion (Motion at 1-2), Juniper failed to present a proper issue for such a motion and does not attempt to meet its burden under Rule 50(b) regarding the issue of notice.  Since the jury found for Juniper on ultimate issue of infringement, ancillary issues related to Finjan's claim of infringement are moot and not properly raised in a 50(b) motion.  *See Lyon Dev. Co. v. Bus. Men's Assur. Co. of Am.*, 76 F.3d 1118, 1122 (10th Cir. 1996) (holding Rule 50(b) "does not permit a party in whose favor the verdict was rendered to renew its motion because 'a jury

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

verdict for the moving party moots the issue.'") (quoting Fed. R. Civ. P. 50(b) advisory committee's note to 1991 amendment).  Here, Juniper's affirmative defense to liability regarding compliance with 35 U.S.C. § 287 was limited to whether Finjan gave constructive notice.  Dkt. No. 218 at ¶¶ 145-146.  Since the jury did not find any liability, its marking defense and separately its belated actual notice claim, are moot and not proper for a determination as a matter of law.

The reasoning behind this requirement is simple, in that "[i]t would waste time and resources to require a party to move for judgment as a matter of law under Rule 50(b), formerly denominated 'judgment *nothwithstanding* the verdict,' if that party has obtained a jury verdict in its favor." *Phillips v. Cmty. Ins. Corp.,* 678 F.3d 513, 519 n.3 (7th Cir. 2012) (emphasis original); *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, No. 1:15-CV-00321-SKO, 2018 WL 347783, at *6 (E.D. Cal. Jan. 10, 2018) ("The Court declines GIS's invitation to render rulings that would do nothing more than 'bolster' or 'improve' a judgment that is already in GIS's favor.")(citing *Phillips*, 678 F.3d 519 n.3). There is a long list of cases in which Courts have found that ancillary issues in such circumstances are moot.  *See also Madrigal v. Allstate Indem. Co.*, No. CV 14–4242 SS, 2015 WL 12748272, at *2 (C.D. Cal. Dec. 7, 2015) (denying as moot motion for judgment as a matter of law on promissory fraud where the moving party "obtained the ultimate relief it sought" after the jury concluded that the moving party "was not liable"); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14–CV–33–JRG, 2016 WL 7650735, at *4 (E.D. Tex. Sept. 29, 2016) ("While Federal Rule of Civil Procedure 50(b) permits Genband to request entry of judgment 'notwithstanding an adverse jury verdict,' it does not allow Genband to seek advisory opinions from the Court on issues it has already prevailed on."); *TransWeb, LLC v. 3M Innovative Properties Co.*, 16 F. Supp. 3d 385, 407 (D.N.J. 2014), *aff'd*, 812 F.3d 1295 (Fed. Cir. 2016) ("3M also moves for Judgment as a Matter of Law on the antitrust claims. Because the jury returned a verdict in 3M's favor on the sham litigation claim, the motion is moot as to that issue.").  As such, Juniper's Motion should be denied outright as procedurally improper.

Furthermore, Juniper's motion is premised on the claim that constructive notice must be analyzed and that analysis must occur first, which is contrary to law.  *See e.g.*, Motion at 7 ("Given that Finjan failed to comply with its marking obligations, and given that the '494 Patent expired before

2

Finjan filed its complaint in this matter, Finjan was required to prove that it provided Juniper with actual notice at some point before the '494 Patent expired."); *see also id.* at 2 and 4.  Finjan only needs to prove that it either gave actual or constructive notice and if one type of notice is found, then there is no need to analyze the other type of notice given well established Federal Circuit law.[1]

Actual notice and constructive notice are separate and distinct mechanisms for obtaining damages for patent infringement.  "Marking under the statute is permissive, not mandatory." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017)  Thus, constructive notice is not even relevant when the patentee asserts only actual notice.  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) ("Thus, the statute defines that '[a patentee] is entitled to damages from the time when it either began marking its product in compliance with section 287(a)[, constructive notice,] or when it actually notified [the accused infringer] of its infringement, whichever was earlier.'")(citation omitted); *see also Uniboard Aktiebolag v. Acer Am. Corp.*, 118 F. Supp. 2d 19, 22 (D.D.C. 2000) ("The constructive notice (marking) provision of § 287(a) is not relevant to this dispute, as Uniboard does not allege that it complied with the patent marking provisions. Therefore, the Court focuses its inquiry on if and when Uniboard provided the defendants actual notice of the alleged infringement.").  As such, to the extent actual notice is found, there is no need to consider constructive notice because the issue is moot.  Thus, Juniper's attempts to require findings on constructive notice or attempts to suggest that constructive notice must first be analyzed is contrary to precedent.  Actual notice is a separate individual statutory basis for notice from constructive notice and there is no need to address both if actual notice is found.

