IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua Glucoft (SBN 301249)
jglucoft@irell.com
Casey Curran (SBN 305210)
ccuran@irell.com
Sharon Song (SBN 313535)
ssong@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**JUNIPER NETWORKS, INC.'S REPLY BRIEF IN SUPPORT OF JUNIPER NETWORKS, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DKT. NO. 352)**<br><br>Judge: Hon. William Alsup |

**TABLE OF CONTENTS**

| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | ARGUMENT | | | 2 |
| | A. | Juniper's Motion For Judgment As A Matter Of Law Is Procedurally Proper. | | 2 |
| | B. | Finjan Failed To Prove Compliance With § 287. | | 3 |
| | | 1. | No Reasonable Jury Could Have Found That Finjan Provided Constructive Notice Under § 287. | 4 |
| | | | a. Juniper Met Its Burden Of Production To Identify Unmarked Products. | 5 |
| | | | b. No Reasonable Jury Could Have Found That Finjan Demonstrated Constructive Notice Under § 287. | 7 |
| | | 2. | Finjan Failed To Prove Actual Notice. | 9 |
| | | | a. Finjan Did Not Identify Products That Needed A License To The '494 Patent In Any Pre-Suit Correspondence. | 9 |
| | | | b. Juniper Introduced Evidence That Sky ATP Is Not A Module Of SRX. | 12 |
| | | | c. Actual Notice Requires Writing. | 12 |
| III. | CONCLUSION | | | 13 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accuscan, Inc. v. Xerox Corp.*,
   No. 96 CIV. 2579 (HB), 1998 WL 60991 (S.D.N.Y. Feb. 11, 1998) ..........................................8

*Addiction & Detoxification Inst. LLC v. Carpenter*,
   620 Fed. App'x. 934 (Fed. Cir. July 21, 2015) ......................................................................13

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
   2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018) ..........................................................................6

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ...................................................................................1, 5, 6, 8

*Asyst Techs., Inc. v. Empak, Inc.*,
   2006 WL 3302476 (N.D. Cal. Nov. 14, 2006) ........................................................................11

*Blitzsafe Tex., LLC v. Honda Motor Co., Ltd.*,
   2017 U.S. Dist. LEXIS 58358 (E.D. Tex. Jan. 26, 2017) .........................................................8

*Connel v. Sears, Roebuck & Co.*,
   722 F.2d 1542 (Fed. Cir. 1983) .................................................................................................7

*Dunlap v. Shofield*,
   152 U.S. 244 (1894) ..................................................................................................................3

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
   616 F.3d 1357 (Fed. Cir. 2010) ....................................................................................9, 10, 11

*Loral Fairchild Corp. v. Victor Co. of Japan*,
   906 F. Supp. 813 (E.D.N.Y. 1995) (Rader, J. (sitting by designation)) ....................................8

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ...............................................................................................4, 7

*Meridian Mfg., Inc. v. C & B Mfg., Inc.*,
   340 F. Supp. 3d 808 (N.D. Iowa 2018) .....................................................................................6

*Minks v. Polaris Indus., Inc.*,
   546 F.3d 1364 (Fed. Cir. 2008) .........................................................................................11, 13

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
   362 F. Supp. 2d 526 (D.N.J. 2005) .........................................................................................13

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) .................................................................................................7

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
    No. IPR2016-00159 ....................................................................................................7

*Phillips v. Cmty. Ins. Corp.*,
    678 F.3d 513 (7th Cir. 2012) ......................................................................................2

*Realtime Data, LLC, v. Action Corp.*,
    2017 U.S. Dist. LEXIS 56950 (E.D. Tex. Apr. 4, 2017) ............................................8

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    853 F.3d 1370 (Fed. Cir. 2017) ..................................................................................4

*Semcon IP Inc. v. Huawei Device USA Inc.*,
    2017 WL 6343771 (E.D. Tex. Dec. 12, 2017) ............................................................8

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997) ...................................................................11, 12, 13

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
    2013 WL 4456161 (N.D. Cal. Aug. 16, 2013) ...........................................................8

*Uniboard Aktiebolag v. Acer Am. Corp.*,
    118 F. Supp. 2d 19 (D.D.C. 2000), *aff'd sub nom. Lans v. Digital Equip. Corp.*,
    252 F.3d 1320 (Fed. Cir. 2001) ..................................................................................4

