PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>       Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND SECOND MOTION FOR EARLY SUMMARY JUDGMENT, REGARDING INFRINGEMENT OF CLAIM 1 OF U.S. PATENT NO. 8,141,154; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      May 2, 2019<br>Time:     8:00 a.m.<br>Courtroom:  Courtroom 12, 19th Floor<br>Before:   Hon. William Alsup |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ............................................ 1

STATEMENT OF RELIEF SOUGHT ............................................................................................ 1

STATEMENT OF THE ISSUES ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................................... 2

    A.    The '154 Patent ............................................................................................ 2

    B.    Juniper and the Accused Products ............................................................... 4

        1.    SRX Gateway ................................................................................... 4

        2.    Sky ATP ........................................................................................... 4

        3.    ATP Appliance ................................................................................. 5

III.   CLAIM CONSTRUCTION ........................................................................................ 6

IV.   ARGUMENT ............................................................................................................... 8

    A.    The SRX Gateway Infringes Claim 1 .......................................................... 8

        1.    The Preamble is Non-Limiting, but Still Met by the SRX Gateway. .......................... 9

        2.    The SRX Gateway has a Content Processor (Element 1(a)) ............................ 9

        3.    The SRX Gateway has a Transmitter (Element 1(b)). ................................. 12

        4.    The SRX Gateway has a Receiver (Element 1(c)) ..................................... 14

    B.    Sky ATP Infringes Claim 1 ....................................................................... 15

        1.    The Preamble is Non-Limiting, but Still Met by Sky ATP. ......................... 15

        2.    Sky ATP has a Content Processor (Element 1(a)). ..................................... 16

        3.    Sky ATP has a Transmitter (Element 1(b)). .............................................. 17

        4.    Sky ATP has a Receiver (Element 1(c)). .................................................... 18

    C.    The ATP Appliance Infringes Claim 1 ...................................................... 19

i

1         1.     The Preamble is Non-Limiting, but Still Met by the ATP Appliance. .........................19

2         2.     The ATP Appliance has a Content Processor (Element 1(a))......................................20

3         3.     The ATP Appliance has a Transmitter (Element 1(b)).................................................22

4         4.     The ATP Appliance has a Receiver (Element 1(c))......................................................22

5    D.    The Accused Products Infringe under Juniper's Proposed Constructions...........................23

6    E.    In the Alternative, Juniper Infringes under the Doctrine of Equivalents.............................24

7  V.     CONCLUSION.........................................................................................................................25

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.     CASE NO. 3:17-cv-05659-WHA

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
  707 F.3d 1318 (Fed. Cir. 2013)................................................................................................8

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)................................................................................................9

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004))............................................................................................8

*Finjan, Inc. v. Bitdefender, Inc.*,
  No. 17-cv-04790-HSG, Dkt. 101 (N.D. Cal. Feb. 14, 2019)..................................................6

*Finjan, Inc. v. Cisco Sys., Inc.*,
  17-cv-00072-BLF, 2018 WL 3537142 (N.D. Cal. July 23, 2018)....................................2, 3

*Finjan, Inc. v. Proofpoint, Inc.*,
  No. 13-cv-05808-HSG, 2015 WL 7770208 (N.D. Cal. Dec. 3, 2015) ...........................6, 8

*Finjan, Inc. v. Sophos, Inc.*,
  244 F.Supp.3d 1016 (N.D. Cal. 2017) ...................................................................................2

*Finjan, Inc. v. Symantec Corp.*,
  No. 14-cv-02998-HSG, Dkt. No. 170 (N.D. Cal. Feb. 10, 2017) ..........................................7

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
  IPR2015-00151, Paper 51 (P.T.A.B. Mar. 15, 2017) ............................................................3

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
  IPR2015-01979, Paper 62 (P.T.A.B. Mar. 15, 2017) ............................................................3

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005)..............................................................................................8

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..............................................................................................7

*TechSearch, L.L.C. v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002)..............................................................................................8

*Visto Corp. v. Sproqit Tech., Inc.*,
  445 F. Supp. 2d 1104 (N.D. Cal. 2006) .................................................................................7

i

**Statutes**

35 U.S.C. § 271 ................................................................................................................4

**Rules**

Federal Rule of Civil Procedure 56(a) ............................................................................8

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**PLEASE TAKE NOTICE** that on May 2, 2019, at 8:00 a.m., or as soon thereafter as the matter may be heard by the Honorable William Alsup in Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Finjan, Inc. ("Finjan") moves the Court for an Order granting summary judgment of infringement in favor of Finjan, that Defendant Juniper Networks, Inc. ("Juniper") infringes claim 1 ("Claim 1") of U.S. Patent No. 8,141,154 (the "'154 Patent"). Ex. 1.[1]

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations of Dr. Michael Mitzenmacher and Kristopher Kastens, the pleadings and papers on file herein, and any other evidence and argument presented to the Court.

