IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua Glucoft (SBN 301249)
jglucoft@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
Ingrid Petersen (SBN 313927)
ipetersen@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>          Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**DEFENDANT JUNIPER NETWORKS, INC.'S MOTION TO STRIKE NEW THEORIES FROM PLAINTIFF FINJAN, INC.'S MOTION FOR SUMMARY JUDGMENT** |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 2, 2019, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12, 19th Floor, of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup, Defendant Juniper Networks, Inc. ("Juniper") will and hereby does move for an order striking the new infringement theories plaintiff Finjan, Inc. ("Finjan") introduced for the first time in its Motion for Early Summary Judgment Regarding Infringement of Claim 1 of U.S. Patent No. 8,141,154 (Dkt. No. 369, the "Motion"). This motion is based on: this Notice of Motion; the Memorandum of Points and Authorities below; the Declaration of Joshua Glucoft and exhibits attached thereto; all documents in the Court's file; and such other written or oral argument as may be presented at or before the time this motion is heard.

The parties met and conferred regarding this issue but Finjan was unwilling to withdraw its previously undisclosed infringement theories and unable to provide specific citations in its infringement contentions showing where all of Finjan's new infringement theories were disclosed.

## STATEMENT OF RELIEF REQUESTED

Juniper seeks an order striking from Finjan's Motion and corresponding expert declaration all of the new infringement theories that Finjan presented for the first time in its Motion because Finjan failed to timely and properly disclose such theories as required under Patent L.R. 3.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Finjan disclosed its identification of "http://" as the claimed "first function" in its infringement contentions.

2. Whether Finjan disclosed its identification of ATP Appliance's SmartCore component as the claimed "content processor" and chain heuristics engine as the claimed "security computer" in its infringement contentions.

3. Whether Finjan disclosed its identification of Sky ATP's "verdict engine" as the claimed "security computer" in its infringement contentions.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 1 -

JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

4. Whether Finjan disclosed its identification of "whitelisting" and starting/stopping file analysis as the claimed "second function" in its infringement contentions.

5. Whether Finjan disclosed its identification of marking an object as "clean" or moving an object to "END" state as the claimed "second function" in its infringement contentions.

6. Whether Finjan disclosed its identification of transmitting a verdict that is independent of the client computer's security policy as infringing under the doctrine of equivalents in its infringement contentions.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 2 -

JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

**TABLE OF CONTENTS**

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. BACKGROUND ON THE '154 PATENT | 2 |
| III. NEW THEORIES | 2 |
|     A. New Theory No. 1: "Http://" As The Claimed "First Function" | 2 |
|     B. New Theory No. 2: "SmartCore" As The Claimed "Content Processor" And "Chain Heuristics" As The Claimed "Security Computer" In The ATP Appliance Infringement Theory | 4 |
|     C. New Theory No. 3: "Verdict Engine" As The Claimed "Security Computer" In The Sky ATP Infringement Theory | 6 |
|     D. New Theory No. 4: "White listing" And Starting/Stopping File Analysis As The Claimed "Second Function" In The Sky ATP Infringement Theory | 7 |
|     E. New Theory No. 5: Marking An Object As "Clean" And Moving An Object To "END" State As The Claimed "Second Function" In The ATP Appliance Infringement Theory | 8 |
|     F. New Theory No. 6: "Safe" As Infringing Under The Doctrine Of Equivalents | 8 |
| IV. CONCLUSION | 10 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- i -

JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys.*,
   No. 11–CV–02243–JST, 2014 WL 709865 (N.D.Cal. Feb. 23, 2014) ...................................11

*ASUS Comp. Int'l v. Round Rock Research, LLC*,
   No. 12–CV–02099–JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11,
   2014)..................................................................................................................................11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ...............................2, 11

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*,
   No. C 09-05659 WHA, 2016 WL 4269095 (N.D. Cal. Aug. 15, 2016)
   (Alsup, J.) .............................................................................................................................1

