**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CALIFORNIA 92660-6324

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (949) 760-5222
RCarson@irell.com

March 25, 2019

Hon. William Alsup
U.S. District Court, Northern District of California

    Re:    <u>Dkt. No. 394, Finjan, Inc. v. Juniper Networks, Inc.,
            Case No. 3:17-cv-05659-WHA (N.D. Cal.)</u>

Dear Judge Alsup:

    Finjan's letter brief is factually incorrect because Juniper has already informed Finjan that Juniper will fully comply with the Court's Order at Dkt. No. 399 by making its entire source code available for review on March 28. In addition, Juniper will agree to print up to 100 pages of that source code for Finjan to attach to its reply brief, notwithstanding that (1) this far exceeds the number of pages that Finjan is allowed to attach as exhibits to its reply brief, and (2) Juniper has already printed for Finjan 750 pages of source code—the maximum number of pages to which Finjan is entitled under the Protective Order in this case. Dkt. 149 at 15 (750 page limit). In view of the above, it seems likely this "dispute" could have been avoided had Finjan elected to meet-and-confer with Juniper before sending its letter to the Court.[1]

    Even before Finjan sent its previous letter (Dkt. No. 394) to the Court, Juniper was making arrangements to produce its entire source code on March 28 and 29, which were dates that Finjan itself had requested from Juniper. *See* Dkt. No. 398-2 (Finjan: "Finjan also requests to review the source code on March 28 and 29."). Given the Court's March 19 Order, Juniper informed Finjan that it will make the code available on March 28. *See* Dkt. No. 399 (Court: "On March 28 at 9 A.M. (or any earlier date agreed upon in writing by the parties), defendant Juniper Networks, Inc. shall produce to Finjan all of the source code requested by Finjan with respect to the instant discovery request."). Juniper is making the entire source code available to avoid any potential dispute over whether there are portions of the code to which Juniper is citing but is not producing.

    Juniper's March 28 production in electronic format of the complete source code will hopefully prevent Finjan from manufacturing additional discovery disputes. Tellingly, Finjan's three discovery-related motions in a single week (Dkt. Nos. 394, 400, and 401) indicate that Finjan has switched litigation tactics as summary judgment has progressed: Instead of claiming that its substantive arguments on summary judgment are strong, Finjan has filed a number of discovery-related motions suggesting that the weakness of its arguments should be blamed on alleged inadequate discovery.[2] To support this litigation tactic, Finjan has made increasingly burdensome

---

[1] Finjan filed this letter brief after sending just a single email and without even attempting to confer via telephone, as required under L.R. 37-1(a).

[2] As the Court is aware, Juniper made its complete source code available for inspection by Finjan for a full 13 days from December of 2018 through February of 2019 (before Finjan filed its opening

discovery demands in an attempt to manufacture discovery disputes. A perfect example of this is the source code that Juniper offered to voluntarily produce to Finjan. As Juniper explained in its last letter to the Court (Dkt. No. 398), Juniper's expert had referred to several functions in the source code that were similar, but only attached the source code for representative functions to comply with the Court's limitations on pages that can be submitted as exhibits. The source code for the remaining functions was less than 400 pages. After the Court issued its March 19 Order, however, Finjan made a new request, asking Juniper for a "[c]omplete copy of the source code" for a number of "*directories*" that go well beyond the specific functions cited in Dr. Rubin's declaration and are many thousands—or potentially tens of thousands—of pages long.[3] *See* Dkt. 400-1 at 2 (emphasis added). While Dr. Rubin mentioned these directories primarily in his overview of the accused technology, he did not cite to or use any specific functions within these directories in reaching the specific opinions set forth in his declaration. *See* Dkt. No. 389-6 at ¶¶ 34-36, 61 (directories cited by Dr. Rubin). Thus, it appears that Finjan's request for thousands (or tens of thousands) of pages of physical source code is designed to (1) impose an undue burden on Juniper, (2) set up a potential future discovery dispute in which Finjan claims that Juniper produced the "wrong" source code, and (3) do an end run around the source code printing limitations to which Finjan and Juniper agreed in the Stipulated Protective Order. The way to avoid these potential problems is for Juniper to produce its entire source code in electronic format (again) on a date Finjan requested—which is precisely what Juniper has agreed to do.

Respectfully submitted,

 */s/ Rebecca L. Carson*
Rebecca L. Carson
IRELL & MANELLA LLP
*Attorneys for Defendant*
Juniper Networks, Inc.

---

summary judgment motion). Dkt. No. 398-1. Any deficiencies in discovery alleged by Finjan are therefore contrived because Juniper has been very forthcoming and cooperative during discovery.

[3] The directories requested by Finjan are massive. For example, the Cyphort-protected/Cortex/CyOS/Cortex/OsxCooker directory that is cited by Dr. Rubin as general background regarding the operation of the ATP Appliance (Dkt. No. 389-6 at ¶ 36) contains 414 files, each of which in turn is generally comprised of many dozens of pages of source code.