PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:17-cv-05659-WHA<br><br>**PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      May 9, 2019<br>Time:      8:00 a.m.<br>Courtroom: 12, 19th Floor<br>Before:    Hon. William H. Alsup |

**REDACTED VERSION OF DOCUMENTS FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS............................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION ................................................................................ 1

RELIEF REQUESTED ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      INTRODUCTION ....................................................................................................... 2

II.     FACTUAL BACKGROUND ...................................................................................... 3

        A.      Juniper Concealed Key Documents From the December 2018 Trial ............... 3

        B.      Juniper Made A Belated Production of Technical Documents About Joe
                Sandbox............................................................................................................. 5

        C.      Juniper Misrepresented to the Court and Jury That No Database Like the Joe
                Sandbox File Database Existed.......................................................................... 7

        D.      Juniper Has Not Offered Any Colorable Excuse for Its Misconduct. ............. 8

        E.      This Is Not Juniper's First Offense with Respect to Discovery Misconduct.... 9

III.    ARGUMENT ............................................................................................................... 9

        A.      Juniper's Withholding of Relevant Documents Responsive to Finjan's 2018
                Document Requests Is Newly Discovered Evidence. ....................................... 9

                1.      Juniper Concealed Relevant Documents Containing New Evidence in
                        Spite of Finjan's Diligence. ................................................................. 10

                2.      Juniper's Concealed Discovery Is Sufficiently Material That It Would
                        Change the Outcome of This Case........................................................ 13

        B.      Juniper's Concealment of the Joe Sandbox Documentation Constitutes
                Discovery Misconduct Warranting Relief from Judgment............................. 15

        C.      Finjan Suffered Substantial Prejudice as a Result of Juniper's Gamesmanship........... 17

IV.     CONCLUSION .......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beckway v. DeShong*,
No. C07-5072 TEH, 2012 WL 1355744 (N.D. Cal. Apr. 18, 2012) ............................................... 10

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*,
833 F.2d 208 (9th Cir. 1987) .................................................................................................. 9

*Feature Realty, Inc., v. City of Spokane*,
331 F.3d 1082 (9th Cir. 2003) ................................................................................................ 9

*Immersion Corp. v. Sony Computer Entm't Am., Inc.*,
No. C 02-0710 CW, 2006 WL 618599 (N.D. Cal. Mar. 8, 2006) .................................... 15

*Jones v. Aero/Chem Corp.*,
921 F.2d 875 (9th Cir. 1990) ................................................................................................ 15

*Nehara v. California Dep't of Corr. & Rehab.*,
650 F. App'x 495 (9th Cir. 2016) ......................................................................................... 10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
No. 08CV335-IEG NLS, 2010 WL 4314271 (S.D. Cal. Oct. 26, 2010) .......................... 13

*Robinson v. Delgado*,
No. CV 02-1538 NJV, 2010 WL 3448558 (N.D. Cal. Aug. 31, 2010), *aff'd sub nom.*
*Robinson v. Lamarque*, 581 F. App'x 695 (9th Cir. 2014) ................................................ 10

*Webster v. U.S.*,
93 Fed.Cl. 676 (Ct. Cl. 2010) ............................................................................................... 10

*Yesh Music v. Lakewood Church*,
727 F.3d 356 (5th Cir. 2013) ................................................................................................ 10

**Other Authorities**

12 James Wm. Moore et al., Moore's Federal Practice § 60.02[2] (3d ed.2004) .................................. 10

Fed. R. Civ. P. 60 ........................................................................................................................ *passim*

Fed. R. Civ. P. 34 ............................................................................................................... 4, 11, 16

Fed. R. Civ. P. 50 ................................................................................................................... 13

Fed. R. Civ. P. 59 ............................................................................................................. 12, 13

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on May 9, 2019, at 8:00 a.m., or as soon thereafter as counsel may be heard by the Honorable William Alsup in Courtroom 12, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Finjan, Inc. ("Finjan") will and hereby does move the Court for an order granting its motion for relief from judgment pursuant to Federal Rule of Procedure 60(b). This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the trial record, the pleadings and papers on file, and any evidence and argument presented to the Court.

**RELIEF REQUESTED**

Pursuant to Federal Rule of Civil Procedure 60(b)(2)-(3), Finjan moves for relief from the jury verdict entered in this action on December 14, 2018 and this Court's subsequent denial of Finjan's Motion for Judgment as a Matter of Law on March 11, 2019 (Dkt. Nos. 333, 387, respectively), due to Juniper's concealment of key evidence that proved that Sky ATP had a "database" as recited in Claim 10 of U.S. Patent No. 8,677,494 ("the '494 Patent"), which was the pivotal issue at the December 2018 trial. Juniper had no reasonable grounds to delay production of such information. Given this newly discovered evidence and Juniper's discovery misconduct, a new trial should be ordered.

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Finjan is entitled to relief from the jury verdict found on December 14, 2018 (Dkt. No. 333, "Verdict") and this Court's subsequent order denying Finjan's Motion for Judgment as a Matter of Law on March 11, 2019 (Dkt. No. 387, "Order") because Juniper concealed key evidence during discovery that proved that Sky ATP had a "database" as recited in Claim 10 of U.S. Patent No. 8,677,494 ("the '494 Patent"), which was the pivotal issue to be determined at the December 2018 trial ("the December trial"). Juniper's concealment prevented both the Court and the jury from evaluating this key evidence of how and where Sky ATP satisfies the "database" element of Claim 10.

