REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua Glucoft (SBN 301249)
jglucoft@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
Ingrid M. H. Petersen (SBN 313927)
ipetersen@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No. 3:17-cv-05659-WHA |
| Plaintiff, | **DEFENDANT JUNIPER NETWORKS, INC.'S OPPOSITION TO PLAINTIFF FINJAN, INC.'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B)** |
| vs. | |
| JUNIPER NETWORKS, INC., a Delaware Corporation, | |
| Defendant. | Date: May 9, 2019<br>Time: 8:00 a.m.<br>Courtroom: Courtroom 12, 19th Floor<br>Before: Hon. William Alsup |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.       INTRODUCTION ............................................................................................................ 1

II.      FACTUAL BACKGROUND ......................................................................................... 2

III.     ARGUMENT ................................................................................................................. 3

      A.      Finjan Is Not Entitled To Relief Under Rule 60(b)(2). ...................................... 3

             1.      Finjan Knew About The "Joe Sandbox Database" And
                  Chose Not To Conduct Discovery On It Because It Was Not
                  Relevant. ...................................................................................... 4

             2.      The Joe Security Documents Are Not Relevant To Finjan's
                  '494 Patent Infringement Theory. ............................................... 11

      B.      Finjan Is Not Entitled To Relief Under Rule 60(b)(3). .................................... 16

             1.      Juniper Did Not Engage In Misconduct. .................................... 16

             2.      Finjan Was Not Prevented From Fully And Fairly Presenting
                  Its Case. ...................................................................................... 18

      C.      Finjan's Prejudice Allegations Are Unfounded. .................................... 19

IV.     CONCLUSION ............................................................................................................ 20

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Cryovac, Inc.*,
   862 F.2d 910 (1st Cir. 1988) ..................................................................................19

*Belinda K. v. Baldovinos*,
   No. 10-CV-02507-LHK, 2012 WL 3249481 (N.D. Cal. Aug. 7, 2012) ...................15

*Berger v. Rossignol Ski Co., Inc.*,
   No. C 05-2523 CR B, 2006 WL 2038324 (N.D. Cal. July 17, 2006) .......................15

*Casey v. Albertson's Inc.*,
   362 F.3d 1254 (9th Cir. 2004)..................................................................................18

*Cusano v. Klein*,
   485 Fed. Appx. 175 (9th Cir. 2012) ..........................................................................8

*De Saracho v. Custom Food Machinery, Inc.*,
   182 F.R.D. 601 (N.D. Cal. 1998) .............................................................................17

*DeVera v. Japan Airlines*,
   No. 92 Civ. 6698 (JES), 1994 WL 698330 (S.D.N.Y. Dec. 13, 1994) ......................8

*Fed. Deposit Ins. Corp. v. Meyer*,
   781 F.2d 1260 (7th Cir. 1986)..................................................................................15

*Immersion Corp. v. Sony Computer Entertainment Am., Inc.*,
   2006 WL 618599 (N.D. Cal. March 8, 2006) ..........................................................16

*Jones v. Aero/Chem Corp.*,
   921 F.2d 875 (9th Cir. 1990)....................................................................3, 15, 16, 19

*Prism Techs., LLC v. Spring Spectrum L.P.*,
   No. 8:12CV123, 2015 WL 12803695 (D. Neb. Dec. 9, 2015) .................................15

*Srinivasan v. DeVry Institute of Tech.*,
   No. 93-56413, 1995 WL 242307 (9th Cir. 1995).....................................................15

*Venture Industries Corp. v. Autoliv ASP, Inc.*,
   457 F.3d 1322 (Fed. Cir. 2006) ...............................................................................18

*Willis v. Mullins*,
   809 F. Supp. 2d 1227 (E.D. Cal. 2011) ...................................................................15

**Rules**

Fed. R. Civ. P. 34 .............................................................................................................10

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1066_3015.12 09

Fed. R. Civ. P. 60 ................................................................................................................. *passim*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10663015.12  09

# I.      INTRODUCTION

The lone jury issue in the December 2018 trial in this matter was whether Juniper's accused products store what Finjan had identified as the "security profile" in a "database," as those terms are used in Finjan's '494 Patent.  At trial, Juniper did not dispute that its products contained a "database," as that term is used in the '494 Patent; rather, Juniper argued (successfully) that the location where it stored the "security profile"—within part of the "Results Database"—is not a "database" under the agreed construction.  Discovery and litigation of other issues in the case remained ongoing.

Before trial, Juniper had provided Finjan with discovery on Joe Sandbox that Juniper obtained from its technical document repositories and from the specific custodians that Finjan identified under the ESI Order (including documents demonstrating that Joe Sandbox contained a database), but Juniper explained that it did not have source code for Joe Sandbox and from Juniper's perspective it is a "black box" that takes a sample and returns results.  Finjan elected not to seek technical discovery from Joe Security before trial, or request further discovery from Juniper.  After trial, however, Finjan requested additional information from Juniper on Joe Sandbox, and Juniper was able to obtain twelve additional Joe Sandbox documents from a third-party server.  These documents, like the documents Juniper had previously produced, indicated that Joe Sandbox used some type of database.

Based on the Joe Sandbox documents Juniper produced in response to Finjan's post-trial requests, Finjan now argues that it is entitled to a new trial.  Had it known about these documents pre-trial, Finjan argues, it could have argued that the Joe Sandbox database satisfied the "database" requirement of the '494 Patent, and it could not have discovered this information through its own diligence.

