IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
Alan Heinrich (SBN 212782)
aheinrich@irell.com
Joshua Glucoft (SBN 301249)
jglucoft@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Ingrid Petersen (SBN 313927)
ipetersen@irell.com
Kevin Wang (SBN 318024)
kwang@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**DEFENDANT JUNIPER NETWORKS, INC.'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Date:       May 2, 2019<br>Time:      8:00 a.m.<br>Judge:    William Alsup<br>Courtroom: 12, 19th Floor |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572

JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
(Case No. 3:17-cv-05659-WHA)

# **TABLE OF CONTENTS**

**Page**

I.   FINJAN'S "STRONGEST CLAIM" WAS DOOMED FROM THE BEGINNING. .................................................................................................... 2

    A.   Finjan Endlessly Pursued Unsupported Damages Theories in Bad Faith. ............................................................................................................... 2

    B.   Finjan Arguments Concerning Constructive Notice Are Contrary To Its Sworn Statements To The PTAB. ........................................................... 5

    C.   Finjan's Actual Notice Arguments Were Based On False Statements. ..................... 7

II.  FINJAN'S ASERTION OF CLAIM 1 OF THE '780 PATENT WAS FRIVOLOUS ................................................................................................... 10

    A.   Finjan Does Not Dispute That Its Contentions Against The SRX Were Meritless. ................................................................................................. 10

    B.   Finjan's Interpretation Of The Hashing Limitation Was Unreasonable. ........................................................................................................ 12

    C.   Finjan Provides No Explanation For Its Inherently Inconsistent Positions On Infringement And Invalidity. ............................................................... 13

III. FINJAN'S ASSERTION THAT IT HAS MADE NO FALSE STATEMENTS IS FALSE ................................................................................ 14

    A.   Finjan's Section 282 Objection Was Based On False Statements. ........................ 14

    B.   Finjan Made Frivolous Privilege Claims During Discovery. ................................ 15

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572.1 01

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asyst Techs., Inc. v. Empak, Inc.*,
  2006 WL 3302476 (N.D. Cal. Nov. 14, 2006) ................................................................. 8

*Business Guides v. Chromatic Communications Enter., Inc.*,
  119 F.R.D. 685 (N.D. Cal., April 12, 1988) ................................................................ 15

*Finjan, Inc. v. BitDefender, Inc.*,
  No. 4:17-cv-04790-HSG, 2019 WL 634985 (N.D. Cal. Feb. 14, 2019) ..................... 13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ........................................................................... 4, 5, 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  No. 13-cv-03999-BLF, 2014 WL 5361976 (N.D. Cal. Oct. 20, 2014) ....................... 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  No. 13-cv-03999-BLF, 2015 WL 3630000 (N.D. Cal. June 2, 2015) ........................ 13

*Finjan, Inc. v. Cisco, Inc.*,
  No. 5:17-cv-00072-BLF, 2018 WL 3537142 (N.D. Cal. July 23, 2018) .................... 13

*Finjan, Inc. v. ESET, LLC*,
  No. 17-cv-00183-CAB-(BGS), 2017 WL 5501338 (S.D. Cal. Nov. 14, 2017) ......... 13

*Finjan, Inc. v. Secure Computing Corp.*,
  No. 06-369 (GMS), Dkt. No. 142 (D. Del. Dec. 11, 2007) ..................................... 4, 12

*Finjan, Inc. v. Sophos, Inc.*,
  244 F. Supp. 3d 1016 (N.D. Cal. 2017) ...................................................................... 13

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010) ................................................................................ 8, 9

*Homkow v. Musika Rs., Inc.*,
  2009 WL 721732 (S.D.N.Y. Mar. 18, 2009) .............................................................. 14

*LaFarge Corp. v. No. 1 Contracting Corp.*,
  2008 WL 2120518, at *5-6 (M.D. Pa. May 19, 2008) ................................................ 11

*Minks v. Polaris Indus., Inc.*,
  546 F.3d 1364 (Fed. Cir. 2008) .................................................................................... 8

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page**

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
 Case IPR2016-00165, Paper No. 7 (P.T.A.B. April 21, 2016) ................................................... 13

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
 127 F.3d 1462 (Fed. Cir. 1997) ..................................................................................................... 8

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
 875 F.3d 426 (9th Cir. 2017) ....................................................................................................... 10

*Truesdell v. Southern California Permanente Medical Group*,
 293 F.3d 1146 (9th Cir. 2002) ..................................................................................................... 15

*United States v. Chadwell*,
 798 F.3d 910, 914 (9th Cir. 2015) ................................................................................................. 6

*Viola Sportswear, Inc. v. Mimun*,
 574 F. Supp. 619 (E.D.N.Y. 1983) .............................................................................................. 11

*VirnetX, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014) ..................................................................................................... 4

**Statutes**

35 U.S.C. § 101 ........................................................................................................................... 13, 14

35 U.S.C. § 287 ..................................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 11(c) ......................................................................................................................... 15

Fed. R. Civ. P. 60(b) .......................................................................................................................... 2

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

This Court has been very clear that the outcome of the first round of the "Patent Showdown" could have serious consequences for one party or the other, as it could "warrant an injunction or sanctions." This Court warned Juniper of potential injunctive relief—if it lost—but explained "you're going to get sanctions against them [Finjan] if it warrants sanctions" and Finjan "will have to pay that right off the bat"—"[c]ould be hundreds of thousands of dollar for having brought a bogus claim against Juniper." Dkt. 44 (2/22/18 Hr'g Tr. at 6). Now that the first round is over with a complete victory for Juniper on both the claim it selected and on the claim Finjan identified as its strongest, it has become clear that Finjan's claims were "bogus" from the start, and Juniper requests that the Court exercise its inherent powers to sanction Finjan.

