# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

840 NEWPORT CENTER DRIVE, SUITE 400

**NEWPORT BEACH, CALIFORNIA  92660-6324**

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE:  www.irell.com

**WRITER'S DIRECT**
TELEPHONE (949) 760-5222
RCarson@irell.com

April 23, 2019

Honorable Thomas S. Hixson
U.S. District Court Magistrate Judge

Re:   *Dkt. No. 394, Finjan, Inc. v. Juniper Networks, Inc.*,
      Case No. 3:17-cv-05659-WHA (N.D. Cal.)

Dear Judge Hixson:

We write in response to Finjan's April 11, 2019 letter seeking production of privileged communications between Juniper and members of a joint defense group ("JDG") relating to the defense of a series of lawsuits filed by Finjan.  Dkt. 429 ("Finjan Motion").  As Finjan notes, "the subject line of the emails on Juniper's privilege log stated that they were 'JDG / SUBJECT TO COMMON INTEREST.'"  Finjan Motion at 3.[1]

The essence of the dispute between the parties is whether communications among entities with a common legal interest are protected from disclosure only if the parties enter into an express "JDG or common interest agreement."  *See* Finjan Motion at 1.  As discussed below, although Juniper exchanged privileged communications with a JDG relating to the defense of Finjan's lawsuits, Juniper ultimately decided to not become a member of that JDG and therefore did not sign a formal JDG agreement.  Contrary to Finjan's argument, however, Juniper's decision did not waive privilege for Juniper's communications with the JDG.

The factual background set forth in Finjan's letter is largely accurate but omits some key facts.  First, before Finjan sued Juniper, Finjan had sued a number of other companies on the same or similar patents in this District, including Blue Coat, FireEye, Palo Alto Networks, Proofpoint, Sophos, and Symantec.  *See* Case Nos. 5:15-cv-03295-BLF (Blue Coat); 4:13-cv-03133-SBA (FireEye); 4:14-cv-04908-PJH (Palo Alto Networks); 4:13-cv-05808-HSG (Proofpoint); 3:14-cv-01197-WHO (Sophos); and 4:14-cv-02998-HSG (Symantec).  These other defendants had established a well-functioning JDG to defend against Finjan's patent infringement allegations, and they had suggested to Juniper that Juniper might want to join the JDG if Finjan filed suit against Juniper.  *See* Ex. 1 (Coonan Tr.) at 176:15-24.  After Finjan sued Juniper, Juniper exchanged communications with members of the JDG about the JDG and Finjan's lawsuits.  *See* Ex. 1 (Coonan Tr.) at 212:10-213:2.  Juniper ultimately decided, however, not to become a member of the JDG and therefore did not sign a formal JDG agreement.  *See* Ex. 1 (Coonan Tr.) at 174:23-24.  The communications at issue in this motion all date from the time period when Juniper was considering whether to formally join the JDG.  Ex. 2 (privilege log) at Nos. 0162, 0163, 0164, 0166, 0167, 0171, 0173, 0174, and 0175 (communications from Nov.

---

[1] Although all documents are marked with some type of privilege designation, either 'JDG' or 'common interest,' Finjan's statement is not entirely accurate: privilege log entries 0172 and 0173 are marked "Finjan in-house JDG call" but do not expressly include the "SUBJECT TO COMMON INTEREST" language.  The remainder of the communications do, however, include the "SUBJECT TO COMMON INTEREST" designation.

10667056

- 1 -

2015 and Feb. 2016). Each of the communications is labeled with the legend "Finjan in-house JDG," "SUBJECT TO COMMON INTEREST," or both. *Id.*

The sole question raised by Finjan's motion is whether Juniper's communications with the JDG about Finjan's lawsuits are protected by the common interest privilege even though Juniper declined to become a member of the JDG and thus did not execute a formal JDG agreement. Juniper's position is that these communications are protected by the common interest privilege because they meet all the requirements for that privilege, even though Juniper elected not to join the JDG.

The elements of the common interest privilege are explained in *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007): "The common interest privilege . . . applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived" (alterations in original) (quoting *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)).[2] *See also Narog v. City of Redwood City*, No. C-13-03237 DMR, 2014 WL 1088297, at *4 (N.D. Cal. Mar. 17, 2014) (quoting the *Nidec* elements); *Love v. Permanente Medical Group*, No. C-12-05679 DMR, 2014 WL 644948, at *2 (N.D. Cal. Feb. 19, 2014) (also quoting the *Nidec* elements); *Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897-YGR (JCS), 2014 WL 1510884, at *6 (N.D. Cal. Apr. 1, 2014) (also quoting the *Nidec* elements). The communications withheld by Juniper meet each of these three elements. Specifically: (1) there was a community of interests between Juniper and the members of the JDG regarding defense of the lawsuits Finjan had filed against each of the defendants; (2) the communications related to this common legal interest and Juniper's potential involvement with the JDG in the defense of these lawsuits; and (3) the parties intended these communications to remain subject to the privilege and have not waived the privilege.

