IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CALIFORNIA 92660-6324

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (949) 760-5222
RCarson@irell.com

May 22, 2019

Honorable Thomas S. Hixson
U.S. District Court Magistrate Judge

    Re:    *Finjan, Inc. v. Juniper Networks, Inc.*,
           Case No. 3:17-cv-05659-WHA (N.D. Cal.)

Dear Judge Hixson:

      The parties present this joint statement regarding defendant Juniper Networks, Inc.'s ("Juniper") motion to compel production by non-party Dawn-Marie Bey, the patent attorney who prosecuted plaintiff Finjan, Inc.'s ("Finjan") patents. *See* Dkt. 471. Counsel for Juniper and counsel for Ms. Bey, who is represented by the same counsel as Finjan, attest that they have met and conferred by telephone[1] in good faith to resolve this dispute prior to filing this letter. *See* Ex. 3.

           Respectfully submitted,

           */s/ Joshua Glucoft*
           Joshua Glucoft
           IRELL & MANELLA LLP
           *Attorneys for Defendant*
           Juniper Networks, Inc.


           */s/ Kristopher Kastens*
           Kristopher Kastens
           KRAMER LEVIN NAFTALIS & FRANKEL LLP
           *Attorneys for Non-party*
           Dawn-Marie Bey

---

[1] Counsel for Juniper is located outside of the Bay Area.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

**Juniper's Position**

This is a high-stakes patent case where Finjan demanded $65M for just one of the multiple patents that Ms. Bey prosecuted on Finjan's behalf. *See* Dkt. 228-7 at 2 (Finjan's damages expert report). Juniper seeks documents that are highly probative of Juniper counterclaims that center on Ms. Bey's improper gamesmanship in procuring patents for Finjan, including the patents asserted in this matter. Given the amount in controversy, the relative ease with which Ms. Bey can search for the documents compared to Juniper, and the importance of this information to Juniper's case, Ms. Bey should be ordered to produce the requested documents in advance of her deposition.

*Background*

Under 37 C.F.R. § 1.78(d), patent applicants must promptly claim priority after an application is filed. The only exception is if the applicant "unintentionally" delayed claiming priority. *See* 37 C.F.R. § 1.78(e). Because the exception is limited to cases of "unintentional" delays, it is rarely invoked—*i.e.*, patent prosecutors are expected to timely comply with the rules, and they usually do.

Ms. Bey, however, does not appear to play by the rules. Juniper's Fifth Counterclaim for unclean hands alleges Ms. Bey has filed an unusually abundant number of petitions to accept an "unintentionally" delayed claim of priority. *See* Dkt. 218 at ¶¶ 232-58. Her gamesmanship encompasses Finjan patents asserted here, such as the '633 Patent (*id*. at ¶¶ 237-48), and Finjan patents not asserted here, such as the '822 Patent (*id*. at ¶¶ 249-56). Ms. Bey's overarching pattern and practice of behavior—a *modus operandi* not limited to the specific patents asserted in this matter—is highly probative of whether Ms. Bey's petitions are not actually "unintentional." As the Court in this action aptly put the matter: "How many times does it take to 'unintentionally' delay claim to priority before one can reasonably infer an *intentional* pattern? … The totality of Juniper's allegations presents a troubling scheme. Looking at the forest instead of the trees, we see a pattern…." Dkt. 190 at 11 (Alsup, J.) (emphasis in original).

Critically, Ms. Bey was not the original prosecuting attorney of record on many of Finjan's patents where she filed a petition to accept an "unintentionally" delayed claim of priority. Ms. Bey was therefore required to confirm with the prior attorneys of record that their failure to claim priority was indeed unintentional. *See* 37 C.F.R. § 11.18(b). Ms. Bey's inability to show that she obtained such confirmation from the prior attorneys is highly probative as to whether her representations that the "entire delay" was "unintentional" were proper.

*RFP No. 2: "All invoices related to the Patents-in-Suit" (Ex. 1 at 4)*

Ms. Bey's invoices to Finjan would likely serve as the best record of whether any communications between Ms. Bey and the prior attorneys of record about the delayed claims of priority ever occurred. While Ms. Bey may redact invoices to protect privileged legal advice, she must produce invoices sufficiently unredacted to show the threshold, non-privileged facts that are necessary to evaluate any claim of privilege, in particular the names, dates, and general subject matter of any communications about Finjan's patents. *See Finjan, Inc. v. ESET, LLC, et al.*, 2018 WL 3126098, at *1 (S.D. Cal. June 6, 2018) (granting motion to compel Ms. Bey to produce billing records unredacted to show non-privileged background facts and circumstances about her work).

