IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., | No. C 17-05659 WHA |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO SET ASIDE VERDICT AND MOTION FOR SANCTIONS** |
| JUNIPER NETWORKS, INC., | |
| Defendant. | |

## INTRODUCTION

In this patent infringement action, patent owner moves to set aside the verdict in connection with the first round of motions for summary judgment. Accused infringer moves for sanctions. For the reasons stated below, patent owner's motion is **DENIED** and accused infringer's motion is **HELD IN ABEYANCE**.

## STATEMENT

The instant motions are related to both parties' conduct during the first round of motions for summary judgment. In August 2018, the Court granted defendant Juniper Networks, Inc.'s first motion for summary judgment on non-infringement of Claim 1 of the United States Patent No. 6,804,780 ("the '780 patent") after construing one of the disputed terms (Dkt. No. 180).

The Court also granted in part plaintiff Finjan, Inc.'s first motion for summary judgment on infringement of Claim 10 of the United States Patent No. 8,677,494 ("the '494 patent") (Dkt. No. 189). In December 2018, trial was held to resolve the remaining factual

issue at play — namely, whether Juniper's accused product Sky Advanced Threat Prevention ("Sky ATP") met the "database" limitation in Claim 10 of the '494 patent. A jury found in favor in Juniper, *i.e.*, Sky ATP did not have the "database" as recited in Claim 10 (Dkt. No. 333). A subsequent order denied Finjan's renewed motion for judgment as a matter of law (Dkt. No. 387).

Finjan now moves for relief from the jury verdict and subsequent denial of Finjan's motion for judgment as a matter of law. It asserts that Juniper "concealed key evidence during discovery that proved that Sky ATP had a 'database' as recited" in Claim 10 of the '494 patent (Dkt. No. 412 at 2). Specifically, Finjan argues that Juniper failed to disclose the Joe Sandbox database despite Finjan's requests for such information.[1] This "concealment," Finjan contends, "prevented both the Court and the jury from evaluating this key evidence of how and where Sky ATP satisfies the 'database' element of Claim 10" (*ibid.*).

For its part, Juniper moves for sanctions (Dkt. No. 409). It argues that, *inter alia*, Finjan pursued unsupported damages theories in bad faith, waffled on the issue of constructive notice in bad faith, claimed actual notice based on false statements, and asserted without merit Claim 1 of the '780 patent against SRX (*id*. at 1–2).

**ANALYSIS**

**1. FINJAN'S MOTION TO SET ASIDE VERDICT.**

According to Finjan, Juniper produced twelve new documents that disclosed a database used by Joe Sandbox in February 2019 — two months after the jury rendered a verdict of non-infringement (Dkt. No. 412 at 2–3). The newly produced documents included, *inter alia*, Joe Sandbox User Guide and Joe Sandbox Interface Guide, which discussed the technical operations of the Joe Sandbox database (that was in turn allegedly incorporated in Sky ATP) (*id*. at 3). These new documents are significant, Finjan contends, because they show that the Joe Sandbox database was "an internal database for storing security profiles according a rigid

---

[1] Juniper licenses from Joe Security (a Switzerland-based third party) technology called "Joe Sandbox" to perform Sky ATP's dynamic analysis (Dkt. No. 435-2 ¶ 3).

2

directory schema" — a database that would have fit within Juniper's own interpretation during trial (*ibid*.).

Finjan argues that Juniper withheld these "relevant documents" relating to the Joe Sandbox database that were responsive to requests for documents served before trial and that Juniper had no reasonable grounds to delay production (*ibid*.). It thus moves to set aside the verdict under Rules 60(b)(2) and (3) (*id*. at 1). Specifically, Rule 60(b) provides the following grounds upon which a district court "may relieve a party or its legal representative from a final judgment, order, or proceeding":

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

Under Rule 60(b)(2), the movant "must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (internal quotation marks and citation omitted).

Under Rule 60(b)(3), the movant must "(1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct [and] (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense. Although when the case involves the withholding of information called for by discovery, the party need not establish that the result in the case would be altered." *Ibid*. at 878–79 (quoting *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982)).

This order finds that Finjan has not sufficiently shown by clear and convincing evidence that Juniper's handling of discovery amounted to "misconduct" under the meaning of Rule 60(b)(3). Nor has it sufficiently shown that the newly produced documents could not have been discovered through due diligence under Rule 60(b)(2).

