United States District Court
Northern District of California

1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7    FINJAN, INC.,                           Case No. 17-cv-05659-WHA   (TSH)
8              Plaintiff,
                                             **ORDER REGARDING DISCOVERY**
9       v.                                   **LETTER BRIEF**
10   JUNIPER NETWORK, INC.,                   Re: Dkt. No. 484
11             Defendant.
12
13          This discovery dispute concerns Juniper's tenth affirmative defense and fifth counterclaim

14   based on unclean hands, as well as its third counterclaim for inequitable conduct. *See* ECF No.

15   218, ¶¶ 193-212, 232-60. The essence of the unclean hands claim is that Finjan's patent

16   prosecutor, non-party Dawn-Marie Bey, allegedly routinely claims a late priority date in patent

17   applications to prolong the length of the patent, which is to Finjan's benefit in licensing

18   negotiations. But when it becomes clear that a PTO examiner will find the original priority date to

19   be ineffective to support a valid invention because of prior art, Bey routinely files a "Petition to

20   Accept Unintentionally Delayed Priority Claim" under 37 C.F.R. § 1.78(e), backdating priority to

21   escape invalidation. *See* ECF No. 190 at 9-11 (order summarizing the unclean hands claim).

22   Juniper's theory is that the sheer number of times Bey has filed these petitions for Finjan belies

23   her representations to the PTO that the delayed priority claims were unintentional.

24          The inequitable conduct claim is a specific example of this backdating allegedly done in

25   connection with the '494 patent. There, Bey allegedly filed one of these petitions to backdate the

26   patent to overcome an invalidity problem, but at the earlier date not all of the authors had started

27   working for Finjan, so Bey also filed an amendment falsely getting rid of three of them as authors.

28   Or at least that's what Juniper says.

To explore these claims, Juniper served a document subpoena on Bey. ECF No. 484-1. The parties have met and conferred and have five disputes concerning the subpoena. ECF No. 484.

## A.   Invoices for Bey's Work on All of Finjan's Patents, Not Just the Patents-in-Suit or Their Families

Bey was not the original prosecuting attorney of record on many of Finjan's patents where she later filed a petition to accept an "unintentionally" delayed claim of priority. Juniper reasons that she would have had to discuss with the prior counsel their failure to claim priority before she could submit such a petition in good faith. Juniper believes she didn't do this and would like to use the absence of such discussions as evidence that she had no basis to claim the delay was unintentional because she couldn't possibly have known.

To that end Juniper wants all of Bey's invoices for her work on all of Finjan's patents. Juniper acknowledges that some entries in the invoices might be privileged and could be redacted, but it argues that non-privileged facts such as names, dates, and the general subject matter of any communications about Finjan's patents is relevant. Presumably, for example, Juniper would find the date of a Finjan petition to accept an unintentionally delayed claim of priority, and then search the entries for the weeks or months leading up to that filing for any evidence of a communication with the original patent prosecutor, and if it didn't find any, would say this is circumstantial evidence that the petition was a fraud. Bey agrees, as a compromise, to produce invoices only for work on the asserted patents but not for work on any others. She disputes their relevance and also argues the subpoena didn't ask for them. As a backup at the telephonic hearing, she offered the invoices for work concerning priority for patents in the same families as the asserted patents.

Let's start with the subpoena. RFP No. 2 asked for "all invoices related to the Patents-in-Suit." The subpoena defined the patents-in-suit to mean the '494 patent, then '844 patent, the '780 patent, the '731 patent, the '633 patent, and the '154 patent. It also stated that "'related' shall be construed broadly, and shall mean mentioning, discussing, referring to, pertaining to, reflecting, or consulting." Juniper argues that all of Bey's invoices to Finjan come within the broad definition of "related." As a backstop, Juniper argues that even if they are not responsive to RFP No. 2, they

are certainly responsive to RFP No. 27, which asked for "all documents related to Finjan." The Court accepts the latter argument. Invoices for work on patents other than the patents-in-suit do not come within the scope of RFP No. 2 because they do not mention, discuss, refer to (and so on) the patents-in-suit, but they do come within RFP No. 27 because they relate to Finjan.

But are they relevant and proportional? The Court believes they are. The District Judge's order allowing the unclean hands claim to proceed stated that "[l]ooking at the forest instead of the trees, we see a pattern and practice of bringing to the attention [of] the PTO critical information only after the PTO examiner or industry itself has exposed the original priority date as ineffective to support a valid invention. In light of this practice, it then becomes all the more suspicious that Attorney Bey, time and again, would — only after potentially invalidating prior art is interposed — give the same story of 'unintentional delay' in petitioning for a priority date conveniently predating prior art." ECF No. 190 at 11. This claim is about the forest, not the trees. It's about a pattern, a practice in which Bey time and again allegedly did something. To see if this claim has merit, Bey cannot limit her production to invoices concerning the patents-in-suit or their families. At the same time, to lessen burden, "[a]s a compromise, Juniper proposes that Ms. Bey produce all invoices related to work analyzing priority or inventorship for Finjan's patents, redacted to protect any privileged legal advice." ECF No. 484 at 2. In response to the Court's questions at the telephonic hearing, Juniper acknowledged that while the fifth counterclaim (concerning priority) is about the forest, the third (inventorship) is a tree, meaning that it is limited to the '494 patent. Accordingly, the Court adopts a modification of Juniper's compromise and **ORDERS** Bey to produce all invoices related to work analyzing priority for any of Finjan's patents, or related to work analyzing inventorship for the '494 patent, redacted to protect any privileged legal advice.

**B.** **All of Bey's Petitions to Accept Unintentionally Delayed Claims of Priority, Not Just the Ones She Filed for Finjan**

Bey has agreed to produce all of the backdating petitions she filed for Finjan, but Juniper wants all the petitions she filed for her *other* clients as well. Juniper states that it "requested all of Ms. Bey's petitions to accept 'unintentionally' delayed claims of priority because they are critical to understanding whether Ms. Bey's pattern of behavior is unique to her relationship with Finjan,

or whether it is a common part of her practice for other clients."  ECF No. 484 at 2.  The parties primarily dispute the burden involved in this request, but the Court is struggling with its relevance.

The unclean hands claim is asserted against Finjan, obviously, not Bey.  The gist of the claim is that "Finjan has an unusually abundant history of petitioning for allegedly 'unintentionally' delayed claims of priority, particularly after one of Finjan's patents is under examination and has been rejected over prior art that predates the filing of the patent but post-dates the belatedly claimed priority document."  ECF No. 218 ¶ 235.  The idea is that Finjan is doing something *unusual* in its patent prosecution, a departure from common practice that is suggestive of wrongdoing.  Well, that begs the question:  unusual *compared to what?*

Surely the answer has to be something like:  compared to what is normal in patent prosecution generally, or at least what is normal in patent prosecution in the industry Finjan is in.  The problem with Juniper's request is that what Bey does for her other clients is irrelevant because she's just one person.  Her conduct simply does not establish what is normal in patent prosecution generally or within a given industry.

If this were an attorney disciplinary proceeding, the Court would care whether Bey is constantly filing these petitions for just Finjan or for all of her clients – although even then we would still need to know if this behavior is objectively uncommon in the industry or in patent prosecution generally before we could know if this looks like misconduct.  But that's not what this case is about.  Juniper is asserting its unclean hands claim not against Bey but against her client Finjan.  To show that Finjan in fact has an unusually abundant history of filing these petitions, Juniper will need to compare Finjan's history to some relevant measure of what is normal.  Bey's conduct on behalf of her other clients in no way establishes what is normal.  Getting all of her petitions is not even a step in the direction of proving what is normal.  A comparison of what Bey does for Finjan against what she does for her other clients is just a random and meaningless comparison.

As to burden, Bey makes a good case that the request is overly burdensome.  According to both sides, even though these petitions are public, there is no easy way to search for them.  Bey asserts that in her 20 years of being a patent prosecutor, she has had hundreds of clients.  She says

4

it is no easier for her to search the public files than for Juniper to, and that she would have to search through her client files to find the petitions. For clients predating 2013, she has 200 boxes of archived files she would have to go through manually. For clients from 2013 to the present, she can do an electronic search based on words to find documents in her document management system, but then she would need to determine if each petition she finds actually got filed. As a compromise, Juniper says it can provide search terms that would yield no more than a thousand hits for Bey to review before her deposition. Juniper says nothing about the 200 boxes of documents.

Juniper's compromise would keep Bey busy before her deposition, but it also calls into question the value of what would be produced. As explained above, the Court does not believe that a comparison of Finjan's practice of filing these petitions to how often Bey's other clients have filed these petitions has any relevance. But a comparison of a complete set of Finjan's petitions to an incomplete set of what Bey is able to find in a few days, and excluding everything before 2013, for her other clients – well, the Court doesn't even know how to characterize what that is. That comparison is not apples to apples, or even apples to oranges. It's an apple compared to something of unknown quality.

Because the requested documents are irrelevant and any meaningful effort to produce them is disproportional to the needs of the case, the Court **DENIES** Juniper's request for Bey's petitions on behalf of her other clients.

**C.      Communications with Prior Attorneys of Record About Priority or Inventorship.**

Juniper requests communications between Bey and the prior attorneys of record who prosecuted Finjan's patents so Juniper can determine whether she had any communications regarding the prior attorneys' failure to claim priority or who they listed as inventors. This is essentially the same issue as with the invoices. They want Bey ordered to produce the communications so they can review them and argue there weren't any. Bey agrees to produce communications concerning the asserted patents, as well as communications related to family members of the asserted patents, but that's too narrow. The issue for the unclean hands claim is the forest – the pattern, the practice, which goes to Finjan's patents generally. However, as to the

5

third counterclaim, as pleaded it is limited to the '494 patent.  The Court **ORDERS** Bey to produce (or log on a privilege log) all communications with prior attorneys related to the analysis of claims of priority for any of Finjan's patents, as well as all communications with prior attorneys related to the inventorship of the '494 patent.

**D.     Privilege and Redaction Logs**

Bey produced three privilege and redaction logs in response to the subpoena.  ECF No. 483, Exs. 4, 5, 6.  Not a single entry in the subject matter column references priority or inventorship.  Juniper argues that this violates paragraph 24 of Judge Alsup's Supplemental Order to Order Setting Initial Case Management Conference.  The Court agrees, and independently of that problem, believes the logs were drafted in an effort to hide discoverable information.  The subject matter descriptions are broad and generic, and – more to the point – in every case Bey's chosen description is something other than priority or inventorship.  Stating that an email was about priority or inventorship is a very high-level description that does not reveal the content of the legal advice.  Juniper is simply trying to find out whether Bey had discussions about priority or inventorship, not what was said.  In fact, Juniper's theory is that there weren't any such communications.  It appears that Bey intentionally drafted the logs to bury this discoverable information.  The Court **ORDERS** Bey to specify which entries on the logs relate to discussions concerning claims of priority of any of Finjan's patents or to the inventorship of the '494 patent.  She must do this as well for any logs she produces in response to this order.

**E.     Communications with Inventors About Priority or About Inventorship of the '494 Patent.**

RFPs 5 and 6 ask for all documents related to the conception or reduction to practice of any of the patents-in-suit.  RFPs 8-11 seek all communications with the four individuals that Juniper alleges are the authors of the '494 patent.  The letter brief seeks narrower relief:  "As a compromise, Juniper proposes that Ms. Bey produce (or log) all communications with the inventors regarding the priority date of any Finjan patent or inventorship of the '494 Patent."  This narrowing is appropriate, in part because Juniper's third counterclaim appears limited to the '494 patent.  So narrowed, the request is relevant and proportional because it seeks documents showing

6

whether Bey performed any investigation into the priority date of any of Finjan's patents or into the inventorship of the '494 patent. Bey does not specifically respond to Juniper's argument, and sort of suggests she has already produced these materials. ECF No. 484 at 5. To the extent Bey has not done so already, the Court **ORDERS** her to produce or log all communications with the inventors regarding the priority date of any Finjan patent or the inventorship of the '494 Patent.

**F.     Deadline**

Bey's deposition is currently scheduled for May 30, 2019 – seven days from now. To give Juniper a fighting chance to review materials to prepare for the deposition, the Court **ORDERS** Bey to produce the foregoing documents and information by Monday, May 27, 2019. As discussed at the telephonic hearing, the Court also instructs the parties to meet and confer regarding rescheduling the deposition. If they agree on an alternative date, they may also extend this production deadline by agreement amongst themselves. If the parties run into difficulty agreeing on an alternative deposition date or production deadline, they should contact the undersigned's courtroom deputy to set up a phone call with the Court.

**IT IS SO ORDERED.**

Dated: May 23, 2019

THOMAS S. HIXSON
United States Magistrate Judge