# EXHIBIT 4

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED



EXHIBIT 7
Scott Coonan
11/16/2018
Reported by: Charlotte Lacey
RPR, CSR #14224

## Transcript

**Legend:**

[UI]: Unintelligible

[PH]: Phonetic

[NS]: Noise

[OV]: Overlapping Voices

---

**[Recording Begins – 00:00:00]**

| Speaker ID | Time Code | Transcription |
|---|---|---|
| John | 00:15 | -- for making a decision about these things. |
| Scott | 00:05 | I appreciate that overture. Yeah, I mean actually, Ivan and I had a pretty good relationship. I don't know the circumstances of his departure but -- |
| John | 00:17 | Okay. |
| Scott | 00:18 | -- so I don't really know what you're referring to, in terms of different styles.<br><br>But I guess what you're saying is he was a heavier hammer, and you're a lighter hammer or something like that. But -- is that -- is that basically what you're saying? |
| John | 00:32 | I don't -- I don't know. I thought he was light -- I think I tend to just be kind of fact-based, and just trying to kinda cut to the chase. Yeah, I don't know.<br><br>I have my own style. I've been doing this for 20 plus years. And I -- I just think there's a way to do it where two parties can be respectful and can exchange some information. And I'm not saying there's not gonna be a debate, or it might get heated here or there, but, you know, I think there's a way to exchange information, that you can make a -- each party can kinda make a decision about whether this is proceeding on a path that makes sense. |
| Scott | 01:07 | Well, I think if you -- you probably have access, at least, to the email trends -- correspondence that's gone back and forth. And I think one thing that can be said is that it has been respectful. It's been respectful in a disagreement way, but that's fine. And we'll continue to |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**Trial Exhibit 256**
Case No. 17-CV-05659-WHA
Date Entered: _____ By: _____
Deputy Clerk

CONFIDENTIAL

JNPR-FNJN_29011_00960575

| | | |
|---|---|---|
| | | have that dialogue, and I'm happy to have that dialogue with you.<br><br>So are you -- is -- is Finjan just purely a licensing company now or do you actually make anything? |
| John | 01:39 | There's some stuff we're making like a web browser for mobile and there's some other things that are in development. |
| Scott | 01:44 | But you're not suing us on those. You're not -- you're not asserting those patents, right? |
| John | 01:49 | Correct. |
| Scott | 01:50 | Okay. So you're non-practicing in terms of the patents that are being asserted. |
| John | 01:56 | Yes. I mean Finjan's got this -- I don't know if it's -- I thought Ivan might have gone through it. But I mean Finjan started in 1997. Finjan's now kind of -- some of Finjan is now buried under M86 Security. So it's kind of like been splintered and resold. So -- |
| Scott | 02:16 | So did you have like a-- did you have a standards position? |
| John | 02:22 | I -- no, I have not. I don't want to cause any issues with standards or declarations of standards or anything like that. |
| Scott | 02:27 | So you -- you're not claiming you own a standard or have a position in a standard? |
| John | 02:34 | Correct. |
| Scott | 03:35 | Okay. |
| John | 02:36 | It's all implementation. |
| Scott | 02:37 | Yeah. So how much are you up to speed on -- on the previous dialogue between Juniper and Finjan? |
| John | 02:46 | I have not read it recently. I did review it at one time, and it looked like, you know, there was a debate over an NDA -- not an NDA. It's more like to kind of get to your process, in terms of how do you usually handle it. I mean Finjan is usually an NDA and a mutual stand-still agreement to allow the parties over some period of time that's agreed upon to have kind of a forthright exchange. |
| Scott | 03:10 | Yeah. So it -- so that's -- yeah, I think Ivan presented that to us, and we -- we declined to sign it. Basically, |

CONFIDENTIAL

JNPR-FNJN_29011_00960576

| | | |
|---|---|---|
| | | what -- what the model we would like to employ is for you to share whatever information you think is relevant; a teaser or whatever you call it, to get us interested, to get us thinking that we should engage in a discussion with you, and then we will.<br><br>But we're not necessarily going to commit to an NDA. We may, but that's not my call. So it's -- it's just a little bit of a kind of a dance here. |
| John | 03:55 | Okay. So I mean we have identified patents. We have identified products. I mean are you looking for – do you really want like a formal letter of Notice of Infringement or are you -- what do you -- what do you call a teaser? |
| Scott | 04:09 | Well, you've identified -- well, let me -- I have to go back. I'm not going to acknowledge that you've identified patents and products. But with any specificity, I think it's been at a fairly high level. But I would have to go back and familiarize myself with that again.<br><br>But I know you've provided some information. And we have reviewed that information, but it's been probably six months since we've heard from you, so I would have to go back and refresh my recollection. |
| John | 04:41 | I could just help you. We would just restart, 'cause, yeah, but I think that information's dated -- |
| Scott | 04:47 | Okay. |
| John | 04:47 | -- you know, there's new patents, different patents and probably different products. |
| Scott | 04:53 | The products are probably not that different, but if you have new patents, then all right, we would love to hear about that. |
| John | 05:01 | Yes, so I mean the products that we're focused on is the -- the SRX Series, including the virtual firewall, and -- |
| Scott | 05:10 | And why have you focused on that? |
| John | 05:12 | Because that's what the patents have led us to, I mean there's new security products, and so we don't think -- you know, really with your Junos operating system. But it looks like some of the modules that are supported in those products and the Next Generation firewall, which is your UTM, your antivirus, and your web filtering are three modules that we think about using three new |

| | | |
|---|---|---|
| | | patents. |
| Scott | 05:33 | And how'd you get to that? |
| John | 0535 | Claim charts. |
| Scott | 05:37 | Oh, no, no. Before you get to the claim chart part. So how did you -- Were you using like Juniper documentation or were you using engineers assessing the situation? What -- what were you using? |
| John | 05:50 | Our engineers looking at your product documentation. |
| Scott | 05:55 | So you have engineers? |
| John | 05:55 | Yes. |
| Scott | 05:56 | Okay. And they have networking and security backgrounds? |
| John | 06:02 | Correct. |
| Scott | 06:06 | And so, when you engage with other targets, you -- how do you like to engage? Do you like to present your engineers with the target's engineers and -- and have a dialogue or what do you -- what do you like to do? |
| John | 06:24 | I'd do it any way you want. I mean we could – we'd would be happy to come over and share, you know, our analysis and why we -- why we think the patents are being used and our -- our read on the specific products. You're welcome to include your engineers. That would be useful, if -- if that helps.<br><br>I can share, you know, some of the success we've had in licenses and some of the background of the company, and we can go through where we see a possible solution or we can just wait, and, you know, we could stay in the technical realm and just wait for your feedback before we advance to that.<br><br>The way we usually do it is, yeah, we never usually want it in an NDA. We really want your -- we don't want our information being in public -- publicly shared, and we don't think your information or responses or mailed information or something like that is also should be public. |
| Scott | 07:18 | But the difficulty here is that your -- your engineers probably did not create the products. Is that correct? |
| John | 07:27 | Correct. |

| Speaker | Time | Text |
|---|---|---|
| Scott | 07:28 | And you're asking for us to -- to talk about the products that we create, and those are the actual engineers who created the products. So there seems to be an inequity there that I can't really get around. |
| John | 07:42 | I don't quite follow. I mean you could bring whatever engineer you -- you want but -- |
| Scott | 07:46 | Well, you don't -- you don't want an unknowledgeable engineer, right? You want somebody knowledgeable about the product. And how -- how can I assure myself and the company that your engineer is actually knowledgeable about the patented technology, 'cause they didn't create it? |
| John | 08:06 | Okay. That's funny. I mean when I was at Bell Labs, you know the guys I used that supported me in my licensing discussions were not the inventors of my patent, but clearly understood semiconductor processing and manufacturing. |
| Scott | 08:23 | Uh-huh. |
| John | 08:24 | Same exact situation here. So except it's around security. Right? I mean we can have an opening conversation dialogue if you just have her go through the three patents at a high level with one of your technologists, and you can get comfortable that she's -- she's "of quality", meets your quality standard. |
| Scott | 08:45 | I would love -- I would love to talk to the inventor. Is that an option? |
| John | 08:54 | I don't think so, but -- and it -- and it wasn't an option when I -- when I did licensing at Lucent or A&T either. So, no, I'm gonna reject that. |
| Scott | 09:05 | Okay. Well, so you're -- you're -- you mentioned three patents. So you're -- you're focusing on three patents, is that correct? |
| John | 09:24 | Yes. |
| Scott | 09:25 | And are those the three patents that I'd been noticed on previously? |
| John | 09:33 | Let me look at that. Two of them. Two of them, 968, 154 |
| Scott | 09:58 | Can you give me the full numbers? |
| John | 10:02 | Sure. 6965968. You've seen that one. |

| Scott | 10:08 | 69 -- |
| John | 10:11 | 65968. |
| Scott | 10:13 | 6965968. Okay... |
| John | 10:18 | 6965968, yeah. |
| Scott | 10:20 | Yeah. |
| John | 10:22 | All right. You've seen that one, although I think we have an updated chart. There's the 8141154. |
| Scott | 10:32 | Give me that one again. 814 -- |
| John | 10:35 | 1154. |
| Scott | 10:37 | 1 -- okay. 814155 -- 1 -- 84 -- I'm sorry. 8141154. |
| John | 10:47 | Right. |
| Scott | 10:48 | Got it, okay. |
| John | 10:53 | And there's a newer one, one you haven't seen before. 8677494 |
| Scott | 11:06 | Okay. All right. And that's significant, because it's -- is it -- is it a continuation? |
| John | 11:21 | I don't know. I don't know. It's reads on your advanced malware modules. |
| Scott | 11:35 | Because your engineers, who didn't invent the product or the patent or the invention, say so? |
| John | 11:43 | Just stop that shit. Just stop it. |
| Scott | 11:48 | I think it's funny. |
| John | 11:51 | What's the -- what's the problem? You just don't like Finjan's business model or what -- what's the issue? |
| Scott | 11:57 | Do you like Juniper's business model? |
| John | 12:00 | Yeah, I think it's pretty cool. |
| Scott | 12:02 | What is it? |
| John | 12:04 | It's network equipment. |
| Scott | 12:06 | Okay. I'm just wondering -- I'm trying to ascertain what analysis has been done to determine that these products that you say infringe do indeed infringe. |

CONFIDENTIAL

| John | 12:30 | --has claim charts on all three that map, are based on your -- your product documentation that's sufficient enough to map all three of these patents to the products. |
|---|---|---|
| Scott | 12:45 | Okay. You have claim charts. |
| John | 12:47 | Correct. |
| Scott | 12:49 | Okay. So what went into the claim charts? |
| John | 12:52 | Excuse me? |
| Scott | 12:53 | What went into the claim charts? |
| John | 12:57 | Happy to show 'em to you whenever you wanna see 'em. |
| Scott | 13:01 | Well, I actually have seen a couple, I think. So -- |
| John | 13:05 | That's not -- it's much better today. |
| Scott | 13:08 | Much better. |
| John | 13:09 | It's much better format, yeah. |
| Scott | 13:12 | The format is better. |
| John | 13:13 | The format, support -- supporting information. Yeah. |



|       |       |                                                                                                                                                                                              |
|-------|-------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|       |       | So what information are you willing to share in the absence of an NDA -- I'm not gonna sign one -- that would -- that would help me decide what at do, that would help my company, Juniper Networks, decide what to do? |
| John  | 16:46 | So you've never -- you've never made a license? Never licensed a patent before?                                                                                                              |
| Scott | 16:53 | Oh, that's absolutely not true. That is absolutely not true. I have deposition testimony over and over again that says we do. We have. It's not a common situation, but it has happened. When we see merit in a case, we take a license. |
| John  | 17:16 | Okay. And how do you determine merit?                                                                                                                                                        |

CONFIDENTIAL

JNPR-FNJN_29011_00960582

| Scott | 17:19 | Well, that's kind of a trade secret. And we're not going to share that right now over this call. |
| John | 17:31 | Okay. So how does somebody get in the front door? |
| Scott | 17:41 | Oh, I thought you were already in the front door. I mean we're kind of in the -- through the second door, and just trying to figure out whether there's -- there's anything worth discussing. |
| | | So, you know, I don't -- you haven't shown us anything, John, to take this to the next level. So please, you know, every kind of assertion like this requires a ton of resources, and I have to decide how to spend those resources, other people decide how to spend those resources, and we want to do the right thing. |

CONFIDENTIAL

JNPR-FNJN_29011_00960583

| Scott | 21:07 | So exactly why do I have to honor a meeting? Honor a meeting? Why are you worthy of a meeting? |
|---|---|---|
| John | 21:23 | I just prefer to do it in another realm. You don't wanna |

| | | |
|---|---|---|
| | | do it in a conference room? |
| Scott | 21:29 | So what -- how would the conference room differ from this setting? |
| John | 21:34 | What setting? |
| Scott | 21:36 | I mean just the conversation we're having right now. I mean how would the in-person differ? Because I did the in-person. I tried to bridge the gap with your people and it didn't work. |
| John | 21:52 | I wasn't aware of that. When was that? |
| Scott | 21:53 | I was in your offices two times. |
| John | 21:59 | Okay. Who participated in it. |
| Scott | 22:02 | Julie and Ivan. |
| John | 22:04 | Okay. |
| Scott | 22:05 | Okay. Now it was related to a different subject. It was related to this subject, but it was related to a particular approach that I was proposing, and they declined it. And that's fine. |
| John | 22:19 | Okay. I don't know. I'd have to try to talk to Julie. |
| Scott | 22:23 | Well, I'm sorry that you're coming into this late, and that they have not advised you about what has gone on. There's a history here, and we're kind of at that -- at that point. |
| John | 33:38 | And can you just explain the approach or you want me to just talk to Julie first? |
| Scott | 22:45 | Why don't you talk to Julie? |
| John | 22:49 | All right. Can you give me like a snippet? |
| Scott | 22:53 | So we were offering you some information that would be advantageous in other litigations that you have. And It was considered to not be valuable enough to -- to have a walk-away with Juniper, so, you know, here we are. |
| John | 22:18 | Okay. So there's an offer and a rejection, so that ends it? |
| Scott | 23:30 | Well, I mean I don't know. You've -- you've come back, so it didn't end it for your -- on your side. As far as we were concerned, that ended it. |

CONFIDENTIAL

| John | 23:46 | Okay. What if Finjan didn't think -- this is all hypothetical -- didn't think it needed the information or how did you value -- how would you expect Finjan to value that information? |
|---|---|---|
| Scott | 23:59 | You know what, that's up to you. I'm not in the game of deciding how you value your information. I was offering information, and you were deciding to not take it, so -- |
| John | 24:13 | So -- but it was your information, and it's an exchange. It was a trade. It was like and then -- and we walk away. I think is what -- how you phrased it. |
| Scott | 24:21 | I think that's basically at a high level accurate. |
| John | 24:25 | So that kind of has an intrinsic value associated with it. So how is that achieved by Juniper? I mean how is that -- how can I -- you know, how do I know it's a fair offer. What do you think the information is worth? |
| Scott | 24:40 | Well, John, it sounds like you don't even know the history of this, so we -- |
| John | 24:45 | Certainly. I know the history of this. I talked to Meredith about it, I said I think it's a strange way for -- you know, in my -- in my experience in 23 years of licensing, I think it's a strange way to do it. But, you know, but you have to value it. |
| Scott | 24:59 | Wait. You said you don't know about the previous discussions between Finjan and Juniper, right? |
| John | 25:05 | I wasn't aware there was a couple of meetings that were held at Finjan. I was aware that you were offering some information around Palo Alto Networks. I wasn't aware that there was a meeting that took place, and that maybe Julie participated and rejected it. I just know that the information that was -- I know it was offered. |
| Scott | 25:24 | Correct. |
| John | 25:27 | Unilaterally offered by Juniper. |
| Scott | 25:31 | Well, an offer is, you know, by definition, unilateral. So, yes, we unilaterally offered it. |
| John | 25:41 | I'm just saying it wasn't like Finjan saying is there any other things you can give us if you help us, right? It was unsolicited. |
| Scott | 25:48 | Unsolicited. I don't know. I don't know that it would be unsolicited. I thought it was in the context of a litigation |

CONFIDENTIAL

JNPR-FNJN_29011_00960586

| | | |
|---|---|---|
| | | discussion, negotiation, and you rejected it, so we're back at square one. |
| John | 26:11 | Okay. You seem offended by that, but -- |
| Scott | 26:17 | I'm not offended. Not offended at all. I've been doing this for 17 years, not 23 years. |
| John | 26:25 | Okay. |
| Scott | 26:26 | And I don't get offended easily either. |
| John | 26:44 | [REDACTED]<br><br>And then there's two, which is there's previous discussions, and you came up with maybe you thought was a clever idea and I'd love to hear about -- more about it. But it was rejected and now it's kind of left a small wound or where you're, you know, you're not really sure.<br><br>But, you know, in terms of this paying royalties to Finjan, doesn't seem like an option, 'cause there might be some other kind of barter that's available. |
| Scott | 27:34 | I think your characterizations are totally erroneous, so I'm not -- I'm going to, as you say, reject both of them. They're not -- they're not accurate. And I'm not gonna, you know, I'm not going to validate them in any way. They're wrong. |
| John | 27:58 | Okay. So you don't find paying royalties to Finjan objectionable? |
| Scott | 28:04 | We have paid -- no. When you say royalties versus lump sum, are you trying to distinguish between those two? |
| John | 28:11 | No. |
| Scott | 28:12 | Okay. So just a payment -- |
| John | 28:15 | Correct. |
| Scott | 28:16 | -- to a patent holder, do I find that objectionable or does |

| | | |
|---|---|---|
| | | Juniper find that objectionable? |
| John | 28:24 | Yeah, I said to Finjan, and you inserted patent holders. I think that's -- that's kind of what I'm getting at with the bias, but go ahead. Continue. |
| Scott | 28:32 | Are you a patent holder? |
| John | 28:26 | Do you work for Juniper? |
| Scott | 28:39 | Yes, I do. |
| John | 28:40 | All right. This is awesome. All right. So go ahead with your question. |
| Scott | 28:47 | So are you a patent holder? |
| John | 28:50 | Yeah, we own patents. |
| Scott | 28:51 | So if you're trying to say whether there's anything personal to Finjan, no. There's nothing personal involved in the decision to not take a license at this point. |
| John | 29:04 | The business model though. |
| Scott | 29:06 | No, the business model, we have -- we have absolutely paid patent holders who have valid, meritless claim -- merit -- claims with merit -- we have paid them. |
| John | 29:22 | Okay. |
| Scott | 29:23 | Okay. It's not unprecedented. What we will not pay is meritless claims. |
| John | 29:34 | Okay. And do you feel that these are meritless or? |
| Scott | 29:38 | Well, no we have not gotten to that point. |
| John | 29:41 | Okay. |
| Scott | 29:42 | We have not had enough exchange of information to decide about that. |
| John | 29:48 | So how do -- how do you wanna do it? I mean I have claim charts. I can share 'em with you. You want me to put them on the web? So how do you -- how do you want me to share the information with you in a way that's respectful? |
| Scott | 30:02 | You can send them directly to me. I don't care. |

CONFIDENTIAL

JNPR-FNJN_29011_00960588

| | | |
|---|---|---|
| Scott | 31:26 | So let me ask you this. Why is it confidential? |
| John | 31:33 | So I can post it on the web. You prefer me to just post it on Finjan's web, and accuse Juniper of infringing the following three patents, and you just retrieve them from there? And you can decide if it's merit -- it has merit or it's meritless? |
| Scott | 31:48 | I actually would like that. That would be great. |
| John | 31:56 | Okay. We'll consider it. |
| Scott | 31:59 | But you won't do it. |
| John | 32:02 | I don't know. I'll talk to Julie about it. |
| Scott | 32:05 | Okay. So that's our next step is for you to decide whether to post the infringement contentions on your website. |
| John | 32:17 | I'm just noodling. |

CONFIDENTIAL

JNPR-FNJN_29011_00960589

| Scott | 32:18 | Okay. Well, noodle. I think that's our next step. |
| John | 32:22 | It's not our next step. |
| Scott | 32:23 | And then once you decide whether to do that, then we can go from there. |
| John | 32:31 | Okay. So if I do it, then you post it from there. So what I if I don't do it, I call you back and then what? We play – we play this little Seinfeld game again by phone? |
| Scott | 32:42 | No, I actually want you to do it. I want you to post that. |
| John | 32:45 | Okay. This is -- so it's -- let's just -- humor me. So if Julie rejects it. She doesn't wanna do it that way. Now what? |
| Scott | 33:00 | It's not my call. I'm not -- I'm not the plaintiff. I'm not the patentee. |
| John | 33:05 | I'm not the Plaintiff either. |
| Scott | 33:06 | It's your call. It's your call. |
| John | 33:08 | I'm not the plaintiff. |
| Scott | 33:09 | I'm not gonna make your call for you. |
| John | 33:12 | But you asked me why -- why you want -- why does it have to be confidential and you could see the awkwardness in it. |
| Scott | 33:22 | We are gonna be transparent in this, okay? |
| John | 33:27 | [redacted] You're telling me you're straight up. You got this trade secret process probably better than anyone I've ever seen in the -- in the industry today, and I wanna know how it works. |
| Scott | 33:49 | Thank you for kissing my ass. |
| John | 33:54 | You're saying trust me. |
| Scott | 33:54 | Trust you. When did I say trust me? So all I said was we're transparent. Okay. So if you send that to me, I'm gonna share it. You have nothing to hide. You have a lockdown patent infringement lawsuit against Juniper, right? You got it. Go for it. |

CONFIDENTIAL

| | | |
|---|---|---|
| John | 34:37 | Okay. I think you only take licenses once you're sued. |
| Scott | 34:51 | No. Not true. Not true. |
| John | 35:02 | Has to be. |
| Scott | 35:06 | What was that comment? |
| John | 35:08 | Has to be. |
| Scott | 35:09 | Has to be? No, I just told you not true. |
| John | 35:14 | And I don't believe you. And I just don't believe it, based on your tenor and your tone and this discussion. |
| Scott | 35:23 | Okay. Well, when I'm deposed, I will explain to you exactly the licenses we've taken. Okay? |
| John | 35:32 | See, it's amazing. You use words like plaintiff, you use deposed. You got litigation in your title. This is the exact reason why I didn't wanna deal with you guys. I wanna just deal with the business guy. |
| Scott | 35:42 | Because you -- because you want something in our -- in our products? |
| John | 35:46 | I just wanna -- I just --- |
| Scott | 35:47 | You think -- you think you have something valuable to put in our products? |
| John | 35:53 | It's in your products. |
| Scott | 35:53 | Then explain it. No. Oh. Well, that -- no, that's a legal discussion. |
| John | 36:00 | But it's a business risk. Make the decision. Where do you wanna solve it? You wanna solve it in a conference room or do you wanna solve it in a courtroom?<br><br>Somehow you think when you went to law school it became a black and white world, but, unfortunately, it's got 32 shades of grey. |
| Scott | 36:26 | Okay, John. Anything else to say? |
| John | 36:29 | No. |
| Scott | 36:30 | Thank you. |

[Recording Ends 37:03]