# EXHIBIT 21

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

```
1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3               SAN FRANCISCO DIVISION

4                     --oOo--

5    FINJAN, Inc., a Delaware

6    corporation

7               Plaintiff,

8         vs.              Case No. 3:17-cv-05659-WHA

9    JUNIPER NETWORKS, INC., a

10   Delaware corporation

11              Defendant.

12   _____

13

14    HIGHLY CONFIDENTIAL, OUTSIDE ATTORNEYS EYES ONLY

15

16           30(b)(6) VIDEOTAPED DEPOSITION OF

17                  JOHN GARLAND

18              Thursday, May 24, 2018

19

20

21   Reported by:

22   COREY W. ANDERSON

23   CSR No. 4096

24   Job No. 2923791

25   Pages 1 - 258
```

Page 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | another whether the Finjan | 15:03:32 |
| 2 | VitalSecurity Appliance embodied | 15:03:32 |
| 3 | the invention that's described in | 15:03:32 |
| 4 | the '926 patent?") | 15:03:32 |
| 5 | THE WITNESS:  I'm sorry, one more. | 15:03:48 |
| 6 | (Whereupon, the reporter read back | 15:03:49 |
| 7 | the record as follows: | 15:03:49 |
| 8 | "So you don't know one way or | 15:03:49 |
| 9 | another whether the Finjan | 15:03:49 |
| 10 | VitalSecurity Appliance embodied | 15:03:49 |
| 11 | the invention that's described in | 15:03:49 |
| 12 | the '926 patent?") | 15:03:49 |
| 13 | THE WITNESS:  Yeah, I don't -- I'm not | 15:04:05 |
| 14 | positive.  I mean, I don't know. | 15:04:06 |
| 15 | BY MS. CARSON: | 15:04:07 |
| 16 | Q.   Do you know whether Finjan or any of its | 15:04:09 |
| 17 | licensees sold any commercial embodiment of the '926 | 15:04:11 |
| 18 | patent from the date it issued until the date it | 15:04:16 |
| 19 | expired? | 15:04:19 |
| 20 | MS. KOBIALKA:  Objection to form. | 15:04:22 |
| 21 | THE WITNESS:  No, I don't. | 15:04:25 |
| 22 | BY MS. CARSON: | 15:04:26 |
| 23 | Q.   Did you personally participate in any | 15:04:44 |
| 24 | discussions with Juniper prior to Finjan filing this | 15:04:46 |
| 25 | action? | 15:04:50 |

Page 192

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

```
 1      A.    Yeah.                                    15:04:51

 2      Q.    Can you describe for me your            15:04:53

 3  participation?                                    15:04:55

 4      A.    So I participated in a call in November of  15:04:59

 5  2015 with Scott Coonan.                           15:05:01

 6         So I think I originally reached out to     15:05:13

 7  Meredith McKenzie because there is -- Phil Hartstein  15:05:15

 8  and Juhlie Mar-Spinola, Meredith in some way in the   15:05:19

 9  professional world.  And Meredith, I think I -- so I  15:05:23

10  remember I started in licensing around August of  15:05:27

11  2015, and I know, I assume in the negotiation that  15:05:30

12  had started sometime in 2014 with Ivan Chaperot and  15:05:39

13  included some meetings took place with Scott Coonan  15:05:44

14  and correspondence back and forth with Meredith and  15:05:46

15  Scott Coonan in 2014 and meeting in 2014, as well as  15:05:50

16  one in January of 2015.  So then I kind of pick up  15:05:53

17  again in the fall.  Ivan's no longer with the     15:06:00

18  company.                                          15:06:03

19         And in preparation for that call with     15:06:04

20  Scott in November, just kind of received the      15:06:06

21  download on Juniper in terms of its product offering  15:06:11

22  and the negotiation history, as well as, you know,  15:06:16

23  potential patents it's utilizing.                 15:06:24

24         So eventually arrange a call with Scott,  15:06:26

25  and it's late November, it's near a day or two    15:06:28
```

Page 193

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | before Thanksgiving, is kind of my recollection.  I | 15:06:32 |
| 2 | recall him being a half hour late to the call.  He | 15:06:36 |
| 3 | asked me to postpone it 30 minutes. | 15:06:39 |
| 4 | We had the call.  It was an awkward call, | 15:06:43 |
| 5 | not on my part, on his part.  It was clear that -- | 15:06:51 |
| 6 | it's clear to me and it's later documented in an | 15:07:02 |
| 7 | email I sent to Meredith that Scott had an apparent | 15:07:04 |
| 8 | bias on the call, just in terms of some of the | 15:07:07 |
| 9 | phrase and I would say treatment I was receiving. | 15:07:11 |
| 10 | I was very clear with him that if Finjan | 15:07:14 |
| 11 | had, you know, had legitimate, had done good work | 15:07:19 |
| 12 | and had a legitimate claim of infringement on at | 15:07:25 |
| 13 | least six patents, the three that we had claim | 15:07:28 |
| 14 | charted against the SRX series gateway product as | 15:07:33 |
| 15 | well as the Sky Advanced Threat Protection, ATP | 15:07:36 |
| 16 | product, and that we were willing to -- I was | 15:07:41 |
| 17 | trying -- the purpose of the call was to arrange a | 15:07:44 |
| 18 | meeting since we were both in the Valley, just a | 15:07:47 |
| 19 | meeting where we could go through in a conference | 15:07:49 |
| 20 | room and present our findings, we were open to, you | 15:07:51 |
| 21 | know, Juniper's feedback, push-back, whatever, see | 15:07:57 |
| 22 | if the parties could just reach a conclusion.  It's | 15:08:00 |
| 23 | not an atypical approach that I have taken with | 15:08:05 |
| 24 | other companies in the security industry. | 15:08:10 |
| 25 | Scott was against it.  He was vehemently | 15:08:15 |

Page 194

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | against it, that there was no way he was going to | 15:08:18 |
| 2 | sign an NDA, and requested, you know, why don't I | 15:08:20 |
| 3 | just send him the claim charts that I had alluded to | 15:08:26 |
| 4 | and the patents I had alluded to which is the '968, | 15:08:30 |
| 5 | '454 and '154. | 15:08:33 |
| 6 | And I said well, I'm kind of reluctant to | 15:08:36 |
| 7 | do it because either -- I don't think it's the kind | 15:08:38 |
| 8 | of thing that you just email somebody, I think it's | 15:08:44 |
| 9 | better to just have a conversation over it, we'd | 15:08:46 |
| 10 | like to present it and present it in a room where we | 15:08:48 |
| 11 | can have a dialogue and answer any of your | 15:08:51 |
| 12 | questions. | 15:08:53 |
| 13 | And so I just said just for the sake, just | 15:08:58 |
| 14 | humor me if I send you the claim chart or one claim | 15:09:00 |
| 15 | chart and I said I'd have to review it with Juhlie | 15:09:03 |
| 16 | because it wasn't our standard practice, what you | 15:09:07 |
| 17 | would do with it. | 15:09:10 |
| 18 | And in the call he had early in the call | 15:09:11 |
| 19 | had indicated that there was this, I'll use his | 15:09:13 |
| 20 | words, quote "incredibly unified defense group" that | 15:09:17 |
| 21 | was working against Finjan and was doing everything | 15:09:22 |
| 22 | in its power to bleed Finjan dry, and that if I sent | 15:09:26 |
| 23 | him the claim chart, he would share it. | 15:09:32 |
| 24 | And I just said I don't think it's | 15:09:39 |
| 25 | appropriate.  This is a matter that's between, you | 15:09:41 |

Page 195

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | know, Finjan and Juniper.  And you know, we just had | 15:09:43 |
| 2 | a difference of opinion in terms of how to proceed. | 15:09:52 |
| 3 | And I said, oh, I'll think about it | 15:09:57 |
| 4 | internally, we'll get back to him. | 15:09:59 |
| 5 | And so I mean, that's just kind of a | 15:10:04 |
| 6 | summary of the call.  It was probably on the order | 15:10:06 |
| 7 | of a half hour, maybe, 45 minutes, possibly an hour | 15:10:09 |
| 8 | in duration. | 15:10:13 |
| 9 | Q.  Did you ever speak to him again after | 15:10:17 |
| 10 | that? | 15:10:18 |
| 11 | A.  No.  I have reached out to Meredith | 15:10:21 |
| 12 | because I told her that I would be willing to work | 15:10:24 |
| 13 | with Scott, but that the call I thought was strange, | 15:10:27 |
| 14 | somebody who has been in this industry for a long | 15:10:34 |
| 15 | time.  And so she told me to work through Scott. | 15:10:35 |
| 16 | And what ended up happening was Juhlie | 15:10:43 |
| 17 | like was unfamiliar with Meredith and just meet with | 15:10:46 |
| 18 | Meredith and have coffee with her and just see | 15:10:51 |
| 19 | whether, you know, we would have more of a meet and | 15:10:53 |
| 20 | greet and just try to get a -- see if there is a | 15:10:56 |
| 21 | common approach to having a meaningful exchange of | 15:10:58 |
| 22 | information, meaning the claim charts. | 15:11:02 |
| 23 | And they had trouble scheduling it.  They | 15:11:05 |
| 24 | were back and forth on it on the correspondence.  I | 15:11:08 |
| 25 | think it's all been produced. | 15:11:10 |

Page 196

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   So all of that correspondence with | 15:11:13 |
| 2 | Meredith was done via email? | 15:11:14 |
| 3 | MS. KOBIALKA:  Objection to form. | 15:11:17 |
| 4 | THE WITNESS:  It could be a call between | 15:11:18 |
| 5 | Juhlie and Meredith as well and they may have seen | 15:11:20 |
| 6 | each other at a conference. | 15:11:23 |
| 7 | BY MS. CARSON: | 15:11:24 |
| 8 | Q.   Did you have any called with Meredith? | 15:11:25 |
| 9 | A.   No. | 15:11:26 |
| 10 | Q.   So in terms of telephone calls, you only | 15:11:26 |
| 11 | had a call with Scott once in the November 2015 time | 15:11:28 |
| 12 | frame, after that there were no phone calls that you | 15:11:34 |
| 13 | had with anyone at Juniper? | 15:11:38 |
| 14 | A.   Correct. | 15:11:40 |
| 15 | Q.   Did you ever meet with anyone in person | 15:11:46 |
| 16 | from Juniper? | 15:11:49 |
| 17 | A.   No, I didn't.  I mean, the purpose of the | 15:11:50 |
| 18 | call in November was to try to arrange -- similar to | 15:11:52 |
| 19 | what we do, arrange with other companies in the | 15:11:58 |
| 20 | industry, just arrange a serious -- you know, | 15:12:00 |
| 21 | initial meeting and then from there set up followup | 15:12:01 |
| 22 | meetings or calls. | 15:12:04 |
| 23 | Q.   Okay.  All right.  So thanks for that kind | 15:12:04 |
| 24 | of little summary.  I want to kind of unpack a few | 15:12:06 |
| 25 | things now. | 15:12:09 |

Page 197

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   And you don't know whether it was in | 15:44:19 |
| 2 | person or over the phone? | 15:44:20 |
| 3 | A.   Correct. | 15:44:26 |
| 4 | Q.   Okay.  And then you see a little bit below | 15:44:32 |
| 5 | it says "Finjan provided further notice of Finjan's | 15:44:34 |
| 6 | patents and Juniper's infringements of those patents | 15:44:39 |
| 7 | during a November 2015 phone call between John | 15:44:42 |
| 8 | Garland of Finjan and Mr. Coonan of Juniper.  During | 15:44:45 |
| 9 | this call Mr. Garland stated that Finjan had at | 15:44:49 |
| 10 | least six patents that Finjan believed Juniper | 15:44:52 |
| 11 | infringed and had claim charts directed to Juniper's | 15:44:56 |
| 12 | security products, including the SRX gateways and | 15:45:00 |
| 13 | Sky ATP --" | 15:45:05 |
| 14 | A.   Uh-huh. | 15:45:07 |
| 15 | Q.   "-- and can share them with Juniper so | 15:45:07 |
| 16 | long as Juniper treated the charts as confidential." | 15:45:09 |
| 17 | Do you see that? | 15:45:12 |
| 18 | A.   Yes. | 15:45:13 |
| 19 | Q.   During your phone call did you identify | 15:45:18 |
| 20 | any of those six patent numbers? | 15:45:19 |
| 21 | A.   So I -- I'm fairly certain I shared the | 15:45:30 |
| 22 | '494 and the 1 -- '154, and he had the '968, and all | 15:45:40 |
| 23 | of those were in -- converted to the new format. | 15:45:48 |
| 24 | And there is one other patent that's not | 15:45:54 |
| 25 | listed here that's also claim charted that makes up | 15:46:00 |

Page 211

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | the sixth patent, I want to say '086 or something, | 15:46:03 |
| 2 | but I'm doing that from memory, so it's soft. | 15:46:11 |
| 3 | Q.   So it's your testimony that you're fairly | 15:46:18 |
| 4 | certain that you shared the specific patent numbers | 15:46:21 |
| 5 | of the '494, '154, '968 and -- | 15:46:24 |
| 6 | A.   '968 he already had.  But the reason I | 15:46:30 |
| 7 | recall it is -- is, you know, it was the strange | 15:46:33 |
| 8 | call where I was really trying to convince Scott on | 15:46:38 |
| 9 | behalf of Juniper that we were legit.  Like we had | 15:46:42 |
| 10 | engineers, we had done analysis, and it was worth -- | 15:46:47 |
| 11 | it was worth his time and effort. | 15:46:55 |
| 12 | It was a serious, you know, a serious | 15:46:57 |
| 13 | outreach to Juniper to engage and similar to that we | 15:47:00 |
| 14 | were engaging with others in the industry to have | 15:47:06 |
| 15 | this exchange of information. | 15:47:09 |
| 16 | And we were open to his feedback or | 15:47:09 |
| 17 | comments or non-infringement arguments or whatever | 15:47:12 |
| 18 | he wanted to present.  But we wanted to at least get | 15:47:14 |
| 19 | an opportunity to present the case. | 15:47:17 |
| 20 | And so, you know, this is stealing.  If | 15:47:19 |
| 21 | I -- you know, so -- so there is an unwillingness to | 15:47:22 |
| 22 | do it under an NDA.  So I'm trying to probe around | 15:47:24 |
| 23 | to try and figure out how else can we do it, how can | 15:47:28 |
| 24 | we get this where rather than giving us this | 15:47:31 |
| 25 | attitude of disdain and unworthiness what we can | 15:47:36 |

Page 212

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | kind of get over this hurdle and convince you that, | 15:47:40 |
| 2 | you know, we have a legitimate claim of infringement | 15:47:43 |
| 3 | and we just want to present it and see if we can | 15:47:46 |
| 4 | reach an amicable resolution. | 15:47:48 |
| 5 | And so by sharing a little bit more | 15:47:51 |
| 6 | information, not sharing all six, but giving him an | 15:47:53 |
| 7 | idea of the patents we had and the products that | 15:47:56 |
| 8 | were infringing, you know, the hope was that I could | 15:47:58 |
| 9 | turn him to say like yeah, okay, I'll -- I'll | 15:48:02 |
| 10 | take -- we'll take the meeting. | 15:48:06 |
| 11 | But you know, it gets awkward when he | 15:48:08 |
| 12 | said, you know, "We are never going to sign an NDA, | 15:48:12 |
| 13 | we have an extremely complex trade secret process." | 15:48:16 |
| 14 | Because I was saying "Well, how does your process | 15:48:20 |
| 15 | work?  If I mail you the -- a claim chart, what | 15:48:23 |
| 16 | happens to it?" | 15:48:26 |
| 17 | He's like "Well, it's trade secret and | 15:48:26 |
| 18 | it's -- you know, it's this expansive process that I | 15:48:29 |
| 19 | can't reveal." | 15:48:32 |
| 20 | And I was just saying "Well, what happens | 15:48:34 |
| 21 | with the information?  Does it -- like you call me | 15:48:36 |
| 22 | in a year from now or six weeks from now?  Like I'm | 15:48:39 |
| 23 | trying to get a sense of -- of timeframe." | 15:48:41 |
| 24 | And you know, his answer is -- because we | 15:48:45 |
| 25 | were debating this, seriously debating whether we | 15:48:48 |

Page 213

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | would send one additional one which I thought was in | 15:48:51 |
| 2 | a better format and a more compelling claim chart | 15:48:53 |
| 3 | format. | 15:48:56 |
| 4 | And you know, it kind of ends when -- or | 15:48:58 |
| 5 | at least, you know, when he says he is -- he would | 15:49:02 |
| 6 | wouldn't honor it in terms of its confidentiality | 15:49:05 |
| 7 | and he would share it, he would absolutely share it | 15:49:07 |
| 8 | with Finjan's defendants. | 15:49:10 |
| 9 | And so... | 15:49:12 |
| 10 | Q.   Why did Finjan care if it got shared with | 15:49:15 |
| 11 | other defendants? | 15:49:17 |
| 12 | MS. KOBIALKA:  Objection to form. | 15:49:19 |
| 13 | THE WITNESS:  So how would Juniper feel if | 15:49:22 |
| 14 | I published the infringement on the Website?  So I | 15:49:24 |
| 15 | think -- I think there is a -- a civil way to handle | 15:49:27 |
| 16 | this kind of issue.  Right?  And I think I have | 15:49:32 |
| 17 | handled it for 25 years in a fashion where it can be | 15:49:35 |
| 18 | done and it can be done with and without NDA, to be | 15:49:38 |
| 19 | honest. | 15:49:41 |
| 20 | But I think that's why you would ask the | 15:49:46 |
| 21 | question like what if I give you the information, | 15:49:48 |
| 22 | what are you going to do with it. | 15:49:50 |
| 23 | And it's not an answer that I have | 15:49:52 |
| 24 | typically heard or have heard in the past, which is | 15:49:54 |
| 25 | I have certain suppliers and I may want to share it | 15:49:57 |

Page 214

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | with my suppliers.  This was an overt "No, I'm going | 15:50:00 |
| 2 | to share it, publish it, I'd like to put Finjan on | 15:50:04 |
| 3 | television."  It's just a disrespectful answer.  And | 15:50:09 |
| 4 | as I said, it had a bias. | 15:50:13 |
| 5 | So I went back to Meredith saying I didn't | 15:50:15 |
| 6 | love the call, but I'm not giving up.  You know, | 15:50:17 |
| 7 | it's the same kind of thing, I forget when the email | 15:50:23 |
| 8 | got written.  We have a legitimate case, we are | 15:50:25 |
| 9 | transparent, we'll show you how the patents are | 15:50:29 |
| 10 | reading on your products and services. | 15:50:32 |
| 11 | And if you want me to still deal with | 15:50:34 |
| 12 | Scott, like it wasn't a great start, definitely got | 15:50:36 |
| 13 | off on the left foot.  But if you want me to deal | 15:50:38 |
| 14 | with Scott, I'm happy to deal with Scott.  And like | 15:50:41 |
| 15 | I said, she said "Yeah, you should deal with Scott." | 15:50:43 |
| 16 | At that point Juhlie made a decision and | 15:50:46 |
| 17 | said "Let me have coffee or lunch or something with | 15:50:48 |
| 18 | Meredith, let me see if we can get this kind of | 15:50:50 |
| 19 | animosity or tension out of the room or discussion." | 15:50:53 |
| 20 | Q.   When you had your call with Mr. Coonan, | 15:50:56 |
| 21 | did you tell him about any specific infringement | 15:51:02 |
| 22 | claims related to the '494 for specific products? | 15:51:08 |
| 23 | MS. KOBIALKA:  Objection, form. | 15:51:12 |
| 24 | THE WITNESS:  I know for sure going into | 15:51:38 |
| 25 | the call that I knew it, what the three patents were | 15:51:39 |

Page 215

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | mapped to.  And, you know, the '968 is somewhat a | 15:51:43 |
| 2 | nonstarter because the parties kind of disputing | 15:51:53 |
| 3 | over it. | 15:51:57 |
| 4 | But I believe I gave him a product for | 15:51:57 |
| 5 | each, the '154 and the '494. | 15:52:00 |
| 6 | BY MS. CARSON: | 15:52:05 |
| 7 | Q.  Did you describe Finjan's infringement | 15:52:06 |
| 8 | theory for either of those patents other than the | 15:52:08 |
| 9 | '968 which Juhlie had already had a claim chart for? | 15:52:10 |
| 10 | MS. KOBIALKA:  Objection to form. | 15:52:14 |
| 11 | THE WITNESS:  No.  I mean, again, I mean, | 15:52:15 |
| 12 | I was, you know, my preference was to actually meet, | 15:52:18 |
| 13 | our preference, Finjan's preference was to meet with | 15:52:22 |
| 14 | Juniper like we met with other companies and go | 15:52:25 |
| 15 | through this and not just go three the three | 15:52:27 |
| 16 | patents, but to go through all six.  And we were | 15:52:29 |
| 17 | just trying to schedule and agree on a mutual | 15:52:32 |
| 18 | process of how we can exchange this information. | 15:52:34 |
| 19 | But as I said, you know, the reason to | 15:52:37 |
| 20 | share the information was to try to get some | 15:52:39 |
| 21 | credibility, seemed like we lacked credibility, and | 15:52:40 |
| 22 | maybe Scott was unimpressed with the first two | 15:52:44 |
| 23 | meetings, I'm not sure, I don't know what his | 15:52:47 |
| 24 | perspective was. | 15:52:48 |
| 25 | But I was trying to, as I said, provide | 15:52:50 |

Page 216

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | legitimacy and come up with a format that would work | 15:52:52 |
| 2 | for both companies to allow this exchange. | 15:52:56 |
| 3 | And so for sure I can recall, you know, | 15:53:00 |
| 4 | sharing some information as a way, meaning patents | 15:53:04 |
| 5 | and specific products, as a way of convincing him | 15:53:07 |
| 6 | that we had legit analysis and we were willing to | 15:53:10 |
| 7 | share it. | 15:53:12 |
| 8 | BY MS. CARSON: | 15:53:14 |
| 9 | Q.  Can you describe for me everything you | 15:53:15 |
| 10 | remember specifically about disclosing the '494 | 15:53:17 |
| 11 | patent during your phonecall with Mr. Coonan? | 15:53:21 |
| 12 | MS. KOBIALKA:  Objection to form. | 15:53:24 |
| 13 | THE WITNESS:  So it would be the '494 and | 15:53:28 |
| 14 | it relates to the SRX gateways or Sky ATP, I don't | 15:53:29 |
| 15 | recall which it is, have to look at the claim chart, | 15:53:33 |
| 16 | and then the vice versa for the '154.  The one was | 15:53:38 |
| 17 | mapped to SRX and one was mapped to the ATP. | 15:53:43 |
| 18 | BY MS. CARSON: | 15:53:48 |
| 19 | Q.  Can you recall anything else that you | 15:53:54 |
| 20 | specifically told Mr. Coonan during your phone call | 15:53:56 |
| 21 | about the '494 or '154 patents? | 15:54:00 |
| 22 | MS. KOBIALKA:  Objection, form. | 15:54:03 |
| 23 | THE WITNESS:  No.  As I stated, I knew | 15:54:09 |
| 24 | that I had those three ready to go, I knew I had | 15:54:10 |
| 25 | three more that were going to be converted to the | 15:54:13 |

Page 217

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | new format that we had high confidence on | 15:54:15 |
| 2 | infringement. | 15:54:18 |
| 3 | And the whole plan was to get a meeting | 15:54:20 |
| 4 | scheduled where we could present it we were just | 15:54:22 |
| 5 | debating about who should be present, whether | 15:54:24 |
| 6 | Juniper engineers would be present, whether -- well, | 15:54:26 |
| 7 | had questions, he had questions whether Finjan even | 15:54:33 |
| 8 | had engineers, which of course we did, and his | 15:54:35 |
| 9 | comment was well, I'd like to meet the inventor, can | 15:54:39 |
| 10 | you bring the inventor to the meeting. | 15:54:43 |
| 11 | And I said no, I'm not bringing the | 15:54:45 |
| 12 | inventor to the meeting.  I did licensing for AT&T | 15:54:47 |
| 13 | for a lot of patents where really smart people are | 15:54:52 |
| 14 | the inventor, and we used the same thing, we used | 15:54:55 |
| 15 | knowledgeable engineers in the industry to explain | 15:54:57 |
| 16 | the patent or to help us in the analysis of these | 15:55:02 |
| 17 | patents and answer questions at these meetings, and | 15:55:05 |
| 18 | there is no reason for the inventor, which in this | 15:55:09 |
| 19 | case is in Israel, to fly across for this meeting. | 15:55:11 |
| 20 | So I mean, you know, as I said, it was | 15:55:15 |
| 21 | kind of a -- a strange call in some respects.  Not | 15:55:17 |
| 22 | on my part, I don't think. | 15:55:24 |
| 23 | But yeah, as I stated in the emails | 15:55:27 |
| 24 | followup there is certainly a bias or prejudice or | 15:55:30 |
| 25 | something that existed and I don't know what it's | 15:55:33 |

Page 218

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | from. | 15:55:34 |
| 2 | BY MS. CARSON: | 15:55:35 |
| 3 | Q.   Did Mr. Coonan ask you for any additional | 15:55:41 |
| 4 | information about the patents that you supposedly | 15:55:44 |
| 5 | identified in this phone call? | 15:55:49 |
| 6 | MS. KOBIALKA:  Objection to form. | 15:55:51 |
| 7 | THE WITNESS:  Suppose it's a nice word, I | 15:55:58 |
| 8 | won't take offense to that. | 15:55:59 |
| 9 | I think I asked if there was anything | 15:56:03 |
| 10 | additional he wanted to add.  I already told him I | 15:56:05 |
| 11 | would think about whether we would mail the claim | 15:56:08 |
| 12 | chart, definitely he was off-putting when he was | 15:56:10 |
| 13 | planning to share it with others.  He had nothing | 15:56:14 |
| 14 | additional to add. | 15:56:22 |
| 15 | I had asked him if we could get a business | 15:56:26 |
| 16 | person involved that he had litigation in his title, | 15:56:28 |
| 17 | and he seemed to come at it with offense, a | 15:56:30 |
| 18 | litigator's attitude.  Not all, some. | 15:56:34 |
| 19 | Yeah.  So just kind of it ended.  I | 15:56:47 |
| 20 | remember it ended sort of abruptly.  It was... | 15:56:49 |
| 21 | BY MS. CARSON: | 15:56:53 |
| 22 | Q.   Did you ever send Mr. Coonan or anyone at | 15:56:53 |
| 23 | Juniper the claim charts that Finjan had prepared | 15:56:55 |
| 24 | for the '494 or '154 patents? | 15:57:00 |
| 25 | A.   We didn't send them any.  We were | 15:57:03 |

Page 219

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | confident that based on the meetings and his own | 15:57:05 |
| 2 | prior art analysis on the Finjan portfolio and | 15:57:10 |
| 3 | his -- his own admitted knowledge of our litigations | 15:57:13 |
| 4 | and the fact that he was talking to our defendants | 15:57:18 |
| 5 | that he knew our patents and the patents that we | 15:57:20 |
| 6 | were litigating under and most likely the patents he | 15:57:22 |
| 7 | was infringing on beyond the three that we had | 15:57:25 |
| 8 | identified. | 15:57:28 |
| 9 | And then, you know, and I think there is | 15:57:29 |
| 10 | some difficulty of whether we were dealing with | 15:57:41 |
| 11 | Juniper or multiple parties, like we were still | 15:57:43 |
| 12 | trying to figure that out based on some of his | 15:57:45 |
| 13 | comments. | 15:57:48 |
| 14 | But I think in our mind we felt that he | 15:57:49 |
| 15 | knew enough about our patent portfolio, our | 15:57:51 |
| 16 | litigations at the time that were active that, you | 15:57:53 |
| 17 | know, I don't -- I don't -- we would have sent it if | 15:57:57 |
| 18 | we thought we needed it.  I think we thought we were | 15:58:00 |
| 19 | fine, that he knew what -- he knew what we had, and | 15:58:03 |
| 20 | we think, we are guessing, but we are thinking he | 15:58:08 |
| 21 | knew he had a problem and he needed a license. | 15:58:10 |
| 22 | I just don't think he likes our business | 15:58:15 |
| 23 | model or something about Finjan. | 15:58:17 |
| 24 | Q.   Did Finjan ever send Juniper a claim chart | 15:58:20 |
| 25 | for any of the patents-in-suit prior to the | 15:58:26 |

Page 220

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | litigation being filed? | 15:58:30 |
| 2 | MS. KOBIALKA:  Objection, form. | 15:58:33 |
| 3 | THE WITNESS:  No.  I think you know the | 15:58:36 |
| 4 | answer to that. | 15:58:37 |
| 5 | BY MS. CARSON: | 15:58:45 |
| 6 | Q.   Did you ever send Mr. Coonan an email or | 15:58:45 |
| 7 | letter confirming what you had spoken about on the | 15:58:49 |
| 8 | November 2015 phone call? | 15:58:54 |
| 9 | A.   No.  I tend to follow-up with Meredith, | 15:58:57 |
| 10 | it's pretty clear, and it definitely refers to that | 15:59:01 |
| 11 | call. | 15:59:03 |
| 12 | Q.   I mean, you didn't identity the '494 or | 15:59:04 |
| 13 | '154 patents in that followup correspondence, did | 15:59:07 |
| 14 | you? | 15:59:09 |
| 15 | A.   Correct. | 15:59:10 |
| 16 | Q.   Do you have any notes from your phone call | 15:59:11 |
| 17 | with Mr. Coonan? | 15:59:12 |
| 18 | THE WITNESS:  I need help on this one.  I | 15:59:31 |
| 19 | have -- | 15:59:34 |
| 20 | MS. KOBIALKA:  Is it a privilege issue? | 15:59:36 |
| 21 | THE WITNESS:  Yes. | 15:59:37 |
| 22 | MS. KOBIALKA:  Okay.  So can I help you | 15:59:38 |
| 23 | through this?  Or -- otherwise he is not going to | 15:59:40 |
| 24 | answer the question -- which is she is only asking a | 15:59:44 |
| 25 | yes-or-no question, so either you can answer yes or | 15:59:46 |

Page 221

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | no or you don't know. | 15:59:49 |
| 2 | I'm not trying to direct his answer, but | 15:59:50 |
| 3 | I'm trying to work through the privilege.  If you | 15:59:52 |
| 4 | are going to object, Counsel, I'll just stop and | 15:59:53 |
| 5 | I'll just make an instruction. | 15:59:57 |
| 6 | MS. CARSON:  So I'm just trying to think | 16:00:02 |
| 7 | through the issue because if he took like | 16:00:03 |
| 8 | contemporaneous notes with a phone call he had with | 16:00:05 |
| 9 | Juniper, I'm not sure how that would fall within the | 16:00:08 |
| 10 | scope of privilege. | 16:00:11 |
| 11 | MS. KOBIALKA:  If his question's for | 16:00:13 |
| 12 | counsel, absolutely.  I think absolutely if you | 16:00:14 |
| 13 | would take notes for purposes of getting legal | 16:00:17 |
| 14 | advice, I do think that those notes -- | 16:00:19 |
| 15 | MS. CARSON:  Hmm. | 16:00:24 |
| 16 | MS. KOBIALKA:  -- would be privileged, | 16:00:24 |
| 17 | especially like if these are the issues I need to | 16:00:25 |
| 18 | talk about with counsel. | 16:00:27 |
| 19 | MS. CARSON:  Okay.  Well, we'll just start | 16:00:29 |
| 20 | with a yes or no, do they exist. | 16:00:30 |
| 21 | MS. KOBIALKA:  She is just asking whether | 16:00:32 |
| 22 | or not they exist.  You can answer that yes or no if | 16:00:33 |
| 23 | you know one way or the other, you don't know, and | 16:00:35 |
| 24 | then we'll take from it there.  I don't want you to | 16:00:38 |
| 25 | expound on it, is -- because I think that does get | 16:00:40 |

Page 222

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | into privilege issues. | 16:00:43 |
| 2 | THE WITNESS:  I documented the summary of | 16:00:52 |
| 3 | that call -- | 16:00:53 |
| 4 | MS. KOBIALKA:  Well, okay, so now, I want | 16:00:54 |
| 5 | you to very careful because it starts to get into | 16:00:56 |
| 6 | privilege issues. | 16:01:00 |
| 7 | So you can answer the question yes or no | 16:01:00 |
| 8 | or if you don't know, one way or the other.  But I | 16:01:03 |
| 9 | don't want to get -- | 16:01:06 |
| 10 | THE WITNESS:  I'm not going to get into | 16:01:08 |
| 11 | substance, but just -- | 16:01:09 |
| 12 | MS. KOBIALKA:  She is only asking does it | 16:01:10 |
| 13 | exist.  Otherwise I'm going to instruct you not to | 16:01:11 |
| 14 | answer. | 16:01:14 |
| 15 | THE WITNESS:  Yes, it exists. | 16:01:17 |
| 16 | MS. KOBIALKA:  Okay. | 16:01:18 |
| 17 | BY MS. CARSON: | 16:01:18 |
| 18 | Q.  Did you review it before your deposition | 16:01:18 |
| 19 | today? | 16:01:20 |
| 20 | MS. KOBIALKA:  Objection to form. | 16:01:26 |
| 21 | THE WITNESS:  Uh-huh. | 16:01:29 |
| 22 | BY MS. CARSON: | 16:01:30 |
| 23 | Q.  Did it refresh your recollection as to | 16:01:30 |
| 24 | what occurred on the call? | 16:01:31 |
| 25 | MS. KOBIALKA:  Objection to form. | 16:01:33 |

Page 223

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | THE WITNESS:  That call's pretty bright. | 16:01:37 |
| 2 | That call's pretty bright, unique. | 16:01:39 |
| 3 | BY MS. CARSON: | 16:01:41 |
| 4 | Q.   So that wasn't an answer to the question. | 16:01:41 |
| 5 | Did reviewing your notes from the call | 16:01:43 |
| 6 | refresh your recollection as to what occurred on the | 16:01:45 |
| 7 | call? | 16:01:48 |
| 8 | MS. KOBIALKA:  Objection to form. | 16:01:48 |
| 9 | THE WITNESS:  Yes.  Given it's November of | 16:01:52 |
| 10 | 2015, yes. | 16:01:54 |
| 11 | MS. CARSON:  Okay.  So Counsel, we would | 16:01:56 |
| 12 | request that that be produced given that it | 16:01:57 |
| 13 | refreshed the recollection of the Rule 30(b)(6) | 16:01:58 |
| 14 | witness. | 16:02:01 |
| 15 | MS. KOBIALKA:  He just said his memory was | 16:02:02 |
| 16 | very bright from the call.  He didn't say -- | 16:02:04 |
| 17 | MS. CARSON:  But he also said yes, it did | 16:02:06 |
| 18 | refresh his recollection.  We can take it up | 16:02:08 |
| 19 | after -- after the deposition. | 16:02:10 |
| 20 | Q.   Are you aware of any evidence that Juniper | 16:02:52 |
| 21 | had notice of the '780 patent prior to Finjan filing | 16:02:54 |
| 22 | this lawsuit? | 16:02:59 |
| 23 | MS. KOBIALKA:  Objection to form. | 16:03:00 |
| 24 | THE WITNESS:  I need the question again, | 16:03:06 |
| 25 | sorry. | 16:03:07 |

Page 224

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Did you have any involvement in | 16:54:18 |
| 2 | negotiating the Intel license? | 16:54:19 |
| 3 | A.   No. | 16:54:20 |
| 4 | MS. CARSON:  I think we can take a quick | 16:54:35 |
| 5 | break, I'm almost done, I just need to look through | 16:54:37 |
| 6 | my notes and make sure I haven't missed anything. | 16:54:40 |
| 7 | MS. KOBIALKA:  Okay. | 16:54:42 |
| 8 | THE VIDEOGRAPHER:  Going off record at | 16:54:44 |
| 9 | 4:55 P.M. | 16:54:45 |
| 10 | (Whereupon, a recess was taken | 16:54:46 |
| 11 | commencing at 4:55 P.M. and | 16:54:46 |
| 12 | concluding at 5:01 P.M.) | 16:54:46 |
| 13 | THE VIDEOGRAPHER:  On record at 5:01 P.M. | 17:00:34 |
| 14 | BY MS. CARSON: | 17:00:39 |
| 15 | Q.   I just want to return for a moment to the | 17:00:39 |
| 16 | conversation that you had with Mr. Coonan in | 17:00:42 |
| 17 | October -- or in November of 2015, and you said that | 17:00:44 |
| 18 | you looked at some notes from that call prior to | 17:00:50 |
| 19 | your deposition. | 17:00:56 |
| 20 | Correct? | 17:00:58 |
| 21 | A.   Yeah.  So I mean, we looked at a lot of | 17:00:59 |
| 22 | documents that were prepared, and so the negotiation | 17:01:07 |
| 23 | history is kind of well documented in the | 17:01:13 |
| 24 | interrogatories. | 17:01:16 |
| 25 | The call stands on its own.  I mean, the | 17:01:17 |

Page 252

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | call is a bright call that's a unique call between | 17:01:19 |
| 2 | two individuals with a dozen or plus years of | 17:01:24 |
| 3 | experience in this industry.  That was the point I | 17:01:33 |
| 4 | was making when I was saying it was a bright call. | 17:01:35 |
| 5 | Q.   Okay. | 17:01:37 |
| 6 | A.   It's not -- it's nothing specific outside | 17:01:38 |
| 7 | of the documents that were prepared for me to review | 17:01:45 |
| 8 | from the deposition that was reviewed. | 17:01:48 |
| 9 | Q.   Well, earlier you testified that you | 17:01:51 |
| 10 | looked at your notes from that call. | 17:01:52 |
| 11 | Correct?  That was your testimony? | 17:01:57 |
| 12 | MS. KOBIALKA:  Objection, form. | 17:02:00 |
| 13 | THE WITNESS:  Yeah, you have to go back to | 17:02:00 |
| 14 | the testimony, because it's like -- it's like a | 17:02:01 |
| 15 | lively exchange and I was saying it's a bright call. | 17:02:03 |
| 16 | BY MS. CARSON: | 17:02:09 |
| 17 | Q.   Okay.  Well, I'll just ask my questions | 17:02:10 |
| 18 | just to get them on the record.  Do you know if your | 17:02:11 |
| 19 | notes from that call specifically reference any | 17:02:16 |
| 20 | patent numbers? | 17:02:20 |
| 21 | MS. KOBIALKA:  So to the extent that those | 17:02:22 |
| 22 | are privileged or attorney-client communications, | 17:02:24 |
| 23 | work product, I'm going to instruct you not to | 17:02:30 |
| 24 | answer. | 17:02:32 |
| 25 | THE WITNESS:  Okay.  It's -- it's -- it's | 17:02:36 |

Page 253

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | of attorney-client communication or work product, | 17:04:06 |
| 2 | I'm going to instruct you not to answer. | 17:04:07 |
| 3 | THE WITNESS:  Yeah, I'll have to follow | 17:04:14 |
| 4 | legal advice. | 17:04:15 |
| 5 | BY MS. CARSON: | 17:04:16 |
| 6 | Q.   You are going to follow your attorney's | 17:04:16 |
| 7 | instruction not to answer that question? | 17:04:18 |
| 8 | A.   Yes. | 17:04:20 |
| 9 | MS. CARSON:  Okay.  So subject to | 17:04:22 |
| 10 | resolving some of these privilege issues, I'm | 17:04:24 |
| 11 | finished for today. | 17:04:27 |
| 12 | MS. KOBIALKA:  So I just have a couple | 17:04:28 |
| 13 | questions. | 17:04:30 |
| 14 | EXAMINATION | 17:04:30 |
| 15 | BY MS. KOBIALKA: | 17:04:30 |
| 16 | Q.   Did you remember the details of your call | 17:04:30 |
| 17 | with Mr. Coonan in November 2015 without looking at | 17:04:33 |
| 18 | documents? | 17:04:39 |
| 19 | A.   Yeah.  This is a pretty unique call.  I | 17:04:42 |
| 20 | mean, I have testified to this. | 17:04:44 |
| 21 | Q.   Okay.  So -- | 17:04:57 |
| 22 | A.   Yeah.  I mean, it's -- it's, you know, I | 17:04:59 |
| 23 | have been doing this for 25 years.  It's a unique | 17:05:01 |
| 24 | call.  It stands out. | 17:05:04 |
| 25 | Q.   So you remembered the details of that | 17:05:06 |

Page 255

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | call. | 17:05:08 |
| 2 | Is that right? | 17:05:09 |
| 3 | A.   Yeah. | 17:05:10 |
| 4 | Q.   And did you need to review your notes to | 17:05:11 |
| 5 | prepare for your deposition today to testify about | 17:05:14 |
| 6 | the call? | 17:05:16 |
| 7 | A.   No. | 17:05:20 |
| 8 | Q.   Earlier you were referring to there was a | 17:05:28 |
| 9 | federal circuit decision, and I think you said it | 17:05:32 |
| 10 | was in connection with Symantec.  Did you mean Blue | 17:05:35 |
| 11 | Code? | 17:05:38 |
| 12 | A.   I'm sorry, I mean Blue Code.  Yeah.  I | 17:05:39 |
| 13 | meant Blue Code.  Symantec acquires Blue Code when | 17:05:45 |
| 14 | the cases are outstanding. | 17:05:49 |
| 15 | MS. KOBIALKA:  I don't have any further | 17:05:51 |
| 16 | questions. | 17:05:52 |
| 17 | MS. CARSON:  I have an additional | 17:05:52 |
| 18 | question. | 17:05:53 |
| 19 | FURTHER EXAMINATION | 17:05:54 |
| 20 | BY MS. CARSON: | 17:05:54 |
| 21 | Q.   Did you discuss the substance of your | 17:05:55 |
| 22 | testimony with your attorney on any breaks today? | 17:05:56 |
| 23 | A.   No. | 17:05:58 |
| 24 | MS. CARSON:  Okay. | 17:06:03 |
| 25 | MS. KOBIALKA:  So we have agreed to mark | 17:06:04 |

Page 256