**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CALIFORNIA 92660-6324

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7189
JGlucoft@irell.com

June 3, 2019

Honorable Thomas S. Hixson
U.S. District Court Magistrate Judge

    Re:    *Finjan, Inc. v. Juniper Networks, Inc.*,
            Case No. 3:17-cv-05659-WHA (N.D. Cal.)

Dear Judge Hixson:

    The parties present this joint statement regarding defendant Juniper Networks, Inc.'s ("Juniper") motion to quash Finjan's noticed deposition of Shlomo Touboul in Israel. Counsel for Juniper and counsel for Finjan attest that they have met and conferred by telephone[1] in good faith to resolve this dispute prior to filing this letter. *See* Ex. 1.

                              Respectfully submitted,

                              /s/ Joshua Glucoft
                              Joshua Glucoft
                              IRELL & MANELLA LLP
                              *Attorneys for Defendant*
                              Juniper Networks, Inc.

                              */s/ Kristopher Kastens*
                              Kristopher Kastens
                              KRAMER LEVIN NAFTALIS & FRANKEL LLP
                              *Attorneys for Plaintiff*
                              Finjan, Inc.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

---

[1] Counsel for Juniper is located outside of the Bay Area.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

**Juniper's Position**

At the first Finjan/Juniper trial in December of last year, Finjan tried to convince Judge Alsup to permit testimony by video from Shlomo Touboul, Finjan's founder and named inventor on the majority of its asserted patents. Judge Alsup flatly refused, telling Finjan that they needed to bring Mr. Touboul to the trial if they wanted his testimony.

> **MR. ANDRE:** He [Mr. Touboul] lives in Israel.
> **THE COURT:** Bring him. He's your guy. He's your founder. He works for you. You can get him on an airplane and get him over here. You're not going to get away with doing that, no.
> **MR. ANDRE:** Your Honor, he has blood clot issues in his legs.
> **THE COURT:** Too bad. Too bad.

Dkt. 336 (Trial Tr.) at 205:2-9.

Now, in a clear effort to circumvent Judge Alsup's prior ruling, Finjan has served a deposition subpoena for Mr. Touboul, seeking to depose him in Israel on June 11. There are two main problems with Finjan's ploy: First, Mr. Touboul's deposition would exceed the 10-deposition limit set by the Federal Rules of Civil Procedure (and Finjan has not even sought, much less obtained, leave for any additional depositions); second Finjan agreed in the Joint Case Management Statement ("JCMS") that depositions of party employees would all take place in the Northern District of California, unless otherwise agreed (and there has been no such agreement in this case, despite Juniper's willingness to schedule this deposition outside of the Northern District).

FRCP 30(a)(2) requires a party to seek leave if it wants to take more than 10 depositions. As illustrated below, Finjan has already taken what amounts to 9½ depositions of fact witness—eight individual witnesses, and two Rule 30(b)(6) witnesses (one under 3½ hours and one over 3½ hours).[2] Because individual depositions count as a full deposition, Finjan cannot conduct any additional individual depositions—nor any Rule 30(b)(6) depositions in excess of 3½ hours—without leave.

| Deponent | Count | Date |
|---|---|---|
| Yuly Tenorio | 1 | 5/9/2018 |
| Rakesh Manocha | 1 | 5/16/2018 |
| Raju Manthena | 1 | 5/30/2018 |
| Chandra Nagarajan | 1 | 5/31/2018 |
| Meredith McKenzie | 1 | 11/14/2018 |
| Michael Bushong | 1 | 11/15/2018 |
| Scott Coonan | 1 | 11/16/2018 |
| Shelly Gupta | 1 | 11/16/2018 |
| **TOTAL** | **8** | |

| Deponent | Count | Date | Length of Deposition |
|---|---|---|---|
| Alex Icasiano | 0.5 | 11/30/2018 | Finjan time: *3 hours 29 minutes 47 seconds* Juniper time: *4 minutes 43 seconds* |
| Khurram Islah | 1 | 2/7/2019 | Finjan time: *3 hours 30 minutes 18 seconds* Juniper time: *1 minute 8 seconds* |
| **TOTAL** | **1.5** | | |

---

[2] Finjan has actually taken another 30(b)(6) deposition of Shelly Gupta on 12/7/2018, which lasted approximately 3 hours. Juniper and Finajn disagree as to whether this deposition counts towards Finjan's 10-deposition limit, but this dispute is immaterial for purposes of this motion because Finjan would still exceed the 10-deposition limit by deposing Mr. Touboul.

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Although Juniper has repeatedly asked Finjan to identify why good cause exists for additional individual depositions, Finjan has refused to provide this information to Juniper. Ex. 2 (Correspondence) at 1-2. Rather, Finjan has argued that none of the Rule 30(b)(6) depositions it has taken count against the 10-deposition limit because Judge Alsup's Standing Order states that "[e]ach witness-designee deposed for one half-day or more in a FRCP 30(b)(6) deposition shall count as a single deposition for purposes of the deposition limit . . . ." Standing Order ¶ 32(b); Ex. 2 (Correspondence) at 2-3. Juniper understands this provision to mean that a 30(b)(6) deposition that lasts less than half a day will not count as a full-day deposition, so that two half-day 30(b)(6) depositions could be combined to count as a single day. Finjan, on the other hand, claims that Rule 30(b)(6) depositions that last less than half a day simply do not count at all against the FRCP limit. Thus, Finjan argues that it is still well under the FRCP limit because it disregards each of its half–day 30(b)(6) depositions.

In addition Finjan ignores the February 7, 2019 Rule 30(b)(6) deposition of Khurram Islah that lasted over 3½ hours. Finjan claims (incorrectly) that the Islah deposition was under 3½ hours after subtracting time spent during Juniper's re-direct examination. In fact, Juniper's examination took less than 2 minutes, and Finjan questioned the witness for its full 3½ hours, as shown in the table above.[3]

Finjan also argues that Judge Alsup explicitly ordered Finjan to depose Mr. Touboul. This is false; Judge Alsup told Finjan that it would be allowed to play videotaped testimony of its witnesses who could not come to the trial *due to a conflict with another Finjan's trial* before Judge Bencivengo. *See* Dkt. 465 (5/9/19 Hr. Tr.) at 46:23-49:7 (and indeed, Finjan's witnesses already have videotaped deposition testimony from earlier in the case). As both that trial and the Juniper trial are currently scheduled for late October—more than 5 months away—there is no reason at this time to believe Mr. Touboul will be unable to personally attend both. Indeed, Finjan has not even represented that Mr. Touboul will be attending the other trial, much less that he would have a conflict on the dates he would be scheduled to testify. Contrary to Finjan's argument, Judge Alsup did not grant Finjan *carte blanche* to present testimony from its witnesses by videotape, much less permit it an unlimited number of depositions to do so.

Moreover, even if Finjan had sought and obtained leave to take an additional deposition (which it has not), Finjan would still be required to meet and confer with Juniper about the time and location of this deposition (which it has also failed to do). *See* Judge Alsup's Standing Order at ¶ 26 (requiring parties to "consult in advance with opposing counsel . . . to schedule depositions at *mutually-convenient times and places*.")(emphasis added). Judge Alsup's Order is particularly relevant to this dispute, as the parties had already agreed in the JCMS that "depositions of party employees will occur in a mutually agreeable location *within the Northern District of California, unless otherwise agreed*." Dkt. 31 at 7 (emphasis added). Although Juniper would be willing to conduct Mr. Touboul's deposition in other districts, it would be extremely inconvenient and expensive for Juniper to travel to Israel for this deposition. Despite Judge Alsup's Order and the JCMS, Finjan has been unwilling to discuss other locations (or even dates) for the deposition of its founder and "advisor." Ex. 1 (Correspondence) at 1-4. Juniper thus requests that—even if Finjan does ultimately seek and obtain leave for additional depositions—the Court require Finjan to comply with Judge Alsup's Standing Order and the JCMS.

Finally, Finjan has argued that it is not required to bring Mr. Touboul to the United States because Mr. Touboul is not really a Finjan employee. Ex. 3 (Correspondence). This argument is disingenuous.

---

[3] If the Court allows, Juniper will file the Islah deposition transcript that includes time stamps for the Court to make an independent calculation.

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Finjan currently pays Mr. Touboul over ▓▓▓▓▓ per year as a "consultant and advisor" to Finjan.[4]  (Ex. 4 at FINJAN-JN 414080).  Further, Mr. Touboul's employment contract expressly acknowledges "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (Ex. 5 at FINJAN-JN 412658).  There is thus no merit to the argument that Mr. Touboul was unaware that his work for Finjan might require him to travel abroad, and that might be required to travel to earn his ▓▓▓▓▓ salary.

Finjan's effort to subvert Judge Alsup's prior ruling on Mr. Touboul's testimony—while clever—fails because Finjan has failed to even attempt to comply with the requirements of the FRCP and the JCMS.  If and when it becomes clear that Mr. Touboul will be unavailable to appear at the October 21 trial in this matter *because of a conflict with the trial before Judge Bencivengo*, Juniper will commit to meet and confer with Finjan about taking Mr. Touboul's deposition at a mutually convenient time and location.

### Finjan's Position

Finjan is permitted to depose Mr. Touboul because (1) it was explicitly ordered to do so, (2) his deposition was properly noticed and is compliant with the FRCP and the JCMS, and (3) his testimony is necessary as recognized by the fact that Finjan and Juniper listed him on their initial disclosures.

**A. Finjan Was Ordered to Record the Testimony of Unavailable Witnesses by Video.**

Judge Alsup explicitly ordered Finjan to record the testimony of any unavailable trial witness by video, and Finjan intends to do so.  During the first trial in this case, Finjan learned its lesson when it tried to introduce Mr. Touboul's recorded testimony *from a different case* and was chastised for trying to use testimony from a different case.  Ex. 6 at 204-205.  Finjan provided videotaped testimony from depositions taken in this case, but not from Mr. Touboul because he was not deposed in this case.  The timeline of Judge Alsup's ruling regarding videotaped testimony is instructive:

- December 11, 2018 – Judge Alsup ruled at trial that Finjan could not present Mr. Touboul's testimony by videotape taken in a different case, and stated that if Finjan wanted his testimony at that trial it would have to bring him to trial in person. Dkt. 336 (Trial Tr.) at 204-205 (Ex. 6)
- May 9, 2019 Hearing – Judge Alsup set the current trial date of October 21, 2019, and instructed Finjan to "videotape the testimony" of any unavailable witnesses.  *See, e.g.*, 5/9/19 Hearing Tr. at 48 (Ex. 7).
- May 23, 2019 Order – Judge Alsup ordered "To repeat, Finjan witness(es) with a trial conflict may appear by video." Dkt. 487 at 2 (Ex. 8).

Juniper primary argument for quashing Mr. Touboul's deposition is based on a misrepresentation of Judge Alsup's orders regarding using videotape depositions at trial.  First Juniper provides an incomplete exert of Judge Alsup's order from trial, and argues that Judge Alsup already ruled that Mr. Touboul's testimony could only be in person – not just for the first trial, but in all subsequent trials.  When read in its entirety, however, it is clear that the trial order excluded Mr. Touboul's videotape testimony because it was from a previous litigation – not because the testimony was on videotape. Ex. 6 at 204-205.

---

[4] The terms of Finjan's agreement with Mr. Touboul make him an employee under California law, notwithstanding the boilerplate disclaimer of an employer-employee relationship contained in his agreement.  *See Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903, 962 (2018) ("It is well established, under all of the varied standards that have been utilized for distinguishing employees and independent contractors, that a business cannot unilaterally determine a worker's status simply by assigning the worker the label 'independent contractor' . . .").

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

In fact, the basis for Juniper's objection to Mr. Touboul's videotape deposition was that it was from a different case. Ex. 6 at 204 ("So this is not a deposition that was taken in this case."). Juniper next argues that Judge Alsup's recent orders regarding videotaping Finjan's witnesses somehow excludes Mr. Touboul. The orders do no such thing. Judge Alsup stated at the May 9 hearing:

> "You can videotape the testimony in my case, and I would allow you to present it by videotape. That would be fine. Or just a regular deposition."

Ex. 7 at 48. He then followed up his oral order with a written order stating "To repeat, Finjan witness(es) with a trial conflict may appear by video." Ex. 8 at 2. Finjan, thus, already has a court order requiring it to depose all fact witnesses that may testify in both cases. At a minimum, even though no such showing is required here, Finjan has good cause to proceed because of Mr. Touboul's unavailability.

**B. Finjan Has Depositions Available Under the FRCP and JCMS.**

Finjan has not exhausted its depositions in this case, as it has noticed and taken only 8 depositions. The depositions (both 30(b)(1) and 30(b)(6)) that Finjan noticed are as follows:

| Witness | Date |
|---|---|
| Yuly Tenorio | 5/9/2018 |
| Rakesh Manocha | 5/16/2018 |
| Raju Manthena | 5/30/2018 |
| Chandra Nagarajan | 5/31/2018 |
| Meredith McKenzie | 11/14/2018 |
| Michael Bushong | 11/15/2018 |
| Scott Coonan | 11/16/2018 |
| Shelly Gupta | 11/16/2018 |

Juniper misstates the number of depositions by (1) miscounting how 30(b)(6) depositions count against the total number of depositions pursuant to the Court's Standing Order on depositions, and (2) counting a court-ordered deposition as one of Finjan's noticed depositions. Specifically, Juniper is counting 30(b)(6) depositions that lasted less than 3.5 hours as a full-day of deposition. The detailed Standing Orders instruct that depositions should be added together if <u>the same witness</u> is consecutively deposed on in individual and 30(b)(6) capacities. Standing Orders, ¶ 32(a). There is no such addition requirement for different 30(b)(6) witnesses testifying as to different topics, such as the 30(b)(6) depositions of Mr. Icasiano, Mr. Islah, and Ms. Gupta. Additionally, Juniper's argument that Finjan went over 3.5 hours is incorrect, as Juniper improperly includes its own time on the record in its counts for Mr. Icasiano and Mr. Islah to inflate the length of their depositions. Thus, the depositions of Juniper's corporate designees Mr. Icasiano, Mr. Islah, and Ms. Gupta cannot be combined nor counted.

Juniper is also incorrect that Ms. Gupta's second deposition counts against Finjan's total, as it was specifically ordered by Judge Alsup after Juniper belatedly produced a 17,000 page document on the eve of trial containing damages information that Juniper had previously withheld without cause from discovery. *See* Pretrial Hearing Tr. 76:1-7 ("But if you want to take another deposition on the 17,000 between now and the day of trial, I will let you do that. At their expense. They will would have to pay for it. And -- but I'm not going to decide this just yet, because it does trouble me that this was produced so late."); *see also* Standing Orders, ¶ 27 (further depositions will be required if documents are produced

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

late).  As shown, Judge Alsup specifically placed the burden of the deposition on Juniper—not Finjan.  Now Juniper seeks to tally against Finjan the very deposition that Juniper forced upon itself by engaging in misconduct.  If anything, Ms. Gupta's second deposition should be counted against Juniper.

**C. Mr. Touboul's Testimony is Necessary and Properly Noticed in Israel.**

Mr. Touboul founded Finjan in 1996, and is a named inventor on several of Finjan's patents.  The necessity of Mr. Touboul's testimony is not in dispute, as both parties have acknowledged the importance of his testimony via their initial disclosures.  Accordingly, Finjan properly noticed Mr. Touboul's deposition nearly a month before the deposition date.  The only issue with respect to Mr. Touboul's deposition is where it should take place.  For several reasons, the answer is Tel Aviv.

*First*, Mr. Touboul is a consultant to Finjan (and many other companies), and is **not** a Finjan employee.[5]  Accordingly, the parties' agreement regarding the deposition location of party employees is not applicable here.  Indeed, Mr. Touboul has been deposed numerous times in Israel regarding Finjan's patents, and in fact has three such depositions scheduled for this summer.  The first time he was deposed in a Finjan matter, the requesting party had to go through the Hague Convention in Israel to secure his deposition. Now, however, Mr. Touboul has agreed to participate willingly with these types of deposition under the condition that they take place in Israel.

*Second*, the reason Mr. Touboul insists on his deposition in Israel is that he has a medical condition that recommends against long airplane rides.  When he travels to California, it usually takes three days of travel in each direction because he breaks the flights up in 4 to 5 hour legs.  Aside from being inhuman, it makes no sense to require Mr. Touboul to travel to Northern California to give that testimony by videotape that can be recorded in any location.  Why Juniper would want to put a witness's health at risk for no legitimate reason is unexplainable, and it does not even address this issue in its portion of this letter brief.

*Third*, there is no prejudice to Juniper for Mr. Touboul's deposition to take place in Israel.  Juniper has at least seven attorneys which have appeared in this case that are available to take the deposition in person or by electronic means.  Indeed, Juniper does not allege its attorneys are not available for this deposition, but merely prefers it to take place elsewhere.  Finjan also provided Juniper with a month's notice before the intended deposition date, and Juniper was "expected to agree" and cannot now claim that nobody is available.  *See* Standing Orders, at ¶ 26.

*Fourth*, Finjan has offered reasonable compromises to account for any perceived inconvenience to Juniper.  For example, Finjan has offered that one of Juniper's various attorneys can attend Mr. Touboul's deposition telephonically or by videoconference.  Juniper refused these accommodations without any explanation.  Again, Juniper has never identified any prejudice to Juniper from taking Mr. Touboul's deposition in Israel, although it seeks to cause Mr. Touboul to incur an immense burden.  Juniper has proposed **no** compromise position, short of making Mr. Touboul travel to the U.S., despite being unable to articulate any rationale or prejudice in taking the deposition where Mr. Touboul resides.

---

[5] California law dictates a specific "ABC test" to determine employment status, which Mr. Touboul's contract does not meet because (A) he is free from control of Finjan, (B) he performs work outside Finjan's business, and (C) he customarily engages in the same type of independent work similar to Finjan for others.  *Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903, 964 (2018).