# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CALIFORNIA 92660-6324

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7189
JGlucoft@irell.com

June 20, 2019

Honorable Thomas S. Hixson
U.S. District Court Magistrate Judge

Re:   *Finjan, Inc. v. Juniper Networks, Inc.*,
      Case No. 3:17-cv-05659-WHA (N.D. Cal.)

Dear Judge Hixson:

The parties present this joint statement regarding defendant Juniper Networks, Inc.'s ("Juniper") motion to compel production of documents related to Trustwave Holdings, Inc. ("Trustwave"). Counsel for Juniper and counsel for Finjan attest that they have met and conferred by telephone[1] in good faith to resolve this dispute prior to filing this letter.

                              Respectfully submitted,

                               */s/ Joshua Glucoft*
                              Joshua Glucoft
                              IRELL & MANELLA LLP
                              *Attorneys for Defendant*
                              Juniper Networks, Inc.


                               */s/ Lisa Kobialka*
                              Lisa Kobialka
                              KRAMER LEVIN NAFTALIS & FRANKEL LLP
                              *Attorneys for Plaintiff*
                              Finjan, Inc.

---

[1] Counsel for Juniper is located outside of the Bay Area.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

<u>**Juniper's Position**</u>

Finjan refuses to produce highly relevant sales information and communications concerning one of its key licensees, Trustwave. Finjan should be compelled to produce these documents because they are highly relevant to the issue of damages, as well as Juniper's marking defense. Moreover, Finjan's third-party confidentiality objection is not a proper basis for withholding discovery from Juniper, given that there is a Protective Order in this case to address confidentiality concerns.

## I.     Factual Background

While the original Finjan entity made and sold computer security products, it decided to divest its operating division in 2009 to a company called M86 Security, Inc. ("M86") so that Finjan could become a patent licensing entity. *See* Dkt. 171 (Complaint) at § 8. As part of that spin-off, Finjan licensed its patents to M86 so that M86 could sell Finjan's products that were covered by Finjan's patents. In 2012, a company called Trustwave acquired M86, so Finjan and Trustwave amended and restated the patent license agreement to account for the transfer of ownership. Trustwave was then acquired by a company called Singtel in 2015. *See Finjan, Inc. v. Trustwave Holdings, Inc.*, Case No. N18C-04-006 WCC-CCLD (Del. Super. Ct. Apr. 4, 2018), Dkt. 1 (Complaint) at ¶ 8.

At the December trial in this matter, Finjan's CEO Phillip Hartstein testified that the original code developed by Finjan is still included in the Trustwave boxes being sold today. Dkt. 336 (Trial Tr. Vol. 2) at 255, 326-327. Finjan has also contended that it is entitled to an injunction in part because it "indirectly compete[s with Juniper] through Finjan's licensees and prospective licensees" and that "Finjan's technology that was sold and licensed to M86 Security, and subsequently Trustwave, is still actively sold in the market in competition with Juniper." Ex. A at 25 (response to interrogatory no. 8). And, Finjan has also pointed to its licensees—including Trustwave—as supposed evidence of the "commercial success" of the patents in support of its contentions concerning secondary considerations of non-obviousness. Ex. A at 30 (response to interrogatory no. 9). Thus, Finjan has pointed to its relationship with Trustwave as being relevant to a number of issues in this litigation.

What Finjan leaves out of the story, however, is that it recently sued Trustwave for breach of the license agreement. In response, Trustwave has claimed, among other things, that Finjan is not entitled to the royalties that it seeks because the products that Trustwave sells are not actually "Licensed Products"—*i.e.*, they are not covered by a valid Finjan patent. *See Trustwave,* No. N18C-04-006, Dkt. 54 (motion to dismiss) at, *e.g.*, 8-10. Thus, the dispute between Finjan and Trustwave is highly relevant to rebutting Finjan's contentions concerning its relationship with Trustwave. Despite this, Finjan has stonewalled Juniper's efforts to take discovery concerning on this issue.

## II.    Finjan Should Be Compelled To Produce Documents Regarding Trustwave's Alleged Breach Of The License Agreement.

Juniper's Second Set of Requests for Production ("RFP") Nos. 3-5 and 13-14 seek communications and documents regarding any agreements between Finjan and Trustwave, any efforts to license the patents to Trustwave, the performance of any agreement (including any discussion of royalty rates or payments amounts), Trustwave's obligation to pay royalties, and any communications referenced in Finjan's complaint filed against Trustwave. While Finjan has

agreed to produce documents and communications "leading up to the November 2, 2009 agreement that reference the Patents-in-Suit," it appears to be withholding documents regarding the 2012 amendment to the license, and expressly refuses to produce "communications regarding any breach of the November 2, 2009 agreement."  Ex. B at 9, 11.  There is no legitimate basis for Finjan to narrow its response in this manner.

Finjan first claims that post-2009 documents (including any documents concerning the purported breach) are not relevant.  But as explained above, Finjan has affirmatively put its relationship with Trustwave at issue by claiming that Trustwave continues to sell its technology and pointing to this relationship as evidence of the commercial success of the patented technology, as well as a basis for Finjan to seek an injunction.  It is inappropriate for Finjan to make such claims, and then obstruct Juniper's efforts to seek evidence that tends to rebut those claims.

Even if Finjan had not directly put its relationship with Trustwave at issue, the documents would still be relevant to a number of key issues in this case.  For example, negotiations concerning the amendment to the M86 license, as well as the alleged breach of the agreement, are relevant to determining the degree of comparability between the license and the hypothetical negotiation.  These negotiations are also relevant to calculating the effective royalty rate of the license, as well as determining if all of Trustwave's products were properly marked.  Indeed, the requested documents would likely show which specific Trustwave products Finjan contends are covered by Finjan's patents, which is not specified in Finjan's complaint against Trustwave[2], and also whether Finjan actually made any effort to ensure that Trustwave was marking its products as required.  These issues are relevant to Juniper's marking defense.  *See Arctic Cat Inc. v. Bombardier Recretaional Products Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).

Finjan's only other objections to RFP Nos. 3-5 and 13-14 are that they purportedly call for third-party confidential information and that the information sought is not proportional to the needs of the case.  But third-party confidentiality is not a proper basis for withholding documents, given that the Protective Order in this matter expressly covers third-party confidential information.  *See* Dkt. 149 (Protective Order) at § 11(b); *see also, e.g.*, *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011) ("The Court finds that High Point's assertion of a confidentiality objection as a basis to withhold production of its third-party licensing correspondence, when a protective order was already entered in the case, was not substantially justified. It is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery.").  And Finjan has been unable to articulate any purported burden that would justify its refusal to respond to these requests, particularly in view of the fact that Finjan itself has put its relationship with Trustwave at issue in this case.

### III. Finjan Should Be Compelled to Produce Sales Information Concerning The Trustwave Products

RFP Nos. 10 and 12 seek sales information of the Trustwave products that allegedly

---

[2] Trustwave actually moved to dismiss Finjan's complaint precisely because Finjan failed to specifically identify any particular products or patents.  *See Trustwave,* No. N18C-04-006, Dkt. 54 (motion to dismiss) at 19 ("Finjan must sufficiently plead infringement of its Licensed Patents by Trustwave's products.  Finjan conspicuously sidesteps any attempt to comply with this requirement.").

embody Finjan's patents. Finjan is refusing to provide any response to these requests on the grounds that they are purportedly irrelevant and request third-party confidential information. *See* Ex. B at 16-17. Contrary to Finjan's contentions, however, these requests are directly relevant to the issue of secondary considerations of non-obviousness, which takes into account the "commercial success" of products embodying a patented invention. *See Graham v. John Deer Co.*, 383 U.S. 1, 18 (1966). Thus, Trustwave's success (or failure) in selling products that purportedly embody Finjan's patents may be indicative of whether the patented technology actually represented an innovative breakthrough providing value over the prior art. Moreover, as noted above, third-party confidentiality is not an appropriate basis for withholding documents.

### IV. Finjan Should Be Compelled To Produce Documents Concerning The KPMG Audit.

RFP No. 15 seeks documents relating to KPMG's audit of Trustwave concerning alleged royalties owned under the agreement between Finjan and Trustwave. Once again, Finjan refused to produce any responsive documents on account of relevance and third-party confidentiality objections. The Court should compel Finjan to produce these documents because they are highly relevant to damages and marking.

In connection with the Trustwave dispute, Finjan engaged KPMG to audit Trustwave's compliance with the parties' agreement. The auditors allegedly identified which products were royalty bearing (and therefore should have been marked) based on Finjan's input. *See Trustwave,* No. N18C-04-006, Dkt. 54 (motion to dismiss) at 3. Thus, the audit report would provide evidence showing the number of patented units sold. As noted above, this information is directly relevant to the issue of marking, as well as the commercial success (or lack thereof) of the products. Given that these documents are directly relevant to rebutting Finjan's contentions, the Court should compel Finjan to produce them.

### Finjan's Position

Juniper's motion should be denied because it improperly seeks documents and communications that are not relevant to any issue in this case. Finjan has already given Juniper the Trustwave patent license itself, all the related agreements, and all other non-privileged documents concerning the negotiation of the license. Juniper's motion ignores all of this highly relevant material that Finjan produced, and instead embarks on an unnecessary fishing expedition into confidential documents and communications that have no bearing on this case, and it should therefore be denied.

### I. DOCUMENTS RELATED TO THE CONTRACT ACTION ARE IRRELEVANT
#### a. Damages

The Court should deny Juniper's motion because documents and communications concerning Finjan's contract suit against Trustwave in the Delaware state court are not relevant to any issues in Finjan's patent infringement case against Juniper here. On March 6, 2012, Finjan entered into an Amended and Restated Patent License Agreement with Trustwave. This agreement, which Finjan produced to Juniper, contains a provision which contemplates additional payments if certain acquisition events occurred. This provision was triggered on or about September of 2015 when Singapore Telecommunications Ltd. ("Singtel") acquired Trustwave and is the basis of Finjan's April 2018 breach of contract complaint filed against Trustwave in Delaware state court. *See* https://www.finjan.com/news-media/press-

releases/detail/767/delaware-court-clears-path-for-finjan-to-establish.  Finjan's claims are for a contract dispute between the parties concerning the additional payments Trustwave owes to Finjan under the agreement due to the Singtel acquisition, and whether Trustwave improperly interfered with the contract's auditing provisions.  *Finjan, Inc. v. Trustwave Holdings, Inc*., 2018 WL 1917274 (Del.Super.) ("Contract Action").

The Contract Action is strictly a breach of contract case, where the remedies sought are purely contractual in nature.  Therefore, any documents and communications concerning Trustwave's alleged breach of contract have no relevance to Juniper's damages for infringement here.  Finjan has already provided the license agreement itself, as well as the documents and communications related to the execution of that agreement that are relevant.  This not only includes emails from 2012 and draft agreements exchanged between Finjan and Trustwave, but also other litigation materials that discuss the Trustwave license, such as deposition transcripts of Finjan employees from other litigations involving the infringement of Finjan's patents. [3] *See, e.g*., FINJAN-JN 409516-681, at 109:25-112:2, 113:23-7, 208:11-217:5; FINJAN-JN 430610-708, at 170:1-175:1; FINJAN-JN 431279-363, at 199:10-16.

Simply put, the documents and communications already produced by Finjan that concern the Trustwave license cover the landscape of what is relevant and are more than sufficient for Juniper to assess its damages case, while any documents related to the subsequent breach of that agreement – years after its execution – have no relevance to Juniper's assessment of damages for patent infringement.  Contrary to Juniper's argument, those documents have nothing to do with assessing Juniper's royalty rate or the degree of comparability between the executed Trustwave license and the hypothetical negotiation.  Rather than explaining precisely how any documents concerning Trustwave's alleged contract breach relates to its damages theories, Juniper sets forth bare assertions of relevance.  For these reasons, Juniper's motion to compel should be denied.

b.      **Marking**

Documents and communications related to the Contract Action are not relevant to any marking issues in this case.  As Juniper is well aware, there is no provision in the Trustwave license that requires Trustwave to mark its products.  This is why Juniper is unable to point to such a provision in the license agreement itself.  Regardless, Finjan is relying upon actual notice to Juniper, not constructive notice at the upcoming trial.  Finjan informed Juniper at the lead counsel meet and confer earlier this month of this issue, such that marking is not an issue for trial and not relevant. *See* Ex. 1 (Follow-up email from Finjan reiterating that Finjan is not alleging constructive notice).  Therefore, any marking-related argument raised by Juniper on this issue is moot.

c.      **Non-Obviousness**

The documents sought by Juniper are also not relevant to challenging Finjan's assertion of non-obviousness by secondary considerations.  In response to Juniper's Interrogatory No. 9, Finjan points to its success in licensing as demonstrating the value of its patent portfolio.  *See* Ex. 2 (Finjan's response to Interrogatory No. 9 mentioning Finjan's successful licensing of its patent portfolio to various third parties).  Juniper argues that documents related to Trustwave's breach is

---

[3] Juniper argues that Finjan has not produced documents and communications related to the execution of its 2012 Amended and Restated Patent License Agreement with Trustwave.  It seems that Juniper is either misleading the Court or has not searched the production for these documents.  Finjan has produced all non-privileged documents in its possession relating to this agreement.

relevant to rebutting Finjan's non-obviousness arguments, but it completely fails to explain just how a breach of a contract negates or otherwise bears on the commercial success of a patentee in the context of challenging non-obviousness. Moreover, documents related to Trustwave's post-license sales are not necessarily indicative of whether or not a patented technology provides the innovative breakthrough over prior art, as Juniper claims. Juniper does not show how downstream sales are relevant to whether or not a licensee saw value in the patents when deciding to enter the license. For these reasons, Juniper's motion should be denied.

### d. Injunction

Documents and communications related to the Contract Action are not relevant to Juniper's attack on Finjan's claim for a permanent injunction.[4] In paragraph 15 of the complaint against Trustwave, it is alleged that Trustwave identified certain products that were within the scope of the agreement and provided the financial information to the auditor to determine the amount of additional royalties that were due under the agreement. *Finjan, Inc. v. Trustwave Holdings, Inc*., 2018 WL 1917274. Thus, it appears that Trustwave conceded to a certain extent that at least some of its products are covered under the license, thereby contradicting Juniper's position on irreparable harm and mooting Juniper's need for these documents to address the issue. Moreover, Juniper purports that one of the very documents it seeks, the KPMG audit, specifically shows the "number of patented units sold" by Trustwave. This completely contradicts Juniper's argument that the Contract Action documents are needed to show that Trustwave no longer sells licensed products and that Finjan suffers no irreparable harm. Even if documents concerning the Contract Action were relevant, which they are not, whether or not Trustwave still sells licensed products covered by Finjan's patents does not dispose of Finjan's irreparable harm claims as set forth in Finjan's response to Interrogatory No. 8. *See* Ex. 2 (Finjan's response to Interrogatory No. 8). Giving Juniper unfettered access to Trustwave's confidential information from the unrelated case so that Juniper can fish for a document that likely does not exist just to make this point is both burdensome to Finjan and grossly disproportional to the needs of the case. Fed. R. Civ. Pro. 26(b)(1). For all of these reasons, the Court should deny Juniper's motion to compel these documents.

## II. Juniper Has Less Burdensome Means for Obtaining the Information Sought

Alternatively, in the event that the Court determines that this information is relevant, Finjan still requests that the Court deny Juniper's motion to compel. Juniper still has pending ESI requests through which it may obtain documents sought in this motion. The search terms for these ESI requests are currently being finalized by the parties, and indeed, one of the terms chosen by Juniper is "Trustwave." Since Juniper's ESI search may result in the production of non-privileged documents that are responsive to its Requests for Production, Juniper's motion to compel documents at this stage is premature and denying the motion would prevent Finjan from needlessly doubling its efforts. Additionally, Juniper can request these documents, including sales documents, directly from Trustwave. Finjan has not received any notice of Juniper attempting to subpoena these documents from Trustwave.

For all of the forgoing reasons, Juniper's motion to compel should be denied.

---

[4] Juniper claims that Trustwave does not still sell products covered by Finjan's patents, and that this negates Finjan's claim of irreparable harm.