1   IRELL & MANELLA LLP
    Jonathan S. Kagan (SBN 166039)
2   jkagan@irell.com
    1800 Avenue of the Stars, Suite 900
3   Los Angeles, California 90067-4276
    Telephone: (310) 277-1010
4   Facsimile: (310) 203-7199

5
    Rebecca Carson (SBN 254105)
6   rcarson@irell.com
    Ingrid M. H. Petersen (SBN 313927)
7   ipetersen@irell.com
    840 Newport Center Drive, Suite 400
8   Newport Beach, California 92660-6324
    Telephone: (949) 760-0991
9   Facsimile: (949) 760-5200

10
    *Attorneys for Defendant*
11  JUNIPER NETWORKS, INC.

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15  FINJAN, INC., a Delaware Corporation,      )   Case No. 3:17-cv-05659-WHA
                                               )
16            Plaintiff,                       )   **JUNIPER NETWORKS, INC.'S MOTION**
                                               )   **FOR ATTORNEYS' FEES PURSUANT**
17       vs.                                   )   **TO 35 U.S.C. § 285**
                                               )
18  JUNIPER NETWORKS, INC., a Delaware         )   Hearing Date: January 7, 2021
    Corporation,                               )   Hearing Time: 8:00 a.m.
19                                             )   Judge: Hon. William Alsup
              Defendant.                       )   Courtroom: 12
20  ─────────────────────────────────         )

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL & PROCEDURAL BACKGROUND ............................................... 3

    A. Round One Of The "Patent Showdown" .................................................. 3

    B. Finjan's Damages Theory As To The '494 Patent .................................... 4

    C. December 2018 Trial On The '494 Patent ................................................ 4

    D. Juniper's Motion For Sanctions ............................................................... 5

    E. The Second Round Of The "Patent Showdown" ...................................... 5

    F. Post-Showdown Proceedings .................................................................... 6

    G. Federal Circuit Appeal Resulting In Summary Affirmance ..................... 7

III. LEGAL STANDARD .......................................................................................... 7

IV. ARGUMENT ....................................................................................................... 7

    A. Juniper Is The Prevailing Party ................................................................ 7

    B. This Case Is Exceptional .......................................................................... 8

        1. Finjan's Shifting Sands Approach To Damages And Its
            Pursuit Of A "Woefully Inadequate" Damages Case At Trial
            Was Exceptional ........................................................................... 9

        2. Finjan's Self-Selected "Strongest" Claim Was Based On A
            "Smoke and Mirrors" Infringement Theory ............................... 12

        3. Finjan's Motion For Summary Judgment On Its "Second-
            Best" Claim Was So Baseless It Ended In A Dispositive
            Ruling For Juniper ....................................................................... 14

        4. Finjan Lacked A Good Faith Argument That It Complied
            With The Notice Requirements Of § 287 For The '780
            Patent. .......................................................................................... 17

        5. Finjan Repeatedly Forced Juniper To Waste Time And
            Money On Claims Finjan Did Not Intend To Pursue ................. 21

        6. Finjan Further Prolonged This Case By Appealing Five
            Different Issues, And The Federal Circuit Summarily
            Rejected Finjan's Arguments ...................................................... 22

    C. Juniper Should Be Awarded $8,656,971 In Reasonable Attorneys'
        Fees ........................................................................................................... 23

V. CONCLUSION .................................................................................................. 25

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*3form, Inc. v. Lumicor, Inc.*,

5

No. 2:12-cv-293, 2018 WL 4688348 (D. Utah Sep. 28, 2018)................................16

6

*Arctic Cat, Inc. v. Bombardier Recreational Prods. Inc.*,

876 F.3d 1350 (Fed. Cir. 2017)................................................21, 22, 23

7

*Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*,

8

744 F. Supp. 2d 646 (E.D. Mich. 2010) ................................................26

9

*Banas v. Volcano Corp.*,

10

47 F. Supp. 3d 957 (N.D. Cal. 2014) ................................................28

11

*Big Baboon, Inc. v. SAP Am., Inc.*,

No. 17-cv-02082-HSG, 2019 WL 5088784 (N.D. Cal. Sep. 9, 2019)................................29

12

*Elec. Commcn's Techs., LLC v. ShoppersChoice.com, LLC*,

13

963 F.3d 1371 (Fed. Cir. 2020)................................................11

14

*Finjan, Inc. v. Blue Coat Sys., Inc.*,

15

879 F.3d 1299 (Fed. Cir. 2018)................................................14

16

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,

616 F.3d 1357 (Fed. Cir. 2010)................................................23

17

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,

18

No. 13-cv-04057-BLF, 2017 WL 3007071 (N.D. Cal. July 14, 2017)................................29

19

*In re High-Tech Emp. Antitrust Litig.*,

No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sep. 2, 2015)................................29

20

21

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,

876 F.3d 1372 (Fed. Cir. 2017)................................................27

22

*Ketab Corp. v. Mesriani & Assoc.*,

23

P.C., 734 F. App'x 401 (9th Cir. 2018)................................................18

24

*Kilopass Tech., Inc. v. Sidense Corp.*,

82 F. Supp. 3d 1154 (N.D. Cal. 2015) ................................................28

25

*Lans v. Digital Equip. Corp.*,

26

252 F.3d 1320 (Fed. Cir. 2001)................................................21

27

*Linex Techs., Inc. v. Hewlett-Packard Co.*,

28

No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014)................................20

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- ii -

**Page**

*Logic Devices, Inc. v. Apple Inc.*,
    No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014).......................................25

*Nilssen v. Osram Sylvania, Inc.*,
    528 F.3d 1352 (Fed. Cir. 2008).................................................................................................12

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
    96 F. Supp. 2d 309 (S.D.N.Y. 2000), *aff'd*, 304 F.3d 1216 (Fed. Cir. 2002) .........................24

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
    752 F. App'x 1017 (Fed. Cir. 2018)..........................................................................................20

*In re PersonalWeb Technologies, LLC, Patent Litig.*,
    No. 18-md-2834, 2020 WL 5910080 (N.D. Cal. Oct. 9, 2020) ........................................ *passim*

*Phigenix, Inc. v. Genentech, Inc.*,
    No. 15-cv-1238, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) .........................................12, 15

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003).................................................................................................20

*Princeton Digital Image Corp. v. Office Depot Inc.*,
    No. C 13-239, 2016 WL 1533697 (D. Del. Mar. 31, 2016)........................................................22

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018).................................................................................................12

*Raniere v. Microsoft Corp.*,
    No. 3:15-cv-0540, 2016 WL 4626584 (N.D. Tex. Sep. 2, 2016).................................................22

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    No. 13-1534, 2020 WL 1285915 (D. Del. Mar. 18, 2020) .........................................................28

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    411 F. Supp. 3d 1026 (N.D. Cal. 2019) ...............................................................15, 18, 25, 28

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    No. C 16-03463 WHA, 2020 WL 5522993 (N.D. Cal. Mar. 4, 2020)................................20, 27

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008).................................................................................................29

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013).........................................................................................16, 21

*Technology for Energy Corp. v. Hardy*,
    No. 3:16-cv-91, 2018 WL 8460252 (E.D. Tenn. Feb. 15, 2018).................................................26

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    745 F.3d 513 (Fed. Cir. 2014)............................................................................................27, 28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

**Page**

*Therasense, Inc. v. Becton, Dickinson & Co.*,
No. C 04-02123 WHA, 2012 WL 1877895 (N.D. Cal. May 22, 2012) ....................................29

*Wynn v. Chanos*,
No. 14–cv–04329–WHO, 2015 WL 3832561 (N.D. Cal. Jun. 19, 2015) ...............................29

**Statutes**

35 U.S.C. § 285 ...........................................................................................5, 11, 18, 27

35 U.S.C. § 287 .................................................................................................. *passim*

**Other Authorities**

Fed. Cir. R. 36 ...................................................................................................6, 11

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2021, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12, 19th Floor, of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup, Defendant Juniper Networks, Inc. ("Juniper") will and hereby does move for an order pursuant to 35 U.S.C. § 285 awarding Juniper its reasonable attorneys' fees in the amount of $8,656,971.  This motion is made pursuant to the Court's order holding in abeyance the deadline to file a motion for attorneys' fees pending resolution of Plaintiff Finjan, Inc.'s appeal, Dkt. 606, and is based on: this Notice of Motion; the memorandum of points and authorities below; the Declaration of Jonathan S. Kagan and exhibits attached thereto; all documents in the Court's file; and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF RELIEF REQUESTED**

Juniper seeks an order pursuant to 35 U.S.C. § 285 declaring this case exceptional and awarding Juniper its reasonable attorneys' fees in the amount of $8,656,971.

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.    INTRODUCTION

In 2015, plaintiff Finjan invited Juniper to examine Finjan's patent portfolio so Juniper could decide whether it would be interested in licensing any technology from Finjan.  After reviewing several Finjan patents, Juniper respectfully declined, explaining that it used its own independent technology that did not derive from Finjan's alleged inventions.  That is when Finjan's "invitation" morphed into a demand and then a threat—a threat that it would file a multi-headed hydra of lawsuit, in which Juniper's best-case scenario would be to spend millions upon millions of dollars defeating each of Finjan's meritless claims.  True to its word, Finjan filed this lawsuit in 2017.

This Court's "Patent Showdown" procedure was intended to give the parties a relatively efficient way to determine the value of this case.  By allowing each party to quickly litigate its best claims, the Court provided the parties an objective way to determine if their subjective opinions about the strength of this case were correct.  Of course, this procedure can work only if the parties

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 1 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

are willing to reasonably reevaluate their claims based on the results of the showdown—something Finjan consistently failed to do.

At the outset, the Court also warned Finjan that it could be liable for attorneys' fees for "bringing a frivolous claim." Dkt. 44 at 5:1-7, 8:17-24. This is a warning Finjan did not heed. Of the nine patents Finjan accused Juniper of infringing, only one, U.S. Patent No. 8,677,494 ("the '494 Patent") was even capable of surviving to trial—the other eight patents were either defeated on summary judgment or voluntarily dismissed with prejudice (after Juniper incurred massive legal fees). Even Finjan's mighty '494 Patent claims were not so mighty: not only did a jury clear Juniper of infringement, but this Court ruled that, even if the jury found infringement, Finjan would not be entitled to any damages. Thus, Finjan's entire case consisted of eight patents unable to survive to trial, and one patent that was twice rejected at trial, once by the jury (finding no infringement) and once by the Court (finding no damages). It is difficult to conceive of a weaker case.

This is not a case where, upon realizing that its case had no merit, the plaintiff immediately took steps to end the case and minimize attorneys' fees. Rather, as detailed below, the more losses Finjan accumulated, the more aggressive it became. In fact, the only reason this case is finally (almost) over is because the Federal Circuit summarily rejected (pursuant to Fed. Cir. R. 36) each of the five legal errors Finjan claimed this Court made in this case—errors that Finjan alleged infected each and every one of Finjan's substantive defeats.

Juniper is entitled to reasonable attorneys' fees of $8,656,971 in this case because Finjan chose to relentlessly pursue objectively baseless claims in an unreasonable manner. Finjan employed a "shifting sands" litigation strategy, repeatedly made misrepresentations of fact and law to Juniper, the Court, and the jury, and continually refused to concede on basic, straight-forward issues. Finjan's conduct goes far beyond ordinary litigation conduct and thus renders this case exceptional pursuant to 35 U.S.C. § 285. Juniper also requests that the Court rule on Juniper's previously filed motion for sanctions, Dkt. 409, which is fully briefed and which the Court deferred pending appeal, Dkt. 486 at 8.[1]

---

[1] Juniper's prior sanctions motion was brought at the conclusion of the first round of the "patent showdown," and is thus focused on Finjan's conduct during that phase. Now that the case has concluded, this Motion is intended to address Finjan's conduct more broadly. To the extent there is

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 2 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

## II.      FACTUAL & PROCEDURAL BACKGROUND

Finjan filed this case on September 29, 2017, accusing Juniper of infringing numerous claims from nine separate patents.  Dkt. 1, Dkt. 100.  Given the number of patents and claims, the Court required Finjan to narrow its case to sixteen claims, and adopted a "showdown" procedure whereby "of the 16 [claims], each of you get to pick one.  Plaintiff gets to pick your strongest claim and Juniper gets to pick the weakest of the claims" and the parties would cross-move for summary judgment.  Dkt. 44 (Hearing Tr. Feb. 22, 2018) at 4:16-5:1.  The Court warned that, pursuant to this procedure, Finjan could be liable for attorneys' fees for bringing a frivolous claim:

> It could turn out that . . . one side or the other is absolutely correct.  What does that mean?  It means that it either leads to an immediate preliminary injunction -- that would be bad for Juniper – or, it leads to a sanctions motion against the plaintiff.
>
> ***
>
> **Or it could be Mr. Andre has to pay $300,000 in fees to [Juniper] for bringing a frivolous claim**.

*Id*. at 5:1-7, 8:17-24 (emphasis added).

### A.      Round One Of The "Patent Showdown"

In the first round of the patent showdown, Finjan selected Claim 10 of the '494 Patent as its "strongest claim," and moved for summary judgment of infringement as to "(1) Juniper's SRX Gateways used in combination with Sky ATP and (2) Sky ATP alone."  Dkt. 98 at 1.[2]  Juniper opposed on the grounds of non-infringement, § 101 invalidity, and Juniper's affirmative defense of failure to comply with § 287's notice requirements.  Dkt. 126.  The Court denied Finjan's motion, finding there was a dispute of fact as to whether the accused products met the limitation of "storing the Downloadable security profile data ***in a database***," which the parties had stipulated should be construed as a "collection of interrelated data organized according to a database schema to serve one or more applications."  Dkt. 189 at 16-17 (emphasis added).  The Court therefore ordered an early trial on infringement and damages for the '494 Patent, as well as Juniper's §§ 101 and 287

---

any overlap between Juniper's previous sanctions motion and this motion (such as with respect to Finjan's conduct regarding the '494 Patent), Juniper requests that the Court decide the issue on this motion under 35 U.S.C. § 285 now that Juniper has been confirmed as the prevailing party.

[2] The first round did not address Juniper's ATP Appliance product, which was first sold by Cyphort and rebranded by Juniper after Juniper acquired Cyphort in 2017.  This product was excluded from the first round because Finjan did not add it to the case until June 8, 2018.  *See* Dkt. 67; Dkt. 100.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473                                        - 3 -                        JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1   defenses.  *Id.* at 20-21; Dkt. 196.

2          Juniper selected Claim 1 of U.S. Patent No. 6,804,780 ("the '780 Patent"), and moved on

3   the issues of non-infringement, § 101 invalidity, and Juniper's affirmative defense that Finjan failed

4   to comply with § 287 prior to the expiration date of the patent.  *See* Dkt. 180.  The Court ruled for

5   Juniper on the issue of infringement, finding that the claim required "performing a hashing function

6   on the Downloadable together with its fetched software components to generate a single hash value

7   that identifies the contents of both the Downloadable and the fetched components."  *Id.* at 10.

8          **B.     Finjan's Damages Theory As To The '494 Patent**

9          After the Court denied Finjan's motion for summary judgment, the parties conducted fact

10  and expert discovery on damages.  This discovery confirmed that Juniper's total revenues for the

11  accused products (SRX in combination with Sky ATP, and Sky ATP alone) were less than $1.8

12  million.  Dkt. 228-3.  Realizing that under prevailing law its damages would be minimal, Finjan

13  then concocted a new infringement theory in its damages expert report, asserting for the first time

14  that SRX devices alone infringed.  Under this new theory, Finjan claimed a $142 million damages

15  base.  Dkt. 283 at 4-5.

16         Juniper moved to exclude Finjan's damages expert, and this Court did so, ruling that Finjan's

17  new infringement theory was "untimely," "procedurally defective" and that "Finjan may not now,

18  in an effort to hyper-inflate its damages claim, belatedly raise new infringement theories that it failed

19  to assert in its summary judgment motion (and, in fact, disclaimed)."  Dkt. 283 at 4-5.

20         **C.     December 2018 Trial On The '494 Patent**

21         Despite this ruling, Finjan barreled ahead to trial, claiming it would present a legally

22  sufficient fact-based damages case.  *See, e.g.*, Dkt. 304-3 (claiming "Finjan has a multitude of ways

23  to prove a reasonable royalty"); Dkt. 305 (Juniper Response).  Finjan's representation to the Court,

24  however, was dishonest.  Instead, Finjan tried to cobble together a damages theory by having its

25  CEO testify—improperly--about the amount that Finjan had demanded from Juniper during

26  settlement negotiations, Dkt. 336 (Trial Tr.) at 290:5-294:12, as well as reciting purported

27  "standard" licensing rates that the Federal Circuit had previously rejected as a proper basis for

28  deriving damages.  *See, e.g.*, Dkt. 323 at 4-5.  Moreover, Finjan failed to present any evidence on

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 4 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

the key issue of apportionment.  Juniper therefore moved for Judgment as a Matter of Law on damages during the trial.  Dkt. 339 (Trial Tr.) at 835:13-22.  The Court granted this motion, finding that "on this record it would be impossible for the jury to apportion the revenue between the patented item and the unpatented items."  *Id*. at 838:3-5.  The Court added that Finjan's damages case "was not sufficient.  ***It was woefully inadequate***.  So there will be no damage award."  *Id*. at 839:6-8 (emphasis added).

Although the Court ruled that Finjan would not be entitled to any damages if it prevailed on infringement, it allowed the jury to decide infringement.  The jury returned a unanimous verdict of no infringement.  Dkt. 333.  Following trial, Finjan tried to overturn the jury verdict by moving for judgment as a matter of law on infringement.  Dkt. 353.  In denying the motion, this Court explained that Finjan's infringement case had been "***smoke and mirrors***," and that, after trial "the scales fell from my eyes.  So I don't agree with you on that point.  I am not going to grant that motion."  Dkt. 382 (Hearing Tr. Feb. 21, 2019) at 3:21-4:18 (emphasis added); *see also* Dkt. 387 at 3-4.

**D.    Juniper's Motion For Sanctions**

After the first round of the "patent showdown" concluded, Juniper filed a motion for sanctions (Dkt. 409) requesting that the Court sanction Finjan for its conduct, including specifically (1) misstating facts and law concerning notice with respect to the '494 Patent, (2) failing to set forth a legally cognizable damages claim for the '494 Patent, and (3) asserting groundless infringement theories as to the '780 patent.  Dkt. 409 at 1-2.  The Court deferred ruling on this motion "until the end of trial" on the remaining issues.  Dkt. 486 at 8.  Juniper's motion remains pending, and Juniper respectfully requests that the Court rule on that motion, in addition to this one.

**E.    The Second Round Of The "Patent Showdown"**

In early 2019, after Finjan had witnessed the complete rejection of its self-selected "strongest" patent claim, the Court presided over the second round of the "patent showdown."  Dkt. 348.  But before selecting the claim and issues to be addressed in its summary judgment motion, Juniper asked Finjan to confirm that "Claim 9 of the '780 Patent" was "only at issue for the ATP Appliance and no longer at issue for the SRX and Sky ATP products," given that Claim 9 contained the same "hashing" limitation that the Court found dispositive as to Claim 1.  Kagan Ex. 6.  Finjan

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 5 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

refused, claiming that "Claim 9 of the '780 Patent is an independent claim, therefore the Court's finding of no infringement for Claim 1 of the '780 Patent on summary judgment does not apply to this claim." *Id.* Juniper therefore notified the Court and Finjan on January 24, 2019 that it was selecting claim 9 "which Finjan has asserted against SRX Series Services Gateways, Sky ATP, and ATP Appliance," and filed a motion and expert declaration regarding all three products. Dkt. 361; Dkt. 371; Dkt. 371-3. When Finjan filed its response, however, it failed to oppose Juniper's motion on infringement regarding the SRX and Sky ATP products. Dkt. 393. As to the ATP Appliance, the Court granted Juniper's motion on the grounds that Finjan did not comply with the notice requirements of § 287 prior to the expiration of the patent. Dkt. 491 at 1.

Finjan selected Claim 1 of U.S. Patent No. 8,141,154 ("the '154 Patent") for the second round of the "patent showdown." Dkt. 362. The Court denied Finjan's motion and, even though Juniper had not cross-moved for summary judgment of non-infringement, ordered Finjan to show cause why summary judgment should not be granted in Juniper's favor. Dkt. 491 at 12. Following further briefing on the OSC, the Court granted summary judgment in favor of Juniper. Dkt. 590.

### F.    Post-Showdown Proceedings

On May 8, 2019, after the Court had ruled on the second round of summary judgment motions—and while the OSC was pending—the Court ordered the parties to prepare for trial in October 2019 on all remaining claims and issues. Dkt. 491 at 19; Dkt. 487. On May 17, 2019, Juniper wrote to Finjan stating:

> We expected that Finjan would narrow the patents and claims that it is asserting per the Court's directive in its submission on Wednesday, but we note that Finjan did not do so. Before we conduct any additional discovery, we think it makes sense for Finjan to identify the particular patents and claims it intends to pursue at the October trial. This is important because it will ensure that the parties are not wasting time on claims that Finjan has no intention of pursuing.

Kagan Ex. 7. A few weeks later, Finjan filed a notice with the Court, identifying the claims it intended to pursue at the October trial, which included: (1) Claim 41 of U.S. Patent No. 6,154,844 as to ATP Appliance, (2) Claim 14 of U.S. Patent No. 7,647,633 as to Sky ATP and ATP Appliance, (3) Claim 1 of the '154 Patent as to SRX Gateway, Sky ATP, and ATP Appliance, (4) Claim 10 of the '494 Patent as to ATP Appliance, and (5) Claim 17 of U.S. Patent No. 7,418,731 as to Sky ATP.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473                                         - 6 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

Dkt. 516.  Throughout June and July 2019, Juniper spent significant resources conducting discovery, preparing opening expert reports, and conducting expert depositions on the claims that Finjan identified in its June 6, 2019 notice.  Kagan Decl. ¶¶ 12–13, 19.

On July 23, 2019, the Court issued its order on the OSC, granting Juniper summary judgment on the '154 Patent.  Dkt. 590.  Six days later, Finjan told Juniper that it intended to dismiss all remaining claims, so that it could file an immediate appeal.  Kagan Ex. 8.  The parties filed a "Joint Stipulation of Dismissal With Prejudice" on August 2, 2019.  Dkt. 601.

### G.     Federal Circuit Appeal Resulting In Summary Affirmance

Finjan's appeal challenged this Court's summary judgment orders finding non-infringement and a lack of notice, exclusion of Finjan's damages expert and JMOL of no damages, and the jury verdict.  No. 19-2405, Dkt. 18 (Finjan Opening Brief).  The Federal Circuit heard argument on October 7, 2020.  Two days later, the Federal Circuit issued a Rule 36 summary disposition affirming this Court in full.  Dkt. 627.  The Federal Circuit's mandate issued on November 16, 2020, and Juniper now timely brings its motion for fees pursuant to the Court's prior order holding in abeyance the deadline to bring a fees motion pending resolution of Finjan's appeal.  Dkt. 606.

## III.   LEGAL STANDARD

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Elec. Commcn's Techs., LLC v. ShoppersChoice, LLC*, 963 F.3d 1371, 1376 (Fed. Cir. 2020).

## IV.   ARGUMENT

### A.     Juniper Is The Prevailing Party

Juniper prevailed on every patent and claim in this case.  Specifically, (1) the jury found that Juniper did not infringe the '494 Patent, Dkt. 333; (2) the Court granted summary judgment that Juniper did not infringe the '780 Patent and the '154 Patent, Dkt. 180, 491, 590; (3) the Court granted JMOL of no damages as to the '494 Patent, Dkt. 339 (Trial Tr. Dec. 14, 2018) at 835-839; and (4) Finjan dismissed its remaining patents and claims with prejudice, Dkt. 601. The Federal Circuit

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 7 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

affirmed the jury verdict and the Court's orders.  Dkt. 627.  In contrast, Finjan did not prevail on any claims.  Thus, Juniper is the prevailing party in this case.  *See, e.g.*, *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1354–56 (Fed. Cir. 2008) (affirming award of attorneys' fees where defendant prevailed at trial); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-1238, 2018 WL 3845998, at *3 (N.D. Cal. Aug. 13, 2018) (defendant was prevailing party where "summary judgment of no infringement was granted"); *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307–08 (Fed. Cir. 2018) (dismissal with prejudice renders defendant prevailing party).

## B.      This Case Is Exceptional

Finjan's conduct in this case was exceptional in at least six respects:

- Finjan's shifting sands approach to damages for the '494 Patent and empty promises that it could put forth a "fact-based" damages case resulted in a needless jury trial.

- Finjan's infringement case for its self-selected "strongest" patent-was just  "smoke and mirrors."

- Finjan's "second-best" claim was based on an infringement theory that was so baseless the Court issued granted summary judgment **for Juniper** after Finjan filed a motion seeking summary judgment.

- Finjan relentlessly argued that it had complied with the notice requirements of § 287 with respect to the ATP Appliance and the '780 Patent, despite lacking a good faith basis for asserting either constructive or actual notice.

- Finjan needlessly prolonged litigation regarding patents and claims that Finjan never actually intended to pursue.

- Finjan appealed its meritless arguments to the Federal Circuit, further prolonging this case and resulting in a summary affirmance rejecting Finjan's claims.

While each of these is independently sufficient for a finding of exceptionality, together they clearly demonstrate a pattern of unreasonable litigation conduct.  Finjan unnecessarily prolonged this case and forced Juniper to incur significant expense litigating this case through multiple rounds of summary judgment, trial, and appeal.  Juniper thus respectfully requests that the Court find this case exceptional and award Juniper its reasonable attorneys' fees.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 8 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

**1.**     **Finjan's Shifting Sands Approach To Damages And Its Pursuit Of A "Woefully Inadequate" Damages Case At Trial Was Exceptional**

As detailed in Juniper's prior sanction's motion, Finjan's failure to present a legally cognizable damages theory regarding the '494 Patent caused the entire proceedings on that patent—including both summary judgment and trial—to waste judicial resources, time, and litigation expense.  *See* Dkt. 409 at 9-12.  Finjan's entire approach to damages on the '494 Patent reeked of gamesmanship and is thus exceptional.

At summary judgment, Finjan accused "(1) Juniper's SRX Gateways used in combination with Sky ATP and (2) Sky ATP alone ('Accused Products')" of infringing Claim 10 of the '494 Patent.  Dkt. 98 (Mot. at 1).  Finjan did not accuse SRX Gateways alone of infringement, and its technical expert testified that he "did not perform" an analysis of SRX alone: "[i]t is SRX Gateways and the Sky ATP that infringe Claim 10.  ***It's not SRX Gateways by themselves***."  Dkt. 125-17 at 140:11-17, 141:16-21 (emphasis added); *see also* Dkt. 283 at 4-5.

After Finjan put forth its infringement theory, however, it realized that the total revenue for these Accused Products was less than $1.8 million.  Dkt. 283 at 4.  At this point, a reasonable party would have either cut its losses or accepted that it would need to adjust its expectations about the appropriate damages.  Not Finjan.  Finjan developed a brand new infringement theory based on the "SRX Gateways by themselves," and submitted a damages expert report—seeking nearly $70 million in "reasonable royalties"—based on this previously undisclosed theory.  *See, e.g.*, Dkt. 228-7 at 51-52, Ex. 1.5 (including "total" SRX sales); Dkt. 238-4 (Finjan Opp. to *Daubert*) at 3 ("accused SRX products), *id*. at 11 ("accused SRX gateways").  Finjan was not able to sneak this new infringement theory past the Court, which noted:

> [Finjan] inflates the royalty base by including all sales of the SRX devices sold — including those *not* configured with Sky ATP.  Finjan hinges this contention on its newfound belief that all SRX devices infringe the system claim because they contain code for interfacing with Sky ATP.
>
> Finjan's untimely new infringement theory, however, is procedurally defective.  In its motion for summary judgment, Finjan accused (1) SRX Gateways used in combination with Sky ATP, and (2) Sky ATP alone of infringing (Dkt. No. 98 at 1).  Juniper argued in its opposition to the motion that Finjan failed to show infringement as to the SRX units not configured with Sky ATP (Dkt. No. 126 at 22; 125-5 ¶¶ 4–7).  Finjan's technical expert Dr. Eric Cole testified then that he was

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 9 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

not asked to analyze SRX alone and that he did not analyze whether the SRX devices contained other elements of Claim 10 such as a "Downloadable scanner" or "database" (Dkt. No. 125-17 at 140:19–141:21).  Dr. Cole further testified that "[i]t is SRX Gateways and the Sky ATP that infringe Claim 10.  *It's not SRX Gateways by themselves*" (*id*. at 140:15–17) (emphasis added).

During the summary judgment stage, Finjan's reply did not even try to rebut Juniper's assertion that "Finjan d[id] not even attempt to argue that SRX devices deployed without Sky ATP" infringe Claim 10.  Finjan may not now, in an effort to hyper-inflate its damages claim, belatedly raise new infringement theories that it failed to assert in its summary judgment motion (and, in fact, disclaimed).  Finjan will thus be stuck with the $1.8 million base.

Dkt. 283 at 4-5 (emphases in original).  The Court further explained: "[t]hat Expert Arst would suggest that Juniper would have been willing to pay an eyepopping $60–$70 million as a royalty for the sake of $1.8 million in revenue is preposterous.  This order therefore agrees with Juniper that Expert Arst's testimony 'defies basic laws of economics' such that its unreliability renders it inadmissible under FRE 702."  Dkt. 283 at 4.

Upon receiving this order, a reasonable party would have—once again—cut its losses or accepted that it would need to adjust its expectations regarding damages.  But, once again, not Finjan.  Instead, Finjan insisted that the case should proceed to trial, telling the Court it could still present a legally sound damages case "based on factual evidence."  Dkt. 304-3 at 5; *see also* Dkt. 305.   In reality, however, Finjan planned to—and ultimately did—introduce irrelevant factual testimony and documents in its continuing quest to inflate damages.  For example, Finjan presented improper testimony from its CEO regarding the amount Finjan initially demanded from Juniper in settlement negotiations (which was based on revenue from SRX devices alone), which drew a rebuke from this Court.  Dkt. 336 (Trial Tr.) at 277:3-23, 290:5-294:12.  Finjan also introduced testimony concerning its purported "standard" licensing rates, even though the Federal Circuit had previously rejected Finjan's effort to do this in a prior case.  *See, e.g*., *id*. at 270:14-271:6 (discussing purported $8 per user rate); *Finjan, Inc. v. Blue Coat Sys., Inc*., 879 F.3d 1299, 1312 (Fed. Cir. 2018) ("In short, the $8-per-user fee appears to have been plucked from thin air and, as such, cannot be the basis for a reasonable royalty calculation.").  Finjan also introduced revenue information for SRX devices alone and for Sky ATP, without providing the jury with any mechanism by which to apportion those revenues to account for the many non-accused features—as it was required to do.  Dkt. 323 at 1-4.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 10 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

Because Finjan failed to present a legally sound fact-based damages case during the trial, Juniper moved for Judgment as a Matter of Law.  Dkt. 323.  The Court granted this motion, finding that Finjan's damages case was "***woefully inadequate***" including because, among other things, "on this record it would be impossible for the jury to apportion the revenue between the patented item and the unpatented items" and concluded "there will be no damages award."  Dkt. 339 (Trial Tr.) at 838:3-5, 839:6-8 (emphasis added).

In sum, Finjan repeatedly put forward damages theories that were without basis, including changing its infringement theory to inflate damages.  Finjan persisted in these attempts even after the Court granted Juniper's *Daubert* motion, forcing an unnecessary trial on a patent for which Finjan knew it could not adequately establish damages.  Courts have repeatedly held that these sorts of "shifting sands" tactics render a case exceptional.  *See, e.g.*, *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 411 F. Supp.3d 1026, 1028 (N.D. Cal. 2019) (finding that "the shifting sands of the patent owner's [arguments]" rendered the case exceptional); *In re PersonalWeb Technologies, LLC, Patent Litig.*, No. 18-md-2834, 2020 WL 5910080, at *9 (N.D. Cal. Oct. 9, 2020) ("A patent litigant's repeated changes in its litigation positions in a case may support a finding of exceptional conduct."); *Phigenix*, 2018 WL 3845998, at *5 (finding that litigation conduct "became 'exceptional'" where plaintiff tried to change its infringement theory in response to summary judgment ruling).

*Phigenix* is particularly instructive.  There, the court granted summary judgment that the patent was not entitled to the asserted priority date (likely rendering it invalid) and, in response, patent owner's expert suddenly "narrowed its infringement theory in response to the Court's first summary judgment order."  2018 WL 3845998, at *7.  The court found that the "circumstances evince that Phigenix unreasonably manipulated its theories to postpone defeat" and that "[s]uch gamesmanship supports the conclusion that Genentech is entitled to some portion of its attorneys' fees."  *Id.*  The same is true here.  Rather than face the reality that it had minimal damages, Finjan first attempted to change its entire infringement theory and then, when the Court excluded Finjan's theory, attempted to postpone defeat by presenting a damages case that was "woefully inadequate."

Finjan's repeated attempts to present legally improper damages theories—in the face of rulings by this Court and warnings by Juniper—was unreasonable.  *See In re Personalweb*, 2020

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 11 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

WL 5910080, at *20 (case "exceptional" where "PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day" and "unnecessarily prolonged this litigation after claim construction foreclosed its infringement theories"); *3form, Inc. v. Lumicor, Inc.*, No. 2:12-cv-293, 2018 WL 4688348, at *5 (D. Utah Sept. 28, 2018) (case exceptional where party "ignored repeated warnings about the inconsistency of its very weak position").  Indeed, Finjan disregarded its duty to reassess its damages position in light of the Court's ruling that the damages base was $1.8 million, Dkt. 283 at 4-5, instead attempting to pursue additional unsupported theories at trial.  *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (a party "must continually assess the soundness of pending [] claims, especially after an adverse [ruling]," and affirming award of attorneys' fees where party failed to do so and continued to assert baseless theories).

### 2. Finjan's Self-Selected "Strongest" Claim Was Based On A "Smoke and Mirrors" Infringement Theory

The deficiencies in Finjan's infringement case were aptly summarized by the Court's own observation (after the '494 Patent trial) that Finjan had presented nothing more than a "smoke and mirrors" infringement theory on its self-selected "strongest" claim.

The '494 Patent trial focused on whether Juniper's products met the limitation of "storing the Downloadable security profile data in a ***database***," which the parties had stipulated should be construed as a "collection of interrelated data organized according to a database schema to serve one or more applications." Dkt. 189 at 16-17.  At trial, Juniper presented evidence that the accused products did not practice the "database" limitation because they store "Downloadable security profile data" in two Amazon-supplied storage solutions that do not use database schemas. Specifically, Juniper's technical expert explained that Juniper stores this data in one of two locations, both of which are provided by Amazon Web Services: DynamoDB and S3.  Dkt. 338 at 750:2-19.  He further explained that neither location meets the "database" requirement because neither uses a database schema to create structure for the stored data.  *Id*.  Juniper's expert cited to Amazon's own documents, which explain that "DynamoDB is ***schema-less***" and that S3 imposes no structure whatsoever on stored data, as it stores data as "unstructured blobs." *Id*. at 751:10-752:18 (emphasis added), Trial Ex. 1264-1 at 3-4 (Dkt. 126-20).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 12 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

Finjan, on the other hand, argued that that Juniper stores the "Downloadable security profile data" in a database called "ResultsDB" that Juniper had built "on top of" DynamoDB and S3 and that uses a schema. Dkt. 337 at 448:4-15. But Finjan's expert did not testify that either DynamoDB or S3 itself was a "database," and in fact conceded at deposition that he had not attempted that analysis. *Id.* at 500:20-501:12, 503:11-24; Kagan Ex. 9 (Cole Tr.) at 259:12-18 (Q. "Have you done any analysis to determine whether any of these components—the MySQL database, DynamoDB, and S3—independently would infringe Claim 10? A. "That analysis was not performed."). Further, even Finjan's expert admitted at trial that "ResultsDB" was merely an "application programming ***interface***," and did not actually physically store any security profiles. Dkt. 337 (Trial Tr.) 440:14-17 ("the Results Database API, application programming interface, this is something that interfaces with another component"), 467:9-11 (conceding information is stored "in the physical servers at Amazon, which those physical servers are going to be the MySQL, the DynamoDB, and the S3").

At closing argument, Juniper explained that Finjan's infringement theory "has sort of a mix and match problem. They can find a database within the meaning of the claim, the definition of the construction, but they can't find any security profiles being stored in there. And they can find where the security profiles are being stored, which is DynamoDB and S3, but those don't have a schema and, therefore, don't qualify as databases under the Court's construction. That's why there can be no infringement in this case." Dkt. 339 (Trial Tr.) at 931:23-932:6. Juniper cited to Amazon's own documents to demonstrate that the databases where the actual data was stored—Amazon's DyanmoDB and S3—"are schema-less. They do not have a database schema." *Id.* at 933:18–19. Juniper also noted that Finjan was attempting to obscure this issue by telling the jury to "Don't look too closely at where things are stored. Just draw a line around the whole thing, call it a database, mush it together and then say the security profiles are stored in a database." *Id.* at 936:1-4.

The jury returned a verdict of no infringement. Dkt. 333. Following the jury verdict, Finjan moved for judgment as a matter of law for a finding of infringement on the database limitation, arguing that Juniper's non-infringement case was "legally irrelevant, [and] contradicted by their own documents." Dkt. 382 (Hearing Tr. Feb. 21, 2019) at 3:17-20; *see also* Dkt. 353. The Court denied the motion, explaining that Finjan's infringement case had been "smoke and mirrors":

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 13 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1
2
3
4
5
6
7

Not true.  That is not true.  I want you to know this: It is true that along the way, I thought that -- I thought that you had a strong case on infringement.  I was wrong about that.  Mr. Kagan gave one of the best closing arguments, and it was not theatrics, but it was just calm, dispassionate explanation of a -- of points that I had not focused on that were your burden of proof, but he pointed it out.  And I was very convinced at the end of that that he was right and that you had been wrong from the get-go on infringement.  So those statements that I made along the way about how I -- that was just -- I was just drawn in by your *smoke and mirrors*.  That's all that happened on that.  [Juniper's closing argument] was just good, calm explanation of something that was complicated then finally ***the scales fell from my eyes***.  So I don't agree with you on that point.  I am not going to grant that motion.  I'm just going to save you some time.  You're not going to win that motion.

8   Dkt. 382 at 3:21-4:18; *see also* Dkt. 387 at 3-4 (order denying motion).  The Federal Circuit affirmed

9   this Court's order on appeal, issuing a summary disposition two days after oral argument.  Dkt. 627.

10   In short, Finjan attempted to obscure the fact that the accused products did not store security

11   profiles in a database organized according to a database schema by ignoring the actual location

12   where security profiles were stored.  Instead, it attempted to argue that the interface connected to

13   the database (which did not store any security profiles) somehow satisfied the claim.  Once Juniper

14   had the opportunity to point this out, Finjan's entire house of cards collapsed.

15   Finjan's persistence in pursuing a baseless and misleading infringement theory, and its

16   attempt to obscure the facts and confuse the jury, independently render this case exceptional under

17   section 285.  *See, e.g.*, *Straight Path IP*, 411 F. Supp. 3d at 1034 (finding case exceptional and

18   awarding fees where "[a]t bottom, the record shows that Straight Path pursued an objectively

19   baseless infringement theory against defendants"); *In re Personalweb*, 2020 WL 5910080, at *20

20   (finding case exceptional where plaintiff pursued "objectively baseless" infringement theories);

21   *Ketab Corp. v. Mesriani & Assoc.*, P.C., 734 F. App'x 401, 412 (9th Cir. 2018) (affirming finding

22   case was exceptional where party "pursued groundless, frivolous, and unreasonable arguments").

23   As with its conduct on damages, Finjan's actions needlessly prolonged this litigation and forced

24   Juniper to incur considerable expense litigating (and winning) a jury trial on the '494 Patent.

25
26
### 3.   Finjan's Motion For Summary Judgment On Its "Second-Best" Claim Was So Baseless It Ended In A Dispositive Ruling For Juniper.

27   Finjan selected Claim 1 of the '154 Patent as its next strongest claim during the second round

28   of the "patent showdown," and moved for summary judgment on infringement.   Finjan's

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 14 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

infringement theory, however, was so baseless that the Court not only denied Finjan's motion for summary judgment, but issued an OSC as to why summary judgment should not be granted *in favor of Juniper*.  Despite "filing pages upon pages of briefing, declarations, and exhibits" in response to the OSC, the Court found that "Finjan failed to offer *any* support in its reply brief under the adopted construction" and instead "improperly attempts to 'redefine the meaning of 'modified content' to include 'original content'"—*i.e.*, to relitigate the claim construction issue the Court had decided. Dkt. 590 at 3, 5.  The Federal Circuit issued a summary affirmance of this Court's ruling two days after argument, finding that Finjan's arguments did not even warrant drafting an opinion.  Dkt. 627.

Finjan's relentless pursuit of meritless infringement theories for the '154 Patent was unreasonable when considered in the context of several prior decisions in other matters that should have put Finjan on notice that its claim construction position was unsound.  Indeed, Finjan's infringement theory depended on construing the claims in a manner that was inconsistent with the patents' own description of the "present invention," (*see, e.g.*, Dkt. 491 at 7-11), as well as prior rulings by the PTAB and Federal Circuit concerning the validity of the patent.  In particular, Finjan urged this Court to construe the "content processor" of Claim 1 to include a processor that processes "unmodified" content.  Dkt. 491 at 7-11.  But Finjan's position was contrary to the PTAB's prior decision upholding the validity of the patent, which explained that the '154 patent specification refers to "three categories of content," but that the only "content" referred to in the claim language is the "modified content" created at the gateway computer:

> [T]he *claimed* "content" in the context of the surrounding claim language, must refer to the *modified content received at the client computer*.  *See id*. at 17:39-40 ("transmitting the input [of the first function call] to the security computer for inspection, when the first function is invoked").  *The claimed content cannot refer to the "original content"* that is received by the gateway computer and over the Internet because that content, according to the Specification, would be capable of generating the undetected dynamically generated malicious content from which the client computer is to be protected.

Dkt. 491 at 8 (quoting Dkt. 390-19 at 10).

Finjan's position was also contrary to the Federal Circuit's prior characterization of Claim 1 in the appeal of the PTAB decision.  *See Palo Alto Networks, Inc.* v. *Finjan, Inc.*, 752 F. App'x 1017, 1018 (Fed. Cir. 2018) (noting that claim 1 "recit[es] a system or software program that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 15 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1  executes a substitute [i.e., modified] function.  The substitute function inspects the input to an
2  original function to determine if executing the original function with the input violates a security
3  policy.").

4         In view of these prior rulings, Finjan's infringement theory on the '154 Patent was
5  objectively baseless and warrants a finding of exceptionality.  *See, e.g.*, *Straight Path IP Grp., Inc.*
6  *v. Cisco Sys., Inc.*, No. C 16-03463 WHA, 2020 WL 5522993, at *7 (N.D. Cal. Mar. 4, 2020)
7  (finding exceptional conduct where "Plaintiff started pursuing an infringement theory in district
8  court that was contrary to the claim construction it advanced in its appellate briefing in Sipnet and
9  contrary to the Federal Circuit's 2015 claim construction in Sipnet, which the Federal Circuit
10 rendered in reliance on Plaintiff's arguments."); *In re Personalweb*, 2020 WL 5910080, at *20 (case
11 exceptional where plaintiff pursued "objectively baseless" theories).  Indeed, the pursuit of an
12 infringement theory that is contrary to prior claim construction rulings is precisely the type of
13 conduct that courts find exceptional.  *See, e.g.*, *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d
14 1242, 1246–47 (Fed. Cir. 2003) (affirming exceptional case finding where patentee asserted
15 infringement theory contrary to prior Federal Circuit claim construction); *Linex Techs., Inc. v.*
16 *Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014) (case
17 exceptional where "Two other fora, the Eastern District of Texas and the ITC, previously decided
18 against Linex, construing 'spread spectrum' as requiring 'spreading' of the bandwidth of the data.
19 Linex therefore should have known that it could not use the patent claims limited to 'spread
20 spectrum' to capture devices practicing the distinct and more complex OFDM technology.  Linex
21 nevertheless continued to press those patent claims against Defendants in the present suit.").

22        Even if Finjan originally had a reasonable basis for its claim construction arguments (which
23 it did not given the contrary Federal Circuit and PTAB constructions), its conduct became
24 exceptional once it continued to litigate the '154 Patent despite having no evidence of infringement
25 under the Court's construction, thus forcing Juniper to unnecessarily litigate the '154 Patent through
26 a further OSC proceeding in which Finjan filed "pages upon pages of briefing, declarations, and
27 exhibits" that failed to identify any evidence of infringement.  *See, e.g.*, *Taurus*, 726 F.3d at 1326
28 (affirming finding of exceptional case where party continued "to assert infringement after an adverse

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 16 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1  claim construction"); *In re Personalweb*, 2020 WL 5910080, at *13 (finding case exceptional where

2  patent owner unreasonably prolonged case after dispositive claim construction).

3        **4.      Finjan Lacked A Good Faith Argument That It Complied With The
             Notice Requirements Of § 287 For The '780 Patent.**

4

5        Finjan's claims against the ATP Appliance under the '780 Patent were moot from the outset

6  because Finjan failed to comply with the notice requirements of § 287 prior to the expiration of the

7  patent.  Finjan was well-aware that it could not establish compliance, but instead chose to plow

8  ahead with its baseless claim.  Finjan's unreasonable conduct warrants a finding of exceptionality

9        Under 35 U.S.C. § 287(a), "a patentee who makes or sells a patented article must mark his

10 articles or notify infringers of his patent in order to recover damages."  *Arctic Cat, Inc. v.*

11 *Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017).  "A patentee's

12 licensees must also comply with § 287, because the statute extends to 'persons making or selling

13 any patented article for or under [the patentee].'"  *Id.* at 1366.  Once Juniper put Finjan on notice

14 that Finjan had not complied with this element of its claim, Dkt. 95-15 at 3, Finjan was required to

15 establish that it satisfied § 287 for the ATP Appliance before expiration of the '780 Patent.**³**  *Arctic*

16 *Cat*, 876 F.3d at 1365; *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (patentee

17 had not stated infringement claim because it failed to satisfy § 287 before patent expiration).

18                    i.      *Finjan's Attempt To Backtrack On Prior Admissions To Survive
                             Summary Judgment On Constructive Notice Was Improper.*

19        In response to Juniper's argument that Finjan had failed to comply with the marking

20 requirements of § 287 (i.e., constructive notice) with regard to the '780 Patent, Finjan first claimed

21 that Juniper had not met its burden to identify unmarked products under *Arctic Cat*.  Dkt. 491 at 15-

22 18.  As this Court recognized, however, Finjan's position "backtrack[ed] from its prior admission

23 that Juniper gave adequate *Arctic Cat* notice" in connection with the '494 patent.  *Id.* at 15.

24 Specifically, Finjan had stipulated that Juniper had met its initial burden under *Artic Cat* by serving

25 a notice (which contained the same level of detail for the '494 and '780 patents):

26        The Court: I'm asking [about] this *Arctic* notice . . . *can you both agree that that*

27 ─────────────────────
**³** Finjan's Complaint did not allege that ATP Appliance infringed any of the patents-in-suit.  Dkt. 1.
28 Rather, the first time Finjan alleged the ATP Appliance infringed the '780 Patent was when it served
   its infringement contentions on March 8, 2018, well after the patent expired on November 6, 2017.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473                          - 17 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

*was given so that we don't have to complicate the trial with yet another issue?*

Ms. Kobialka [Finjan's Counsel]: *Yeah*, and that's not a jury issue to decide whether or not that notice was given in the litigation.

The Court: All right.  So if I just tell you right now that you've got to prove notice, you are okay with that?

Ms. Kobialka: *Yes*.

Dkt. 491 at 15 (quoting Dkt. 336 at 289:18-290:1) (emphases in original).

Finjan's argument on constructive notice also required it to walk back the positions it had previously taken against other defendants.  Indeed, Finjan readily acknowledged that it did not make any efforts (much less reasonable efforts) to require its licensees to mark their products with the '780 Patent.  Dkt. 491 at 17-18.  Finjan nevertheless argued that its licensees did not need to mark because they "do not offer products that practice . . . or flatly deny that they practice" the '780 patent.  Dkt. 491 at 17.  Finjan's argument that its licensees do not offer products that practice the '780 Patent is directly contrary to the assertions it made in court against those parties before they took a license.  Indeed, at least one of Finjan's licensees (Sophos) was found to infringe the '780 Patent by a jury before it entered into a license with Finjan.  Dkt. 491 at 17 n.6.

Finjan's pattern of taking starkly conflicting positions from one proceeding to the next is deliberate and carefully calculated to serve its imminent interests.  Finjan should be sanctioned for its attempts to game the legal system.  *See Princeton Digital Image Corp. v. Office Depot Inc.*, No. C 13-239, 2016 WL 1533697, at *13 (D. Del. Mar. 31, 2016) ("inconsistent representations before the Court also weigh in favor of an exceptional case finding"); *Raniere v. Microsoft Corp.*, No. 3:15-cv-0540, 2016 WL 4626584, at *5 (N.D. Tex. Sep. 2, 2016) (finding case exceptional where party engaged in "a pattern of obfuscation and bad faith").

Finjan's only other argument—that its licensees deny that they practice the patent—is irrelevant.  Indeed, the test for determining whether a licensee product should have been marked is not whether a licensee *believes* that its product practices the '780 Patent, but whether it *actually does* practice the patent.  *Artic Cat*, 876 F.3d at 1368 ("Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention.").  Under straight-forward Federal Circuit precedent, Finjan had the burden

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 18 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1   on this issue. *Id.* Rather than presenting evidence on the issue, Finjan tried to evade its burden by

2   pointing the Court to out-of-district court cases that were decided before *Artic Cat* and incorrectly

3   telling the Court that they "applied the same burden shifting scheme confirmed later by the Federal

4   Circuit Court." *See* Dkt. 393 (Finjan Opp.) at 35 n.8; Dkt. 417 (Juniper Reply) at 15, n.15.

5          Rather than accepting the straight-forward application of Federal Circuit precedent to the

6   facts in this case, Finjan obstinately pursued this issue through appeal.  In fact, Finjan went so far

7   as to advocate to the Federal Circuit that it should be exempt from the constructive notice

8   requirements because its licenses with third parties resulted from contested litigation and it would

9   help Finjan settle cases if it did not need to comply with the requirements of § 287. Fed. Cir. Dkt.

10  18 at 73-75 (arguing "Not only is requiring settling defendants mark their products contrary to the

11  rule of reason, setting forth such a rule would be contrary to the strong policy of this Court to

12  encourage parties to settle").  Finjan's position reflects a fundamental misunderstanding of the

13  purpose of constructive notice, which serves patent law's public notice function. *Arctic Cat*, 876

14  F.3d at 1366.  While Finjan's proposed exemption would make it easier for professional patent

15  plaintiffs like Finjan to obtain licensing revenue, it certainly would not benefit the public-at-large.

16  Not surprisingly, the Federal Circuit did not take Finjan's suggestion to create such an exception.

17                    ii.      *Finjan Tried To Establish Actual Notice By Obscuring The Factual*

18                             *Record And Misstating The Caselaw.*

19          Given the frivolity of Finjan's arguments concerning constructive notice, the only way

20  Finjan could put forth a viable claim for damages against the ATP Appliance on the '780 Patent was

21  to show that it provided actual notice to Juniper or Juniper's predecessor, Cyphort, prior to the

22  expiration of the '780 Patent.  The problem for Finjan is that Finjan did not provide any such notice.

23          Actual notice requires an affirmative communication by the patentee to the alleged infringer

24  that includes a "charge of infringement of specific patents by a specific product or group of

25  products." *Funai Elec. Co.* v. *Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).  The

26  only evidence Finjan pointed to, however, was (1) a letter that failed to identify the '780 patent,

27  (2) a draft license that also failed to specifically mention the '780 patent, and (3) a presentation that

28  noted the '780 patent as one of the patents previously asserted against other third-party defendants

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 19 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1   but did not allege that the ATP Appliance was infringing the '780 patent.  Dkt. 491 at 13-14.

2          During the hearing, the Court repeatedly asked Finjan whether it could identify **any**

3   document that provided notice of a specific allegation of infringement as to the '780 Patent.

4   Dkt. 457 at 4:5-6 ("Wait.  Did that letter call out the 780 patent?"), 4:9-10 ("That is not going to fly.

5   Give me one where the 780 was called out."), 5:13-15 ("All right.  You are going to lose on that

6   point unless you can show me you did a claim chart that showed the 780 was violated."), 7:1-2 ("I'm

7   sorry.  Was the 780 ever called out on anything?"), 7:12 ("Does it call out the 780?"), 8:3 ("Where

8   does it say 780 in here?"), 8:8-9 ("Mr. Andre, here, I'm handing you what she handed me.  Show

9   me where the letters 780 are"), 8:18-19 ("All right. So where is the 780 called out here?").  Finjan

10  could not identify a single document doing so, instead repeatedly pointing to documents that did not

11  mention the '780 Patent at all or that mentioned it only against "other people and other products,"

12  not against Juniper products or the ATP appliance.  *E.g. id*. at 7:1-5, 13:8–11.

13         At the hearing, the Court also asked Finjan to identify any caselaw supporting its position

14  that Finjan's generic discussions with Cyphort concerning Finjan's patent portfolio were sufficient

15  to establish actual notice.  Dkt. 457 at 9:16-18.  Finjan pointed the Court to a case from the Southern

16  District of New York—*Novo Nordisk A/S* v. *Becton Dickinson & Co.*, 96 F. Supp. 2d 309, 319-20

17  (S.D.N.Y. 2000), *aff'd,* 304 F.3d 1216 (Fed. Cir. 2002)—and falsely claimed that the Federal Circuit

18  had affirmed the ruling on notice.  *Compare* Dkt. 457 at 11:22-25 ("It was affirmed by the federal

19  circuit too.  That's correct."), *with* 304 F.3d 1216 (not addressing notice).

20         In sum, Finjan never had a good faith basis to contend that it provided either constructive or

21  actual notice of its claim that the ATP Appliance infringed the '780 Patent.  Despite this, Finjan

22  relentlessly pursued the claim through summary judgment and on appeal.  Its constructive notice

23  argument required it to walk back prior admissions made to the Court during the trial and to

24  (incredibly) take the position that third party licensee products that a prior jury found to infringe the

25  '780 Patent did not actually practice the patent.  Its actual notice argument was based on an attempt

26  to obscure the factual record and misrepresent legal precedent to the Court.  Given that Finjan had

27  full knowledge of its failure to require licensees to mark and its lack of pre-suit communications

28  with Juniper/Cyphort concerning the '780 Patent, Finjan knew about this fatal flaw before it even

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 20 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

raised the '780 Patent against the ATP Appliance.  Finjan should be sanctioned for bringing this objectively baseless claim.  *See, e.g.*, *Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014) (finding case exceptional where patentee took positions that were "unsupported by the record" based on facts "it should have known before the lawsuit was filed"); *Straight Path IP*, 411 F. Supp. 3d at 1034 (case exceptional where "[a]t bottom, the record shows that Straight Path pursued an objectively baseless" theory).

### 5. Finjan Repeatedly Forced Juniper To Waste Time And Money On Claims Finjan Did Not Intend To Pursue.

This case is also exceptional because Finjan engaged in a pattern of rejecting Juniper's requests for Finjan to drop meritless claims, forcing Juniper to expend time and money to litigate those claims, and then dropping them before having to expend its own time and money.

As noted in Juniper's prior motion for sanctions, Finjan initially asserted that the SRX alone infringed claim 1 of the '780 Patent, but then failed to even oppose Juniper's motion for summary judgment as to that product during the first round of the patent showdown.  Dkt. 152 at 1:5-6.

To prevent this from happening again, Juniper contacted Finjan before the second round of the "patent showdown" to request that Finjan confirm that it would no longer pursue Claim 9 against SRX or Sky ATP, given that Claim 9 contained the same "hashing" limitation that the Court found dispositive on Claim 1.  Kagan Ex. 6, 10.  Finjan refused, arguing that the Court's ruling did "not apply" to Claim 9.  Kagan Ex. 6 at 1.  Juniper, therefore, filed a notice stating that it would be filing a motion for summary judgment as to Claim 9, which Finjan was asserting against the SRX, Sky ATP and ATP Appliance.  Despite having multiple opportunities to do so, Finjan failed to notify Juniper that it was no longer pursuing Claim 9 against SRX and Sky ATP.  Instead, it sat back while Juniper spent time and money preparing a summary judgment motion and supporting expert declaration regarding SRX and Sky ATP (*see* Dkt. 371), and then (once again) failed to even oppose Juniper's motion as to those products.  *See, e.g.*, Dkt. 393, 491.

Finjan then engaged in the same tactic a ***third*** time.  After the second round of the "patent showdown" concluded, Juniper asked Finjan to tell Juniper which claims it planned to pursue at the October 2019 trial so that the parties could avoid wasting time and money conducting discovery and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 21 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

preparing expert reports on claims that Finjan did not intend to pursue.  Kagan Ex. 7 ("Before we conduct any additional discovery, we think it makes sense for Finjan to identify the particular patents and claims it intends to pursue at the October trial.  This is important because it will ensure that the parties are not wasting time on claims that Finjan has no intention of pursuing.  When does Finjan intend to narrow its claims?").  In response to Juniper (and a separate request from the Court), Finjan identified five claims from five different patents.  Dkt. 516.  Based on Finjan's representation, Juniper incurred significant fees litigating the identified claims, including  taking or defending six fact depositions and two expert depositions, as well as preparing four expert reports on invalidity and inequitable conduct.  Kagan Decl. ¶¶ 12–13.  In addition, both the parties and the Court expended significant resources on no less than five discovery motions related to the claims identified by Finjan in its notice.  Dkt. 504, 530, 532, 543, 560.  After the Court disposed of Claim 1 of the '154 Patent on the OSC, however, Finjan abruptly announced that it would be dismissing all remaining claims so it could file an appeal instead of proceeding to trial on its remaining claims.  Kagan Ex. 8 at 6; Dkt. 601.

Finjan's actions caused Juniper to waste valuable time and resources on claims that it did not earnestly intend to pursue.  This is precisely the sort of wasteful conduct that courts routinely find exceptional.  *See, e.g.*, *Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*, 744 F. Supp. 2d 646, 654 (E.D. Mich. 2010) (finding case exceptional where Plaintiff was asked to drop its claims but nonetheless "proceeded to summary judgment on the patent but failed to file a response to Defendants' summary judgment motion"); *Technology for Energy Corp. v. Hardy*, No. 3:16-cv-91, 2018 WL 8460252, at *2–3 (E.D. Tenn. Feb. 15, 2018) (finding case exceptional where "the plaintiff refused to withdraw or amend its claim before and after the motion to dismiss was filed" which "imposed additional expenses on the opposing parties which should never have been experienced").

### 6. Finjan Further Prolonged This Case By Appealing Five Different Issues, And The Federal Circuit Summarily Rejected Finjan's Arguments

Following dismissal of its remaining claims, Finjan appealed five issues to the Federal Circuit on which it claimed this Court erred. Specifically, Finjan: (1) challenged this Court's ruling of summary judgment of no-infringement as to the '154 Patent, Dkt. 590, repeating its baseless

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473                                              - 22 -                         JUNIPER'S MOTION FOR ATTORNEYS' FEES
                                                                                     Case No. 3:17-cv-05659-WHA

1   claim construction arguments regarding the term "content processor" that this Court found were

2   contrary to the patent and prior claim constructions by the PTAB and Federal Circuit, *see* Section

3   IV.B.3, above, Fed Cir. Dkt. 18 at 32–41; (2) disputed this Court's grant of summary judgment of

4   no-infringement as to the '780 Patent, Dkt. 180 and Dkt. 491, arguing this Court erred in construing

5   the "Downloadable ID" term, Fed Cir. Dkt. 18 at 42–47; (3) sought reversal of the jury verdict of

6   no-infringement as to the '494 Patent, arguing this Court erred by permitting Juniper to cross

7   examine Finjan's expert with Finjan's prior inconsistent statements, Fed Cir. Dkt. 18 at 48–56; (4)

8   challenged this Court's exclusion of its damages opinion regarding '494 Patent, claiming this Court

9   "erred as a matter of law in its assessment of what acts might infringe a system claim," even though

10  this Court never decided that issue and in fact excluded Finjan's expert for improperly attempting

11  to change Finjan's infringement theory, *see* Section IV.B.1, above, Fed Cir. Dkt. 18 at 56-65; and

12  (5) repeated its baseless arguments regarding actual and constructive notice as to the '780 Patent,

13  and asserted a new argument that the Federal Circuit should exempt Finjan from the constructive

14  notice requirement for public policy reasons, *see* Section IV.B.4, above, Fed Cir. Dkt. 18 at 67-77.

15          The Federal Circuit held argument on Finjan's appeal on October 7, 2020, and found

16  Finjan's assertions so meritless that it issued a summary order just two days later rejecting Finjan's

17  arguments and affirming this Court in full.  Dkt. 627.  Finjan's appeal is thus just one more example

18  of Finjan continuing to needlessly pursue claims it knew were meritless.  Further, because Finjan's

19  appeal largely repeated the arguments it made in this Court that are discussed above, Juniper should

20  be awarded its attorneys' fees incurred in being forced to oppose those arguments yet again in the

21  Federal Circuit.  *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380

22  (Fed. Cir. 2017) (trial court may "award[] fees for the entire case, including any subsequent

23  appeals'") ; *Straight Path*, 2020 WL 5522993, at *3 ("district courts have authority to award legal

24  fees arising from an appeal of an order dismissing a lawsuit found to be exceptional.").

25          **C.      Juniper Should Be Awarded $8,656,971 In Reasonable Attorneys' Fees**

26          "[A] case should be viewed more as an 'inclusive whole' rather than as a piecemeal process

27  when analyzing fee-shifting under § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d

28  513, 516 (Fed. Cir. 2014).  Therefore, where a case is found exceptional based on grounds that a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 23 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

party pursued meritless claims, a court may award fees for up to the "entire case," *id*., and "need not parse through [a party's] actions to determine the cost associated with every discrete instance of 'exceptional' conduct." *Kilopass Tech., Inc. v. Sidense Corp*., 82 F. Supp. 3d 1154, 1165-67 (N.D. Cal. 2015); *SRI Int'l, Inc. v. Cisco Sys., Inc*., No. 13-1534, 2020 WL 1285915, at \*4-5 (D. Del. Mar. 18, 2020) (awarding fees for entire case where "it was not only the unreasonable manner in which the case was litigated, but also the lack of substantive strength").

Here, Finjan's pursuit of meritless claims and litigation misconduct entitle Juniper to its reasonable attorneys' fees for the entire case, as evidence of Finjan's colossal loss on the claims that it designated as its first- and second-best claims against Juniper. Nevertheless, Juniper voluntarily limits its request for attorneys' fees to $8,656,971, which includes only fees incurred litigating Finjan's meritless claims in this Court and the Federal Circuit, and excludes fees Juniper incurred for collateral proceedings such as *inter partes* reviews related to Finjan's asserted patents as well as categories of fees that, in the exercise of reasonable billing judgment, Juniper is not claiming.

Juniper's request for $8,656,971 in fees is detailed in the concurrently filed Kagan declaration, which describes the attorneys involved, hours spent by each attorney on each phase of the case, the hourly rates and fees claimed, and voluntary reductions that were made to Juniper's fee request. Kagan Decl. ¶¶ 6, 15–20.

Juniper's fee request, which follows the lodestar approach of multiplying the hours spent by a reasonable rate, is reasonable in view of rates and fee awards previously approved in this District. Juniper seeks fees based on hourly rates of $950 to $1,095 for partners and $600 to $750 for associates. Kagan Decl. ¶¶ 7–14; *Straight Path*, 2020 WL 2539002, at \*4 ("the lodestar method (hours times a reasonable rate) generally guides fee shifting. And the Supreme Court has 'established a 'strong presumption' that the lodestar represents the 'reasonable' fee.'"). These rates are lower than the rates Juniper actually paid in this case and have been reduced consistent with prior decisions in this District approving the same rates as reasonable. Kagan Decl. ¶¶ 7–8; *see also, e.g*., *Banas v. Volcano Corp*., 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (finding "hourly rates ranging from $355 to $1,095 per hour for partners and associates" "within the prevailing market rates for similar cases in the Northern District"); *Wynn v. Chanos*, No. 14–cv–04329–WHO, 2015

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 24 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1  WL 3832561, at *2 (N.D. Cal. Jun. 19, 2015) (approving rates of up to $1,085 for partners and $710

2  for associates); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730,

3  at *9 (N.D. Cal. Sep. 2, 2015) (finding reasonable "billing rates for partners [that] range from about

4  $490 to $975" and "billing rates for non-partner attorneys" from about $310 to $800").

5         The hourly rates sought are also comparable to the prevailing rates noted in the 2019

6  American Intellectual Property Law Association ("AIPLA") Report of the Economic Survey, which

7  indicates that that partner rates in the Bay Area averaged $665 per hour in 2019, with at least 10

8  percent of rates exceeding $1,023 per hour.  Kagan Decl. ¶ 7; Kagan Ex. 5 at I-29.  The AIPLA

9  report also indicates that associate rates for the West region averaged $413 per hour, with at least

10  10 percent of rates exceeding $664 per hour.  *Id.* at I-42.  *See Big Baboon, Inc. v. SAP Am., Inc.*,

11  No. 17-cv-02082-HSG, 2019 WL 5088784, at *8 (N.D. Cal. Sep. 9, 2019) ("In intellectual property

12  cases, federal courts routinely rely on the American Intellectual Property Law Association

13  ('AIPLA') economic survey results published every other year.").

14         The total amount of fees sought, about $8.6 million, is also reasonable in light of the cost of

15  litigating comparable patent cases through trial.  For example, the 2019 AIPLA Report indicates

16  that, in patent cases such as this one with over $25 million at risk, the total cost for litigation through

17  trial averaged $5.1 million, with costs exceeding $9 million in at least 25 percent of cases.  Kagan

18  Ex. 5 at 56.  Indeed, courts have approved fee awards far larger than the amount sought by Juniper

19  for patent cases litigated through trial.  *See, e.g.*, *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,

20  549 F.3d 1381, 1390–91 (Fed. Cir. 2008) (affirming award of "$16,800,000 for attorney fees" for

21  case litigated through trial); *Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 13-cv-04057-BLF, 2017

22  WL 3007071, at *9 (N.D. Cal. July 14, 2017) (awarding $12.59 million in fees for case litigated

23  through trial resulting in successful defense verdict); *Therasense, Inc. v. Becton, Dickinson & Co.*,

24  No. C 04-02123 WHA, 2012 WL 1877895, at *2-4 (N.D. Cal. May 22, 2012) (award of "six million

25  dollars" in attorneys' fees for case litigated through bench trial).

26  **V.**  **CONCLUSION**

27         For the foregoing reasons, Juniper respectfully requests the Court grant its motion.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 25 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

1 | Dated:  November 30, 2020

2

Respectfully submitted,

IRELL & MANELLA LLP

By:  /s/ *Rebecca Carson*
    Rebecca Carson

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10891473

- 26 -

JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA