1

IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)

2

jkagan@irell.com
1800 Avenue of the Stars, Suite 900

3

Los Angeles, California 90067-4276
Telephone: (310) 277-1010

4

Facsimile: (310) 203-7199

5

6

Rebecca Carson (SBN 254105)
rcarson@irell.com

7

Ingrid M. H. Petersen (SBN 313927)
ipetersen@irell.com

8

840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324

9

Telephone: (949) 760-0991
Facsimile: (949) 760-5200

10

11

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

12

**UNITED STATES DISTRICT COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

**SAN FRANCISCO DIVISION**

15

FINJAN, INC., a Delaware Corporation,

16

Plaintiff,

17

vs.

18

JUNIPER NETWORKS, INC., a Delaware
Corporation,

19

Defendant.

20

21

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:17-cv-05659-WHA

**DECLARATION OF JONATHAN S. KAGAN IN SUPPORT OF JUNIPER NETWORKS, INC.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**

Hearing Date: January 7, 2021
Hearing Time: 8:00 a.m.
Judge: Hon. William Alsup
Courtroom: 12

22

23

24

25

26

27

28

## **DECLARATION OF JONATHAN S. KAGAN**

I, Jonathan S. Kagan, declare as follows:

1.      I am a partner at the law firm of Irell & Manella LLP, counsel of record for Defendant Juniper Networks, Inc. ("Juniper") in the above-captioned action.  I am a member in good standing of the State Bar of California.  I submit this Declaration in support of Juniper's Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

### **Overview of Persons for Whose Services Fees Are Claimed**

2.      Juniper retained Irell & Manella LLP ("Irell & Manella") to represent it in the above captioned matter.  Irell has represented Juniper throughout the entirety of the case, including through trial and appeal.

3.      Irell & Manella is a California-based law firm serving clients worldwide that specializes in intellectual property and other complex litigation, among other practice areas.  Irell & Manella has achieved significant recognition for its exceptional track record of successful outcomes for its clients, including being named the 2018 Intellectual Property Litigation Department of the Year by the *American Lawyer*, being recognized by Chambers USA's 2020 guide as a leading firm in intellectual property, and receiving recognition for its intellectual property practice in the 2020 editions of *Benchmark Litigation, IAM Patent 1000, MIP IP Stars and WTR1000: The World's Leading Trademark Professionals*, among other publications.  Irell & Manella attorneys have also recently received numerous awards and honors, including being named to the 2020 Top IP Lawyers in California and Top 100 Lawyers in California (*Daily Journal*), 2019 Top Litigators by the *Los Angeles Business Journal*, and 2018 Trials MVP by *Law360*, as well as additional honors from LMG Life Sciences, the PTAB Bar Association, *The National Law Journal*, *The Recorder*, and BTI Client Service All-Stars, among others.  Irell & Manella has significant experience in trying complex patent cases through trial and appeal and has an excellent track record of success in such cases, including not only the verdict obtained for Juniper in this case, but also significant jury verdicts for other clients (including, for example, over $1 billion in jury verdicts in 2019-2020 alone).

4. Over the three-plus years of litigating this case, at least eight Irell & Manella attorneys provided legal services to Juniper in connection with this matter. Irell & Manella billed Juniper for the legal services of its attorneys on an hourly basis, with each attorney recording billable time spent on the matter on a daily basis (down to the tenth of an hour), along with a specific description of the work performed for each billing entry.

5. As detailed further below, Juniper voluntarily limits its request for fees to approximately $ 8.66 million. The actual fees paid by Juniper in connection with this matter were well in excess of this number.

6. The names, qualifications, and total hours for which Juniper claims fees for each Irell & Manella attorney rendering billable services to Juniper in connection with this matter are summarized below, along with the hourly rate for which Juniper is seeking fees for services rendered by that attorney. The hourly rates actually charged by Irell & Manella and paid by Juniper exceed the below rates for which Juniper seeks reimbursement, however, Juniper has voluntarily reduced the hourly rates upon which it seeks fees to conform to decisions in this district regarding reasonable lodestar rates. Juniper has also excluded hours spent on tasks for which, in the exercise of reasonable judgment, it is not seeking fees.

a. **Jonathan S. Kagan**: I am a partner at Irell & Manella and a member of the firm's Executive Committee. I have nearly thirty years of experience as an intellectual property litigator, including significant experience in cases involving cyber security technology, and have been recognized as a leading intellectual property litigator by the *Daily Journal*, *the Legal 500*, *Best Lawyers of America*, and the Southern California Super Lawyers List. I have also achieved significant defense victories for defendants accused of patent infringement, including three that were recognized by the *Daily Journal* on its annual list of top defense victories. I am a former president of the Century City Bar Association and serve on the Editorial Advisory Board of the National Institute for Trial Advocacy. I served as co-lead counsel for Juniper from the beginning of the case through appeal. I spent over 1,639 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $1,095 per hour for my legal services. A copy of my firm bio is attached hereto as **Exhibit 1**.

DECLARATION OF JONATHAN S. KAGAN
ISO MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

b.   **Alan J. Heinrich**: Mr. Heinrich is a partner at Irell & Manella and previously served on the firm's Executive Committee.   Mr. Heinrich has thirty years of experience as an intellectual property litigator, and has participated in trials that have obtained multi-hundred million-dollar judgments on behalf of patent owners and has also successfully defended against multi-hundred million-dollar damages claims on behalf of accused infringers.   Mr. Heinrich has been recognized as a top intellectual property litigator by Southern California Super Lawyers.   Mr. Heinrich is also an adjunct faculty member at the University of California, Los Angeles, where he teaches Patent Intensive, an advanced patent law seminar, and has also taught Patent Law and Federal Courts at Loyola Law School.   Mr. Heinrich was a core member of the December 2018 trial and post-trial teams.   Mr. Heinrich spent over 265 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $1,000 per hour for Mr. Heinrich's legal services.   A copy of Mr. Heinrich's firm bio is attached hereto as **Exhibit 2**.

c.   **Rebecca Carson**: Ms. Carson is a partner at Irell & Manella and has over thirteen years of experience as an intellectual property litigator, including extensive experience in cases involving network security and computer software technology.   Ms. Carson was recognized by the *Daily Journal* as one of the Top 40 Lawyers Under 40 in 2018 and one of the 75 Top Intellectual Property Lawyers in California in 2019.   She was also recognized nationally in 2018 as one of three "Rising Stars" in technology law by Law360.   Ms. Carson has significant trial experience, and has been a member of five trial teams for patent cases in various federal courts over the past three years, each of which has resulted in a favorable jury verdict for her client.   Ms. Carson served as co-lead counsel from the beginning of this case through appeal.   The December 2018 trial in this matter was the first trial in which she served as co-lead trial counsel.   Ms. Carson spent over 2,317 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $950 per hour for Ms. Carson's legal services.   A copy of Ms. Carson's firm bio is attached hereto as **Exhibit 3**.

d.   **Josh Glucoft**: Mr. Glucoft is currently a partner at Kirkland & Ellis LLP, and was formerly an associate at Irell & Manella..   At the time of his work on this matter, Mr. Glucoft had four or more years of experience as an intellectual property litigator, including experience with

patents covering a variety of technologies within the fields of electrical engineering and computer science.  Mr. Glucoft also has significant experience practicing before the Patent and Trademark Office in post-grant proceedings.  Mr. Glucoft obtained his M.S. in Electrical Engineering from Stanford University, and his J.D. from Stanford Law School. Mr. Glucoft spent over 1,921 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $750 per hour for Mr. Glucoft's legal services.

e.    **Casey Curran**: Ms. Curran is a former associate at Irell & Manella.  At the time of her work on this matter, Ms. Curran had at least four years of patent litigation and federal courts experience, including multiple patent trials in federal courts.  Ms. Curran was a core member of the Irell team during the first round of the "patent showdown" and at the December 2018 trial, where she handled oral argument on a number of evidentiary motions and did the direct examination of Juniper's damages expert.  Prior to joining Irell, Ms. Curran served as a law clerk for the Hon. Garland E. Burrell of the Eastern District of California, and obtained her J.D. from UCLA Law School where she was elected to the Order of the Coif.  Ms. Curran left Irell in early 2019, and currently works for the California Department of Justice.  Ms. Curran spent over 1,167 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $750 per hour for Ms. Curran's legal services.

f.    **Sharon Song**: Ms. Song is a former associate at Irell & Manella.  At the time of her work on this matter, Ms. Song had at least two years of experience as an intellectual property and commercial litigator, including experience successfully defending patents in *inter partes* review proceedings.  Ms. Song was a core member of the Irell team during the first round of the "patent showdown" and at the December 2018 trial.  She handled the oral argument for Finjan's motion to dismiss various affirmative defense in this case, which was her first oral argument.  Ms. Song obtained her J.D. from Harvard Law School.  Ms. Song spent over 834 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $650 per hour for Ms. Song's legal services.

g.    **Ingrid Petersen**: Ms. Petersen is an associate at Irell & Manella.  At the time of her work on this matter, Ms. Petersen had at least three years of litigation and federal courts

experience.  Prior to joining Irell, Ms. Petersen served as a law clerk to the Honorable James V. Selna on the District Court for the Central District of California, and to the Honorable Karen Nelson Moore on the United States Court of Appeals for the Sixth Circuit. Ms. Petersen obtained her J.D. from the University of California Irvine, *summa cum laude*.  Ms. Petersen spent over 506 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $700 per hour for Ms. Petersen's legal services.  A copy of Ms. Petersen's firm bio is attached hereto as **Exhibit 4**.

h.     **Kevin Wang**: Mr. Wang is a former associate at Irell. At the time of his work on this matter, Mr. Wang had at least one year of experience as an intellectual property litigator. Mr. Wang was a core member of the Irell team through both rounds of the "patent showdown," the December 2018 trial, and the preparations for the October 2019 trial (before Finjan dismissed its claims with prejudice).  Mr. Wang argued his first motion during the December 2018 trial, and also took his first deposition in this case.  Mr. Wang obtained his J.D. from the University of Chicago Law School.  Mr. Wang spent over 1,968 hours on this matter (excluding tasks for which Juniper is not seeking fees), and Juniper paid in excess of $600 per hour for Mr. Wang's legal services.

7.     The hourly billing rates identified in the foregoing paragraphs for which Juniper seeks reimbursement, which range from $950 to $1,095 for partners and $600 to $750 for associates, are comparable to prevailing hourly rates for intellectual property litigation in the Northern District of California.   For example, the American Intellectual Property Law Association ("AIPLA") conducts a semi-annual economic survey of approximately 10,000 AIPLA members regarding hourly billing rates, litigation costs, and other economic data, which has been cited in this district as a basis for determining a reasonable lodestar fee.  *See*, *e.g*., *Big Baboon, Inc. v. SAP Am., Inc*., No. 17-cv-02082-HSG, 2019 WL 5088784, at *8 (N.D. Cal. Sep. 9, 2019) ("In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ("AIPLA") economic survey results published every other year."); *Therasense, Inc. v. Beckton, Dickinson, & Co*., No. C 04-02123 WHA, 2009 WL 10736790, at *10 (N.D. Cal. Apr. 1, 2009) ("In determining a reasonable rate, a court may refer to American Intellectual Property Law Association ("AIPLA") surveys.").  The 2019 AIPLA Report of the Economic Survey, relevant excerpts of

which are attached hereto as **Exhibit 5**, indicates that partner rates in the Bay Area averaged $665 per hour in 2019, with at least 10 percent of rates exceeding $1,023 per hour.  Ex. 5 at I-29.  The AIPLA report also indicates that associate rates for the West region averaged $413 per hour, with at least 10 percent of rates exceeding $664 per hour.  *Id*. at I-42.

8.    The hourly billing rates for which Juniper seeks reimbursement are also comparable to rates that have been previously approved as reasonable in this district.  *See, e.g.*, *Banas v. Volcano Corp.*, 47 F.Supp.3d 957, 965 (N.D. Cal. 2014) (finding "hourly rates ranging from $355 to $1,095 per hour for partners and associates" "within the prevailing market rates for similar cases in the Northern District"); *Wynn v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at *2 (N.D. Cal. Jun. 19, 2015) (finding reasonable hourly rates of up to $1,085 for partners and up to $710 for associates); *AnTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020) (approving rates of "$1,000 per hour for senior partners" and "$855 per hour for junior partners"); *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sep. 2, 2015) (finding reasonable "billing rates for partners [that] range from about $490 to $975" and "billing rates for non-partner attorneys, including senior counsel, counsel, senior associates, associates, and staff attorneys, [that] range from about $310 to $800"); *Max Sound Corp. v. Google, Inc.*, No. 14-cv-04412, 2017 WL 4536342, at *12 (N.D. Cal. Oct. 11, 2017) (approving rates of up to $950 per hour for partners); *Perfect 10, Inc. v. Giganews, Inc.*, CV 11-07098-AB (SHx), 2015 WL 1746484, at *20-21 (C.D. Cal. Mar. 24, 2015) (finding reasonable hourly fees in intellectual property case for partners from $610 to $930 and for associates from $360 to $690); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) (noting that "district courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable"); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238, 2019 WL 2579260, at *11 (N.D. Cal. Jun. 24, 2019) (approving hourly rates of up to $909 for partners, $459 for associates).

9.    The total amount of fees for which Irell & Manella seeks reimbursement, $8,656,971, is also comparable to the cost of litigating comparable cases through trial.  For example, the 2019 AIPLA Report of the Economic Survey indicates that, in patent cases such as this one with over $25

million at risk, the total cost for litigation through trial averaged $5.1 million, with costs exceeding $9 million in at least 25 percent of cases.  Ex. 5 at 56.  Indeed, courts have approved fee awards of up to nearly $17 million for comparable patent cases litigated through trial and appeal.  *See, e.g.*, *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1390–91 (Fed. Cir. 2008) (affirming award of "$16,800,000 for attorney fees" for case litigated through trial); *Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 13-cv-04057-BLF, 2017 WL 3007071, at *9 (N.D. Cal. July 14, 2017) (awarding $12.59 million in fees for case litigated through trial resulting in successful defense verdict); *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04–02123 WHA, 2012 WL 1877895, at *2-4 (N.D. Cal. May 22, 2012) (award of "six million dollars" in attorneys' fees for case litigated through bench trial).

10.     The total amount of fees sought is also reasonable in light of the complexity of this case, which involved nine patents, multiple rounds of pleading motions, two rounds of summary judgment, a jury trial, and appeal.

11.     For example, the pleading phase of this case included several amendments to the pleadings, as well as multiple pleading motions.  For example, Finjan filed multiple opposed motions for leave to amend—one to add the ATP Appliance to the case and one to add the '731 Patent, which was one of the patents that Finjan eventually agreed to dismiss with prejudice.

12.     As another example of the complexity and significant effort involved in litigating this case, during discovery Juniper took or defended at least 40 fact and expert depositions (of 28 different witnesses), including the following witnesses: (1) Yuly Tenorio, deposed May 8, 2018; (2) Rakesh Manocha, deposed May 16, 2018; (3) John Garland, deposed May 24, 2018 and November 2, 2018; (4) Raju Manthena, deposed May 30, 2018; (5) Chandra Nagarajan, deposed May 31, 2018; (6) Aviel Rubin, deposed June 12, 2018, July 6, 2018, November 9, 2018, March 9, 2019, and April 2, 2019;  (7) Dr. Eric Cole, deposed June 21, 2018 and November 14, 2018;  (8) Michael Mitzenmacher, deposed July 3, 2018, March 4, 2019, March 28, 2019, and July 30, 2019; (9) Phil Hartstein, deposed October 23, 2018 and July 15, 2019; (10) Alessandro Orso, deposed October 26, 2018; (11) Julie Mar-Spinola, deposed October 30, 2018; (12) Ivan Chaperot, deposed November 6, 2018; (13) Dr. Harry Bims, deposed November 7, 2018; (14) Kevin Arst, deposed November 9,

2018; (15) Keith Ugone, deposed November 13, 2018; (16) Meredith McKenzie, deposed November 14, 2018; (17) Michael Bushong, deposed November 15, 2018 and July 10, 2019; (18) Scott Coonan, deposed November 16, 2018; (19) Shelly Gupta, deposed November 16, 2018 and December 7, 2018; (20) David Kroll, deposed November 16, 2018; (21) Michael Kim, deposed November 16, 2018; (22) Alexander Icasiano, deposed November 30, 2018; (23) Khurram Islah, deposed February 7, 2019; (24) Dawn-Marie Bey, deposed June 26, 2019; (25) Frank Jas, deposed July 2, 2019; (26) Nimrod Vered, deposed July 8, 2019; (27) Jay LePera, deposed July 11, 2019; (28) Frederick Cohen, deposed July 31, 2019.

13.     As another example of the significant complexity of this case and the amount of work involved, this case also involved expansive expert discovery.  For example, this case involved at least 27 different expert reports or declarations (15 from Finjan, 12 from Juniper), from at least 15 different expert witnesses (9 from Finjan, 6 from Juniper), and 16 expert depositions.  Further, a majority of expert reports and declarations were prepared after the jury trial on the '494 Patent, and concerned claims addressed in the second round of summary judgment or that Finjan ultimately dismissed with prejudice.  The below tables list each expert that provided a report and/or declaration, the subject of their report or declaration, and the date(s) they were deposed:

**Finjan**

| Expert (Report or Declaration Date) | Subject of Report or Declaration | Date of Deposition |
|---|---|---|
| Dr. Eric Cole (6/7/2018) | 494 Infringement | June 21, 2018 |
| Dr. Michael Mitzenmacher (6/28/18) | 780 Infringement | July 3, 2018 |
| Kevin Arst (9/11/18) | 494 Damages | November 9, 2018 |
| Dr. Harry Bims (9/11/18) | Tech Tutorial | November 7, 2018 |
| Dr. Eric Cole (9/10/18) | 494 Infringement | November 14, 2018 |
| Dr. Alessandro Orso (10/11/18) | 494 Validity | October 26, 2018 |
| Dr. Michael Mitzenmacher (2/14/19) | 154 Infringement | March 4, 2019 |
| Dr. Michael Mitzenmacher (3/14/19) | 780 Infringement | March 28, 2019 |
| Dr. Michael Mitzenmacher (5/13/19) | 154 Infringement | July 30, 2019 |

| Expert (Report or Declaration Date) | Subject of Report or Declaration | Date of Deposition |
|---|---|---|
| Dr. Eric Cole (7/18/19) | 494 Infringement (ATP Appliance) | N/A |
| Dr. Michael Mitzenmacher (7/18/19) | 731 and 154 Infringement | N/A |
| Michael T. Goodrich (7/18/19) | Source Code Review | N/A |
| Nenad Medvidovic (7/18/19) | 633 Infringement | N/A |

**Juniper**

| Expert (Report or Declaration Date) | Subject of Report or Declaration | Date of Deposition |
|---|---|---|
| Dr. Aviel Rubin (6/7/18) | 780 Noninfringement | June 12, 2018 |
| Dr. Aviel Rubin (6/28/18) | 494 Noninfringement | July 6, 2018 |
| Dr. Aviel Rubin (9/11/18) | 494 Non-Infringement | November 9, 2018 |
| Dr. Aviel Rubin (10/11/18) | 494 Invalidity | November 9, 2018 |
| Dr. Aviel Rubin (11/7/18) | Damages Rebuttal | November 9, 2018 |
| Keith Ugone (11/7/18) | 494 Damages | November 13, 2018 |
| Dr. Aviel Rubin (2/14/19) | 780 Noninfringement | March 9, 2019 |
| Dr. Aviel Rubin (3/14/19) | 154 Noninfringement | April 2, 2019 |
| Kevin Butler (7/19/19) | 494, 844, 731 Invalidity | N/A |
| Dr. Frederick Cohen (7/19/19) | 633, 154 Invalidity | July 31, 2019 |
| Sylvia Hall-Ellis (7/19/19) | Availability of Prior Art | N/A |
| Robert Stoll (7/19/19) | Inequitable Conduct | N/A |

14.    Although the hourly rates sought by Juniper are toward the upper end of rates previously found reasonable in this District, the rates Juniper seeks are below the rates that Irell & Manella actually charged and that Juniper actually paid in this case.  Further, the rates are justified by Irell & Manella's experience, expertise, and success in handling similar complex patent cases (discussed further above), the complexity of this case and the significant amount of work involved, as well as the excellent outcome that Irell & Manella obtained for Juniper in this case, which involved Juniper prevailing on all patents and claims.

**Summary of Time Spent by Each Attorney**

15.     The below tables summarize the amount of time spent by each attorney for whose services fees are claimed on each phase of the case, the hourly rate sought for each attorney (which is in all cases lower than the hourly rates actually paid by Juniper), and the total fees claimed for that attorney.

16.     To ensure reasonableness of its request, Juniper has voluntarily reduced the fees sought by this motion by doing at least the following:

    a.     Reducing the hourly rates sought for all attorneys below what Juniper actually paid;

    b.     Excluding fees for attorneys who were not core members of the case team, such as attorneys who assisted with isolated tasks or projects in the case;

    c.     Omitting fees charged by non-attorneys, such as paralegals and other Irell & Manella support staff, and seeking fees for attorney billers only;

    d.     Excluding fees related to *inter partes* review proceedings regarding Finjan's patents;

    e.     Excluding fees related to settlement and mediation efforts;

    f.     Excluding fees related to preparing Juniper's pending motion for sanctions (Dkt. 409);

    g.     Not seeking expert fees or any third party costs;

    h.     Exercising reasonable judgment to exclude time spent on administrative or internal tasks, such as internal meetings between counsel; and

    i.     Exercising reasonable judgment to exclude supervisory time associated with having junior attorneys take depositions and/or argue motions.

17.     The below time summaries are based on billing records maintained by Irell & Manella in the ordinary course of business.  Each Irell & Manella attorney is required to enter their billable time into an electric billing system on a daily basis, including time spent (down to the tenth of an hour) and a description of services rendered.  The attorney is also required to complete fields

concerning the case phase, task, and type of action performed. Electronic records of these entries are maintained in Irell & Manella's electronic timekeeping program.

18.     Irell & Manella billed Juniper for its legal services on a monthly basis, with each bill containing a summary of all time entries for that period, including the billing attorney, hours, and description of work performed. Irell & Manella maintains records of all bills for this matter in its electronic billing system.

19.     Fee summary tables:

**Category 1. Initial Analysis of the Pleadings, Pleadings Motions, and Pleadings (including initial assessment of Finjan's asserted patents and potential defenses)**

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 100.70 | $1,095 | $110,267 |
| Rebecca Carson | 200.80 | $950 | $190,760 |
| Josh Glucoft | 118.80 | $750 | $89,100 |
| Sharon Song | 86.70 | $650 | $56,355 |
| Kevin Wang | 194.00 | $600 | $116,400 |
| Total for Category | 701.00 | -- | $562,882 |

**Category 2. Fact and Expert Discovery Prior to December 2018 Trial**

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 217.70 | $1,095 | $238,382 |
| Rebecca Carson | 387.00 | $950 | $367,650 |
| Josh Glucoft | 336.80 | $750 | $252,600 |
| Casey Curran | 422.30 | $750 | $316,725 |
| Sharon Song | 193.50 | $650 | $125,775 |
| Kevin Wang | 249.30 | $600 | $149,580 |
| Total for Category | 1,806.60 | -- | $1,450,712 |

10893843

**Category 3. Motion Practice Prior to December 2018 Trial**

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 319.30 | $1,095 | $349,634 |
| Rebecca Carson | 388.80 | $950 | $369,360 |
| Josh Glucoft | 350.20 | $750 | $262,650 |
| Casey Curran | 288.20 | $750 | $216,150 |
| Sharon Song | 180.00 | $650 | $117,000 |
| Kevin Wang | 214.00 | $600 | $128,400 |
| **Total for Category** | 1,740.50 | -- | $1,443,194 |

**Category 4. Pre-Trial Motions, Pre-Trial Prep, and Trial for December 2018, as well as Pre-Trial Prep for October 2019 Trial**

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 331.20 | $1,095 | $362,664 |
| Alan Heinrich | 265.20 | $1,000 | $265,200 |
| Rebecca Carson | 532.90 | $950 | $506,255 |
| Josh Glucoft | 484.40 | $750 | $363,300 |
| Casey Curran | 457.20 | $750 | $342,900 |
| Sharon Song | 374.00 | $650 | $243,100 |
| Ingrid Petersen | 37.80 | $700 | $26,460 |
| Kevin Wang | 490.60 | $600 | $294,360 |
| **Total for Category** | 2,973.30 | -- | $2,404,239 |

**Category 5. Fact and Expert Discovery After December 2018 Trial**

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 189.80 | $1,095 | $207,831 |
| Rebecca Carson | 380.20 | $950 | $361,190 |
| Josh Glucoft | 306.50 | $750 | $229,875 |
| Ingrid Petersen | 318.20 | $700 | $222,740 |

| Kevin Wang | 348.30 | $600 | $208,980 |
| **Total for Category** | 1,543.00 | -- | $1,230,616 |

### Category 6. Motion Practice After December 2018 Trial

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 232.20 | $1,095 | $254,259 |
| Rebecca Carson | 386.20 | $950 | $366,890 |
| Josh Glucoft | 324.70 | $750 | $243,525 |
| Kevin Wang | 472.10 | $600 | $283,260 |
| **Total for Category** | 1,415.20 | -- | $1,147,934 |

### Category 7. Appeal

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 248.90 | $1,095 | $272,546 |
| Rebecca Carson | 41.80 | $950 | $39,710 |
| Ingrid Petersen | 150.20 | $700 | $105,140 |
| **Total for Category** | 440.90 | -- | $417,396 |

### Overall Totals

| Attorney | Hours | Hourly Rate | Fees Claimed |
|---|---|---|---|
| Jon Kagan | 1,639.80 | $1,095 | $1,795,581 |
| Alan Heinrich | 265.20 | $1,000 | $265,200 |
| Rebecca Carson | 2,317.70 | $950 | $2,201,815 |
| Josh Glucoft | 1,921.40 | $750 | $1,441,050 |
| Casey Curran | 1,167.70 | $750 | $875,775 |
| Sharon Song | 834.20 | $650 | $542,230 |
| Ingrid Petersen | 506.20 | $700 | $354,340 |
| Kevin Wang | 1,968.30 | $600 | $1,180,980 |
| **Total for Case** | 10,620.50 | -- | $8,656,971 |

20. The above seven categories related directly to the grounds for which Juniper seeks an exceptional case finding in its motion. For example, all categories involved work related to Finjan's assertion of baseless infringement and notice theories as to at least the '494, '154, and '780 patents, which were involved in both rounds of summary judgment, trial, and on appeal. As another example, the fees for at least categories 2–7 (discovery through post-trial motions, and appeal), were incurred due to Finjan's shifting damages case that necessitated significant damages discovery, pre-trial motion practice (such as Juniper's *Daubert* motion to exclude Finjan's improper damages case), a full jury trial on the '494 Patent, and post-trial motion practice. Similarly, all categories relate to Finjan's assertion of baseless infringement and notice theories as to the '154 and '780 Patents, and decision to prolong litigation regarding claims that it did not intend to pursue.

## Certification of Meet and Confer

21. I met and conferred with counsel for Finjan for the purpose of attempting to resolve any disputes regarding Juniper's motion for attorneys' fees on November 27, 2020. Counsel for Finjan indicated it opposes the motion.

## Additional Exhibits

22. Attached hereto as **Exhibit 6** is a copy of email correspondence between counsel for Juniper and counsel for Finjan, dated January 2, 2019 to January 8, 2019.

23. Attached hereto as **Exhibit 7** is a copy of an email from Ingrid Petersen to counsel for Finjan dated May 17, 2019.

24. Attached hereto as **Exhibit 8** is a copy of an email from Paul Andre, counsel for Finjan, to counsel for Juniper dated July 29, 2019.

25. Attached hereto as **Exhibit 9** are excerpts of the transcript of the deposition of Dr. Eric Cole, dated June 21, 2018.

26. Attached hereto as **Exhibit 10** is a copy of an email from Josh Glucoft to counsel for Finjan dated December 19, 2018.

1        Executed this 30th day of November, 2020, at Los Angeles, California.

2        I declare under penalty of perjury under the laws of the United States of America that the

3   foregoing is true and correct.

4

5                                              /s/ *Jonathan S. Kagan*
                                               _____
6                                                  Jonathan S. Kagan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JONATHAN S. KAGAN
ISO MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

## **ATTESTATION**

Pursuant to Local Rule 5-1(i), I attest that concurrence in the filing of this document has been obtained from the above signatory.

/s/ *Rebecca Carson*

Rebecca Carson