Juanita R. Brooks (CA SBN 75934), brooks@fr.com
Frank J. Albert (CA SBN 247741), albert@fr.com
Oliver J. Richards (CA SBN 310972), ojr@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Robert Courtney (CA SBN 248392), courtney@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff, FINJAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., | Case No. 3:17-cv-05659-WHA |
| Plaintiff, | FINJAN, INC.'S OPPOSITION TO JUNIPER NETWORKS, INC.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285 |
| v. | |
| JUNIPER NETWORKS, INC., | Date:  January 7, 2021 |
| Defendant. | Time: 8:00 a.m. |
| | U.S. District Judge William H. Alsup |
| | Courtroom 12 |

1

## <u>TABLE OF CONTENTS</u>

2   INTRODUCTION ............................................................................................................. 1

3   BACKGROUND ............................................................................................................... 2

4       I.     FINJAN AND THE ASSERTED PATENTS ................................................ 2

5       II.    THIS CASE'S HISTORY ............................................................................. 4

6       III.   FINJAN'S APPEAL ..................................................................................... 5

7   LEGAL STANDARD ........................................................................................................ 5

8   ARGUMENT ..................................................................................................................... 6

9       I.     JUNIPER IS NOT ENTITLED TO ATTORNEYS FEES ............................ 6

10           A.   Finjan's Infringement Case Was Rooted in the Evidence and the Law, and No Part of It Was "Exceptional" Under §

11               285 ....................................................................................................... 7

12               1.   As to the '494 Patent, Finjan won on all but one limitation at summary judgment, and presented

13                   reasonable evidence that the accused Juniper products met the last limitation. ............................ 7

14
15                   a)   Finjan's good faith prosecution of its infringement case turned on a single

16                         limitation that went to the jury. ............................ 7

17                   b)   Nothing about Finjan's '494 infringement case warrants fee-shifting. ............................ 9

18               2.   Finjan's infringement case for the '780 Patent was based on a claim construction adopted by other

19                   district courts, which this Court rejected. ..................................... 10

20               3.   Finjan's '154 case was based on a reasonable construction of the claim language. ............................... 11

21
22                   a)   Finjan's '154 loss resulted from the Court deciding two reasonably disputed issues of

23                         claim construction. ...................................... 12

24                   b)   Nothing about Finjan's '154 infringement case warrants fee shifting. ............................ 13

25            B.   Finjan's Damages Case Had Ample Legal and Factual Support, and No Part of It Was "Exceptional" Under § 285 .................... 14

26
27               1.   Finjan's reliance on its damages expert was reasonable and, after the Court excluded that expert

28                   a week before trial, Finjan's presentation of a fact-only damages case was also reasonable ......................... 15

a)     There is no basis for fee-shifting in Finjan's reliance on Mr. Arst's damages model prior to its exclusion..............................16

b)     There is no basis for fee-shifting in Finjan's attempt to establish '494 damages at trial on a fact-only basis...............................17

2.     As to '780 damages, Finjan's plan to rely on actual and constructive notice to establish pre-expiration damages was reasonable...............................19

a)     Finjan's pre-complaint notice case reasonably relied on undisputed communications with Juniper's predecessor that named both the patent and the accused product, and there was no dispute of Finjan's pre-complaint marking...............................19

b)     Finjan's case for actual notice under the '780 Patent was reasonable and good-faith...............................20

c)     Finjan's case for constructive notice under the '780 Patent was reasonable and good-faith...............................21

C.     Finjan's Dismissal of Remaining Claims Promoted Efficiency, Conferred a Windfall to Juniper, and Reflects Neither a Lack of Merit Nor Bad Faith...............................22

D.     Juniper's Claims of Procedural Wastage are Meritless...............................23

E.     Finjan's Appeal Was Not "Exceptional" Under § 285...............................24

IV.     JUNIPER'S CALCULATION OF FEES IS UNREASONABLE...............................24

V.     ANY DETERMINATION OF FEES MUST INVOLVE FINJAN'S PRIOR COUNSEL...............................25

CONCLUSION...............................25

FINJAN'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*,
5
   744 F. Supp. 2d 646 (E.D. Mich. 2010)..................................................................23

6

*Blue Coat Sys., Inc. v. Finjan, Inc.*,
   IPR2016-00492 (PTAB June 8, 2016)....................................................................3
7

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
8
   858 F.3d 1371 (Fed. Cir. 2017).................................................................................9

9

*Deepsouth Packing Co. v. Laitram Corp.*,
10
   406 U.S. 518 (1972)................................................................................................15

11

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011)..............................................................................13
12

*Finjan, Inc. v. Blue Coat System, Inc.*,
13
   2015 WL 3630000 (N.D. Cal. June 2, 2015) ....................................................11, 12

14

*Finjan Software, Ltd. v. Secure Computing Corp.*,
15
   (D. Del. Mar. 28, 2008)............................................................................................3

16

*Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-3999, slip op. (N.D. Cal. Aug. 19,
   2016),..........................................................................................................................3
17

*Finjan, Inc. v. Blue Coat Sys., LLC,* No. 15-cv-03295, slip op. (N.D. Cal. Dec. 13,
18
   2016), ECF #156 .......................................................................................................3

19

*Finjan, Inc. v. Secure Computing Corp.*,
20
   626 F.3d 1197 (Fed. Cir. 2010)..............................................................................16

21

*Finjan, Inc. v. Secure Computing Corp.*,
   879 F.3d 1299 (Fed. Cir. 2018) .........................................................................2, 22
22

*Finjan, Inc. v. Sophos Inc.*, No. 14-cv-1197,
23
   (N.D. Cal. Oct. 31, 2016).................................................................................3, 4, 5

24

*Forest Laboratories, Inc. v. Abbott Laboratories*,
   339 F.3d 1324 (Fed. Cir. 2003)................................................................................6
25

*Gart v. Logitech, Inc.*,
26
   254 F.3d 1334 (Fed. Cir. 2001)..............................................................................21

27

*Juniper Networks, Inc. v. Finjan, Inc.*,
28
   IPR2019-00031 (PTAB Mar. 25, 2019)...................................................................3

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ............................................................................................22

*Monsanto Co. v. Bowman*,
  657 F.3d 1341 (Fed. Cir. 2011), *aff'd*, 569 U.S. 278 (2013) ...........................................21

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996) ..............................................................................................5

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ...............................................................................................5, 6, 19

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ..........................................................................................16

*Palo Alto Networks, Inc. v. Finjan, Inc.*, IPR2016-00159 (PTAB Apr. 11, 2017),
  *aff'd*, 777 F. App'x 501 (Fed. Cir. 2019) ......................................................................3, 19

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
  IPR2015-01979 (PTAB Mar. 15, 2017) ...............................................................................3

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
  IPR2016-00151 (PTAB Mar. 15, 2017)................................................................................3

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
  IPR2016-00165 (PTAB Apr. 21, 2016) ................................................................................3

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017) ..........................................................................................16

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ..............................................................................................9

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
  127 F.3d 1462 (Fed. Cir. 1997) ..........................................................................................20

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989) ....................................................................................17, 18

*Symantec Corp. v. Finjan, Inc.*, No. IPR2015-01892, slip op. (PTAB Mar. 15,
  2017), *aff'd*, 777 F. App'x 501 (Fed. Cir. 2019).................................................................3

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ..........................................................................................13

*Tech. for Energy Corp. v. Hardy*,
  2018 WL 8460252 (E.D. Tenn. Feb. 15, 2018) ..................................................................23

*Wedgetail Ltd. v. Huddleston Deluxe, Inc.*,
  576 F.3d 1302 (Fed. Cir. 2009) ............................................................................................6

1

**Statutes**

2

Patent Act Section 285 .................................................................................*passim*

3

**Other Authorities**

4

Fed Rule Civ. Proc. 12 ...................................................................................22

5

Fed Rule Civ. Proc. 56 ...................................................................................22

6

S. Rep. No. 1503, 79th Cong. 2d Sess. (1946)..............................................5, 6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINJAN'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

**INTRODUCTION**

This was a hard-fought and complex case, involving patent claims on which Finjan had repeatedly prevailed in case after case after case. While Finjan won a number of battles along the way—including defeating motions seeking to invalidate its patents and getting to trial on one of its patents—Juniper ended up the victor, winning a judgment that it does not infringe any of the patents asserted by Finjan. Having prevailed, Juniper now seeks to recover its fees, claiming this case is exceptional. Juniper is mistaken, and its motion should be denied. Contrary to Juniper's contention, this case was resolved on entirely unexceptional grounds, and though Juniper ended up prevailing in the end, Finjan vigorously pursued claims it reasonably and in good faith believed were meritorious. Nothing about this case calls for fee shifting.

As to the '494 Patent (Dkt. No. 1-6), Juniper's victory came through a jury finding non-infringement. While making much of that result, Juniper's brief ignores what happened along the way. Crucially, this Court granted summary judgment **_in favor of Finjan_** that Juniper's accused products infringed all but one element of the claim—whether the products utilized a "database." Juniper also ignores that Finjan presented evidence (including documents from Juniper's marketing materials and Juniper's own engineers) confirming that Juniper's product uses a database. While Juniper ended up prevailing with the jury, this evidence at a minimum shows Finjan's case was far from frivolous.

The same story is true for both the '780 and '154 Patents. At summary judgment, this Court decided against Finjan on issues of claim construction. As to the '780 Patent (Dkt. No. 1-2), Finjan urged this Court to adopt a claim construction previously accepted by another district court. As to the '154 Patent (Dkt. No. 1-5), Finjan presented a claim construction firmly based on the text of the asserted claim. Both constructions advanced by Finjan were reasonably based on established law and evidence from the patents. Neither was frivolous. That this Court ultimately disagreed with Finjan's constructions does not make this case exceptional, nor does it call for fee shifting.

Juniper also makes much of this Court's orders finding Finjan had failed to present a damages case for two patents. These determinations extended from the Court's resolution of disputed legal issues, and do not signal frivolousness in either Finjan's evidence or its legal theories. As to the '494 patent, Finjan reasonably relied on an expert damages model approved by past Federal Circuit law and

aligning with a reasonable interpretation that the infringing act was Juniper's sale of its product—not the consumers' post-sale use. The fact the Court disagreed does not make Finjan's position frivolous. After the Court struck Finjan's damages expert, Finjan reasonably attempted to put forth a fact-based case for damages. And while Juniper was again victorious on this issue, Finjan's case at all times was pursued in good faith and with a strong belief in its merits. As to the '780 Patent, the Court rejected Finjan's reasonable views of how the law of pre-complaint notice applied to the marking of Finjan's products and the months of interactions between Finjan and Juniper's predecessor. Once again, the fact that Finjan's position did not carry the day does not turn reasonable arguments put forth in good faith into unreasonable ones.

Finally, nothing about Finjan's dismissal of remaining claims or its appeal calls for fee shifting. These actions promoted efficient resolution of this case. After the Court rejected Finjan's damages theory and entered judgment on three of the patents, Finjan elected to dismiss remaining claims so as to appeal, with the hope of correcting what Finjan reasonably believed was an erroneous rejection of its damages theory and other reversible errors. And while this Finjan did not prevail on appeal, its actions in dismissing the remaining patents in order to bring what it believed were meritorious issues before the Federal Circuit were done in good faith and for the sake of efficiency.

None of this makes this case exceptional. Finjan vigorously and reasonably pursued claims it believed in good faith were meritorious; and gave up its other claims and took the case to appeal when it saw the writing on the wall. Finjan therefore requests that the Court deny Juniper's motion and declare that each party bear its own fees, as is generally the case.

## BACKGROUND

### I.   FINJAN AND THE ASSERTED PATENTS

This was a complex patent case in which Finjan, whose portfolio addresses pillar cybersecurity technologies, claimed patent infringement by Juniper, a cybersecurity company.

As this Court no doubt recalls, Finjan came into this case with considerable success in both licensing and litigation. Finjan's innovative technology allows networks to analyze the behavior of code and dynamically evaluate threats even where the threats had not previously been seen. This pioneering work allowed Finjan to obtain a portfolio of security patents that has received wide recognition. The

FINJAN'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

Federal Circuit has described how Finjan "pioneered" the technology of this case, behavior-based scanning. *Finjan, Inc. v. Secure Computing Corp.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018) (part-affirming infringement judgment). Finjan has successfully licensed its patents to prominent security companies like Microsoft, Avira, Trend Micro, Symantec (now part of Broadcom), FireEye, and Sophos. Where necessary, Finjan has asserted its rights in court, defending the validity of its patents and requiring that those who use Finjan's technology provide fair compensation for that use.

The patents involved in this case are no exception. For example, prior to the determinations that ended Finjan's case here, Finjan had successfully defended the patentability of the '154 patent against numerous challenges, including challenges brought by Juniper. *Juniper Networks, Inc. v. Finjan, Inc.*, No. IPR2019-00031 (PTAB Mar. 25, 2019) (denying institution). And in two other IPRs, the PTAB confirmed that Finjan's claims were patentable. *E.g.*, *Palo Alto Networks, Inc. v. Finjan, Inc.*, No. IPR2015-01979 (PTAB Mar. 15, 2017) (confirming patentability); *Palo Alto Networks, Inc. v. Finjan, Inc.*, No. IPR2016-00151 (PTAB Mar. 15, 2017) (same). As to the '780 patent, Finjan has twice successfully asserted it against others in the security industry (as the technology invented by Finjan has now become standard); and Finjan successfully defended the validity of the '780 patent on numerous occasions. *E.g.*, *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-1197 (N.D. Cal. Oct. 31, 2016), ECF #407 (judgment of infringement); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-3999, slip op. (N.D. Cal. Aug. 19, 2016), ECF #556 (judgment of infringement); *Blue Coat Sys., Inc. v. Finjan, Inc.*, IPR2016-00492 (PTAB June 8, 2016) (denying institution); *Palo Alto Networks, Inc. v. Finjan, Inc.*, No. IPR2016-00165 (PTAB Apr. 21, 2016) (denying institution); *Finjan Software, Ltd. v. Secure Computing Corp.*, No. 06-cv-369, slip op. (D. Del. Mar. 28, 2008), ECF #242 (judgment of infringement). The '494 patent has withstood numerous challenges to validity, both in district court and before the PTAB. *Palo Alto Networks, Inc. v. Finjan, Inc.*, No. IPR2016-00159 (PTAB Apr. 11, 2017), *aff'd*, 777 F. App'x 501 (Fed. Cir. 2019) (confirming validity for asserted claims); *Symantec Corp. v. Finjan, Inc.*, No. IPR2015-01892, slip op. (PTAB Mar. 15, 2017) (same), *aff'd*, 777 F. App'x 501 (Fed. Cir. 2019); *Finjan, Inc. v. Blue Coat Sys., LLC*, No. 15-cv-03295, slip op. (N.D. Cal. Dec. 13, 2016), ECF #156 (denying S.J. of patent ineligibility). And Finjan has similarly succeeded in asserting the '494 patent against others using its now-standard technology. *Finjan, Inc. v. Sophos Inc.*, No. 14-cv-1197, slip op. (N.D. Cal. Oct. 31, 2016), ECF #407 (judgment of infringement).

1    Finjan did not come into this case hoping for a quick payout, nor with unreasonable

2    expectations.   Finjan reasonably believed Juniper was infringing its battle-tested patents, and that

3    Juniper should and would be required compensate Finjan for that infringement—i.e., the same result

4    Finjan had obtained against others in the past.

5    **II.    THIS CASE'S HISTORY**

6         This case began when Finjan filed its complaint in September 2017. (Dkt. No. 1.)  Shortly after

7    this case was filed, this Court instituted a "show-down" procedure, hoping to promote early resolution.

8    In June of 2018, the first showdown began with cross-motions for summary judgment.  Finjan's motion

9    alleged infringement of '494 claim claim 10; Juniper alleged no infringement and invalidity of '780 claim

10   1.  (*See generally* Dkt. Nos. 96 and 98.)

11        In August of 2018, the Court resolved the motions in a split result.  It entered summary

12   judgment of no infringement for claim 1 of the '780 Patent.  (Dkt. No. 177.)  As to Finjan's '494

13   infringement motion, the Court granted nearly complete relief.  (Dkt. No. 185.)  It agreed with Finjan

14   that there was no material fact question that Juniper infringed every limitation of '494 claim 10, except

15   for one: the claim's requirement of a "database."  (*Id.*)  As to this final limitation, the presence of a

16   material fact question precluded summary judgment, and the Court scheduled a trial to determine

17   whether Juniper's accused products employed a "database" and to determine damages if they did.

18        Trial on the '494 Patent began on December 10, 2018.  Mid-trial, the Court entered judgment

19   from the bench that Finjan had failed to present a legally sufficient damages case.  (Dkt. No. 339 at

20   839:6-15.)  As discussed in more detail below, that judgment extended from the Court's pre-trial

21   exclusion of Finjan's damages expert.  (Dkt. No. 283.)  In any event, on December 14, 2018, the jury

22   entered a verdict that Juniper did not infringe.  (Dkt. No. 333.)

23        At this point, the parties inquired about the possibility of interlocutory appeal.  The Court

24   denied that request, and instructed that the parties file a second set of cross-motions for summary

25   judgment.  (*E.g.* Dkt. Nos. 382, 386, 219.)  Thus, in February 2019, Finjan moved for summary judgment

26   of infringement of claim 1 of the '154 Patent, and Juniper moved for summary judgment of no

27   infringement for claim 9 of the '780 Patent, and also moved that Finjan could not establish '780 damages

28   for one accused product.  (Dkt. Nos. 369 and 371.)

This time, Juniper prevailed across the board.  In May 2019, the Court granted Juniper's motion as to both noninfringement and damages for the '780 Patent.  (Dkt. No. 459.)  As to the '154 Patent, the Court's order reinterpreted the patent claim in a manner different from other courts.  (*Id.*)  The Court not only denied Finjan's motion for summary judgment, it ordered Finjan to show-cause why summary judgment of noninfringement should not be entered in view of the Court's interpretation. Finjan submitted argument, but the Court was unconvinced and in July 2019 entered summary judgment of no infringement for claim 1 of the '154 Patent. (Dkt. No. 590.)

At this point, Finjan recognized the case was lost without correction it believed would be found in an appeal.  Therefore, in August 2019, despite the fact that discovery had not yet closed, Finjan voluntarily dismissed its remaining claims.  (Dkt. No. 601.)  Final judgment followed.  (Dkt. No. 606.)

## III.    FINJAN'S APPEAL

Finjan appealed.  (Dkt. No. 607.)  Finjan argued that the Court had reversibly erred on each of the issues above, and had also reversibly erred when it granted summary judgment of no infringement for the '780 Patent.  The appeal was straightforward, with both Finjan and Juniper timely briefing the arguments and presenting them to the Federal Circuit.  The Federal Circuit summarily affirmed this Court's final judgment, but did not provide an opinion and did not discuss or approve any specific aspect of the Court's reasoning.  (Dkt. No. 628.)

## LEGAL STANDARD

Pursuant to section 285 of the Patent Act, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  As the legislative history makes clear, this section was *not* designed to make "the recovery of attorney's fees . . . an ordinary thing in patent suits." S. Rep. No. 1503, 79th Cong. 2d Sess. (1946).  Indeed, section 285 should not lead to an automatic award of fees for the victorious party, "even for the extraordinary case." *E.g.*, *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).  To the contrary, fees should only be awarded in cases that "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable case in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

In determining whether a case "stands out," there are multiple factors a Court should consider.

1    As the Supreme Court has articulated, courts may consider "a nonexclusive list of factors, including

2    frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the

3    case) and the need in particular circumstances to advance considerations of compensation and

4    deterrence." *Id.* n.6.   However, fee awards are not to be used "as a penalty for failure to win a patent

5    infringement suit." *Id.* at 548.   At base, "[t]he exercise of discretion in favor of [awarding attorney fees]

6    should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or

7    some other equitable consideration of similar force, which makes it grossly unjust that the winner of

8    the particular law suit be left to bear the burden of his own counsel fees." S. Rep. No. 1503, 79th Cong.,

9    2d Sess. (1946); *see also Octane Fitness*, 572 U.S. at 549 (similar).

10        Most importantly, the Federal Circuit has noted that there are only "limited circumstances" in

11   which a fee award against a patentee is proper.  *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1328–

12   30 (Fed. Cir. 2003).   These circumstances include "litigation misconduct; vexatious, unjustified, and

13   otherwise bad faith litigation; [and] a frivolous suit or willful infringement." *See id.*   This is because

14   section 285 "is limited to circumstances in which it is necessary to prevent 'a gross injustice'" to the

15   accused infringer"—and not to ordinary aggressive business or litigation conduct.  *See id.*; *see also*

16   *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304–05 (Fed. Cir. 2009) (similar).

17                              **ARGUMENT**

18   **I.    JUNIPER IS NOT ENTITLED TO ATTORNEYS FEES**

19        Whether considered independently or together, nothing about the issues in this case, nor about

20   Finjan's approach to them, qualifies as "exceptional" under § 285.   This was a hard-fought litigation.

21   Much was on the line, for both sides.   Finjan honestly and reasonably believed its battle-tested patents

22   were being infringed by Juniper on a massive scale, and Finjan set out to prove it.   Juniper defended

23   itself just as vigorously.   At the end of the "shoot-out," when the smoke cleared it was Juniper who—

24   against Finjan's hopes and expectations—prevailed.

25        That Juniper prevailed, however, is not a basis for fee-shifting.   As the Court knows, the general

26   rule in all American litigation is that each party bears the costs of its own legal representation.   District

27   courts may abrogate that rule, but only upon powerful evidence that the case is exceptional—that it

28   "stands out from the others"—with respect to the case's lack of material strength, the overall approach

to litigation, or a combination of the two.  Under any approach to that test, the evidence overwhelmingly establishes that Finjan's case, though ultimately unsuccessful, was well within ordinary expectation in terms of substantive strength.  And as to the manner litigated, the case was like any other high-stakes dispute.  Finjan fought hard, and fair, for as long as it reasonably could.  Once it became clear the day was lost, Finjan voluntarily dismissed three of its own patents—with prejudice—to save resources all around and undertake a standard appeal.  When the appeal ended, Finjan viewed the case as done.

It is now Juniper that seeks to litigate further.  But unlike Finjan's patent claims, Juniper's fee-shifting claims fail even cursory comparison to the record.  The Court should reject them.

### A. Finjan's Infringement Case Was Rooted in the Evidence and the Law, and No Part of It Was "Exceptional" Under § 285

We begin with Finjan's infringement case.  Contrary to Juniper's contention, Finjan's infringement claims were based soundly in evidence Finjan reasonably believed would allow it to prove its case.  Juniper fails to point to any reason why Finjan's infringement case exceptional in any way.

#### 1. As to the '494 Patent, Finjan won on all but one limitation at summary judgment, and presented reasonable evidence that the accused Juniper products met the last limitation.

Finjan's infringement case for the '494 Patent ended with a jury verdict in Juniper's favor, finding that Juniper's products used no "database."  Juniper makes much of this win, but ignores that, prior to this finding, this Court actually granted summary judgment in favor of Finjan on all but one limitation of the asserted claim.  Juniper also ignores that Finjan presented more than enough evidence from which a jury could have reasonably found in its favor.  Finjan's infringement case was pursued in good faith.  That the jury decided against Finjan is no reason for fee shifting.

##### a) Finjan's good faith prosecution of its infringement case turned on a single limitation that went to the jury.

The story of Finjan's infringement case shows its reasonableness.  At issue in this case was claim 10 from the '494 Patent, which reads:

10. A system for managing Downloadables, comprising:

a receiver for receiving an incoming Downloadable;

a Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and

a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database.

As part of the first "showdown," Finjan moved for summary judgment of infringement.  (*See* Dkt. No. 185.)  Juniper opposed on various grounds, nearly all of which the Court rejected.  The Court found no material question that Juniper practiced every limitation except—perhaps—the "database." (Dkt. No. 185 at 16–17.)  Even there, the dispute was narrow.  The parties had agreed to a construction of "database" as "a collection of interrelated data organized according to a database schema to serve one or more applications."  (*Id.*)  There seemed to be little dispute that the accused products had some sort of structure similar to a database—the dispute centered then around whether the storage structure utilized "database schema" such that it would be a database according to the agreed construction of the term.  Accordingly, this Court thus "granted-in-part" Finjan's motion for summary judgment on all aspects of claim 10 minus one—whether the accused products stored security profile data "in a database," as recited by claim 10.  (*Id.* at 20-21.)

The case proceeded to trial on the "database" issue.  Finjan presented detailed evidence that the accused products stored security profile "in a database."  This evidence included statements from Juniper's own marketing material that security profile data was stored "in a database:"



(Trial Ex. 78 at 20.)  Finjan's evidence also included Juniper's own internal documents calling the storage location "Results DB" (DB meaning database) and referencing "schema" that Juniper applied to the database– exactly consistent with the agreed construction.  (Trial Ex. 399 at 35-36; Trial Ex. 94 at JNPR-FNJN_29018_00963212.)   And Finjan presented expert testimony that Juniper's storage structures must use schema—otherwise it would be impossible to obtain information from them.  (Dkt. No. 337 at 448:16–451:7; Trial Ex. 94 at JNPR-FNJN_29018_00963213; Dkt. No. 337 at 459:24–460:22.)  This evidence, in the Court's own estimation, was sufficient for Finjan to survive a mid-trial JMOL.  (Dkt. No. 339 at 844:11–20.)

Juniper's defense, in this Court's own words, was based on "slick games" Juniper played with a construction advanced by Finjan in an IPR.  (*Id.*)  Specifically, Juniper's expert testified regarding a

1   construction advanced by Finjan in an IPR—a construction proposed under a different standard and

2   one on which Finjan ultimately lost.   Nonetheless, the expert also testified that Juniper's storage

3   structure was "schema-less."  (Dkt. No. 338 at 785:12–786:7)  The jury ultimately believed found for

4   Juniper; and this Court and the Federal Circuit did not find any sufficient reason to disturb that jury

5   finding.

6
            **b)  Nothing about Finjan's '494 infringement case warrants fee-
7                 shifting.**

8           Nothing about Finjan's infringement case on the '494 Patent warrants fee shifting.  To the

9   contrary, Finjan won on nearly every disputed issue at summary judgment, and presented more than

10  sufficient evidence from which a jury could find infringement.  In the end, the jury could have gone

11  either way—which is, after all, the reasons why jury trials happen.  That the jury ultimately decided

12  against Finjan is hardly a reason why Juniper should be entitled to fees.

13          Indeed, that Finjan's infringement case made it to a jury is reason enough to deny Juniper's

14  motion for fees.  *See, e.g.*, *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)

15  (reversing a district court award of fees as an abuse of discretion where patentee had survived summary

16  judgment, noting "[a]bsent misrepresentation to the court, a party is entitled to rely on a court's denial

17  of summary judgment and JMOL as an indication that the party's claims were objectively reasonable

18  and suitable for resolution at trial" (internal quotation marks and alterations omitted)); *see also*

19  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010) ("[T]he district court's denial of

20  summary judgment of noninfringement reflects the belief that it was reasonable for ResQNet to have

21  retained that patent for suit.").  Notably, Finjan did far more than just survive summary judgment.

22  Finjan also presented a reasonable case of infringement for the jury—based on Juniper's own public

23  statements, Juniper's own engineering documents, and expert testimony.

24          Juniper's motion ignores all of this, and instead recites its version of the case on which it

25  ultimately won.  Of course Juniper has its own version of events.  But just because Juniper presented

26  expert testimony that favored its version of the facts does not mean Finjan's case was pursued in bad

27  faith.  Indeed, in this Court's colloquy quoted by Juniper in its motion, the Court noted that it believed

28  (just as Finjan had believed) Finjan "had a strong case on infringement" before the jury returned its

1   verdict.  (Mot. at 13 (quoting Dkt. 382 at 3:21-4:18.))  And during the trial, this Court also raised its

2   doubts about Juniper's defense—questioning Juniper's witness as to whether he could identify any

3   Juniper document that supported his contention that the Juniper database was "schema-less."  (Dkt.

4   No. 338 (Trial Tr.) at 171:12-172:7.)  He could not.

5       In fact, Juniper's entire argument regarding Finjan's '494 infringement case seems to boil down

6   to the fact that it won and a single statement made by this Court in colloquy during the hearing on post-

7   trial motions that Finjan's infringement case was "smoke and mirrors."  (*See* Mot. at 12–14.)  Though

8   Finjan lost, it disputes that its case warranted that characterization.  Indeed, the "smoke and mirrors"

9   appellation is better applicable to Juniper's arguments here.  For example, Juniper quotes deposition

10  testimony **not before the jury** on whether a Finjan expert had examined whether components would

11  "independently infringe claim 10"—ignoring that the testimony presented at trial by Finjan's expert was

12  that he did analyze the accused Juniper system as a whole.  *E.g.* Mot. 13 (quoting Kagan Ex. 9 at 259:12–

13  18).   Juniper plucks other trial testimony out of context that simply confirmed an application

14  programming interface associated with the Results Database was an interface—again, ignoring

15  substantial expert testimony elsewhere indicating the presence of a "schema" for Results DB, and

16  indicating infringement.  *Id.* (quoting Dkt. No. 337 (Trial Tr.) at 440:14–17.)

17      In the end, this was a typical patent case.  Finjan presented evidence and expert testimony that

18  supported infringement; Juniper presented expert testimony that supported non-infringement.  The jury

19  held for Juniper.  Nothing about this ordinary resolution of a reasonable claim warrants fees.

20          **2.  Finjan's infringement case for the '780 Patent was based on a claim
                construction adopted by other district courts, which this Court rejected.**

21

22      Finjan's infringement case for the '780 Patent was also quite ordinary, and ultimately Finjan lost

23  on a claim construction issue—a common fate for patent cases and one that does not merit fee shifting.

24  *See Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1229 (Fed. Cir. 2018) ("As we have stressed,

25  a party's position [in claim construction] ultimately need not be correct for them not to 'stand[ ] out.'").

26  For '780, while Finjan and Juniper disagreed about the appropriate claim construction, both agreed it

27  would be case-determinative.  This Court agreed with Juniper, and summary judgment followed.

28  Despite the ordinary result, Juniper nonetheless seeks fees related to its defense of the '780 Patent

1   (though its brief notably does not discuss Finjan's '780 infringement case at all).  Mot. 23–25.

2         Finjan's proposed claim construction was reasonable.  The specific issue involved the

3   construction of the claim term "performing a hashing function on the Downloadable and the fetched

4   software components to generate a Downloadable ID," which appears both in claims 1 and 9 of the

5   '780 Patent.  (*See, e.g.*, Dkt. No. 177 at 6.)  The parties agreed that this limitation meant "performing a

6   hashing function on the Downloadable ***together with*** its fetched software components" but disagreed

7   as to whether the limitation allowed for performing separate hashing functions on the a Downloadable

8   and fetched software components and ***thereafter*** combining them, as Finjan contended; or whether

9   the claim required the Downloadable and fetched software components be combined ***before*** the

10  hashing function is performed, as Juniper contended.  (

11        Finjan's proposed construction was based on the language of the claim and other judicial

12  decisions.  The claim language is at least ambiguous as to whether it would allow for multiple hashing

13  functions to be performed "on the Downloadable and the fetched software components."  Certainly,

14  giving the claim the full breadth of its plain language would allow for the construction proposed by

15  Finjan.  That this Court found the intrinsic evidence to counsel a narrower construction does not take

16  away from the reasonableness of Finjan's position.  And, notably, other courts prior to this Court's

17  determination had reached a different conclusion.  For example, in another case brought by Finjan,

18  Judge Freeman observed that "the '780 Patent is not so limited that 'a hashing function' means a single

19  hash—the overall function of hashing an object or combination of objects could potentially be

20  accomplished by a sequence of several hashes or computations."  *Finjan, Inc. v. Blue Coat System, Inc.*, No.

21  13-03999 BLF, 2015 WL 3630000, at *5 (N.D. Cal. June 2, 2015).  In its decision, this Court noted its

22  disagreement with this prior determination, as this Court was entitled to do.  (Dkt. No. 177 at 7.)

23  However, Finjan's claim construction position could hardly be called unreasonable or frivolous when it

24  had been endorsed by other courts in this district in earlier cases.

25

26        **3.  Finjan's '154 case was based on a reasonable construction of the claim language.**

27        The resolution of Finjan's '154 infringement case was just as ordinary as the resolution of

28  Finjan's '780 case.  Again, a claim construction dispute was case dispositive.  And again, Finjan's

1    arguments were reasonably based on existing facts and law.

2           **a)  Finjan's '154 loss resulted from the Court deciding two reasonably**
3                **disputed issues of claim construction.**

4           The claim construction issue that resolved the case related to claim 1's recitation of "a content

5    processor (i) for processing content received over a network, the content including a call to a first

6    function, and the call including an input, and (ii) for invoking a second function with the input, only if

7    a security computer indicates that such invocation is safe."  As part of the second "showdown," Finjan

8    sought an order for summary judgment that the accused Juniper products infringed this (and the other

9    limitation).  Juniper rebutted by asserting that, though the claim language does not use the word

10   "modified," the "content processor" limitation nonetheless should be interpreted to require processing

11   modified content based on a description of an embodiment of the invention in the specification.  (*See,*

12   *e.g.,* Dkt. No. 459 at 6–7.)  Finjan disagreed, urging this Court to adopt a plain meaning that adhered

13   more closely to a literal reading of the claim language and avoid importing a limitation from the

14   specification.  (*See id.*)  This Court found Juniper's argument more persuasive.  (*See id.* at 7–8.)

15          This Court believed resolution of this claim construction would be case dispositive.  (*See id.* at

16   6.)  Thus, this Court ordered both parties to show cause as to why a summary judgment of non-

17   infringement should not be granted in favor of Juniper.  (*See id.* at 94.)  Pursuant to the Court's order,

18   Finjan explained to the Court why it continued to believe it had sufficient evidence to prove

19   infringement even under the construction ultimately adopted by the Court.  Specifically, as this Court

20   acknowledged, Finjan presented evidence as to how the accused products processed "content [that]

21   may have been modified in some way at some time."  (*See* Dkt. No. 590 at 3.)  Finjan thus reasonably

22   believed that, given that the Court's claim construction simply required processing "modified"

23   content—and not any specific kind of modified content—its evidence may prove to be sufficient.

24          The Court again disagreed.  It explained that, when it had construed the claim to require the

25   "content processor" process "modified content," the Court had not intended to indicate that any kind

26   of modified content would do.  (Dkt. No. 590 at 3.)  This Court then clarified its earlier claim

27   construction to require that the "content processor" process "content modified with a *substitute function*

28   (which function sends the content to the security computer when invoked) at the gateway computer."

FINJAN'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

1   (*Id.*)  Based on this clarified understanding as to the scope of claim 1, this Court then went through the

2   evidence presented by Finjan, rejecting it because it failed to show that the modifications made to

3   content pointed to by Finjan "fall within the meaning of Claim 1, as they do not involve a 'substitute

4   function' as disclosed in the specification."  (*Id.* at 4; *see also id.* at 3 (rejecting Finjan evidence because

5   "[t]he 'modified content' Finjan proposes under this theory does not involve a substitute function as

6   required by Claim 1").  In other words, this Court's ultimate determination on summary judgment was

7   based on the Court's further clarified claim construction—articulated for the first time in the order

8   resolving the case.

9
10              **b)  Nothing about Finjan's '154 infringement case warrants fee
                     shifting.**

11          Throughout this process, Finjan reasonably pursued claims where it still believed it had an

12   opportunity to prevail.  For the '154 Patent, Finjan urged the Court to adopt a claim construction based

13   on the plain language, which does not use the word "modified."  After the Court's construction went

14   against Finjan, Finjan then presented evidence that Juniper's content processor processes "modified"

15   content.  Where the Court found Finjan fell short is in its failure to show that the modified content was

16   a "substitute function."  This latter requirement was not articulated until the Court's order granting

17   summary judgment.  Once the Court articulated this additional limitation, Finjan's case as to the '780

18   patent was over, except for appeal where the Court's construction would be reviewed *de novo.*  Such a

19   series of events is common in many patent cases and in no way causes this case to "stand out."

20          Where a party loses on an issue of claim construction, courts have typically only applied fee

21   shifting where the construction urged by the party was unreasonable and frivolous.  *E.g. Eon-Net LP v.*

22   *Flagstar Bancorp*, 653 F.3d 1314, 1325 (Fed. Cir. 2011).  Finjan's claim constructions here were nothing

23   of the sort.  Finjan simply urged this Court to follow the Federal Circuit's well-established precedent

24   that claims be given "the full scope of [the] plain and ordinary meaning unless the patentee explicitly

25   redefines the term or disavows its full scope."  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362,

26   1367 (Fed. Cir. 2012).  Here, the word "modified" does not appear in the text of the claim—the claim

27   simply recites a "content processor" that "process[es] content received over a network."  Finjan simply

28   urged this Court to give this claim language the full scope that a plain reading of the claim would allow,

FINJAN'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

consistent with the intrinsic evidence (including dependent claims).  Further, Finjan reasonably relied on prosecution history in which the word "modified" was struck from the claims.  (Dkt. No. 415-3.)  The Court's holding that such evidence did not overcome Juniper's counter does not mean Finjan's position was unreasonable.

Juniper fails to point to anything to the contrary.  Juniper primarily relies on the fact that the dispositive construction arose from a summary judgment motion filed by Finjan.  In the context of this case—where this Court ordered the parties to file early summary judgment motions in order to promote an efficient resolution—this is hardly out of the ordinary.  The point of this Court's procedure was to allow for early disposition of claims.  It had that intended effect.  Far from being exceptional, the result for the '154 Patent is the system working as this Court intended.

Juniper also points to descriptions of the '154 Patent from different proceedings, which Juniper claims should have put Finjan "on notice" that it would ultimately lose its claim construction battle.  Juniper is incorrect.  First, Juniper does not even attempt to argue that any of these cases dictated the outcome here.  Parties are, and should be, free to urge courts to disagree with authority that is not binding.  Indeed, Juniper itself urged (successfully) this Court disagree with another court as to the correct construction of the claims of the '780 Patent, as discussed above.  In any event, Juniper reads far too much from these decisions.  As to the PTAB decision cited by Juniper (at 15), the quoted description was part of a determination giving a broad understanding to the word content, resolving a dispute about whether "the recited 'content' is 'a data container that can be rendered by a client web browser'"—not about whether the claimed content processor was required to process content modified in one specific way (as this Court's ultimate determination decided).  (Dkt. No. 390-19 at 10.)

Finally, Juniper asserts (at 15-16) that Finjan's continued prosecution of its case after the original claim construction (requiring "modified" content) is sufficient to justify fee-shifting.  Juniper is again wrong.  The court invited further briefing; within days, Finjan provided it.  (Dkt. No. 459 at 12).  Finjan reasonably believed it could establish infringement even under the Court's construction.  That the Court held otherwise does not indicate exceptionality.

**B.  Finjan's Damages Case Had Ample Legal and Factual Support, and No Part of It Was "Exceptional" Under § 285**

Juniper cannot show § 285 exceptionality in the damages case for reasons similar to those preventing it from showing exceptionality in the liability case.  Although Juniper ultimately prevailed on the damages issues, the record makes clear Finjan reasonably believed in the merits of its case and pursued it in good faith.

> **1.   Finjan's reliance on its damages expert was reasonable and, after the Court excluded that expert a week before trial, Finjan's presentation of a fact-only damages case was also reasonable**

Finjan's liability case charged that Juniper's practice of selling physical network devices (a gateway product called "SRX") *in combination with* a free trial to a "cloud" service called "Sky ATP" infringed claim 10 of the '494 Patent.  (*E.g.*, Dkt. No. 283 at 5.).  As already discussed, the liability portion of the '494 trial principally addressed whether Juniper's "Sky ATP" system included the required "database."  As is required for a damages analysis, Finjan's expert assumed the combination of SRX and Sky ATP infringed.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).  Because '494 claim 10 is a "system" claim (i.e., it is infringed whenever the patented system is made, used, sold, offered for sale, or imported), Finjan reasonably contended that Juniper committed an act of infringement every time it sold any bundle comprising both SRX and a free trial to Sky ATP.[1]  It is undisputed that all of Juniper's SRX gateway sales (amounting to about $142.1 million in revenue) included this free trial.  (*Id.* at 1.)

Finjan retained Kevin Arst, an experienced and credible economist, to prepare a damages model.  Assuming, as he must, that Juniper infringed, Mr. Arst computed Juniper's infringement saved it $60–70 million in development and operating expenses.  (*Id.* at 3–4.)  He reasoned that Juniper would have had to spend at least that much to come up with some non-infringing solution to the problems solved by Finjan's patent.  In Mr. Arst's expert opinion, this $60–70 million savings would be a reasonable amount of damages for infringement.  Part of his reasoning was that Juniper, by paying such an amount, stood to gain a far greater amount of revenue ($142.1 million in SRX sales) down the line.  Mr. Arst packaged his opinions into a pre-trial expert report, which Finjan served on Juniper in the run-up to the '494 trial.

---

[1] That sale of a patented "system," even as a bundled sale of discrete items in combination with one another, is an act of infringement is long-established.  *E.g.*, *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527–28 (1972).

A week before trial, however, the Court entered an order prohibiting Mr. Arst from presenting his opinions to the jury. (*Id.*)  This order was based principally on statements by Juniper that the "Sky ATP" free trial was rarely used by customers, and more rarely converted into a paying subscription. On that basis, Juniper contended, the relevant SRX revenues were not $142.1 million (as both Finjan and Mr. Arst had reasoned), but were just $1.8 million, which was a Juniper-computed figure based on Juniper's assertion of how many SRX customers had actually used "Sky ATP" post-sale.  With the relevant revenues depressed by over 98%, the Court held that Mr. Arst's damages figure of $60–70 million was "infeasible," and barred him from testifying.  (*Id.* at 6.)   The Court permitted no supplementation or cure.

This left Finjan in a difficult position.  Though losing the ability to offer any expert testimony on damages substantially hamstrung Finjan's case, Finjan nevertheless believed that fact testimony alone could supply the jury with a sufficient platform to permit a damages computation.  At trial, Finjan's CEO Phil Hartstein testified, from his own personal knowledge, about the royalty rates Finjan generally seeks for licenses of this type.  Finjan also presented testimony regarding the value the patented technology provided to Juniper.  The effort was unsuccessful.  At the close of Finjan's case, the Court entered judgment as a matter of law that Finjan had failed to prove damages.  (Dkt. No. 330.)

### a) There is no basis for fee-shifting in Finjan's reliance on Mr. Arst's damages model prior to its exclusion

Finjan acted reasonably when relying on Mr. Arst's damages model in at least three respects. First, the "cost savings" approach taken by Mr. Arst had been successfully used by Finjan in other cases, and had been approved by the Federal Circuit.  "Reliance upon estimated cost savings from use of the infringing product is a well settled method of determining a reasonable royalty."  *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (quote marks omitted); *see also Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (quoting same); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (describing how Finjan properly showed defendant's use of Finjan's inventions).  Second, Mr. Arst's estimated damages of $60–70 million were substantially lower than the $142.1 million Juniper had obtained by selling the SRX gateway alongside the "Sky ATP" free trial.  Again, the Federal Circuit had firmly established that even where there is evidence that customers

do not often use a feature, such is not a basis for reducing the seller's liability for selling it.  *Finjan*, 626 F.3d at 1211 ("[T]he accused direct infringers are Defendants, not their customers.  Because Defendants included proactive scanning on every accused product, their 'use' encompassed **all of their sales, regardless of customer activation."** (emphasis added)).  And third, even to the extent Mr. Arst's damages computation exceeded Juniper's claims of related profit, the law clearly establishes that an infringer's profits are not a cap to reasonable royalty liability.  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).  Finjan reasonably viewed Mr. Arst's model as properly reflecting both the facts and the law, and relied on it in good faith.  Nothing about reliance on Mr. Arst prior to the Court's order precluding his testimony was "exceptional" under § 285.

> **b)  There is no basis for fee-shifting in Finjan's attempt to establish '494 damages at trial on a fact-only basis**

Up until a week before trial, Finjan intended that Mr. Arst would provide the jury with the record necessary to compute a royalty award.  Once that path was foreclosed, Finjan reasonably believed it could shoulder the tougher burden of providing the necessary record without opinion testimony.  Over the course of Finjan's case-in-chief, it presented the jury with extensive evidence on the three critical aspects of a patent damages computation: apportionment (making sure the patentee does not receive damages on unpatented technology), royalty base (identifying and quantifying the activities requiring a royalty), and royalty rate (the royalty paid on the base).

**As to apportionment**, Finjan laid out extensive evidence to support a conservative apportionment (i.e., one that overvalued unpatented elements of Juniper's technology) of about 40%— i.e., evidence to indicate that Finjan's patents accounted for about 40% of the value in the infringing acts.  (*See generally* Dkt. No. 325 at 4).  This was principally based on testimony from Juniper's own witness that even if one were to accept Juniper's argument that some of its technology ("static analysis") was noninfringing, Juniper still used the infringing "dynamic analysis" technology about 40% of the time.  (*See id.* (describing trial testimony of Juniper engineer Alexander Icasiano); *see also* Dkt. No. 337 at 428–31 (describing dynamic and static analysis).)  Notably, even Juniper in its JMOL motion did not contend that "dynamic analysis" derived value from any source other than the alleged infringement.  (Dkt. No. 323 at 3 (identifying no unpatented features for dynamic analysis).)  Still further, Finjan

presented an extensive technical discussion of how Finjan's technology was central to the accused product, and indeed Juniper's entire security ecosystem.  (Dkt. No. 337 at 467:7–478:2.)  Taken together, Finjan believed it had presented a sufficient record on which a jury could adopt a 40% apportionment rate (for "dynamic analysis") and still be conservative, since it was based on Juniper's own testimony, and since it sought no royalty on the majority of Juniper's activities.  (*See also* Dkt. No. 325 at 2–4.)

**As to royalty base**, Finjan laid out a detailed recitation of the extent of Juniper's infringement, from two directions.  First, it laid out an accounting based on Juniper's sales, with detailed testimony concerning the revenue Juniper had made from selling the accused products as well as the details of enrollments in Sky ATP and its "free trial."  (*See id.* at 4–5 (describing how trial exhibits and testimony played for the jury provided crucial detail).)  Second, Finjan laid out an accounting based on Juniper's use of the patented invention, by showing how many units Juniper had sold, and how many licenses for Sky ATP, as well as the number of files Juniper had processed using the accused technology.  (*Id.* (describing Juniper's unit sales, and its processing of millions of scans each month).)  Finjan believed this was sufficient for the jury to identify an appropriate royalty base.

**As to royalty rate,** Finjan's CEO Phil Hartstein testified to the jury that Finjan, when it negotiates with potential licensees (as it has done successfully dozens of times) generally seeks a royalty rate of 8% on associated hardware revenues, and 16% on associated software revenues, or a use-based rate of 32¢/scan or $8/user.  (*Id.* at 5; *see also* Dkt. No. 336 at 269:6–270:13, 271:7–19, 274:23–276:7, 308:15–309:9, 330:21–333:22 (describing rates on revenue), 270:14–271 (describing per user rate), 271:20–273:34 (describing per scan rate).)  Mr. Hartstein also told the jury about other instances where Finjan had successfully licensed its technology.  (Dkt. No. 336 at 266:3–267:17.)  Finjan's Head of Business Development John Garland also testified about the negotiations with Juniper specifically, and the details of Finjan's view of Juniper and how it thought that negotiation would unfold.  (Dkt. No. 337 at 552–68.)  Finjan believed this was sufficient for the jury to support any of a variety of models (royalty on revenue, on users, or on scans) as a starting point for determining a royalty rate appropriate to compensate Finjan for the infringement.

That the Court found Finjan's presentation insufficient as a matter of law does not indicate that the presentation, or Finjan's decision to make it, was exceptional for § 285 purposes.  For each aspect

of the presentation—apportionment, royalty base, royalty rate—Finjan presented a detailed, evidence-based platform it believed could support a damages award.  Juniper had opportunities to cross-examine at every stage, and though Juniper disagreed with some of Finjan's characterizations of the evidence, Juniper did not and does not contend that any of the evidence Finjan relied on was false or otherwise baseless.  Its argument here, as for the rest of the motion, principally rests on the fact Juniper prevailed.  At this stage, that is not disputed.  But Juniper falls far short of identifying "unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which made a case so unusual as to warrant fee-shifting" here.  *Octane Fitness*, 572 U.S. at 549.  Finjan did its best with a difficult situation, and in the end Finjan lost.  That should be the end of the story.

        **2.   As to '780 damages, Finjan's plan to rely on actual and constructive notice to establish pre-expiration damages was reasonable.**

            **a)   Finjan's pre-complaint notice case reasonably relied on undisputed communications with Juniper's predecessor that named both the patent and the accused product, and there was no dispute of Finjan's pre-complaint marking.**

      As noted above, Juniper's motion does not contend Finjan's liability case under the '780 patent might support fee shifting.  For the '780 Patent, Juniper focuses only on a single product, and only on a damages-related theory.  As the Court knows, U.S. patent law holds that a patentee may not obtain damages for acts of infringement occurring before the infringer was on notice of the patent.  Aware of this, Finjan assembled detailed proof showing how Finjan was only seeking damages accrued after Juniper was on notice of each patent, and not before.  Because the '780 Patent expired on November 6, 2017, this meant that for Finjan to recover damages, it had to show Juniper was on notice before that date.  Finjan proposed to make that proof twice over, first by establishing actual notice, and then (if needed) by establishing constructive notice.

      **As to actual notice,** Finjan argued it had provided the necessary notice on the '780 Patent to Juniper's predecessor-in-interest, Cyphort, Inc. in March 2016.[2]  A Finjan presentation to Cyphort at that time specifically identified Cyphort's "Advanced Threat Defense Platform" (predecessor to the ATP Appliance) as requiring a license from Finjan, and identified the '780 Patent as a key patent within the Finjan portfolio.  (Dkt. 392-16 (Ex. 6) at FINJAN-JN 193240 and 193251).  **As to constructive**

---

[2] There is no dispute that Juniper inherited any notice to Cyphort.

FINJAN'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

1  **notice,** it was not disputed Finjan had marked its own products with the '780 Patent number.  As a

2  general matter, a patentee marking its own products puts others on constructive notice of the patent

3  right, and Finjan argued that such was the case here.

4        The Court ruled against Finjan on both issues.  As to actual notice, the Court held Finjan's

5  March 2016 presentation to Cyphort insufficient because the presentation did not enumerate the '780

6  Patent as a patent infringed by Advanced Threat Defense Platform.  (Dkt. No. 450 at 13–14.)  It rejected

7  Finjan's argument that the reference to the '780 Patent as a key patent was enough.  As to constructive

8  notice, though acknowledging Finjan marked its own products, the Court held constructive notice not

9  established because of questions about whether third parties who had taken licenses to the '780 Patent

10  had also marked their products.  (*Id.* at 15–18.)  Here, the Court rejected Finjan's argument that requiring

11  licensee marking made no sense in this context because Finjan's licensees generally do not concede

12  infringement when agreeing to take a license.  Because it had ruled Finjan could establish neither actual

13  nor constructive notice, the Court entered summary judgment of no damages under that patent as to

14  the "ATP Appliance" product.

15

16        **b)  Finjan's case for actual notice under the '780 Patent was reasonable and good-faith**

17        There was no dispute Finjan's March 2016

18  presentation to Cyphort had identified **both** the "Advanced

19  Threat Defense Platform" (precursor to the ATP Appliance)

20  as an accused product, and the '780 Patent as a key patent.



21  Indeed, the two references were on **consecutive slides**

22  within the presentation, as highlighted orange in the image

23  on the right (Dkt. 392-16 (Ex. 6) at FINJAN-JN 193240 and

24  193251).  Finjan reasonably believed such a presentation was

25  enough to satisfy statutory standards for actual notice.  The

26  Federal Circuit had specifically indicated that the test for such notice is flexible, and is satisfied any time

27  "the recipient is informed of the identity of the patent and the activity that is believed to be an

28  infringement, accompanied by a proposal to abate the infringement."  *SRI Int'l, Inc. v. Advanced Tech.*

*Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).  Finjan reasonably thought the March 2016 presentation to Cyphort satisfies each of those requirements, because the presentation names the '780 Patent, identifies the accused product, and offers reasonable licensing terms.  Other Federal Circuit precedent supported Finjan in this view.  As recently as 2011, that court held that all the actual notice standard required were infringement allegations "sufficiently specific to support an objective understanding that the recipient may be an infringer."  *Monsanto Co. v. Bowman*, 657 F.3d 1341, 1349 (Fed. Cir. 2011), *aff'd*, 569 U.S. 278 (2013).

The Court, when it held that the actual notice standards required more than was present in the March 2016 presentation, rejected Finjan's view—but it did not render Finjan's view *per se* unreasonable, and did not establish § 285 exceptionality.  (*See* Dkt. No. 459 at 13-14.)  Nor does anything about the record concerning actual notice contain even a hint of bad faith.  As an entity that relies on its patent licensing relationships for much of its business, and that relies on judicial enforcement of its patents when necessary, Finjan has every interest in putting potential licensors on notice of Finjan's patents at the earliest opportunity.  Here, Finjan genuinely and reasonably believed it had done so.  That the Court determined otherwise does not suggest anything "exceptional" in Finjan's approach.

### c)  Finjan's case for constructive notice under the '780 Patent was reasonable and good-faith

There is no dispute Finjan marked its own products with the '780 Patent number.  In most patent cases, self-marking is enough to put potential infringers on "constructive notice" of the patent right.  *See generally Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001).  However, the situation is more complicated where a licensee makes a "patented article"; said articles generally should be marked for constructive notice to adhere.  *Id.* at 1344.  However, prior to the Court's order here, precedent concerning the marking requirement did not squarely address whether the licensee marking requirement applied to licensees who ***disputed*** that their products actually practiced the licensed patent—e.g., licensees who took their license to avoid litigation.

When Juniper argued that constructive notice failed based on a high-level, nonspecific allegation of non-marking by Finjan licensees, Finjan opposed that argument on two fronts.  First, Finjan reasonably pointed out that Juniper had not identified which products from Finjan licensees were

purportedly "patented articles" under the '780 Patent. Finjan cited *Arctic Cat Inc. v. Bombardier Recreational Products, Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017), which states that in such circumstances it is the accused infringer's "initial burden of production to articulate the products it believes are unmarked." Because Juniper had identified only companies, and not products, Finjan reasonably believed Juniper had not created a burden for Finjan to respond on the non-marking allegation.

Second, Finjan reasonably believed the marking requirement did not apply in the context of licensees who disputed they practiced the patent, and only took a license to avoid litigation. Finjan's principal support was *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996), under which a patentee must apply only "reasonable efforts" to have licensees mark. Finjan believed forcing licensees to mark with patents products the licensees believed did not infringe was not "reasonable" per *Maxwell.*

The Court disagreed, and held that Finjan could not avail itself of constructive marking. Again, there is a pointed distinction between the Court finding against Finjan and establishing that Finjan's position was so meritless as to be exceptional within § 285 (as Juniper wrongly contends). Finjan's position on constructive notice was well supported by existing Federal Circuit law, or by reasonable extensions thereof. Nothing about it enacted any unfair prejudice on Juniper, or the Court, or anyone else suitable to support a fee-shifting award.

### C. Finjan's Dismissal of Remaining Claims Promoted Efficiency, Conferred a Windfall to Juniper, and Reflects Neither a Lack of Merit Nor Bad Faith

Juniper's remaining contentions in no way establish a basis for fee-shifting. As discussed above, Finjan **voluntarily dismissed its own claims with prejudice** to save resources all around. That Finjan was under no obligation to withdraw its remaining patent claims is beyond serious dispute. The right of a patentee to litigate its well-founded patent claims to judgment before a U.S. District Court is deeply enshrined in American law. To the extent Juniper believed any of the remaining claims by Finjan were not well-founded, an overwhelming array of procedural mechanisms were available to Juniper to establish as much, such as by Rule 12 motions to dismiss or Rule 56 motions for summary judgment. As to the remaining claims, **Juniper filed no such motions.** The only reason those claims are no longer in the case is because *Finjan* voluntarily withdrew them. Such withdrawal essentially conferred to Juniper full rights under the remaining patents—even if Juniper's products were infringing (as Finjan

1  believed they were).

2      Finjan knew it was conferring a windfall to Juniper with the dismissal with prejudice of the

3  remaining claims, but it did it anyway to save resources and to prepare the case for appeal.[3]  Juniper's

4  contention that this represented anything other than a pure giveaway to Juniper, and that it somehow

5  represents an admission of exceptionality as to the remaining claims, is wholly baseless.  Finjan is

6  unaware of any court, anywhere, entering an exceptionality finding in these circumstances.  Certainly

7  Juniper's motion cites none.  Juniper's citations to *Automotive Technologies* and *Technology for Energy Corp.*

8  are off point.  *Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*, 744 F. Supp. 2d 646 (E.D. Mich. 2010);

9  *Tech. for Energy Corp. v. Hardy*, No. 3:16-cv-91, 2018 WL 8460252 (E.D. Tenn. Feb. 15, 2018).  In both

10  cases, the party seeking fees filed dispositive motions as to the claims at issue, which is decidedly not

11  the case here.  In no sense has Juniper shown, or even attempted to show, that the claims Finjan

12  voluntarily dismissed lacked merit.  Indeed, Finjan viewed those claims as meritorious, and still does.

13            **D. Juniper's Claims of Procedural Wastage are Meritless**

14      Juniper's remaining attempt to cobble together some actual prejudice from Finjan's case

15  conduct fails even cursory review.  In the final pages of its brief, Juniper proposes, "Finjan initially

16  asserted that the SRX alone infringed claim 1 of the '780 Patent, but then failed to even oppose Juniper's

17  motion for summary judgment."  Mot. 21.  That recitation is highly incomplete at best, and misleading

18  at worst.  Juniper filed its motion for summary judgment on the '780 Patent before the exchange of

19  expert reports and before most depositions, which would have been the natural path for narrowing of

20  the issues.  And, in any event, scarcely two pages of Juniper's summary judgment motion related to the

21  SRX "alone" issue, making the issue de minimis in general.  (Dkt. No. 95-04 at 18–20.)

22      Similarly, Juniper tries to claim harm in having to file a motion for summary judgment on claim

23  9 of the '780 Patent as to the Sky ATP and SRX products.  Mot. 21.  This contention is equally meritless

24  because it obscures that Juniper would have had to file its motion on claim 9 ***regardless*** of how Finjan

25  viewed the Sky ATP and SRX products because the motion principally related to a third product, "ATP

26  Appliance," not at issue in the Court's prior determination concerning the '780 Patent.  That Finjan

27

28
        ───────────────
        [3] Finjan had previously proposed certifying the disputed issues for interlocutory review, but the
        Court rejected that proposal.  (Dkt. No. 382 at 5:21–6:10.)

1   elected not to contest claim 9 as to Sky ATP and SRX after reviewing Juniper's papers is not wastage,

2   but efficiency.

3   **E. Finjan's Appeal Was Not "Exceptional" Under § 285**

4   Juniper's argument for exceptionality concerning the appeal is virtually non-existent, and

5   amounts to Juniper arguing that if there were exceptionality as to any of the issues discussed above, it

6   should carry over to the appeal.  If anything, Finjan's willingness to undertake a hard-fought, multi-

7   issue appeal (with new counsel specializing in the field) underlines that Finjan believed in the merits of

8   its case, and was willing to invest resources in pursuit of vindication.  Finjan in unaware of any authority,

9   anywhere, suggesting that the filing of a multi-issue appeal somehow suggests exceptionality for any of

10  the issues, or for the appeal as a whole, and Juniper cites none.  Respectfully, by the time final judgment

11  was entered, Finjan genuinely believed the Court had committed several reversible errors, several of

12  which would receive *de novo* review.  As is its right, Finjan presented its views to the Federal Circuit.

13  Nothing about the appeal suggests that it "stood out" from others for § 285 purposes.  Finjan

14  presented evidence-based, reasoned argument on five issues.  It prepared hundreds of pages of briefing

15  and evidence, as well as oral argument.  That it lost does not mean its positions were meritless, and

16  Juniper commits a serious error of its own in suggesting otherwise.  Nothing about the appeal suggests

17  exceptionality, nor does the fact that the Federal Circuit issued a non-precedential ruling pursuant to

18  Federal Circuit Rule 36.  If such a ruling were to render an appeal exceptional, then over sixty appeals

19  from district courts would merit fee shifting every year.

20  **IV.   JUNIPER'S CALCULATION OF FEES IS UNREASONABLE**

21  Though Juniper's motion claims exceptionality as to a number of discrete issues, the accounting

22  of legal fees supplied by its counsel does not align with Juniper's claims.  Rather than organizing fees

23  issue by issue, Juniper's counsel has recited fees chronologically around a few case events.  This means

24  that should the Court not reject Juniper's claim in its entirety (as it should), but only adopt it partially,

25  the parties would be almost entirely unable to derive from Juniper's submission what fees line up with

26  which activities.  For example, should the Court decide to award fees *only* in connection with the '494

27  Patent liability determinations (the Court should not award such fees), it is impossible to isolate from

28  Juniper's submission the fees attributable to that patent.  Taken on its face, Juniper's submission seems

to invite inclusion of nearly every fee category, from initial pleadings to the appeal, for every issue.  The Court should reject Juniper's invitation to award fees on such a high-level allocation.  To the extent the Court does not reject Juniper's fee proposal at the outset (as it should), it should require a more accurate, precise accounting from Juniper for fees on an issue-by-issue basis.

## V.     ANY DETERMINATION OF FEES MUST INVOLVE FINJAN'S PRIOR COUNSEL

Finally, even if the Court were inclined to award any attorney fees, pursuant to the Court's order of October 22, 2020 (Dkt. No. 631) retaining jurisdiction over Kramer Levin for the purpose of sanctions motions, Finjan respectfully submits that further discussions concerning potential fee-shifting or sanctions require participation from Kramer Levin.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Juniper's motion for fee-shifting under § 285 in its entirety.

Dated:  December 14, 2020                Respectfully Submitted,

By:  /s/ *Juanita R. Brooks*
Juanita R. Brooks (CA SBN 75934) brooks@fr.com
Frank J. Albert (CA SBN 247741) albert@fr.com
Oliver J. Richards (CA SBN 310972) ojr@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070 / Fax: (858) 678-5099

Robert Courtney (CA SBN 248392), courtney@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff FINJAN, INC.