IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Ingrid M. H. Petersen (SBN 313927)
ipetersen@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>　　　　Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**JUNIPER NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**<br><br>Hearing Date: January 7, 2021<br>Hearing Time: 8:00 a.m.<br>Judge: Hon. William Alsup<br>Courtroom: 12 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. Finjan Concedes that Juniper is the Prevailing Party ...............................................2

    B. This Case is Exceptional ............................................................................................2

        1. Finjan's Shifting Sands Damages Case for the '494 Patent .........................3

        2. Finjan's '494 Patent Infringement Case Was "Smoke and Mirrors" ...........6

        3. Finjan's Motion for Summary Judgment as to the '154 Patent Was So Meritless it Ended In a Dispositive Ruling for Juniper ...............8

        4. Finjan's Notice Argument for the '780 Patent Was Baseless ....................11

        5. Finjan Forced Juniper to Defend Additional Meritless Claims .................13

        6. Finjan's Appeal Was Exceptional ...............................................................14

    C. Finjan Does Not Contest that the Fees Requested by Juniper are Reasonable .......14

    D. Finjan's Decision to Fire its Counsel is No Reason to Delay ................................15

III. CONCLUSION .................................................................................................................15

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002.12 01

- i -

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Artic Cat, Inc. v. Bombardier Recreational Prods. Inc.*,
 876 F.3d 1350 (Fed. Cir. 2017) ................................................................................................12

*Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*,
 744 F. Supp. 2d 646 (E.D. Mich. 2010) ...................................................................................13

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
 424 F.3d 1293 (Fed. Cir. 2005) ..................................................................................................7

*Elec. Commcn's Techs., LLC v. ShoppersChoice.com, LLC*,
 963 F.3d 1371 (Fed. Cir. 2020) ..................................................................................................3

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
 879 F.3d 1299 (Fed. Cir. 2018) ..................................................................................................5

*Finjan, Inc. v. Cisco Sys., Inc.*,
 No. 17-cv-00072-BLF, Dkt. 555 (N.D. Cal. Apr. 17, 2020) ................................................. 4, 7

*Finjan, Inc. v. ESET, LLC*,
 No. 17-cv-183, 2019 WL 5212394 (S.D. Cal. Oct. 16, 2019) ...................................................4

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
 616 F.3d 1357 (Fed. Cir. 2010) ........................................................................................ 11, 12

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,
 No. 13-cv-04057, 2017 WL 3007071 (N.D. Cal. July 14, 2017) ..............................................8

*Honeywell Int'l Inc. v. Nokia Corp.*,
 615 F. App'x 688 (Fed. Cir. 2015) ............................................................................................1

*Hunter's Edge, LLC v. Primos, Inc.*,
 No. 1:14-cv-00249, 2016 WL 9244954 (M.D. Ala. Sep. 6, 2016) ............................................8

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
 876 F.3d 1372 (Fed. Cir. 2017) ................................................................................................14

*Kilopass Tech., Inc. v. Sidense Corp.*,
 82 F. Supp. 3d 1154 (N.D. Cal. 2015) .....................................................................................15

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
 No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ...........................................9

*Monsanto Co. v. Bowman*,
 657 F.3d 1341 (Fed. Cir. 2011) ................................................................................................12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- ii -

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ................................................................................................1, 2, 8

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
    752 F. App'x 1017 (Fed. Cir. 2018) ...........................................................................9, 10

*Phigenix, Inc. v. Genentech, Inc.*,
    No. 15-cv-1238, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) .........................................3

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ..........................................................................................9

*Princeton Digital Image Corp. v. Office Depot Inc.*,
    No. C 13-239, 2016 WL 1533697 (D. Del. Mar. 31, 2016) .............................................11

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013) ..........................................................................................10

*Sathianathan v. Smith Barney, Inc.*,
    No. C 04-02130, 2009 WL 537158 (N.D. Cal. Mar. 3, 2009) .........................................14

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    No. 13-1534, 2020 WL 1285915 (D. Del. Mar. 18, 2020) ..............................................15

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    411 F. Supp. 3d 1026 (N.D. Cal. 2019) .............................................................................3

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    No. C 16-03463 WHA, 2020 WL 5522993 (N.D. Cal. Mar. 4, 2020) ...............................9

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ........................................................................................10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    No. C 04-02123 WHA, 2012 WL 1877895 (N.D. Cal. May 22, 2012) .............................8

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc.*,
    No. 12-60545, 2014 WL 12495264 (S.D. Fla. Jun. 4, 2014) ...........................................14

**Statutes**

35 U.S.C. § 285 ...........................................................................................................................1, 13

35 U.S.C. § 287 ........................................................................................................................11, 12

**Rules**

Fed. R. Civ. P. 36 ..........................................................................................................................14

L.R. 54-5 .......................................................................................................................................15

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

- iii -

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

## I. INTRODUCTION

Finjan's lawsuit against Juniper was exceptional in every sense of the word. Of the nine patents Finjan asserted, only the '494 Patent survived to trial. As to that lone patent, the Court struck Finjan's damages case as "woefully inadequate" and the jury rejected its infringement case, which the Court later described as "smoke and mirrors." Dkt. 339 at 839:6-8; Dkt. 382 at 3:21-4:18. All of Finjan's other patents were rejected at summary judgment or dismissed with prejudice, and its appeal was summarily rejected by the Federal Circuit. Although not a single one of Finjan's patent claims had any merit, Finjan forced Juniper to litigate for three years and incur over $8.6 million in attorneys' fees. It is no exaggeration to say that 35 U.S.C. § 285 was enacted for cases like this one.

Finjan argues that this case is not exceptional because it had a subjective "good faith" belief in its positions due to past success in litigating against other parties and products. Opposition (Dkt. 638) ("Opp.") at 1–2. This is irrelevant. The Supreme Court rejected "bad faith" as a requirement for finding a case exceptional, and the mere fact that Finjan successfully litigated against different parties, with different products, has no bearing on whether Finjan had a meritorious case against Juniper. *See Honeywell Int'l Inc. v. Nokia Corp.*, 615 F. App'x 688, 689 (Fed. Cir. 2015) (Supreme Court "rejected our precedent" requiring "a showing of subjective bad faith" and "lowered the burden of proof for proving a case exceptional") (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554–48 (2014)).

In any event, Finjan's pursuit of objectively baseless claims is not the only reason this case is exceptional; the ***manner*** in which Finjan litigated its claims is equally (if not more) egregious. For example, Finjan asserts that its damages theory for the '494 Patent was "approved by past Federal Circuit law." Opp. at 1. That representation is not only false (as its theory has actually been excluded multiple times), it ignores the reason its conduct was exceptional ***in this case***: it is not because Finjan advanced a bogus damages theory, it is because Finjan attempted to ***change its infringement theory*** to one not advanced by its infringement expert simply to inflate damages. Dkt. 283 at 4–5. Even after the Court excluded Finjan's untimely theory, Finjan tried to present the same inflated numbers at trial through a "fact-based" damages theory, forcing this Court to exclude them again and expressly hold that Finjan was not entitled to any damages. *See, e.g.*, Dkt. 339 at 838:3-

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 1 -

5, 839:6-8. Finjan's refusal to respect this Court's ruling (and its own disclosed infringement theories) rendered the entire trial on the '494 Patent a waste, forcing Juniper to spend millions of dollars trying a patent for which Finjan could not have recovered any damages.

This is only one example. Juniper's motion details Finjan's repeated misconduct, including pursuing rejected claim constructions, continuing to pursue claims after dispositive rulings, reneging on its own prior stipulations, and more. *See, e.g.*, Motion ("Mot.") at 15–22. Further, Finjan does not contest that the amount of fees, number of hours, and hourly rates sought by Juniper are reasonable, and has thus waived any challenge to the fee amount. The Court should therefore declare this case exceptional and award Juniper the full $8,656,971 in attorneys' fees it seeks.

## II.   ARGUMENT

### A.   Finjan Concedes that Juniper is the Prevailing Party

Finjan admits that Juniper prevailed in this case. Opp. at 1 ("Juniper ended up prevailing"). Notably, however, Finjan continues its pattern of misrepresentations by claiming that it "defeat[ed] motions seeking to invalidate its patents." *Id*. This statement is false; the Court never ruled on Juniper's motions to invalidate the '780 Patent under § 101 because it disposed of those claims on the issues of non-infringement and notice. Dkt. 180; Dkt. 491. Similarly, the Court never ruled on Juniper's § 101 defense for the '494 Patent because the jury found no infringement. Dkt. 348.

### B.   This Case is Exceptional

Juniper's motion identified multiple grounds that, independently and in combination, render this case exceptional. *See, e.g.*, Mot. at 8. Finjan does not contest that this Court, the jury, and the Federal Circuit rejected all of its dispositive arguments and that it did not recover a single cent on its claims. Finjan's arguments against exceptionality are meritless and, as described below, amount to nothing more than further "smoke and mirrors."

Finjan also misrepresents the standard for exceptionality, quoting a 2003 Federal Circuit case and suggesting fees are only available in "limited" circumstances. However, the Supreme Court overruled the Federal Circuit's previously restrictive standard in *Octane Fitness*, 572 U.S. 545, and the Federal Circuit has since clarified that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 2 -

governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Elec. Commcn's Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1376 (Fed. Cir. 2020).

### 1.   Finjan's Shifting Sands Damages Case for the '494 Patent

As detailed in Juniper's motion, Finjan's damages case for the '494 Patent was exceptional in at least two respects. *See* Mot. at 9–12.

First, after realizing the damages base for the accused products was no more than $1.8 million, Finjan submitted a damages expert report that tried to change its infringement theory in order to inflate the damages base to $142 million. Dkt. 283 at 4–5. This Court rejected Finjan's new theory, holding that "Finjan may not now, in an effort to hyper-inflate its damages claim, belatedly raise new infringement theories that it failed to assert in its summary judgment motion (and, in fact, disclaimed). Finjan will thus be stuck with the $1.8 million base." *Id.*; *see also, e.g.*, *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 411 F. Supp. 3d 1026, 1028 (N.D. Cal. 2019) ("the shifting sands of the patent owner's [arguments]" rendered the case exceptional); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-1238, 2018 WL 3845998, at *5 (N.D. Cal. Aug. 13, 2018) (litigation conduct "became 'exceptional'" where plaintiff tried to change its infringement theory).

Second, rather than accept the Court's ruling, Finjan insisted the case should proceed to trial, where it attempted to present a "fact based" damages case relying on the same inflated damages base. *See, e.g.*, Dkt. 336 (Trial Tr.) at 277:3-23 (testimony concerning Finjan "analysis" of a $20 million royalty). Because this $20 million royalty "undoubtedly included the products that this Court has now ruled are not a part of this case," this Court rebuked Finjan, excluded the evidence, and issued a curative instruction. *Id.* at 290:5-294:12. The Court ultimately granted judgment as a matter of law that "there will be no damages award," finding that Finjan's damages case was "***woefully inadequate***." Dkt. 339 (Trial Tr.) at 838:3-5, 839:6-8 (emphasis added).

Finjan's opposition does not even attempt to justify its improper infringement theory. Instead, Finjan simply argues that its expert presented a "reasonable amount of damages" of $60-$70 million based on a royalty base of "$142.1 million." Opp. at 15–16.[1]  Finjan's argument

---

[1] Finjan's misrepresentations of the record continue: Finjan claims "[i]t is undisputed at all of Juniper's SRX gateway sales (amounting to about $142.1 million in revenue) included [a] free trial

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 3 -

misrepresents the Court's order, which expressly found that Finjan's damages theory should be excluded *because* Finjan was attempting to "belatedly raise new infringement theories" and that, under Finjan's actual infringement theory, the damages base was $1.8 million. Dkt. 283 at 4-5. Further, as the Court found, "[t]hat Expert Arst would suggest that Juniper would have been willing to pay an eyepopping $60–$70 million as a royalty for the sake of $1.8 million in revenue is preposterous. This order therefore agrees with Juniper that Expert Arst's testimony 'defies basic laws of economics.'" Dkt. 283 at 4.

Finjan next argues that it "acted reasonably" in presenting Mr. Arst's damages model because it used a "cost savings" approach approved by the Federal Circuit. Opp. at 16–17. This argument misses the point. Again, the primary problem with Finjan's damages case was not that it used a cost savings legal theory, but rather that Finjan attempted *to change its infringement theory* (specifically, to accuse additional products) to inflate the damages base. Dkt. 283 at 4–5. Further, Finjan's assertion that its cost savings approach (which sought $60-$70 million) was reasonable also relies on the same rejected $142 million damages base this Court struck. *Id*.

But there is more: Finjan's "cost savings" argument is also factually inaccurate. Though Finjan claims that it has "successfully used" the cost savings approach in other cases, it fails to cite a single case in which it did so. In fact, multiple courts have excluded Finjan's cost savings theories on grounds similar to those raised by Juniper in this case. *See Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, Dkt. 555 at 8–9 (N.D. Cal. Apr. 17, 2020) ("Dr. Valerdi's cost analysis is based not on creating a non-infringing alternative system, but on recreating the accused system. Because the Federal Circuit's 'cost savings' method is based on comparing the difference in cost between the infringing product and a non-infringing alternative, the Court sees no relevance in Dr. Valerdi's estimated actual cost."); *Finjan, Inc. v. ESET, LLC*, No. 17-cv-183, 2019 WL 5212394, at *3 (S.D. Cal. Oct. 16, 2019) (excluding for same reason); *see also* Dkt. 228-4 at 8-12 (Juniper *Daubert*).

Finjan also attempts to defend its "fact based" damages case, contending there was

---

[to Sky ATP." Opp. at 15. To the contrary, Sky ATP was only available for a subset of SRX models. Dkt. 228-4 at 3. Thus, Finjan's $142.1 million damages base improperly included revenues for SRX models for which a free trial to Sky ATP could not have ever been activated by the customer.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 4 -

"extensive evidence" on damages. Opp. at 17–18. Wrong again. First, as to Finjan's claim that it presented "extensive evidence" of apportionment, Finjan does not identify any actual evidence it presented, instead relying on testimony from *Juniper's* case. Opp. at 17–18 (citing evidence from "Juniper's own witness"). As the Court found in granting JMOL of no damages, "[f]or purposes of this motion, *we have to look at the plaintiff's case*, and it was not sufficient. It was woefully inadequate. So there will be no damage award." Dkt. 339 at 839:6-8 (emphasis added). The Court further found that "on this record it would be impossible for the jury to apportion the revenue between the patented item and the unpatented items." *Id*. at 838:3-5. In short, Finjan presented no evidence on apportionment, much less "extensive" evidence.

Second, contrary to Finjan's claim that it presented appropriate evidence of a royalty base, Opp. at 18, its trial presentation simply repeated its effort to inflate the royalty base (in contravention of the Court's order) by including revenues from Juniper SRX devices that were not accused. *See, e.g*., Dkt. 323 at 1–2. This Court expressly rebuked Finjan during trial for attempting to offer such evidence, and issued a curative instruction to the jury. Dkt. 336 at 290:5-294:12.

Third, as to the royalty rate, Finjan argues that it presented appropriate evidence that Finjan "seeks a royalty rate of 8% on associated hardware revenues, and 16% on associated software revenues, or a use-based rate of 32¢/scan or $8/user." Opp. at 18. However, as the Court correctly noted at trial, the rates Finjan "seeks" are irrelevant—what matters is the rates it actually obtained. Dkt. 336 at 290:21-291:11 ("the law is not -- in the hypothetical negotiation the law is not, N-O-T, that you get to put your guy on the stand and he gets to say 'Here's the way we like to negotiate.'"). Indeed, Finjan knew *when it presented these rates* that the Federal Circuit had expressly rejected these exact royalty rates in a prior Finjan case. *Finjan, Inc. v. Blue Coat Sys., Inc*., 879 F.3d 1299, 1312 (Fed. Cir. 2018) ("In short, the $8-per-user fee appears to have been plucked from thin air and, as such, cannot be the basis for a reasonable royalty calculation.").

In sum, Finjan's damages case for the '494 Patent encapsulates why this case is exceptional. Finjan first attempted to change its theory to inflate damages then, when the Court stopped this effort, Finjan attempted to end-run around the Court and pursue the same inflated damages at trial (which the Court again rejected). Finjan's conduct forced a pointless trial on a patent for which

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

10899002                                    - 5 -

Finjan had no damages even if it established infringement (which it also failed to do), costing Juniper millions of dollars in legal fees that it never should have had to incur.

### 2. Finjan's '494 Patent Infringement Case Was "Smoke and Mirrors"

Finjan's infringement case as to the '494 Patent, which the Court aptly summarized as "smoke and mirrors," also renders this case exceptional. Dkt. 382 at 3:21-4:18; Mot. at 12–14.

Pursuant to the Court's "showdown" procedure, Finjan selected claim 10 of the '494 Patent as its "strongest claim" and moved for summary judgment of infringement. Dkt. 98 at 1. The Court did not grant summary judgment, and instead ordered an early trial on Claim 10. Dkt. 189. As Finjan acknowledges in its opposition, "the dispute [at trial] was narrow." Opp. at 8. Specifically, whether the accused Juniper products stored security profiles in a "database," which the parties stipulated means a "collection of interrelated data *organized according to a database schema* to serve one or more applications." Dkt. 189 at 16-17 (emphasis added).

At trial, Juniper presented evidence that the accused products did not practice the "database" limitation because they store security profiles in two Amazon-supplied storage solutions (called DynamoDB and S3) that do not use database schemas. Dkt. 338 at 750:2-19. In support, Juniper presented Amazon documents expressly stating that "DynamoDB is schema-less" and that S3 stores data as "unstructured blobs." *Id.* at 751:10-752:18; Trial Ex. 1264-1 at 3-4 (Dkt. 126-20).

Finjan, in contrast, presented no evidence that DynamoDB or S3 use a database schema. Instead, Finjan pointed to a different component (ResultsDB), even though Juniper did not store security profiles there. Dkt. 337 at 448:4-15. Ultimately, Finjan's expert admitted that ResultsDB was not actually a database, but was instead an "application programming interface" that did not physically store security profiles. Dkt. 337 (Trial Tr.) 440:14-17 ("the Results Database API"),467:9-11 (conceding information is actually stored in "DynamoDB, and the S3").

Juniper exposed Finjan's sleight-of-hand at closing argument, explaining that Finjan's infringement theory "has sort of a mix and match problem. They can find a database within the meaning of the claim, the definition of the construction, but they can't find any security profiles being stored in there. And they can find where the security profiles are being stored, which is

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 6 -

DynamoDB and S3, but those don't have a schema and, therefore, don't qualify as databases under the Court's construction." Dkt. 339 (Trial Tr.) at 931:23-932:6. The jury returned a verdict of no infringement (Dkt. 333) and, after trial, the Court denied Finjan's motion for judgment as a matter of law. Dkt. 353. In doing so, the Court noted Juniper's closing on the "database" issue and stated that, after Juniper's closing argument, "finally the scales fell from my eyes." Dkt. 382 at 3:21-4:18. The Court then explained that "So those statements that I made along the way about how I -- that was just -- I was just drawn in by your smoke and mirrors." *Id*.

Finjan's opposition does nothing to undermine the Court's assessment of Finjan's case. For example, Finjan's lead argument is that its case was not frivolous because the Juniper products practiced some limitations of Claim 10 (not the "database" limitation). Opp. at 9. Of course, whether Finjan established that Juniper practiced some limitations of Claim 10 is irrelevant, because "infringement requires that ***each and every*** limitation set forth in a claim appear in an accused product." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (emphasis added). Practicing only some limitations of a claim creates the same liability as practicing no limitations of that claim.

Finjan's second strategy is to repeat the same "smoke and mirrors" tactic Finjan attempted at trial. For example, Finjan argues the Juniper products use a database" by citing a variety of documents and testimony using the word "database." Opp. at 8-9. Of course, Finjan fails to identify any evidence that the locations where Juniper actually stored security profiles (DynamoDB and S3) are databases within the agreed construction in this case (*i.e*., databases using a schema). Finjan also attempts to attack Juniper's evidence by claiming Juniper's motion quoted deposition testimony not before the jury. Opp. at 10. Once again, Finjan is misrepresenting the record. The cited testimony was played for the jury. Dkt. 337 at 501:7-12 (playing page 259:12-18 of Dr. Cole's deposition).

Finjan next argues that the fact its infringement case "made it to a jury" means fees should be denied. Opp. at 9. Finjan's argument is misleading, because Finjan's claims did not "survive" summary judgment. Rather, as discussed above, ***Finjan*** moved for summary judgment of infringement and the Court denied Finjan's motion, instead ordering a trial. Dkt. 189. ***Juniper never moved for summary judgment of non-infringement on the '494 Patent***. All Finjan can say,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

10899002                            - 7 -

therefore, is that Finjan's own patent survived *Finjan's* motion for summary judgment. And, while this seems like a very low bar, it is a bar that Finjan could not even clear for its '154 patent, as discussed below. The cases that Finjan cites (*Checkpoint Systems* and *ResQNet*) are inapplicable, as both address situations where the *defendant* moved for summary judgment and the Court denied the motion. Finjan's claims never faced that same pre-trial testing here and, the first time they were tested, the jury rejected them and the Court found they were "smoke and mirrors."

In any event, Finjan's assertion that fees cannot be awarded where claims make it to trial is wrong. *See, e.g.*, *Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 13-cv-04057, 2017 WL 3007071, at *2 (N.D. Cal. July 14, 2017) (awarding fees to defendants after jury and bench trials); *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2012 WL 1877895, at *2-4 (N.D. Cal. May 22, 2012) (awarding fees to prevailing defendants at bench trial); *see also Hunter's Edge, LLC v. Primos, Inc.*, No. 1:14-cv-00249, 2016 WL 9244954, at *5 n. 3 (M.D. Ala. Sep. 6, 2016) ("if *Octane Fitness* means anything it is that there is no 'rigid' test—such as whether a party filed (or did not) or won (or lost) summary judgment—for determining whether a case is exceptional.").

Finjan also contends its case was reasonable because the Court stated it initially believed Finjan "had a strong case on infringement." Opp. at 9. But Finjan omits the rest of the Court's statement, where the Court explained "I was wrong about that" and "So those statements that I made along the way about how I -- that was just -- I was just drawn in by your smoke and mirrors. That's all that happened on that." Dkt. 382 at 3:21-4:18. Far from bolstering Finjan's argument, the Court's remarks show exactly why Finjan's infringement theory was exceptional.

### 3.  Finjan's Motion for Summary Judgment as to the '154 Patent Was So Meritless it Ended In a Dispositive Ruling for Juniper

Finjan's infringement case as to the '154 Patent was also exceptional. *See* Mot. at 14–17. During the second round of the Court's showdown procedure, Finjan selected Claim 1 of the '154 Patent as its second strongest claim, and moved for summary judgment of infringement. Finjan's infringement theory, however, was based on a claim construction that contradicted prior decisions by the PTAB and the Federal Circuit, as well as the patent's own description of the "present invention." Specifically, Finjan urged this Court to construe the term "content processor" to include

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

- 8 -

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

a processor that processes "unmodified content." Dkt. 491 at 7–11. Finjan's position, however, was contrary to the PTAB's prior decision upholding the validity of the patent, which explained that "[T]he claimed 'content' in the context of the surrounding claim language, must refer to the *modified* content received at the client computer. The claimed content *cannot refer to the 'original content'* that is received by the gateway computer." Dkt. 491 at 8 (quoting Dkt. 390-19 at 10) (internal citations omitted) (emphases added). It was also contrary to the Federal Circuit's characterization of Claim 1 in the appeal from the PTAB decision. *See Palo Alto Networks, Inc. v. Finjan, Inc.*, 752 F. App'x 1017, 1018 (Fed. Cir. 2018) (noting that claim 1 "recit[es] a system or software program that executes *a substitute [i.e., modified] function*.") (emphasis added).

Finjan's position was so meritless that the Court not only denied Finjan's motion for summary judgment (applying the construction from the PTAB and Federal Circuit decisions), but also issued an order to show cause why summary judgment should not be granted in favor of Juniper. Despite "filing pages upon pages of briefing, declarations, and exhibits" in response to the OSC, the Court found that "Finjan failed to offer any support in its reply brief under the adopted construction" and granted summary judgment in favor of Juniper. Dkt. 590 at 3, 5.

Finjan's infringement theory as to the '154 Patent was thus exceptional in at least two respects. First, Finjan's attempt to pursue an infringement theory that was contrary to prior PTAB and Federal Circuit constructions was by itself exceptional. *See, e.g.*, *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, No. C 16-03463 WHA, 2020 WL 5522993, at *7 (N.D. Cal. Mar. 4, 2020) (case exceptional where "Plaintiff started pursuing an infringement theory in district court that was contrary to the claim construction it advanced in its appellate briefing in *Sipnet* and contrary to the Federal Circuit's 2015 claim construction in *Sipnet*."); *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246–47 (Fed. Cir. 2003) (case exceptional where patentee asserted infringement theory contrary to prior Federal Circuit claim construction); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014) (case exceptional where patentee pursued infringement case contrary to prior district court and ITC constructions). Second, Finjan's decision to continue to litigate the '154 Patent after this Court's dispositive claim construction, despite having no evidence of infringement under this construction, was also exceptional. *See, e.g.*,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 9 -

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326 (Fed. Cir. 2013) (case exceptional where party continued to assert infringement after an adverse construction).

Finjan argues that its position in the OSC proceedings was not exceptional because the Court purportedly "clarified" its construction during the OSC proceedings to require that the content processor process "content modified with a substitute function" as opposed to any type of modified content. Opp. at 12–13. This argument is also wrong; the '154 Patent clearly states that "the present invention operates by replacing original function calls **with substitute function calls** within the content, at a gateway computer, prior to the content being received at the client computer." Dkt. 491 at 8 (quoting '154 Patent at 4:55-60) (emphasis added). It is black letter law that references in the specification to "the present invention" limit the scope of the invention, as Finjan certainly knew. *Id.* (citing *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013)). Further, the Federal Circuit's prior opinion on Claim 1 expressly noted that Claim 1 used a substitute function. *See Palo Alto*, 752 F. App'x at 1018 (claim 1 "recit[es] a system or software program that executes **a substitute [i.e., modified] function**.") (emphasis added). Finjan's assertion that it had no inkling a substitute function was involved is therefore not credible.

Finjan also contends that its construction was not unreasonable because the word "modified" does not appear in the text of the claim and was struck during prosecution. Opp. at 13–14. Even putting aside that Finjan made the same arguments during OSC proceedings and the Court rejected them, *see* Dkt. 491 at 10, this does not explain why Finjan pursued its construction **after** the PTAB and Federal Circuit had already held that the claim required the processing of modified content, or why it persisted in pressing its position after this Court construed the claims the same way.[2]

In sum, Finjan has no credible story for why it pursued a construction that contradicted prior court decisions, or why it continued to litigate the '154 Patent despite having no evidence under the Court's construction. Finjan's case on the '154 Patent therefore further makes this case exceptional.

---

[2] Finjan's assertion that the PTAB decision somehow did not address whether the claimed content must be modified (Opp. at 14) is incorrect. The PTAB's decision was construing the term "content," and specifically addressed the issue of original vs. modified content. *See* Dkt. 390-19 at 6, 11.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 10 -

### 4.   Finjan's Notice Argument for the '780 Patent Was Baseless

Finjan's litigation of the '780 Patent was also exceptional in several respects. As detailed in Juniper's motion, Finjan's case was moot from the outset because Finjan failed to comply with the notice requirements of 35 U.S.C. § 287 before the '780 Patent expired, and thus could not recover any damages even if it prevailed on infringement (which it did not). *See* Mot. at 17–21.

Finjan nonetheless plowed forward with its claims, engaging in litigation misconduct in the process. For example, in an attempt to avoid having to prove constructive notice (which requires showing marking of products that practice the patent, including licensee products), Finjan first attempted "to backtrack from its prior admission that Juniper gave adequate *Arctic Cat* notice" regarding unmarked products. Dkt. 491 at 15. When the Court blocked this retreat, Finjan tried to deny that its licensees practiced the patents, even though it had previously sued many of its licensees for infringing its patents (and one, Sophos, was found to infringe). *See* Dkt. 491 at 17 n.6. Finjan's shifting positions alone warrant an exceptional case finding. *See Princeton Digital Image Corp. v. Office Depot Inc.*, No. C 13-239, 2016 WL 1533697, at *13 (D. Del. Mar. 31, 2016) ("inconsistent representations before the Court also weigh in favor of an exceptional case finding").

As for actual notice, Finjan failed to identify any evidence of an affirmative communication by the patentee to the alleged infringer that includes a "charge of infringement of specific patents by a specific product or group of products." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010). The only notice Finjan identified either (1) did not mention the '780 Patent at all, or (2) referred to the '780 Patent as having been previously asserted against third-parties, but did not contain any charge of infringement as to Juniper. Mot. at 19-20; Dkt. 491 at 13–14. Finjan also failed to identify any law supporting its position that these documents were sufficient to provide notice. *See* Mot. at 20 (discussing *Novo Nordisk* case).

Finjan contends that its actual notice allegations were "reasonable" citing a March 2016 presentation to Juniper's predecessor in interest (Cyphort). Opp. at 20. But this presentation Finjan cites is the same document that Finjan presented to the Court at the hearing on Juniper's motion for summary judgment, which merely notes that the '780 Patent had previously been asserted against

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 11 -

third parties. The Court immediately recognized this and shut down Finjan's argument, stating "No, litigation against other people and other products; but you did have some claim charts against the -- is it Cyphort -- products, but you didn't have one against 780." Dkt. 457 at 13:8-11.

Finjan has never identified any document that provides a "charge of infringement of specific patents by a [Juniper] specific product." *Funai*, 616 F.3d at 1373. Finjan does not dispute this is what actual notice requires, and in fact cites cases confirming this standard. *See, e.g.*, *Monsanto Co. v. Bowman*, 657 F.3d 1341, 1349 (Fed. Cir. 2011) (actual notice requires an "affirmative communication to the alleged infringer of a specific charge of infringement by a specific accused product or device"). Because Finjan knew from the outset that it had no evidence satisfying the applicable notice standard, its decision to pursue the '780 Patent anyway was exceptional.

As for constructive notice, Finjan's opposition does not even attempt to explain why it tried to backtrack its own prior stipulation that Juniper had provided sufficient notice of unmarked products. Opp. at 21–22. Rather, Finjan merely says it "reasonably believed" Juniper had not done so, which is not credible given that Finjan had told the Court the exact opposite earlier in the case. Dkt. 491 at 15 ("The Court: I'm asking [about] this Arctic notice . . . can you both agree that that was given so that we don't have to complicate the trial with yet another issue? Ms. Kobialka [Finjan's Counsel]: ***Yeah***, and that's not a jury issue to decide whether or not that notice was given in the litigation. The Court: All right. So if I just tell you right now that you've got to prove notice, you are okay with that? Ms. Kobialka: ***Yes***.") (emphases added).

Finjan also attempts to misrepresent the law, suggesting that it "reasonably believed the marking requirement did not apply in the context of licensees who disputed they practiced the patent." Opp. at 22. Federal Circuit law, however, is clear that "[a] patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the patentee].'" *Artic Cat, Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). It is also clear that, where third party products are involved, the patentee must show it "made reasonable efforts to ensure compliance with the marking requirements" and that it is "the patentee's burden to establish compliance with the marking statute." *Id.* at 1366–67.

Finjan did not contest that it "did not require any of its licensees to mark," Dkt. 491 at 17–

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 12 -

18, and thus could not have reasonably believed that it had complied with the constructive notice requirement. Rather, Finjan's position appears to be that it believed it was above the law, and that it should not have had to comply with the constructive notice requirement because that would have made it easier for Finjan (as a serial patent litigant) to settle cases. Section 285 does not permit Finjan to pursue extraordinary legal positions on Juniper's dime.[3]

### 5. Finjan Forced Juniper to Defend Additional Meritless Claims

Finjan's case was exceptional not only because of the baseless theories it pursued, but also because it engaged in a pattern of rejecting Juniper's requests that it drop its meritless claims to prevent further waste. For example, as detailed in Juniper's motion, Finjan (1) initially asserted that SRX alone infringed claim 1 of the '780 Patent, but then failed to even oppose Juniper's motion for summary judgment on that product, (2) refused to confirm (despite requests from Juniper) that it would no longer pursue Claim 9 of the '780 Patent against SRX and Sky ATP, forcing Juniper to file a motion for summary judgment on those products that Finjan also did not oppose, and (3) despite Juniper's request that Finjan narrow its case, maintained it would pursue five different patents in a second trial (forcing Juniper to prepare for trial) only to dismiss those claims with prejudice after the Court's grant of summary judgment on the '154 Patent. Mot. at 21–22.

Finjan's opposition does not even attempt to defend (and in fact ignores) its repeated tactic of forcing Juniper to file summary judgment motions that Finjan then did not oppose. *See Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*, 744 F. Supp. 2d 646, 654 (E.D. Mich. 2010) (finding case exceptional where Plaintiff was asked to drop its claims but nonetheless "proceeded to summary judgment on the patent but failed to file a response to Defendants' summary judgment motion"). Rather, Finjan focuses on the dismissal of its claims, arguing that Juniper should have moved for summary judgment if the claims were meritless. Opp. at 22. This argument is a red herring – under the Court's showdown procedure, Juniper was only permitted to file on two claims, and thus could not have filed motions on the other patents. In any event, Finjan's assertion that

---

[3] Finjan also attempts to defend its infringement case as to the '780 Patent. Opp. at 10–11. While the basis for Juniper's motion as to the '780 Patent is the absence of any good faith case as to notice, Finjan's infringement case and arguments concerning the "hashing function" limitation were also meritless, as discussed in Juniper's pending motion for sanctions. *See* Dkt. 409 at 12–15.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

- 13 -

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

waiting to dismiss its meritless claims only after forcing Juniper to expend millions of dollars defending them (and after Juniper repeatedly asked Finjan to drop them) somehow benefitted Juniper is ridiculous, and is exactly the sort of wasteful conduct that renders a case exceptional.

### 6. Finjan's Appeal Was Exceptional

Finjan's appeal – which repeated the same meritless arguments discussed above – was exceptional for the same reasons as Finjan's case in this Court. Mot. at 22–23. Finjan's only defense of its appeal is that the fact the Federal Circuit summarily rejected it does not mean it was meritless. Opp. at 24. Finjan misses the point. The Federal Circuit's summary affirmance is not why this case is exceptional; rather, the Federal Circuit's disposition confirms that this Court and the jury were correct in concluding that Finjan's claims had no substantive merit, and that the issue was not close. *See* Fed. Cir. R. 36 (court may affirm without opinion only where "the record supports summary judgment" or the jury's verdict and "an opinion would have no precedential value"). Further, this Court need not find that Finjan's appeal was independently exceptional, because a trial court may "award[] fees for the entire case, including any subsequent appeals.'" *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir. 2017).

### C. Finjan Does Not Contest that the Fees Requested by Juniper are Reasonable

Finjan does not contest that, if this case is found to be exceptional, the hourly rates, number of hours expended, and total amount of fees sought by Juniper are reasonable. Opp. at 24–25. Because its opposition raises no objection to Juniper's fee calculation, Finjan has waived any challenge on those issues. *See, e.g.*, *Ultimate Combustion Co., Inc. v. Fuecotech, Inc.*, No. 12-60545, 2014 WL 12495264, at *4 (S.D. Fla. Jun. 4, 2014) (holding that "Defendants have waived any objection to the hourly rates and time entries submitted" where they "have not objected to the hourly rates claimed or made specific objections to the number of hours spent"); *Sathianathan v. Smith Barney, Inc.*, No. C 04-02130, 2009 WL 537158, at *9 (N.D. Cal. Mar. 3, 2009) ("Plaintiff waived this argument, however, by failing to raise it in his opposition to Smith Barney's Motion").

Indeed, Finjan's only objection to Juniper's fee calculation is that *if* the Court awards fees only in connection with certain issues, a more detailed allocation may be required. While Juniper is willing to provide further accounting if requested by the Court, no "issue-by-issue" accounting is

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

- 14 -

required, and in fact the law provides that the Court "need not parse through [a party's] actions to determine the cost associated with every discrete instance of 'exceptional' conduct." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1165-67 (N.D. Cal. 2015); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, No. 13-1534, 2020 WL 1285915, at *4-5 (D. Del. Mar. 18, 2020) (awarding fees for entire case where "it was not only the unreasonable manner in which the case was litigated, but also the lack of substantive strength"). Juniper's accounting provides the detail required by the Federal Rules and the Local Rules of this Court, *see* L.R. 54-5, and Finjan cites no authority requiring that a party provide an exhaustive "issue-by-issue" accounting of fees.

Further, Juniper's motion and supporting declaration cite extensive authority demonstrating that the hourly rates and amount of fees sought are reasonable. *See, e.g.*, Mot. at 23–25; Dkt. 634-1 (Kagan Decl.) at ¶¶ 7–14. Finjan raises no objection and cites no contrary authority. In addition, the fees sought by Juniper have already been significantly reduced below what Juniper actually paid, including by lowering the hourly rates sought, omitting fees from non-attorneys (such as paralegals), excluding fees related to *inter partes* review proceedings and administrative, internal, or training tasks, and more. Dkt. 634-1 at ¶ 16. Thus, if the Court were to require a line-by-line accounting, it would result in Finjan owing a far higher amount of fees than Juniper presently seeks.

### D. Finjan's Decision to Fire its Counsel is No Reason to Delay

Finjan asserts that further "discussions" concerning fees must involve its prior counsel. Opp. at 25. This argument is meritless. Finjan voluntarily fired its prior counsel after its defeat in this Court and retained new counsel for appeal. If Finjan believed any consultation with its prior counsel was necessary, it was free to contact them at any time. Finjan's apparent failure to pick up the phone in preparing its opposition is not a basis to delay resolution of this motion.

### III. CONCLUSION

For the foregoing reasons and the reasons stated in its motion, Juniper respectfully requests that the Court grants its motion and award Juniper $8,656,971 in attorneys' fees.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10899002

- 15 -

REPLY ISO JUNIPER'S MOTION FOR ATTORNEYS' FEES
Case No. 3:17-cv-05659-WHA

Dated: December 21, 2020

Respectfully submitted,

IRELL & MANELLA LLP

By: /s/ *Rebecca Carson*
Rebecca Carson

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.