UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FINJAN, INC.,

    Plaintiff,

v.

JUNIPER NETWORK, INC., et al.,

    Defendants.

No. C 17-05659 WHA

**ORDER RE REQUEST FOR ATTORNEY'S FEES**

## INTRODUCTION

Following affirmance by the United States Court of Appeals for the Federal Circuit of the rulings in this patent infringement suit, the prevailing defendant moves for attorney's fees. Because this case did stand out as exceptional in certain respects, a limited award of attorney's fees under 35 U.S.C. § 285 is warranted.

## STATEMENT

Patent owner Finjan, Inc. filed this infringement suit in September 2017, asserting several patents against Juniper Network, Inc. Motion practice led to the "patent showdown." Each party chose its strongest patent claim, Finjan its best case for infringement and Juniper its best case for noninfringement or invalidity, and moved for early summary judgment in June 2018. Juniper prevailed on noninfringement of claim 1 of U.S. Patent No. 6,804,780 and though Finjan largely prevailed on infringement of claim 1 of U.S. Patent No. 8,677,494, disputes of fact remained. So we set a jury trial on that claim for December 2018. Before trial, however,

*Daubert* motions excluded Finjan's damages expert. So Finjan attempted to present a facts-only damages case at trial (which was permissible if competent evidence was presented). After hearing the evidence, though, the Court awarded judgment as a matter of law to Juniper on damages. Worse for Finjan, the jury then returned a noninfringement verdict. Eventually this was all affirmed on appeal.

The patent showdown proceeded to the next set of claims. In May 2019, Juniper prevailed, unopposed, on noninfringement of most accused products for claim 9 of the '780 patent, and for those remaining accused products, Finjan's infringement case fell apart because it hadn't provided adequate notice of the patent to Juniper under 35 U.S.C. § 287. Then, after the construction of a term from claim 1 of U.S. Patent 8,141,154 appeared to preclude infringement, the undersigned ordered the parties to show cause why summary judgment of noninfringement should not be entered. A following order later in July entered such summary judgment for Juniper. Just over a week later, Finjan stipulated to dismissal with prejudice of all remaining patent claims.

Finjan then appealed aspects of both rounds of the showdown (including trial in the first round). The Federal Circuit, following full briefing and oral argument, summarily affirmed. Juniper now moves for attorney's fees. This order follows full briefing and oral argument (held telephonically due to COVID-19).

**ANALYSIS**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 28 U.S.C. § 285. An exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." It is a totality of the circumstances inquiry committed to the court's sound discretion. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Elect. Commc'n Tech. v. ShoppersChoice.com*, 963 F.3d 1371, 1377 (Fed. Cir. 2020).

Losing, in itself, does not make a case exceptional. More is required. In many respects, however, this case was exceptional. For one example, Finjan's first-round '494 patent damages

fiasco wasted a great deal of everyone's time and energy.  After discovering its infringement theory covered only a minute portion of Juniper's revenue base, on the eve of trail Finjan flip flopped and came up with a new infringement theory, one which would capture more of Juniper's products and inflate the target revenue base.  Finjan tried to sneak this theory in with its expert-damages report, but we caught it, and the *Daubert* order excluded that trick.

Undaunted, Finjan pressed ahead and tried to present to the jury a facts-only damages case.  Finjan, however, utterly failed.  In one instance, a Finjan executive attempted to testify to what it would have sought from Juniper in negotiations, prejudicial testimony patently irrelevant to the question of the *hypothetical* royalty that two *reasonable* parties might have agreed to.  This stunt earned Finjan a stern caution from the Court and a limiting instruction to the jury, striking the testimony (Dkt. No. 336 at 276–78, 290–294).  More broadly, Finjan made no effort at trial to allocate the target revenue base between allegedly infringing product functions and noninfringing functions.  Put simply, Finjan's facts-only damages case at trial evinced the same flaws that got its expert-damages report thrown out, artificially attempting to inflate revenue to which it would be entitled, assuming its infringement case succeeded before the jury.  After hearing this case, then, the Court struck Finjan's "woefully inadequate" damages case for the '494 patent (Dkt. No. 339 at 837–39).  Atop that, the expired patent could not support an injunction.  So the whole song and dance came to nothing, even before the jury later rejected the merits of the infringement claim.  The entire assertion of the '494 patent thus stood out as exceptional.

For another example, Finjan should have dropped the '780 patent after that first round patent showdown, which granted Juniper summary judgment of noninfringement on claim 1 on the construction of the phrase "performing a hashing function."  Undeterred, Finjan kept the "substantially overlap[ping]" claim 9, which included the same "performing a hashing function" limitation, in the running for the second round of the showdown and even expanded the scope of accused products.  Yet when Juniper moved for summary judgment against claim 9, Finjan failed to oppose as to a majority of the accused products.  Just as both parties have a joint duty to frame dispositive issues with good judgment, each party has an individual duty to continually

3

reevaluate the viability of its claims. Finjan shirked its end of both of those duties and again wasted everyone's time and energy in instigating this motion aspect. *Finjan v. Juniper*, 387 F. Supp. 3d 1004, 1014 (N.D. Cal. 2019).

Finjan's case as to the few remaining accused products, which turned on whether it had provided actual or constructive notice (through product marking) of the '780 patent to Juniper before its expiration, suffered its own unforced errors. On the constructive notice front, Finjan attempted to relitigate concessions it had already made to the Court in previous hearings. Then on the actual notice front, Finjan misrepresented, though perhaps not intentionally at least recklessly, a favorable district court decision as having been affirmed on those relevant grounds by the Federal Circuit when, in fact, it had not been. *Id.* at 1014–16. And so, Finjan's assertion of the '780 patent stands out as exceptional as well.

On the other hand, it cannot be said that every aspect of this case stood out. Juniper complains that Finjan ignored previous adverse claim constructions regarding the '154 patent by other tribunals, but Finjan had every right to distinguish and *even argue against* earlier *non-binding* claim constructions by the Patent Trial and Appeals Board and unpublished Federal Circuit memoranda. Indeed, *this Court* disagreed with prior claim constructions from another esteemed judge of this district in ruling for Juniper on the "performing a hashing function" limitation of claim 1 of the '780 patent (Dkt. No. 180 at 9). "[T]he rule of law embodies evenhandedness, and 'what is sauce for the goose is normally sauce for the gander.'" *Nat'l Inst. of Fam. & Life Advs. v. Becerra*, 585 U.S. ___, 138 S. Ct. 2361, 2385 (2018) (Breyer, J., dissenting) (quoting *Heffernan v. City of Paterson*, 578 U.S. ___, 136 S. Ct. 1412, 1418 (2016)). On this point at least, Juniper has little, if any, right to complain.

Other considerations weigh against a complete award of fees here. After all, shifting of attorney's fees deviates from the "'American Rule' that each party in a lawsuit ordinarily shall bear its own attorney's fees . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Juniper's attempts to analogize to *Straight Path* continually miss this point. Even there, where the undersigned found as exceptional the patent owner's contrary and simultaneous arguments to this Court and the Federal Circuit, the fee award remained limited narrowly to time spent

defending against the specific patents tainted by that misconduct. That same caution in fee shifting remains appropriate here. *See* 411 F. Supp. 3d at 1035; 2020 WL 2539002 at *3.

In addition, though Juniper highlights the Federal Circuit's summary affirmance of the merits of both chapters of our case as evidence in its favor, this order hesitates to adopt an interpretation of "exceptional" that inhibits a party's *right* of appeal. Indeed, a recent nonprecedential decision of the Federal Circuit similarly cautioned parties against reading exceptionality into a summary affirmance. *See Innovation Sciences v. Amazon.com*, No. 2020-1639, 2021 WL 28216 at *3 (Fed. Cir. Jan. 5, 2021).

Last, this order notes that although Juniper characterizes Finjan's record here as zero-for-nine (asserted patents), we only litigated three asserted patents to any substantive rulings, the '494, the '780, the '154 patents. True enough; it took two rounds of summary judgment and one jury trial. In the end, however, when it came time to litigate the remaining six patents, *Finjan* voluntarily dismissed them with prejudice. Juniper may have a colorable argument that Finjan should have done so sooner. But on this record this order cannot conclude that the delay stood out as exceptional.

## CONCLUSION

This order holds as exceptional Finjan's assertion of the '494 and '780 patents, but it awards no fees yet. Juniper's submitted billing records do not distinguish between work eligible for reimbursement and work not. So, Juniper shall resubmit its records and take care to submit only for time spent on the '494 and '780 patents, which truly deserves compensation, and at reasonable billing rates. The Court may treble the deduction of inappropriate requests, or may deny fees altogether. The Court is inclined to appoint a special master to resolve remaining disputes. A companion order will set out the procedure going forward.

**IT IS SO ORDERED.**

Dated: January 9, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5