1  IRELL & MANELLA LLP
   Jonathan S. Kagan (SBN 166039)
2  jkagan@irell.com
   1800 Avenue of the Stars, Suite 900
3  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
4  Facsimile: (310) 203-7199

5
   Rebecca Carson (SBN 254105)
6  rcarson@irell.com
   Ingrid M. H. Petersen (SBN 313927)
7  ipetersen@irell.com
8  840 Newport Center Drive, Suite 400
   Newport Beach, California 92660-6324
9  Telephone: (949) 760-0991
   Facsimile: (949) 760-5200
10
11 *Attorneys for Defendant*
   JUNIPER NETWORKS, INC.

12                **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                 **SAN FRANCISCO DIVISION**

15 FINJAN, INC., a Delaware Corporation,      )   Case No. 3:17-cv-05659-WHA
                                              )
16              Plaintiff,                    )   **DEFENDANT JUNIPER NETWORKS,**
                                              )   **INC.'S OBJECTION TO SPECIAL**
17      vs.                                   )   **MASTER'S REPORT AND**
                                              )   **RECOMMENDATION RE ATTORNEY'S**
18 JUNIPER NETWORKS, INC., a Delaware         )   **FEES AND EXPENSES (DKT. 658)**
   Corporation,                               )
19                                            )
                Defendant.                    )
20 _____   )

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD ....................................................................................................1

III. ARGUMENT ................................................................................................................3

    A.    Juniper respectfully requests that the Court include an express finding of bad faith in its final order on fees. .......................................................4

    B.    Juniper respectfully requests that the Court order Finjan to pay $1,425,659.24 in sanctions. .......................................................................9

IV. CONCLUSION ............................................................................................................11

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- i -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*AdjustaCam LLC v. Amazon.com, Inc.*,

5
  2018 WL 1335308 (E.D. Tex. Mar. 15, 2018) ........................................................................5, 8

6
*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  23 F.3d 374 (Fed. Cir. 1994) ........................................................................2

7

*Anderson v. Asset Acceptance, LLC*,

8
  2010 WL 1752609 (N.D. Cal. Apr. 29, 2010) ........................................................................2

9
*Arunachalam v. Int'l Bus. Machines Corp.*,

10
  989 F.3d 988 (Fed. Cir. 2021) ........................................................................2

11
*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002), *as amended* (Feb. 20, 2002) .................................................2, 5, 6

12

13
*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................1, 2, 5, 8

14
*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
  244 F.3d 1128 (9th Cir. 2001) ........................................................................2

15

16
*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) ........................................................................3

17

18
*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ........................................................................9, 11

19
*Indiezone, Inc. v. Rooke*,
  2014 WL 4354122 (N.D. Cal. Sept. 2, 2014)........................................................................9

20

21
*Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc. (U.S.A.)*,
  2009 WL 9137315 (C.D. Cal. Dec. 14, 2009) ........................................................................3

22
*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012)........................................................................2, 9

23

24
*Moser v. Bret Harte Union High Sch. Dist.*,
  366 F. Supp. 2d 944 (E.D. Cal. 2005) ........................................................................8

25

26
*Octane Fitness, LLC v. ICO Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ........................................................................4, 9

27
*Oplus Techs., Ltd. v. Vizio, Inc.*,
  782 F.3d 1371 (Fed. Cir. 2015)........................................................................8

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- ii -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

**Page(s)**

*In re Personalweb Techs., LLC Pat. Litig.*,
  2021 WL 796356 (N.D. Cal. Mar. 2, 2021) ..................................................................9

*Phonometrics, Inc. v. Westin Hotel Co.*,
  350 F.3d 1242 (Fed. Cir. 2003) ...................................................................................2

*Qualcomm Inc. v. Broadcom Corp.*,
  2007 WL 9677112 (S.D. Cal. Oct. 29, 2007) ................................................................9

*Raniere v. Microsoft Corp.*,
  2016 WL 4626584 (N.D. Tex. Sept 2, 2016) ..............................................................2, 8

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
  549 F.3d 1381 (Fed Cir. 2008) ..................................................................................2, 9

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013) ...................................................................................7

*Thermolife Int'l, LLC v. Myogenix Corp.*,
  2018 WL 325025 (S.D. Cal. Jan. 8, 2018) ....................................................................4

**Statutes**

28 U.S.C. § 1927 ..........................................................................................................2, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- iii -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

## I.      INTRODUCTION

Although Special Master Borden reduced some of Juniper Networks Inc's ("Juniper") submitted attorneys' fees, Juniper does not object to that reduction.  Juniper does object, however, to the Special Master's finding that a consideration of the expert fees and travel expenses the Court had ordered Juniper to provide to the Special Master was "premature" because the Court's preliminary fees order "does not have an express finding of bad faith."  Dkt. 658 (Fees Order) at 20.  Juniper believes that the Special Master should have reviewed these expenses so the Court could include them as part of its final fees award, should that award include a finding of bad faith.

While Juniper believes the Special Master's failure to review the expenses the Court ordered Juniper to provide to the Special Master is error, the impact of this error is negligible, as Finjan did not specifically challenge the reasonableness of any of the particular expenses Juniper submitted; it only challenged whether the Court intended to award them and broadly stated that the expenses were large.  As the parties agree these expenses are awardable by the Court if its final award includes a finding of bad faith, Juniper urges this Court to include these expenses in its final fees order, along with a clear, express, and unambiguous statement that Finjan's improper litigation conduct (which it already detailed in its preliminary fees order) constitutes bad faith.  The only expenses for which Juniper is seeking recovery are the categories of expenses this Court previously identified in Paragraph 2 of its Order Re Attorney's Fees And Costs And Appointment of Special Master (Dkt. 649) ("Referral Order")—specifically expert fees and travel expenses.  As detailed in the March 22, 2021 Declaration of Jonathan Kagan (Ex. 1), the vast majority of these costs were unnecessary fees that Juniper paid to experts who testified at trial in this case—a trial the Court already held would not have been necessary but for Finjan's improper litigation conduct.  The total amount of the costs for the categories identified by the Court in its Referral Order is $1,425,659.24.

## II.     LEGAL STANDARD

The parties do not dispute that this Court has the inherent power to permit Juniper to recover costs actually incurred in defending the underlying lawsuit.  Indeed, the law on this is clear:  "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- 1 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  The purpose of these inherent powers is to allow the federal courts to "manage their cases and courtroom effectively and to ensure obedience to their orders."  *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001).  "'The imposition of sanctions' under a court's inherent power serves 'the dual purpose of vindicating judicial authority . . . and making the prevailing party whole for expenses caused by his opponent's obstinacy.'"  *Arunachalam v. Int'l Bus. Machines Corp.*, 989 F.3d 988, 997 (Fed. Cir. 2021) (quoting *Chambers*, 501 U.S. at 46).  "Use of this inherent authority is reserved for cases where the district court makes a "finding of fraud or bad faith whereby the 'very temple of justice has been defiled.'"  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994)). "[C]ourts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes."  *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed Cir. 2008).

"Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002), *as amended* (Feb. 20, 2002). Under this standard, "misstatements of law and fact, coupled with an improper purpose, can be sanctioned under the inherent power of the court."  *Anderson v. Asset Acceptance, LLC*, 2010 WL 1752609, at *4 (N.D. Cal. Apr. 29, 2010).  Parties that engage "in a pattern of obfuscation, offering inconsistent theories and arguments and promising to produce evidence that never materialized," and that fail to seize on multiple opportunities to correct deficient claims, are also subject to sanctions under the Court's inherent powers.  *Raniere v. Microsoft Corp.*, 2016 WL 4626584, at *5 (N.D. Tex. Sept 2, 2016), *aff'd*, 887 F.3d 1298, 1302 (Fed. Cir. 2018).

Alternatively, under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The Federal Circuit has held that sanctions are warranted when a patentee "continues to litigate [its] case" despite "knowing that its claim could not meet the standard for infringement."  *Phonometrics,*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- 2 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1  *Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1248 (Fed. Cir. 2003); *see also Intellectual Mgmt. Corp.*

2  *v. Lee Yunn Enters., Inc. (U.S.A.)*, 2009 WL 9137315, at *4 (C.D. Cal. Dec. 14, 2009) ("The

3  continued unreasonable assertion of infringement, particularly in the absence of an additional

4  investigation or testing . . . unreasonably and vexatiously multiplied the proceedings in this case.").

5  "[A] finding that the attorneys recklessly raised a frivolous argument which resulted in the

6  multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *In re Girardi*,

7  611 F.3d 1027, 1061 (9th Cir. 2010).

8       Juniper initially requested a finding of sanctions on March 28, 2019 (Dkt. 409), and the

9  parties completed briefing on this issue on April 18, 2019.  The Court deferred ruling on this motion

10  "until the end of trial."  Dkt. 486 (Deferment Order).  Juniper incorporated its sanctions motion into

11  its motion for attorneys' fees.  *See* Dkt. 634 (Attorneys' Fees Mot.) at 2.

12  **III.    ARGUMENT**

13       In Section III of his Report and Recommendation, the Special Master found it "premature"

14  to consider the reasonableness of the travel expenses and expert fees that the Court had ordered

15  Juniper to provide to the Special Master in Paragraph 2 of the Referral Order.  The Special Master

16  reasoned that because "the court must make an express finding that the sanctioned party's behavior

17  'constituted or was tantamount to bad faith'" **before** awarding sanctions, the Special Master should

18  not consider these expenses unless and until the Court made a final determination of bad faith.

19       Juniper respectfully disagrees.  Juniper understands that the Court appointed the Special

20  Master to do an initial analysis of the fees and costs the Court is considering awarding to Juniper,

21  but that all final decisions about which fees and costs to assess will be made by the Court.  Thus,

22  there is no barrier to the Special Master determining the reasonableness the expenses the Court had

23  ordered Juniper to provide to the Special Master, as the Court maintains its authority to award (or

24  not award) all such expenses at its sole discretion; the Special Master's Report and Recommendation

25  is simply a tool the Court can use to help determine the appropriate amount to award, should it

26  decide an award is appropriate.

27       More significantly, and as discussed in detail below, the Court's preliminary fees order

28  detailed numerous instances of bad faith conduct by Finjan during the litigation—including some

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- 3 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

behavior that the Court considered reporting to the California Bar for review.

Ultimately, though, as Finjan did not specifically challenge any of the itemized expenses Juniper submitted, the Special Master's decision not to review these entries is of no moment; Juniper has provided evidence that it actually incurred each of the itemized expenses, and that each expense was related to litigation of either the '494 Patent or '780 Patent.  Finjan has not challenged this evidence or provided any contrary evidence.  Accordingly, Juniper is entitled to a full recovery of the $1,425,659.24 it detailed in the March 22, 2021 Declaration of Jonathan S. Kagan.

**A.      Juniper respectfully requests that the Court include an express finding of bad faith in its final order on fees.**

The determination of whether Finjan's litigation misconduct amounts to bad faith is a matter within the Court's sound discretion.  Based on its prior findings that Finjan engaged in a pointless "whole song and dance" and "wasted everyone's time and energy," the Court has already reviewed the background of this case—including Finjan's conduct—and has found Finjan's conduct wanting.  To avoid any potential further objections from Finjan, and to avoid any possible ambiguity, Juniper respectfully asks that the Court include an express finding of bad faith in its final fees order.  *See Thermolife Int'l, LLC v. Myogenix Corp.*, 2018 WL 325025, at *14 (S.D. Cal. Jan. 8, 2018) ("The Court has already reviewed this case under *Octane Fitness, LLC v. ICO Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) and determined the case is exceptional under the totality of the circumstances. . . . The Court has noted that its Order finding exceptionality 'was 'based on a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration.' . . . Thus, the Court finds it appropriate to award expert fees in this case.").

There can be no doubt that the Court has already (1) done a detailed review of the factual record and (2) determined that Finjan engaged in a substantial amount of improper conduct.  First, the Court has already noted that, "[a]fter discovering its infringement theory covered only a minute portion of Juniper's revenue base, on the eve of trail Finjan ***flip flopped*** and came up with a new infringement theory, one which would capture more of Juniper's products and inflate the target revenue base."  Dkt. 648 (Fees Order) at 2-3 (emphasis added).  A reasonable party would have either cut its losses or accepted that it would need to adjust its expectations about the appropriate

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.                                                                    - 4 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   damages.  Not Finjan.  Astonishingly, "Finjan tried to **sneak** this theory in with its expert-damages

2   report."  *Id.* (emphasis added).  Finjan's refusal to forgo its baseless case regarding the '494 Patent

3   was bad-faith conduct.  *See AdjustaCam LLC v. Amazon.com, Inc.*, 2018 WL 1335308, at *5 (E.D.

4   Tex. Mar. 15, 2018) (granting expert fees "this case became 'objectively baseless' after the Court's

5   *Markman* Order. . .  Nonetheless, AdjustaCam pressed forward into expensive expert discovery").

6       Second, Finjan attempted to subvert the Court's exclusion of Finjan's artificially inflated

7   damages theory, but the Court "caught" and blocked Finjan's ruse to "***sneak*** this theory" in front of

8   the jury.  Dkt. 648 (Fees Order) at 2-3 (emphasis added).  As the Court noted, Finjan was

9   "[u]ndaunted" by its ruling excluding Finjan's artificially inflated damages model and "Finjan

10  pressed ahead and tried to present to the jury a facts-only damages case."  *Id.* at 3.  However, Finjan

11  simply attempted to present the same improper arguments to the jury that the Court already

12  excluded:

13          Finjan made no effort at trial to allocate the target revenue base between allegedly
            infringing product functions and noninfringing functions. ***Put simply, Finjan's***
14          ***facts-only damages case at trial evinced the same flaws that got its expert-***
            ***damages report thrown out***, ***artificially attempting to inflate*** revenue to which it
15          would be entitled, assuming its infringement case succeeded before the jury. After
            hearing this case, then, the Court struck Finjan's "woefully inadequate" damages
16          case for the '494 patent.

17  *Id.* (emphasis added).  Finjan flagrantly, and in bad faith, ignored the Court's prior ruling regarding

18  Finjan's improper damages theory.  *See, e.g.*, *B.K.B.*, 276 F.3d at 1108 (ignoring court's pre-trial

19  rulings supported sanctions); *Chambers*, 501 U.S. at 46 ("A court may impose sanctions where 'a

20  party 'shows bad faith by . . . hampering enforcement of a court order.'").

21      Third, Finjan then sought to present improper, legally incorrect testimony to overcome the

22  exclusion of its expert's theory.  As the Court noted, "[i]n one instance, a Finjan executive attempted

23  to testify to what it would have sought from Juniper in negotiations, prejudicial testimony patently

24  irrelevant to the question of the hypothetical royalty that two reasonable parties might have agreed

25  to."  Dkt. 648 (Fees Order) at 3.  According to the Court, "[t]his stunt earned Finjan *a stern caution*

26  from the Court and a limiting instruction to the jury, striking the testimony."  *Id.* (emphasis added).

27  Finjan's "reckless misstatements of law and fact, when coupled with an improper purpose," such as

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- 5 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   presenting arguments the Court excluded in this instance, "are sanctionable under a court's inherent

2   power." *B.K.B.*, 276 F.3d at 1108 (concluding district court did not violate its inherent authority to

3   issue sanctions when counsel elicited testimony in violation of the district's court's orders on two

4   pre-trial motions and a federal rule).

5       Even putting aside damages issues, the Court found that Finjan's entire ***liability*** case on the

6   '494 Patent had been based on "smoke and mirrors," which came to light in closing argument:

7       It is true that along the way, I thought that -- I thought that you [Finjan] had a strong
        case on infringement.  I was wrong about that.  Mr. Kagan gave one of the best
8       closing arguments, and it was not theatrics, but it was just calm, dispassionate
        explanation of a -- of points that I had not focused on that were your burden of
9       proof, but he pointed it out.  And I was very convinced at the end of that that he
        was right and that you had been wrong from the get-go on infringement. So those
10      statements that I made along the way about how I -- that was just -- I was just drawn
        in by your ***smoke and mirrors***. That's all that happened on that. [Juniper's closing
11      argument] was just good, calm explanation of something that was complicated then
        finally ***the scales fell from my eyes***. .
12

13  Dkt. 382 (2/21/19 Hr'g Tr.) at 3:21-4:18 (emphasis added); *see also* Dkt. 387 (Order Denying Mot.)

14  at 3-4.  As the Court determined, Finjan had attempted to obscure the fact that the accused products

15  did not store security profiles in a database organized according to a database schema by ignoring

16  the actual location where security profiles were stored.  Once Juniper had the opportunity to point

17  this out in closing, Finjan's entire house of cards collapsed.

18      The Court also found Finjan acted in bad faith when litigating the '780 Patent—the other

19  subject of the Court's preliminary fees order.  "Finjan should have dropped the '780 patent after that

20  first round patent showdown, which granted Juniper summary judgment of noninfringement on

21  claim 1 on the construction of the phrase 'performing a hashing function.'"  Dkt. 648 (Fees Order)

22  at 3.  Finjan, however, was "[u]ndeterred" and "kept the 'substantially overlap[ping]' claim 9, which

23  included the same 'performing a hashing function' limitation, in the running for the second round

24  of the showdown and even expanded the scope of accused products."  *Id.*  "Yet when Juniper moved

25  for summary judgment against claim 9, Finjan failed to oppose as to a majority of the accused

26  products."  *Id.*  As the Court succinctly stated, "[j]ust as both parties have a joint duty to frame

27  dispositive issues with good judgment, each party has an individual duty to continually reevaluate

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.                                              - 6 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   the viability of its claims.  Finjan *shirked* its end of both of those duties and again *wasted everyone's*

2   *time and energy* in instigating this motion aspect." *Id.* (emphasis added).  Finjan's failure to drop

3   its pursuit regarding the '780 Patent qualifies as bad faith.  *Taurus IP, LLC v. DaimlerChrysler*

4   *Corp.*, 726 F.3d 1306, 1329 (Fed. Cir. 2013) (upholding district court's bad faith determination

5   because "a party cannot assert baseless infringement claims and must continually assess the

6   soundness of pending infringement claims, especially after an adverse claim construction").

7          Further, Finjan misstated facts about notice to Juniper in an effort to pursue its claims

8   regarding the '780 Patent.  According to the Court, "Finjan's case as to the few remaining accused

9   products, which turned on whether it had provided actual or constructive notice (through product

10  marking) of the '780 patent to Juniper before its expiration, suffered its own unforced errors."  Dkt.

11  648 (Fees Order) at 4.  "On the constructive notice front, Finjan attempted to relitigate concessions

12  it had already made to the Court in previous hearings."  *Id.*  At the hearing regarding Juniper's fees

13  motion, the Court described Finjan's factually incorrect assertion:

14          I do have a distinct memory of a declaration that your side put in, somebody in the
            Finjan company, that said flat out that particular patent had been discussed verbally
15          with someone from Juniper.  And I don't remember if I actually made a ruling at
            the time, but I remember thinking, "Okay.  That's probably enough to go to the jury
16          that there was – somebody's willing to say under oath that they had that
            conversation."
17

18          And then it turned out a bit later in the case that there was a recording made, I
            believe by somebody at Juniper, of that very conversation and they transcribed it
19          and it was not true.  It was not true that that patent was mentioned.

20          So I was very disturbed by that.  I've got to tell you, I came close to referring that
            to the U.S. Attorney but I did not.  But I want you to know this is the kind of stuff
21          that goes on in your patent cases -- in all patent cases where somebody just says,
            "Oh, by the way, oh, yeah, I can say that. That's the ticket. I told them about that.
22          Yeah, it's verbal.  I told them."  And it really does burn me up that that happened.
            So I want to give you a fair chance to respond to that point.
23

24  Ex. 6 (1/7/21 Hr'g Tr.) at 21:5-22:1.  Finjan's factual misstatements qualify as bad-faith conduct.

25          Finjan also misstated law to further pursue its claims regarding the '780 Patent.  As the Court

26  summarized, "Finjan misrepresented, though perhaps not intentionally at least recklessly, a

27  favorable district court decision as having been affirmed on those relevant grounds by the Federal

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.                          - 7 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

Circuit when, in fact, it had not been." Finjan's improper statements further demonstrate bad faith. *See Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 988 (E.D. Cal. 2005) (imposing sanctions pursuant to FRCP 11, § 1927 and the court's inherent power against the defendant and its counsel for engaging "in bad faith litigation tactics through their systematic and repeated misstatements of the record, frivolous objections to Plaintiff's statement of facts, and repeated mischaracterizations of the law").

Each of these instances, standing alone, demonstrate bad faith. When taken together, there can be no legitimate questions that Finjan engaged in an extended pattern of bad faith conduct throughout the litigation. *See, e.g.*, *AdjustaCam*, 2018 WL 1335308, at *5; *Chambers*, 501 U.S. at 46 ("entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court"); *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1373, 1376 (Fed. Cir. 2015) (vacating district court's denial of expert fees where the plaintiff's "malleable expert testimony and infringement contentions" caused "a frustrating game of Whack–A–Mole throughout the litigation"); *Raniere*, 2016 WL 4626584, at *5 (costs awarded where plaintiff refused to voluntarily dismiss case).

*Raniere* is particularly instructive. In that case, the court concluded the "Plaintiff acted in bad faith and vexatiously multiplied the[] proceedings." 2016 WL 4626584, at *5. The court noted that it "identified the standing issue as problematic early in the litigation and gave Plaintiff multiple opportunities to address the Court's concerns." *Id.* However, "Plaintiff engaged in a pattern of obfuscation, offering inconsistent theories and arguments and promising to produce evidence that never materialized." *Id.* According to the court, the "Plaintiff failed to voluntarily dismiss his claims when confronted with the fatal defects in his case and instead forced this Court and Defendants to expend significant resources to resolve the threshold issue of standing." *Id.* In light of this behavior, the court determined that "[t]his deplorable conduct constitutes an abuse of the judicial process and warrants an imposition of sanctions under the Court's inherent powers." *Id.* (awarding attorney's fees and costs).

The same is true here. Despite having multiple instances, and an obligation, to evaluate the merits of its claims throughout the action, Finjan consistently plowed ahead with full steam. As the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- 8 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   Court characterized it, Finjan's "whole song and dance *came to nothing*." Dkt. 648 (Fees Order) at

2   3. While the Court's initial fees order identified much of Finjan's misconduct, to avoid any future

3   doubts, Juniper respectfully asks this Court to include an express finding of bad faith in its final fees

4   order.

5         **B.**    **Juniper respectfully requests that the Court order Finjan to pay $1,425,659.24 in sanctions.**

6         "A district court has inherent authority 'to impose sanctions in the form of reasonable expert

7   fees in excess of what is provided for by statute.'" *MarcTec*, 664 F.3d at 921 (quoting *Takeda*, 549

8   F.3d at 1391); *see also Thermolife*, 2018 WL 325025, at *13; *Qualcomm Inc. v. Broadcom Corp.*,

9   2007 WL 9677112, at *7 (S.D. Cal. Oct. 29, 2007). A party can recover the "fees that party would

10   not have incurred but for the bad faith." *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct.

11   1178, 1184 (2017).[1]

12         Additionally, a party can recover costs spent because of the other party's improper conduct.

13   *Indiezone, Inc. v. Rooke*, 2014 WL 4354122, at *3 (N.D. Cal. Sept. 2, 2014), *aff'd*, 720 F. App'x

14   333 (9th Cir. 2017) ("Sanctions are awarded in the amount of the defendants 'reasonable attorneys'

15   fees and costs, including that of their foreign expert . . . The defendants' fees and costs are reasonable

16   in light of the prevailing rates and given the time spent defending this case." (internal footnote

17   omitted)); *In re Personalweb Techs., LLC Pat. Litig.*, 2021 WL 796356, at *14 (N.D. Cal. Mar. 2,

18   2021) (discussing grant of travel costs as a sanction under a court's inherent authority).

19         This Court had already identified the categories of expenses to which Juniper is entitled to

20   recovery. In Paragraph 2 of the Referral Order, the Court ordered Juniper to identify and support

21   "Travel" and "Expert Witness Fees" it incurred in litigating the relevant patents. Dkt. 649 (Referral

22   Order) ¶ 2. Juniper provided this information for both the '494 and '780 Patents. Ex. 1 (Kagan

23   Decl.) ¶ 2. As Juniper informed the Special Master, "the '494 Patent consumed the vast majority of

24

25   ———————————

26        **[1]** *MarcTec* is particularly instructive. In that case, the Federal Circuit affirmed an award of expert fees where the defendant "was forced to incur expert witness expenses to rebut [plaintiffs]

27   unreliable and irrelevant expert testimony which was excluded under *Dauber*" and "the amount [defendant] was required to expend on experts was not compensable under § 285." 664 F.3d at 921.

28   Here too, Juniper was forced to expend $1,425,659.24 to rebut Finjan's baseless assertions for the '494 and '780 Patents.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.

- 9 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   legal work, as it was the subject of an early motion for summary judgment, a highly contested (and

2   ultimately successful) *Daubert* challenge to Finjan's damages expert, and a weeklong jury trial on

3   infringement." *Id.* ¶ 3.   Additionally, "[f]ollowing the jury trial, the parties began preparing

4   immediately for a second trial on the '494 Patent relating to validity and enforceability issues.  The

5   Court then postponed that trial, determining that all outstanding issues relating to the '494 Patent

6   could be adjudicated at a later date—in a single trial that would also involve all of the remaining

7   non-adjudicated patents." *Id.*  Juniper also informed the special master that the '780 Patent was the

8   subject of two summary judgment motions." *Id.*

9        For expert expenses, "[t]he bulk of Juniper's unreimbursed expenses are expert witness fees

10   from two expert witnesses who testified at the '494 Patent trial:  Dr. Avi Rubin of Harbor Labs

11   ($686,738), Juniper's technical expert, and Dr. Keith Ugone of Analysis Group ($529,844),

12   Juniper's damages expert." *Id.* ¶ 15.  As outlined in the declaration provided to the Special Master,

13   the expert fees cover tasks such as "document and source code review, experiment, and analysis for

14   initial MSJs," "document and source code review, preparing declarations for 494 and 780 MSJs,"

15   "document and code review for 494, review Mitzenmacher declaration, deposition," document

16   review and prepare invalidity report for 494 trial," "preparing damages analysis for 494 patent," and

17   "trial preparation and testimony 494 trial."  Ex. 1 (Kagan Decl. Ex. D) at 49.

18        To the extent that Finjan attempts to argue that Juniper's expert fees are unreasonable

19   because Finjan spent less for its experts, that argument is meritless.  Ex. 2 (Finjan Resp.) at 21-22.

20   First, Finjan acknowledges that the parties' situations are not perfectly symmetrical and that the

21   Court prevented Finjan's damages expert Mr. Arst from testifying at trial. *Id.* at 22.  Junipers expert,

22   Dr. Ugone, had to continue to prepare for his testimony and appear at trial because Finjan refused

23   to drop its meritless assertions.  Ex. 1 (Kagan Decl. Ex. D) at 49.  This resulted in Juniper having to

24   pay another $137,664.00 to Dr. Ugone for his 1/7/2019 invoice. *Id.*  Second, regarding technical

25   expert fees, Juniper had to spend more than necessary in order to rebut Finjan's ever-changing

26   infringement theories that it put forth to inflate its potential recovery.  Furthermore, Finjan has failed

27   to provide descriptions for the work that its experts undertook, which makes a true comparison of

28   the expert fees between the parties impossible.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.                                   - 10 -

DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   For travel expenses, Juniper submitted subcategories of air transportation ($39,195.58),

2   ground travel ($9,402.49), meals ($7,498.67), and lodging ($152,980.56).  *Id.*  Most of these travel

3   expenses were incurred for expert depositions, summary judgment hearings, pre-trial proceedings,

4   and trial.  *See, e.g.*, *id.* at 5-9, 20-30, 42-44, 46-47.  Juniper would not have needed to accumulate

5   these expenses had Finjan not acted in bad faith by continuing to pursue its meritless claims.  And

6   if Finjan brings up that it spent less for travel expenses, Finjan appears to have not included all of

7   its expenses that incurred around trial (separate information for its lodging costs in particular), so

8   Finjan's expense total is not comparable.  *See* Ex. 2 (Finjan Br.) at 22.

9   Furthermore, Finjan's argument that the Court had not yet issued a final determination of

10   bad faith so these expenses are not recoverable puts the cart before the horse.  *See* Ex. 5 (Finjan's

11   Summary of Objs.) at 1.  If the Court's final order on fees is consistent with its prior order that cited

12   numerous examples of bad faith, all of these expenses are fully recoverable.  *See Goodyear*, 137 S.

13   Ct. at 1187-88 (noting that "but-for standard even permits a trial court to shift all of a party's fees,

14   from either the start or some midpoint of a suit, in one fell swoop" and that the issue to consider

15   when granting the amount of sanctions is simply whether the expenses "would not have been

16   incurred except for the misconduct").  And, while Juniper submits that it was error for the Special

17   Master not to make an express recommendation concerning these expenses (if the Court ultimately

18   makes such a finding), this error is harmless because the Court has discretion to award these

19   expenses in its final order.  Accordingly, to the extent the Court's final fees order determines that

20   Finjan engaged in bad faith conduct, it should award Juniper the full amount of $1,425,659.24 in

21   expenses that it submitted.

22   **IV.   CONCLUSION**

23   Because the Court has discretion to order these expenses in its final order in light of Finjan's

24   bad-faith conduct, Juniper respectfully submits that the Special Master should have reached findings

25   regarding these expenses.  Nevertheless, if the Court determines Finjan acted in bad faith, the Court

26   can award Juniper the full amount of $1,425,659.24 in expenses because Juniper would not have

27   incurred these expenses but for Finjan's bad-faith actions.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
10953699.                                    - 11 -                    DEFENDANT JUNIPER NETWORKS, INC.'S
OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION
Case No. 3:17-cv-05659-WHA

1   Dated:  June 10, 2021                Respectfully submitted,

2                                        IRELL & MANELLA LLP

3
                                         By:  /s/ *Jonathan S. Kagan*
4                                            Jonathan S. Kagan

5
                                             *Attorneys for Defendant*
6                                            JUNIPER NETWORKS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10953699.