Juanita R. Brooks (CA SBN 75934), brooks@fr.com
Frank J. Albert (CA SBN 247741), albert@fr.com
Oliver J. Richards (CA SBN 310972), ojr@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Robert Courtney (CA SBN 248392), courtney@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff, FINJAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>             Plaintiff,<br><br>     v.<br><br>JUNIPER NETWORKS, INC.,<br><br>             Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**FINJAN'S BRIEF RESPONDING TO JUNIPER'S SUBMISSION SEEKING EXPERT FEES AND TRAVEL EXPENSES**<br><br>U.S. District Judge William H. Alsup<br>Courtroom 12 |

**TABLE OF CONTENTS**

Page(s)

ARGUMENT ........................................................................................................................ 1

    I.    The Record Includes No Indications of Fraud or Abuse of the Judicial Process .................................................................................................... 1

        A.    Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Decision to Proceed to Trial on the '494 Patent is Baseless ........................................................................ 2

        B.    Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Trial Presentation on '494 Damages is Baseless ........................................................................... 2

        C.    Juniper's Allegation of Fraud/Abuse of Process in Connection With Presentation of Testimony About Finjan's Licensing Practices is Baseless ......................................... 3

        D.    Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's '494 Liability Case is Baseless ....................... 3

        E.    Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Decision Not to Drop the '780 Patent After the First Showdown is Meritless ........................................... 4

        F.    Juniper's Allegation of Fraud/Abuse of Process in Connection With the Testimony of John Garland is Meritless .................................................................................................. 4

        G.    Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Accidental Misstatement About a Case's Appellate History During an Oral Hearing is Meritless .............................................................................................. 5

    II.    Even Considering Juniper's Cited Incidents Together, There is No Support for Juniper's Proposed Sanction or For a Fraud/Abuse of Process Determination .............................................................. 7

    III.    Juniper's Request for $1,425,659.24 is Unreasonable and Excessive ................................................................................................... 9

    IV.    Juniper's Proposal is Procedurally Improper ......................................................... 9

    V.    Conclusion ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amsted Indust., Inc. v. Buckeye Steel Castings Co.*,
   23 F.3d 374 (Fed. Cir. 1994) ................................................................................................. 1

*Chambers v. NASCO*,
   501 U.S. 32 (1991) .............................................................................................................. 1, 8

*Kearney v. Salomon Smith Barney, Inc.*,
   137 P.3d 914 (Cal. 2006) ........................................................................................................ 4

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
   895 F.2d 1403 (Fed. Cir. 1990) .............................................................................................. 2

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ................................................................................................ 1

*Moser v. Bret Harte Union High Sch. Dist.*,
   366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................................................................... 6

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
   304 F.3d 1216 (Fed. Cir. 2002) .............................................................................................. 6

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
   96 F. Supp. 2d 309 (S.D.N.Y. 2000), *aff'd*, 304 F.3d 1216 (Fed. Cir. 2002) ................... 5, 6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ............................................................................................................... 8

*Oplus Technologies, Ltd. v. Vizio, Inc.*,
   782 F.3d 1371 (Fed. Cir. 2015) .......................................................................................... 8, 9

*Raniere v. Microsoft Corp.*,
   No. 3:15-cv-0540-M, 2016 WL 4626584 (N.D. Tex. Sept. 2, 2016) ................................ 7, 8

*Smith v. LoanMe, Inc.*,
   483 P.3d 869 (Cal. 2021) ........................................................................................................ 4

**Statutes**

Cal. Invasion of Privacy Act (Cal. Penal Code § 632) ................................................................. 4

Though styled as an "objection," Juniper's submission (D.I. 661) has little to do with the Special Master's report and recommendations (D.I. 658). Juniper seeks a windfall award of over $1.4 million, mostly connected to expert witness fees but also covering travel expenses. In a footnote, Juniper concedes that such expenses are "not compensable under § 285." Juniper Br. 9 n.1 (quoting *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012)). Thus Juniper's submission is at best tangential to the Court's order on exceptionality under § 285, and to the Special Master's report. Its only real connection to those items is the report's (proper) rejection of Juniper's attempt to have such non-compensable fees included in the recommended award. (*See* D.I. 658 at 20 (describing non-recoverability of travel expenses and expert fees under § 285))

Juniper also leads its motion with a problematic assertion: that "the parties agree these expenses [expert fees and travel] are awardable by the Court if its final award includes a finding of bad faith." Juniper Br. 1. That statement is severely incomplete. District courts' inherent power includes authority to award expert fees/travel expenses, but this is generally reserved for circumstances of "bad faith and fraud on the court to the extent of defiling 'the very temple of justice.'" *Amsted Indust., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994) (quoting *Chambers v. NASCO*, 501 U.S. 32, 46 (1991)). Finjan strongly opposes any suggestion that there has been any bad faith, ever, in this case. That there has been bad faith to the *Amsted* standard, as Juniper suggests, lacks any support in the record at all. The Court should reject Juniper's plea for still more money, with so little record support, so late in the case.

## ARGUMENT

**I.   The Record Includes No Indications of Fraud or Abuse of the Judicial Process**

The expert fees and travel expenses sought by Juniper are only awardable under the Court's inherent powers upon a "finding of fraud or abuse of the judicial process." *Amsted*, 23 F.3d at 378. Though citing that standard, Juniper's submission fails to apply it, as none of the issues cited therein come anywhere near *Amsted*'s high standard.

Juniper cites seven incidents as purportedly supporting the award it seeks. None embodies "fraud or abuse of the judicial process."

### A. Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Decision to Proceed to Trial on the '494 Patent is Baseless

First, Juniper complains that after the *Daubert* order in December 2018, Finjan failed to "cut its losses" and "forego its baseless case regarding the '494 Patent." Juniper Br. 4–5. Juniper's suggestion that the decision to proceed to trial might show fraud or abuse of process is incorrect as to both Finjan's liability case and its damages case. As to liability, nothing in the *Daubert* order suggested that Finjan's technical allegations lacked merit. Although an adverse damages decision may limit a case's ultimate value, it does not on its own reduce a litigant's right to have triable liability claims heard by a jury. *Cf. Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406–07 (Fed. Cir. 1990). And as to damages, the following sections describe how there was neither fraud nor abuse of process there, either.

### B. Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Trial Presentation on '494 Damages is Baseless

Next, Juniper claims that weaknesses in Finjan's apportionment at trial amounted to fraud or abuse of process. Juniper Br. 5. Not so. Finjan believed—in error, as it turned out—that its trial case properly apportioned between patented and unpatented features. (*See* D.I. 336 at 212–13 (trial describing apportionment based on Juniper's statements that "only 40 percent of [files] get processed through the infringing components"); *also see id.* at 216 ("[THE COURT:] You have the burden to apportion in some not just rational way, something that meets the standards of the *Blue Coat* decision. MR. ANDRE: Your Honor, we will do so."))

Of course, the Court disagreed with Mr. Andre and found Finjan's presentation insufficient as a matter of law (and subsequently exceptional under § 285).[1] But the exchanges above completely contradict Juniper's allegation of fraud/abuse of process. Until the moment the Court struck Finjan's damages presentation at trial, Finjan believed it had carried out the task set by the Court and the law: to present a triable apportionment. Finjan may have been wrong in that belief, but in no sense was it proceeding in bad faith.

---

[1] Finjan acknowledges that the § 285 Order is binding before this Court. Finjan reserves its right to seek appellate relief as to that Order's legal holdings and factual determinations.

### C. Juniper's Allegation of Fraud/Abuse of Process in Connection With Presentation of Testimony About Finjan's Licensing Practices is Baseless

Juniper next claims that an exchange surrounding a Finjan executive's statement at trial about "what [Finjan] would have sought from Juniper in negotiations" was evidence of fraud or bad faith. Juniper Br. 5–6. Finjan's trial counsel could have reasonably thought such a statement was relevant to the royalty that the parties would have agreed to at a hypothetical negotiation. (*E.g.*. D.I. 336 at 291 (trial counsel explaining that this testimony related to Finjan's position "going into the negotiations")) The Court stated that the testimony was "irrelevant," and struck it, but there was no hint or suggestion of bad faith. (*Id.* ("I now see what you were getting at. I didn't see it at the time. . . . We're going to exclude that evidence.")) There is no suggestion whatsoever that Finjan, once the Court ordered the material struck, sought to evade that order. Rather, Finjan abided the Court's clear evidentiary decision. Juniper's citations to cases where litigants refused to be guided by a Court's orders are thus not on point.

### D. Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's '494 Liability Case is Baseless

Fourth, Juniper claims that because it prevailed on '494 liability before the jury, Finjan must have been committing a fraud on the court in pursuing the case. Juniper Br. 6. The record has no support for that contention. That Finjan lost before the jury is not, without more, evidence of fraud, or abuse of process. And though Juniper quotes extensively from the Court's laudatory statements concerning Juniper's lawyer Mr. Kagan, such approbation is not evidence of fraud or abuse of process either. It is a credit to Mr. Kagan that his closing argument was so compelling that "the scales fell from [the Court's] eyes" (D.I. 382 at 3:21–4:18), but that does not mean that Finjan failed to present a triable liability case, and it certainly does not suggest that Finjan's liability case amounted to defilement of justice's temple, as Juniper seems to contend. Indeed, on summary judgment Juniper presented its various '494 theories to the Court, and the Court found liability triable. (D.I. 189) Had the Court believed then that Finjan's case was nothing but "smoke and mirrors," it could have entered an order to show cause, as it did elsewhere in this case. It did not do so. As to '494 liability, the record here indicates that Finjan's case was strong enough to try, but not strong enough to win. That is not fraud, or abuse of process.

### E. Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Decision Not to Drop the '780 Patent After the First Showdown is Meritless

The Court has already held that Finjan should have dropped the '780 Patent after the first showdown. (D.I. 648 at 3)  But even were bad judgment at play in the decision to continue litigating, there is still no evidence of fraud or abuse of process.  As its summary judgment papers in the second showdown demonstrate, Finjan believed it still had a triable case under claim 9 of the '780 Patent against Juniper's "ATP Appliance" product, and it submitted the basis for that case in good faith to the Court and to Juniper.  (*See generally* D.I. 392-4)  Notably, the Court never weighed the viability of the ATP Appliance infringement case, at all, and there is thus no basis on which to find fraud or abuse of process there.  The Court did determine that Finjan lacked a viable damages case for ATP Appliance (D.I. 459 at 13–18)—and upon that determination Finjan stopped litigating ATP Appliance.  This sequence of events may be evidence of a weak case, or even of questionable judgment in the case's prosecution, but it is neither fraud nor abuse of the judicial process.

### F. Juniper's Allegation of Fraud/Abuse of Process in Connection With the Testimony of John Garland is Meritless

Without naming him (or citing any contemporaneous evidence or orders), Juniper proposes that there was bad faith/abuse of process surrounding the testimony of Finjan employee John Garland, who handled pre-suit discussions between Finjan and Juniper.  As the Court may recall, in the run-up to the '494 trial, Mr. Garland stated in deposition that he discussed the '494 Patent as relating to Juniper's "Sky ATP" product in a pre-suit teleconference.  (D.I. 410-1 at 217:9–17)  Finjan also served interrogatory responses making substantially the same contention.  (D.I. 113-2 at 5)

After the deposition was over, Juniper revealed that it had recorded the call with Mr. Garland, without giving notice to Mr. Garland or anyone at Finjan.  (*See generally* D.I. 156-4)  Recent authority confirms that Juniper's conduct was a violation of the California Invasion of Privacy Act (Cal. Penal Code § 632), as Finjan contended in previous submissions.  (*E.g.*, D.I. 156-4; D.I. 431-4 at 7 n.3)  *See Smith v. LoanMe, Inc.*, 483 P.3d 869, 881 (Cal. 2021); *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 933 *et seq.* (Cal. 2006).  Questions about legality

1  aside, subsequent testimony from Mr. Garland, acknowledged that "Sky ATP" did not come up in
2  the call as relating to the '494 Patent.

3  Juniper proposes that this chain of events amounts to fraud or abuse of process by Finjan,
4  but the evidence does not even approach such a conclusion. There is no indication anywhere in
5  the record that either Finjan (or, indeed, Mr. Garland) actually knew that Mr. Garland's personal
6  recollection was inaccurate until Juniper revealed its illegal recording. Nor has Juniper identified
7  a single piece of documentary evidence that might have caused Finjan to suspect Mr. Garland's
8  testimony might have been inaccurate.[2] Without any evidence at all of bad faith, Juniper cannot
9  hope to support its charges of fraud or abuse of process sufficient to warrant a sanction.

10  Finjan acknowledges and shares the Court's understandable frustration when observing a
11  witness changing his testimony on an important fact. But the record strongly indicates this was an
12  error of recollection by a witness recalling events years prior, and not intentional deception.
13  Nothing about the situation warrants a sanction.

### G. Juniper's Allegation of Fraud/Abuse of Process in Connection With Finjan's Accidental Misstatement About a Case's Appellate History During an Oral Hearing is Meritless

16  Finally, Juniper points to the Court's recollection that Finjan "perhaps not intentionally
17  [but] at least recklessly" misstated the appellate history of a certain district court decision. Juniper
18  Br. 7–8. Though Juniper does not cite the record, the incident arose at an oral hearing held in May
19  2019. (D.I. 457) At the hearing, Finjan's trial counsel made reference to *Novo Nordisk A/S v.*
20  *Becton Dickinson & Co.*, 96 F. Supp. 2d 309 (S.D.N.Y. 2000), *aff'd*, 304 F.3d 1216 (Fed. Cir.
21  2002), in a discussion on notice standards. (D.I. 457 at 10:7–24 ("It [*Novo Nordisk*] basically
22  talks about [whether] the notice requirement has been met and may be satisfied, quote, in the
23  context of the overall dealings between the parties.")) Responding, Juniper's counsel directed the
24  Court to a different Federal Circuit case. The Court asked both parties to clarify their citations:

> THE COURT: Your decision . . . is which one again?
>
> MS. CARSON [FOR JUNIPER]: The case is *Amsted Industries versus Buckeye Steel*. It is a Federal Circuit case, and it was cited on—

---

[2] Finjan did not, of course, actually have Juniper's illegal recording until its production.

> THE COURT: Is *Novo versus BD*, is that Federal Circuit too?
>
> MR. ANDRE [FOR FINJAN]: It was affirmed by the Federal Circuit too. That's correct.
>
> THE COURT: What you were citing to, was that language from the Court of Appeals or from the district court?
>
> MR. ANDRE: It looks like it is from the district court I'm guessing the way it is cited here. We can pull it up real quick. We have a copy of it. It looks like it was from the district court. It may just have been—

(*Id.* at 11:17–12:6) At this point, the Court began a different line of discussion. (*Id.* at 12:7)

Mr. Andre's statement that the Federal Circuit affirmed *Novo Nordisk* inaccurately suggested that *Novo Nordisk*'s notice analysis had Federal Circuit approval. The Federal Circuit did affirm *Novo Nordisk*, but its opinion did not discuss notice. *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216 (Fed. Cir. 2002). When the Court pressed him on the appellate history of *Novo Nordisk*, the transcript suggests Mr. Andre was not familiar with that history, and inaccurately relied on the citation in his notes, after which the Court moved on. Certainly it is incumbent on trial counsel to accurately represent any authorities cited to the Court, and Finjan apologizes on Mr. Andre's behalf for his misstatement, and for his failure to subsequently correct it. Yet nothing about the exchange above suggests fraud or abuse of process by Finjan. It may have been an unforced error by Finjan's then-counsel, but at no point did Finjan set out to mislead the Court or abuse the judicial system. Additionally, this was a one-off event, occurring over the course of a lengthy oral hearing. Finjan is aware of no precedent, anywhere, suggesting that such may be the basis of a fraud or abuse of process determination. Indeed, even Juniper's own cited authority limits a sanction to cases of "repeated mischaracterizations of the law." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 988 (E.D. Cal. 2005). Nothing in *Moser*, or in any other authority known to Finjan, suggests that Mr. Andre's misstatement might support the sanction Juniper seeks.

**II. Even Considering Juniper's Cited Incidents Together, There is No Support for Juniper's Proposed Sanction or For a Fraud/Abuse of Process Determination**

There is no merit in Juniper's allegation that when one takes the seven allegations above together, "there can be no legitimate questions that Finjan engaged in an extended pattern of bad faith conduct throughout the litigation." Juniper Br. 8. As the discussion above establishes, none of the incidents are actually examples of bad faith, at all. Taking them together does not change the picture. While the Court has held that some of the items above supported a determination of exceptionality as to the '494 and '780 Patents, such is a far cry from finding actual fraud or abuse of the judicial system. Finjan respectfully maintains that in this case, as in all its cases, its goal and strategy is to try to win on the record and the law. Finjan condemns improper gamesmanship, and rejects Juniper's suggestion that Finjan ever proceeded in anything but good faith and a reasonable belief that it could win.

None of the authority cited by Juniper suggests that a finding of fraud or abuse of process might be warranted on these facts. Juniper relies heavily on *Raniere v. Microsoft Corp.*, No. 3:15-cv-0540-M, 2016 WL 4626584 (N.D. Tex. Sept. 2, 2016), but that case is completely off point. It begins with a detailed description of misconduct by Mr. Raniere in two arenas. First, it describes how Mr. Raniere's claim to standing depended entirely on his ownership of the asserted patents, which he was unable to establish. 2016 WL 4626584, at *2–4. But despite that fundamental inability, Mr. Raniere engaged in a campaign of "delay and contumacious conduct" with no apparent goal except to waste the energies of the court and the parties. *Id.* at *4. This included Mr. Raniere repeatedly stating that he would produce documents to secure his case, and then not doing so, as well as various settlement proceedings that never amounted to anything, as well as knowing submission of false documentation at various points. *Id.* At the end, the court determined that Mr. Raniere had been proceeding in bad faith since the complaint, and awarded fees. *Id.* at *5.

*Raniere* bears almost no resemblance to this case. Unlike Mr. Raniere, Finjan at all points diligently prosecuted its case, mustering evidence and authority as needed. Certainly there were problems in Finjan's case. It lost, and the Court held certain of its conduct exceptional under

§ 285.  But nothing here suggests the kind of meritless and "deplorable" conduct that supported the *Raniere* sanction.

The other authority cited by Juniper is similarly off point.  Each such case is predicated on a record of misconduct that goes vastly beyond anything on the record here.  One case involved a a claim construction order that left "no possible way for Newegg's products to infringe," yet the plaintiff pressed on through expert discovery.  *AdjustaCam LLC v. Amazon.com, Inc.*, No. 6:10-cv-00329-JRG, 2018 WL 1335308, at *2 (E.D. Tex. Mar. 15, 2018).  The court there awarded about $68,000 in fees, reasoning that AdjustaCam had "abused the judicial process."  *Id.* at *5.  *AdjustaCam* does not support Juniper at all here.  As discussed above, after the *Daubert* order, Finjan did ***not*** proceed with further damages expert practice relating to the '494 Patent.  And as to the '780 Patent, as discussed above unanswered questions remained as to at least the "ATP Appliance" product.  This is all in addition to the total absence of evidence, discussed above, that anything Finjan did was either fraud or abuse of process.

Juniper's citation to *Chambers*, 501 U.S. at 46, fails even more egregiously.  There, the record showed Mr. Chambers' extensive efforts to avoid fulfilling the contract he had executed to sell his television station to NASCO.  This included "unethical" attempts to transfer the station into a trust (ultimately unsuccessful), refusal to permit inspection of corporate records, "meritless motions and pleadings and delaying actions," an attempt to obtain FCC permission to relocate the station (ultimately blocked), a frivolous appeal (ruled as such from the bench by the Court of Appeals), and improper removal of all equipment from the station.  501 U.S. at 35–40.  The record here does not even come close to the conduct that supported sanctions in *Chambers*.  As discussed above, Finjan had good faith reasons for its conduct throughout the case, and at no point attempted to waste Juniper's energy or the Court's.

Finally *Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d 1371 (Fed. Cir. 2015), did no than address a district court's failure to substantiate its decision, and implement the changes in exceptionality standards in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), which had issued after the appealed-from order.  *Oplus Technologies* did not actually order that any fees or expenses be awarded, only that "the [district] court must articulate the reasons for

its fee decision," which it had not previously done. 782 F.3d at 1375–76. In any event, *Oplus* recounts in detail a series of misconduct not present here, including but not limited to "flout[ing] standards of appropriate conduct and professional behavior" in amendments to the complaint, "ignoring well-settled law" in transfer motion practice, "misus[ing] the discovery process to harass Vizio by ignoring necessary discovery [and] flouting its own obligations," and "presenting contradictory expert evidence and infringement contentions as well as misrepresenting legal and factual support." *Id.* at 1372–73. The record here falls far short of such evidence. Juniper, unable to show actual misconduct by Finjan, instead essentially argues that though Juniper won, it should have won sooner. That is not a basis for finding fraud or abuse of process, and it is not a basis on which to confer to Juniper an undeserved windfall of more than $1.4 million. The Court should reject Juniper's arguments in their entirety.

### III. Juniper's Request for $1,425,659.24 is Unreasonable and Excessive

Juniper presented its plea for this windfall to the Special Master, who appropriately rejected it. But before that rejection, Finjan tendered detailed evidence that Juniper spent unreasonable amounts both as to expert fee and travel expenses. For the former, Finjan urged that any award of expert fees should not exceed about $600,000, which was roughly the amount Finjan had spent on experts. For travel, Finjan presented its trial counsel's travel expenses, which were about $80,000, and urged that any award of travel expenses should not exceed that amount. *See generally* Juniper Ex. 2 (excerpting Finjan's submission).

The Special Master did not resolve this aspect of the parties' dispute, because he determined (properly) that Juniper is not entitled to expert fees or travel expenses. Should the Court overrule the Special Master (unwarranted, in Finjan's view), it should either (1) limit the award to the amounts Finjan spent, or (2) remand to the Special Master for computation of the appropriate amount.

### IV. Juniper's Proposal is Procedurally Improper

Finally, the gist of Juniper's brief is to ask that the Court open a new front in this dispute: an assessment of whether there was extreme bad faith or abuse of the judicial process in Finjan's prosecution of the '494 and '780 Patents sufficient to warrant an award of expert fees and travel

expenses.  This was not something Juniper ever sought in its November motion on attorney fees. (*See generally* D.I. 634 (never mentioning expert fees or travel expenses))  That was strictly a § 285 fees motion.  Juniper never asked for a "bad faith" determination sufficient to reach expert fees or travel expenses, and accordingly, the Court never performed that analysis—and, for the reasons above, even had Juniper sought such a determination neither the record nor the law would have supported it.

Juniper attempts to conceal the fact that this is a brand-new dispute by citing a line in its § 285 motion where it "requests that the Court rule on Juniper's previously filed motion for sanctions."  (*Id.* at 2)  But a request for the Court to rule on a prior motion filed after the first showdown is not the same as a brand-new request for an order, at the close of the case, finding abuse of process and/or fraud, including on different conduct, which is what Juniper seeks now.

Juniper's attempt to gin up a new motion as part of reviewing the special master's report is also procedurally unfair.  Per the Court's order (D.I. 654 ¶ 4) Finjan's period for responding to Juniper's "objections" was just seven days—reasonable for briefing directed only to the special master's report, but unfair when responding to a whole new set of allegations by Juniper.  Finjan of course stands by the present submission, but urges caution by the Court before accepting Juniper's contention that the issues in Juniper's brief are ripe or fairly presented.

V.  **Conclusion**

For the reasons set forth herein, the Court should reject in its entirety Juniper's proposal that it receive over $1.4 million in expert fees and travel expenses.

Dated:  June 17, 2021                    Respectfully Submitted,

By: */s/ Robert Courtney*
Juanita R. Brooks (CA SBN 75934) brooks@fr.com
Frank J. Albert (CA SBN 247741) albert@fr.com
Oliver J. Richards (CA SBN 310972) ojr@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070 / Fax: (858) 678-5099

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert Courtney (CA SBN 248392),
courtney@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff FINJAN, INC.