IRELL & MANELLA LLP
Jonathan S. Kagan (SBN 166039)
jkagan@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Rebecca Carson (SBN 254105)
rcarson@irell.com
Ingrid M. H. Petersen (SBN 313927)
ipetersen@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>           Plaintiff,<br><br>     vs.<br><br>JUNIPER NETWORKS, INC., a Delaware Corporation,<br><br>           Defendant. | Case No. 3:17-cv-05659-WHA<br><br>**JUNIPER NETWORKS, INC.'S RESPONSES TO FINJAN'S OBJECTIONS** |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................................1

II.    BACKGROUND ..............................................................................................................2

    A.    Juniper's Motion for Attorneys' Fees .................................................................2

    B.    The Court's Fees Order .......................................................................................4

    C.    The Special Master's Report and Recommendation .............................................5

III.    ARGUMENT ...................................................................................................................5

    A.    Finjan Has Not Even Come Close To Meeting The Standard For A Request For Reconsideration .................................................................................5

    B.    The Special Master Properly Interpreted and Applied The Court's Fees Order. ............................................................................................................7

    C.    The Court Did Not Err In Awarding Juniper Fees For All Tasks Related To Finjan's Assertion of the '494 and '780 Patents..............................12

IV.    CONCLUSION ..............................................................................................................16

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.7 04

- i -

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Adan v. Kaiser Found. Health Plan, Inc.*,
    2018 WL 1640166 (N.D. Cal. Apr. 5, 2018) ...............................................................7

5

6

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
    2015 WL 11201243 (C.D. Cal. Nov. 4, 2015) ...............................................................6

7

8

*Bayer v. Neiman Marcus Grp., Inc.*,
    2018 WL 10425912 (N.D. Cal. July 30, 2018) ............................................................6

9

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005) ...................................................................................14

10

11

*Feamster v. Gaco W., LLC*,
    2019 WL 4305536 (N.D. Cal. Sept. 11, 2019) .........................................................6, 7

12

13

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) ............................................................................................12, 13

14

*In re Personalweb Techs., LLC Pat. Litig.*,
    2021 WL 796356 (N.D. Cal. Mar. 2, 2021) ...........................................11, 12, 13, 14

15

16

*In re Rembrandt Techs. LP Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018) ...................................................................................12

17

18

*Selectron Indus. Co., Inc. v. Selectron Int'l*,
    2007 WL 5193735 (C.D. Cal. Sept. 25, 2007) ............................................................6

19

**Statutes**

20

28 U.S.C. § 1927 ..................................................................................................................3

21

22

35 U.S.C. § 285 ....................................................................................................................3

Civ. L.R. 7-9(b) ...................................................................................................................6

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.7 04

1   **I.     INTRODUCTION**

2        On January 9, 2021, this Court held that "the ***entire assertion*** of the '494 patent" was

3   "exceptional." Dkt. 648 (Fees Order) at 3 (emphasis added) and that "Finjan's ***assertion of the '780***

4   ***patent"*** was similarly "exceptional." *Id*. at 4 (emphasis added). The Court also rejected Juniper's

5   fees request for the other seven patents Finjan had asserted against Juniper. Because Juniper's initial

6   fees request to the Court included entries for both the two patents it awarded fees and the seven to

7   which it did not, the Court appointed a Special Master to "identify each item requested that bears

8   little or no relation to the conduct found exceptional herein, ***that being the assertion of the '494 and***

9   ***'780 patents***." Dkt. 649 (Referral Order) ¶ 11 (emphasis added). The Court did not ask the Special

10   Master to second guess the Court's determination that the "entire assertion of the '494 patent" was

11   exceptional or to try to identify some portion of "Finjan's assertion of the '780 patent" that was

12   reasonable. Quite simply, the Special Master's responsibility was to determine the portion of

13   Juniper's claimed fees that included "time spent on the '494 and '780 patents," and to ensure that

14   those fees are "reasonable."

15        The Court's Order further detailed the procedure for the parties to use with the Special

16   Master. Pursuant to these instructions, Juniper submitted more than 3,000 individual time entries

17   categorized into over 130 discrete litigation tasks related to the '494 and '780 Patents. Finjan

18   objected to nearly all of Juniper's submission, claiming that Juniper had spent excessive hours, by

19   its highest-billing-rate lawyers, on issues that could have been addressed in fewer hours by lawyers

20   with lower rates. The parties and the Special Master then spent, collectively, hundreds of hours

21   preparing detailed submissions and spreadsheets comparing Juniper and Finjan's time, and

22   otherwise examining the reasonableness of Juniper's fees request. At the conclusion of this process,

23   the Special Master rejected nearly all of Finjan's complaints, reducing Juniper's fees request by only

24   $314,110.43. *See* Dkt. 658 (R. & R.) at 1.

25        Finjan's "Objection" to the Special Master's Report does not challenge the Special Master's

26   recommendations on even one of Juniper's 3,000+ time entries. This is because Finjan's

27   "Objection" does not address the reasonableness of Juniper's fees at all. In reality, Finjan's

28   "Objection" is a motion for reconsideration of this Court's finding that Juniper is entitled to fees for

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
Case No. 3:17-cv-05659-WHA

"the conduct found exceptional herein, ***that being the assertion of the '494 and '780 patents***." Dkt. 649 (Referral Order) at 1, ¶ 11 (emphasis added).  Finjan's entire "Objection" is simply an argument that Juniper is only entitled to recover fees related to specific litigation activities relating to the '494 and '780 Patents, rather than the assertions of these patents themselves.  While Finjan was certainly entitled to move this Court for reconsideration of its prior order, it can only do so if it satisfies the Northern District's requirements for such a motion.  Here, Finjan has not only failed to properly identify its filing as a motion for reconsideration, but it has not even attempted to meet the Northern District's requirements for such a motion.

Moreover, for reasons already briefed before this Court, Finjan's argument that Juniper is not entitled to recover all fees incurred defending against Finjan's assertion of the '494 and '780 Patents are wrong as a matter of law.  This Court clearly has the discretion to find—as it did in its prior order—that Finjan's assertion of the '494 and '780 Patents was exceptional, and it was not required to limit its findings to specific, defined activities.  Nor does the fact that the Court provided specific examples of Finjan's improper conduct mean that the Court was required to limit Juniper's recovery to those specific examples.

This Court should reject Finjan's thinly disguised motion for reconsideration of the Court's prior order regarding the scope of fees Juniper is entitled to recover in this case because (1) Finjan failed to comply with the Northern District's rules for a motion for reconsideration of this Court's prior order; and (2) the Court's prior ruling that Juniper can recover all reasonable fees incurred defending against Finjan's assertion of the '494 and '780 Patents is justified by the case law and was well within this Court's discretion.

## II.    BACKGROUND

### A.    Juniper's Motion for Attorneys' Fees

Finjan filed this case against Juniper in 2017, asserting that Juniper infringed nine patents.  The overwhelming majority of the legal work in this case involved Finjan's '494 Patent, which was the subject of a failed summary judgment motion by Finjan followed by an unsuccessful (for Finjan) jury trial. Dkt. 189 (MSJ Order); Dkt. 333 (Verdict).  In the midst of the jury trial on the '494 Patent,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-2-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1  the Court ruled that Finjan would not be entitled to damages even if the jury found it infringed

2  (which it did not).  Dkt. 339 (12/17/18 Hr'g Tr.) at 835:13-22, 839:6-8.

3      Most of the other legal work in this case involved Finjan's '780 Patent, which was the subject

4  of two (successful) summary judgment motions by Juniper, and Finjan's '154 Patent, which was the

5  subject of another failed summary judgment motion by Finjan.  Dkt. 180 (Order); Dkt. 491 (Order).

6  On the '780 Patent, the Court held both that Juniper did not infringe the patent and that Finjan had

7  failed to provide sufficient pre-expiration notice of the patent, a requirement for Finjan to recover

8  any damages on this patent.  Dkt. 491 (Order).  Following this string of defeats, Finjan elected to

9  dismiss with prejudice all claims relating to its other patents without further trials or dispositive

10  motion practice.  Dkt. 601 (Stip.).

11      After Finjan's  unsuccessful Federal Circuit appeal, Juniper filed a motion for attorneys' fees

12  pursuant to 35 U.S.C. § 285, which expressly incorporated Juniper's earlier motion for sanctions

13  under the Court's inherent powers and/or 28 U.S.C. § 1927.  Dkt. 634 (Fees Mot.) at 2 (citing Dkt.

14  409 (Sanctions Mot.)).

15      With respect to the '494 Patent, Juniper argued that "the entire proceedings on that patent"

16  were exceptional because Finjan's infringement theory was meritless ***from the outset***, which caused

17  Finjan to repeatedly try to change its infringement theory (and engage in other improper tactics).

18  Dkt. 634 (Fees Mot.) at 9.  For example, Juniper demonstrated that:  Finjan attempted to change its

19  infringement theory in its damages expert report in order to inflate the damages base, resulting in

20  the Court issuing a *Daubert* order excluding Finjan's damages expert.  Dkt. 283 (Order) at 4-5, Dkt.

21  634 (Fees Mot.) at 9-10.  Finjan nonetheless insisted on proceeding to trial despite the exclusion of

22  its damages expert, where it tried (again) improperly to inflate its damages case, resulting in the

23  Court declaring Finjan's damages case "woefully inadequate" and granting judgment as a matter of

24  law that Finjan was not entitled to any damages.  Dkt. 339 (12/17/18 Hr'g Tr.) at 838:3-5, 839:6-8;

25  Dkt. 634 (Fees Mot.) at 10-11.  In its Order on post-trial motions (*i.e.*, after seeing all the evidence

26  from both parties) the Court denied Finjan's motion for judgment as a matter of law of infringement,

27  noting that Finjan's infringement case had been "smoke and mirrors" from the beginning.  *See* Dkt.

28  382 (3/1/19 Hr'g Tr.) at 3:21-4:18; Dkt. 634 (Fees Mot.) at 12-14.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-3-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1    With respect to the '780 Patent, Juniper argued that Finjan's case was "moot *from the outset*

2    because Finjan failed to comply with the notice requirements of § 287 prior to the expiration of the

3    patent." Dkt. 634 (Fees Mot.) at 17 (emphasis added).  For example, Juniper demonstrated that

4    Finjan's argument for constructive notice contradicted both (1) its prior statements *in this litigation*

5    to the Court, and (2) positions it had taken in prior litigation before other judges.    Juniper also

6    established that Finjan's legal arguments for constructive notice contradicted well-established

7    Federal Circuit law, and that Finjan knew or should have known *from the beginning of the lawsuit*

8    it could not meet the applicable legal standard for notice.  *Id.* at 17-21.  Juniper also argued that

9    Finjan's infringement case as to the '780 Patent was exceptional because Finjan asserted meritless

10   claims, refused to drop them even after the Court granted Juniper's first summary judgment motion

11   of non-infringement, and then forced Juniper to prepare and file another summary judgment motion

12   that Finjan did not even oppose as to certain products.  Dkt. 634 (Fees Mot.) at 21.

13   In short, Juniper's motion did not seek an exceptional case finding only for limited time

14   periods, for certain, particularly egregious conduct, or for Finjan's failure to adhere to the Court's

15   rulings.    Rather, Juniper's motion was premised on the fairly simple (and later confirmed)

16   observation that Finjan never should have asserted the '494 and '780 Patents in the first place.

17   **B.    The Court's Fees Order**

18   The Court granted Juniper's motion for fees on January 9, 2021.  Dkt. 648 (Fees Order).  In

19   its Order granting Juniper's motion, the Court expressly held that Finjan's assertion of the '494 and

20   '780 Patents was exceptional from the start, holding that "the *entire assertion* of the '494 patent thus

21   stood out as exceptional" and that "*Finjan's assertion* of the '780 patent stands out as exceptional

22   as well."  *Id*. at 3-4 (emphases added).  The language of this order is exceptionally clear.  Perhaps

23   anticipating Finjan's position that the Court did not resolve the dispute about the scope of fees to

24   which Juniper was entitled (and had somehow instead referred this question to the Special Master),

25   within the Fees Order itself the Court provided a summary of the Order noting that the exceptional

26   conduct for which Juniper could recover fees was Finjan's *assertion* of the '494 and '780 Patents,

27   not some subset of particularly egregious improper conduct:  "[t]his order holds as exceptional

28   Finjan's assertion of the '494 and '780 patents";  Juniper was entitled to fees and costs for "time

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-4-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1    spent on the '494 and '780 patents." *Id.* at 5.  Additionally, the Court rejected Finjan's argument to

2    limit the Court's exceptionality holding to certain conduct.  *Compare* Dkt. 648 (Fees Order) at 5

3    (ordering that Juniper is entitled to fees and costs for "time spent on the '494 and '780 patents"),

4    *with* Dkt. 638 (Fees Opp'n) at 7-10 (arguing that portions of litigation for the '494 and '780 Patents

5    was not exceptional).

6          **C.      The Special Master's Report and Recommendation**

7          On May 20, 2021, after conducting a lengthy evaluation and analysis (including over 3,000

8    time entries in over 130 categories of projects, five rounds of briefing and submissions to the Special

9    Master, and three hearings) the Special Master recommended that Juniper recover $5,914,156 from

10   Finjan to cover Juniper's attorneys' fees related to  Finjan's exceptional conduct.  Dkt. 658 (R. &

11   R.) at 1.  According to the Special Master, the Court determined that "Finjan's assertion of '494 and

12   '780 patents" was exceptional and that "[t]he Order's finding of exceptionality is not limited to the

13   conduct after the Court's legal rulings, but rather based on the totality of the circumstances." *Id.* at

14   4.  The Special Master did not make an independent finding on this issue, but instead accepted the

15   scope of the Court's exceptionality finding.  Based on the Court's holding that the assertion of those

16   two patents was exceptional, the Special Master carefully examined Juniper's fees request to make

17   sure that its recommendation would only include reasonable fees that were related to Finjan's

18   assertion of these two patents. *Id.* at 14-19.

19   **III.    ARGUMENT**

20         Finjan argues that the Court should reconsider its order awarding Juniper fees and expenses

21   for defending against "Finjan's assertion of the '494 and '780 patents."  Finjan's effort to alter this

22   Court's order is meritless—it has not presented a sufficient reason (or even presented the correct

23   legal standard) for this Court to reconsider its express holding.  Accordingly, the Court should reject

24   Finjan's  argument,  and  the  Court  should  instead  adopt  the  Special  Master's  report  and

25   recommendation regarding the award of Juniper's attorneys' fees.

26         **A.      Finjan Has Not Even Come Close To Meeting The Standard For A Request
                    For Reconsideration**

27

28         By  not  calling  its  request  a  motion  for  reconsideration  or  addressing  the  proper  legal

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-                                              -5-                              JUNIPER NETWORKS, INC.'S RESPONSES
                                                                                        TO FINJAN'S OBJECTIONS
                                                                                        (Case No. 3:17-cv-05659-WHA)

standard, Finjan attempts to sneak in its proposition that the Court should alter its previously decided Fees Order.  Finjan's strategic decision to try to disguise its motion for reconsideration is plainly motivated by its knowledge that such a motion would face almost certain failure.

"[A] motion for reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Bayer v. Neiman Marcus Grp., Inc.*, 2018 WL 10425912, at *1 (N.D. Cal. July 30, 2018).  "A motion for reconsideration is not a vehicle for perpetually relitigating the Court's rulings, or a substitute for appeal." *Feamster v. Gaco W., LLC*, 2019 WL 4305536, at *1 (N.D. Cal. Sept. 11, 2019).  Furthermore, "[t]he moving party must specifically show ***reasonable diligence*** in bringing the motion." Civ. L.R. 7-9(b) (emphasis added). And "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party." *Id.* 7-9(c).

There are only three grounds supporting a motion to reconsider:  (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment.  Civ. L.R. 7-9(b)(1)-(3).  Finjan has not (and cannot) establish any of these grounds.

***First***, Finjan has failed to demonstrate that it exercised reasonable diligence to bring a request for the Court to reconsider the scope of its Fees Order.  The Court issued the Fees Order on January 9, 2021.  Dkt. 648 (Fees Order).  Finjan, however, waited five month to raise the issue of scope with this Court.  Dkt. 659 (Objs.).  Accordingly, Finjan did not reasonably pursue a motion for reconsideration.  *See Selectron Indus. Co., Inc. v. Selectron Int'l*, 2007 WL 5193735, at *3 (C.D. Cal. Sept. 25, 2007) (denying motion for reconsideration as untimely due to four-month delay in filing); *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, 2015 WL 11201243, at *10-11 (C.D. Cal. Nov. 4, 2015) (noting that "[s]everal courts confronted with delays as long as [approximately four months] have held that reconsideration motions were untimely").

***Second***, Finjan fails to identify any different facts or legal arguments in its June 10 brief, much less any "material difference" that Finjan did not know of during the briefing on Juniper's

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-6-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

motion for attorneys fee or which has emerged since the Court's Fees Order.  Instead, it continues to press the same argument as it did in its prior briefing to the Court.  *Feamster v. Gaco W., LLC*, 2019 WL 4305536, at *1 (N.D. Cal. Sept. 11, 2019) (denying motion for reconsideration because "Plaintiff has not presented any new and material facts or legal arguments, nor has he shown a failure on the Court's part to consider material facts or dispositive arguments").  But a "motion for reconsideration is not an appropriate vehicle by which to relitigate arguments made on a [prior]."  *See Adan v. Kaiser Found. Health Plan, Inc.*, 2018 WL 1640166, at *2 (N.D. Cal. Apr. 5, 2018).

Finjan, for instance, has already argued that "[t]aken on its face, Juniper's submission seems to invite inclusion of nearly every fee category, from initial pleadings to the appeal, for every issue" and that "[t]he Court should reject Juniper's invitation to award fees on such a high-level allocation."  Dkt. 638 (Fees Opp'n) at 24-25.  Indeed, in support of its assertion that fees need to be narrow, Finjan simply reargues the points it made in its opposition to the Fees Motion.  *Compare* Dkt. 638 (Fees Opp'n) at 9 (for the '494 Patent "the Court noted that it believed (just as Finjan had believed) Finjan 'had a strong case on infringement'"), *and* at 23 ("This contention is equally meritless because it obscures that Juniper would have had to file its motion on claim 9 regardless of how Finjan viewed the Sky ATP and SRX products because the motion principally related to a third product, 'ATP Appliance,' not at issue in the Court's prior determination concerning the '780 Patent."), *with* Dkt. 659 (Objs.) at 8 ("the record indicates Finjan's '494 liability case, though ultimately unsuccessful, was within typical patent litigation standards"), *and* at 9 ("Claims relating to Juniper's "ATP Appliance" product survived, due in part to the timing of their entry into the case. The Order found Finjan's damages case as to ATP Appliance exceptional (due to notice issues), but neither that Order nor any of the Court's prior orders addressed liability as to ATP Appliance.").

Because Finjan unreasonably delayed requesting the Court for reconsideration and simply reargues the points it previously presented, the Court should reject Finjan's request to narrow the scope of the Court's Fees Order.

**B.    The Special Master Properly Interpreted and Applied the Court's Fees Order.**

Finjan's argument that "the Special Master's report erroneously assumes Juniper should

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-7-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

receive all fees on [the '494 and '780] patents" is belied by the plain language of the Court's Fees Order. Instead, the Special Master properly rejected Finjan's narrow (and incorrect) reading of that order. On the issue of scope, the Special Master describe the Court's Fees Order as follows:

> *The Order holds that asserting the '494 Patent was exceptional because there was no viable damages case and ultimately no infringement* (Order at 3). It further states that Finjan asserted shifting litigation positions (*ibid.*) and put improper and prejudicial evidence before the jury in its efforts to obtain a different result (*Ibid.*). That Finjan proved that all the claim limitations but one were met (Finjan Supp. Br. at 5), which shows that Finjan came close (but failed) to establish an infringement case without any damages, does not change this calculus.
>
> The'780 Patent is similar. The Order's findings include that Finjan should have withdrawn its claims after the Court rendered its construction of "performing a hashing function" (Order at 3-4), that Finjan lost on notice grounds as well (*id.* at 4), that Finjan misrepresented authority to the Court (*ibid.*) and attempted to relitigate its own concessions to salvage its claims related to the '780 Patent (*Ibid.*). *The Order expressly held that "Finjan's assertion of the '780 patent stands out as exceptional as well"* (*Ibid.*).
>
> Under these circumstances, there is no basis for deviating from the Court's holding that "Finjan's assertion of '494 and '780 patents" was exceptional.

*Id.* at 3-4 (emphasis added). Based on the Court's Fees Order, the Special Master correctly noted that the exceptional conduct was Finjan's entire assertion of the '494 and '780 Patents.

Finjan argues, however, that the Special Master should have omitted fees for work performed (1) prior to the Court's December 3, 2018 *Daubert* order excluding Finjan's damages expert, and (2) related to '494 liability issues. Dkt. 659 (Objs.) at 4-9. Finjan's argument is contrary to the express language of the Court's order which held that "[t]he *entire assertion* of the '494 patent thus stood out as exceptional." Dkt. 648 (Fees Order) at 3 (emphasis added); *see also id.* at 5 ("This order holds as exceptional Finjan's assertion of the '494 and '780 patents"); Dkt. 649 (Referral Order) at 1 ("A companion order found Juniper entitled to attorney's fees for Finjan's assertion of U.S. Patent Nos. 8,677,494 and 6,804,780."); Dkt. 649 (Referral Order) at ¶ 11 ("conduct found exceptional herein" is "the assertion of the '494 and '780 patents").

Finjan cites nothing in the Court's Fees Order that would require the Special Master to limit Juniper's fee award to time spent after December 3, 2018, or to damages issues. Rather, Finjan's argument is based entirely on the Court's reference to its December 3, 2018 *Daubert* order as *one*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-8-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

*example* of how Finjan repeatedly tried to salvage its fatally flawed case, noting that the "'494 patent damages fiasco wasted a great deal of everyone's time and energy." Dkt. 648 (Fees Order) at 2-3. The Court explained that this was merely "one example" of Finjan's misconduct with respect to the '494 Patent; it was not the entirety of Finjan's misconduct. *Id*. at 2. Moreover, Finjan ignores the language from the Court's exceptionality finding that expressly discusses Finjan's infringement case, and holds the entire assertion of the '494 Patent to be exceptional: "the whole song and dance came to nothing, even before the jury later rejected the merits of the infringement claim. The entire assertion of the '494 patent thus stood out as exceptional." *Id*. at 3.

Finjan also argues that the Court's fee award for the '780 Patent is limited to the time period after August 9, 2018, claiming that the Court's exceptionality finding was limited to Finjan's failure to drop the '780 Patent after the first round of summary judgment. Dkt. 659 (Objs.) at 7. Finjan is wrong again. Just as with the '494 Patent, the Court's order does not impose any limits on its exceptional case finding for the '780 Patent, holding that "Finjan's assertion of the '780 patent stands out as exceptional as well." Dkt. 648 (Fees Order) at 4; *see also id*. at 5 ("This order holds as exceptional Finjan's assertion of the '494 and '780 patents"); Dkt. 649 (Referral Order) at 1 ("Juniper [is] entitled to attorney's fees for Finjan's assertion of U.S. Patent Nos. 8,677,494 and 6,804,780."); Dkt. 649 (Referral Order) at ¶ 11 ("conduct found exceptional herein" is "the assertion of the '494 and '780 patents").

Further, the Court did not limit its discussion of exceptionality to Finjan's failure to drop the '780 Patent after summary judgment. To the contrary, the Court explained that this was only one "example" of Finjan's misconduct. Dkt. 648 (Fees Order) at 3. Indeed, the Court expressly mentioned (as another example) that Finjan's notice case was also exceptional because Finjan "attempted to relitigate concessions it had already made to the Court in previous hearings" and "misrepresented, though perhaps not intentionally at least recklessly, a favorable district court decision as having been affirmed on those relevant grounds by the Federal Circuit when, in fact, it had not been." *Id*. at 4. The Court held further observed that this notice issue alone rendered Finjan's case on the '780 Patent "moot from the outset." Dkt. 634 (Fees Mot.) at 17. In other words, just as with the '494 Patent, the examples of misconduct the Court cited for the '780 Patent are merely

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-9-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1   examples—and the assertion of the '780 Patent, like the assertion of the '494 Patent, was doomed

2   "from the outset."

3        Finally, there is no evidence that the Special Master mis-applied the Court's order in

4   determining which fees to award.  Indeed, Finjan does not identify a single billing entry awarded by

5   the Special Master that falls outside the scope of this Court's Fees Order.  Rather, the record shows

6   that the Special Master went through great lengths to award only fees Juniper incurred because of

7   Finjan's assertion of the '494 and '780 Patents.

8        The Special Master noted that "[t]he Court has held that Juniper may not recover fees bearing

9   little or no relation to the '780 and '494 Patents," and that "[a] few of the projects, *e.g.*, Prepare First

10  MSJ Motion and Reply on '780 Patent, are plainly 100% related to the exceptional conduct. Other

11  projects are not."  Dkt. 658 (R. & R.) at 12.  As the Special Master stated, "[w]hile Juniper culled

12  its billing records to remove time entries directed at patents other than the '494 and '780 Patents,

13  much of the work on the case, *e.g.*, depositions, is not attributable to any specific patent on its face."

14  *Id.*  Because some of Juniper's submissions were not completely attributable to the '494 and '780

15  Patents, the parties agreed that proportional allocations would be appropriate for those entries, but

16  disagreed as to the appropriate allocation for certain projects.  *Id.*  To determine the appropriate

17  allocation for the disputed categories, the Special Master analyzed how strongly the work for these

18  categories was tied to Finjan's assertion of the '494 and '780 Patents.

19        <u>Patent Contentions and Case Analysis</u>.   The Special Master concluded that a 90%

20  apportionment was proper for Juniper's evaluation of strength of claims for summary judgment

21  because "[t]his project would not have been necessary ***but for the exceptional conduct.***"  *Id.* at 13

22  (emphasis added).  Regarding Juniper's proposed 50% apportionment for Juniper's initial analysis

23  of asserted patents, the Special Master adopted that figure after "each of Juniper's time entries ***was***

24  ***reviewed for its relationship to the '494 and '780 Patents***."  *Id.* (emphasis added).

25        <u>Depositions</u>.  Regarding this category, the Special Master methodically considered whether

26  portions of the parties' discovery and depositions related to the '494 and '780 patents, and

27  considered detailed submissions on this issue.  In particular, the Special Master asked each party to

28  submit a detailed analysis of the two depositions (one that the party defended, and one that the party

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-10-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

took) that best demonstrated why that party's allocation methodology was more appropriate than the other party's allocation method.  Dkt. 658 (R. & R.) at 14 (noting that "[t]o resolve the parties' disputes on depositions, each side picked one deposition it took and one it defended, and submitted briefing on why it believed the depositions it picked supported its proposed apportionment" and discussing in detail each party's submission).  After reviewing the briefs and holding a lengthy hearing on this issue, the Special Master determined that Juniper's deposition allocation approach was more reasonable.  *Id.* at 15 ("That Juniper asked a witness testifying about the '494 and '780 Patents about his education, experience or Finjan's business is not a reason to reduce the fees that Juniper ***would not have incurred but for the exceptional conduct***." (emphasis added)), 16 ("much of the testimony that Finjan claims to be unrelated to the '494 and '780 Patents or which it asserts was cited by experts in relation to other patents (including the '731 Patent) ***appears to be directed to claim limitations in the '494 and '780 Patents***" (emphasis added)), 18 ("Juniper appears to have taken his deposition for trial. It makes no sense that a party would put its CEO up for iterative depositions other than if Mr. Hartenstein's deposition was for the impending trial. Juniper would not have had to depose him twice, but for the trial.").

Other Allocations.  According to the Special Master, "Juniper's allocation of 85% for pre-trial discovery and 10-15% for post-trial discovery and other projects (*e.g.*, Develop Case Schedule and Scope), is fairer and more accurate than Finjan's and therefore should generally be used."  *Id.* at 18-19.  However, the Special Master issued additional allocations for particular topics because of how related those topics were to Finjan's assertion of the '494 and '780 Patents.  *See, e.g.*, *id.* at 19 ("Motion Practice re: Protective Order.  Juniper seeks 75% for this project. ***Since a protective order applies to all the patents, a 28.6% allocation is more appropriate***." (emphasis added)) ("Prepare Discovery Orders.  Juniper seeks 75% for this request. ***A 28.6% allocation is recommended because this related to the whole case***." (emphasis added)) ("Respond to Finjan's Motion to Amend Complaint to Add ATP Appliance. Juniper seeks 100% for this project.  However, Finjan sought to assert all the patents-in-suit against this product and to restore is willfulness contentions as for all of them. ***A 33% allocation is recommended because there were six patents in the case at this time***." (emphasis added)).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-11-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1      *In re Personalweb* is instructive.  In that action, the court similarly walked through each

2 category and considered the extent of the defendants' fees from the plaintiff's pursuit of its case.

3 2021 WL 796356, at *12.  For example, when considering fees related to fact discovery, the court

4 noted that "PersonalWeb's misconduct continually gave Amazon the run around, increasing the

5 amount of fact discovery in which Amazon needed to engage," so the Court "reduce[d] fact

6 discovery fees by 30% to reflect a fair reduction related to otherwise necessary activities."  *Id.*

7 Additionally, when considering whether to award fees related to expert discovery, the court stated

8 that "Amazon had no choice but to work up its case until each theory was abandoned and start over

9 when a new theory appeared. For this, Amazon is entitled to a substantial portion of fees in this

10 category."  *Id.*  Ultimately, the court found "that Amazon is entitled to $4,615,242.28 in fees."  *Id.*

11 at *18.

12      Here too, the Special Master methodically considered and evaluated the categories of

13 attorneys' fees to award only fees tied to Finjan's exceptional conduct.  In light of the Special

14 Master's correct and thorough analysis, the Court should adopt the Special Master's

15 recommendation that Juniper recover $5,914,156 for attorney' fees.

16 **C.    The Court Did Not Err In Awarding Juniper Fees For All Tasks Related To**
       **Finjan's Assertion of the '494 and '780 Patents**
17

18      To the extent that the Court chooses to engage Finjan's attempt to reopen the issue of the

19 appropriate scope of attorneys' fees, Finjan's arguments fail on the merits.  The Court's decision to

20 award Juniper fees for the entire assertion of the '494 and '780 Patents is grounded in the applicable

21 legal precedent and was well within the Court's discretion.

22      "[A]n award of all of a party's fees, 'from either the start or some midpoint of a suit,' may

23 be justified in some 'exceptional cases,'" ***as long as the district court "establish[es] at least some***

24 ***'causal connection' between the misconduct and the fee award***."  *In re Rembrandt Techs. LP Pat.*

25 *Litig.*, 899 F.3d 1254, 1278-79 (Fed. Cir. 2018) (remanding because "the court did not explain why

26 an award of almost all fees was warranted or whether it had accepted AOPs' argument about

27 pervasive misconduct") (emphasis added) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.

28 Ct. 1178, 1187 (2017)).  "This but-for causation standard generally demands that a district court

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-12-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

assess and allocate specific litigation expenses—*yet still allows it to exercise discretion and judgment*." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. at 1187 (emphasis added).  The Supreme Court has emphasized that that the point of this but-for standard is to award fees accrued because of the misconduct:

> The court's fundamental job is to determine whether a given legal fee-say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct.  The award is then the sum total of the fees that, except for the misbehavior, would not have accrued. But as we stressed in *Fox*, trial courts undertaking *that task need not, and indeed should not, become green-eyeshade accountants....The essential goal in fee shifting is to do rough justice, not to achieve auditing perfection.*

*Id.*  "Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

This Court's decision in *Straight Path* is instructive.  In that action, this Court concluded that "defendants are entitled to comprehensive fees" when they need "to mount a comprehensive defense—including trial preparations—against claims that (again) should not have been brought." *Straight Path*, 2020 WL 2539002, at *3.  When "[t]he Court directed the special master to award reasonable fees bearing a nexus to the exceptional conduct," the date that the plaintiff's conduct clearly became improper and the defense at issue at that time are not limits on fees because "patent owner filed *this case* which *should never have been brought*."  *Id.* (rejecting plaintiff's argument that "the special master improperly expanded the scope of awardable fees by reimbursing activities before June 23, 2017 [the date the Federal Circuit issued a claim construction influencing plaintiff's case], and reimbursing defenses not specifically addressing the 'is connected' claim construction").  When a "[p]atent owner's exceptional claims were the *but for cause* of those fees," those fees are recoverable.  *Id.*

*In re Personalweb* also supports this Court's determination to award all fees in this action. *In re Personalweb Techs., LLC Pat. Litig.*, 2021 WL 796356, at *7 (N.D. Cal. Mar. 2, 2021).  There, PersonalWeb similarly argued that "that Amazon should only be able to recover for . . . 'S3 only' issues, post claim construction, and changed infringement positions."  *Id.*  The court, however, "disagree[d] and grant[ed] the lion's share of Amazon's fee request" after considering whether each

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-13-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

of the project categories (including pre-claim construction activities such as infringement contentions) was tied to the misconduct. *Id.* at *7-18. The court, therefore, found "that Amazon is entitled to $4,615,242.28 in fees." *Id.* at *18.

Finjan's assertion that exceptional conduct needs to occur from the date that Finjan filed the complaint in order for Juniper to recover attorneys' fees for all activities related to Finjan's assertion of the '494 and '780 Patents, therefore, has no legal foundation. All that is required is a causal relationship between Finjan's exceptional conduct and Juniper's accrued attorneys' fees. Here, the Court found that Finjan's entire assertion of the '494 and '780 Patents was exceptional, and there is thus a causal relationship between that conduct and Juniper's fees for defending against the '494 and '780 Patents from the outset.

Further, even if Finjan were correct that the Court found exceptionality only in connection with its damages case (and it is not), Finjan is incorrect that fees must be limited to the time period after the Court's *Daubert* order on December 3, 2018, because these defects in Finjan's damages case existed from the start; the Court merely disposed of them on December 3, 2018. As the Court found, Finjan's damages case was exceptional not merely because Finjan repeatedly engaged in "trick[s]" to inflate the damages base and continued pressing its case in the face of the Court's *Daubert* order, but also because it forced Juniper to defend an entire case (including a full jury trial) on a patent for which Finjan had a "woefully inadequate" damages case from the outset, and for which equitable and other relief was not available. *Id.* at 2-3. Thus, Finjan's misconduct was not limited to events after December 3, and it is responsible for fees and expenses that Juniper incurred both before and after that date. Indeed, Finjan's assertion that it is accountable only for time periods after the Court "caught it" is a bit like a serial bank robber arguing he is not responsible for the money he stole before he got caught. *See* Dkt. 648 (Fees Order) at 3. Because Finjan obscured the defects in its damages theory with creative lawyering, it took the Court until December 3, 2018 (and after) to put an end to Finjan's shenanigans. Finjan should not be permitted to profit from this delay.

As to Finjan's infringement case, Finjan's assertion that its "'494 liability case, though ultimately unsuccessful, was within typical patent litigation standards" as to Claim 10 of the '494 Patent is revisionist history, Dkt. 659 (Objs.) at 5, and ignores the law of infringement. The reason

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-14-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1   there was a trial on the '494 Patent is because the Court denied Finjan's motion for summary

2   judgment of infringement—if the Court had granted that motion, there would have been no need for

3   a trial.  In reality, the Court determined there was a genuine dispute on a material issue of fact,

4   namely whether the accused Juniper products practiced the "database" limitation of claim 10.  Dkt.

5   189 (MSJ Order) at 16-17.  The fact that Juniper practiced other limitations of the claim does not

6   allow Finjan to prevail on summary judgment because "infringement requires that *each and every*

7   limitation set forth in a claim appear in an accused product."  *Cross Med. Prods., Inc. v. Medtronic*

8   *Sofamor Danek, Inc*., 424 F.3d 1293, 1310 (Fed. Cir. 2005) (emphasis added).  Practicing only some

9   limitations of a claim creates the same liability as practicing no limitations of that claim:  none.   In

10  any event, the Court need not consider this issue, because as discussed above, the Court found that the

11  "entire assertion" of the '494 Patent was exceptional, including Finjan's infringement case.  Dkt. 648

12  (Fees Order) at 3.

13          Moreover, even if the order were limited to Finjan's damages case, Finjan's claim that it still

14  would have litigated infringement of the '494 Patent through trial in the absence of any damages (or

15  available equitable relief) is absurd.   Experienced litigants such as Finjan do not spend millions of

16  dollars on trials for which there is no remedy, and Finjan's insistence on proceeding to trial is part-

17  and-parcel of its refusal to accept the Court's damages rulings, believing it that could still "sneak"

18  substantial damages into the case.  Dkt. 648 (Fees Order) at 2-3.  Had Finjan accepted it had minimal

19  or no damages, as any reasonable party would have done, it would never have forced a trial on the

20  '494 Patent to begin with.  All of the fees and expenses that Juniper incurred with respect to the

21  '494 Patent, regardless of issue, are thus causally related to Finjan's exceptional misconduct with

22  respect to damages, and Finjan cannot now escape responsibility for its choices.

23          Further, the Court did not limit its discussion of exceptionality to Finjan's failure to drop the

24  '780 Patent after summary judgment.  To the contrary, the Court explained that was only one

25  "example" of Finjan's misconduct, Dkt. 648 (Fees Order) at 3.  Indeed, the Court also expressly

26  mentioned (as another example) that Finjan's notice case (a dispositive issue to which Finjan had

27  all of the relevant facts from the outset) was also exceptional because Finjan "attempted to relitigate

28  concessions it had already made to the Court in previous hearings" and "misrepresented, though

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-

-15-

JUNIPER NETWORKS, INC.'S RESPONSES
TO FINJAN'S OBJECTIONS
(Case No. 3:17-cv-05659-WHA)

1   perhaps not intentionally at least recklessly, a favorable district court decision as having been

2   affirmed on those relevant grounds by the Federal Circuit when, in fact, it had not been." *Id.* at 4.

3   In other words, just as with the '494 Patent, the examples of misconduct the Court cited for the '780

4   Patent are merely examples—and the assertion of the '780 Patent, like the assertion of the '494

5   Patent, was doomed from the outset.

6       In sum, because it was within the Court's discretion to award fees tied to Finjan's

7   misconduct, which the Court aptly conducted in its Fees Order, the Court should not reconsider its

8   prior determination that Finjan's assertion of the '494 and '780 Patents was exceptional.

9   **IV.    CONCLUSION**

10      For the foregoing reasons, Juniper submits that, under the Court's Fees Order, the Special

11  Master properly concluded that Juniper is entitled to recover all reasonable fees and expenses

12  incurred defending against the assertion of the '494 and '780 Patents, excluding only fees and costs

13  that "bear[] little or no relation to . . . the assertion of the '494 and '780 patents." Dkt. 648 (Fees

14  Order) at 5; Dkt. 649 (Referral Order) at ¶ 11.  Finjan does not dispute that any of the fees awarded

15  by the Special Master are unreasonable, or that they are unrelated to its assertion of the '494 or '780

16  Patent. Juniper therefore respectfully requests that the Court overrule Finjan's request that the Court

17  reconsider the scope of its Fees Order and confirm the Special Master's determination that Juniper

18  is entitled to $5,914,156 in attorneys' fees for defending against Finjan's assertion of the '494 and

19  '780 Patents.

20  Dated:  June 10, 2021                    Respectfully submitted,

21                                          IRELL & MANELLA LLP

22

23                                          By:  /s/ *Jonathan S. Kagan*

24                                               Jonathan S. Kagan

25                                          *Attorneys for Defendant*
                                            JUNIPER NETWORKS, INC.
26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10960956.-                              -16-                    JUNIPER NETWORKS, INC.'S RESPONSES
                                                                TO FINJAN'S OBJECTIONS
                                                                (Case No. 3:17-cv-05659-WHA)