UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> JUNIPER NETWORKS, INC., <br><br> Defendant. | No. C 17-05659 WHA <br><br> **ORDER ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATION FOR ATTORNEY'S FEES** |

**INTRODUCTION**

Both parties in this patent infringement action object to the special master's report and recommendation regarding attorney's fees and costs. Because the objections concern only the scope of the fees, which was previously determined by the district court, this order **ADOPTS** the special master's report and recommendation in its entirety. Defendant's motion for sanctions is **DENIED**.

**STATEMENT**

A prior order details the facts of this suit (Fees Order, Dkt. No. 648). Patent owner, Finjan, Inc., asserted two patents, among others, against Juniper Networks, Inc.: United States Patent Nos. 6,804,780 ("the '780 patent") and 8,677,494 ("the '494 patent"). In June 2018, pursuant to a patent showdown procedure, the parties filed dueling summary judgment motions

for an early inquiry into the merits. Each party chose its strongest patent claim, Finjan its best case for infringement and Juniper its best case for noninfringement or invalidity. Juniper prevailed on its noninfringement motion for claim 1 of the '780 patent. Finjan's motion for summary judgement of claim 1 of the '494 patent was denied in part, so the claim went to trial; the jury returned a verdict of noninfringement, and Juniper was awarded judgment as a matter of law as to damages.

After the first patent showdown, Juniper filed a motion for sanctions, claiming that Finjan acted improperly in its assertion of the '494 and '780 patents (Dkt. No. 409 at 1–2). Since the case had not yet concluded, a May 2019 order held the sanctions motion in abeyance (Dkt. No. 486 at 7–8). The parties briefed a second patent showdown on another set of claims, where Juniper once again prevailed, leading Finjan to stipulate to dismissal with prejudice of all its remaining patent claims (Dkt. No. 601).

As the prevailing party, Juniper moved for attorney's fees pursuant to 35 U.S.C. § 285. In its motion, Juniper requested that the Court rule on its previous motion for sanctions (Dkt. No. 634 at 5). In response to the motion, a January 2021 order ("the Fees Order") found the assertions of the '494 and '780 patents exceptional and agreed that attorney's fees should be awarded for all work relating to the two patents. Finding that Juniper's submitted billing records did not distinguish between work eligible and ineligible for reimbursement, two subsequent orders appointed attorney Matthew Borden as special master and required the parties to submit their billing requests to him (Dkt. Nos. 648, 649, 654). Special Master Borden agreed to take the assignment on for a much-reduced hourly fee. The order appointing the special master asked that he "identify each item requested that bears little or no relation to the conduct found exceptional herein, *that being the assertion of the '494 and '780 patents*" (Dkt. No. 649 at 4 (italics added)).

The special master conducted several conferences and hearings with the parties. On February 25, the special master held a status conference establishing procedures and setting a briefing schedule. After, the parties briefed and conducted oral arguments on whether all work related to the '494 and '780 patents was recoverable. On April 15 and again on April 21, the

2

special master addressed the parties' dispute over Finjan's billing rates. Nine contested projects were then evaluated at a hearing on April 23, and a further five disputed projects were discussed on April 30. On May 14, the special master convened a final hearing on all remaining issues. The special master recommended that Juniper be awarded $5,914,156 in attorney's fees and costs, but the special master declined to calculate sanctions as the Fees Order did not make an express finding of bad faith (Dkt. No. 658 at 1–2, 20).

## ANALYSIS

A district court "must decide *de novo*" all objections to findings of fact and conclusions of law made or recommended by a special master. FRCP 53(f)(3)–(4). As a practicing attorney, the special master's findings of fact regarding reasonable attorney staffing, billing practices, discovery, case scope, and similar issues are entitled to a degree of deference. Those findings will not be altered absent the showing of a specific failure of reasoning or other error.

### 1. THE PARTIES DID NOT OBJECT TO THE SPECIAL MASTER'S METHOD OF CALCULATION.

Neither Finjan nor Juniper take issue with the manner in which the special master identified which of Juniper's fees were related to the '494 and '780 patents or whether the fees were reasonable. Juniper stated that "[a]lthough Special Master Borden reduced some of [Juniper]'s submitted attorneys' fees, Juniper does not object to that reduction" (Dkt. No. 661 at 1). Finjan makes no mention of the methodology the special master used for identifying relevant fees and costs (Dkt. No. 659). This order finds that the special master went to great lengths to accurately identify the fees and costs exclusively associated with the assertion of the '494 and '780 patents. Numerous hearings and conferences were held to discuss disputes over billing rates and time allocation.

Rather than object to the identification of the fees, both parties take issue with the scope of the fees awarded. Finjan believes the special master should not have awarded fees for the entirety of the assertions of the '494 and '780 patents. Juniper contends that the special master incorrectly abstained from calculating expert witness fees and travel expenses Juniper claims it is owed as sanctions. Each of these objections will be addressed in turn. However, because

3

the special master carefully identified only the fees related to the two patent assertions and neither party objects to the method of calculation, the special master's recommendation will be adopted to the extent that this order accepts the scope of the award. As stated below, this order approves of the scope of the award delineated by the special master.

## 2. PLAINTIFF'S OBJECTIONS.

### A. THE SCOPE OF FEES FOR THE '494 PATENT.

Finjan believes the special master should have calculated fees only for work on damages issues related to the '494 patent that occurred after the *Daubert* order excluding Finjan's damages expert on December 3, 2018 (Dkt. No. 659 at 5, 7–9). According to Finjan, it is after that point, and only in relation to damages, that Finjan's assertion of the patent was found to be exceptional (*ibid*). This order disagrees.

Finjan's theory is in direct conflict with the Fees Order. Finjan acknowledges that 35 U.S.C. § 285 "permits recovery of only those fees related to the conduct held to have been exceptional" (Dkt. No. 659 at 1). The Fees Order indisputably held that "[t]he *entire assertion of the '494 patent* thus stood out as exceptional" (Fees Order 3 (emphasis added)). The Fees Order specifically stated that the discussion of the '494 patent damages "fiasco" was not the starting point of exceptional conduct but merely "one example" of the exceptional conduct in the case (Fees Order 2). Finjan's conduct concerning damages thus did not mark the start of exceptionalism, it was instead explicitly discussed in the Fees Order as a noteworthy example of Finjan's unreasonable litigating that supported a broader finding of exceptionalism for the assertion of the '494 patent, generally.

Special Master Borden applied the correct scope for the award of fees for the '494 patent. The special master's recommendation, citing to the Court's holding in the Fees Order, stated that the entirety of Finjan's assertion of the '494 patent was exceptional (Dkt. No. 658 at 3). Finjan thus takes issue with the *Court's* previous ruling, *not* the special master's recommendation, despite "acknowledge[ing] that the § 285 Order is binding" (Dkt. No. 659 at 5 ftn. 1). Because the Court, and not the special master, defined the scope of fees, Finjan's objections to the special master's report and recommendation are inapposite. Finjan

4

effectively requests reconsideration of the Fees Order, but this order declines to revise the finding of exceptionalism, which was well within the Court's power to make. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017). Since Finjan's objections do not concern findings of fact or conclusions of law made by the special master, Finjan's objection concerning the '494 patent is **OVERRULED**.

### B. THE SCOPE OF FEES FOR THE '780 PATENT.

Finjan also argues that the fees award for the '780 patent should be limited to costs incurred for work following the first patent showdown and summary judgment order in August 2018 on the grounds that the Fees Order stated Finjan should have dropped the '780 patent issue after that point (Dkt. No. 659 at 6; Fees Order 3). This objection suffers the same issues as Finjan's objection to the fees awarded for the '494 patent. The Fees Order held that "Finjan's assertion of the '780 patent stands out as exceptional as well," which indicates that the entirety of Finjan's '780 patent infringement claim was exceptional (Fees Order 4). Just like for the '494 patent, the Fees Order stated that Finjan should have dropped the '780 after the first patent showdown to illustrate how Finjan continued to engage in exceptional conduct. The events the Fees Order outlines were not the beginnings of exceptionality, but examples of some of the worst behavior at the end of an exceptional patent assertion.

The special master accordingly followed the Court's instructions by calculating *all* fees and costs associated with the '780 patent. The special master did not misconstrue the ruling made on exceptionality in the Fees Order. Finjan's objections do not concern findings of fact or conclusions of law made by the special master, thus Finjan's objection regarding the '780 patent is **OVERRULED**.

### 3. DEFENDANT'S OBJECTIONS.

After the first patent showdown, Juniper filed a motion requesting sanctions on Finjan based on its conduct litigating the '494 and '780 patents, but, as the case was ongoing, the motion was held in abeyance (Dkt. Nos. 409, 486). In its motion for attorney's fees, Juniper renewed its request for a ruling on its motion for sanctions (Dkt. No. 634 at 5). Following the special master's report and recommendation, Juniper asserts that the special master should

5

have calculated expert witness fees and travel expenses so that the Court could decide to award them as sanctions for Finjan's alleged bad faith conduct. Juniper asks for a finding of bad faith and sanctions pursuant to 28 U.S.C. § 1927 or the Court's inherent powers and proposes a penalty of $1,425,659.24 in addition to the special master's award of $5,914,156 for attorney's fees (Dkt. No. 661 at 1, 9–11).

Section 285 allows a district court to award attorney's fees for exceptional conduct, but the statute has been read to exclude expert witness fees. *See Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994). The special master found in his report, and both Finjan and Juniper agreed, that Section 285 precludes a recovery of expert fees and travel expenses; Juniper has not refuted this finding in its objections (Dkt. No. 658 at 20). Expert fees, however, can be awarded as sanctions pursuant to Section 1927 or a court's inherent powers. Not every case qualifying as exceptional under Section 285 will also qualify for sanctions pursuant to Section 1927 or the court's inherent power. *See Amsted*, 23 F.3d at 378; *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014). For a case to be considered exceptional under Section 285, it must be "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. To justify an award of sanctions, a district court must assess whether a particular case goes sufficiently beyond exceptional within the meaning of Section 285.

Section 1927 provides that "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Supreme Court has explained that Section 1927 "is concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). Our court of appeals has recognized that its "cases have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanction[s] . . . under § 1927, or whether there must be a finding of subjective bad faith." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)

6

1  (cleaned up, quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)).  Our

2  court of appeals has most recently advised that sanctions pursuant to Section 1927 must be

3  supported by a finding of subjective bad faith, and that, without more, reckless but

4  nonfrivolous conduct may not be sanctioned.  *Stone Creek, Inc. v. Omnia Italian Design, Inc.*,

5  875 F.3d 426, 442 (9th Cir. 2017); *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d

6  1004, 1007 (9th Cir. 2015).  "Bad faith is present when an attorney knowingly or recklessly

7  raises a frivolous argument or argues a meritorious claim for the purpose of harassing an

8  opponent."  *Blixseth*, 796 F.3d at 1007.

9   Under its inherent powers, on the other hand, a district court may levy fee-based

10  sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,

11  delaying or disrupting litigation, or has litigated for an improper purpose.  *Roadway Express*,

12  447 U.S. at 766; *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  "[S]anctions are available

13  if the court specifically finds bad faith or conduct tantamount to bad faith."  *Fink*, 239 F.3d at

14  994.  For example, our court of appeals recently upheld a sanction award where the plaintiffs

15  "had submitted multiple misleading and false declarations and fraudulent documents in bad

16  faith in order to create a sham plaintiff, and appellants failed to offer any credible explanation

17  to the contrary."  *Indiezone, Inc. v. Rooke*, 720 Fed. App'x 333, 337 (9th Cir. 2017).

18   Juniper lists several instances where Finjan's conduct allegedly satisfied the threshold

19  required for sanctions:  (1) Finjan changed its infringement theory when its original theory led

20  to a low damages number, and it presented the new theory in its damages expert's report; (2)

21  Finjan presented its facts-only damages theory to the jury after its damages expert was

22  excluded; (3) Finjan said Juniper was given actual notice of infringement during a phone call,

23  but the assertion was disproved when Juniper produced a recording of the call; (4) Finjan

24  misrepresented a district court decision to the Court; and other, similar, actions (Dkt. No. 661

25  at 4–8).

26   This order, considering these events and giving them all due consideration, holds Finjan's

27  actions do not reach the requisite standard for awarding sanctions under either Section 1927 or

28  the Court's inherent powers.  Vociferous and belligerent ligating may transgress into conduct

warranting sanctions, and the Fees Order did point out improper conduct by Finjan and its counsel. And while the change in damages theory was a blatant instance of "shifting sands," it was not comparable to the act of submitting fraudulent documents like in *Indiezone*. The affidavit stating actual notice had been given proved untrue, but Juniper has not demonstrated it was willfully false. Finjan's misrepresentation of a district court decision was "reckless" (Fees Order 4), but, even if a finding of recklessness alone satisfies the Section 1927 standard, this order finds that act, by itself, would not warrant sanctions. *See Fink*, 239 F.3d at 993.

In no way does this order vindicate Attorneys James R. Hannah, Lisa Kobialka, and Paul J. Andre. Their conduct was improper and frustrated the fairness of the proceedings. Judges in the future should take this into account when dealing with them in future cases. In light of the fact, however, that the Fees Order found Finjan's assertion of the '494 and '780 patents exceptional, resulting in an award of $5.9 million to Juniper, Finjan's conduct has been properly addressed.

The Fees Order requested that Juniper provide its expert witness fees and travel expenses to the special master for the sake of completeness given that the issues of Finjan's conduct had yet to be revisited. This order fully addresses Finjan's conduct in this action. Since this order declines to make an express finding that sanctions are warranted, it is irrelevant whether the special master should have calculated potential expert fees and travel expenses. Thus, Juniper's objection to the special master's report is **OVERRULED**. Juniper's motion for sanctions is **DENIED**.

## CONCLUSION

This order **ADOPTS** the special master's recommended award. Given that its prosecution of the '494 and '780 patents was found to be exceptional, **FINJAN, INC. SHALL PAY JUNIPER NETWORKS, INC. $5,914,156**. The Court awaits the parties' joint status updates at **28 DAY** intervals until they certify all fees have been paid.

The Court thanks the special master for his 53.2 hours of work performed (as a service to the Court) at the reduced rate of $300 per hour, coming to $15,960. Within **14 DAYS** of this order, **FINJAN, INC. SHALL PAY $7,980** and **JUNIPER NETWORKS, INC. SHALL PAY $7,980** to:

8

Matthew Borden
BraunHagey & Borden LLP
351 California Street, Suite 10
San Francisco, CA 94104

The Court awaits the parties' joint status updates at **28 DAY** intervals until they certify the special master has been reimbursed in full for his time. The Court retains jurisdiction to enforce both orders.

**IT IS SO ORDERED.**

Dated: July 26, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9