## B.    Finjan Presented Substantial Evidence of Actual Notice

Juniper cannot meet its high burden of showing that there was no legally sufficient evidentiary basis for a reasonable jury to find for Finjan on the issue of notice.  Fed. R. Civ. Proc. 50(b); *E.E.O.C. v. Go Daddy Software, Inc.,* 581 F.3d, 951, 961-62 (9th Cir. 2009); *McGonigle v. Combs,* 968 F.2d 810, 816 (9th Cir. 1992) (motion for judgment as a matter of law should only be granted "when the

---

[1] Only if there is no actual notice would consideration of constructive notice be appropriate.

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED       CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

evidence permits only one reasonable conclusion as to the verdict.")(citation omitted). Finjan presented substantial evidence supporting that it gave actual notice and separately, constructive notice as discussed below. Finjan presented substantial evidence regarding providing Juniper with actual notice that (1) Juniper's SRX Gateway with Sky ATP[2] and (2) Juniper's Sky ATP alone (collectively "Juniper's Products") both infringe the '494 Patent. 35 U.S.C. 287 (damages recoverable if "infringer was notified of the infringement and continued to infringe thereafter"). In particular, Finjan presented the unrebutted testimony from Mr. John Garland who confirmed during a phone call with Juniper's Director of Intellectual Property, Mr. Coonan, that he informed Juniper in November 2015 of the '494 Patent and Juniper's Products, including Juniper's SRX and Sky ATP. Declaration of Lisa Kobialka in Support of Finjan's Opposition to Juniper's Motion ("Kobialka Decl."), Ex. 1 (Trial Exhibit 256) at John – 3:55 ("Okay. So I mean we have identified patents. We have identified products . . ."). Mr. Garland further testified about the transcript of the call that Mr. Coonan made, which Juniper produced as a document and separately the audio recording of the call. *Id.*, Ex. 1 (Trial Exhibit 256); *see also* (Trial Exhibit 257)[3]; *id.*, Ex. 2, Trial Tr. at 557:19-563:1; 586:10-11. The transcript and audio of the call confirmed Mr. Garland's testimony that he identified both the '494 Patent and Juniper's Products.

Furthermore, Mr. Coonan's deposition testimony at trial also confirmed that Mr. Garland had identified the '494 Patent and Juniper's Products, as well as the fact that Mr. Coonan had recorded the call and the transcript reflected the discussions during the call. *Id.*, Ex. 3 (Coonan Trial Testimony via video) at 128:12-171:02. Thus, Juniper's witness and documents also corroborated Mr. Garland's testimony, which was unrebutted.

---

[2] "ATP" stands for advanced threat protection. Kobialka Decl., Ex. 2, Trial Tr. at 35:20-36:1 ("Q. Why was Sky ATP developed?  A. So in the – in the NG firewall, one of the – one of the firewall components of an NG firewall is advanced threat protection.  And in order to – to get that functionality in an NG firewall, we started developing Sky ATP.").

[3] Admitted Trial Exhibit 257 is an audio file that was submitted to the court in electronic format on a USB flash drive. Finjan will submit a copy of this exhibit if the Court so requests.

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

1.      **Finjan Provided Notice of the '494 Patent And That Juniper Infringed It.**

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994).  The Federal Circuit has stated that "[a]lthough there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer."  *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1470 (Fed. Cir. 1997).  It is undisputed that Mr. Garland identified to Juniper the patent number for the '494 Patent on his call with Mr. Coonan.  Mr. Garland identified the patent twice and even specifically read the seven digit patent number to Mr. Coonan, who requested them for his reference.  Kobialka Decl., Ex. 2, Trial Tr. at 554:2-555:3; *id.*, Ex. 3 (Coonan Trial Testimony via video) at 167:7-12; *id.*, Ex. 1 (Trial Exhibit 256) at John – 10:53 to John – 11:21 (transcript of phone call between Mr. Garland and Mr. Coonan, representing Juniper reciting: "Mr. Garland: And there's a newer one, one you haven't seen before. 8677494.  Mr. Coonan: Okay.  All right.  And that's significant, because it's – is it – is it a continuation?  Mr. Garland: I don't know.  I don't know.  It's [sic] reads on your advanced malware modules."); *see also* (Trial Exhibit 257).  The undisputed evidence at trial was that Finjan properly identified the patent at issue to Juniper on the call.  *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) ("Section 287(a) requires actual notice to the accused 'to assure that the recipient knew of the adverse patent during the period in which liability accrues . . .'")(quoting *SRI Int'l, Inc.*, 127 F.3d at 1470 ("the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement").

Finjan also provided at trial undisputed evidence that Finjan notified Juniper that it infringed the '494 Patent, stating unequivocally that the '494 Patent "reads" on Juniper's products.  Kobialka Decl., Ex. 2, Trial Tr. at 554:2-555:10; *id.*, Ex. 1 (Trial Exhibit 256) at John – 10:53 to John – 11:21 ("Mr. Garland: And there's a newer one, one you haven't seen before.  86777494….  It's [sic] reads on your advanced malware modules."); *see also* (Trial Exhibit 257).  There can be no question that the discussion between Mr. Coonan and Mr. Garland related to infringement.  The purpose of the call was

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED            CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

to discuss licensing of Finjan's patents.  Indeed, that was the reason for the call between Juniper's Senior Director of Intellectual Property, Litigation, and Strategy and Finjan's head of licensing.  *Id.*, Ex. 2, Trial Tr. at 547:21-548:2; *id.*, Ex. 3 (Coonan Trial Testimony via video) at 145:1-147:23, 166:15-167:03.  Mr. Garland testified that he would only approach a party like Juniper unless Finjan believed that the party required a patent license.  *Id.*, Ex. 2, Trial Tr. at 549:21-550:18 (Mr. Garland describing that he would approach companies after a research and a determination they had adopted Finjan's patented technology.); *id.* at 604:9-11.  He also explained that he would identify a specific patent for the discussion and products in those discussions.  *Id.* at 554:21-555:5 (Mr. Garland explaining that specific Finjan patents were discussed).

Mr. Coonan's deposition testimony at trial also confirmed that Mr. Coonan also understood that this was a call about infringement, as he admitted that he understood the discussion to be in the context of litigation and negotiation.  *Id.*, Ex. 1 (Trial Exhibit 256) at Scott – 25:48 (Mr. Coonan stating that "I thought it was in the context of a litigation discussion, negotiation, and you rejected it, so we're back to square one.").  As such, there is no dispute that Finjan met the requirement of establishing that Finjan levied a charge of infringement of the '494 Patent on the call.  *Minks*, 546 F.3d at 1376 ("as long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice is met.  Thus, the requirement of 'a specific charge of infringement' set forth in Amsted does not mean the patentee must make an 'unqualified charge of infringement.')(citation omitted); *SRI Int'l, Inc.*, 127 F.3d at 1470 ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer").

### 2. Finjan Identified Juniper's Products That Needed A License

Mr. Garland identified Juniper's Products, the SRX Gateway and Sky ATP, on the call with Mr. Coonan, as infringing the '494 Patent.  Specifically, Mr. Garland testified and Juniper's documents and testimony confirms, that Mr. Garland identified Juniper's "SRX Series, including the virtual firewall" or the "Next Generation Firewall" were the focus of the call and that the '494 Patent "reads

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

on" Juniper's "advanced malware module."  *See e.g.*, Kobialka Decl., Ex 2, Trial Tr. at 553:24-554:10; 557:23-24; 559:13-560:13; 567:6-11; 561:21-562:10; 603:17-604:11; *id.*, Ex. 1 (Trial Exhibit 256) at John – 05:01 ("Yes, so I mean the products that we're focused on is the – the SRX Series, including the virtual firewall, and – "); *id.* at John – 05:12 ("Because that's ***what the patents have led us to***, I mean there's new security products, and so we don't think -- you know, really with your Junos operating system. But it looks like some of the modules that are supported in those products and ***the Next Generation firewall***, which is your UTM, your antivirus, and your web filtering are three modules that ***we think about using three new patents***.") (emphasis added); *see also* (Trial Exhibit 257); *id.*, Ex. 3 (Coonan Trial Testimony via video) at 134:02-05.  The undisputed evidence at trial was that Juniper called its Sky ATP cloud service either "Advanced Anti-Malware Cloud Service" or "Next-Generation Firewall," such that a reasonable jury could find that Finjan gave actual notice regarding Sky ATP with SRX Gateway.

Specifically, at trial, Mr. Garland testified that just a few weeks before his call with Mr. Coonan, he saw Juniper's press release entitled "Juniper Network Unveils Advanced Anti-Malware Cloud Service" (Trial Exhibit 91) dated September 29, 2015, announcing the release of Juniper's cloud based service, Sky ATP.  *Id.*, Ex. 2, Trial Tr. at 551:22-555:13 (describing how Mr. Garland relied on a press release for Sky ATP which referred to it as its "Advanced Anti-Malware Cloud Service"); *id.*, Ex. 4 (Trial Exhibit 91) (Juniper press release announcing the release of Sky ATP, entitled "Juniper Network Unveils Advanced Anti-Malware Cloud Service"); *id.*, Ex. 2, Trial Tr. at 603:17-604:11.  He further testified how the substance of the press release discussed Sky ATP, which Juniper called its "advanced anti-malware cloud service" in press release's title.  *Id.*, Ex. 2, Trial Tr. at 551:22-555:13; *id.*, Ex. 4 (Trial Ex. 91).  As a result, the undisputed evidence at trial was that both Juniper and Mr. Garland referred to Sky ATP as its advanced malware or advanced anti-malware technology.  Further, the substantial evidence at trial was that Mr. Garland informed Mr. Coonan that Sky ATP needed a license to the '494 Patent, which he called "advanced malware" and was nearly the identical words of Juniper's press release announcing the release of Juniper's Sky ATP service.  *Id.*, Ex. 2, Trial Tr. at

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

550:25-562:23; 565:10-568:6; *id.*, Ex. 1 (Trial Exhibit 256) at John – 10:53; *see also* (Trial Exhibit 257); *id.*, Ex. 3 (Coonan Trial Testimony via video) at 167:03-167:10.

Additional substantial evidence at trial was the fact that Juniper continued to refer to Sky ATP as the service for the SRX Gateway for "advanced malware" protection. Finjan presented additional Juniper documents that established that Juniper also referred to Sky ATP as its "advanced malware" service even after Juniper's press release. Kobialka Decl., Ex. 5 (Trial Exhibit 57) at JNPR-FNJN_29002_00173278 (document describing Sky ATP as "Juniper Advanced Anti-Malware Service on SRX"); *id.*, Ex. 2, Trial Tr. at 388:2-392:10.

Separately, Finjan presented the testimony of Juniper's Senior Director, Chandra Nagarajan, who provided unrebutted testimony that the "Next Generation Firewall" refers to the SRX Gateway with Sky ATP. *Id.*, Ex. 6 (Nagarajan Trial Testimony via video) at 35:20-36:1 ("Q. Why was Sky ATP developed? A. So in the – in the NG firewall, one of the – one of the components of an NG firewall is advanced threat protection. And in order to – to get that functionality in an NG firewall, we started developing Sky ATP."); *id.*, Ex. 7 (Trial Exhibit 17). Thus, considering all the evidence, including testimony from Juniper's engineer and Juniper's documents, the only conclusion a reasonable jury could reach is that Juniper's "advanced malware" and "Next Generation Firewall" referred to Sky ATP and Sky ATP with SRX Gateways. As such, Finjan provided substantial evidence that Mr. Garland provided Juniper with notice that its SRX Gateways with Sky ATP and Sky ATP were infringing the '494 Patent in November 2015, just after Juniper announced the release of its Sky ATP and a reasonable jury could have found actual notice.

Juniper focuses much of its Motion on the fact that Mr. Garland did not use the specific term "Sky ATP" on his call with Mr. Coonan. Actual notice, however, does not require notice a specific product; it can be of a group of products. *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010)(citing *Amsted*, 24 F.3d at 187). Thus, such specificity of the exact words is not required to satisfy actual notice. In fact, identification of the relevant technology is sufficient. *Minks*, 546 F.3d at 1376-77 (holding "knowledge of a specific infringing device is not a legal prerequisite to" giving actual notice under § 287(a), and a communication of the patentee's "belief that reverse speed

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW

CASE NO.: 3:17-cv-05659-WHA

limiters sensing engine speed and a DC input infringe" the patent may have sufficed); *SRI Int'l, Inc.*, 127 F.3d at 1470 ("the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the *activity* that is believed to be an infringement") (emphasis added). At the very least, even if the words "Sky ATP" were not used on the call Coonan, Juniper's advanced malware modules and the Next Generation Firewall objectively cover the relevant technology in Sky ATP and the group of technologies known to be part of Sky ATP.  Kobialka Decl., Ex. 4 (Trial Exhibit 91) at 1 (describing Sky ATP as "Juniper Networks Unveils Advanced Anti-Malware Cloud Service"); *id.*, Ex. 6 (Nagarajan Trial Testimony via video) at 35:20-36:1; *id.*, Ex. 8 (Trial Exhibit 382) at FINJAN-JN 005438 ("Sky Advanced Threat Prevention is a cloud-based service that provided complete advanced malware protection.").

Additionally, the jury could have concluded that Mr. Garland's specific reference to the SRX Gateways was sufficient, as the undisputed testimony at trial was that the Sky ATP is a free component that is integrated into Juniper's SRX Gateways based on the evidence and testimony presented at trial. *Id.*, Ex. 2, Trial Tr. at 472:2-18; 476:8-478:2; 685:25-686:8; *id.*, Ex. 8 (Trial Exhibit 382) at FINJAN-JN 005438 ("Integrated with SRX Series Services Gateways, Sky Advanced Threat Prevention delivers a dynamic anti-malware solution that can adapt to an ever-changing threat landscape."); *id.* at FINJAN-JN 005440 ("A free version of Sky Advanced Threat Prevention is also available or existing customers of supported SRX Series devices with a valid software support contract.").  Thus, given the technologies identified, the testimony of Juniper's and Finjan's witnesses, and Juniper's documents, there was sufficient evidence to establish that Juniper was provided with actual notice of its infringement.

### 3.     Actual Notice Does Not Need to be a Writing.

Contrary to Juniper's claims, the law does not require written notice to satisfy the actual notice for infringement under 35 U.S.C. 271(a).  The Federal Circuit has explicitly stated that there are no specific form requirements for this notice, and stated that "[a]lthough there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI Int'l, Inc.*, 127 F.3d at 1470 (cited by *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 555–56 (D.N.J. 2005) ("Actual notice can take many forms, including sending a potential infringer a letter that charges a particular product with infringement of a specific patent or filing a patent infringement action.)). Therefore, Finjan's notice does not need to be written, so long as it otherwise meets the requirements of notifying Juniper that its products infringe the '494 Patent. *See, e.g., Minks*, 546 F.3d at 1376-77. Thus, Finjan presented substantial evidence on which a jury could find that it gave actual notice to Juniper.

That "written" notice is not required is also shown based on the structure of 35 U.S.C. § 271, which explicitly states when written notice is required, which is only under 35 U.S.C. § 271(g). Thus, Juniper's assertion that written notice is required is actually attempting to recite law that applies to a different portion of section 271, namely section 271(g). *See* 35 U.S.C. § 271(g) ("Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent."). As shown, the ***only*** written notice requirement in section 287 refers to specialized notice procedures for patentees seeking to obtain damages for infringement of a patented process pursuant to section 271(g). 35 U.S.C. § 287(b)(2) ("No remedies for infringement ***under section 271(g)*** shall be available with respect to any product in the possession of, or in transit to, the person subject to liability under such section before that person had notice of infringement with respect to that product.") (emphasis added); *see also* 35 U.S.C. § 287(b)(5) (defining that "notice of infringement means actual knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States.") Even then, section 287(b)(5) considers "actual knowledge" or a combination of actual knowledge with written notification to constitute notice. *Id.* A written notice requirement is conspicuously absent from section 287(a), which governs the general notice requirements for all types of infringement and is therefore not required.

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED    CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

### 4.   Juniper Failed to Rebut Finjan's Evidence of Actual Notice.

Juniper presented no evidence at trial to rebut Finjan's substantial showing that it gave Juniper actual notice.  Juniper's argument that Finjan never presented evidence that Sky ATP "is a 'module' of the SRX" falls flat because Juniper did not establish that "modules" can only be hardware and notice does not turn on that single word.  Motion at 9.  Indeed, a module is commonly software.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015).  A reasonable juror could determine that a "module" has its ordinary meaning and can be in reference to how Sky ATP acts as an extension of the SRX Gateway.  More importantly,  the totality of the evidence demonstrated that Finjan identified the infringing technology as both "advanced malware" and "Next Generation Firewall" during the November 2015 call and that Juniper announced its Sky ATP product as providing "Advanced Anti-Malware" services just before the November 2015 call.

Juniper also makes the baseless argument that the SRX already had "advanced malware modules" at the time of the call that "have nothing to do with" Sky ATP.  Motion at 9.  Juniper has no evidence that would establish this naked claim and cites to a datasheet for the SRX Gateway issued two years after the call between Mr. Garland and Mr. Coonan that references "advanced malware" on the SRX.  *Id.*; *see also* Kobialka Decl., Ex. 9 (Trial Exhibit 345).  As an initial matter, this document did not exist in November 2015, as it came two years *after* the SRX Gateway already had integrated Sky ATP.  Further, Juniper did not offer any witnesses to demonstrate that the 2017 reference to "advanced malware" is to anything other than a reference to Sky ATP, as Sky ATP was already part of the SRX Gateways in 2017.  The only evidence was the 2015 press release issued just a month before Finjan's call with Juniper a description of the technology being discussed on the call.

In fact, during trial, the Court ordered Juniper to cease showing Trial Exhibit 345 (which Juniper cites in its Motion) to the jury.  "Ms. Kobialka: Objection, Your Honor. He's showing a document that came into existence two years or three years after the call and he's tying it to the call. The Court: I think that's a problem. So let's take that down off the screen."  Kobialka Decl., Ex. 2, Trial Tr. at 592:18-22.  A reasonable jury would not find a 2017 document that did not exist at the time of the 2015 call to be meaningful evidence of how Juniper referred to its Sky ATP service, particularly

11

given Juniper's 2015 press release announcing the release of its Sky ATP service as its "advanced anti-malware cloud service."  Thus, a reasonable jury could find that Finjan provided actual notice.

## C.    Finjan Presented Substantial Evidence of Constructive Notice

While the issue of constructive notice is improperly raised in a motion for judgment as a matter of law and moot, as demonstrated above, Finjan's presentation at trial, nonetheless, was sufficient such that a reasonable jury could find that Finjan complied with its marking requirements.  Finjan presented evidence that the products that practiced the '494 Patent during its life between March 18, 2014 until its expiration in January 2017, were marked with the '494 Patent.  Kobialka Decl., Ex. 10 (Trial Exhibit 1) (showing issue date of Mar. 18, 2014); Dkt. No. 262 at 7 (stipulation that the '494 Patent expired on January 29, 2017).  Finjan identified the only product by name and during the relevant timeframe that it knew practiced the '494 Patent, namely Finjan's Vital Security mobile application, and proved that it marked that software product.  Specifically, from its launch of the version of the software that practiced the '494 Patent, which was in October or November 2016 until the expiration of the '494 Patent, Finjan diligently marked marketing materials and ensured that third party websites that made the software available also marked the software with the '494 Patent.

Specifically, Finjan's CEO, Mr. Philip Harstein, testified that Finjan marked its Gen3 Vital Security application with the '494 Patent as of its release in October or November 2016.  Kobialka Decl., Ex. 2, Trial Tr. at 259:3-261:11 (describing that Finjan's Gen3 products included the same level scanning as provided by Finjan's technology); *id.* at 260:5-8 ("Q. For an earlier version of this mobile application, did Finjan identify the '494 patent in connection with it? A. We did. So specifically I mentioned Vital Security. It was in our Gen3 product that used the '494."); *id.* at 263:25-264:4 ("Q. And does Finjan make this representation regarding its mobile app in terms of – does it associate it with the '494 patent? A. That's exactly what it does, is it says – it uses the patent technology in our '494 patent."); *id.* at 265:10-266:2 (describing marking on website); *id.* at 324:3-15.  Finjan also introduced as a trial exhibit a document from the Google Play Store where customers can purchase Finjan's Gen3 Vital Security product that identifies the '494 Patent.  *Id.*, Ex. 11 (Trial Exhibit 372);

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

*id.*, Ex. 2, Trial Tr. at 261:4-11 (Q. I'd like you to take a look at what we've marked as Trial Exhibit 372, and it may also be in your book there. Could you just briefly describe what this is? A. Yeah. That is basically the bibliographical information that you would see when you go to the Google Play Store. It has a description of the product. You can see the logo. You can see the name. And in that description you also see the '494 patent listed."); *id.* at 260:20-266:2.

Finjan's diligent marking of its product with the '494 Patent was legally sufficient evidence that it complied with all statutory marking methods, which includes the America Invents Act amendment that allows virtual marking. *See* 35 U.S.C. § 287(a) (setting forth that patentees can give notice to the public by "fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of patent , or by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent . . ."); Public Law 112-29, September 16, 2011 (Leahy-Smith America Invents Act); *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-1099, 2015 WL 5725248, at *2 (C.D. Ill. Sept. 30, 2015) ("Notice can be either constructive, by marking the article with the patent number or the address of a website that provides the patent number, or actual."). Juniper cites inapposite case law that addresses the marking of physical products. *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 820 (E.D.N.Y. 1995), *aff'd,* 96 F.3d 1409 (Fed. Cir. 1996) (addressing marking of hip implants). Thus, Finjan presented substantial evidence of constructive notice at trial, and Juniper cannot meet its burden of showing that no reasonable jury could have found for Finjan on this issue.

### 1.    Juniper Failed to Rebut Finjan's Evidence of Constructive Notice.

Juniper entirely failed to meet its burden of production at trial because, in part, Juniper never presented testimony or evidence, much less an identification of products that were sold that (i) could have been marked and (ii) should have been marked with the '494 Patent during the pendency of the '494 Patent. At trial, Juniper did not identify any products: (1) licensed under the '494 Patent; (2) that practiced the '494 Patent during the pendency of the patent; and (3) were not marked with the '494

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

Patent. *Arctic Cat, Inc. v. Bombardier Recreational Prods. Inc.,* 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("[a] patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the] patentee.'")(citation omitted). Juniper's broad allegation that Finjan had the burden to establish that its licensees marked their products with the '494 Patent is Juniper's sole basis for disputing constructive notice. Juniper's argument is fatally flawed because it did not meet its initial burden "to articulate the products it believes are unmarked 'patented articles' subject to § 287" to the jury, which is a basic premise to the law and what occurred in the *Artic Cat* decision that Juniper heavily relies upon for its argument. *Id.* at 1368.

Specifically in *Arctic Cat*, the Federal Circuit found the accused infringer had the initial burden of production, and only found that it met this initial burden because it (1) "introduced the licensing agreement" for the sale of the unmarked patented articles ***at trial***, (2) identified fourteen specific products ***to the jury*** that it believed were unmarked patented articles, and (3) presented expert testimony ***to the jury*** regarding those fourteen specific products. *Id.* In contrast, Juniper did nothing close to meet its burden of production at trial. In fact, Juniper did not elicit any testimony at trial to the jury that ***any*** specific products that were licensed should have been marked while the '494 Patent was in force, *i.e.*, once it issued and before it expired.

Instead, Juniper makes the misleading statement that it "introduced evidence during the examination of Dr. Cole that Finjan made the following admissions" and quotes lines from a 77-page document, Trial Exhibit 1760. Motion at 3. There was no testimony at trial regarding the lines that Juniper quoted from the lengthy document. Rather, the only testimony that Juniper elicited about Trial Exhibit 1760 at trial was with the parties' infringement experts and regarding a single page of the exhibit (identified as Trial Ex. 1760-46), which related to positions taken during an *inter partes* review proceeding for the interpretation of "database schema." *Id.*, Ex. 2, Trial Tr. at 513:6-517:23; 768:6-769:1. There was never any testimony or questions regarding wholly different portions of this trial exhibit.

It is undisputed that, at trial, Juniper did not present any evidence, much less explanation, of any other parts of Trial Exhibit 1760. No reasonable jury would read this document involving an *inter*

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

*partes* proceeding and review snippets of the document for which there was no testimony during the presentation of evidence.  The truncated and cherry-picked excerpts from Trial Exhibit 1760 that Juniper now quotes with ellipses are scattered throughout the 77-page Exhibit and were not at issue or presented with any testimony during trial.  *See* Motion at 3.  Juniper cannot cherry-pick half-sentences to suggest that it met its initial burden of identifying specific products to the jury that Juniper thinks should have been marked.  Thus, Juniper never used Trial Exhibit 1760 to meet its burden of production.  *Compare* Motion at 3 *with* Kobialka Decl., Ex. 2, Trial Tr. at 513:6-517:23; 768:6-769:1.

The remaining citations that Juniper relies upon is generalized testimony regarding Finjan's licensing practices and licenses.  For example, Juniper's citations to Mr. Harstein's testimony regarding Finjan's licenses, which was a portfolio license, did not call out the '494 Patent or establish that there were any licensees who practiced the '494 Patent before the patent expired who could mark its products and failed to do so.  Motion at 4; Kobialka Decl., Ex. 2, Trial Tr. at 314:19-315:1.

Juniper's suggestion that marking should have continued before the patent issued or after it expired is misplaced.  Given that the '494 Patent expired two years ago, it would not make sense for Finjan to monitor whether its licensees should be marking its patents.  All the testimony Juniper cited did not specific the relevant timeframe, such that it does not support its argument.  Thus, Juniper did not meet its burden of proof and a reasonable jury could have found for Finjan on constructive marking.

Furthermore, the evidence at trial raised questions of fact regarding whether there was an obligation to mark.  For example, Finjan presented unrebutted testimony from Mr. Hartstein that none of Finjan's licenses contain a marking requirement.  Kobialka Decl., Ex. 2, Trial Tr. at 319:5-7 (Q. You don't believe that any of Finjan's licenses have marking provisions; correct? A. That is my understanding, that our agreements do not.").  This testimony leads to the reasonably conclusion that the licensees did not include a provision to mark because they did not believe they were practicing Finjan's patents or that the products could not be marked or they were not practicing Finjan's patents during the pendency of those patents.  At the very least, there is a factual issue in dispute, which is sufficient grounds to deny Juniper's Motion (which has the same standard as summary judgment)

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED          CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

where there are questions of fact as to whether a licensee was required to mark because it denied

infringement in the license.  *See* Kobialka Decl., Ex. 12, *Blitzsafe Texas, LLC v. Honda Motor Co.,*

*Ltd., et al.*, Case No. 2:15-cv-01274-JRG-RSP, Dkt. No. 403 at *4 (E.D. Tex. January 26, 2017)

(denying summary judgment because prior settlement agreement licenses did not include a marking

requirements where the licensees denied infringement); *id.,* Ex. 13, *Realtime Data, LLC v. Actian*

*Corp.*, Case No. 6:15-cv-00463-RWS-JDL, Dkt. No. 492 (E.D. Tex. April 4, 2017) (denying summary

judgment where prior settlement license agreements stated the issues of the case were disputed and

lacked any explicit statement that the products practiced a specific claim); *Accuscan, Inc. v. Xerox*

*Corp.*, No. 96 CIV. 2579 (HB), 1998 WL 60991, at *6 (S.D.N.Y. Feb. 11, 1998) (denying summary

judgment where none of the licenses had marking requirements and the licensees denied that the

products they sold infringed the patent).

### 2.  Juniper's Interpretation That The *Artic Cat* Notice During Discovery Discharges Its Burden of Production At Trial Turns the Decision on Its Head.

Serving "an *Artic Cat* notice" during discovery did not discharge Juniper of identifying at trial

what specific licenses or products is relevant to its affirmative defense.  Such a notice is relevant for

discovery purposes and not a directive of what evidence needs to be addressed at trial.  Indeed, under

Juniper's view of the world, a defendant could serve a notice that listed hundreds of products and claim

at trial that the patentee has the burden of proving all the named products were not required to be

marked.  This is certainly not the intent or the holdings of *Artic Cat*.  In the case of Juniper, it merely

listed general categories of products without any specific product numbers or any appropriate

timeframes as well as stated "licensed products" of numerous licensees.  Thus, Juniper's notice

amounted to identifying thousands of products and Juniper's failure to identify specific products or

licensees during the appropriate timeframe at trial renders its constructive notice challenge deficient.

Service of a notice does not mean Juniper met its burden of production at trial and certainly does not

transform trial into a game of guessing what products Juniper is asserting should have been marked.

FINJAN, INC.'S OPPOSITION TO JUNIPER'S RENEWED       CASE NO.: 3:17-cv-05659-WHA
MOTION FOR JUDGMENT AS A MATTER OF LAW

Juniper cites no case law that supports its infirm position that it met its burden under *Artic Cat* without providing any identification of products at trial.  Arctic Cat, 876 F.3d at 1368 (finding the initial burden was met by evidence that was actually presented and explained to the jury).  Simply put, Juniper never provided the jury with testimony directed to licensed products during the pendency of the '494 Patent, and therefore a reasonable jury could have found for Finjan.  *McGonigle,* 968 F.2d at 816 (judgment as a matter of law should only be granted "when the ***evidence*** permits only one reasonable ***conclusion*** as to the verdict.") (emphasis added)(citation omitted).

## III.    CONCLUSION

For the foregoing reasons, Finjan respectfully requests that the Court deny Juniper's Motion.


Respectfully submitted,

Dated:  January 24, 2019                       By: */s/ Lisa Kobialka*
                                                         Paul J. Andre (SBN 196585)
                                                         Lisa Kobialka (SBN 191404)
                                                         James Hannah (SBN 237978)
                                                         Kristopher Kastens (SBN 254797)
                                                         KRAMER LEVIN NAFTALIS
                                                           & FRANKEL LLP
                                                         990 Marsh Road
                                                         Menlo Park, CA  94025
                                                         Telephone:  (650) 752-1700
                                                         Facsimile:   (650) 752-1800
                                                         pandre@kramerlevin.com
                                                         lkobialka@kramerlevin.com
                                                         jhannah@kramerlevin.com
                                                         kkastens@kramerlevin.com

                                                         *Attorneys for Plaintiff*
                                                         FINJAN, INC.

17