*United States v. DeCoito*,
    764 F.2d 690 (9th Cir. 1985) ......................................................................................7

**Statutes**

35 U.S.C. § 287 ............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. Proc. 50(a) ..........................................................................................................2

## I. INTRODUCTION

Juniper Networks, Inc.'s ("Juniper's") Motion for Judgment as a Matter of Law (Dkt. No. 352) should be granted. The arguments raised in Finjan, Inc.'s (Finjan's) Opposition (Dkt. No. 357) are unpersuasive and do not change the fact that Finjan simply failed to meet its burden to establish notice under 35 U.S.C. § 287.

Contrary to Finjan's contention, Juniper's Motion is procedurally proper as Finjan's compliance with 35 U.S.C. § 287 remains a live issue. Finjan is currently asking the Court to enter a judgment as a matter of law on the issue of infringement, and is also seeking a new trial on damages. In the alternative, Finjan requests that the issues of infringement and damages be certified for interlocutory appeal while the remainder of the case is stayed. To the extent that the Court grants any of Finjan's requests, a ruling on Juniper's Motion will ensure that the appellate court has a complete record for review. Even if the Court denies Finjan's co-pending motion in full, however, the issues raised in Juniper's Motion remain relevant to the resolution of this litigation. For example, Finjan has indicated that it intends to pursue its claims under the '494 Patent against additional Juniper products. In addition, Finjan's failure to comply with the constructive notice requirements of § 287 and its failure to identify Sky ATP as an accused product in any pre-suit correspondence to Juniper infects its claim for damages under the other six patents-in-suit in this case. A ruling on Juniper's Motion would narrow the issues that need to be litigated with respect to Finjan's remaining claims.

Substantively, Finjan's arguments also fall flat. No reasonable jury could find that Finjan and its licensees marked substantially all of the products that embody the '494 Patent, as required to demonstrate constructive notice. Finjan's primary argument is that Juniper did not meet its burden of production to identify unmarked products. But this argument is belied by Finjan's own stipulation at trial that Juniper did in fact meet its burden of production under *Arctic Cat*, and is also contrary to the evidentiary record. Finjan's opposition brief fails to identify any evidence that its '494 licensees marked their products with the '494 Patent, much less evidence that they marked substantially all of those products. Similarly, Finjan introduced no evidence that it made any, let alone reasonable, efforts to ensure its licensees complied with 35 U.S.C. § 287.

1    As to actual notice, no reasonable jury could find that Finjan provided actual notice based on the facts presented at trial. The fact that Finjan identified the '494 Patent to Juniper during a telephone call is legally insufficient to satisfy the actual notice requirement. Finjan failed to specifically identify Sky ATP as an accused product prior to filing suit, and Finjan's argument that the generic term "advance malware" is synonymous with Sky ATP is foreclosed by both legal precedent and factual evidence.

## II.    ARGUMENT

### A.    Juniper's Motion For Judgment As A Matter Of Law Is Procedurally Proper.

Finjan first argues that "[s]ince the jury found for Juniper on the ultimate issue of infringement, ancillary issues related to Finjan's claim of infringement are moot and not properly raised in a 50(b) motion." Dkt. No. 357 at 1. However, Finjan's compliance with 35 U.S.C. § 287 remains a live issue for at least two reasons. First, Finjan filed a pending Motion for Judgment as a Matter of Law and Motion for New Trial arguing that no reasonable jury could have found that Juniper did not infringe and seeking a new trial on damages. Dkt. No. 353. Should the Court deny Finjan's motion, Finjan requests that the case be stayed during the duration of its appeal. *Id.* at 24. A ruling on the issues raised in Juniper's Motion will ensure that the appellate court benefits from a complete record on this issue—regardless of whether that appeal happens now or later. *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012) (considering affirmative defense of qualified immunity on appeal of finding of no liability). As the Court did not rule on Juniper's Rule 50(a) motion concerning notice, Juniper thus reasserts the issue now, and believes that a ruling would be in the interest of judicial economy.

Second, this case is procedurally distinguishable from the cases that Finjan cites in its opposition, as Finjan's compliance with § 287 remains an issue to be decided in this case. Indeed, Finjan has indicated that it intends to continue to pursue the '494 Patent, including against additional Juniper products. Ex. 1 (1/3/19 Email Fr. Kris Kastens). Thus, a judgment that Finjan did not comply with the constructive notice requirements as to the '494 Patent would narrow the issues that need to be litigated with respect to Finjan's remaining claims under the '494 Patent. In addition, Finjan's failure to comply with the notice requirements of § 287 is relevant to the damages period for the

other six patents-in-suit, and is even dispositive for U.S. Patent Nos. 6,154,844 and 7,613,926 for which there is no evidence whatsoever that Finjan identified in any written or oral communications to Juniper prior to the complaint, after those patents expired. *See Dunlap v. Shofield*, 152 U.S. 244, 248 (1894) ("[M]arking the articles, or notice to the infringers—is made by the statute a prerequisite to the patentee's right to recover damages against them."). Similarly, Finjan's infringement allegations under the other six patents-in-suit are focused on Sky ATP and/or SRX used in combination with Sky ATP—just like its allegations for the '494 Patent. Given that Finjan never identified Sky ATP as an accused product for any of its patents prior to filing its lawsuit, the Court's ruling on actual notice for the '494 Patent may also impact Finjan's allegations of actual notice for those other patents. Accordingly, the issue of Finjan's compliance with the notice requirements of § 287 in this case is far from moot.

### B. Finjan Failed To Prove Compliance With § 287.

Finjan claims that "Juniper's motion is premised on the claim that constructive notice must be analyzed and that analysis must occur first, which is contrary to law." Dkt. No. 357 at 2. However, Finjan's argument ignores that Finjan's, and Finjan's licensees', failure to mark is a prerequisite to Finjan's obligation to providing Juniper with actual notice.

Finjan's attempt to side-step the constructive notice issue is a transparent effort to avoid a negative ruling that will impact its other claims in this case and its claims in other cases against other defendants. Finjan cannot expressly argue that it complied with the constructive notice requirements, as such a position would be specious in view of the mountain of evidence (including Finjan's own admissions) that its licensees practice the '494 Patent and did not mark their products. If it formally admitted this, however, it would be harmful to its other claims against Juniper and other defendants. As a result, Finjan hopes to leave this issue open by characterizing constructive and actual notice as interchangeable options to diminish Juniper's argument that Finjan failed to meet its statutory marking obligations. But Finjan's position is inconsistent with the plain language of § 287.

35 U.S.C. § 287 states: "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented . . . ***In the event of failure so***

*to mark*, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter." 35 U.S.C. § 287 (emphasis added). Accordingly, Finjan only needed to provide actual notice to Juniper if (1) it practices the '494 Patent or its licensees practice the '494 patent, and (2) Finjan failed to mark substantially all products that practice the '494 Patent or failed to take reasonable efforts to ensure its licensees marked products which practice the '494 Patent.

Further, the case law Finjan cites does not support its position that the Court need only decide whether Finjan provided actual notice. In *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017), the court did not analyze whether the patentee satisfied 35 U.S.C. § 287 but instead addressed the issues of (1) whether a patent disclaimer alleviated the need to mark and (2) whether notice must be decided on a claim by claim basis. The *Rembrandt* court thus did not provide any guidance as to the proper order in which to analyze compliance with 35 U.S.C. § 287. Further, in *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1112 (Fed. Cir. 1996), the court affirmed a jury verdict that the patentee complied with the **constructive** notice prong of 35 U.S.C. § 287. The *Maxwell* court thus expressed no opinion that actual notice may be decided first. Lastly, in *Uniboard Aktiebolag v. Acer Am. Corp.*, 118 F. Supp. 2d 19, 22 (D.D.C. 2000), *aff'd sub nom. Lans v. Digital Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001) the patentee conceded that it did not satisfy the constructive notice prong of the statute. *See id.* ("The constructive notice (marking) provision of § 287(a) is not relevant to this dispute, as Uniboard does not allege that it complied with the patent marking provisions."). Here, no such concession has been made.

Finjan's refusal to formally state whether or not it complied with marking under § 287 is conducive to its ability to take inconsistent positions in its other ongoing litigations and with regard to the other patents asserted in this case. The Court should thus make an explicit finding that Finjan failed to provide constructive notice, as a matter of law, before going on to address actual notice.

### 1. No Reasonable Jury Could Have Found That Finjan Provided Constructive Notice Under § 287.

Finjan does not point to a shred of evidence that its licensees who practice the '494 Patent marked their products with the '494 Patent number during the relevant time period. Instead, Finjan

tries to renege on its admission to the Court that Juniper met its burden of production to identify unmarked licensee products before trial, attempts to shift the burden of proof on constructive notice to Juniper, and points to irrelevant evidence regarding the Finjan Mobile Vital Security product. None of this changes the fact that Finjan failed to meet its burden to introduce evidence of its compliance with the constructive notice requirements of 35 U.S.C. § 287.

      a.  Juniper Met Its Burden Of Production To Identify Unmarked Products.

Finjan's primary argument on constructive notice is that Juniper did not meet its burden of production under *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) to identify unmarked products. Dkt. No. 357 at 13-17. Finjan's argument requires it to reverse course on a stipulation made to the Court during trial, is contrary to Federal Circuit precedent, and is also contrary to the factual record.

As an initial matter, Finjan admitted to the Court that Juniper had met its burden of production under *Artic Cat* by serving a notice that identified licensee products (*see* Ex. 2 at 2-3), thus shifting the burden to Finjan. Specifically, the following exchange occurred during the trial:

> THE COURT: I'm not asking about how reasonable they were on the actual evidence. I'm asking this *Arctic* notice that I don't even know anything about, **can you both agree that that was given so that we don't have to complicate the trial with yet another issue?**
>
> MS. KOBIALKA: **Yeah, and that's not a jury issue to decide** whether or not that notice was given in the litigation.
>
> THE COURT: All right. So if I just tell you right now that **you've got to prove notice, you are okay with that?**
>
> MS. KOBIALKA: **Yes.**

Trial Tr. at 286-289 (emphasis added). Finjan is now attempting to renege on this stipulation by arguing that "Juniper cites no case law that supports its infirm position that it met its burden under *Artic Cat* without providing any identification of products **at trial**." Dkt. 357 at 16 (emphasis added). Finjan should not be permitted to contradict its stipulation.

Despite its stipulation to the contrary, Finjan now argues that Juniper was required to identify specific licensees and products at trial in front of the jury. Finjan's position is legally incorrect.

Contrary to Finjan's suggestion, the *Artic Cat* court did not hold that an accused infringer must meet its burden of production in a particular way. Rather, the Federal Circuit held that "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. **To be clear, this is a low bar.** The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Arctic Cat*, 876 F.3d at 1368. In accordance with this requirement, on May 3, 2018 Juniper put Finjan on notice of the licensees, licensee products, and Finjan products which Juniper contends constitute unmarked products which practice the '494 Patent. *See* Ex. 2 at 2-3. Juniper also identified specific licensees who sell products that practice the '494 Patent in its Opposition to Finjan's Summary Judgment Motion. *See* Dkt. No. 126 at 15. Juniper thus met its burden of production prior to trial and Finjan bore "the burden to prove the products identified do not practice the patented invention." *Arctic Cat*, 876 F.3d at 1368. Further, Juniper's pre-trial *Arctic Cat* notice satisfies the policy considerations articulated by the Federal Circuit: "Without some notice of what market products [the accused infringer] believes required marking, [the patentee's] universe of products for which it would have to establish compliance with, or inapplicability of, the marking statute would be unbounded. . . . Permitting infringers to allege failure to mark ***without identifying any products*** could lead to a large scale fishing expedition and gamesmanship." *Arctic Cat*, 876 F.3d at 1368. Here, Finjan was tasked with no such fishing expedition as Juniper identified specific licensees and specific licensee products.

Even though it was not necessary in view of Finjan's stipulation,[1] Juniper also met its burden of production to identify unmarked licensee products by introducing evidence at trial. In particular,

---

[1] In *Arctic Cat* the Federal Circuit held that it was **not** "determin[ing] the minimum showing needed to meet the initial burden of production." *Id.* at 1368. Juniper should thus not be required to meet its burden of production in the same manner as the accused infringer in *Arctic Cat*. Indeed, following *Arctic Cat*, notice provided in the context of summary judgment briefing has been found sufficient to satisfy the burden of production. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2018 WL 1525686, at *6 (E.D.N.Y. Mar. 27, 2018) (finding contention in summary judgment motion sufficient to satisfy burden of production); *Meridian Mfg., Inc. v. C & B Mfg., Inc.*, 340 F. Supp. 3d 808, 842 (N.D. Iowa 2018) (citing Dkt. No. 101 (Opp. to Mot. for Summ. J.) as satisfying the burden of production).

Juniper introduced Trial Exhibit 1760, which includes Finjan's own admissions that various licensees sold products that practice the '494 Patent. Trial Ex. 1760 (Finjan's POR in *Palo Alto Networks, Inc. v. Finjan, Inc.*, No. IPR2016-00159) at 55-60. Trial Exhibit 1760 also directly rebuts Finjan's claim that Juniper did not identify any licensee products that should have been marked during the time period between issuance of the '494 Patent (March 18, 2014) and its expiration (January 29, 2017), as the document is dated August 12, 2016. Finjan does not dispute that Trial Exhibit 1760 contains express Finjan admissions that at least four Finjan licensees were selling products that practice the '494 Patent as of August 12, 2016. Instead, Finjan claims that neither the Court, nor the jury, should consider all of Trial Exhibit 1760 because there was no witness testimony concerning those portions of the document. Dkt. No. 357 at 14-15. But Finjan cites no authority to support its position that the jury or the Court may only consider the portions of a document that are expressly discussed by a witness at trial, and that is simply not the law. *See Connel v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546 (Fed. Cir. 1983) (when considering a JMOL, the court is to "consider all the evidence"); *United States v. DeCoito*, 764 F.2d 690, 695 (9th Cir. 1985) ("Jurors are generally entitled to examine documents properly admitted in evidence.").

        b.    <u>No Reasonable Jury Could Have Found That Finjan Demonstrated Constructive Notice Under § 287</u>.

Finjan also claims that "Juniper did not meet its burden of proof" because Juniper points to "generalized testimony regarding Finjan's licensing practices and licenses" and did not "specif[y] the relevant timeframe." Dkt. No. 357 at 15. But Finjan's argument is inapposite because Juniper did not bear the burden of proof on this issue. Rather, as the patent owner, Finjan bore the burden to show "substantially all of the [products that practice the '494 Patent] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous." *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). Further, Finjan needed to show that it "made reasonable efforts to ensure [licensee] compliance with the marking requirements." *Maxwell*, 86 F.3d at 1111–12.

Finjan does not identify a shred of evidence that the licensees identified in Juniper's *Arctic Cat* notice or even the narrower list identify by Finjan itself in Trial Exhibit 1760 marked their

products with the '494 Patent. Trial Ex. 1760 at 54. To the contrary, Finjan's CEO admitted that "Finjan believes that its licensees are actually using [Finjan's] patents in [the licensee's accused] products," Trial Tr. at 318:11-13, that none of "Finjan's licenses have marking provisions," *id.* at 319:5-11, and that he was not "aware of any efforts by Finjan to monitor whether its licensees are marking their products with Finjan's patents," *id.* Finjan thus failed to show it made reasonable efforts to ensure its licensees complied with § 287. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2013 WL 4456161, at *7 (N.D. Cal. Aug. 16, 2013) ("finding patentee failed to make "reasonable efforts to ensure that [licensee] marked any licensed products with the patents-in-suit" where patentee "took no steps whatsoever to do so" and "failed even to include in the licensing agreement an obligation that [licensee] itself make efforts to mark any products that it reasonably believed practiced [patentee's] patents."); *Loral Fairchild Corp. v. Victor Co. of Japan*, 906 F. Supp. 813, 818 (E.D.N.Y. 1995) (Rader, J. (sitting by designation)) ("[Patentee] has consistently asserted in this case that the [products] sold by [patentee's licensees] in the United States infringe claims of the [asserted] patent. Defendants have conclusively shown these specific allegedly infringing [products] were sold, unmarked, during the terms of license agreements with [patentee]. [Patentee] has not withdrawn its claim of infringement of any of these devices. In sum, [patentee] has provided no evidence to show a genuine issue of material fact [that it satisfied 35 U.S.C. § 287].").[2]

Finally, Finjan's arguments concerning its alleged marking of the Vital Security product are irrelevant. Even if Finjan were able to prove that it adequately marked the Vital Security product—which it did not—it has not even attempted to rebut Juniper's argument that those Vital Security

---

[2] The cases cited by Finjan are inapposite. The two Texas cases were decided under the express assumption that the defendant bears the burden to establish that the unmarked products embodied the patent. *Realtime Data, LLC, v. Action Corp.*, 2017 U.S. Dist. LEXIS 56950, at *8 (E.D. Tex. Apr. 4, 2017) ("[I]t is the defendant's responsibility to affirmatively identify and prove that a product is a patented article . . . ."); *Blitzsafe Tex., LLC v. Honda Motor Co., Ltd.*, 2017 U.S. Dist. LEXIS 58358, at *10-11 (E.D. Tex. Jan. 26, 2017). The Federal Circuit overruled this reasoning in *Arctic Cat*, and since that decision the same Texas court recognized that a defendant meets its burden "[b]y identifying a complaint in which [the patentee] accused [licensee] products of infringing the [asserted] patent, which resulted in the relevant license agreement between [the patentee] and [the licensee]." *Semcon IP Inc. v. Huawei Device USA Inc.*, 2017 WL 6343771, at *3 (E.D. Tex. Dec. 12, 2017). Further, in *Accuscan, Inc. v. Xerox Corp.*, the court found that "Accuscan has presented some evidence that its licensees' products may not infringe" and had "withdrawn its claims of infringement against its licensees' products." *Accuscan, Inc. v. Xerox Corp.*, No. 96 CIV. 2579 (HB), 1998 WL 60991, at *6 n.5 (S.D.N.Y. Feb. 11, 1998).

products would not comprise "substantially all" of the patented articles sold during the relevant time period given that the sales of the Vital Security product were dwarfed by those of Finjan's licensees. *See* Dkt. No. 352 at 6. In any event, the only evidence of marking that Finjan introduced at trial is generalized testimony from Mr. Hartstein and a single trial exhibit—a print out from the Google Play Store page where Finjan's VitalSecurity product can be downloaded. This evidence fails to sustain Finjan's burden to show that *substantially all* of the Vital Security products sold before the patent expired were marked. For example, Finjan does not identify any evidence or testimony to show that substantially all of the Vital Security downloads during the relevant time period were made from the Google Play Store, as opposed to another source such as Apple's App Store (for which Finjan offered no evidence of marking).

### 2. Finjan Failed To Prove Actual Notice.

Given that no reasonable jury could have found that Finjan complied with the constructive notice provisions of 35 U.S.C. § 287, Finjan was required to prove that it provided actual notice to Juniper before the '494 Patent expired. It did not meet this burden. At trial Finjan failed to introduce any evidence that Finjan notified Juniper that Finjan believed the accused Sky ATP product infringed the '494 Patent prior to filing its Complaint (which was well after the '494 Patent expired).

    a. <u>Finjan Did Not Identify Products That Needed A License To The '494 Patent In Any Pre-Suit Correspondence.</u>

Much of Finjan's brief is focused on the fact that Finjan identified the '494 Patent to Juniper on a phone call between John Garland and Scott Coonan, and the fact that Finjan made general allegations that Juniper's products were infringing Finjan's patents. Dkt. No. 357 at 5-6. But neither of these facts are contested; and neither is sufficient to meet the actual notice requirement under § 287. To adequately communicate actual notice, the patentee must provide an identification of specific accused products. Indeed, the Federal Circuit has held "[t]he letter must communicate a charge of infringement of specific patents by a specific product or group of products." *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).

Here, the only product that Mr. Garland referenced on the call with Mr. Coonan was Juniper's SRX Series. Trial Ex. 256 at JNPRFNJN_29011_00960577-78 (stating that Finjan is focused on the

1  SRX series and that "it looks like some of the modules that are supported in those products and the
2  Next Generation firewall, which is your UTM, your antivirus, and your web filtering are three
3  modules that we think about using three new patents."). Because Finjan did not accuse the SRX
4  alone of infringing the '494 Patent, Juniper did not need a license to the '494 Patent to sell the SRX—
5  the only product that Mr. Garland identified.

6        Mr. Garland admitted that he did not specifically identify the products that Finjan actually
7  accused of infringing the '494 Patent in this case—the only products for which a license would have
8  been needed—which include Sky ATP and SRX used in combination with Sky ATP. Trial Tr. at
9  586:22-587:1; *See* Trial Exs. 256, 257; Trial Tr. at 588:13–16 (John Garland: "Q. Right. And you
10 now know that you're mistaken and that you did not mention Sky ATP; is that right? A. I only know
11 I'm mistaken because the call - - yeah, the call is recorded and taped and transcribed.").

12       Given that Mr. Garland admittedly did not identify Sky ATP on the call to Mr. Coonan,
13 Finjan attempts to rely on a vague remark from Mr. Garland that the '494 Patent "reads on your
14 advanced malware modules." Finjan claims that this is adequate because Mr. Garland understood
15 "advanced malware modules" to mean Sky ATP. But this is insufficient as a matter of law. The
16 standard for actual notice is objective and it does not matter what Mr. Garland subjectively
17 understood. Specifically, the Federal Circuit has explained that "[t]o serve as actual notice, a letter
18 must be sufficiently specific to support an objective understanding that the recipient may be an
19 infringer[; . . . and t]he letter must communicate a charge of infringement of specific patents by a
20 specific product or group of products." *Funai Elec.*, 616 F.3d at 1373. No reasonable jury could find
21 that Mr. Garland's reference to "advanced malware modules" could objectively be viewed as
22 identifying Sky ATP, given the context of the call. *See* Trial Ex. 256. Indeed, earlier in the call,
23 Mr. Garland specifically identified three advanced malware "modules"—the Unified Threat
24 Management, web-filtering, and anti-virus modules—each of which is included on the SRX and
25 each of which has nothing to do with Sky ATP. Trial Ex. 345 at 2 (discussing SRX's on-box
26 "advanced malware" threat protection, which is unrelated to Sky ATP); Coonan Dep. Tr. at 167:13-
27 24 ("Q. Have you heard of Sky ATP referred to as advanced malware? A. No. . . . Q. Have you ever
28 heard of Sky ATP referred to as having advanced malware modules? A. Not – not a module, no,

1  'cause it's a cloud-based solution.") (Testified through Videotaped Deposition, Trial Tr. at 538:18-
2  20); Trial Tr. at 671:4–677:15 (Mike Bushong) (testifying that "advanced malware" modules existed
3  in the original SRX released in 2008 and "do not have anything to do with Sky ATP"). Moreover,
4  the press release that Finjan cites to in its brief refers to Sky ATP as an "Advanced **Anti**-Malware
5  **Cloud Service**" not an "advanced malware ***module***." Trial Ex. 91. These are not "nearly identical
6  words" as Finjan claims, and are not objectively the same thing. *See* Dkt. No. 357 at 7.

7  As a fallback, Finjan contends that actual notice may be found here because 35 U.S.C. § 287
8  can be satisfied by identifying a group of accused products. *Id.* at 8. However, "advanced malware
9  modules" does not identify a specific group of products. At best, "advanced malware modules" refers
10 generally to the market for advanced malware solutions. And, identifying a broad market for
11 products does not sufficiently provide actual notice as a matter of law. *See Asyst Techs., Inc. v.*
12 *Empak, Inc.*, 2006 WL 3302476 at *4 (N.D. Cal. Nov. 14, 2006) (finding insufficient actual notice
13 as a matter of law despite the patent owner sending letters identifying "the market for SMIF pods"
14 because "[n]either letter identified any particular product of [the defendants].").

15 The cases Finjan cites in support of its argument are easily distinguished. In *Funai Elec.*, 616
16 F.3d at 1373, the Federal Circuit found that the patentee put the accused infringer on notice of certain
17 products not accused in its initial notice letter because the additional products "contained the same
18 infringing components." Here, Sky ATP and SRX are separate products that have entirely different
19 functionalities. Further, in *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1377 (Fed. Cir. 2008), the
20 Federal Circuit did not issue a finding as to whether actual notice was provided but instead held that
21 the jury should have been advised that it should consider notice "in the context of [an] ongoing
22 relationship between the parties" where the accused infringer allegedly made false statements
23 concerning its accused products during the course of pre-suit negotiations. Here, no such
24 considerations mitigate Finjan's need to identify a specific product. Lastly, in *SRI Int'l, Inc. v.*
25 *Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469–70 (Fed. Cir. 1997), the patentee identified the
26 specific accused products and the asserted patent in a pre-suit letter to the accused infringer. Finjan
27 provided no such letter to Juniper.
28

b. <u>Juniper Introduced Evidence That Sky ATP Is Not A Module Of SRX</u>.

In its Opposition, Finjan improperly tries to shift the burden to Juniper to present evidence of no notice. Dkt. No. 357 at 11-12. Because Finjan failed to carry its burden of proof that it provided actual notice, Juniper did not have a burden to rebut anything. In any event, Finjan's arguments do not comport with the evidentiary record.

For example, Finjan argues that a reasonable juror could have found that Sky ATP was a "module" of the SRX. Dkt. No. 357 at 11. But Finjan did not introduce any evidence calling Sky ATP a "module" of SRX; nor did it introduce any evidence that a "module" can refer to software instead of hardware, as it argues in its brief. *Id*. As such, Finjan's argument has no merit.

Finjan also disputes Juniper's argument that the SRX already had advanced malware modules that have nothing to do with Sky ATP—*e.g.*, the specific ones that Mr. Garland identified on the call, such as UTM, anti-virus and web filtering. Dkt. No. 357 at 11. In particular, Finjan argues that the document Juniper identifies "did not exist in November 2015" and "Juniper did not offer any witnesses to demonstrate that the 2017 reference to 'advanced malware' is to anything other than a reference to Sky ATP." Dkt. No. 357 at 11. But that is not true. Mr. Bushong testified about Trial Exhibit 345, and explained that the "advanced malware" modules described in that datasheet existed in the original SRX released in 2008, and that these modules "do not have anything to do with Sky ATP." Trial Tr. at 671:4 – 677:15. Moreover, Mr. Coonan testified that he had not "heard of Sky ATP referred to as advanced malware" and had not heard "of Sky ATP referred to as having advanced malware modules" because "it's a cloud-based solution." Coonan Dep. Tr. at 167:13-24 (Testified through Videotaped Deposition, Trial Tr. at 538:18-20).

c. <u>Actual Notice Requires Writing</u>.

Even if Finjan had identified Sky ATP on the call, there is no dispute that Finjan failed to provide written notice. The Northern District's model instruction on the issue of actual notice provides: "Since [patent holder] sells a product that includes the claimed invention but has not marked that product with the patent number, you must determine the date that [alleged infringer] received actual ***written*** notice of the [ ] patent and the specific product alleged to infringe." N.D.

Cal. Model Patent Jury Instructions B.5 Patent Damages. Federal Circuit law supports the requirement that the notice be provided in writing. In *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 Fed. App'x. 934, 937 (Fed. Cir. July 21, 2015), the Federal Circuit analyzed the notice requirements of § 287 in conjunction with the now-abrogated Form 18, the Federal Circuit noted that Form 18 states: "The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all electric motors it manufactures and sells and has given the defendant ***written notice*** of the infringement." *Id.* (emphasis added).

Indeed, the cases Finjan cites confirm that courts focus on written notice. *See, e.g.*, *Minks*, 546 F.3d at 1375 ("The jury found that Minks' November 23, 2004 ***letter*** to Polaris . . . satisfied § 287(a)'s notice requirement.") (emphasis added); *SRI Int'l*, 127 F.3d at 1469 ("For actual notice, attention was focused on the May 15, 1986 ***letter*** from SRI's patent counsel to ATL's president . . . .") (emphasis added); *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 555 (D.N.J. 2005) ("Actual notice can take many forms, including sending a potential infringer a ***letter*** that charges a particular product with infringement of a specific patent or ***filing a patent infringement action***.").

## III.  CONCLUSION

For the above stated reasons, the Court should find as a matter of law that Finjan failed to provide actual or constructive notice of Claim 10 of the '494 Patent to Juniper and that Finjan thus failed to meet the requirements set forth by 35 U.S.C. § 287.

Dated: January 31, 2018                              IRELL & MANELLA LLP

                                                      By:  *Rebecca L. Carson*
                                                           Rebecca L. Carson
                                                           *Attorneys for Defendant*
                                                           JUNIPER NETWORKS, INC.