## STATEMENT OF RELIEF SOUGHT

Finjan seeks an Order that Juniper infringes Claim 1 of the '154 Patent because it makes, uses, sells, and offers for sale in the United States the following products that provide advanced malware detection capabilities: (1) the SRX Series Gateways ("SRX Gateway"); (2) Sky ATP; and (3) the Advanced Threat Prevention Appliance ("ATP Appliance") (collectively, the "Accused Products").

## STATEMENT OF THE ISSUES

Whether summary judgment of infringement should be granted as to Claim 1 of the '154 Patent with respect to: (1) the SRX Gateway; (2) Sky ATP; and (3) the ATP Appliance.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Juniper infringes Claim 1 of Finjan's '154 Patent through its making, using, selling, and offering for sale the Accused Products in the United States. These products satisfy the following four elements of Claim 1:

1.    A system for protecting a computer from dynamically generated malicious content, comprising:

1(a)    a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer

---

[1] All "Ex." citations are to the Declaration of Kristopher Kastens ("Kastens Decl.") filed herewith.

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA

indicates that such invocation is safe;

1(b)  a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked; and

1(c)  a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.

'154 Patent, Claim 1.  Juniper's Accused Products map directly to the language of Claim 1 because they analyze content received over a network using a security computer for advanced analysis.

For example, Juniper's SRX Gateway by itself infringes because it processes content that it receives over a network (like webpages), detects functions calls (e.g. to contact a website or execute a file/script) in this content that have URLs or files as an "input," transmits these inputs to a security computer, and receives a verdict back indicating whether it is safe to invoke a function that involves contacting the URL or executing the file.  Juniper's Sky ATP and ATP Appliance also infringe Claim 1 of the '154 Patent because they process files and other web content that they receive, identify functions and their corresponding input through a pipeline analysis (including a dynamic analysis), and then utilize a security computer, such as a Reputation Server or Sky ATP's Verdict Engine, to determine if processing the file is safe.  Because the overwhelming evidence shows that these products operate in this manner, there is no issue of material fact that they satisfy each element of Claim 1, and thus summary judgment of infringement is warranted.

## II.   STATEMENT OF FACTS

### A.   The '154 Patent

The '154 Patent stems directly from Finjan's pioneering use of "behavioral analysis technology" to detect "day-zero" malware that was otherwise apt to circumvent security technologies in place.[2]  '154 Patent at 4:30-34.  The technology of the '154 Patent generally relates to "new behavioral analysis technology [that] affords protection against dynamically generated malicious code."  *See Finjan, Inc. v. Cisco Sys., Inc.*, 17-cv-00072-BLF, 2018 WL 3537142, at *2 (N.D. Cal. July 23, 2018); '154 Patent at 3:32-33; 4:31-34; Declaration of Michael Mitzenmacher ("Mitz. Decl.") filed herewith, ¶¶13-14.  The '154 Patent describes embodiments where a system receives content from the

---

[2] In September 2016, a jury determined that Sophos's Unified Threat Management (gateway) and Endpoint products infringed Claim 1 and the Court upheld this verdict.  *Finjan, Inc. v. Sophos, Inc.*, 244 F.Supp.3d 1016, 1050-51 (N.D. Cal. 2017).

Internet, such as webpages and other files, and where this content includes a call to a function (which may include a request for the service of a particular function) and an input to this function.  '154 Patent at 5:26–36; Mitz. Decl., ¶13.  In the '154 Patent, functions are statements or instructions that request a particular service to be performed by the function using the input.  Mitz. Decl., ¶¶13-14; *see also Palo Alto Networks, Inc. v. Finjan, Inc*., IPR2015-01979, Paper 62 at 16 (P.T.A.B. Mar. 15, 2017); *Palo Alto Networks, Inc. v. Finjan, Inc*., IPR2015-00151, Paper 51 at 9 (P.T.A.B. Mar. 15, 2017).  For example, a function may include an instruction to fetch a webpage, while the input to this function would be the address of the webpage.  '154 Patent at 3:19-23 (describing functions as including file system and network system calls); Mitz. Decl., ¶13.  In another example, a function could be an instruction to execute (or "run") a particular piece of code, while the input to the function would be the code that is to be run.  '154 Patent at 3:40-64; Mitz. Decl., ¶13.

The '154 Patent describes how content received over a network can be processed so that the input to a function call can be transmitted to a security computer for inspection.  '154 Patent at 7:8-18.; *see also id.*, Element 1(b); Mitz. Decl., ¶¶13-14.  As one example, the security computer processes the content in real-time to determine whether such invocation is safe, and sends this result back.  *See* '154 Patent at 5:35-43; 6:27-34; 6:66-7:43; Mitz. Decl., ¶14.  These steps of processing the received content, transmitting an input to a security computer, and receiving results from a security computer are reflected in Claim 1 of the '154 Patent.  "In this approach, the patent provides technology that protects computers from dynamically generated malicious code."  *See Cisco,* 2018 WL 3537142, at *2.

Claim 1 has withstood at least seven different validity challenges before District Courts and the Patent Trial and Appeal Board ("PTAB").  Each time, Claim 1 was found to be valid over numerous prior art references.  For example, Claim 1 was challenged in the following six *inter partes* review proceedings ("IPR"): IPR2015-01547, IPR2015-01979, IPR2016-00151, IPR2016-00919, IPR2016-00937, and IPR2016-01071.  Five of these IPRs resulted in a Final Written Decision by the PTAB upholding the validity of Claim 1, and in one of these IPRs the PTAB declined to institute a challenge to Claim 1 at all.  Claim 1 was also found valid by a jury over the prior art raised by the defendant in *Finjan, Inc. v. Sophos, Inc.*, N.D. Cal. Case No. 14-cv-1197, Dkt. Nos. 383, 395, Trial Tr. at 1448-1456, 1791 (N.D. Cal. Sept. 9, 2016).

### B.      Juniper and the Accused Products

Juniper was traditionally a router company, who has added a line of security products to its offerings to remain relevant and competitive in the marketplace.  The SRX Gateway is one of its security products.  Sky ATP and the ATP Appliance are newer, offering further technologies to combat the ever changing security landscape, and are both focused on behavioral analysis of downloaded executable content.  It is undisputed that Juniper makes, offers to sell, and sells the Accused Products in the United States, and thus directly infringes under 35 U.S.C. § 271 (direct infringement is found when a party "makes, uses, offers to sell, or sells any patented invention").

### 1.      SRX Gateway

The SRX Gateway operates between the untrusted Internet and a trusted internal network. Mitz. Decl., ¶15.  The SRX Gateway analyzes and potentially blocks content entering a network, thereby preventing harmful content from infecting a network.  *Id*.  The SRX Gateway uses Juniper's custom operating system, which is called "Junos OS."  Mitz. Decl., ¶15.  In 2015, the SRX Gateway underwent a major overhaul where it was upgraded and integrated with additional advanced security features.  In particular, the SRX Gateway was upgraded so that when it receives content from the Internet that may include malicious or suspicious content, the SRX Gateway can send the content to security servers for analysis, and then decide whether to continue processing the content after receiving an indicator or "verdict" indicating that it is safe to do so according to the installed security policy.  Ex. 3, JNPR-FNJN_29017_ 00552582-83 (showing SRX submits files to a security computer and ███████ ███████ ); Mitz. Decl., ¶15.  This feature allows the SRX Gateway to detect new zero day viruses in real-time. Ex. 4, JNPR-FNJN_29040_01042912 at 913-14 (showing SRX examines content in real time to trigger potential inspection); Mitz. Decl., ¶15.

### 2.      Sky ATP

Sky ATP is Juniper's security service that is integrated with its SRX Gateway, and is freely available on the SRX Gateway.  Mitz. Decl., ¶16.  When Juniper integrated Sky ATP with the SRX Gateway, it allowed the SRX Gateway to provide advanced malware scanning and protection in an increasingly dangerous and fast moving Internet.  Mitz. Decl., ¶¶16-17.  Sky ATP provides this benefit by scanning files with its "Malware Analysis Pipeline" of technologies that create a complete

behavioral profile for the Downloadable.  Ex. 5, JNPR-FNJN_29017_00552807 (describing sample

malware analysis processing pipeline); Mitz. Decl., ¶17.  The Malware Analysis Pipeline also



### 3.    ATP Appliance

ATP Appliance is a hardware or virtual appliance loaded with malware analysis software that

performs many similar functions to Juniper's cloud-based Sky ATP, but is located on the customer's

own network.[3]  ATP Appliance's primary purpose is to inspect Internet content using a series of

analyses including dynamic analysis, determine whether that content is safe, and return a verdict or

score indicating whether it is safe to continue processing that file.  Mitz. Decl., ¶20 (describing that

ATP appliance receives network traffic from web collectors).  The ATP Appliance contains software

that forms a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[3] Juniper acquired the technology for the ATP Appliance when it acquired Cyphort on September 14, 2017.  Juniper's November 2017 10-Q (Dkt. 67-4).  By December 14, 2017, Juniper had incorporated this technology into its own products and rebranded Cyphort's "Advanced Threat Defense Platform" as Juniper's "Advanced Threat Prevention Appliance" or ATP Appliance.  December 14, 2017 press release (Dkt. 67-5).

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.        CASE NO. 3:17-cv-05659-WHA

## III.    CLAIM CONSTRUCTION

None of the terms in Claim 1 of the '154 Patent require construction because they are used in a manner consistent with their plain and ordinary meaning, all of which a person of ordinary skill in the art understands without further construction.  To avoid duplicative briefing, Finjan references the claim construction briefing it previously submitted for these terms explaining why the plain and ordinary meaning applies.  Dkt. No. 176 at 17-19; Dkt. No. 187 at 13-14.  Finjan also provides further limited arguments below regarding Juniper's proposed constructions to provide context for this Motion.

Juniper identified two terms in Claim 1 of the '154 Patent for construction, neither of which needs to be construed.[4]  First, Juniper seeks to rewrite element 1(a), which recites:

> a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe;

Second, Juniper seeks to construe the single word "safe."

As a preliminary matter, neither of these terms requires additional construction because they are readily understood by a person of ordinary skill in the art.  Both of these terms are composed of straightforward computing words, such as processor, function, call, input, network, security, and safe, whose meanings are well-known in the computer security industry.  Further, both of these terms have already been construed to have their plain and ordinary meaning in this District.  *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 7770208, at *9-10 (N.D. Cal. Dec. 3, 2015) (applying plain and ordinary meaning to element 1(a)); *Finjan, Inc. v. Bitdefender, Inc.*, No. 17-cv-

---

[4] Juniper originally identified the term, "invoking a second function with the input" from element 1(a) as requiring construction.  Dkt. No. 182 at 19-23.  Juniper confirmed that, since only two terms per claim can be construed, it is pursing the two terms identified above.  *See* Dkt. No. 219.  The plain and ordinary meaning applies to this third term for the reasons described above and in Finjan's claim construction briefing.  Dkt. No. 176 at 17-19; Dkt. No. 187 at 13-14.

04790-HSG, Dkt. 101 at 19-23 (N.D. Cal. Feb. 14, 2019)(finding no construction necessary for the terms "a content processor for (i) processing content received over a network," "a call to a first function" and "a second function"); *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, Dkt. No. 170 at *4-5 (N.D. Cal. Feb. 10, 2017)(citing *Visto Corp. v. Sproqit Tech., Inc.,* 445 F. Supp. 2d 1104, 1107-08 (N.D. Cal. 2006))(holding "the degree of deference should be greater where the prior claim construction order was issued in the same jurisdiction," noting the importance of intrajurisdictional uniformity in claim construction).   Juniper's expert, Dr. Aviel Rubin, agrees.  He asserted that the plain and ordinary meaning applies to Claim 1 of the '154 Patent in his sworn declaration submitted to the PTAB.  IPR2016-00151, Ex. 1002 (Rubin Decl.)(applying plain and ordinary meaning to every term in the '154 Patent except for a term in dependent Claims 3, 5, 8, and 11).

Juniper shuns its expert's plain and ordinary construction of element 1(a) before the PTAB and seeks to have element 1(a) rewritten as follows:

> A processor on a client computer for processing content received over a network, the content including a call to a first function, and the call including an input, and for invoking a second function with the input, only if a security computer indicates that such invocation is safe

Dkt. No. 224 at 4.  First, Juniper's proposed construction contravenes the plain and ordinary meaning of the language already present because it requires all processing to be done *on a client computer* even though the claim itself contains no such limitation, and in fact Claim 1 never uses the words "client computer."  Because the claims themselves "define the scope of the patented invention," the inquiry should end here and Juniper's proposed construction should be denied on this basis alone.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(citation and internal quotations omitted).  Second, Finjan never disavowed claim scope during prosecution, so there is no intrinsic evidence to support such a narrow interpretation.  Third, the '154 Patent's specification provides multiple preferred embodiments that do not require the content to be processed on a client computer and do not require the use of any "client computer" at all.  *See* '154 Patent at 6:27-34 (a preferred embodiment not requiring the use of a client computer and not mandating where the content is processed); 6:66-7:7 (same); 7:8-19 (same); 7:20-31 (same); 7:32-43 (same).  Thus, contrary to law, Juniper's proposed construction imports limitations not found in the claims and improperly excludes specific embodiments

7

identified in the specification.  *Proofpoint,* 2015 WL 7770208, at *1 ("it is improper to read limitations from the specification into the claims"); *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013)("a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.")(citation omitted).  There is no legal or factual basis for the Court to rewrite nearly half of Claim 1 of the '154 Patent.

Similarly, Juniper's proposed construction of "safe" as meaning the "security profile does not violate the client computer's security policy" is an attempt to unnecessarily import limitations into the construction.  "Safe" is a plain English word that needs no construction.  *Proofpoint*, 2015 WL 7770208, at *9 ("These are ordinary, simple English words whose meaning is clear and unquestionable")(citing *Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1373 (Fed. Cir. 2004) ("They mean exactly what they say.")).  Further, Juniper's proposed construction injects entirely new concepts into the claims, such as that of a "security profile" and a "client computer's security policy," both of which are otherwise not recited in the claims of the '154 Patent.  Thus, neither of Juniper's proposed terms requires further construction.

## IV.    ARGUMENT

Finjan should be granted summary judgment of infringement because "there is no genuine dispute as to any material fact" that the Accused Products infringe Claim 1.  Fed. R. Civ. P. 56(a).  Summary judgment of infringement is also appropriate because "it is apparent that only one conclusion as to infringement could be reached by a reasonable jury."  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002)(citation omitted).  The overwhelming evidence demonstrates that the SRX Gateway, Sky ATP, and the ATP Appliance each "meet[] every claim limitation either literally or under the doctrine of equivalents," and thus summary judgment of infringement of Claim 1 is warranted.  *See Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005)(citation omitted).  Moreover, Juniper's Accused Products infringe even under Juniper's proposed claim constructions.

### A.    The SRX Gateway Infringes Claim 1

The SRX Gateway infringes Claim 1 of the '154 Patent because it is a gateway, which means that it typically receives both network traffic flowing into an internal network from the Internet and

8

also network traffic flowing out of internal networks.  Mitz. Decl., ¶¶15, 22.  This network traffic

includes potentially malicious files and links to malicious content.  *Id.*, ¶22.  The SRX Gateway

processes network traffic to identify URLs and files, where the URLs and files are inputs that reference

malicious content with function calls.  *Id.*  The SRX Gateway then transmits these inputs (i.e. URLs

and files) to a security computer, such as Sky ATP or the ATP Appliance.  *Id.*  The SRX Gateway then

receives  threat information from a security computer indicating whether it is safe to invoke the second

function with the input and to process the content (and subsequent communications associated with the

content) according to the security policy provided on the SRX Gateway.  *Id.*

### 1. The Preamble is Non-Limiting, but Still Met by the SRX Gateway.

The preamble of Claim 1 reads: "A system for protecting a computer from dynamically

generated malicious content, comprising."  While the preamble of Claim 1 of the '154 Patent is not

limiting for purposes of infringement,[5] the SRX Gateway meets the preamble because it analyzes

network traffic and content downloaded from the Internet to detect malicious files.  Mitz. Decl., ¶26.

This content includes webpages with references to web content, such as a link to a compromised site

or a malicious script.  Ex. 3, JNPR-FNJN_29017_00552589 (                                      )

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████  The system can detect unsafe

dynamically generated content by utilizing an external security computer to analyze the content using

advanced detection not available on the SRX Gateway.  *Id.*

### 2. The SRX Gateway has a Content Processor (Element 1(a)).

The SRX Gateway is a "content processor" because it processes content, including network

---

[5] A preamble is typically not necessary to understand the rest of the claim when it does not introduce
elements that are later referenced in the body of the claim.  *See Catalina Mktg. Int'l, Inc. v.
Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002)(preamble is non-limiting because it is not
necessary to understand the rest of the claim).

traffic entering the internal network from the Internet and also leaving the network.  *See* Ex. 9, JNPR-

FNJN_29002_00173278 at 83 ("



FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA



FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA



21    Thus, the SRX Gateway meets every limitation of Element 1(a) of Claim 1 of the '154 Patent.

22         **3.    The SRX Gateway has a Transmitter (Element 1(b)).**

23    The SRX Gateway meets element 1(b) of "a transmitter for transmitting the input to the

24    security computer for inspection, when the first function is invoked" because it sends the input (i.e.

25    URL/IP address or a file) to a security computer, such as Sky ATP or the ATP Appliance.

26    The SRX Gateway includes a transmitter that submits content referenced by the HTTP function

27    for analysis by Sky ATP.  Ex. 3, JNPR-FNJN_29017_00552589; Ex. 4, JNPR-

28    FNJN_29040_01042913-14; Mitz. Decl., ¶62.  The transmitter in the SRX Gateway is a network

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA

interface, through which the SRX Gateway communicates over a network with the security computer.

Mitz. Decl., ¶62.



FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA



Thus, SRX meets Element 1(b).

**4.     The SRX Gateway has a Receiver (Element 1(c)).**

The SRX Gateway meets element 1(c), which reads: "a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input" because it receives an indicator from a security computer, such as Sky ATP or the ATP Appliance, that indicates whether it is safe to invoke a second function with the input (i.e., URL or IP addresses).  In particular, the SRX Gateway receives a verdict from Sky ATP or the ATP Appliance, which includes

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA

**B.    Sky ATP Infringes Claim 1**

Juniper's Sky ATP also infringes Claim 1 of the '154 Patent by itself because it dynamically processes HTTP objects with its Malware Analysis Pipeline and Deception Adapters.  Sky ATP infringes Claim 1 in two different ways.  First, Sky ATP receives content that contains functions that are attempting to contact remote servers using an input such as a URL or a file (in the form of a file hash), and processes that content by

**1.    The Preamble is Non-Limiting, but Still Met by Sky ATP.**

Sky ATP meets the preamble of Claim 1 because it is a system for analyzing web communications to protect one or more computers.  Ex. 9, JNPR-FNJN_29002_00173283

Sky ATP accepts a large range of executable files for analysis, including HTML with JS that is able to dynamically generate malicious content.  Ex. 4 at JNPR-FNJN_29040_01042912.

15

## 2.  Sky ATP has a Content Processor (Element 1(a)).

Sky ATP includes "a content processor [] for processing content received over a network" because Sky ATP is a cloud-based service that receives content in the form of HTTP objects that are received by Sky ATP over a network.  Ex. 3, JNPR-FNJN_29017_00552582-83 (



Mitz. Decl., ¶45.

### 3.    Sky ATP has a Transmitter (Element 1(b)).

Sky ATP includes a transmitter that sends the inputs described above to

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.        CASE NO. 3:17-cv-05659-WHA



**4.     Sky ATP has a Receiver (Element 1(c)).**

Sky ATP includes a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA

1

2

3                                            Ex. 14, JNPR-FNJN_29017_00552909-11;

4 Mitz. Decl., ¶¶87-88.

5         **C.**       **The ATP Appliance Infringes Claim 1**

6         The ATP Appliance infringes Claim 1 of the '154 Patent because it processes web content

7 using dynamic analysis to protect computers from dynamically generated malicious content.  The ATP

8 Appliance infringes Claim 1 in two different ways: (

9

10

11

12

13

14

15

16

17

18

19

20

21                **1.**       **The Preamble is Non-Limiting, but Still Met by the ATP Appliance.**

22         The ATP Appliance meets the preamble of Claim 1 because it processes malicious content,

23 such as webpages or executable files, to protect one or more computers.  The ATP Appliance contains

24

25

26

27

28



Thus, ATP Appliance protects computers from dynamically generated malicious content and meets the preamble of Claim 1.

**2.     The ATP Appliance has a Content Processor (Element 1(a)).**

The ATP Appliance includes "a content processor [] for processing content received over a network" because it processes network content, including content received through web collectors. *Id.* at JNPR-FNJN_29018_00971216 (

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA



FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA

1

### 3.     The ATP Appliance has a Transmitter (Element 1(b)).

The ATP appliance contains transmitters "for transmitting the input to the security computer for inspection, when the first function is invoked."  Specifically,

### 4.     The ATP Appliance has a Receiver (Element 1(c)).

The ATP Appliance is a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.  As shown above,

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA



1
2
3
4
5
6
7
8
9
10
11
12

13  Thus, the ATP Appliance infringes Claim 1 of the '154 Patent.

14       **D.    The Accused Products Infringe under Juniper's Proposed Constructions**

15       The Accused Products infringe even under Juniper's proposed construction of the "content

16  processor …" and "safe" terms.  For the "content processor" element, Juniper's proposed construction

17  contends that it is located on a "client computer."  Dkt. No. 182 at 20.  The SRX Gateway, Sky ATP,

18  and ATP Appliance all meet this limitation.  First, these are all computer systems that include the

19  typical components of a computer, such as a processor, memory, and an operating system.  Mitz. Decl.,

20  ¶59.  Furthermore, each of the Accused Products operates as a "client" for part of its analysis.  The

21  SRX Gateway acts as a "client" because it receives content from an Internet server.  *Id.*  In the context

22  of computer architectures, a "client" is simply a component system that utilizes services from another

23  component referred to as a "server."  Ex. 21, Webster's Computer Dictionary, Tenth Ed. (2003) at 74

24  ("client … In a client/server network, a program that is designed to request information from a

25  server").  Here, the SRX Gateway operates as a "client computer" because it uses the content from an

26  Internet server, which is providing the service of retrieving and sending the content and also acts as a

27  client to the security computer, e.g., Sky ATP or ATP Appliance.  Sky ATP is considered as a client

28  computer because it simulates the client computer's environment during its dynamic analysis. Mitz.

Decl., ¶59.  Sky ATP is also considered as a client computer because receives the network

communications from an endpoint.  *Id.*  ATP appliance is considered as a client computer for similar

reasons as Sky ATP.  *Id.*

Additionally, the Accused Products also still infringe under Juniper's proposed construction of

the term "safe" because the

**E.      In the Alternative, Juniper Infringes under the Doctrine of Equivalents**

To the extent Juniper argues that the SRX Gateway, Sky ATP, and ATP Appliance do not

infringe because they do not include "invoking a second function with the input, only if a security

computer indicates that such invocation is safe," they infringe this element under the doctrine of

equivalents.  Mitz. Decl., ¶95.  The products infringe under the doctrine of equivalents because they

receive a

1

2

3

4

5 **V.      CONCLUSION**

6        For the reasons set forth above, Juniper infringes Claim 1 of the '154 Patent through making,

7 using, offering to sell, and selling in the United States the SRX Gateway, Sky ATP, and ATP

8 Appliance.

9                                                        Respectfully submitted,

10
Dated:  February 14, 2019              By:   */s/ Lisa Kobialka*

11                                                        Paul J. Andre (State Bar No. 196585)
                                                         Lisa Kobialka (State Bar No. 191404)

12                                                        James Hannah (State Bar No. 237978)
                                                         Kristopher Kastens (State Bar No. 254797)

13                                                        KRAMER LEVIN NAFTALIS

14                                                          & FRANKEL LLP
                                                         990 Marsh Road

15                                                        Menlo Park, CA  94025
                                                         Telephone:  (650) 752-1700

16                                                        Facsimile:  (650) 752-1800
                                                         pandre@kramerlevin.com

17                                                        lkobialka@kramerlevin.com

18                                                        jhannah@kramerlevin.com
                                                         kkastens@kramerlevin.com

19

20                                                        *Attorneys for Plaintiff*
                                                         FINJAN, INC.

21

22

23

24

25

26

27

28

FINJAN'S NTC. OF MOT. & 2ND EARLY MOT. FOR S.J.          CASE NO. 3:17-cv-05659-WHA