*Straight Path IP Group, Inc. v. Apple Inc.*,
   No. C 16-03582 WHA, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017)
   (Alsup, J.) .............................................................................................................................1

*Takeda Pharm. Co., Ltd. v. Twi Pharms., Inc.*,
   No. 13-CV-02420-LHK, 2015 WL 1227817 (N.D. Cal. March 17, 2015)..............................11

**Rules**

Patent Local Rule 3 .....................................................................................................................2

Patent Local Rule 3-1(c) .............................................................................................................1

Patent Local Rule 4 ...................................................................................................................11

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- ii -

JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Juniper respectfully requests that this Court strike from Finjan's Motion for Summary Judgment (Dkt. No. 369, unredacted at Dkt. No. 368-4, the "Motion") and the corresponding expert declaration of Dr. Michael Mitzenmacher six new infringement theories that Finjan did not disclose in its infringement contentions as required under Patent Local Rule 3-1(c).

Patent L.R. 3-1(c) requires that a patent owner provide accused infringers with infringement contentions that include a "chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality."  "The rules are designed to require parties to crystallize their theories of the case early in the litigation and to **_adhere to those theories once they have been disclosed_**." *Richtek Tech. Corp. v. uPI Semiconductor Corp.*, No. C 09-05659 WHA, 2016 WL 4269095, at *1 (N.D. Cal. Aug. 15, 2016) (Alsup, J.) (emphasis added) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-1987, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998) (quotation marks omitted)).  The rules "prevent a 'shifting sands' approach to patent litigation," *id.*, and bars patent owners from presenting new infringement theories during summary judgment: "[Plaintiff] will not, however, be allowed to argue on summary judgment or at trial that [defendant] directly infringes under the doctrine of equivalents using any theory that has not been adequately disclosed in the infringement contentions pursuant to our Patent Local Rules." *Straight Path IP Group, Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 3967864, at *3 (N.D. Cal. Sept. 9, 2017) (Alsup, J.).

Notwithstanding the prohibition against introducing new infringement theories on summary judgment, Finjan's Motion presents a bevy of previously undisclosed theories about what components of the accused Juniper products correspond to multiple limitations in Claim 1 of the '154 Patent, including the claimed "first function," "content processor," "security computer," and "second function." Finjan has also presented a new, previously undisclosed theory under the doctrine of equivalents.  Juniper respectfully requests that the Court strike from Finjan's Motion and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 1 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

corresponding expert declaration these previously undisclosed theories.[1]  *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694, at *3-4 (N.D. Cal. June 11, 2015) (striking a "different theory" in Finjan's expert's report that relied on a "different component" than the one identified in Finjan's infringement contentions).

## II.  BACKGROUND ON THE '154 PATENT

The text of Claim 1 of the '154 Patent is presented in full below.  The bold terms are ones for which Finjan introduced a new theory in its Motion that it did not disclose in its infringement contentions:

> 1. A system for protecting a computer from dynamically generated malicious content, comprising:
>
> a **content processor** (i) for processing content received over a network, the content including a call to a **first function**, and the call including an input, and (ii) for invoking a **second function** with the input, only if a **security computer** indicates that such invocation is safe;
>
> a transmitter for transmitting the input to the **security computer** for inspection, when the **first function** is invoked; and
>
> a receiver for receiving an indicator from the **security computer** whether it is safe to invoke the **second function** with the input.

Ex. 4 ('154 Patent).  A more complete overview of the '154 Patent is presented in Juniper's concurrently filed opposition to Finjan's motion for summary judgment.

## III.  NEW THEORIES

### A.  New Theory No. 1: "Http://" As The Claimed "First Function"

One of the infringement theories Finjan advances in its Motion identifies "http://" as the claimed "first function."  Dkt. No. 368-4 at 10, 16, 20.  Finjan, however, did not identify this infringement theory in its infringement contentions.

---

[1] Juniper addresses herein only certain of the new theories presented by Finjan in its Motion that Finjan did not disclose in its infringement contentions.  Juniper does not admit that any other infringement theories presented in Finjan's Motion that are not addressed herein were timely or properly disclosed as required under Patent L.R. 3, nor does Juniper agree that Finjan may amend its infringement contentions in any manner.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414                                             - 2 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

For each accused product (SRX, Sky ATP and ATP Appliance), Finjan's Motion advances one infringement theory where the claimed "first function" is "denoted by [the] 'http://' prefix and [the] input is the address of a site (such as 'example.com/malware.exe') as indicated through a[] URL or IP address or the file hosted at the URL/IP address." Dkt. No. 368-6 (Mitzenmacher Dec.) at ¶ 22; *see also* Dkt. No. 368-4 (Motion) at 10 (SRX), 16 (Sky ATP) and 20 (ATP Appliance). But, while Finjan's infringement contentions mention the term "http" in connection with the "first function," it is clear in each instance (each of which is excerpted in full below) that Finjan did not refer to a function with an "http://" prefix and is instead referring to *other* function calls which can be embedded in HTTP (*i.e.*, web) communications:

> "Examples of *the first functions are JavaScript and iframes* that can be embedded in HTTP communications and are used to obfuscate or hide redirects to download malicious code/shellcode/payloads from a compromised webpage, such as 'drive-by downloads.'"

Ex. 1 (SRX) at 2 (emphasis added); Ex. 2 (Sky ATP) at 4 (identical disclosure); Ex. 3 (ATP Appliance) at 2 (identical disclosure).

> "This web or HTTP content can include a call to a first function, where *the call to a first function can be a number of different function calls written in JavaScript (e.g. eval, unescape, document.write, OnLoad, OnClick, OnMouseover, OnChange) and other functions that are used for obfuscation, redirection, heap spraying, (e.g. NOP slide), payload (e.g. ROP, download execute malware)*."

Ex. 1 (SRX) at 2 (emphasis added); Ex. 2 (Sky ATP) at 4 (identical disclosure); Ex. 3 (ATP Appliance) at 2 (identical disclosure).

> "In another example, *the first functions (stated above)* are used to conceal the intent to invoke a second function with the input (e.g. scripts or embedded malicious iframe in order to obfuscate the malicious link or URI, such as document.write('<iframe src='http://cool.cn/in.cgi?'width=1 height =1 style ='visibility: hidden'></iframe>')."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

Ex. 1 (SRX) at 3 (emphasis added); Ex. 2 (Sky ATP) at 5 (identical disclosure); Ex. 3(ATP Appliance) at 3 (identical disclosure).[2]  And, while Finjan uses the letters "http" in other sections of its infringement contentions, those additional references are limited to the claimed "***second* function**" or the input to that ***second*** function.  *See, e.g.*, Ex. 1 at 4 ("The content processor will invoke a ***second function*** (***e.g., HTTP's file download***) with the input (e.g., URL) if the security computer indicates that such invocation is safe." (emphasis added)).  Finjan's infringement contentions simply do not disclose a theory wherein the "http://" prefix is the claimed "first function."[3]

### B. New Theory No. 2: "SmartCore" As The Claimed "Content Processor" And "Chain Heuristics" As The Claimed "Security Computer" In The ATP Appliance Infringement Theory

With respect to the accused ATP Appliance product, Finjan's Motion identifies the SmartCore component as the claimed "content processor" and the chain heuristics engine as one of the claimed "security computers."  This is another new theory that Finjan did not disclose in its infringement contentions.

Finjan's infringement contentions for the ATP Appliance unequivocally identify ATP Appliance's SmartCore component as the claimed "security computer" that receives an input to inspect for safety and then transmits an indication of safety back to the claimed "content processor."  *See* Ex. 3 at 7 ("***SmartCore security computer***") (emphasis added); *see also id*. at 1 ("transmit the input to a SmartCore component[] of an ATP Appliance, which operates as a security computer"), 2 ("SmartCore technology [will] return a result that indicates whether the content is safe to invoke"), 4 ("ATP Appliances interface with a security computer, including the SmartCore analytics engine"),

---

[2]  Finjan's infringement contentions never use the term "prefix," let alone refer to an http "prefix" as the claimed "first function."  *See generally* Ex. 1 (SRX); Ex. 2 (Sky ATP); Ex. 3 (ATP Appliance).

[3]  Finjan's expert, Dr. Mitzenmacher, also discusses certain "HTTP functions" that are associated with HTTP, namely the "get" method (Dkt. No. 368-6 at ¶ 13) and the "post" method (*id*. at ¶ 68). But the terms "HTTP function," "get" and "post" never even appear in any of Finjan's infringement contentions (*see generally* Exs. 1, 2 and 3).  Therefore, any infringement theory relying on "HTTP functions" that are associated with HTTP, such as "get" or "post," are also new and should be stricken.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

5 ("ATP Appliances will perform a second function only if the SmartCore components determine that the invoking this function is safe."). Finjan's infringement contentions also identify the ATP Appliance's "chain heuristics" engine as part of the claimed "content processor" that is used to invoke the second function if the SmartCore security computer indicates that such invocation is safe:

> "***ATP Appliances invoke a second function*** with this input, only if ATP Appliances indicate that such invocation is safe. In particular, ***ATP Appliances will utilizing using*** [*sic*] ***chain heuristics*** to identify malicious traffic, including identifiers of web pages being directed to dubious links. ATP Appliances use this information to perform browser behavior analysis in a ***SmartCore security computer*** . . . ."

Ex. 3 at 6-7 (emphasis added). Thus, Finjan's infringement contentions make clear that ATP Appliance's "chain heuristics" engine is part of the claimed "content processor" that transmits the input to the SmartCore acting as the claimed "security computer," which in turn checks if it is safe for the ATP Appliance "content processor" (which includes the chain heuristics engine) to invoke the second function with the input. *See id.*

Finjan's motion for summary judgment swaps these theories, however, turning the SmartCore component into the claimed "content processor" and the "chain heuristics" engine into the claimed "security computer." *See* Dkt. 368-4 at, *e.g.*, 20 ("The ATP Appliance's ***SmartCore is a content processor***" and "ATP Appliance uses two different ***security computers*** that indicate whether invoking a second function with the input is safe: . . . a ***chain heuristics*** engine . . . .") (emphasis added). These changes were made in tandem because when Finjan changed the SmartCore component from acting as the "security computer" in its infringement contentions to the "content processor" in its motion for summary judgment, Finjan's Motion needed to identify a new security computer to take the place previously occupied by the SmartCore component. The following table presents Finjan's flipped position side by side:

|  | **Infringement Contentions (Ex. 3)** | **Motion for Summary Judgment (Dkt. No. 368-4 at 20)** |
|---|---|---|
| **SmartCore** | • "SmartCore security computer" (p. 7) | • "The ATP Appliance's SmartCore is a content processor" |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 5 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

| Chain Heuristics | • "ATP Appliances invoke a second function with this input, only if ATP Appliances indicate that such invocation is safe. In particular, ATP Appliances will utilizing using [sic] chain heuristics to identify malicious traffic, including identifiers of web pages being directed to dubious links. ATP Appliances use this information to perform browser behavior analysis in a SmartCore security computer" (p. 6-7) | • "The ATP Appliance uses two different security computers that indicate whether invoking a second function with the input is safe: (1) Cyphort's Reputation Server and (2) a chain heuristics engine" |
|---|---|---|

The allegations in Finjan's motion for summary judgment that the "chain heuristics" engine comprises the claimed "security computer" and that the SmartCore component comprises the claimed "content processor" is thus a new theory not found in Finjan's infringement contentions.

### C. New Theory No. 3: "Verdict Engine" As The Claimed "Security Computer" In The Sky ATP Infringement Theory

Finjan's Motion's infringement theory against the accused Sky ATP service identifies a new "security computer" that was not previously identified in Finjan's infringement contentions. Specifically, Finjan's Motion identifies the "Verdict Engine" as one of two potential "security computers" in the Sky ATP infringement scenario. *See* Dkt. No. 368-4 at 16 ("***Verdict Engine as a security computer***" (emphasis added)). But Finjan's infringement contentions related to Sky ATP never even use the term "verdict engine," much less identify it as the required "security computer." *See generally* Ex. 2. Rather, Finjan's infringement contentions related to Sky ATP identify completely different components as being the claimed "security computer," none of which are "verdict engines": "security computer including spotlight secure cloud service, C&C, GeoIP, cache, AV, or static analysis, additional dynamic analysis, and/or YARA." *Id*. at 7. Finjan's infringement contentions thus expressly identify a number of components that allegedly comprise the claimed "security computer" in Sky ATP, but none of them are part of Sky ATP's "verdict engine." Finjan cannot introduce this new theory on summary judgment.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

### D. New Theory No. 4: "White listing" And Starting/Stopping File Analysis As The Claimed "Second Function" In The Sky ATP Infringement Theory

Finjan's Motion also identifies two new "second functions" with respect to the Sky ATP infringement theory that Finjan did not previously disclose in its infringement contentions. Specifically, Finjan's Motion identifies the following two potential "second functions": (1) "adding the URL/IP address or the file hash to the white list" (Dkt. No. 368-4 at 16), and (2) functions that start or stop the analysis of a file (Dkt. No. 368-4 at 16-17[4]). But as shown below in the complete description of the alleged "second function" in Finjan's Sky ATP infringement contentions, Finjan simply did not disclose adding anything to a white list, nor did Finjan disclose starting or stopping the analysis of a file:

> Second functions are typically a subsequent function that causes a download from the same URL such as connecting to or download files from a remote command and control (CnC) server using HTTPSendRequest, InternetReadFile with the input (e.g. URL, IP, file). The content processor will invoke a second function (e.g. HTTPS file download) with the input (e.g. URL) if the security computer indicates that such invocation is safe.
>
> Second functions include sending results to a protected computer for automatically downloading from an obfuscated remote location and/or launching concealed input using certain combinations of JavaScript, iFrame injections and/or PDF (e.g. OpenAction or Launch). Such examples include JavaScript and OpenAction functions within PDFs for launching or downloading code for exploiting vulnerabilities within Adobe Reader and Adobe Acrobat such as malicious JavaScript, shellcode, drive-by download, droppers, installers and malicious binaries. Examples of such functions include URLDownloadToFile() for dropping malicious binaries; heap spraying functions including memory-related functions using PROCESS_MEMORY_COUNTERS; JavaScript functions in PDF for connecting to the Internet or making a network connection such as app.mailmsg() and app.launchURL(), as well as CONNECT-related and LISTEN-related functions; functions for executing

---

[4] A "second function with the input, which in this example is either an 'early exit' from scanning the sample (i.e., the sample is safe, stop scanning), invoking a subsequent processing (i.e., the sample appears to be safe but will need more testing), or to mark the sample as done." Dkt. No. 368-4 at 17; *see also* Dkt. No. 368-4 at 16 ("invoke the second function . . . to stop the analysis on the input without going further").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 7 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

> malware via DLL injection such as CreateRemoteThread(); and functions for executing dropped malware, such as NtCreateProcess().

*See* Ex. 2 at 5-6.  Indeed, the term "white list" does not even appear in Finjan's infringement contentions related to Sky ATP, nor do the terms "start," "subsequent processing," "exit," "stop," "done," "finish," or "terminate."  *See generally* Ex. 2.  The identification of (i) adding anything to a "white list" and (ii) starting or stopping the analysis of a file as comprising the claimed "second function" are thus new, previously undisclosed theories.

### E. New Theory No. 5: Marking An Object As "Clean" And Moving An Object To "END" State As The Claimed "Second Function" In The ATP Appliance Infringement Theory

Finjan's Motion also advances two new infringement theories for the "second functions" with respect to the ATP Appliance.  In particular, Finjan's Motion identifies the following two potential "second functions": (1) "moving the object to 'END' state," and (2) "marking the object as 'clean.'"  Dkt. No. 368-4 at 21.  However, Finjan's infringement contentions related to the ATP Appliance do not even use the terms "end," "state," "clean," or any alternatives for these terms that convey the same notion.  *See generally* Ex. 3.  Instead, Finjan's infringement contentions identify the exact same "second functions" for the ATP Appliance that Finjan identified in its Sky ATP infringement contentions, which are quoted above in full.  These contentions do not include moving an object to an "end" state or marking an object as "clean."  *See* Ex. 3 at 3-4.  Therefore, as with Sky ATP, the identification of (i) moving an object to an "end" state and (ii) marking an object "clean" as comprising the claimed "second function" are new theories not found in Finjan's infringement contentions.

### F. New Theory No. 6: "Safe" As Infringing Under The Doctrine Of Equivalents

Finjan also presents a new doctrine of equivalents ("DOE") theory in its Motion.  Claim 1 of the '154 Patent requires that the security computer transmit to the content processor an indication that it is "safe" to invoke the second function.  Juniper proposed a construction of "safe" that is identical to the express definition of the term in the specification: "the input's security profile does not violate the client computer's security policy."  '154 Patent at 14:52-54; *see also id.* at, *e.g.*,

1   11:41-43; Dkt. No. 182 at 23-25 (claim construction brief regarding the construction of the term). In its Motion, Finjan proposes a DOE argument for the "safe" limitation in the event that the Court adopts Juniper's construction, arguing that a risk level score (known as a "verdict") that is not a comparison against a client computer's security policy is *equivalent* to a determination of what is "safe." *See* Dkt. No. 368-4 at 24-25. Finjan did not present this DOE theory in its infringement contentions.

Finjan's DOE allegations in its infringement contentions are effectively identical across all of the accused products and is reproduced below in its entirety, using Finjan's SRX infringement contentions as an example:

> "SRX Gateways meet this element under the doctrine of equivalents. SRX Gateways perform the same function because they receiving incoming content inspect the content using an engine, such as antivirus, static analysis, and dynamic analysis, for scanning, and proceed with the function calls of the content is determined safe. This is the same function as the claim element, which receives content, uses a security computer to determine if the invocation is safe, and invokes a second function with the input. In this way, the function of having the content received, inspected by the engine and determined safe, the second function with the input can be invoked.
>
> SRX Gateways perform the same function the same way because they receive incoming content that include a call to a first function and an input, and an engine, as antivirus, static analysis, and dynamic analysis, for scanning incoming content to determine whether the content is safe, and for invoking the second function with the input. This is the same ways as the claim element, which receives content, uses a security computer to determine if the invocation is safe, and invokes a second function with the input. SRX Gateways products perform this way because they receive incoming content with a call to a first function and an input, use scanners to determine whether the input is safe using an engine, and invoking the second function with the input. In this way, the way of receiving the content with a first function and an input and the invocation of the second function after a security computer has inspected the input has been accomplished.
>
> SRX Gateways achieve the same results because they modify content that they receiving incoming content inspect the content using an engine, as antivirus, static analysis, and dynamic analysis, for scanning, and proceed with the function calls of the content is determined safe. This is the same result as the claim element, which receives content, uses a security computer to determine if the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414                                    - 9 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

> invocation is safe, and invokes a second function with the input. SRX Gateways achieve this results because they invoke the second function with the input after scanning determines the first function call with input is safe. In this way, the results of receiving the content with a first function and an input and the invocation of the second function after a security computer has inspected the input has been accomplished.

Ex. 1 (SRX) at 9-10; Ex. 2 (Sky ATP) at 6-7 (substantially identical disclosure); Ex. 3 (ATP Appliance) at 8-9 (substantially identical disclosure). Finjan's barebones DOE allegations essentially parrot the limitations of the claim itself. They do not, for example, even use the term "verdict," and they contain no suggestion that the transmission of two very different types of information—a simple verdict score on one hand (what the accused products do) versus the result of a comparison against a client computer's security policy on the other hand (what the claim requires)—are equivalent. Therefore, Finjan's DOE argument in its Motion is a new theory not found in its infringement contentions, and Finjan should not be permitted to present such a new theory in its Motion.

## IV.  CONCLUSION

Finjan failed to disclose numerous infringement theories in its infringement contentions that it now wants this Court to consider on summary judgment, notwithstanding that Juniper produced source code for the SRX and Sky ATP in March of 2018 and source code for ATP Appliance (which was added to the case much later than the other two products[5]) in June of 2018. Declaration of Joshua Glucoft ("Glucoft Dec.") ¶ 6. Finjan did not seek leave to amend its infringement contentions to add these new theories before it filed its motion for summary judgment. Instead, only after Juniper notified Finjan that Juniper believed many of the theories in Finjan's Motion were new, Finjan asked Juniper if Juniper would agree to permit Finjan to supplement its infringement contentions. Glucoft Dec. ¶ 7. Juniper requested that Finjan provide proposed supplemental infringement contentions so that Juniper could understand the nature of Finjan's desired

---

[5] *See* Dkt. No. 85 (May 11, 2018 Order granting Finjan leave to amend its complaint to include the ATP Appliance); Dkt. No. 88 (May 18, 2018 First Amended Complaint including the ATP Appliance).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414                                    - 10 -
MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

supplementation, but Finjan never provided Juniper with that information. *Id*. Finjan's inexplicable delay in disclosing its new infringement theories and seeking to supplement its infringement contentions represent a clear lack of diligence. Because Finjan "was not diligent, the Court, for the reasons explained above, may grant [Juniper's] motion to strike without also considering prejudice." *See Takeda Pharm. Co., Ltd. v. Twi Pharms., Inc.*, No. 13-CV-02420-LHK, 2015 WL 1227817, at *8 (N.D. Cal. March 17, 2015).

Even if the Court does consider prejudice in its analysis, however, Juniper has been substantially prejudiced by Finjan's belated introduction of new theories in its motion for summary judgment for at least two reasons. First, Juniper had only four weeks to respond to completely new theories without sufficient notice to guide its earlier discovery efforts, in particular claim construction discovery—which closed last year in accordance with Patent L.R. 4. *See Blue Coat Sys.*, 2015 WL 3640694, at *2 ("If the theory is new, prejudice is 'inherent in the assertion of a new theory after discovery has closed.'" (quoting *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11–CV–02243–JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014)). Second, Juniper served invalidity contentions last year specifically in view of Finjan's infringement contentions; if the Court permits Finjan's newly asserted infringement theories and implicit claim constructions, then an entirely different set of prior art is available to invalidate the claim (as discussed in Juniper's concurrently filed opposition to Finjan's motion for summary judgment).

Finjan failed to diligently seek to amend its infringement contentions, violated the Patent Local Rules by introducing new theories of infringement for the first time in its motion for summary judgment, and as a result, substantially prejudiced Juniper. Finjan should not be able to present these new theories in its motion for summary judgment just as a "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *See ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12–CV–02099–JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014). The Court should strike all of the new theories discussed above from Finjan's motion for summary judgment and corresponding expert declaration.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414                          - 11 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)

In the alternative, Juniper seeks leave to supplement its invalidity contentions to address Finjan's substantially broader infringement theories that implicate additional prior art.

Dated:  March 14, 2019                    Respectfully submitted,

                                               IRELL & MANELLA LLP

                                               By:   */s/ Rebecca L. Carson*
                                                      Rebecca L. Carson
                                                      *Attorneys for Defendant*
                                                      Juniper Networks, Inc.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10649414

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES
ISO JUNIPER'S MOTION TO STRIKE
(Case No. 3:17-cv-05659-WHA)