Specifically, Juniper withheld key, highly relevant and directly responsive technical documents regarding Joe Sandbox █████████████████████████████ that demonstrated that Joe Sandbox in Sky ATP uses a "database" to store the results of its analysis, as recited in Claim 10 of the '494 Patent. These documents directly refuted Juniper's only non-infringement defense at the December trial and yet, Juniper has no explanation for why it produced these Joe Sandbox documents nearly two months *after* the December 2018 trial, knowing that such documents were critically important to the infringement case presented in the December 2018 trial.

Particularly troubling is the fact that Juniper has no excuse for its belated production, as Finjan sought this information over a year ago in discovery. In response to written discovery requests, Juniper explicitly represented in 2018 that it had completed its production of any documents relevant to Sky ATP, which is demonstrably false based on Juniper's February 2019 production. Moreover, Juniper's Sky ATP engineers testified at deposition that ████████████████████████ █████████████████████████.

Juniper's inexcusable belated production of these key documents is precisely the type of newly discovered evidence contemplated by Rule 60, which warrants relief from judgment and an order for a new trial. Without this evidence, Finjan was severely prejudiced at trial, as this key evidence undermined Juniper's sole non-infringement defense. Such conduct should not be tolerated.

2

II.     **FACTUAL BACKGROUND**

A.      **Juniper Concealed Key Documents From the December 2018 Trial**

Despite its representation that its responses and production of documents was completed, Juniper withheld twelve highly relevant documents regarding Joe Sandbox database ("the Joe Sandbox documents"), a ███████████████████████, such that Finjan could not present them at the December 2018 trial.[1]  These documents, which included the Joe Sandbox User Guide ("User Guide") and Joe Sandbox Interface Guide ("Interface Guide"), described the technical operations of the Joe Sandbox database (███████████████████) which is an internal database for storing security profiles according to a rigid directory schema.  *See* Declaration of Kristopher Kastens in Support of Finjan's Motion for Relief from Judgment ("Kastens Decl."), Ex. 1, at JNPR-FNJN_29043_01517143-44 (User Guide regarding the "Joe Sandbox File Database"); Ex. 2, at JNPR-FNJN_29043_01517207-08 (Interface Guide describing storage of dynamic analysis results).  Significantly, these belatedly produced documents directly refuted Juniper's sole non-infringement argument at the December 2018 trial regarding whether Sky ATP had a "database" of Claim 10 of U.S. Patent No. 8,677,494 ("the '494 Patent") that had a schema.  Dkt. No. 189 (Order Granting in Part Early Motion for Summary Judgment) at 16 (defining "database" as "a collection of interrelated data organized according to a database schema to serve one or more applications"); *id.* at 20 (identifying issues for trial).

Juniper's production of these documents in February 2019 is inexcusable because they were responsive to numerous discovery requests that Finjan served over a year earlier.  For example, on February 23, 2018, Finjan requested production of all documents relating to any database or database schema in Juniper's accused products, which included Sky ATP, and all technical documentation relating to how dynamic analysis was performed in Sky ATP.  Kastens Decl., Ex. 3 at 7, 10 (Request for Production Nos. 13, 38).  Juniper agreed to produce documents in response to these Requests.  *Id.*, Ex. 4 at 30-32, 78-80.  Finjan also served specific document requests for information regarding operation of Joe Sandbox.  Specifically, Finjan served Requests for Production Nos. 87 through 89 on

---

[1] Joe Sandbox is a dynamic analysis system that is licensed and sold by Joe Security LLC ("Joe Security"), a Swiss company. ████████████████████████████████████████████████  ████████████████  *See, e.g.*, Kastens Decl., Ex. 8 (5/9/18 Tenorio Dep. Tr.) at 126:12-21 (testifying that ████████████████████████████████████████████████████████████████████████████

July 11, 2018, seeking all documents, communications, and things relating to "***the use or incorporation of Joe Sandbox or Joe Security into Sky ATP***," "***any product exchanged or service provided between Juniper and Joe Security***," and "[a]ll ***Documents, manuals, guides, or other documents provided by Joe Security to Juniper***, including documents descri[bing] the ***operation, use, or API*** of any Joe Security product, ***including its Joe Sandbox*** …"  Kastens Decl., Ex. 5 at 6 (emphasis added).   Juniper's response to these requests was the false assertion that Juniper had completed its Sky ATP production and there was nothing further that was responsive to produce. Kastens Decl., Ex. 6 at 7-11.  There is no dispute that the belatedly produced Joe Sandbox documents were responsive to these requests and that Juniper never asserted that it was withholding documents responsive to either of these Requests, as is explicitly required pursuant to Rule 34(b)(2)(C) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest.")  The documents that Juniper did produce prior to the December 2018 trial regarding Joe Sandbox were ██████████████████████████████████████████.[2]  *See, e.g.*, Kastens Decl., Ex. 7 (██████████████████████

In addition to document requests, Finjan also served, on April 27, 2018, an interrogatory on Juniper to "identify and describe ***all Databases that are incorporated or used, either directly or indirectly***, by the Accused Instrumentalities."  Kastens Decl., Ex. 9 at 6 (Interrogatory No. 12) (emphasis added).  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████"  ██████ Kastens Decl., Ex. 10 at 13-14. ██████████████████████████████████████████████████████████. *See id.*; *compare* Ex. 1 at JNPR-FNJN_29043_01517143-44 *with* Ex. 2 at JNPR-FNJN_29043_01517207-08 (describing database for dynamic analysis results).

---

[2] ██████████████████████████████████████████████ Kastens Decl., Ex. 7 at § 16 ████████████████████████████████████████████

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT        CASE NO. 17-cv-05659-WHA

Finjan also pursued deposition testimony regarding the Joe Sandbox database.  For example, during the first deposition in this case, Juniper's senior engineer generally testified that ████████ ████████████████████████████████████████████████████████████.  *See, e.g.*, Kastens Decl., Ex. 8 (5/9/18 Tenorio Dep. Tr.) at 73:14-15; 76:20-77:2; 261:18-269:1 (testifying generally about ████████████████████████████████████████████).  In subsequent depositions, however, Juniper's key engineers testified that ████████████████████████████████████████ ████████████████████—a story that appears designed to convince Finjan that Juniper had no Joe Sandbox technical documents or basic understanding of how Joe Sandbox worked.  *Id.* (5/9/18 Tenorio Dep. Tr.) at 155:16-156:2; 157:4-7; 163:4-16; 73:14-15; 76:20-77:2; 261:18-269:1 (engineer for Sky ATP describing ████████████████████████████████████████████ ████████████████ *see also id.*, Ex. 11 (5/31/18 Nagarajan Dep. Tr.) at 33:18-34:3 (head of Sky ATP development stating that ████████████████████████ *id.*, Ex. 12 (5/30/18 Manthena Dep. Tr.) at 201:9-23 (engineer for SRX Gateway stating that ████████ ████████████████████████████

Finjan had also conducted a diligent independent search to find Joe Sandbox technical documents after learning that Juniper used Joe Sandbox.  Finjan could not locate any publicly available Joe Security documents or guides from Joe Security's website or through an extensive search of the Internet.  Kastens Decl. ¶ 2.   Thus, Finjan had no reason to believe that Juniper was withholding highly relevant documents.

**B.      Juniper Made A Belated Production of Technical Documents About Joe Sandbox.**

That Juniper had such important technical documents and did not produce them despite repeated requests by Finjan came as a surprise.  In fact, Juniper only made this production, however, after Finjan pointed to a document produced just before trial that suggested that Juniper had been withholding responsive documents to its previous requests.  Specifically, on November 6, 2018, in the midst of preparations for the December trial and well after expert reports were served and depositions were taken, Juniper belatedly produced an email in which ████████████████████████████████

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT               CASE NO. 17-cv-05659-WHA

1   ██████████████████████████████.  *See, e.g.*, Kastens Decl., Ex. 13.  Immediately after the

2   December trial concluded, Finjan inquired whether Juniper had failed to produce technical documents

3   relating to Joe Sandbox given this email.  Kastens Decl., Ex. 14 at 2-3.  Juniper thereafter produced the

4   Joe Sandbox documents in February 2019, which was well after the December 2018 trial and ***after*** the

5   conclusion of post-trial briefing on the parties' competing motions for judgment as a matter of law.

6   Dkt. Nos. 352, 353; Kastens Decl., Ex. 15.

7           These technical documents written by Joe Security (that Finjan had been requesting since

8   February 2018) provided detailed information on how Joe Sandbox performed dynamic analysis.  The

9   most compelling document is the User Guide, which described the presence of a "File Database" in Joe

10  Sandbox, along with the "Joe Sandbox Web API Guide," "Joe Sandbox IDA Guide," "Joe Sandbox

11  Cookbook Guide," "Joe Sandbox Update Guide," "Joe Sandbox Signature Guide," "Joe Sandbox

12  Scaling Guide," and "Joe Sandbox Interface Guide" (together, "Joe Security documents").  Critically,

13  the User Guide showed that Joe Sandbox, ████████████████████████████████,

14  has its own internal database that it uses to store the results of its dynamic analysis.  Kastens Decl., Ex.

15  1 at JNPR-FNJN_29043_01517143-44.  The document shows that it stores the results of the analysis in

16  a ***rigid directory schema*** that is referred to as the "File Database Format" and that includes storing all

17  of the "analysis" data for the dynamic analysis, including "generated behaviors reports."  *Id.*

18          Also notable is the Joe Sandbox Interface Guide, which further describes that for any malware

19  that is involved in an incident during dynamic analysis, "the analysis report and other behavior data [is

20  stored] in its own database."  Kastens Decl., Ex. 2 at JNPR-FNJN_29043_01517208.  Then, in order to

21  relate the analysis report to the recorded incident, the report is uploaded using its unique identifier to a

22  database.  *Id.*  Further, the Joe Sandbox stores the behavior information that is generated during the

23  dynamic analysis in the Joe Security Database so that the information is accessible in a predefined

24  location.  *Id.*  The Interface Guide refers the reader back to the User Guide for additional information

25  relating to the File Database.  *Id.*

26

27

28

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA

### C.   Juniper Misrepresented to the Court and Jury That No Database Like the Joe Sandbox File Database Existed.

The User Guide and Interface Guide's descriptions of the Joe Sandbox database directly addressed a key issue in the December 2018 trial, namely that Sky ATP had a database with a schema. Juniper's failure to produce these documents prevented the Court and jury from evaluating all the evidence of how and where Sky ATP stores its analysis data.  The construction of "database" in this case is "a collection of interrelated data organized according to a database schema to serve one or more applications."  Dkt. No. 189 at 16.  During the trial, Juniper's expert, Dr. Rubin, testified that "[s]o a database schema is a very specific thing . . . If you're going to have a schema in a database, you have to figure out what all those fields are in advance … That's a very *strict structure* for that database …." Kastens Decl., Ex. 16 (12/13/18 Trial Tr.) at 742:3-743:4.  Dr. Rubin relied on this description of a "schema" for a database as the central reason why Sky ATP allegedly did not infringe the '494 Patent.[3] Juniper made misrepresentations to the Court and jury based on this testimony, arguing in its closing that:

> You saw this diagram when Dr. Rubin was testifying. This is the fundamental architecture of the Sky ATP. It shows *where Juniper stores all of its data, including the security profiles*. And *there are three solutions* that Juniper uses. They're at the bottom right.  One is the Amazon DynamoDB. Some security profiles are stored there. One is the Amazon S3. Some security profiles are stored there. The third storage solution is called MySQL. And that's a database that we agree that that has a schema. But no security profiles are stored there. *So Finjan has sort of a mix and match problem. They can find a database within the meaning of the claim, the definition of the construction, but they can't find any security profiles being stored in there.* And they can find where the security profiles are being stored, which is DynamoDB and S3, but those don't have a schema and, therefore, don't qualify as databases under the Court's construction. *That's why there can be no infringement in this case.*

Kastens Decl., Ex. 17 (12/14/18 Trial Tr.) at 931:13-932:6 (emphasis added to highlight false statements contradicted by the User Guide).  The Court cited this closing argument as the main reason why the Court considered a finding of non-infringement justified at the hearing on the parties' post-

---

[3] Finjan disagrees with Juniper's characterization that its other databases did not have a schema and fall within this Court's construction of "database."  Regardless, as described, the Joe Sandbox database includes a "strict structure" that is set "in advance," to use Dr. Rubin's terminology, which would satisfy the database limitation at issue even under Juniper's interpretation.

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA

trial motions.  *Id.*, Ex. 18 (2/21/19 Hearing Tr.) at 3:21-4:8 (commenting that the Court found Juniper's counsel's statements at closing, in particular, to be persuasive).

Juniper, however, did not present to the Court and jury a complete picture of where Juniper stores *all* of its security profile and analysis data.  As it turns out, Juniper's Sky ATP had another solution, the Joe Sandbox database.  And Juniper's withholding of meaningful technical discovery regarding Joe Sandbox in discovery leading up to the December 2018 trial, so precluded Finjan from presenting such evidence at trial.  Due to Juniper's discovery misconduct, Finjan was unable to present the fact that the Joe Sandbox database was a match for Juniper's Dr. Rubin's "description" of a database with schema, because it stores analysis data and behavior reports according to predetermined fields so that the information is easily accessible.  Kastens Decl., Ex. 1 at JNPR-FNJN_29043_01517143-44; Ex. 2 at JNPR-FNJN_29043_01517208.  Given the newly discovered evidence that Juniper finally produced nearly two months after trial, the Verdict and subsequent Order on the parties' competing motions for judgment as a matter of law were incomplete and tainted by Juniper's misconduct.

### D.    Juniper Has Not Offered Any Colorable Excuse for Its Misconduct.

Counsel for both parties met and conferred on March 8, 2019, in connection with this motion.  Kastens Decl., Ex. 19.  Finjan specifically asked Juniper if it had produced the technical information in these documents in another form.  Kastens Decl., ¶ 3.  Juniper had no response.  *Id.*  Finjan further asked what was Juniper's purported basis for withholding the documents until February 2019.  *Id.*  Juniper responded that it had not located the documents during collection and made the excuse that Finjan could have subpoenaed Joe Security for these documents.  *Id.*  Juniper did not (and could not) represent that the Joe Security documents were outside its possession, custody, or control at any time.  *Id.*  Juniper's excuse falls flat, given that it had ten months between Finjan's first requests and trial to locate the documents.  Moreover, the Joe Sandbox documents all contain simple keywords that can be identified from Finjan's discovery requests, such that any basic search within Juniper's records for the documents that Finjan requested would have revealed the documents (e.g., "Joe Sandbox," "Joe Security," "dynamic analysis," "guide," "cookbook," "database").  Certainly given Juniper's written

discovery responses and deposition testimony, Finjan had no way of knowing that Juniper had concealed these documents from Finjan and from the December 2018 trial.

### E.      This Is Not Juniper's First Offense with Respect to Discovery Misconduct.

Juniper employed similar gamesmanship earlier in this case.  Juniper belatedly produced expansive spreadsheets regarding purported revenues which was highly relevant to Finjan's damages case.  *See* Kastens Decl., Ex. 20 (12/4/18 Pretrial Hearing Tr.) at 76:1-17 (noting without ruling that the late production of a 17,000 page document relating to damages was troubling and Finjan could request a deposition at Juniper's expense before trial if the defense intended to use the document).  Withholding discovery or belatedly producing highly relevant discovery that one uses to its advantage in its case violates the basic principles of discovery and fairness.

## III.     ARGUMENT

### A.      Juniper's Withholding of Relevant Documents Responsive to Finjan's 2018 Document Requests Is Newly Discovered Evidence.

Pursuant to Federal Rule of Civil Procedure 60(b)(2), the Court may grant Finjan relief from the Verdict and post-trial Order of non-infringement entered in this action because Finjan has newly discovered evidence from Juniper that it could not have reasonably discovered before the deadline to move for a new trial, which was January 10, 2019.  Fed. R. Civ. P. 60(b)(2) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial"); *see* Dkt. No. 348 (setting deadline for post-trial motions).  Relief should be granted because: (1) the User Guide, Interface Guide, and other Joe Sandbox documents are "newly discovered evidence"; (2) Finjan "exercised due diligence to discover this evidence"; and (3) the User Guide, Interface Guide, and other Joe Sandbox documents are of "such magnitude that production of it earlier would have been likely to change the disposition of the case."  *See Feature Realty, Inc., v. City of Spokane,* 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987)).  By its plain language, Rule 60(b) encompasses many types of final proceedings other than

final judicial entries of judgment.[4]  *See* Fed. R. Civ. P. 60(b); *see also Webster v. U.S.*, 93 Fed.Cl. 676, 678-79, n.2 (Ct. Cl. 2010) ("The entry of a formal judgment ... is not a prerequisite to the availability of relief under Rule 60(b). By its terms, Rule 60(b) applies to final orders and final proceedings as well as to judgments.") (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 60.02[2] (3d ed.2004)) (ellipse in original).  Juniper's withholding of key Joe Security documents until after the completion of trial and post-trial briefing meets all of these elements.

### 1.   Juniper Concealed Relevant Documents Containing New Evidence in Spite of Finjan's Diligence.

Finjan worked diligently from February 2018 to obtain discovery of any database used by Sky ATP, serving several documents requests and an interrogatory specifically seeking such information. Juniper's discovery responses, however, intentionally concealed the fact that it was refusing to produce responsive documents, like the Joe Sandbox User Guide and Interface Guide.  For example,

[5]  *See* Kastens Decl., Ex. 10 at 13-14 (Response to Interrogatory No. 12).  Juniper also did not produce Joe Sandbox documents, other than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, thereby

---

[4] Courts in the Ninth Circuit have considered the impact of misconduct or misrepresentation on jury verdicts and have considered verdicts together with final judgments in their analyses.  *See, e.g.*, *Robinson v. Delgado*, No. CV 02-1538 NJV, 2010 WL 3448558, at *8 (N.D. Cal. Aug. 31, 2010), *aff'd sub nom. Robinson v. Lamarque*, 581 F. App'x 695 (9th Cir. 2014) (referring to both verdict and judgment as two components of the judgment to be evaluated for potential relief); *Beckway v. DeShong*, No. C07-5072 TEH, 2012 WL 1355744, at *8 (N.D. Cal. Apr. 18, 2012) (considering on the merits whether a jury verdict was obtained through misrepresentation during trial for purposes of a Rule 60(b) motion); *Nehara v. California Dep't of Corr. & Rehab.*, 650 F. App'x 495, 497 (9th Cir. 2016) (upholding grant of relief from judgment because newly discovered evidence after the jury's verdict cast doubt on the jury's findings).  Courts take a fairly broad view as to the definition of final orders or proceedings.  *See Yesh Music v. Lakewood Church,* 727 F.3d 356, 360–61 (5th Cir. 2013) (collecting cases in which even dismissals without prejudice were considered final orders or proceedings).

[5] Finjan served this interrogatory after obtaining testimony from a Juniper engineer that ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See, e.g.*, *id.*, Ex. 8 (5/9/18 Tenorio Dep. Tr.) at 126:12-21 (testifying that a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

demonstrating Juniper's understanding that discovery into Joe Sandbox was relevant and responsive to Finjan's discovery requests.

In response to Finjan's pointed requests specifically for Joe Sandbox documents, Juniper affirmatively represented that it had completed its production relating to Sky ATP.  Kastens Decl., Ex. 6 at 7-11 (Responses to Request for Production No. 87-89).  Juniper's responses never identified that it was withholding any Joe Sandbox documents, as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); *see also* Kastens Decl., Exs. 4, 6 (Responses to Request for Production No. 13, 38, 87-89).  Thus, Juniper led Finjan to believe that all responsive databases (regardless of whether Juniper believed them relevant to the ultimate question of infringement) had been identified.

Juniper's witnesses similarly blocked Finjan from learning about the Joe Sandbox database in Sky ATP.  During the deposition of Juniper's employees, they stated that ███████████████████ ████████████████████████████████████, giving all indications that were no further documents.  *See, e.g.*, Kastens Decl., Ex. 8 (5/9/18 Tenorio Dep. Tr.) at 155:16-156:2; 157:4-7; 163:4-16; 73:14-15; 76:20-77:2; 261:18-269:1 (Joe Sandbox is a "black box"); *id.*, Ex. 11 (5/31/18 Nagarajan Dep. Tr.) at 33:18-34:3 ███████████████████████); *id.*, Ex. 12 (5/30/18 Manthena Dep. Tr.) at 201:9-23 (███████████████████████████████).  Juniper's senior engineer for Sky ATP could not testify competently as to ███████████████████████████.  *See, e.g.*, Kastens Decl., Ex. 8 (5/9/18 Tenorio Dep. Tr.) at 223:11-23 ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████  Further, he only discussed ████████████████████████████████████████████████ ████████████████████.  *See, e.g.*, *id.* at 73:14-15 (testifying that "I████████████████████ ████████████████████████; 76:20-77:2

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT                    CASE NO. 17-cv-05659-WHA

1 ████████████████████████████████████████████

2 261:18-269:1 (testifying repeatedly that ██████████████████████████████████).

3       Finjan could not have obtained this discovery in advance of trial or the deadline to file a Rule

4 59 motion in January 2019.  Finjan conducted a search for technical information regarding Joe

5 Sandbox, such as user guides and manuals, and confirmed it was not readily available to the public.

6 Accordingly, while Juniper's representation that it did not have any technical documents or

7 information regarding the operations of Joe Sandbox seemed strange, Finjan had no choice but to rely

8 upon such representations.  Kastens Decl., ¶¶ 2-3.  Indeed, Finjan could not move to compel

9 documents that Juniper repeatedly stated it did not have.

10       Further, Juniper never objected to Finjan's discovery requests by suggesting that the

11 information could be found in the public domain.  Kastens Decl., Ex. 4 at 30-32, 78-80; Ex. 6 at 7-11;

12 Ex. 21 at 38-42.  Consistent with Juniper's discovery responses, ██████████████████

13 ████████████████████████████████████  Kastens Decl., Ex. 7 (Joe

14 Security License Agreement).  Thus, Finjan understood from Juniper's production of Joe Sandbox

15 information and Juniper's discovery representations that any relevant discovery Juniper had regarding

16 Joe Sandbox had to be obtained from Juniper, as such information was not publicly available.[6]

17 Ultimately, Juniper misled Finjan into believing that Juniper did not possess any of the Joe Security

18 documents that Finjan sought in discovery.  Thus, given Juniper's misconduct, Finjan could not have

19 obtained documents in Juniper's possession about which Finjan could not even know Juniper had in

20 the first place, in time for trial or the deadline for post-trial briefing in January 2019.

21       Juniper has no excuse for its concealment of highly relevant discovery or lack of diligence

22 during fact discovery to locate these documents earlier.  First, for the reasons above, it cannot credibly

23 claim that Finjan could have known that Juniper was withholding documents demonstrating a database

24 within the meaning of Claim 10.  Second, Juniper cannot claim that this information is publicly

25 available, as Finjan conducted a reasonable search of Juniper's website, Joe Security's website, and

26

27 ─────────────────
[6] Even if documents were public, Juniper was not relieved from its discovery obligations to produce
28 information within its custody and control regarding Joe Sandbox, given its relevance to the case.

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA

multiple searches on Google (including reviewing multiple pages of search results), without locating the specific manuals, user guides, or other the other technical documents that it had requested from Juniper and that Juniper belatedly produced.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08CV335-IEG NLS, 2010 WL 4314271, at *2 (S.D. Cal. Oct. 26, 2010) (finding that an alleged prior publication was newly discovered evidence and not readily available to the public because it was buried among search results on an uncommon search engine); *see also* Kastens Decl., ¶ 2.

Third, it strains credulity that Juniper's diligence failed to turn up these technical documents earlier. ███████████████████████████████████████████████████████████████. Finjan specifically requested Joe Security documents and if Juniper had conducted a reasonable search, it would have located these documents.  For example, the first page states that they are Joe Security documents relating to Joe Sandbox, and the documents contain the same keywords that Finjan used in its discovery requests seeking them (e.g., "Joe Sandbox," "dynamic analysis," "guide," "database").  *See generally*, Kastens Decl., Ex. 1.

Fourth, Juniper's witnesses repeatedly, albeit wrongly, testified during deposition that ████████████████████████████████████████████████████████████████████████████ Finally, Juniper waited to produce the Joe Sandbox documents until after the Court's deadline (January 10, 2019, per Dkt. No. 348) and the deadline set forth in the Federal Rules (January 11, 2019, per Rule 59(b)) for filing any Rule 50 or Rule 59 post-trial motions.  Juniper knew that Joe Sandbox was highly relevant information given Finjan's discovery requests and Juniper's non-infringement position at trial, such that this could not be an oversight or error.

### 2.     Juniper's Concealed Discovery Is Sufficiently Material That It Would Change the Outcome of This Case.

The infringement case in the December 2018 trial focused on the single issue of whether Juniper's Accused Products, including Sky ATP, satisfied the "database" limitation of Claim 10. Finjan presented infringement allegations based solely on those databases which Juniper had disclosed

13

for Sky ATP, such as ResultsDB. Finjan had no opportunity to discover and probe with further fact and expert discovery—much less present at trial—any infringement theories based on Sky ATP's use of the Joe Sandbox database. Kastens Decl., Ex. 1 at JNPR-FNJN_29043_01517143-44; *id.*, Ex. 2 at JNPR-FNJN_29043_01517207-08. Juniper's discovery misconduct foreclosed Finjan from presenting additional evidence for satisfying the "database" limitation at trial, causing severe prejudice to Finjan. Had Finjan been able to identify the Joe Sandbox database with its rigid and pre-set directory schema for storing dynamic analysis results as the relevant database, the outcome of the trial would have been different, as Juniper's key non-infringement arguments regarding the alleged non-existence of a schema, among other arguments, are inapplicable to the Joe Sandbox database. The database has a structure set in advance, which improves the accessibility of the information. Kastens Decl., Ex. 1 at JNPR-FNJN_29043_01517143-44 (describing structure); *id.*, Ex. 2 at JNPR-FNJN_29043_01517208 (explaining that File Database is meant to allow access to the stored analysis reports). This satisfies the definition that Juniper's expert, Dr. Rubin, required for a database. Kastens Decl., Ex. 16 (12/13/18 Trial Tr.) at 742:3-743:4 (testifying that "[s]o a database schema is a very specific thing. . . If you're going to have a schema in a database, you have to figure out what all those fields are in advance… That's a very strict structure for that database …").

Indeed, presenting evidence of the Joe Sandbox database would have wholly undermined Dr. Rubin's alleged opinions, as well as foreclosed statements Juniper's counsel made in his closing arguments. Juniper's counsel argued to the Court and jury in his closing arguments that the jury had seen where Juniper stores all its relevant data, including security profiles, within three solutions (DynamoDB, Amazon S3, and MySQL). Kastens Decl., Ex. 17 (12/14/18 Trial Tr.) at 931:13-17. Juniper's counsel further represented that there is no database within the scope of Claim 10 in Sky ATP, such that there is no database with a schema that stores security profiles. *Id.* at 931:18-932:6. Yet, after the trial, Juniper has conveniently and fraudulently produced incontrovertible documentary evidence that the analysis data that results from Joe Sandbox's dynamic analysis, which constitutes the required "Downloadable security profile," is also stored in the Joe Sandbox database incorporated in Sky ATP. Kastens Decl., Ex. 1 at JNPR-FNJN_29043_01517144; *id.*, Ex. 2 at JNPR-

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA

FNJN_29043_01517208; *see also* Dkt. No. 189 (Order Granting in Part Early Motion for Summary Judgment) at 9-14 (describing security profile data and finding that Malware Analysis Pipeline, including its dynamic analysis component, produce such data within the meaning of Claim 10); Dkt. No. 97-4 (Motion for Summary Judgment of Infringement of Claim 10 of '494 Patent) at 7-9, 18-20 (describing in detail Malware Analysis Pipeline which includes ███████ component for dynamic analysis and creates security profile data).  This evidence refutes Juniper's non-infringement arguments to the Court and jury under Juniper's ***own theory*** of the case and would have precluded the closing arguments that this Court found especially persuasive.  *See* Kastens Decl., Ex. 18 (2/21/19 Hearing Tr.) at 3:21-4:8.  It is likely for this reason that Juniper could not reasonably explain why it failed to produce documents evidencing this other database earlier that were responsive to Finjan's longstanding discovery requests.  *See* Kastens Decl., ¶ 3.

For these reasons, Finjan respectfully requests that the Court relieve Finjan from the Verdict and this Court's subsequent Judgment of non-infringement on the basis of newly-discovered evidence, which Juniper prejudicially concealed.

### B.     Juniper's Concealment of the Joe Sandbox Documentation Constitutes Discovery Misconduct Warranting Relief from Judgment.

Pursuant to Federal Rule of Civil Procedure 60(b)(3), the Court may also relieve Finjan from the Verdict and Judgment because the Verdict was obtained through "misconduct" that "prevented [Finjan] from fully and fairly presenting [its] case."  Fed. R. Civ. P. 60(b)(3); *see also Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878–79 (9th Cir. 1990) (setting forth legal standard and noting that "[f]ailure to disclose or produce materials requested in discovery can constitute 'misconduct'" under Rule 60(b)(3) without requiring "proof of nefarious intent or purpose.") (internal quotations and citations omitted).  Further, while the movant must prove misconduct by clear and convincing evidence, Rule 60(b)(3) does not require "that the result in the case would be altered" or that the fraud could not have been discovered with due diligence.  *Immersion Corp. v. Sony Computer Entm't Am., Inc.*, No. C 02-0710 CW, 2006 WL 618599, at *16 (N.D. Cal. Mar. 8, 2006) (citations omitted).

As described above, Juniper's discovery misconduct could not be a simple error.  Juniper had numerous opportunities during discovery to provide this information and at no time ever suggested it

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT                    CASE NO. 17-cv-05659-WHA

1    was withholding any documents.  Because the Joe Security documents were the type of documents that

2    ███████████████████████████████████████████████████████████████████████

3    ████████████████████, Finjan had no way of otherwise discovering that Juniper was withholding

4    documents in in Juniper's possession.  *See* Fed. R. Civ. P. 34(b)(2)(C) (requiring identification of

5    withheld materials).  The suggestion that Finjan should have sought discovery directly from Joe

6    Security, which would have required going through the Hague Convention to obtain discovery from

7    this foreign entity, does not discharge Juniper from its discovery obligations.  Moreover, such an

8    argument lacks common sense because it would mean Finjan could not rely upon Juniper's

9    representations that it did not have in its possession the Joe Sandbox technical documents that Joe

10   Security provided to Juniper and Juniper's responses to Finjan's interrogatory in which ██████████

11   ███████████████████████████████████████ Finjan did not have a basis to compel such

12   discovery, as Finjan did not assume that Juniper was making misrepresentations during discovery.

13        In hindsight, it appears that all of Juniper's witnesses were coached to say that Joe Sandbox

14   ██████████████████████████████████████████.  Yet this testimony is

15   demonstrably false based on the detailed disclosures regarding Joe Sandbox's functionality set forth in

16   the Joe Sandbox documents that Juniper had in its possession but concealed from Finjan until after the

17   December 2018 trial and January 2019 post-trial motions.  This gamesmanship alone justifies relief

18   from judgment under Rule 60(b)(3).  Even if Juniper's failure was somehow the result of a series of

19   unintentional errors that prevented it from: (1) supplementing its identification of databases in its

20   interrogatory response; (2) producing documents evidencing an additional database, and (3) only

21   rectifying its mistake until right after all deadlines to move for a new trial had passed, Rule 60(b)(3)

22   allows the Court to consider that the undisclosed materials that Finjan requested throughout 2018

23   prevented Finjan from fully and fairly presenting its best infringement theories at trial.  Thus, Finjan

24   requests that, in the alternative, the Court relieve Finjan from judgment under Rule 60(b)(3), for

25   Juniper's egregious and highly prejudicial failure to disclose requested material in discovery.

26

27

28

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA

### C.      Finjan Suffered Substantial Prejudice as a Result of Juniper's Gamesmanship.

Juniper's misconduct severely prejudiced Finjan, as Juniper's incomplete discovery responses to Finjan's discovery requests regarding Joe Sandbox foreclosed Finjan from presenting highly probative evidence at trial of a "database" and during post-trial briefing.  The exact evidence that Juniper concealed for ten months—a database with a schema in which the results of malware analysis, including security profiles, are stored—were the issues addressed in the Verdict and Order.  Juniper relied on the purported lack of evidence—which Juniper manufactured—as its principal argument of non-infringement before the jury, and the Court indicated that Juniper's arguments with respect to non-infringement even persuaded the Court to change its belief that infringement existed.  *See* Kastens Decl., Ex. 17 (12/14/18 Trial Tr.) at 931:13-932:6; *id.*, Ex. 18 (2/21/19 Hearing Tr.) at 3:21-4:8.  The result was not only an adverse finding for Finjan, but a waste of judicial and jury resources for putting on a trial based on misrepresentations, and one where Finjan did not have a full and fair opportunity to present its case.  Finjan further suffered a lowering of market value resulting from the negative news of Juniper's artificially-obtained result.

Unfortunately, this was not the first instance in which Juniper withheld highly relevant discovery.  Juniper engaged in similar gamesmanship in belatedly producing 17,000 pages of spreadsheets involving purported revenues, days before Finjan's expert damages report was due and after Finjan had already taken depositions regarding Juniper's relevant revenues.  *See* Dkt. No. 364-4 at 9.  Juniper represented that its relevant revenues were $1.8 million, but when Finjan was permitted to take the deposition of Juniper's witness regarding the belated spreadsheets, the witness testified that, in fact, revenues were far more than the $1.8 million Juniper had represented.  *See id.* (Finjan's Reply Renewed Motion for Judgment as a Matter of Law) at 8-10; *see also* Kastens Decl., Ex. 22 (Gupta Trial Testimony) at 51:11-53:08 (confirming revenues of $7.2 million); *id.* at 69:4-71:22 (confirming revenues of $15.9 million); *id.*, Ex. 23 (Trial Ex. 490 – Gupta Depo Ex. 12); *id.*, Ex. 24 (Trial Ex. 494 – Gupta Depo Ex. 16).  Juniper's artificially low revenue number prejudiced Finjan as the Court limited Finjan's reasonable royalty based on the $1.8 million number.  *See* Dkt. No. 283 (Order on *Daubert* Motions) at 4-5 ("Finjan will thus be stuck with the $1.8 million base."); Kastens Decl., Ex. 20 (12/4/18 Hearing Tr.) at 16:3-5 (same).  Juniper's troubling eleventh-hour production prevented

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT                    CASE NO. 17-cv-05659-WHA

1   Finjan's rebuttal expert from fully considering and using all the evidence available, and Juniper's pre-

2   trial misrepresentations of its revenues misled the Court into artificially limiting Finjan's reasonable

3   royalty, even though the issue did not ultimately reach the jury.  *See* Dkt. No. 364-4 at 8-10.

4           Now, Juniper concealed from Finjan highly relevant discovery regarding the "database" in Sky

5   ATP until after obtaining a verdict of non-infringement.  Such prejudicial and improper conduct, which

6   violates the Federal Rules of Civil Procedure, needs to be addressed.  For these reasons, Finjan

7   respectfully requests a new trial after obtaining follow up discovery on this newly obtained evidence,

8   so Finjan can make a complete presentation of Juniper's infringement of Claim 10.

9   **IV.    CONCLUSION**

10          For all of the foregoing reasons, Finjan respectfully requests relief from the Verdict entered on

11  December 14, 2018 and this Court's Order denying Finjan's Motion for Judgment as a Matter of Law,

12  and for a new trial on the issues of infringement of Claim 10 of the '494 Patent, or any other relief that

13  Court deems appropriate.

Respectfully submitted,

Dated:  March 29, 2019                    By: */s/ Lisa Kobialka*
                                               Paul J. Andre (SBN 196585)
                                               Lisa Kobialka (SBN 191404)
                                               James Hannah (SBN 237978)
                                               Kristopher Kastens (SBN 254797)
                                               KRAMER LEVIN NAFTALIS
                                                 & FRANKEL LLP
                                               990 Marsh Road
                                               Menlo Park, CA  94025
                                               Telephone:  (650) 752-1700
                                               Facsimile:   (650) 752-1800
                                               pandre@kramerlevin.com
                                               lkobialka@kramerlevin.com
                                               jhannah@kramerlevin.com
                                               kkastens@kramerlevin.com

                                               *Attorneys for Plaintiff*
                                               FINJAN, INC.

FINJAN'S MOTION FOR RELIEF FROM JUDGMENT          CASE NO. 17-cv-05659-WHA