As discussed below, there are two main flaws in Finjan's argument: (1) Juniper **did** produce numerous documents pre-trial demonstrating that Joe Sandbox contained a database, and explained that it did not have the Joe Security source code required to analyze that database, but Finjan elected not to seek further information from Joe Security; and (2) even if the database in Joe Sandbox does satisfies the requirements for a "database" in the '494 Patent (and Juniper does not know whether it

does), it would make no difference to the outcome of the trial because it is undisputed that *Juniper does not store the accused "security profile" in Joe Sandbox*.  Rather, as Finjan itself admits, Juniper stores the "security profile" in part of "Results Database," which is an independent and distinct data storage solution.  Finally, and although not technically a requirement for the relief Finjan is seeking, Juniper did not conceal or hide any information relating to Joe Sandbox, nor engage in any other misconduct.  Finjan's Motion contains a shocking number of misstatements on this point, which Juniper corrects below.

Having lost at trial on what it designated as its strongest patent, Finjan is now struggling to keep this patent in play.  It is unfortunate that Finjan has reverted to making false statements about Juniper's conduct in this case to do so.  Simply put, there is no basis in fact or law for Finjan's Motion.

## II.    FACTUAL BACKGROUND

Though not strictly relevant for the relief Finjan is seeking, Finjan purports to provide "Factual Background" in its motion that suggests Juniper made false or misleading statements to Finjan in discovery.  While Juniper responds to most of these "facts" as part of its substantive arguments below, there are certain statements Finjan made that are so false and inflammatory that Juniper will address them before turning to the substantive arguments.  Because these allegations are not necessary requirements for Finjan's Motion, however, Juniper will attempt to address them in summary form.

| Finjan's Misrepresentation | The Truth |
|---|---|
| "[O]n November 6, 2018, in the midst of preparations for the December trial and well after expert reports were served and depositions were taken, Juniper belated [SIC] produced an email in which its employee had attached a document that referenced the installation of Joe Sandbox." Dkt. 412 at 5-6. | Finjan provided Juniper with search terms on October 16, 2018 for the relevant custodians that led to identification of this document.  Juniper's production of the document was not "well after" expert depositions, as the expert depositions on infringement for both parties took place after production, nor was Juniper's production "belated," as the document was produced within 21 days of receiving Finjan's search terms pursuant to the ESI Order in this matter.  *See* Dkt. 87 at ¶ 8.d; Ex. 4 at 1-2 (Finjan selecting search terms on October 16, 2018); Glucoft ¶ 16. |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

| Finjan's Misrepresentation | The Truth |
|---|---|
| Finjan could not have presented evidence regarding the Joe Sandbox database at the December 2018 trial because it did not know about it until after the trial. Dkt. 412 at 8. | Juniper produced at least eight documents specifically referencing a database in Joe Sandbox well in advance of the December 2018 trial. Juniper also informed Finjan that it did not have source code for Joe Sandbox. Finjan elected not to pursue discovery from Joe Security. *See* Sections III.A.1.a and b, *infra.* |
| "Juniper's response to [the RFPs on Joe Security] was the false assertion that Juniper had completed its Sky ATP production and there was nothing further that was responsive to produce." Dkt. 412 at 4. | As Juniper does not have access to Joe Sandbox source code, Juniper specifically stated that its production was limited to "Sky ATP source code," "technical specifications, design and development documents, and administration guides," and "licenses with Joe Security." Dkt. 412-8 at 8-14. Juniper expressly told Finjan it did not have source code for Joe Sandbox. |
| Juniper must have intentionally withheld the Joe Security documents produced in February 2019 because they contain "simple keywords" that a "basic search" would have revealed. Dkt. 412 at 8. | Juniper could not have located the "Joe Security documents" produced in February 2019 by doing a "basic search" of its technical repository because those documents were not located in Juniper's technical document repositories; rather, the documents were located on a remote, third-party iWeb server that hosts the Joe Sandbox binary code. Aquino ¶¶ 3-6; Islah ¶¶ 5-8. |

## III.    ARGUMENT

### A.    Finjan Is Not Entitled To Relief Under Rule 60(b)(2).

Federal Rule of Civil Procedure 60(b)(2) provides that a court may relieve a party from a final judgment on account of "newly discovery evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." In order to qualify, the "movant must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.'" *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987)).

There are two primary reasons Finjan cannot satisfy its burden: (1) Finjan was on notice that Joe Security incorporated its own database as early as July 2018, but chose not to conduct any follow up discovery on this issue until after the December 2018 trial, and (2) the Joe Sandbox database has

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   nothing to do with Finjan's infringement theory for the '494 Patent, as it is not located in the "Results

2   Database"—the location where Juniper stores the "security profile."  (As the Court may recall, the

3   '494 Patent does not simply require a "database"; it requires the "security profile" to be stored in

4   that "database" by a "database manager."  *See* U.S. Patent No. 8,677,494 at Claim 10.)

5         Finjan's accusation that Juniper purposefully "concealed" the Joe Security documents or that

6   Finjan exercised due diligence in taking discovery on Joe Sandbox are demonstrably false, as

7   Juniper produced its initial set of Joe Sandbox documents from its document repositories and

8   custodians pre-trial (within 21 days of receiving a request from Finjan), and it was able to locate

9   and produce additional documents shortly after receiving follow-up requests from Finjan after the

10  trial.  Moreover, the handful of Joe Security documents produced by Juniper in early February 2019

11  are cumulative of documents Juniper produced pre-trial, which simply indicate that Joe Sandbox

12  uses some type of database.  While Finjan now contends that the Joe Sandbox database is the

13  "smoking gun" for its infringement theory, it provides no explanation for why it did not present

14  evidence of it at the December 2018 trial, given that it was in possession of documents identifying

15  the Joe Sandbox database long before that trial.  Nor does it offer any explanation for why it did not

16  raise the issue with the Court at the hearing on Finjan's post-trial motions, which was weeks after

17  Juniper produced the additional Joe Security documents in early February 2019.

18        **1.    Finjan Knew About The "Joe Sandbox Database" And Chose Not To Conduct Discovery On It Because It Was Not Relevant.**

19        Because Finjan's infringement theory for its '494 Patent requires the "security profile" to be

20  stored within a "database" in the "Results Database," and because Joe Sandbox is a third-party

21  product not located in "Results Database," it is understandable why Finjan did not seek discovery

22  from Joe Security (the provider of Joe Sandbox) before trial on the '494 Patent.  Having made the

23  decision not to pursue that discovery, however, Finjan cannot now claim it has satisfied Rule

24  60(b)(2)'s requirement of due diligence.

25              **(a)    Finjan Knew That The "Joe Sandbox Database" Existed.**

26        As an initial matter, Finjan falsely claims that Juniper did not provide any discovery

27  identifying the Joe Sandbox database prior to trial.  This statement is inaccurate.  For example, on

28

July 12, 2018, Juniper produced a license that expressly states that the version of Joe Sandbox licensed by Juniper uses an ▮▮▮▮▮▮▮▮:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 1 (JNPR-FNJN_29035_00962471) at 490; Glucoft ¶ 2.

Months later, on November 6, 2018, Juniper timely[1] produced emails and attachments that again clearly reference the ▮▮▮▮▮▮▮▮ used by Joe Sandbox:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 2 (JNPR-FNJN_29040_01280968) at 977; Glucoft ¶ 3.  These emails and attachments also included a "Joe Sandbox Installation Guide," which was an earlier and substantially similar version of the Installation Guide produced in February 2019 (that Juniper allegedly withheld from production).  *See* Ex. 3 (JNPR-FNJN_29040_01462115); Glucoft ¶ 4.  The Installation Guide Juniper produced pre-trial again made clear that Joe Sandbox includes a database:

---

[1] Finjan states that Juniper's November 6 production was "belated" and "well after expert reports were served and depositions were taken."  Dkt. 412 at 5.  As noted above, both allegations are false.  Juniper produced these emails within 21 days of Finjan's selection of final search terms, in accordance with the ESI Order in this matter.  *See* Dkt. 87 at ¶ 8.d (ESI Order providing 21 days to produce emails after identification of final search terms); Ex. 4 at 1-2 (Finjan selecting search terms on October 16, 2018).  Moreover, the expert depositions on infringement did not occur until November 9 (Rubin) and November 14 (Cole).



Ex. 3 (JNPR-FNJN_29040_01462115) at 129.  This pre-trial production also contained at least five additional emails and documents discussing the existence and use of the Joe Sandbox database.  *See, e.g.*, Ex. 10 (JNPR-FNJN_29040_01455978) at 985 ▮▮▮▮▮▮▮▮▮▮▮▮ ; Ex. 11 (JNPR-FNJN_29040_01457211) at 211 (noting the Joe Sandbox "DB got errors"); Ex. 12 (JNPR-FNJN_29040_01457124) at 133 ▮▮▮▮▮▮▮▮ ; Ex. 13 (JNPR-FNJN_29040_01464974) at 988 (discussing the Joe Sandbox "database specific settings"); Ex. 14 (JNPR-FNJN_29040_01462047) at 061 (also discussing Joe Sandbox's ▮▮▮▮▮▮▮ Glucoft ¶¶ 11-15 (documents all produced on November 6, 2018).  Thus, Finjan had received documents from Juniper indicating that Joe Sandbox used some type of database well in advance of the December trial.

**(b)       Finjan Did Not Exercise Reasonable Diligence.**

If Finjan believed that the Joe Sandbox database was relevant to its infringement case, it could have—and should have—sought additional discovery from Juniper or Joe Security.  Instead, Finjan made the strategic decision to delay such follow up discovery until after the December trial.  Because Finjan's infringement theory for the '494 Patent requires that the "security profile" is stored in a "database" within "Results Database," and Joe Sandbox is not a part of the "Results Database," Finjan's decision not to pursue this discovery before the '494 Patent trial is entirely reasonable— but it cannot now seek a new trial on the basis of its own litigation decisions.

Finjan admits that the Joe Sandbox Installation Guide produced by Juniper on November 6, 2018 references the documents that Juniper ultimately produced in February 2019.  Dkt. 412 at 5.  This admission belies Finjan's contention that it could not have known that additional Joe Security documents existed before the December trial.  Moreover, Finjan admits that it did not reach out to

Juniper to request those specific documents until December 17, 2018, shortly after the jury returned its verdict of non-infringement. Finjan did not express any urgency in that letter—much less that these documents could have been relevant to the December trial—as it requested that Juniper produce the documents by January 28, 2019. Dkt. 412-16 at 3. Juniper promptly responded that it would investigate, and Juniper produced the documents that it was able to locate on February 4, 2019, just a few days after Finjan's requested production date. Dkt. 412-17; Glucoft ¶ 19. Finjan does not explain why it waited until *after* the December trial to ask Juniper about these documents, particularly if the storage mechanisms used by Joe Sandbox were relevant to its infringement theory.

Finjan's failure to seek deposition testimony on the specifics of Joe Sandbox prior to the trial also demonstrates a lack of reasonable diligence. While Finjan chose to depose several Sky ATP engineers prior to the trial, none of those engineers were responsible for the Joe Sandbox component. *See* Ex. 6 at 7:23-8:3; Ex. 7 at 7:15-18; Ex. 8 at 10:15-20. And, Finjan did not seek a Rule 30(b)(6) deposition on any topics until October 16, 2018. Ex. 4 at 1. Even then, it agreed to defer the deposition on the Joe Security topic until after the December trial (Ex. 5), in response to Juniper's observation that it did not appear to be relevant to the December trial. *See* Glucoft ¶ 5.

Lastly, Finjan failed to exercise reasonable diligence in obtaining relevant discovery from Joe Security itself. Juniper made clear to Finjan that it did not have the Joe Sandbox source code and that it is essentially a "black box" to Juniper. *See, e.g.*, Ex. 6 at 155:7-156:2. If those technical details were important to Finjan's infringement theory, it could have (and should have) sought discovery directly from Joe Security. Finjan claims that its lack of diligence in seeking this third-party discovery should be excused because it would have "required going through the Hague Convention to obtain discovery from this foreign entity." Dkt. 412 at 16. But foreign discovery is common in patent cases, and Finjan cites no authority for its contention that this is an appropriate excuse for failing to be diligent. Moreover, Finjan does not explain why it did not attempt to engage in informal discovery efforts, such as reaching out to Joe Security to ask for technical documents or purchasing its own license to Joe Sandbox. Instead, Finjan effectively took no steps to even try to obtain the relevant technical documents in discovery, and is now trying to suggest that Juniper must face a new trial based on this lack of diligence. Finjan's excuse is insufficient, as reasonable

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   diligence requires seeking discovery from third parties in possession of relevant evidence.  *See*

2   *Cusano v. Klein*, 485 Fed. Appx. 175, 179 (9th Cir. 2012) (upholding a denial of relief under Rule

3   60 because plaintiff did not "show that he could not have discovered the alleged new evidence

4   through timely third party discovery during the proceedings"); *DeVera v. Japan Airlines*, No. 92

5   Civ. 6698 (JES), 1994 WL 698330, at *3 n. 1 (S.D.N.Y. Dec. 13, 1994) (rejecting plaintiffs' excuses

6   for failure to discover evidence where "plaintiffs could have requested the Court to permit plaintiffs

7   to serve a subpoena on a third party [but they] did not do so").

8                    **(c)    Juniper Did Not "Conceal" The Joe Security Documents.**

9          Finjan's Motion is fraught with accusations that Juniper "intentionally concealed" the Joe

10  Security documents.  While Finjan concocts an elaborate conspiracy theory about all the steps

11  Juniper supposedly took to hide the existence of the Joe Security documents—including allegedly

12  having its witnesses lie under oath and deliberately removing the Joe Security documents from its

13  production—its allegations are pure fiction.

14         First, Finjan alleges that Juniper "intentionally concealed the fact that it was refusing to

15  produce responsive documents, like the Joe Sandbox User Guide and Interface Guide." Dkt. 412 at

16  10.  In particular, Finjan claims that Juniper affirmatively represented "that it did not have in its

17  possession the Joe Sandbox technical documents" and that "Juniper misled Finjan into believing

18  that Juniper did not possess any of the Joe Security documents that Finjan sought in discovery".  *See*

19  Dkt No. 412 at 12, 16.  But this is simply not true.  In response to Finjan's requests for production

20  regarding Joe Security documents, Juniper expressly stated:

21         Juniper responds that it has already completed its technical production detailing the
           operation of Sky ATP, which includes both the complete Sky ATP source code as
22         well as many thousands of pages of technical specifications, design and development
           documents, and administration guides.  Juniper further response, subject to these
23         specific objections and the General Objections incorporated herein, ***that it has
           already produced licenses with Joe Security for products used by Sky ATP***.
24

25  Dkt. 412-8 at 8 (emphasis added); *see also id.* at 9-11 (same responses to RFP Nos. 88-89).  Juniper

26  also does not have access to the Joe Sandbox source code, which Juniper expressly told Finjan.  *See,*

27  *e.g.*, Ex. 6 at 155:7-156:2.  Thus, contrary to Finjan's representation to the Court, Juniper told Finjan

28  that its production of Joe Security documents was limited to the Joe Security licenses as well as Sky

ATP source code, design and development documents, and administration guides.[2]

Finjan also implies that Juniper purposefully omitted the Joe Security documents from its production. Dkt. 412 at 8 ("the Joe Sandbox documents all contain simple keywords that can be identified from Finjan's discovery requests, such that any basic search within Juniper's records from the documents that Finjan requested would have revealed the documents"). But Finjan's allegation assumes that the documents Juniper located as a result of the investigation that it conducted in response to Finjan's December 17 letter were stored in Juniper's technical document repository. This is not correct. After receiving Finjan's December 17 letter, Juniper promptly conducted a pointed investigation for the particular Joe Security documents that Finjan had requested. None of the "Joe Sandbox documents" were located in Juniper's technical repositories for Sky ATP (i.e., Confluence, Jira or GNATS). Aquino ¶¶ 3-4. Juniper was, however, able to locate a copy of the requested documents on a third-party iWeb server that is used to host the Joe Sandbox binary code. Islah ¶¶ 4-5. In particular, when Juniper receives an update to the Joe Sandbox software, it comes in a .zip folder that contains additional product-related literature. Islah ¶ 4. Juniper downloads this .zip file to the iWeb server so that it can run the binary as part of the Sky ATP deployment. Because the contents of the .zip file remain on the iWeb server, Juniper was able to locate the documents and produced them to Finjan. Islah ¶ 5. Notably, however, no other technical documents are stored on the remote iWeb servers, Juniper does not systematically retain copies of the documents it receives when it downloads a new version of Joe Sandbox, and the documents produced were not maintained in Juniper's technical repositories on its network drives because the documents are so rarely used. Islah ¶¶ 6-7. Thus, Finjan's pure speculation that Juniper collected these documents as part of a keyword search and then affirmatively chose to omit them from its production is baseless. *See* Aquino ¶ 5; Islah ¶ 8.[3]

---

[2] Juniper offered to meet and confer with Finjan if Finjan believed that the documents that Juniper had already produced were not sufficient and Finjan believed that additional documents were relevant. *See* Dkt. 412-8 at 8. Finjan chose not to take Juniper up on its offer to meet and confer regarding the relevance of any other Joe Security documents until after the jury returned its verdict of non-infringement. Glucoft ¶ 18.

[3] In its objections to Finjan's RFPs, Juniper expressly noted that it would limit its search to its own network drives because those drives have sufficient documentation to fully specify the operation of the accused products (especially in combination with the complete Juniper source code, which

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Finjan next argues that Juniper's witnesses "blocked Finjan from learning about the Joe Sandbox database in Sky ATP" and implies that those witnesses lied under oath about the extent of their knowledge regarding Joe Sandbox. Dkt. 412 at 11. Again, this is untrue. Rather, as one would expect given that Finjan's infringement theory for the '494 Patent has nothing to do with Joe Sandbox, the engineers Finjan chose to depose before trial have no responsibility for the Joe Sandbox component of Sky ATP. Ex. 6 (Tenorio Dep.) at 7:23-8:3 ("What features are you responsible for? A: It varies from time to time. At this moment, I'm responsible for the component called the Web API; the UI API; a product that we call Cascade; any related features to the Web API, including RDB, mostly."); Ex. 7 (Manthena Dep.) at 7:15-18 ("What are your responsibilities as a principal software engineer? A: I design, develop code products, primarily the SRX."); Ex. 8 (Nagarajan Dep.) at 10:15-20 ("What are your responsibilities? A: I manage a team of engineers and – I'm responsible for the engineering delivery of the product. So I ensure we get the right specifications for the product, and then we execute the schedule we come up with for the features requested."). Particularly as these engineers were all deposed in their personal capacities, it is hardly surprising that they were unfamiliar with the details of Joe Sandbox. Of course, if Finjan had been interested in the technical details of Joe Sandbox, it could have—and should have—taken the deposition of an engineer who worked with this product or pursued a Rule 30(b)(6) notice relating to Joe Sandbox before trial. It elected to do neither of these things. In fact, when Finjan deposed Juniper's Rule 30(b)(6) witness on Joe Security on February 7, 2019 (before the Court's hearing and Order on post-trial motions, but after Juniper's February 4 production of the additional Joe Security documents), Finjan did not ask him a single question about the Joe Sandbox database. *See* Ex. 16 (Islah Dep.); Glucoft ¶ 21.

---

Juniper also produced). *See* Dkt. 412-8 at 8 (RFP objection: "Juniper will not search through non-network drives, regardless of whether those drives are owned by Juniper or personally by its employees and regardless of whether those drives are internal or external, as such searches are not reasonably accessible and any information contained therein is likely to be cumulative to and/or duplicative of information maintained on active network servers."). This was sufficient to put Finjan on notice that documents located on remote third-party servers, such as the iWeb server, were being withheld. *See* Fed. R. Civ. P. 34 Committee Notes on Rules – 2015 Amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'").

1   Finjan's final allegation is that Juniper deceptively omitted the Joe Sandbox database from

2   its interrogatory response regarding the databases used in Sky ATP.  Dkt. 412 at 10.  But Juniper

3   objected to Finjan's interrogatory—which asked Juniper to "identify and describe all Databases that

4   are incorporated or used, either directly or indirectly, by the Accused Instrumentalities"—on the

5   grounds that it was overly broad and unduly burdensome because "Sky ATP uses several primary

6   databases, several of which are not accused because they are not related to infringement, even under

7   Finjan's contentions."  Dkt. 412-12 at 11-12.  Juniper also expressly stated that it was interpreting

8   the interrogatory "as limited to only those databases 'organized according to a database schema'

9   that are related to Finjan's infringement contentions."  Dkt. 412-12 at 12.  As explained in detail

10  below, Finjan's infringement theory relates to the storage of the accused "security profile" in the

11  DynamoDB and S3 portions of the "Results Database" and therefore Juniper's response discussed

12  those components.  Dkt. 412-12 at 14 (identifying MySQL customer database, DynamoDB, and

13  Amazon RDS[4]).  As Finjan could tell from the discovery Juniper provided, Finjan was fully aware

14  that there are other un-accused databases in Sky ATP that are outside the scope of Finjan's

15  infringement contentions, and were thus beyond the scope of Juniper's responses.  *See, e.g.*, Ex. 6

16  at 223:8-23 (Juniper engineer discussing the Redis database, which is used to track malicious URLs

17  and store metadata for the customer portal).

18             **2.**      **The Joe Security Documents Are Not Relevant To Finjan's '494 Patent Infringement Theory.**

19         Even if Finjan could show that it exercised the requisite diligence (which it cannot), Finjan

20  still would not be entitled to relief from the judgment because the new Joe Security documents are

21  not "of such magnitude that production of it earlier would have been likely to change the disposition

22  of the case."  Finjan's entire Motion is premised on the assumption that it could have simply plugged

23  the "Joe Sandbox database" into its infringement theory and won at trial.  Dkt. 412 at 14 ("Had

24  Finjan been able to identify the Joe Sandbox database with its rigid and pre-set directory schema for

25

26

---

27  [4] Although Juniper's response to interrogatory number 12 states "Amazon RDS" on line 8 of page
    14, Juniper previously informed Finjan that "Amazon RDS" is a typo and should read "Amazon
28  S3."  Glucoft ¶ 10.

1    storing dynamic analysis results as the relevant database, the outcome of the trial would have been

2    different.").  This assumption is demonstrably false.

3         As the Court is well aware, Finjan infringement theory is that the ResultsDB Interface

4    (alleged "database manager") stores the Malware Analysis Pipeline's results (the alleged "security

5    profile" which includes a "list of suspicious operations") in the Results Database (the alleged

6    "database").  Dkt. 97-4 (MSJ) at 14-20, 22-24. As Finjan explained on summary judgment and at

7    trial, the alleged "Results Database" is a combination of Amazon storage solutions, including

8    MySQL, DynamoDB, and S3, as shown in the diagram below:



21   Trial Ex. 1179.

22        Joe Sandbox is not a part of the "Results Database."  Rather, Joe Sandbox is a third-party

23   component that Juniper licenses from Joe Security which performs "dynamic analysis" on

24   executable files, which is one of the steps in the Malware Analysis Pipeline ("MAP") that Juniper

25   uses to create what Finjan alleges is the "security profile."  Dkt. 97-4 (MSJ) at 24 (identifying "the

26   results of the Malware Analysis Pipeline" as the "Downloadable security profile"); *see also* Dkt.

27   153-4 (MSJ Reply) at 8 ("The uncontroverted evidence shows that MAP records every operation it

28   could ever deem to be potentially hostile and records these in the ResultsDB ('RDB')); *see also* Ex.

15 at 15 (Finjan's infringement contentions alleging that Sky ATP's "pipeline of technologies included within the distributed cloud-computing system[] derives security profile data").  As the Court may recall, Juniper creates this "security profile" by running files through a variety of software components, including Joe Sandbox, Metadefender, and Greyduckling, to obtain detailed information about the file.  It then uses this information to create a "security verdict" (a number that reflects how dangerous the file may be) using the "verdict engine."  Finjan has conceded that the "security profile" is the amalgamation of all the results from the Malware Analysis Pipeline, ***not*** the results of any "individual sub-scanner" such as Joe Sandbox  *See* Dkt. 153-4 (MSJ Reply) at 11 (the "DSP [Downloadable Security Profile] data" is collectively stored in RDB only ***after*** an adapter/engine finishes generating the data); Dkt. 97-4 (MSJ Motion) at 14 ("Malware Analysis Pipeline that scans received Downloadables with static ***and*** dynamic analysis to generate a security profile") and 20 (Malware Analysis Pipeline "performs static ***and*** dynamic analysis to generate a security profile data") (emphasis added).

As the following diagram indicates, Joe Sandbox is not part of the Results Database, so the "security profile" is not—and could not—be stored there under Finjan's infringement theory:



Glucoft ¶ 16.  In fact, because Joe Sandbox is merely one of the components Juniper uses to build the alleged "security profile," the "security profile" is not even created until after Joe Sandbox has completed its analysis, so Joe Security never even receives—much less stores—the "security profile."  *See* Islah ¶ 10.

Thus, Finjan's suggestion that the sole issue at the December trial was whether Sky ATP contained **any** database with a schema is simply not true.  Rather, the issue was whether the portion of the **Results Database** in which the "security profile" was stored satisfied the "database" requirements.  *See* Dkt. 189 at 20.  Because Joe Sandbox is not even a part of the Results Database, no amount of information about Joe Sandbox could have changed the outcome of the trial.

The fact that any storage solution contained in Joe Sandbox is outside the scope of Finjan's infringement theory is further crystallized by considering the component that Finjan identified as the claimed "database manager."  In particular, Finjan identified the "ResultsDB Interface" as the "database manager," and that is the component that the Court analyzed and determined met the claim.  Dkt. 97-4 at 21-22; Dkt. 189 at 15-16.  Finjan does not—and cannot—allege that the "ResultsDB Interface" manages the Joe Sandbox database or is used to store anything in Joe Sandbox database.  Given this, the Joe Sandbox database could not satisfy the elements of claim 10 under Finjan's infringement theory.

In fact, the only way that the Joe Sandbox documents could have any impact on the outcome of the trial—much less a meaningful one—is if Finjan would have abandoned the infringement theory addressed in the Court's summary judgment Order, and instead asserted an entirely different theory that would have required it to re-litigate the other elements of the claim.  Finjan presents no evidence that it would have actually done this.  To the contrary, the record shows that Finjan would have stuck with its original theory.  Indeed, despite the fact that Juniper had produced multiple documents showing that Joe Sandbox incorporated a database before the December trial, Finjan elected not to even include these documents on its exhibit list, much less try to introduce them at trial.  *See* Dkt. 286 (Finjan Exhibit List); *see also* Ex. 1 at 490; Ex. 2 at 977; Ex. 3 (JNPR-FNJN_29040_01462115) at 129; Ex. 10 at 985; Ex. 11 at 211; Ex. 12 at 133; Ex. 13 at 988; Ex. 14 at 061.  The fact that Finjan would have stuck to its original theory is further evidenced by the fact

that Finjan failed to even mention the "new evidence" of the Joe Sandbox database at the February 21, 2019 hearing on the parties' post-trial motions, even though Finjan had been in possession of the twelve additional Joe Security documents for over two weeks.  Instead, it appears that now that Finjan has lost on the theory it chose to advance, it is grasping for straws by trying to change its theory to present a better case, which it may not do.  *See Berger v. Rossignol Ski Co., Inc*., No. C 05-2523 CR B, 2006 WL 2038324, at *2 (N.D. Cal. July 17, 2006) (denying Rule 60(b) motion where "only after [plaintiffs] realized their original theory of infringement would fail did they decide that they needed to amend their contentions" and change their theory).

Indeed, courts have repeatedly held that the desire to present new theories is not a proper basis for relief under Rule 60.  *See Prism Techs., LLC v. Spring Spectrum L.P.,* No. 8:12CV123, 2015 WL 12803695, at *2 (D. Neb. Dec. 9, 2015) ("Sprint did not present a non-infringement theory at trial regarding the authentication server. Sprint now wants to rely on an answer to a jury question from a trial with different systems and evidence. Sprint has failed to show an exceptional circumstance for which relief could be granted."); *Srinivasan v. DeVry Institute of Tech.*, No. 93-56413, 1995 WL 242307, at *3 (9th Cir. 1995) ("Srinivasan's third ground for Rule 60(b) relief fails because the new theories … are not proper bases for a Rule 60(b) motion."); *Belinda K. v. Baldovinos*, No. 10-CV-02507-LHK, 2012 WL 3249481, at *3 (N.D. Cal. Aug. 7, 2012) ("[Rule 59 and Rule 60] motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover they cannot be used to argue a case under a new legal theory." (alterations in original) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)); *Willis v. Mullins*, 809 F. Supp. 2d 1227, 1233 (E.D. Cal. 2011) ("A change in a litigant's legal position is not one of the extraordinary circumstances justifying a motion to reconsider[5] and suggests why such motions are generally discouraged" (quoting *Winnemucca Farms, Inc. v. Eckersell*, 2009 WL 1328870, at *1 (D. Nev. May 12, 2009)).

The present situation is similar to that in *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990), where the court held the following regarding "newly discovered" evidence:

[5] "[C]ourts look to the standards under Rule 59(e) and Rule 60(b) for guidance" regarding motions to reconsider.  *Id.*

[T]he letters are not equivalent to a 'smoking gun,' as Jones argues. Rather than dictating a different result, they would likely have led Jones to prepare and present a different case—taking additional depositions, presenting other witnesses, and arguing a different theory of defect to the jury. Althea, too, would have defended differently. We are not persuaded, however, that the district court abused its discretion in concluding Jones failed to establish the outcome likely would have been different.

The December trial was limited to whether the "ResultsDB" satisfied the "database" element of Claim 10 of the '494 Patent because the Court found on summary judgment that the specific components Finjan had identified as the claimed "security profile" and "database manager" satisfied the claim elements. If Finjan had instead pointed to Joe Sandbox's database as comprising the claimed "database," then new discovery and argument would be required to determine whether the "security profile" and "database manager" claim elements were satisfied in this new configuration; indeed, Finjan even admits that new discovery would be required. *See* Dkt. 412 at 18 ("Finjan respectfully requests a new trial after obtaining follow up discovery on this newly obtained evidence"). It is not proper to set aside a judgment under Rule 60 to consider such a new theory that admittedly requires new discovery. *See Jones*, 921 F.2d at 878.

## B.   Finjan Is Not Entitled To Relief Under Rule 60(b)(3).

Finjan alternatively argues that it is entitled to a new trial under Federal Rule of Civil Procedure 60(b)(3) due to Juniper's alleged "misconduct." Dkt. 412 at 15-16. "Under Rule 60(b)(3), the movant must, (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct [and] (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." *Jones*, 921 F.2d at 878-79. Finjan has not met its burden under either of these elements.

### 1.   Juniper Did Not Engage In Misconduct.

Courts generally do not find misconduct without some type of false statement. *See, e.g., Immersion Corp. v. Sony Computer Entertainment Am., Inc.*, 2006 WL 618599, at *20-21 (N.D. Cal. March 8, 2006) ("Sony has not identified a particular false statement by Immersion, but instead relies on Immersion's omission of the offer and agreements as evidence of misconduct. … [S]uch discovery violations do not rise to the level of misconduct justifying relief from final judgment."). Here, for all its bluster and hyperbole, Finjan has not—and cannot—identify any false statements

1  made by Juniper regarding the Joe Sandbox database or the Joe Security documents produced in

2  February 2019.

3       Finjan claims that Juniper never "suggested it was withholding any documents" and that

4  Juniper "represent[ed] that it did not have in its possession the Joe Sandbox technical documents

5  that Joe Security provided to Juniper." Dkt. 412 at 15-16. But as noted above, Juniper did not

6  withhold documents, and it truthfully told Finjan that it did not have access to Joe Sandbox source

7  code and that Joe Sandbox operates as a "black box" from Juniper's perspective. Juniper's

8  responses to Finjan's request for production regarding Joe Security documents expressly noted that

9  Juniper's production was specifically limited to "Sky ATP source code," "technical specifications,

10  design and development documents, and administration guides," and "licenses with Joe Security."

11  Dkt. 412-8 at, *e.g.*, 8.

12       Finjan also insinuates that Juniper affirmatively represented that the Joe Sandbox database

13  did not exist because "Juniper failed to identify Joe Sandbox as a database in Sky ATP" in its

14  interrogatory response. Dkt. 412 at 16. But as noted above, Juniper produced documents that

15  referenced a database within Joe Sandbox (*e.g.*, Exs. 1-3, 10-14), and its responses to interrogatories

16  were expressly limited to the storage solutions in the "Results Database" that Finjan implicated in

17  its infringement theories.

18       Finjan also repeats its allegation that Juniper's employees were lying under oath when they

19  testified that they did not know how Joe Sandbox operated. Contrary to Finjan's assertion, this

20  testimony is not "demonstrably false." *See* Dkt. 412 at 16. Understandably, given Finjan's

21  infringement theories, the employees it chose to depose had little to no knowledge of Joe Sandbox.

22  Thus, they would not have any reason to know the technical details of how Joe Sandbox operates.

23  Finjan elected not to pursue a Rule 30(b)(6) deposition relating to Joe Sandbox before the December

24  trial nor to seek any discovery directly from Joe Security.

25       Finally, courts typically do not find misconduct where the moving party failed to seek court

26  intervention. *See, e.g., De Saracho v. Custom Food Machinery, Inc.*, 182 F.R.D. 601, 608 (N.D.

27  Cal. 1998) (no misconduct where "normal and usual discovery efforts would have yielded to

28  Movants the information of which they claim to have been deprived by the purported misconduct

of Respondents."); *Venture Industries Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1331 (Fed. Cir. 2006) ("Autoliv had ample opportunity to ask the Court to require further of Venture if it felt that its discovery requests [were] not being met.  Autoliv did not request further action from the district court in this regard.  We conclude that the district court did not abuse its discretion in holding that Venture did not engage in discovery misconduct within the meaning of Rule 60(b)(3)." (quotation marks and citations omitted, alteration in original)); *see also Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260-61 (9th Cir. 2004) ("Casey claims that Albertson's failure to respond to a request for production of Smith's employment records constitutes fraud.  It is significant to note that this is not a case in which it is alleged that Albertson's possessed Smith's employment records but falsely denied having them, or the like.  Casey simply argues that Albertson's failed to respond to a discovery request made two and a half weeks before the close of discovery.  This is a run-of-the-mill discovery problem for which the rules provide remedies, had they been sought…. Albertson's discovery recalcitrance does not constitute fraud.  Moreover, Casey failed to file a motion to compel production of Smith's employment records.").  Finjan's failure to seek relief from the Court regarding the scope of Juniper's discovery responses related to Joe Security thus moots Finjan's argument that Juniper committed any alleged misconduct.

### 2.      Finjan Was Not Prevented From Fully And Fairly Presenting Its Case.

Finjan has also failed to meet its burden to show that it was prevented from fully and fairly presenting its case.  As explained above, storage solutions provided by Joe Sandbox are irrelevant to Finjan's infringement theory because they could not possibly store the "security profile" as defined by Finjan and because they are not managed by the accused "database manager."  Had Finjan wanted to present this theory at trial, however, it was free to do so (assuming that it could have convinced the Court that it had good cause to change its infringement contentions), as Juniper did produce documents pre-trial demonstrating that Joe Sandbox indeed had its own database.  Not surprisingly, Finjan chose not to rely on these documents; Finjan does not even seek to explain why

1  the additional Joe Security documents produced in February 2019 could be material when they are

2  cumulative to evidence that Finjan chose not to rely on at trial.**6**

3         **C.     Finjan's Prejudice Allegations Are Unfounded.**

4         Finjan argues that Juniper's "misconduct" resulted in severe prejudice because it was

5  "foreclosed [] from presenting highly probative evidence at trial of a 'database' and during post-

6  trial briefing." Dkt. 412 at 17. But, as noted above, Juniper did not actually engage in any

7  "misconduct." Moreover, Juniper had produced documents evidencing the Joe Sandbox database

8  well before the trial, and Finjan make the strategic decision not to use them—because any storage

9  solution used by Joe Sandbox was simply not relevant to Finjan's infringement theory. Thus, there

10  is no basis for Finjan's assertion that it would have even used these documents at trial, much less

11  that they would have swayed the jury in its favor.

12         Finjan separately complains that Juniper allegedly withheld damages discovery. *See* Dkt.

13  412 at 17. As detailed in Juniper's opposition to Finjan's Motion for a New Trial, Finjan's

14  allegations concerning Juniper's damages discovery are just as baseless as its allegations of

15  misconduct concerning the Joe Security documents. Dkt. 360 at 14-20.**7** Moreover, Finjan's

16  allegations regarding damages discovery have nothing to do with whether Juniper committed any

17  misconduct related to the Joe Security documents, or whether the Court should set aside the

18  judgment of non-infringement under Rule 60. These are two completely different sets of documents

19  that relate to two completely different issues, so the Court should disregard Finjan's allegations

20  regarding damages discovery because they are irrelevant.

21

22  _____

23  **6** The *Jones* case cited by Finjan is distinguishable because that court found the concealed evidence
to be "much more than merely corroborative or cumulative evidence." *Jones v. Aero/Chem Corp.*,
24  921 F.2d 875, 879 (9th Cir. 1990). By contrast, as explained here, the "Joe Sandbox documents"
are entirely cumulative to the Joe Sandbox discovery that Juniper produced before trial, which also
says that Joe Sandbox has a database. Moreover, with respect to potential misconduct, the *Jones*
25  court noted that, in the *Anderson* case that it quotes, that court had based its finding of misconduct
on the fact that the party seeking discovery had exercised diligence; by contrast, as discussed above,
26  Finjan did not exercise diligence in this case. *See id.* (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d
910, 928 (1st Cir. 1988).

27  **7** Finjan already moved for a new trial under Rule 59 by alleging that "Juniper and its counsel
withheld and misrepresented critical sales and use information" (Dkt. 353 at 16-19), and the Court
28  already denied that motion (Dkt. 387 at 4).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**IV.     CONCLUSION**

Finjan accuses Juniper of misconduct in allegedly withholding certain discovery, but if there is any foul play, it is Finjan's characterization of the facts.  Finjan's elaborate conspiracy theory completely unravels on close inspection.

Juniper produced documents as far back as July 2018 showing that Joe Sandbox had a database.  Finjan failed to exercise reasonable diligence in investigating the Joe Sandbox database further, however, which is no surprise because Joe Sandbox's database is actually a red herring. Finjan's theory of infringement did not depend on whether Joe Sandbox has a database because the Joe Sandbox database does not store the accused "security profiles" nor is it managed by the accused "database manager."  As a result, the "Joe Sandbox documents" at issue in Finjan's Motion (which are cumulative to the pre-trial discovery Juniper produced related to the Joe Sandbox database) would not have had any bearing at all on the case.  Finjan's motion under Rule 60 should therefore be denied both because it is factually incorrect in alleging that Juniper improperly withheld discovery and because the documents in dispute are just an irrelevant distraction.

Dated:  April 12, 2019                              Respectfully submitted,

                                                                    IRELL & MANELLA LLP


                                                                    By:  */s/ Rebecca L. Carson*
                                                                    _____
                                                                          Rebecca L. Carson
                                                                          *Attorneys for Defendant*
                                                                          JUNIPER NETWORKS, INC.