Juniper did not bring this Motion merely because it prevailed on both Finjan's strongest and weakest claims. Rather, it became clear during the litigation that Finjan had asserted these claims—and continued litigating them through conclusion—by using legal gamesmanship that unreasonably multiplied the proceedings, drove up Juniper's legal costs, and wasted this Court's time. Contrary to Finjan's assertion, this was not simply a "hard-fought litigation" waged with good-faith tactics. To the contrary, during the course of the litigation Finjan demonstrated that it would baldly disregard binding legal precedent on damages, try to disavow its own statements to the PTAB, and even present false statements from its employees, under oath, to support its allegations of pre-suit notice. Finjan has also repeatedly played "hide the ball" by forcing Juniper to brief infringement claims that it would not even oppose. Finjan further multiplied the proceedings by filing motions containing demonstrably false statements (*e.g.*, Finjan's § 282 motion) and by asserting and maintaining legally indefensible positions that require Juniper to obtain Court intervention (*e.g.*, Finjan's unsupported privilege claims). Finjan provides no excuse for its pattern of unreasonable conduct during the first round of the "Patent Showdown." Instead, it simply rehashes the same legally unsound arguments that it made during the earlier proceedings and claims that the Court got it wrong.

Finjan tries to excuse its own poor conduct by making allegations of improper conduct by Juniper. First, these allegations—even if true (and they are not)—do nothing to justify Finjan's record of conduct designed to drive up the cost of this litigation. Second, Finjan's claim that Juniper produced "evidence that Sky ATP uses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the "first time in

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                           - 1 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                            (Case No. 3:17-cv-05659-WHA)

February 2019" is demonstrably false—and, in fact, is just another example of the type of misrepresentation Finjan has repeatedly demonstrated it is willing to make to this Court: Juniper's opposition to Finjan's Rule 60(b) motion contains a series of documents produced well before February 2019 referencing and identifying ▮▮▮▮▮▮▮▮. Dkt. 434-4 at 4-6. For example, Juniper produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and then produced additional documents in November 2018 discussing ▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Juniper respectfully requests that the Court exercise its inherent power to sanction Finjan for its unreasonable conduct during the first round of the Patent Showdown proceedings.

**I.  FINJAN'S "STRONGEST CLAIM" WAS DOOMED FROM THE BEGINNING.**

As demonstrated in Juniper's opening brief, Finjan never had a good faith basis to argue (1) that it was entitled to damages, (2) that it provided actual notice, or (3) that it provided constructive notice for Claim 10 of the '494 Patent. Nonetheless, and as the deficiencies with this claim became more and more obvious during the course of the litigation, Finjan continued to pursue this claim up to and including in post-trial motions. Indeed, this Court gave Finjan multiple chances to correct or abandon its insufficient damages theories, but Finjan rejected each one, stubbornly insisting on advancing a damages theory that violated controlling law. Juniper had to expend enormous resources to rebut each of Finjan's legally invalid theories. As another example, Finjan's constructive notice arguments required Finjan to argue that the representations it made to the PTAB during an IPR about its '494 patent licensees were inaccurate, and Finjan's actual notice arguments were based on false statements from its employee, John Garland that only came to light because Juniper had (legally) recorded a call with Mr. Garland. Finjan knew—or should have known—that its theories on damages and notice were flawed when it advanced them, and thus needlessly multiplied the proceedings.

  **A.  <u>Finjan Endlessly Pursued Unsupported Damages Theories in Bad Faith</u>.**

Finjan presents no real excuse for its decision to repeatedly advance a damages theory that the Court ruled—multiple times—was invalid. Rather, it tries to justify its rejected theory by claiming

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                    - 2 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                           (Case No. 3:17-cv-05659-WHA)

it was "supported by law and fact." Opp. at 11-16. The issue on this motion, however, is not whether Finjan at some point believed it had a valid damages theory. Rather, the issue is what Finjan did after the Court rejected this argument: Did Finjan advance a new theory consistent with the Court's rulings (even though it would result in a low damages amount), or would it continue to pursue an unsound theory in the hopes of getting a large award? The record is very clear on this point.

Finjan first claims that it should not be sanctioned because its expert, Kevin Arst, properly applied a cost savings analysis to reach a damages figure of over $60 million. *See* Opp. at 11. The Court expressly rejected this argument, noting ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Dkt. 283 (Order at 4-6). The Court further explained ████████████████████████ ████████████████████████████████ *Id*. at 4.[1] Finjan's attempt to justify its flawed damages theory by mischaracterizing the Court's prior rulings is particularly troubling, in view of the Court's recent order on post-trial motions:

> [C]ontrary to Finjan's repeated contention that the Court erred in capping Finjan's reasonable royalty amount to Juniper's actual revenues, the Court held, ***in connection with Finjan's expert report***, that Finjan's asserted damages of $60–70 million simply was not credible in light of Juniper's $1.8 million in actual revenue (see Dkt. No. 283 at 4). The Daubert order striking Finjan's damages expert report had nothing to do with a per se capping of damages to Juniper's revenue. To repeat, that order simply found that Finjan's damages expert used an unreliable methodology.

Dkt. 387 at 4 n.1 (emphasis added). Thus, Finjan cannot credibly argue now that Mr. Arst's opinion was consistent with legal precedent.

Finjan next argues that it presented sufficient evidence of damages during trial. Opp. at 12-16. But this ignores the record. According to the Court, Finjan's damages case during trial was "woefully inadequate." Dkt. 339 (Trial Tr. at 839). In particular, the Court found that "on th[e] record it would be impossible for the jury to apportion the revenue between the patented item and

---

[1] As detailed in Juniper's *Daubert* motion, Mr. Arst did not actually conduct a proper cost-savings analysis because he did not compare the costs associated with infringing with the costs associated with a viable non-infringing alternative. Dkt. 230 at 9. Rather, his calculations for the cost of using a non-infringing alternative still included costs associated with infringing (e.g., the costs to store profiles in DynamoDB and S3). *Id*. at 10.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                    - 3 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                     (Case No. 3:17-cv-05659-WHA)

the unpatented item." *Id*. at 838.[2]  Finjan has not—and cannot—claim that it did not know that there was a major apportionment issue with its damages case, as it is well-settled law that a patentee must properly apportion.  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) (a court must exercise "its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury").  Moreover, Juniper had repeatedly raised the issue—both before and during trial. *See* Dkts. 230 (Daubert Motion), 292 (Letter to Court regarding Finjan's proffer of Mr. Arst's testimony), 305 (Response to Finjan's Offer of Proof); and 352 (Juniper's JMOL on damages).  Finjan's complete failure to introduce competent apportionment evidence—despite Juniper's repeated warnings—demonstrates Finjan's lack of good faith.

Finjan further fails to provide any legitimate excuse for presenting damages theories that the Federal Circuit has expressly rejected.  For example, while Finjan goes on at length about the evidence that Finjan supposedly introduced to justify an $8 per user rate, none of the evidence it points to addresses the fundamental issue that the Federal Circuit identified when it overturned this theory in Finjan's prior *Blue Coat* case.  There, the Federal Circuit expressly rejected Finjan's proposed $8 per user fee because Finjan had not "adequately tie[d] the facts of *Secure Computing* [the case from which the 8-16% rate Finjan uses to derive the $8 per user rate] to the facts of [the *Blue Coat*] case."  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018).  Here, just like in *Blue Coat*, Finjan does not identify any evidence presented at trial that ties the *Secure Computing* case to Juniper's case.  Indeed, just as in *Blue Coat*, *Secure Computing* did not even involve the patent-in-suit.  *Id.* (noting that "*Secure Computing* did not involve the '844 patent, and there is no evidence showing that the patents that were at issue are economically or technology comparable").  Moreover, the fact that the $8 per user rate is "plucked out of thin air" is confirmed by the fact that Finjan's own witnesses confirmed that it does not have a single licensee who has

---

[2] Finjan rehashes the same substantive arguments about apportionment that it made during trial. Opp. at 13. Those arguments are still unpersuasive, as they fail to isolate a percentage of revenues attributable to the accused functionality—i.e., storing profiles in a database—as opposed to the numerous non-infringing functions—e.g., Juniper's proprietary static analysis engine, dynamic analysis, antivirus, etc. Thus, as the Court held, Finjan's attempt at apportionment is inadequate because it does "not separate out the portions of Sky ATP that do not infringe." Dkt. 339 (Trial Tr. at 838).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                - 4 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                 (Case No. 3:17-cv-05659-WHA)

accepted such a rate.  Dkt. 336 (Trial Tr. at 315:24-316:5).

Similarly, none of the evidence Finjan identifies to try to justify its introduction of a $0.32 per scan is even remotely relevant to the hypothetical negotiation.  The fact that Finjan paid $0.32 per scan for *its* mobile security product—which is fundamentally different than Juniper's cloud-based Sky ATP services—says nothing about what **Juniper** would have agreed to pay in a hypothetical negotiation with Finjan.  Moreover, Finjan's argument that it was proper to present the 8%/16% starting point without presenting evidence about "the appropriate ending point" because that "is a question for the jury to decide" is directly contrary to the Federal Circuit's holding in *Blue Coat*. *Blue Coat*, 879 F.3d at 1312 ("[T]estimony that an 8-16% royalty rate would be the **current starting point** in licensing negotiations says little about what the parties would have proposed or agreed to in a hypothetical arm's length negotiation.") (emphasis added).  Finjan's attempt to rely on theories that the Federal Circuit expressly rejected demonstrates its reckless disregard for legal precedent.

### B. Finjan Arguments Concerning Constructive Notice Are Contrary To Its Sworn Statements To The PTAB.

Regarding constructive notice, Finjan first tries to blame Juniper for Finjan's inability to meet its burden by claiming that it "sought to drop this theory" but that Juniper "demand[ed] that Finjan present [it] at trial."  Opp. at 8.  This is absurd; Juniper cannot force Finjan to present evidence of constructive notice; if Finjan did not provide constructive notice, it could have simply admitted this fact.  Finjan's decision to misrepresent the record to avoid this admission was Finjan's alone.[3]

Finjan next tries to side-step the issues raised in Juniper's Motion by making irrelevant arguments about marking evidence it introduced concerning its own product. Opp. at 8-9.  Juniper's Motion is based on Finjan's bogus argument that its *licensees* did not practice the '494 Patent (and thus did not need to mark their products), given that it had previously taken the exact opposite position before the PTAB in sworn testimony.  *See e.g.*, Trial Ex. 1760 at 55-60.  Thus, it is irrelevant

---

[3] Despite multiple rounds of briefing on this issue, Finjan still seems to misunderstand § 287.  Section 287 only applies to patentees who sell products that embody the patent (or who have licensees who practice the patent).  35 U.S.C. § 287.  If such patentees comply with the constructive notice requirements of § 287 by marking their products, then there is no need to prove actual notice.  *Id.*  Because actual notice is only necessary if a patentee has not complied with § 287, it makes no sense to say that one can decide the issue of actual notice without deciding the threshold issue of whether the patentee was required to (and did) provide constructive notice.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                - 5 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                 (Case No. 3:17-cv-05659-WHA)

to this Motion whether Finjan marked its own product.[4]

Finjan also tries—once again—to claim that Juniper did not meet its *Artic Cat* burden to identify unmarked products. Opp. at 9. But this is directly contrary to admissions Finjan's counsel made directly to this Court: Finjan's counsel admitted: "[T]hey did give us an *Arctic Cat* notice. They did." Dkt. 336 (Trial Tr. at 289:8–23).

Finjan's position is also contrary to Trial Exhibit 1760, which contains express admissions from Finjan that several specific licensees practice its patents. Finjan's attempt to argue that the portions of Trial Exhibit 1760 that discuss the '494 licensees are not evidence because a witness did not discuss those portions is plain wrong. There is no dispute that Trial Exhibit 1760 was admitted into evidence in its entirety. *See* Dkt. 337 (Trial Tr. at 515). Therefore, the jury could fully consider the contents of the exhibit. *United States v. Chadwell*, 798 F.3d 910, 914 (9th Cir. 2015) ("Jurors generally may examine all or part of any exhibit received into evidence and determine the weight to give that evidence during deliberations in the privacy of the jury room."). Additionally, Finjan's argument that Juniper cannot rely on Finjan's express statements to the PTAB that its licensees practice the '494 Patent because "Finjan's licensees have not agreed to licenses containing a marking requirement, which raises a fact issue as to whether their products actually infringe" is troubling. If Finjan is correct when it now states its licensees do not practice the '494 Patent, then it is essentially admitting that it lied to the PTAB when it said that it did practice the '494 Patent.

Finally, Finjan complains that Juniper did not include all of Mr. Andre's improper closing statement in its Motion. Opp. at 9. But the portion that Finjan cites in its Opposition just evidences additional misrepresentations that Mr. Andre made to the Court. In particular, Mr. Andre responded to the Court's admonition by claiming that he did not intend to say that the statements in Trial Exhibit 1760 were not evidence, but rather that Trial Exhibit 1760 did not identify "any specific products." Opp. at 9. Even if Mr. Andre did misspeak on this crucial point, however, it does not salvage Finjan's position—as the "corrected" version of Mr. Andre's statement is still false: Trial Exhibit 1760

---

[4] Even if Finjan were able to prove that it adequately marked the Vital Security product—which it did not—it has not even attempted to rebut Juniper's argument that those Vital Security products would not comprise "substantially all" of the patented articles sold during the relevant time, given that the sales of Vital Security were dwarfed by those of Finjan's licensees. Dkt. No. 352 at 6.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                            - 6 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                                    (Case No. 3:17-cv-05659-WHA)

1  indisputably identifies specific licensee products that Finjan told the PTO practiced the '494 Patent.
2  *See* Trial Exhibit 1760 at 56-60 (identifying "Avast's Endpoint Protection" product, "F-Secure's
3  multi-layered approach to security [that] is comprised of five modules," "Proofpoint products," and
4  Websense's products).  Thus, even if Finjan could now re-write Mr. Andre's statement, there is still
5  no basis for Finjan's claim that "Mr Andre's statements were 100% accurate."  Opp. at 10.

        C.      **Finjan's Actual Notice Arguments Were Based On False Statements.**

7        Finjan tries to distract the Court from the core issue raised in Juniper's Motion—*i.e.*, that
8  Finjan made false statements about the actual notice it allegedly provided to Juniper—by making
9  substantive arguments about whether purported notice that it gave was legally sufficient. Particularly
10 as the jury did not need to reach the substantive notice issue, though, this is irrelevant to Juniper's
11 motion.  More significantly, however, Finjan does not dispute that its interrogatory responses ***and***
12 Mr. Garland's deposition testimony that he identified Sky ATP on a call with Mr. Coonan in
13 November 2015—both of which were provided under oath—were not true.  Instead, Finjan attempts
14 to deflect from the falsity of these sworn statements by claiming that Mr. Garland "was steadfast that
15 he identified Sky ATP as 'advanced malware' during the call."  Opp. at 8.  But "advanced malware"
16 is not the same thing as "Sky ATP" and if Mr. Garland did not have a clear memory of identifying
17 "Sky ATP" on the call, then neither he (nor Finjan) should have provided sworn statements saying
18 that he did that.  *See* Dkt. 113-2 (Finjan's Second Suppl. Resp. to Interrog. No. 6 at 5) (stating that
19 Finjan identified "Sky ATP," not that it identified "advanced malware").  Indeed, it was only after
20 Mr. Garland learned that there was a recording of the phone call that he conceded his mistake.  *See*
21 Dkt. 410-2 (11/2/2018 Garland Dep. At 315:19-22) ("Q: You never mentioned Sky ATP on the call.
22 Is that correct? . . . The Witness: I don't mention Sky ATP."); *see also* Dkt. 337 (Trial Tr. at 588:13-
23 16) ("Q.  And you know that you're mistaken and that you did not mention Sky ATP; is that right?
24 A.  I only know I'm mistaken because the call - -  yeah, the call is recorded and taped and
25 transcribed.").  But for this recording, Mr. Garland acknowledged that he would ***still*** be testifying
26 incorrectly that he identified Sky ATP during the call.  *See* Dkt. 337 (Trial Tr. at 588:23-589:5).
27       Finjan's substantive arguments do not change the fact that Finjan made false statements to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                    - 7 -                        JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                              (Case No. 3:17-cv-05659-WHA)

try to support its notice allegations—and they are legally insufficient in any event.  Finjan first argues that it made general allegations that Juniper's products were infringing Finjan's patents and that it identified the '494 Patent to Juniper on a phone call between John Garland and Scott Coonan.  Opp. at 5-6.  But neither of these facts are contested; and neither is sufficient to meet the actual notice requirement.  For actual notice, the patentee "*must* communicate a charge of infringement of *specific patents by a specific product or group of products*."  *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).  Finjan also improperly tries to shift the burden to Juniper by arguing that Juniper needed to prove that no notice occurred.  Dkt. 431-4 at 5-6.  But because Finjan failed to carry its burden of proof, Juniper did not have a burden to rebut anything.

Finjan also contends that actual notice occurred because it allegedly identified a group of accused products.  *Id.* at 4.  But Finjan has not actually identified any communication that includes Sky ATP.  Indeed, neither "advanced malware modules" nor "Next Generation Firewall" identifies a specific group of products.  At best, "advanced malware modules" and "Next Generation Firewall" refer generally to the market for advanced malware solutions.  And, identifying a broad market for products does not sufficiently provide actual notice as a matter of law.  *See Asyst Techs., Inc. v. Empak, Inc.*, 2006 WL 3302476, at *4 (N.D. Cal. Nov. 14, 2006) (finding insufficient actual notice as a matter of law despite the patent owner sending letters identifying "the market for SMIF pods" because "[n]either letter identified any particular product of [the defendants]").  The cases Finjan cites in support of its argument are easily distinguished.  In *Funai Elec.*, 616 F.3d at 1373, the Federal Circuit found that the patentee put the accused infringer on notice of certain products not accused in its initial notice letter because the additional products "contained the same infringing components." Here, Sky ATP and SRX are separate products that have entirely different functionalities.  Further, in *Minks v. Polaris Indus., Inc.,* 546 F.3d 1364, 1377 (Fed. Cir. 2008), the Federal Circuit did not issue a finding as to whether actual notice was provided but instead held that the jury should have been advised to consider notice "in the context of [an] ongoing relationship between the parties" where the accused infringer allegedly made false statements concerning its accused products during pre-suit negotiations.  Here, no such considerations mitigated Finjan's need to identify a specific product.  Lastly, in *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469-70 (Fed. Cir.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                       - 8 -                     JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                              (Case No. 3:17-cv-05659-WHA)

1997), the patentee identified the specific accused products and the asserted patent in a pre-suit letter to the accused infringer.  Finjan provided no such letter to Juniper.

Finjan also argues that Mr. Garland's subjective understanding that "advanced malware modules" meant Sky ATP is enough for actual notice. Opp. at 4.  This is wrong.  The standard for actual notice is objective and it does not matter what Mr. Garland subjectively understood. Specifically, the Federal Circuit has explained that "[t]o serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer[; . . . and t]he letter must communicate a charge of infringement of specific patents by ***a specific product or group of products***."  *Funai Elec.*, 616 F.3d at 1373.  Thus, Finjan's argument that "advanced malware modules" really meant Sky ATP is contrary to Federal Circuit precedent.  In any event, Finjan's hindsight recharacterization of what Mr. Garland meant is not supported by the other facts in the record.  Indeed, earlier in the call, Mr. Garland specifically identified three advanced malware "modules"—the Unified Threat Management, web-filtering, and anti-virus modules—each of which is included on the SRX and each of which has nothing to do with Sky ATP.  Trial Ex. 345 at 2 (discussing SRX's on-box "advanced malware" threat protection, which is unrelated to Sky ATP);[5] Coonan Dep. Tr. at 167:13-24 ("Q. Have you heard of Sky ATP referred to as advanced malware? A. No. . . . Q. Have you ever heard of Sky ATP referred to as having advanced malware modules? A. Not – not a module, no, 'cause it's a cloud-based solution.") (Testified through Videotaped Deposition, Dkt. 337 (Trial Tr. at 538:18-20)); Dkt. 338 (Trial Tr. at 671:4–677:15) (Bushong: testifying that "advanced malware" modules existed in the original SRX released in 2008 and "do not have anything to do with Sky ATP").  Moreover, the press release that Finjan cites to refers to Sky ATP as an "Advanced Anti-Malware Cloud Service" not an "advanced malware module."  Trial

---

[5] Finjan argues that Trial Exhibit 345 did not exist in November 2015 and Juniper did not offer any witnesses to demonstrate that the 2017 reference to "advanced malware" is to anything other than a reference to Sky ATP.  Opp. at 7.  But that is not true.  Mr. Bushong testified about Trial Exhibit 345, and explained that the "advanced malware" modules described in that datasheet existed in the original SRX released in 2008, and that these modules "do not have anything to do with Sky ATP."  Dkt. 338 (Trial Tr. at 671:4-677:15).  Moreover, Mr. Coonan testified that he had not "heard of Sky ATP referred to as advanced malware" and had not heard "of Sky ATP referred to as having advanced malware modules" because "it's a cloud-based solution."  Coonan Dep. Tr. at 167:13-24 (Testified through Videotaped Deposition, Dkt. 337 (Trial Tr. at 538:18-20)).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                    - 9 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                     (Case No. 3:17-cv-05659-WHA)

Ex. 91. These are not "nearly identical words" as Finjan claims, and are not objectively the same thing. *See* Dkt. No. 357 at 7.

## II. FINJAN'S ASERTION OF CLAIM 1 OF THE '780 PATENT WAS FRIVOLOUS

### A. Finjan Does Not Dispute That Its Contentions Against The SRX Were Meritless.

Finjan essentially admits that its contention that the SRX infringed Claim 1 was baseless. Indeed, it acknowledges that it chose not to pursue the claim after reviewing confidential discovery regarding the SRX. Opp. at 21. Finjan, however, argues that it was entitled to drop its claim against the SRX (without telling Juniper before Juniper wasted time preparing and filing its summary judgement motion) because patentees are not "obligated to move forward with every claim." Opp. at 21. But Finjan's argument is contrary to the Court's explicit instructions. When the Court instituted the "Patent Showdown" procedure, the Court made clear that Finjan was required to withdraw any claim that it did not want to pursue by March 8, and after that, Finjan would be "stuck" with the claims it selected. Dkt. 44 (Case Management Conference) at 9:21-10:6.

Even if the Court had not specifically ordered this, however, Finjan had an obligation to drop any claims that lacked a legal or factual basis as soon as that became apparent during discovery. For example, in *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 443-44 (9th Cir. 2017), the Ninth Circuit affirmed sanctions under § 1927 against *Stone Creek* "for not earlier dropping its actual damages claim when it intended to pursue only Omnia's profits." In that case, Stone Creek knew that its actual damages claim was meritless and had no evidence to support it, yet it failed to withdraw the claim. This forced Omnia "to expend time and resources defending against the claim by, for example, taking depositions and having its expert prepare a report." *Id.* Here, just like in *Stone Creek*, Finjan admits that it knew its claim against the SRX had no merit once it reviewed Juniper's confidential documents. Finjan also knew that Juniper was expending large resources to prepare its summary judgement motion, given the Court's showdown procedure. Yet, Finjan failed to tell Juniper that it no longer intended to pursue its claim against the SRX, thus unreasonably multiplying Juniper's costs associated with defending against Finjan's claims.

Finjan goes so far as to suggest that Juniper is at fault because Juniper should have double-checked with Finjan to see if Finjan would be willing to drop the SRX from its contentions before

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                    - 10 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                      (Case No. 3:17-cv-05659-WHA)

1  filing its motion for summary judgement.  But this is disingenuous.  Tellingly, before the second
2  round of the "Patent Showdown" began, Juniper specifically asked Finjan to drop its assertion of
3  Claim 9 against the SRX and Sky ATP in view of the Court's adverse claim construction on Claim
4  1.  *See* Dkt. 410-4 at 1-3 (Exhibit D).  Finjan refused to do so, forced Juniper's to file its summary
5  judgment motion, and then once again did not even bother to respond on SRX and Sky ATP.  Thus,
6  any insinuation that Finjan might have dropped its allegations against the SRX before making Juniper
7  expend resources to draft a summary judgement motion is belied by Finjan's own pattern of conduct.

8         Finally, Finjan's attempt to blame its frivolous assertions against the SRX on the information
9  that was "publicly available" is equally unpersuasive, because Finjan's initial contentions were
10 facially deficient.  By way of example, the only evidence that Finjan identified to support its
11 allegation that the **SRX** hashes files—which is a necessary element of Claim 1 under either parties'
12 proposed construction—was a "File checksum sha-256" command that a customer can use to check
13 the integrity of a file when that customer downloads an update to the SRX Junos operating software.
14 Dkt. 96-7 at 11 (Finjan's Infringement Contentions for SRX).  This is obviously not evidence that
15 the SRX hashes the files it receives.  Given that Finjan was unable to point to any "public"
16 information that the SRX performed any hashing functions on the files that it processes, Finjan had
17 no basis for asserting Claim 1 against the SRX in the first instance.

18         Sanctions are warranted when a plaintiff brings claims so frivolous that it does not even bother
19 to address them on summary judgment, which is precisely what happened here.  For that reason,
20 Finjan's attempt to distinguish analogous cases is unconvincing.  Indeed, in *Viola Sportswear* the
21 Court granted sanctions where the plaintiff not only had no basis for the lawsuit at the time of filing,
22 but also for maintaining claims so frivolous that it did not bother to oppose summary judgment.  *Viola*
23 *Sportswear, Inc. v. Mimun*, 574 F. Supp. 619, 620 (E.D.N.Y. 1983).  Here, Finjan had no real basis
24 to argue that the SRX infringed from the beginning, and it failed to drop its claims even after
25 reviewing Juniper's confidential information (and even after losing summary judgment on an almost
26 identical claim).  Maintaining such baseless infringement contentions warrants sanctions.  *See also*
27 *LaFarge Corp. v. No. 1 Contracting Corp.*, 2008 WL 2120518, at *5-6 (M.D. Pa. May 19, 2008)
28 (granting sanctions where defendants asserted baseless defenses and then did not oppose the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                               - 11 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                                        (Case No. 3:17-cv-05659-WHA)

summary judgment motion), *modified in part*, 2008 WL 3910673 (M.D. Pa. Aug. 20, 2008).

## B. Finjan's Interpretation Of The Hashing Limitation Was Unreasonable.

As explained in Juniper's Motion, Finjan's allegations against Sky ATP were also frivolous because its claim construction position on the "hashing" limitation was unreasonable. Finjan's position in this case contradicted the statements it made to the Patent Office to obtain the patent in the first instance, as well as its statements in litigations against other defendants. Motion at 14-15. Finjan does not rebut either argument. Instead, Finjan claims that the Court simply got it wrong based on a series of mischaracterizations about what has happened in other proceedings.

Finjan admits that all prior courts have adopted a construction of the "hashing" limitation that requires that the Downloadable be hashed "together with" its fetched components. Opp. at 17. Because Juniper's products do not hash a Downloadable "together with" anything, however, Finjan was forced to argue in this case that "together with" can mean essentially anything—including "simultaneously but separately" or "at different times"—so long "as at the end, all separate hashes get collected together and stored someplace as one 'larger global' Downloadable ID." Dkt. 180 (Order) at 6. In other words, Finjan argued that the "hashing" limitation can be satisfied when the alleged Downloadable is hashed by a different component, at a different time, and using a different hashing function than the alleged fetched software components. Finjan cannot point to a single court that has adopted such a broad construction of the "hashing" limitation. To the contrary, most—if not all—of the courts to address this limitation have issued consistent rulings:

- *Finjan, Inc. v. Secure Computing Corp.*, No. 06-369 (GMS), Dkt. No. 142 at *2 (D. Del. Dec. 11, 2007): construed the hashing limitation as "performing a hashing function on the Downloadable together with its fetched software components to generate a Downloadable ID."

- *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2014 WL 5361976, at *2 (N.D. Cal. Oct. 20, 2014): construed the hashing limitation as "performing a hashing function on the Downloadable together with its fetched software components."[6]

---

[6] Finjan goes to great lengths to point out that its expert previously testified the Downloadable ID may constitute a combination of hashes, but this is entirely irrelevant. In the *Blue Coat* litigation, Finjan's expert testified that performing a hashing function on a Downloadable "together with" its fetched software components to generate a Downloadable ID meant "things were to be done together and particularly ***together in time***." Dkt. 152-4 at 851:13-15 (emphasis added). As Juniper's products do not hash anything "together in time," Finjan tried to walk away from its previous argument.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572

- 12 -

JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
(Case No. 3:17-cv-05659-WHA)

- *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3630000, at *5-7 (N.D. Cal. June 2, 2015): noting that "there is ample disclosure in the '780 Patent to support Defendant's argument that a hashing function performed on a Downloadable 'together with' its referenced components must operate across the combination of a Downloadable and its fetched components."

- *Palo Alto Networks, Inc. v. Finjan, Inc.*, Case IPR2016-00165, Paper No. 7 at 9 (P.T.A.B. April 21, 2016): finding that there is "no persuasive support in the specification or the language of the claims for construing a Downloadable ID as 'one or more' hash values, that 'collectively' identify a Downloadable."

- *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1050 (N.D. Cal. 2017): court did not address the construction of the hashing limitation.

- *Finjan, Inc. v. ESET, LLC*, No. 17-cv-00183-CAB-(BGS), 2017 WL 5501338, at *2 (S.D. Cal. Nov. 14, 2017): adopting the PTAB's construction.

- *Finjan, Inc. v. Cisco, Inc.*, No. 5:17-cv-00072-BLF, 2018 WL 3537142, at *14 (N.D. Cal. July 23, 2018): construed the hashing limitation as "performing a hashing function on the Downloadable together with its fetched software components to generate a unique and reproducible ID for that Downloadable."

- *Finjan, Inc. v. BitDefender, Inc.*, No. 4:17-cv-04790-HSG, 2019 WL 634985, at *8-9 (N.D. Cal. Feb. 14, 2019): construed the hashing limitation as "performing a hashing function that operates across the combination of a Downloadable together with its fetched software components to transmute the Downloadable and its fetched software components into a unique and reproducible ID for that Downloadable."

Finjan also attempts to make its infringement position seem more reasonable by reframing its argument as being directed at hashing a Downloadable "in sequence" with its fetched software components. Opp. at 18-19. But this was not Finjan's infringement theory, which involved hashing the alleged Downloadable when the file is received by Sky ATP, and then later hashing the alleged fetched components during dynamic analysis. Dkt. 180 at 10. Finjan's shifting sand approach to suit its changing interests is inappropriate, warrants sanctions, and must come to an end.

C.  **Finjan Provides No Explanation For Its Inherently Inconsistent Positions On Infringement And Invalidity.**

While Finjan provides a substantive argument as to why Claim 1 is supposedly patent eligible, Finjan is silent as to Juniper's primary argument regarding why Finjan's § 101 position warrants sanctions—i.e., that Finjan's position on § 101 was inherently inconsistent with its position on

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                    - 13 -                      JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                                   (Case No. 3:17-cv-05659-WHA)

infringement. Motion at 16; Opp. at 20-21. Despite arguing that Claim 1 was innovative because it requires "fetch[ing] references to software components *before* hashing" (Dkt. 129 at 31-32 (emphasis added)), Finjan argued that Juniper's products infringed by fetching the software components *after* the hashing function was performed. *See, e.g.*, Dkt. 151-6 (Mitzenmacher) at 210:13-19 ("Q. When Sky ATP computes the SHA-256 hash of a file when it first receives it, it doesn't fetch components that are referenced in it before it computes that SHA-256; is that fair? A. Yes.") (objection omitted); 199:18-22 ("Q. . . . Is it your understanding that you don't have to complete the fetching step before you start performing the hashing function step? A. I think that's right."); and 40:19-41:8. Finjan offers no explanation for how one could possibly reconcile these two inconsistent positions. Finjan's attempt to insert limitations into the claim to try to preserve validity and then read them out to support its infringement case (and then re-insert them to avoid sanctions) is inappropriate and warrants sanctions. *Homkow v. Musika Rs., Inc.*, 2009 WL 721732, at *24-25 (S.D.N.Y. Mar. 18, 2009) (sanctioning defendants for their contradictory and "mutually exclusive" statements to the Court).

### III. FINJAN'S ASSERTION THAT IT HAS MADE NO FALSE STATEMENTS IS FALSE

#### A. Finjan's Section 282 Objection Was Based On False Statements.

Rather than acknowledging that it made false factual assertions to the Court in its § 282 objection, Finjan doubles down by making additional false statements in its Opposition. First, Finjan tries to deflect from the false statement it made by claiming that the basis for its § 282 objection was that "Juniper had not served a *separate* disclosure of prior art." Opp. at 22 (emphasis added).[7] This is not true, as Finjan's objection was expressly premised on the false allegation that "Juniper's expert, Dr. Rubin, and Juniper have not affirmatively represented the publication dates of a number of printed publications that are being used for Juniper's invalidity claim pursuant to 35 U.S.C. § 101." *See* Dkt. 317. In any event, it misses the point. Whether or not the underlying basis for Finjan's objection had merit is irrelevant. The point is that Finjan made an affirmative factual statement that was "false as the day is long." Dkt. 337 (Trial Transcript) at 407:9-408:8. Thus, regardless of the underlying

---

[7] Finjan's new justification has literally no support in the law. Indeed, it is nonsensical to think that something literally labeled "Section 282 Notice" must be separately given when properly served invalidity contentions under the N.D. Cal. Patent Local Rules provide the exact same information.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                - 14 -                       JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                         (Case No. 3:17-cv-05659-WHA)

basis for Finjan's objection, its false statement to the Court constitutes bad faith that is sanctionable. *See Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002) ("The district court concluded that Plaintiff's complaint was sanctionable because it was both legally frivolous and factually misleading. Rule 11(c) allows sanctions if a filing suffers from either of those defects."); *see also Bus. Guides v. Chromatic Comm'ns Enter., Inc.*, 119 F.R.D. 685, 689 (N.D. Cal. Apr. 12, 1988) (sanctioning party for inaccurate information in its papers when it "could have easily checked on the accuracy of the [information] (as the court did) prior to submitting the information in an affidavit.").

Finjan also claims that it was "surprised" that Juniper was seeking to introduce prior art at the trial and that "there was no reason for Finjan to expect that Juniper would be bringing this art to trial." Opp. at 23. This is just another false statement in a long line of deceit. Indeed, both parties recognized that the trial would cover validity and Finjan's own proposed pretrial order explicitly identified the issue of Claim 10's validity as an issue to be tried. *See* Dkt. 262 at 5-6. Moreover, each of the prior art references Juniper sought to introduce was disclosed in Dr. Rubin's expert report and included on Juniper's pre-trial exhibit list. In fact, Finjan's own expert Dr. Orso addressed many of the prior art references in his own report. In light of this, it is hard to imagine what Finjan was "surprised" about. Moreover, being "surprised" does not give a party a license to lie to the Court.

Lastly, Finjan tries to justify its false statement by claiming that it "apologized to the extent that its statement regarding Swimmer, considered in isolation, caused confusion." Opp. at 24. But the problem with Finjan's statement was not that it was "confusing," but rather that it was demonstrably false.

## B. Finjan Made Frivolous Privilege Claims During Discovery.

Finjan makes the conclusory statement that it had a "good faith basis" for asserting privilege over the redacted portions of Mr. Garland's notes. Opp. at 24. But Finjan fails to identify that basis, or even attempt to explain how Mr. Garland's off-handed insults about Mr. Coonan and the word "sidebar" with some asterisks could possibly qualify as protected work product. There is no reasonable justification and Finjan should be sanctioned for yet another instance of its gamesmanship in this litigation.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572 - 15 - JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
(Case No. 3:17-cv-05659-WHA)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

| | |
|---|---|
| Dated: April 18, 2019 | Respectfully submitted, |
| | IRELL & MANELLA LLP |
| | By: */s/ Rebecca L. Carson* |
| | Rebecca L. Carson |
| | *Attorneys for Defendant* |
| | Juniper Networks, Inc. |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10669572                                  - 16 -                    JUNIPER'S REPLY ISO MOTION FOR SANCTIONS
                                                                    (Case No. 3:17-cv-05659-WHA)