Finjan does not (and cannot) dispute that all of the documents they are seeking satisfy these three requirements. First, the communications involve a "matter of common legal interest" because they relate to lawsuits Finjan filed against several different defendants on the same or related patents. These defendants thus all have a common legal interest in defending against Finjan's allegations and invalidating Finjan's patents. *See, e.g.*, *Love*, 2014 WL 644948, at *3 (finding a "common legal interest in defending against anticipated litigation against all three entities by Plaintiff"); *In re Subpoenas to Intel Corp.*, No. 4:17-mc-80099-KAW, 2018 WL 984776, at *4 (N.D. Cal. Feb. 20, 2018) ("[T]he Court agrees that Intel and the defendants share a common interest in their position that the accused products do not infringe on TQ Delta's patents."); *Callwave Communications, LLC v. Wavemarket, Inc.*, No. C14-80112 JSW (LB), 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015) ("Location Labs and AT&T have a[ common legal] interest in defeating Callwave's claims of patent infringement in the Underlying Litigation."). Second, the communications all relate to Juniper's potential involvement and participation in the JDG—whose purpose it is to defend against Finjan's patents. Finally, neither Juniper nor (to the best of Juniper's knowledge) any member of the JDG has waived privilege regarding these communications. Accordingly, all of the requirements for invocation of the common interest privilege have been satisfied.

Notwithstanding that Juniper satisfies all the required elements of the common interest privilege, Finjan argues that Juniper cannot invoke the privilege because it ultimately decided not to

---

[2] "Of course, since it is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance." *Nidec*, 249 F.R.D. at 578. Finjan does not challenge the privileged nature of these communications—all of which were between counsel and relate to the defense of a lawsuit.

join the JDG by signing the formal JDG agreement.  *See* Finjan Motion at 3.  This argument is premised on the incorrect assumption that an express agreement is required to preserve the privileged status of common interest communications.  As even the cases cited by Finjan make clear, an agreement to maintain the privileged nature of the communications can be "written ***or unwritten***" (*In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (emphasis added)), and no express agreement is required, as "the conduct of parties can imply the existence of a joint defense agreement" (*United Food & Commercial Workers v. Teikoku Pharma USA*, No. 14-md-02521-WHO, 2016 WL 5906590, at *5 n. 6 (N.D. Cal. Oct. 11, 2016)).  *See also Love*, 2014 WL 644948, at *2 ("agreement may be implied from conduct and situation").

This case involves not only an implied agreement to keep the communications among the JDG members and Juniper confidential, but also an actual, written manifestation of this agreement on the communications themselves.  Finjan acknowledges, as it must, that each document for which it is seeking production expressly states that it is "SUBJECT TO COMMON INTEREST," subject to the "Finjan in-house JDG," or both.  *See* Finjan Motion at 1.  It is difficult to imagine a clearer expression of the parties' agreement to maintain the privilege of these documents than an actual reference to the privilege on the documents themselves.  *See, e.g.*, *U.S. v. Esformes*, No. 16-20549-Cr-Scola/Otazo-Reyes, 2018 WL 5919517, at *12 (S.D. Fla. Nov. 13, 2018) ("The Court does not find the fact that the Moscowitzes did not sign the JDA [Joint Defense Agreement] dispositive. The parties, through counsel, exchanged confidential material, frequently labeled their emails 'joint defense,' . . . . It is clear by their conduct, all parties operated under the assumption that their actions and statements were covered by a valid JDA."); *Abselet v. Leven Neale Bender Yoo & Brille L.L.P.*, No. CV 16-6263-JFW (JEMx), 2017 WL 8236270, at *3 (C.D. Cal. June 7, 2017) (The fact that a "letter was marked 'Privileged Common Interest Communication' and confirmed counsel's agreement that 'our communications . . . are subject to the common interest privilege' [] demonstrates that the parties intended the letter to remain confidential.").  Whether Juniper ultimately decided to become a member of the JDG or not is irrelevant to the question of whether there was an agreement to keep the communications confidential and subject to the common interest privilege at the time it made those communications.

In sum, Juniper shared a common interest with the JDG in defending against Finjan's patents.  Juniper confidentially communicated with the JDG about Juniper's potential involvement with the JDG, and those communications were uniformly designated as being privileged from discovery.  These communications thus satisfy all requirements for the common interest privilege, so Finjan is not entitled to review Juniper's privileged communications with the JDG.

                                              Respectfully submitted,

                                           */s/ Rebecca L. Carson*
                                          Rebecca L. Carson
                                          IRELL & MANELLA LLP
                                          *Attorneys for Defendant*
                                          Juniper Networks, Inc.