Ms. Bey agreed to produce invoices only for work on the asserted patents but refuses to

produce invoices for work on Finjan's other patents, objecting based on relevance.[2] Ms. Bey's relevance objection is wrong because, as Judge Alsup has recognized, Juniper's counterclaim for unclean hands is directly supported by showing "the forest" instead of merely "the trees" including specifically with respect to Finjan patents that are not asserted in this matter. *See, e.g.*, Ex. 5 (Dkt. 218) at ¶¶ 249-56 (unclean hands counterclaim supported by the unasserted '822 Patent). As a compromise, Juniper proposes that Ms. Bey produce all invoices related to work analyzing priority or inventorship for Finjan's patents, redacted to protect any privileged legal advice.

*RFP No. 3: "All petitions to accept unintentionally delayed claim of priority filed by you or bearing your signature that were submitted to or filed with the USPTO." (Ex. 1 at 4)*

Juniper requested all of Ms. Bey's petitions to accept "unintentionally" delayed claims of priority because they are critical to understanding whether Ms. Bey's pattern of behavior is unique to her relationship with Finjan, or whether it is a common part of her practice for other clients.

Ms. Bey's primary objection is the alleged burden from searching for petitions filed on behalf of non-Finjan clients. But Ms. Bey's unspecified search methodology that purportedly yielded 4,500 hits appears to be a self-serving attempt to conjure up more burden than necessary. Juniper seeks only publicly filed petitions,[3] and it is hard to imagine that a focused search would generate so many hits. As a compromise, Juniper offers to provide Ms. Bey with targeted search terms that should yield no more than 1,000 hits (if that many) to review for production before Ms. Bey's May 30 deposition.

That these filings are "public" is irrelevant because they cannot be readily located by Juniper. Juniper's counsel is not aware of any systematic way to identify all the patent applications that Ms. Bey has worked on and search them for delayed priority petitions. Moreover, the RFP seeks petitions that Ms. Bey filed but that do not bear her signature (for example because they were signed by her partner at her law firm Bey & Cotropia PLLC), and Juniper cannot identify any such petitions.

*RFP Nos. 12-22: All communications with prior attorneys of record (Ex. 1 at 5)*

Juniper requested communications between Ms. Bey and the prior attorneys of record who prosecuted Finjan's patents so Juniper can determine whether Ms. Bey had any communications regarding the prior attorneys' failure to claim priority. Ms. Bey originally offered only communications concerning the asserted patents. *See* Ex. 2 at, *e.g.*, 14. Ms. Bey now offers to include communications related to family members of the asserted patents, but this offer still hides her actions with respect to other Finjan patents that are not within the same family. Juniper must be able to see overarching pattern ("the forest") of Ms. Bey's prosecution improprieties on behalf of Finjan generally, so as a compromise, Juniper proposes that Ms. Bey produce (or log) all communications with prior attorneys related to the analysis of claims of priority or inventorship of any Finjan patent.

*Subject Matter Descriptions on Privilege and Redaction Logs*

---

[2] Invoices for work covering Finjan's unasserted patents are within the scope of Juniper's request that asks for invoices "***related to***" the asserted patents, where "related" is broadly defined. *See* Ex. 1 at Definitions ¶ 2. Juniper also requested all documents related to Finjan (RFP No. 27), which encompasses invoices for unasserted Finjan patents. *See* Ex. 1. *See also* Ex. 3 at 2 (confer email).

[3] A request for public filed petitions does not call for privileged material or require notifying third parties.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Ms. Bey produced three different privilege and redaction logs.[4]  *See* Exs. 4, 5, 6.  The subject matter descriptions are wholly general, *e.g.*, "Email regarding ex parte reexamination of U.S. Patent No. 8,079,086."  *See* Ex. 4 at 4.  This does not satisfy Judge Alsup's requirement that logs "be sufficiently detailed and informative to justify the privilege."  *See* Supplemental Order To Order Setting Initial Case Management Conference at ¶ 24.  Critically, not a single entry in the subject matter column references priority.  Ms. Bey and Finjan cannot refuse to disclose during discovery whether she discussed priority with the prior attorneys of record, and then suggest at trial that she did have such communications.  As a compromise, Juniper proposes that Ms. Bey specify which entries relate to discussions concerning claims of priority or inventorship (if any), with whom, and when.

*RFP Nos. 5, 6, 8-11: All documents related to the conception or reduction to practice of the Patents-in-Suit, including communications with the inventors (Ex. 1 at 4)*

As set forth in Juniper's Third Counterclaim (Dkt. 218 at ¶¶ 193-212), Ms. Bey also facilitated inequitable conduct by submitting to the USPTO a false declaration from Mr. Shlomo Touboul claiming that he solely conceived of certain claims of the asserted '494 Patent.  Ms. Bey's nonprivileged documents related to the conception of the claimed invention, including her communications with Mr. Touboul and the other inventors originally listed on the patent, are highly probative of whether Mr. Touboul's declaration was false.  As a compromise, Juniper proposes that Ms. Bey produce (or log) all communications with the inventors regarding the priority date of any Finjan patent or inventorship of the '494 Patent.

## Ms. Bey's Position

The Court should deny Defendant Juniper Network, Inc.'s ("Juniper") request to compel additional discovery from Third-Party Dawn-Marie Bey.  Anything relevant has already been produced and now Juniper seeks irrelevant documents that are unduly burdensome for Ms. Bey to collect and process.  Juniper's document subpoena on Ms. Bey has 27 different broad individual requests, including requests for every single document "related to Finjan" and, separately, for "all communications" with 16 separate people or entities, not limited to whether any such communications related to Finjan or its patents. Ex. A.  Juniper has not agreed to narrow these requests and now seeks to compel her to search 20 years' worth of patent prosecution files, which amounts to sifting through thousands of client files.

**Juniper's Request for Petitions to Correct Priority for Her Other Clients (Request 3)**

Juniper's request for Ms. Bey to search for and produce every petition to correct priority that Ms. Bey has ever filed for her other clients is overly burdensome and irrelevant to any issue in the case. Ex. A, Request 3 ("[a]ll petitions to accept unintentionally delayed claim of priority filed by you or bearing Your signature that were submitted to or field with the USPTO.").  As a compromise position, Ms. Bey has already searched for, collected, and produced the petitions to correct priority that she has filed for Finjan, regardless if it was for one of the Patents-in-Suit, and this is already beyond what is relevant to the case.  The Court should not enforce Juniper's overreaching request and subject Ms. Bey to further burden of searching 20 years of prosecution files for hundreds of unrelated clients for material that Juniper can locate by searching a public database.  *See* Fed. R. Civ. Proc. 45(d)(3)(A)(iv) (courts must modify a subpoena that "subjects a person to undue burden").  Her records include nearly ten thousand individual prosecution files and confidential and privileged

---

[4] Juniper was told by opposing counsel that these logs are for documents in Ms. Bey's possession.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

information for many third parties that have nothing to do with this litigation. Ms. Bey performed a preliminary search for these petitions in her current electronic records, which returned over 4,500 documents that could be related to these petitions based on the word search from just 2013 through the present. In addition to these 4,500 documents, Ms. Bey has an additional 200 boxes of archived files that would require manual searching for clients predating 2013.

Even for those files that are electronically searchable, Ms. Bey would be required to go through each document individually and determine (1) if the hit was for a petition to correct priority, (2) that petition was actually filed with the USPTO, and (3) if the petition was not filed, whether there was any privileged information for her other clients included in the material. Ms. Bey would also need to then check if that particular the petition is public, as the file history of pending applications are not public until they are published. Therefore, Ms. Bey cannot produce these petitions without notifying that unrelated third party, who will likely be more than a little upset that their unrelated, irrelevant confidential information was being sought for in the first place in litigation that is unrelated to the prosecution of their patents.

Further, the majority of the file histories are publicly available that Juniper can just as easily search for. Despite Juniper's claim to the contrary, a party can search for patents by the attorney that prosecuted them. The USPTO has a free search tool that Juniper can use to determine the patents that she has prosecuted. Certainly a subpoena on a third party prosecutor seeking documents unrelated to the parties to the case should not extend to requiring the third party to search records that are just as accessible to Juniper. In addition, there are numerous search tools that are commonly used that include robust search capabilities for patents by prosecuting attorney. Juniper's claim it does not understand how to accomplish such a search ring hollow, as Finjan identified these tools to Juniper. *See supra* at 2. Moreover, Juniper failed to articulate a concrete burden for obtaining this information. Ms. Bey has described in detail the steps that would be required of her to review 4,500 documents plus 200 boxes of manual files. At a minimum, because the public records available to Juniper do not require any analysis for privilege, it is significantly less burdensome for Juniper to collect this information itself than for Ms. Bey, who is a third party, and to the extent Juniper wants to ask questions about those public filings, it can do so during her deposition.

This material is simply not relevant or proportional to the needs of the case. Juniper claims that it wants to show that these petitions are somehow unusual. It offers no evidence that such petitions are unusual, and indeed, its statements that other attorneys rarely use this type of petition are strange, given that Juniper has claimed there is no way to determine this information from public records. *See supra* at 2. However, if that is what it wants, it can derive this information using publicly available USPTO records or subpoena the USPTO for statistical information. Juniper's inequitable conduct claims should not be used to seek unfettered access to the records of Ms. Bey's other clients, which have no bearing on the appropriateness of the specific petitions that Juniper has placed at issue in this litigation. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (inequitable conduct claims have troubling side effects, including attempts to expand discovery, detract from the merits of the case, and increase the complexity and cost of litigation).

**Juniper's Request for Invoices for Patents that are not in Suit**

Ms. Bey's compromise position regarding her invoices is to provide invoices for the Patents-in-Suit in this case, even though they are not relevant. *See Masimo Corp. v. Shenzhen Mindray Bio-Med. Elecs. Co.*, 2015 WL 12912331, at *2 (C.D. Cal. Apr. 17, 2015) (denying motion to compel fee arrangements and financial interests of prosecution counsel as irrelevant to inequitable conduct claims following the *Therasense* heightened burden of proof for such claims); *see also In Re: Method of*

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

*Processing Ethanol Byproducts and Related Subsystems ('858) Patent Infringement*, Master Case No. 1:10-ml-2181-LJM-DML, at *2-3 (S.D. Ill., October 30, 2014) (denying billing records, because they are neither an efficient nor appropriate discovery substitute, would require extensive redactions, and deposition testimony of prosecution counsel was sufficient to demonstrate counsel's actions). Despite this, Juniper improperly seeks all invoices Ms. Bey ever issued to Finjan during the time she has prosecuted patents for Finjan, which is simply not relevant. Ex. A, Request No. 2; *Finjan, Inc. v. Eset, LLC*, No. 17CV183 CAB (BGS), 2018 WL 3126098, at *3 (S.D. Cal. June 25, 2018) (limiting production of invoices to the patents alleged to be unenforceable). Further, Juniper's demand is beyond the documents requested in the subpoena, which limited invoices related to the Patents-in-Suit. *See* Request No. 2 ("[a]ll invoices related to the Patents-in-Suit."). Juniper's attempt to expand the scope of this clear Request using the potential breadth of the word "related" shows it continued over grasping. *See* n. 2. As such, Juniper has no basis to compel Ms. Bey to produce them.

**Material beyond those for Patents-in-Suit and Family Members (Requests 3-27)**

For Requests Nos. 3-27, Ms. Bey's compromise position has been to search for and produce or log materials responsive to Juniper's requests for Finjan's Patents-in-Suit and family member of these patents. Juniper makes the unreasonable request for every communications with 16 separate individuals and entities, as well as "[a]ll communications with Finjan" and "[a]ll documents related to Finjan." Ex. A, Requests Nos. 3-27. Ms. Bey has already searched for, collected, and produced or logged materials responsive to the request that are related to the Patents-in-Suit and other patents that are family members of the Patents-in-Suit. In particular, Ms. Bey is not withholding any non-privileged documents reflecting conception and reduction to practice. Juniper's requests for material beyond this is overbroad, and it is unclear what Juniper is requesting, given the position they are taking with respect to the breadth of the term "relating to." *See* n. 2. Finally, in many cases Juniper demands more than what its subpoena requested, as Juniper's subpoena limited several of its requests specifically to "the Patents-in-Suit." Ex. A, Requests Nos. 5-7 and 26. Juniper now alleges that it request material for Requests 3-27 for all of Finjan's patents. There is absolutely no basis for Juniper to seek this material.

**Privilege and Redaction Logs**

The parties have never met and conferred as required by Local Rule 37-1(a) with respect to Juniper's objections to the privilege and redaction logs for documents collected from Ms. Bey. Sufficient information has been provided in the privilege log and Juniper is not entitled to the specifics of the discussion within every logged communication. *See, e.g.*, *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C 07-1359 PJH (JL), 2009 WL 533124, at *1 (N.D. Cal. Mar. 3, 2009) (log entry for document "regarding prosecution of U.S. Patent No. 4,778,451" sufficiently established claim of privilege). Juniper has not previously objected to the specificity of such logging. In fact, this is comparable to Juniper's own privilege logs, which generally only identify broad subject matter such as "litigation strategy," "SEC filings," or "financial issues." Further, Ms. Bey will not disclose privileged communications at trial, eliminating Juniper's concerns on this issue.