3

Because Finjan's accusation of concealment by Juniper and claimed inability to exercise due diligence significantly overlap, this order addresses both grounds for relief together. Finjan contends that Juniper concealed those documents by omitting the existence of the Joe Sandbox database in its response to Finjan's interrogatory asking for "all Databases that are incorporated or used, either directly or indirectly, by the Accused Instrumentalities," despite the fact that Juniper had named other databases it argued did not meet the claimed "database" (Dkt. Nos. 411-10 at 13–14; 442 at 9). Finjan further asserts that Juniper seemingly stonewalled in producing the relevant documents, arguing that Juniper "cannot eliminate its discovery obligations and shift them onto Finjan, or expect Finjan to know what is in Juniper's possession when Juniper represented the production was complete" (Dkt. No. 442 at 9). It points out that Juniper's engineers could have contacted a Joe Security representative for troubleshooting purposes and that they had access to a server for documents and code received from Joe Security (*id*. at 14–15). Yet Juniper, Finjan complains, claimed that Joe Sandbox is a "black box" to them (*id*. at 14). Because Juniper had reasonable access to these documents, Finjan asserts, Juniper "intentionally omitted them from its production and its discovery responses in bad faith" (*ibid*.). As such, Finjan blames Juniper's alleged discovery misconduct for its inability to diligently follow up on discovery of the Joe Sandbox documents at issue in time for the December 2018 trial.

Finjan points to Juniper's "misleading and untruthful discovery responses" as the reason Finjan did not seek court intervention in obtaining the relevant documents and accordingly asserts that it exercised due diligence (*id*. at 15). Specifically, Finjan points to its third set of requests for production served in July 2018, which stated in relevant part (Dkt. Nos. 412-7 at 6):

> REQUEST FOR PRODUCTION NO. 89: All Documents, manuals, guides, or other documents provided by Joe Security to Juniper, including documents description the operation, use, or API of any Joe Security product, including its Joe Sandbox and Joe Static product(s).

In August 2018, Juniper responded that it had "completed its technical production detailing the operation of Sky ATP, which includes both the complete Sky ATP source code as well as

4

many thousands of pages of technical specifications, design and development documents, and administration guides" (Dkt. No. 412-8 at 11). Juniper further stated that it "ha[d] already produced licenses with Joe Security for products used by Sky ATP" and that "[i]f Finjan believe[d] that additional discovery [was] somehow proportional to the needs of the case, Juniper [was] willing to meet and confer with Finjan to understand exactly what other types of documents Finjan believe[d were] relevant and proportional to the needs of the case" (*ibid*.).

Finjan argues that Juniper falsely represented that it had completed its production in its entirety. This order disagrees. Juniper's response, though cleverly worded, did not amount to a "the false assertion that Juniper had completed its Sky ATP production and there was nothing further that was responsive to produce," as Finjan contends (Dkt. No. 412 at 4). As Juniper points out, it had stated that its production related to *Sky ATP* was complete and that it had already produced the *Joe Security licenses*. By noting the production relating to the two products separately in its response, Juniper put Finjan on notice that Juniper treated Sky ATP and Joe Security as distinct products. And, as such, Juniper did not necessarily represent that it had completed production as to Joe Security. Though Finjan complains that Juniper did not "indicate that it [was] withholding documents or that it [was] refusing to search for them," Juniper's response was not clearly a false statement or an affirmative misrepresentation (Dkt. No. 442 at 5).

Moreover, Juniper objected in its response, stating that it "w[ould] not search through non-network drives" (Dkt. No. 412-8 at 10). As relevant here, Joe Security delivered Joe Sandbox in binary code, which Juniper's engineers downloaded as a .zip file onto the third-party server iWeb (which Juniper may access remotely) used to deploy Joe Sandbox (Dkt. No. 435-2 ¶ 4). One of these .zip files also contained the twelve documents produced in February 2019 (*id*. ¶ 5). Juniper did not typically use the iWeb server to store technical documents related to Sky ATP and because no search tool on the Juniper network would have enabled a search on third-party iWeb server for documents, its engineer "specifically navigated to the .zip files [manually] to look for them" (*id*. ¶¶ 6, 8).

5

Under these circumstances, Finjan has not shown by clear and convincing evidence that Juniper made any false statements or withheld documents in a manner amounting to misconduct warranting a new trial. *See Immersion Corp. v. Sony Computer Entm't Am., Inc.*, No. C 02-0710 CW, 2006 WL 618599, at *21 (N.D. Cal. Mar. 8, 2006) (Judge Claudia Wilken) ("Sony has not identified a particular false statement by Immersion, but instead relies on Immersion's omission of the offer and agreements as evidence of misconduct. . . . [H]owever, such discovery violations do not rise to the level of misconduct justifying relief from final judgment.").

Finjan further claims it could not have moved to compel because its "first inkling" that Juniper possessed the newly produced documents "were the documents in the voluminous November 2018 production, and even then it did not know what was in them" (Dkt. No. 442 at 9). But the fact remains that Juniper had produced eight documents in July and November 2018, which indicated that Joe Sandbox used a database (*see, e.g.*, Dkt. Nos. 434-5 at 20; 434-6 at 977). Significantly, in response to Finjan's document production request in July 2018, Juniper produced a Joe Security license that disclosed Joe Sandbox's use of an H2 database (Dkt. Nos. 434-4 at 5; 434-5 at 490). That license further provided a link to a website that described the characteristics of that database — noting, for example, that it was a "Java SQL" database (*see* Dkt. No. 434-5 at 490). Though the Joe Sandbox database at issue related to a "file database," Juniper's production disclosing the H2 database was sufficient to put Finjan on notice as of July 2018 that Joe Sandbox databases existed and that there were more documents to be had. Moreover, other documents produced by Juniper in November 2018 referenced the Joe Sandbox "file database" (*see, e.g.*, Dkt. No. 434-6 at 977). Those documents also included a "Joe Sandbox Installation Guide," which referenced other later-produced documents such as "Joe Sandbox User Guide" and "Joe Sandbox Interface Guide" (Dkt. No. 411-16 at 115–43). Had Finjan diligently followed up on these disclosures with more targeted requests, it would have likely led to the production of the newly discovered documents at issue before the December 2018 trial (or at least given Finjan grounds to request a continuance of trial) or before the Court ruled on Finjan's Rule 59 motion in February 2019.

Finjan counters that those "handful of citations" did not disclose any technical information about Joe Sandbox such as how it stored the results of the dynamic analysis or used a data a database with a clear schema (Dkt. No. 442 at 1). It further complains that Juniper produced the majority of the aforementioned documents "on November 6, 2018, buried among over 460,000 pages of documents produced that day" and that Finjan "timely followed up in December 2018" (*ibid.*). To repeat, the fact remains that those documents *did* reference a database used by Joe Sandbox. Finjan knew or should have known that Sky ATP relied on the Joe Sandbox technology. Finjan further knew or should have known the full scope of what had been produced regarding how Joe Sandbox operated and was in a position to evaluate whether that production adequately explained the details of the Joe Sandbox step. If that production inadequately illuminated the step, Finjan was in a position to ask for more — particularly where Juniper's documents produced before trial should have put Finjan on notice of Joe Sandbox databases, as discussed above. So, this is not a case where the complaining litigant had no way of realizing there was a gap in the production. In our case, the Court is convinced that Finjan was aware of what it had and did not have on Joe Security (or should have been aware) and let Joe Security slide because Finjan believed it already held a winning hand based on its ResultsDB infringement theory, on which Finjan was fully informed. As the case moves along, counsel have a responsibility to stay on top of the status of discovery and to bring stubborn problems to the Court's attention. Counsel should not postpone that chore until after the verdict and then scour the discovery record for shortfalls by the other side.

In light of the foregoing, this order finds that Finjan failed to meet its burden to prove by clear and convincing evidence that Juniper engaged in misconduct and failed to show that it diligently sought the documents at issue. It thus holds that Finjan is not entitled to relief under either Rule 60(b)(2) or (3).

**2.     JUNIPER'S MOTION FOR SANCTIONS.**

Juniper also moves for sanctions, arguing, *inter alia*, Finjan pursued unsupported damages theories in bad faith, waffled on the issue of constructive notice in bad faith, claimed

7

actual notice based on false statements, and asserted without merit Claim 1 of the '780 patent against SRX.

We have a long way to go before this case is over and each side is regularly accusing each other of misconduct. As such, the Court will **DEFER RULING** on this motion until the end of trial so that both sides' alleged wrongs can be viewed in light of each other.

## CONCLUSION

For the foregoing reasons, Finjan's motion to set aside the verdict is **DENIED**. Juniper's motion for sanctions is **HELD IN ABEYANCE**.

**IT IS SO ORDERED.**

Dated: May 22, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE